# EXHIBIT E

NEW YORK STATE DEPARTMENT
OF FINANCIAL SERVICES

---

In the Matter of

CHUBB GROUP HOLDINGS INC. and
ILLINOIS UNION INSURANCE COMPANY.

---

## CONSENT ORDER UNDER
## SECTIONS 1102 AND 3420 OF THE INSURANCE LAW

Chubb Group Holdings Inc., its subsidiary, Illinois Union Insurance Company ("Illinois Union") (together, "Chubb") and the New York Department of Financial Services (the "Department") are willing to resolve the matters described herein without further proceedings.

### THE DEPARTMENT'S FINDINGS FOLLOWING INVESTIGATION

1. Chubb is the world's largest publicly-traded property and casualty insurance company, and the largest commercial insurer in the United States. Chubb has operations in 54 countries and territories, providing commercial and personal property and casualty insurance, personal accident and supplemental health insurance, reinsurance and life insurance to customers. Several Chubb subsidiaries have been licensed by the Department to conduct certain types of insurance business in the State of New York since at least 1922. Illinois Union, a Chubb subsidiary, is an unauthorized insurer that is eligible to write excess line insurance in New York State.

2. In connection with the "Carry Guard" insurance program discussed herein, Illinois Union held itself out to the public simply as "Chubb."

3. Lockton Companies, LLC ("Lockton") is the world's largest privately owned, independent insurance brokerage firm, offering customers risk management, insurance and

employee benefits services. At least one of its affiliates has been licensed by the Department since approximately 1987. Lockton Affinity, LLC ("Lockton Affinity") is an affiliate of Lockton Companies, and has been licensed by the Department to act as an excess line insurance broker since at least 2013.

4. The National Rifle Association of America ("NRA") is a New York not-for-profit corporation incorporated in 1871. The NRA describes its mission as "firearms safety, education, and training and advocacy on behalf of safe and responsible gun owners." The NRA is not licensed by the Department.

5. From approximately April through November 2017, the NRA offered an insurance program to new and existing members resident in New York called "Carry Guard." According to the NRA's website:

*NRA Carry Guard is a two-pronged program. It was created to provide dynamic, state-of-the-art insurance protection to those who legally defend themselves with a firearm, and to offer an elite, one-stop training option. The insurance provides a cutting edge set of features that will help gun owners mitigate the potentially costly financial and legal consequences flowing from armed encounters, even if they did everything right.*

The NRA website further described the Carry Guard program as "the only membership carry program *developed and supported by the National Rifle Association*, the most powerful civil rights organization in American history." The website further stated that Carry Guard was *"created by the NRA."*

6. Additional promotional materials disseminated by the NRA stated:

**Why do I need Carry Guard**? Although millions of Americans are prepared to use a firearm in self-defense, very few families can withstand the financial consequences that may come next. The legal fees to clear your good name could be enormous. Likewise, the costs of defending and potentially losing a civil lawsuit could cripple your finances for the rest of your life. *And many homeowners' policies have severe limitations or exclusions related to intentional acts such as self-defense.*

2

These materials stated at the bottom of the page: "NRA CARRY GUARD™ Insurance Program Administered by Lockton Affinity, LLC • D/B/A/ Lockton Affinity Insurance Brokers, LLC."

7. Pursuant to written agreements with Lockton, Chubb -- through Illinois Union -- served as the underwriter for the Carry Guard insurance program, providing insurance policies to individuals who purchased Carry Guard insurance. Lockton Affinity placed these insurance policies through New York's excess line insurance market.

8. Pursuant to written agreements between Chubb/Illinois Union and Lockton Affinity, and between Lockton Affinity and the NRA, Lockton Affinity served as the administrator for the insurance program, carrying out such functions as marketing the insurance, binding the insurance, collecting and distributing premiums, and delivering policies to insureds.

9. Without a license by the Department, the NRA engaged in aggressive marketing of and solicitation for the Carry Guard insurance program. For example (and without limitation):

- The NRA broadcasted NRA-produced videos promoting the Carry Guard insurance program on YouTube;

- The NRA solicited participation in the Carry Guard insurance program through mass e-mail marketing, direct mail, banner ads, and articles in NRA publications;

- The NRA heavily promoted the Carry Guard insurance program at its 2017 "Carry Guard Expo" and its annual meetings;

- The NRA operated the website "www.nracarryguard.com," which was an important marketing portal for the Carry Guard insurance program and linked to a website operated by Lockton Affinity (www.lockton.nracarryguard.com), which provided additional information about the Carry Guard insurance program;

3

- The NRA promoted Carry Guard insurance on its main website, www.nra.org, which, among other things, featured an NRA spokesperson making claims such as, *"We're proud to have developed* the one carry membership program that stands above all others – NRA Carry Guard"; and "I will never carry a gun without carrying this."; and

- "Pop-up" internet advertising for the Carry Guard insurance program that featured one or more NRA spokespersons.

10. The Carry Guard insurance program, as underwritten by Chubb/Illinois Union and administered, solicited and marketed by Lockton Affinity, unlawfully provided insurance coverage that may not be offered in the New York State excess line market, specifically: (a) defense coverage in a criminal proceeding that is not permitted by law; (b) liability coverage for bodily injury or property damage expected or intended from the insured's standpoint in an insurance policy limited to use of firearms and that was beyond the use of reasonable force to protect persons or property; and (c) coverage for expenses incurred by the insured for psychological counseling support.

11. The Carry Guard insurance program, as underwritten by Chubb/Illinois Union and administered by Lockton Affinity, failed to comply with Section 3420 of the Insurance Law, which sets forth minimum requirements for liability insurance policies.

12. Moreover, in underwriting and administering the Carry Guard insurance program at the behest of the NRA, with knowledge that the NRA did not have a license to conduct insurance business from the Department, Chubb/Illinois Union and Lockton Affinity engaged in practices with an unlicensed party, the NRA, in a manner that resulted in violations of the Insurance Law.

13. Chubb/Illinois Union has represented to the Department that, between approximately April and November 2017, 681 Carry Guard insurance policies were issued to New York

residents; and has represented to the Department that no claims have been submitted under the Carry Guard insurance policies to date by New York residents.

14. Under the written agreements between Lockton Affinity and the NRA, the NRA was entitled to and did receive a variety of compensation in connection with the Carry Guard insurance program, even though it had no license from the Department, including as follows:

- The NRA was entitled to be paid half of the "administrative fee" collected by Lockton Affinity from Carry Guard insureds for purported but unspecified services;

- The NRA was entitled to receive certain royalties from Lockton Affinity for use of the NRA's name in conjunction with the Carry Guard insurance program; and

- The NRA was entitled to receive 100 percent of certain "profit sharing" awards arising out any funds generated and paid from a certain Lloyd's insurance policy.

15. Since October 2017, the Department has been conducting an investigation of the involvement of Chubb, Lockton and the NRA in the Carry Guard insurance program and other matters, including a review of thousands of pages of documents obtained from Chubb, Lockton and the NRA, as well as other information obtained from investigative resources (the "DFS Investigation").

16. Following initiation of the DFS Investigation in October 2017, which included document and information requests sent to Chubb in October 2017, Chubb and Illinois Union suspended participation in the Carry Guard program on or about November 17, 2017, and ceased making available Carry Guard policies for New York residents to purchase.

17. **NOW THEREFORE**, to resolve this matter without further proceedings, pursuant to Sections 1102 and 3420 of the Insurance Law, Chubb, Illinois Union, and the Department (collectively, the "Parties") hereby stipulate and agree as follows:

## VIOLATIONS OF LAW AND REGULATIONS

18. Chubb, through Illinois Union, engaged in the business of insurance without a license by issuing or delivering policies in New York State, or otherwise issuing policies covering New York State residents, which provided insurance coverage that may not be offered in the New York State excess line market, specifically: (a) defense coverage in a criminal proceeding that is not permitted by law; (b) liability coverage for bodily injury or property damage expected or intended from the insured's standpoint in an insurance policy limited to use of firearms and that was beyond the use of reasonable force to protect persons or property; and (c) coverage for expenses incurred by the insured for psychological counseling support, in violation of Insurance Law § 1102.

19. Chubb, through Illinois Union, issued liability insurance coverage to New York residents that failed to contain required liability insurance policy provisions, in violation of Insurance Law § 3420.

## SETTLEMENT PROVISIONS

### Civil Monetary Penalty

20. Chubb shall pay a civil monetary penalty to the Department pursuant to Sections 1102 and 3420 of the Insurance Law in the amount of $1,300,000. Chubb shall pay the entire amount within ten days of executing this Consent Order. Chubb agrees that it will not claim, assert, or apply for a tax deduction or tax credit with regard to any U.S. federal, state, or local tax, directly or indirectly, for any portion of the civil monetary penalty paid pursuant to this Consent Order. Chubb further agrees that it will not claim, seek, or receive indemnification of the civil monetary penalty from any other person or entity.

## Prohibition on Carry Guard and Other Insurance Programs

21. Chubb and Illinois Union agree not to participate in the Carry Guard insurance program or any similar program with regard to New York State, including, without limitation, by agreeing not to provide Carry Guard or other insurance policies specific to firearm usage that provide liability coverage for bodily injury or property damage from use of a firearm; and by agreeing not to provide liability coverage for bodily injury or property damage expected or intended from the insured's standpoint in general liability policies that is not limited to those occasions where bodily injury results from the use of reasonable force to protect persons or property, whether they are written or issued in New York State or elsewhere. Furthermore, Chubb and Illinois Union agree not to issue or deliver any Carry Guard or similar insurance policies in New York State, regardless of the residence of the insured. For the avoidance of doubt, Chubb and Illinois Union shall not be prohibited from providing homeowners, renters or general liability insurance in New York State or for New York residents that includes personal injury liability insurance or property damage liability insurance for loss, damage, or expense that results from the negligent use of a firearm.

22. Chubb and Illinois Union agree that they shall not enter into any agreement or program with the NRA to underwrite or participate in any affinity-type insurance program involving any line of insurance; provided, however, that the NRA may itself purchase insurance from Chubb for the sole purpose of obtaining insurance for the NRA's own corporate operations. Chubb and Illinois Union further agree that they shall not enter into any affinity-type insurance program without undertaking reasonable due diligence to ensure that any entity involved in the issuance, brokering, administration or marketing of such affinity insurance program is acting in compliance with the Insurance Law and the regulations promulgated thereunder, including but

not limited to, any licensure requirements of the Insurance Law or regulations promulgated thereunder.

23. Chubb/Illinois Union has represented to the Department that, between approximately April and November 2017, 681 Carry Guard insurance policies were issued to New York residents; and has represented to the Department that no claims have been submitted under the Carry Guard insurance policies to date by New York residents.

24. Within 10 business days of the execution of this Consent Order, Illinois Union shall mail or deliver to all New York State insureds notice stating that Illinois Union is canceling the insured's Carry Guard insurance policy effective 90 days from the date of notice. Illinois Union agrees to submit the draft notices to the Department for the Department's review and approval prior to Illinois Union mailing or delivering such notices. Illinois Union also agrees to fully refund the insurance premiums for the cancelled policies. Thereafter, Illinois Union shall promptly file a certification with the Department that sets forth its compliance with this Paragraph 24.

25. Chubb and Illinois Union agree not to issue or deliver in New York State an insurance policy, or otherwise issue an insurance policy covering a New York State resident, that provides defense coverage in a criminal proceeding unless expressly permitted by law.

26. Illinois Union and any other unauthorized Chubb insurer agree not to issue or deliver in New York State an insurance policy, or otherwise issue an insurance policy covering a New York State resident, that provides insurance for expenses incurred for psychological counseling support because such conduct violates the Insurance Law.

8

## Full and Complete Cooperation of Chubb

27. Chubb and Illinois Union commit and agree to fully cooperate with the DFS Investigation and all terms of this Consent Order. Such cooperation shall include, without limitation:

      a. producing all non-privileged documents and other materials to the Department, as requested, wherever located in the possession, custody, or control of Chubb or Illinois Union;

      b. requiring employees or agents to appear for interviews, at such reasonable times and places, as requested by the Department;

      c. responding fully and truthfully in a prompt manner to all inquiries when requested to do so by the Department; and

      d. testifying at hearings, trials and other judicial, administrative or other proceedings, when requested to do so by the Department, in connection with its investigation of matters relating to the Carry Guard insurance program.

## Breach of Consent Order

28. If the Department believes Chubb or Illinois Union to be in material breach of this Consent Order, the Department will provide written notice to Chubb or Illinois Union and Chubb or Illinois Union must, within ten business days of receiving such notice, or on a later date if so determined in the Department's sole discretion, appear before the Department to demonstrate that no material breach has occurred or, to the extent pertinent, that the breach is not material or has been cured.

29. The parties understand and agree that the failure of Chubb or Illinois Union to make the required showing within the designated time period shall be presumptive evidence of Chubb's

or Illinois Union's breach. Upon a finding that Chubb or Illinois Union has breached this Consent Order, the Department has all the remedies available to it under New York Insurance and Financial Services Law and may use any evidence available to the Department in any ensuing hearings, notices, or orders.

### Waiver of Rights

30. The parties understand and agree that no provision of this Consent Order is subject to review in any court or tribunal outside the Department.

### Parties Bound by the Consent Order

31. This Consent Order is binding on the Department, Chubb and Illinois Union, as well as any successors and assigns. This Consent Order does not bind any federal or other state agency or any law enforcement authority.

32. No further action will be taken by the Department against Chubb for the specific conduct set forth in this Consent Order, provided that Chubb complies fully with the terms of this Consent Order, including paragraph 27 above.

33. Notwithstanding any other provision contained in this Consent Order, the Department may undertake action against Chubb or Illinois Union for transactions or conduct that Chubb or Illinois Union did not disclose to the Department in the written materials that Chubb and Illinois Union submitted to the Department in connection with this matter.

### Notices

34. All notices or communications regarding this Consent Order shall be sent to:

For the Department:

For the Department:

Hadas Jacobi
Assistant Deputy Superintendent
 for Enforcement
New York State Department of Financial Services
One State Street
New York, NY 10004

Megan Prendergast
Deputy Superintendent for Enforcement
New York State Department of Financial Services
One State Street
New York, NY 10004

Connor Mealey
Excelsior Fellow
New York State Department of Financial Services
One State Street
New York, NY 10004

For Chubb:

Kevin Rampe
General Counsel
Chubb Group
1133 Avenue of the Americas
New York, NY 10036

John P. Mulhern
Drinker, Biddle & Reath LLP
1177 Avenue of the Americas
New York, NY 10036

For Illinois Union:

Kevin Rampe
General Counsel
Chubb Group
1133 Avenue of the Americas
New York, NY 10036

John P. Mulhern
Drinker, Biddle & Reath LLP
1177 Avenue of the Americas
New York, NY 10036

**Miscellaneous**

35. Each provision of this Consent Order shall remain effective and enforceable until stayed, modified, suspended, or terminated by the Department.

36. No promise, assurance, representation, or understanding other than those contained in this Consent Order has been made to induce any party to agree to the provisions of the Consent Order.

**IN WITNESS WHEREOF**, the parties have caused this Consent Order to be signed this 7th day of May, 2018.

**CHUBB GROUP HOLDINGS INC.**

By: _____
JOSEPH WAYLAND
Executive Vice President and
General Counsel

**ILLINOIS UNION INSURANCE COMPANY**

By: _____
JOSEPH WAYLAND

**NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES**

By: _____
MARIA T. VULLO
Superintendent of Financial Services

By: _____
MATTHEW L. LEVINE
Executive Deputy Superintendent for Enforcement