IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § <br><br> CIVIL CASE NO.  18-CV-00566-TJM-CFH |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ORDER TO SHOW CAUSE FOR EXPEDITED DISCOVERY**

              William A. Brewer III (Bar No. 700217)
              Stephanie L. Gase (Bar No. 700205)
              Sarah B. Rogers (Bar No. 700207)
              BREWER, ATTORNEYS & COUNSELORS
              750 Lexington Avenue, 14th Floor
              New York, New York 10022
              Telephone:  (212) 489-1400
              Facsimile:  (212) 751-2849

              Charles J. Cooper*
              Michael W. Kirk*
              J. Joel Alicea*
              COOPER & KIRK, PLLC
              1523 New Hampshire Ave., NW
              Washington D.C., 20036
              Telephone:  (202) 220-9660

              *Appearing *pro hac vice*

              **ATTORNEYS FOR THE NATIONAL RIFLE
              ASSOCIATION OF AMERICA**

## **TABLE OF CONTENTS**

**Page**

I. ARGUMENT AND AUTHORITIES ................................................................................. 1

    A. The NRA's Proposed Discovery Is Sufficiently Narrow To Meet The Requirements Of The "Reasonable And Good Cause" Test. .................................. 1

    B. Defendants' Arguments Fail To Rebut The NRA's Entitlement To Discovery Under The *Notaro* Standard. ............................................................... 2

        1. The NRA has shown some probability of success on the merits on its claims. ............................................................................................... 2

        2. Having *some* monetary harm does not negate the noncompensable damages arising from Defendants' unconstitutional conduct. ..................... 4

        3. The potential harm to the NRA is greater than the burden expressed by Defendants. ............................................................................................. 6

    C. Vullo Is Not Immune From Providing Testimony Because She Has Personal Knowledge Of The Subject Matter Of This Action. ............................................... 7

II. CONCLUSION ................................................................................................................. 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Able v. United States*,
  88 F.3d 1280 (2d Cir. 1996) ................................................................................................... 5

*Attkisson v. Holder*,
  113 F. Supp. 3d 156 (D.D.C. 2015) ....................................................................................... 6

*Ayyash v. Bank Al-Madinai,*
  233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................................... 1

*Backpage.com, LLC v. Dart*,
  807 F.3d 229 (7th Cir. 2015) ................................................................................................. 6

*Beal v. Stern*,
  184 F.3d 117 (2d Cir. 1999) ................................................................................................... 4

*Bery v. City of New York*,
  97 F.3d 689 (2d Cir. 1996) ..................................................................................................... 4

*Boudouris v. Cnty. of Nassau*,
  2016 WL 4288645 (E.D.N.Y. Aug. 15, 2016) ...................................................................... 8

*Brewer v. W. Irondequoit Cent. Sch. Dist.*,
  212 F.3d 738 (2d Cir. 2001) ............................................................................................... 4, 5

*Bronx Household of Faith v. Bd. of Educ. of N.Y.C.*,
  331 F.3d 342 (2d Cir. 2003) ............................................................................................... 4, 5

*Dentsply Sirona Inc. v. LIK Supply, Corp.*,
  2016 WL 3920241 (N.D.N.Y. July 15, 2016) ...................................................................... 4

*Doninger v. Niehoff*,
  527 F.3d 41 (2d Cir. 2008) ..................................................................................................... 4

*Donohue v. Paterson*,
  715 F. Supp. 2d 306 (N.D.N.Y. 2010) ................................................................................... 4

*Dorsett v. Cty. of Nassau*,
  732 F.3d 157, 160 (2d Cir. 2013) ........................................................................................... 3

*Dorsett-Felicelli, Inc. v. Cnty. of Clinton*,
  349 F. Supp. 2d 355 (N.D.N.Y. 2004) ................................................................................... 5

*Ebbert v. Nassau Cnty.*,
    2007 WL 674725 (E.D.N.Y. Mar. 5, 2007)......................................................................8

*Elrod v. Burns*,
    427 U.S. 347 (1976)........................................................................................................6

*Gibson v. Carmody*,
    1991 WL 161087 (S.D.N.Y. Aug. 14, 1991)..................................................................8

*Heartland Trademarks, Ltd. v. Dr. Flax LLC*,
    2017 WL 3278905 (N.D.N.Y. Aug. 1, 2017) .................................................................4

*Holt v. Cont'l Grp., Inc.*,
    708 F.2d 87 (2d Cir. 1983)..............................................................................................4

*Kingsley v. N.Y.C. Police Dept.*,
    2008 WL 5215648 (S.D.N.Y. Dec. 9, 2008) ..................................................................7

*Laird v. Tatum*,
    408 U.S. 1 (1972)............................................................................................................4

*Lederman v. Guiliani*,
    2002 WL 31357810 (S.D.N.Y. Oct. 17, 2002)...............................................................8

*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
    731 F.3d 199 (2d Cir. 2013)............................................................................................8

*Marisol A. v. Giuliani*,
    1998 WL 132810 (S.D.N.Y. Mar. 23, 1998) ..................................................................7

*N.Y. Republican State Comm. v. Moore*,
    No. 89-CV-1064, 1989 WL 124206 (N.D.N.Y. Oct. 11, 1989) .....................................4

*N.Y. State Bar Ass'n v. Reno*,
    999 F. Supp. 710 (N.D.N.Y. 1998) .................................................................................4

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) ......................................................................................2

*Sanstrom v. Rosa*,
    1996 WL 469589 (S.D.N.Y. Aug. 16, 1996)..................................................................7

*Tunick v. Safir*,
    209 F.3d 67 (2d Cir. 2000)..............................................................................................4

*United States v. City of New York*,
    2009 WL 2423307 (S.D.N.Y. Aug. 5, 2009)..................................................................8

Plaintiff the National Rifle Association of America (the "NRA") files this Reply Memorandum of Law in Further Support of Its Order to Show Cause for Expedited Discovery (the "Motion") against defendants New York Governor Andrew Cuomo ("Cuomo"), in his official capacity; Maria T. Vullo ("Vullo"), in her official capacity; and the New York State Department of Financial Services ("DFS") (collectively, "Defendants").

## I.  ARGUMENT AND AUTHORITIES[1]

### A.  The NRA's Proposed Discovery Is Sufficiently Narrow To Meet The Requirements Of The "Reasonable And Good Cause" Test.

Defendants imply that *Ayyash v. Bank Al-Madina*[2] stands for the proposition that reasonable and good cause may only exist where there is fear of potential concealment of evidence or that a party may not respond to the complaint. However, in the thirteen years since *Ayyash* was decided, courts have not drawn any such limitation from that decision.

The purpose of the requested discovery is to determine the scope of Defendants' wrongful conduct and, thus, the scope of the remedy required by a preliminary injunction. While discovery sought via expedited discovery may ultimately assist any party in the merits of litigation (similar to the discovery requested in *Ayyash*), the narrow and discrete purpose of the NRA's requested discovery warrants granting the NRA's request for expedited discovery. The requests to DFS and Cuomo will directly assist the Court and the NRA in determining which financial institutions have been the focus of Defendants' censorship campaign, the lines of communication employed by Defendants, and the extent to which financial institutions and insurers sought to appease DFS in

---

[1] Preliminarily, Defendants' first argument—that the mere filing and pendency of a motion to dismiss justifies denial of expedited discovery—is moot in light of the Court's denial of the motion to dismiss. Accordingly, the Court need not address the first point set forth in Defendants' response to the Motion.

[2] 233 F.R.D. 325 (S.D.N.Y. 2005).

1

response to its April 2018 Letters. For example, by requesting from Cuomo documents and information exchanged with financial institutions relating to the financial institutions' business relationships with the NRA, we can determine the magnitude of his involvement in attempts to censor the NRA. Similarly, the request to Cuomo for documents in his possession related to adverse actions taken by DFS against financial institutions in business relationships with the NRA will provide insight concerning the conspiracy between Cuomo and Vullo.

Defendants point to a single request for documents from DFS to argue that the NRA is seeking broad, merit-based discovery. However, the NRA's request for documents and communications relating to *a single document* published less than a year ago is not over broad and cannot negate the NRA's showing of reasonableness and good cause.

**B.     Defendants' Arguments Fail To Rebut The NRA's Entitlement To Discovery Under The *Notaro* Standard.**

Defendants cannot overcome the NRA's entitlement to expedited discovery even under the disfavored and more stringent *Notaro* standard. As described in the Motion, each of the *Notaro* elements are present here and warrant granting the NRA expedited discovery.

    **1.     The NRA has shown some probability of success on the merits on its claims.[3]**

Under *Notaro*, the NRA need only show some "probability of success" on the merits of its claims.[4] In lieu of addressing the NRA's arguments regarding its probability of success on the merits in its response, Defendants incorporated their motion to dismiss in its entirety and argue that the NRA's First Amendment and Equal Protection claims fail because: (1) the Consent Orders

---

[3] In support of showing some probability of success on the merits, the NRA incorporates the arguments from its memorandum of law in opposition to motion to dismiss. *See* Dkt. No. 48.

[4] *See Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

punish violations of law; (2) the Press Releases and Guidance Letters are protected government speech; (3) the NRA failed to allege particularized instances of stifled speech; and (4) the NRA lacks standing to allege an Equal Protection claim. However, each of their arguments must be rejected for the reasons outlined in Judge McAvoy's decision on Defendants' Motion to Dismiss.[5]

Specifically, Judge McAvoy rejected Defendants' arguments, holding that (1) Defendants' statements and conduct, including the Press Releases, Guidance Letters, Consent Orders, and backroom exhortations, constituted impermissible threats to employ coercive state power to stifle protected speech;[6] (2) "actual chilled speech is not necessary to make out a plausible First Amendment claim;"[7] and (3) the NRA alleged sufficient injury to confer standing to bring an equal protection claim for damages from Defendants' past selective enforcement action.[8]

Accordingly, Defendants' arguments that the NRA cannot show some probability of success on its remaining freedom of speech and equal protection claims are without merit and must be rejected.

---

[5] *See* Decision & Order, entered November 6, 2018 ("Order") (Dkt. No. 56).

[6] *See* Order, at 21 ("When Defendants' statements and alleged conduct is examined in its totality, there are sufficient allegations to state plausible freedom-of-speech claims"); Order, at 24 ("[t]he backroom exhortations combined with the timing of the publically announced Consent Orders provides *strong support* for Plaintiff's claims") (emphasis added); Order, at 26 ("the Guidance Letters and Cuomo Press Release, when read together and in the context of the alleged backroom exhortations and the public announcements of the Consent Orders, constituted implicit threats of adverse action against financial institutions and insurers that did not disassociate from the NRA").

[7] Order, at 26 (Dkt. No. 56) ("'Chilled speech is not the *sine qua non* of a First Amendment claim.'") (quoting *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)).

[8] *See* Order, at 47-8 ("the NRA suffered concrete and particularized injury by, among other things, losing royalty amounts owed to it under its contract with Lockton and experiencing increased costs associated with the potential development of new NRA-endorsed insurance programs not through Lockton, Chubb, or Lloyd's").

## 2. **Having *some* monetary harm does not negate the noncompensable damages arising from Defendants' unconstitutional conduct.**

Defendants argue that, so long as a party alleges monetary harm, the party cannot be irreparably harmed, even if certain of the harm suffered is not compensable. However, this is not what the law requires for a showing of irreparable harm for a constitutional violation.[9]

Instead, the Second Circuit has applied the presumption of irreparable harm to violations of the Free Speech and Equal Protection Clauses.[10] Although the Second Circuit has "suggest[ed] that at least in circumstances in which a plaintiff does not allege injury from a rule or regulation that *directly* limits speech, irreparable harm is not presumed"[11] in First Amendment cases, where, as here, a plaintiff "articulates a 'specific present objective harm or a threat of specific future harm,'" irreparable harm exists.[12] And even in cases where the governmental action *indirectly*

---

[9] *See Donohue v. Paterson*, 715 F. Supp. 2d 306, 315 (N.D.N.Y. 2010) (finding irreparable harm from a constitutional injury, even when the party sought monetary damages, so long as the violation carries noncompensable damages as well); *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983) (holding that irreparable harm can exist even when a party seeks monetary damages); *Heartland Trademarks, Ltd. v. Dr. Flax LLC*, 2017 WL 3278905, at *6 (N.D.N.Y. Aug. 1, 2017) (finding irreparable harm due to noncompensable damages even though the party also sought millions in damages); *Dentsply Sirona Inc. v. LIK Supply, Corp.*, 2016 WL 3920241, at *7 (N.D.N.Y. July 15, 2016) (same).

[10] *See Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 744–45 (2d Cir. 2001) (equal protection); *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000) (free speech); *Beal v. Stern*, 184 F.3d 117, 123–24 (2d Cir. 1999) (same); *Bery v. City of New York*, 97 F.3d 689, 693–94 (2d Cir. 1996) (same); *see also N.Y. State Bar Ass'n v. Reno*, 999 F. Supp. 710, 715 (N.D.N.Y. 1998) (McAvoy, D.J.) (explaining that when the threat of government sanctions is imminent, the court must presume First Amendment deprivation); *N.Y. Republican State Comm. v. Moore*, No. 89-CV-1064, 1989 WL 124206, at *3 (N.D.N.Y. Oct. 11, 1989) (McAvoy, D.J.) (acknowledging "the generally accepted principle that when an alleged deprivation of a constitutional right is involved no further showing of irreparable harm is necessary").

[11] *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (emphasis added).

[12] *See Bronx Household of Faith v. Bd. of Educ. of N.Y.C.*, 331 F.3d 342, 350 (2d Cir. 2003) (quoting *Laird v. Tatum*, 408 U.S. 1, 14 (1972)).

causes the First Amendment injury, a plaintiff need only "demonstrate that the injunction will prevent the feared deprivation of free speech rights," in order to establish irreparable harm.[13]

Furthermore, in the context of a First Amendment retaliation claim, a plaintiff need only "demonstrate a causal link between the [retaliatory actions] and the First Amendment violations."[14] Here, the NRA has shown that Defendants' actions (e.g., coercing banks and insurers into avoiding business with the NRA) were caused by Defendants' viewpoint discrimination against the NRA's speech on gun control issues.[15] Thus, even if no *presumption* of irreparable harm arises from the First Amendment violations in this case, the NRA has demonstrated irreparable harm. In fact, the presumption of irreparable harm *does* attach to the allegation of an equal protection violation, regardless of the merits of the allegation.[16]

In addition to the irreparable harm that is endemic to constitutional violations, the NRA will continue to suffer irreparable injury absent an injunction because Defendants' implicit

---

[13] *Bronx Household of Faith*, 331 F.3d at 350.

[14] *Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 349 F. Supp. 2d 355, 366 (N.D.N.Y. 2004).

[15] *See* Order, at 16 (holding that the "Guidance Letters and the Cuomo Press Release *indisputably* are directed at the NRA and similar groups based on their 'gun promotion' advocacy") (emphasis added); *see also* Order, at 24-25 (holding that "the Cuomo Press Release and the Guidance Letters, when read objectively and in the context of DFS's regulatory enforcement actions against Chubb and Lockton and the backroom exhortations, could reasonably be interpreted as threats of retaliatory enforcement against regulated institutions that do not sever ties with the NRA"); at 26 (finding that the NRA's allegations "sufficiently support the contention that New York insurers and financial institutions took specific actions in response to their perceptions of a threat" by Defendants).

[16] *See Brewer*, 212 F.3d at 744–45; *Able v. United States*, 88 F.3d 1280, 1289 (2d Cir. 1996) ("[I]n conducting our 'irreparable injury' inquiry, we must assume, *arguendo*, unconstitutional government action . . . .").

censorship regime is designed—and has already begun—to cut off the NRA's access to critical financial and insurance services.[17]

### 3. The potential harm to the NRA is greater than the burden expressed by Defendants.

Defendants' alleged harm from responding to expedited discovery is minimal, at best, and is far less than the harm to the NRA caused by Defendants' ongoing violation of the NRA's constitutional rights.[18] Despite Defendants' claim of significant burden in responding to the discovery requests, they have made no effort to explain why producing documents on an expedited basis on narrow issues from a period covering only a few months creates such a burden.[19] Additionally, discovery commenced on November 21, 2018, and Defendants are already obligated to respond to outstanding discovery requests by December 21, 2018.

Furthermore, Defendants present no evidence, through an affidavit or otherwise, supporting their blanket assertion that the discovery the NRA seeks somehow interferes with an ongoing investigation. The NRA is seeking information via six narrowly tailored document requests from Governor Cuomo (no interrogatories and no deposition), eight document requests from DFS, and four depositions of DFS's employees, including Vullo. Defendants have not made

---

[17] *See, e.g.*, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 238 (7th Cir. 2015) (finding irreparable harm existed because the sheriff's "campaign of suffocation would be bound to cause irreparable injury to Backpage," even though only two credit card companies stopped doing business with Backpage.com at that point).

[18] The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[19] Defendants' reliance on *Attkisson v. Holder* is surprising given that the Court in that case discussed that requiring a defendant to only respond to a few discovery requests supported granting expedited discovery. *See* 113 F. Supp. 3d 156, 165 (D.D.C. 2015) (rejecting request for expedited discovery where, instead of seeking only a few discovery requests, plaintiffs sought responses to, among other things, interrogatories containing 53 discrete subparts).

6

any showing of how seeking the requested information from Cuomo interferes with an investigation that, at least as of now, Defendants seem to argue he is not personally involved in. With respect to DFS, the NRA is only seeking limited expedited discovery targeted at identifying who DFS may be coercing into terminating their business relationship with the NRA, responses to and reasoning behind the April 2018 Letters and the Cuomo Press Release (which is separate and distinct from DFS' investigation), DFS's reason for initiating the investigation, and documents regarding the two provisions in the Consent Orders requiring Chubb and Lockton to stop doing business with the NRA even if that business complies with the Insurance Law. None of these requests interfere with an ongoing investigation or jeopardize law enforcement officers' safety.

Rather, the requested discovery is essential to further establish the NRA's irreparable harm for its contemplated preliminary injunction motion. Accordingly, given Defendants' failure to demonstrate that the burden of responding to the limited discovery outweighs the NRA's irreparable harm caused by Defendants' ongoing constitutional violations, the Court should grant the NRA's requested relief.

**C.     Vullo Is Not Immune From Providing Testimony Because She Has Personal Knowledge Of The Subject Matter Of This Action.**

A government official is not immune from testifying and may be compelled to do so in circumstances where that official has personal knowledge of the subject matter of the litigation in question and that information cannot be obtained from another source.[20] In particular, courts have

---

[20] *See Kingsley v. N.Y.C. Police Dept.*, 2008 WL 5215648, at *2 (S.D.N.Y. Dec. 9, 2008) (explaining that the deposition of a senior government official will be permitted if it is necessary to obtain relevant information that cannot be obtained from any other source and the deposition would not significantly interfere with the ability of the official to perform his government duties); *Marisol A. v. Giuliani*, 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998) (same); *Sanstrom v. Rosa*, 1996 WL 469589, at *5 (S.D.N.Y. Aug. 16, 1996) (permitting the deposition of

permitted depositions of high-ranking officials when the officials were personally involved in the events giving rise to the litigation.[21]

Here, Defendants cannot dispute that Vullo has personal knowledge of the subject matter of this action. Among other irrefutable facts directly bearing on this litigation, Vullo is the leader of DFS, signatory of the consent orders, and author of the April 2018 Letters.

Furthermore, this is not a case where a party is merely seeking to depose the head of an agency about actions taken by the agency. Instead, here the NRA is seeking to depose Vullo because of what *she said* and what *she did*. This is information wholly within Vullo's personal knowledge. The NRA cannot ascertain this information absent Vullo's testimony, nor could it adequately pursue preliminary injunctive relief without developing an understanding as to the breadth of Vullo's personal knowledge. The facts and circumstances at hand show that Vullo is not immune from being deposed in this action. As a result, the NRA is entitled to her testimony.

---

former Governor Cuomo because he possessed information necessary to the case that could not reasonably be obtained by other discovery devices).

[21] *See Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (finding that that exceptional circumstances exist if "'the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.'"); *Lederman v. Guiliani*, 2002 WL 31357810, at *1-2 (S.D.N.Y. Oct. 17, 2002) (allowing depositions of high ranking officials who personally participated in the acts alleged in the underlying complaint); *United States v. City of New York*, 2009 WL 2423307 (S.D.N.Y. Aug. 5, 2009) (allowing deposition of Mayor Bloomberg where he was personally involved in the events at issue in the litigation); *Gibson v. Carmody*, 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991) (stating that "depositions of present and former government officials at the level of Police Commissioner should not lightly be granted" but allowing the Commissioner to be deposed based on, *inter alia*, his personal participation in the disciplinary action); *Ebbert v. Nassau Cnty.*, 2007 WL 674725, at *5 (E.D.N.Y. Mar. 5, 2007) (stating that depositions of high-ranking officials were allowed "[w]here the government official was personally involved in the event(s) giving rise to the litigation."); *Boudouris v. Cnty. of Nassau*, 2016 WL 4288645 (E.D.N.Y. Aug. 15, 2016) (same).

## II. CONCLUSION

For the foregoing reasons, the NRA respectfully requests that this Court grant the NRA's request for expedited discovery and establish a discovery and briefing schedule for the NRA's forthcoming motion for preliminary injunction.

Dated: November 26, 2018                    Respectfully submitted,

By:        */s/ William A. Brewer III*
William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Stephanie L. Gase (Bar No. 700205)
sgase@brewerattorneys.com
Sarah B. Rogers (Bar No. 700207)
sbr@brewerattorneys.com
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

Charles J. Cooper*
ccooper@cooperkirk.com
Michael W. Kirk*
mkirk@cooperkirk.com
J. Joel Alicea*
jalicea@cooperkirk.com
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington D.C., 20036
Telephone:  (202) 220-9660

*appearing *pro hac vice*

**ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

## CERTIFICATE OF SERVICE

I certify that on November 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, including:

Adrienne Kerwin
Assistant Attorney General
New York State Attorney General's Office
Albany Office
The Capitol Albany, New York  12224-0341

*ATTORNEY FOR DEFENDANTS ANDREW M. CUOMO,
MARIA T. VULLO, AND THE NEW YORK STATE
DEPARTMENT OF FINANCIAL SERVICES*

                                                  */s/  Stephanie L. Gase*
                                                    Stephanie L. Gase