UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATIONAL RIFLE ASSOCIATION OF AMERICA,

                              *Plaintiff*,

              -against-                                      18-CV-0566

ANDREW CUOMO, both individually and in his official            TJM/CFH
capacity; MARIA T. VULLO, both individually and in her
official capacity; and THE NEW YORK STATE
DEPARTMENT OF FINANCIAL SERVICES,

                              *Defendants*.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT IN PART UNDER FRCP 12(C)

                            BARBARA D. UNDERWOOD
                            Attorney General of the State of New York
                            Attorney for Defendants Andrew M. Cuomo,
                                Maria T. Vullo and NYS Department of
                                Financial Services
                            The Capitol
                            Albany, New York 12224
                            Telephone:  (518) 776-2608
                            Fax:  (518) 915-7738 (Not for service of papers)

Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154

Helena O. Pederson
Assistant Attorney General, of Counsel
Bar Roll No. 520491

                                        Date: December 19, 2018

# Table of Contents

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ..................................................................................................................... 2

      POINT I ...................................................................................................................... 3

            DFS IS NOT A PROPER DEFENDANT IN A CLAIM UNDER 42 USC
            § 1983 ............................................................................................................... 3

      POINT II .................................................................................................................... 4

            ALL CLAIMS FOR MONEY DAMAGES ARE BARRED AS
            AGAINST DFS AND GOVERNOR CUOMO AND
            SUPERINTENDENT VULLO IN THEIR OFFICIAL CAPACITIES .................. 4

      POINT III ................................................................................................................... 5

            THE AMENDED COMPLAINT FAILS TO ALLEGE THE PERSONAL
            INVOVLEMENT OF GOVERNOR CUOMO ON THE NRA'S
            REMAINING SELECTIVE ENFORCEMENT CLAIM ....................................... 5

      POINT IV ................................................................................................................... 7

            SUPERINTENDENT VULLO IS ENTITLED TO ABSOLUTE
            IMMUNITY ON THE SELECTIVE ENFORCEMENT CLAIM ........................ 7

      POINT V .................................................................................................................. 10

            ADDITIONAL GROUNDS REQUIRING THE DISMISSAL OF
            COUNT 4 .......................................................................................................... 10

            A.  THE AMENDED COMPLAINT FAILS TO STATE A SELECTIVE
            ENFORCEMENT CLAIM FOR PAST MONEY DAMAGES ........................... 10

            B.  GOVERNOR CUOMO AND SUPERINTENDENT VULLO ARE
            ENTITLED TO QUALIFIED IMMUNITY ON THE SELECTIVE
            ENFORCEMENT CLAIM ............................................................................... 13

CONCLUSION ................................................................................................................ 15

## PRELIMINARY STATEMENT

In October 2017, the New York State Department of Financial Services ("DFS")—the agency responsible for enforcing the New York State Insurance Law[1] ("Insurance Law")—commenced an investigation that ultimately discovered that certain insurance policies being sold in New York and marketed by the National Rifle Association ("NRA") violated multiple provisions of the Insurance Law.  Dkt. Nos. 37-4 at pp. 8-13; 37-5 at pp. 6-7.  In the regular course of its business, DFS took enforcement actions against Chubb (an insurer underwriting the policies) and Lockton (the broker selling the policies), which resulted in Consent Orders that, *inter alia*, terminated several insurance programs offered to NRA members, for which the NRA was receiving financial compensation.  Dkt. Nos. 37 at ¶¶ 52-53; 37-4; 37-5.

The Amended Complaint in this action has been substantially limited by the Court's November 6, 2018 Decision and Order, Dkt. No. 56, which granted in part the Defendants' motion to dismiss the Amended Complaint under FRCP 12(b)(6).  Dkt. No. 40.  The November order dismissed Counts 3, 5, 6 and 7 of the Amended Complaint in their entirety, and dismissed Count Four of the Amended Complaint except as to a discreet claim for past money damages associated with the Lockton Consent Order.  Dkt. No. 56.  As a result, only Plaintiff's First Amendment free speech claims (Counts 1 and 2) and their selective enforcement claim seeking past money damages (a fraction of Count 4) remain to be litigated.  In this motion, Defendants are <u>not</u> seeking to relitigate any of the legal arguments that were asserted in its previously-decided motion to dismiss.

Rather, Defendants now move under Rule 12(c) to dismiss Count 4 in its entirety.  As noted above, the only portion of Count 4 that survived the Court's November 6, 2018 Decision and Order is the NRA's claim for past money damages against DFS, Superintendent Vullo, and Governor Cuomo for the alleged selective enforcement of the Insurance law.  As detailed in this memorandum, this claim for damages fails as a matter of law for reasons unrelated to the standing

challenge that Defendants raised to Count 4 in their motion to dismiss.  First, as a state agency, DFS is not a "person" subject to liability under 42 U.S.C. §1983.  Second, money damages against DFS, and Governor Cuomo and Superintendent Vullo in their official capacities, are barred by the Eleventh Amendment.  Third, the Amended Complaint fails to allege any personal involvement on the part of Governor Cuomo in the enforcement proceeding against Lockton, or the resulting Consent Order.  Fourth, the doctrine of absolute immunity shields Superintendent Vullo from liability under Plaintiff's selective enforcement claim.  Fifth, the Amended Complaint fails to state a selective enforcement claim under the equal protection clause.  Finally, Governor Cuomo and Superintendent Vullo are entitled to qualified immunity on the NRA's selective enforcement claim.  Defendants also move under Rule 12(c) to dismiss DFS from Counts 1 and 2, as DFS is not a "person" subject to liability under 42 U.S.C. §1983.

It is important to note that this motion does not resolve all of the outstanding claims in the case.  If this motion is granted, the NRA's First Amendment claims raised in Counts 1 and 2 against Governor Cuomo and Superintendent Vullo will remain.

## ARGUMENT

At the close of pleadings, a request for dismissal for failure to state a claim may be brought as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  See Maggette v. Dalsheim, 709 F.2d 800, 801 (2d Cir 1983).  The standard for evaluating a Rule 12(c) motion is the same as that for a motion to dismiss under Rule 12(b)(6).  Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir 1998); Kaminski v. Comm'r of Oneida County Dep't of Soc. Servs., 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (citation omitted).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Mere "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action do not suffice, nor does a complaint that makes "naked assertion[s]" devoid of "further factual enhancement." Id.

There are 5 defendants in this case: DFS, Governor Cuomo in his official capacity; Governor Cuomo in his individual capacity; Superintendent Vullo in her official capacity; and Superintendent Vullo in her individual capacity.  As discussed below, the NRA cannot sustain a claim for money damages against any of these five defendants for the selective enforcement claim in Count 4 because:  (1) DFS is not a proper defendant under 42 U.S.C. § 1983; (2) money damages against DFS, Governor Cuomo in his official capacity, and Superintendent Vullo in her official capacity are barred by the Eleventh Amendment; (3) the Amended Complaint fails to allege the personal involvement of Governor Cuomo (in his individual capacity) in the alleged selective enforcement of the Lockton consent order; and (4) Superintendent Vullo (in her individual capacity) is entitled to absolute immunity on the selective enforcement claim.  Moreover, there are two additional reasons why Count 4 should now be dismissed in its entirety: the Amended Complaint fails to state a cognizable equal protection claim for past money damages; and Governor Cuomo and Superintendent Vullo are entitled to qualified immunity on the selective enforcement claim.

## POINT I

### DFS IS NOT A PROPER DEFENDANT IN A CLAIM UNDER 42 USC § 1983

Section 1983 provides, in relevant part, that

> [e]very **person** who, under color of state law…subjects, or causes to be subjected, any citizen of the United Stated…to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. §1983 (emphasis added).  The law is clear that DFS is not a "person" under §1983.  Will v. Michigan Dep't.  of the State Police, 491 U.S. 58, 71 (1989) (the state is not a "person" under 42 USC §1983); Cunningham v. DOCS, 2009 U.S. Dist. LEXIS 42778, *5 (S.D.N.Y. May 20, 2009) (an agency of New York State is not a "person" under 42 U.S.C. §1983).  Therefore, as Count 4 continues to seek damages from DFS under Section 1983, the claim (with respect to DFS) should be dismissed.  For this exact reason, DFS should also be dismissed from Counts 1 and 2 of the Amended Complaint.

## POINT II

### ALL CLAIMS FOR MONEY DAMAGES ARE BARRED AS AGAINST DFS AND GOVERNOR CUOMO AND SUPERINTENDENT VULLO IN THEIR OFFICIAL CAPACITIES

The Eleventh Amendment of the United States Constitution bars suits against New York State unless it has consented to be sued, or federal legislation has overridden the State's sovereign immunity.  Will, 491 U.S. at 64.  This immunity also extends to state officers sued in their official capacities.  Mullin v. P&R Educ. Servs., 942 F.Supp. 110, 111-112 (E.D.N.Y. 1996).  The State has not consented to suit here, and plaintiffs can point to no federal legislation that overrode the State's sovereign immunity.  Therefore, the Eleventh Amendment bars all claims for money damages against DFS and Governor Cuomo and Superintendent Vullo in their official capacities.  Dube v. State Univ. of N.Y., 900 F.2d 587, 594 95 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991).  As Count 4 continues to seek damages under Section 1983 from Governor Cuomo and

Superintendent Vullo in their official capacities, the claim (with respect to Governor Cuomo and Superintendent Vullo) should be dismissed.

## POINT III

### THE AMENDED COMPLAINT FAILS TO ALLEGE THE PERSONAL INVOVLEMENT OF GOVERNOR CUOMO ON THE NRA'S REMAINING SELECTIVE ENFORCEMENT CLAIM

Claims against officials in their individual capacities for money damages require allegations of personal involvement by the named defendants in the alleged unconstitutional conduct. Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013); Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). This requirement applies with equal force to Plaintiff's selective enforcement claim in Court Four of the Amended Complaint. See Casciani v. Nesbitt, 659 F.Supp.2d 427, 454 (W.D.N.Y. 2009). An "individual cannot be held liable for damages under Section 1983 merely because he [holds] a high position of authority." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). "Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law." Rodrigues v. Inc. Vill. Of Mineola, 2016 U.S. Dist. LEXIS 187859, *8 (E.D.N.Y. June 16, 2016) (citing Johnson v. Barney, 360 F.App'x 199, 201 (2d Cir. 2010)).

The Amended Complaint does not include any factual allegations sufficient to allege Governor Cuomo's personal involvement in the alleged selective enforcement of the Lockton Consent Order. Instead, the NRA merely makes passing and conclusory allegations throughout the Amended Complaint that Governor Cuomo "directed" Superintendent Vullo to take certain actions, see e.g., Dkt. No. 37 at ¶ 85, or acted together with Superintendent Vullo. Id. at ¶¶ 20, 61. Indeed, the allegations in the Amended Complaint relate to *DFS's* investigation into Carry Guard, and other affinity policies administered by Lockton for the NRA, and focus only on alleged actions

of DFS, Dkt. No. 37 at ¶¶ 34-37, 54-60, and specifically characterize the NRA's claim as "DFS's selective enforcement" of the Insurance Law.  Id. at ¶ 60.

This court (Judge D'Agostino) has previously ruled that allegations such as these are insufficient to state a claim of selective enforcement.  The NRA's conclusory "directed" allegations are akin to those in the complaints in a number of cases brought in this court challenging the constitutionality of a decision to increase the percentage of contributions that state employees are required to pay to receive health insurance benefits after retirement.  See e.g., Roberts v. New York, No. 1:12-CV-0046 (MAD/CFH), 2015 U.S. Dist. LEXIS 34692 (N.D.N.Y. March 20, 2015) (collectively with its companion cases, *infra* n. 1, the "NYSHIP cases").[1]

In the NYSHIP cases, as here, plaintiffs' complaints failed to include allegations that Governor Cuomo was personally involved in the alleged unconstitutional conduct.  See Roberts, 2015 U.S. Dist. LEXIS 34692 at **13-15.[2]  In granting a FRCP 12(c) motion to dismiss, the court, in those cases, held that conclusory allegations that Governor Cuomo (1) "approved and directed" the implementation of increased rates, see e.g., Roberts, 2015 U.S. Dist. LEXIS 34692 at **11-12, and (2) "directed" the Civil Service Commissioner and Director of the Budget to implement reduced health insurance benefits with a corresponding increase in rates of contribution, id. at 12, were insufficient, as a matter of law, to allege that Governor Cuomo was personally involved in the alleged constitutional violation.  Id. at **14-15.  Additionally, the court in the NYSHIP cases

---

[1] See also, PBA of the N.Y. State Troopers v. New York, 1:11-CV-1526 (MAD/CFH), 2015 U.S. Dist. LEXIS 34685 (N.D.N.Y. March 20, 2015); N.Y.S. Law Enforcement Officers Union Council 82 v. Cuomo, 1:11-CV-1525 (MAD/CFH), 2015 U.S. Dist. LEXIS 34698 (N.D.N.Y. March 20, 2015); N.Y.S. Police Investigators Ass'n v. N.Y., 1:11-CV-1527 (MAD/CFH), 2015 U.S. Dist. LEXIS 34686 (N.D.N.Y. March 20, 2015); Kuritz v. New York, 1:11-CV-1529 (MAD/CFH), 2015 U.S. Dist. LEXIS 34689 (N.D.N.Y. March 20, 2015); Kent v. New York, 1:11-CV-1533 (MAD/CFH), 2015 U.S. Dist. LEXIS 34688 (N.D.N.Y. March 20, 2015); Donohue v. New York, 1:11-CV-1530 (MAD/CFH), 2015 U.S. Dist. LEXIS 34699 (N.D.N.Y. March 20, 2015).

[2] See also, PBA of the N.Y. State Troopers, 2015 U.S. Dist. LEXIS 34685 at **11-13; Law Enforcement Officers Union Council 82, 2015 U.S. Dist. LEXIS 34698 at **10-13; N.Y.S. Police Investigators Ass'n, 2015 U.S. Dist. LEXIS 34686 at **10-13; Kuritz, 2015 U.S. Dist. LEXIS 34689 at **11-13; Kent, 2015 U.S. Dist. LEXIS 34688 at **11-14; Donohue. 2015 U.S. Dist. LEXIS 34699 at **10-12.

stated that "although Plaintiffs assert that Defendant Cuomo somehow **directed** the other named

Defendants to engage in the alleged misconduct, the allegation is entirely speculative and the

complaint provides no basis for this assertion or how Defendant Cuomo allegedly engaged in this

conduct." Roberts, 2015 U.S. Dist. LEXIS 34692 at *14 (emphasis added).

The NRA's similar efforts in the Amended Complaint to impute the lawful enforcement of

the Insurance Law by DFS to Governor Cuomo by means of speculative and conclusory

allegations, fare no better.  The Amended Complaint's characterization of Superintendent Vullo

as Governor Cuomo's "longtime lieutenant," Dkt. No. 37 at ¶ 21, who Governor Cuomo has

worked with "since at least 2006" and nominated to serve as DFS Superintendent "approximately

ten years later," id. at n. 16, are simply insufficient as a matter of law to allege Governor Cuomo's

personal involvement in DFS's enforcement action against DFS.  In fact, these are precisely the

type of conclusory allegations that have been held by this court to be insufficient to allege personal

involvement on the part of the Governor.  See e.g., Roberts, 2015 U.S. Dist. LEXIS 34692 at *14.

Accordingly, the selective enforcement claim in Count 4 of the Amended Complaint

should be dismissed against Governor Cuomo in its entirety.

**POINT IV**

**SUPERINTENDENT VULLO IS ENTITLED TO ABSOLUTE IMMUNITY ON**
**THE SELECTIVE ENFORCEMENT CLAIM**

The selective enforcement claim against Superintendent Vullo in her individual capacity

should be dismissed on the ground of absolute immunity.  Absolute immunity "defeats a suit at

the outset," Imbler v. Pachtman, 424 U.S. 409, n. 13 (1976), and "gives 'public officials entrusted

with sensitive tasks a protected area of discretion within which to carry out their responsibilities.'"

Mangiafico v. Blumenthal, 471 F.3d 391, 394 (2d Cir. 2006) (quoting Barr v. Abrams, 810 F.2d

358, 361 (2d Cir. 1987)).  This immunity is afforded to "government officials whose duties are

7

deemed, as a matter of public policy, to require that protection to enable them to function without fear of undue interference or harassment." Id. The "nature of the function performed, not the identity of the actor who performed it," is the relevant inquiry for the application of absolute immunity. Forrester v. White, 484 U.S. 219, 229 (1988). It is clearly established that the prosecution of civil administrative proceedings is entitled to absolute immunity. See e.g., Verbeek v. Teller, 158 F.Supp.2d 267, 280-281 (E.D.N.Y. 2001) ("an executive official who initiates and brings administrative proceedings is protected by absolute immunity").

Citing the Supreme Court's decision in Butz v. Economou, 438 U.S. 478 (1978), the Second Circuit has observed that

> government attorneys who initiate administrative proceedings are, like prosecutors, absolutely immune from liability since "[t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution."

Mangiafico v. Blumenthal, 471 F.3d at 396 (quoting Butz, 438 U.S. at 515). Absolute immunity protects state officials engaged in the decision making relating to administrative proceedings because "the government attorney is serving as an advocate of the state, determining whether to commit the state's resources, reputation and prestige to litigation." Id.

The selective enforcement claim in the Amended Complaint is based on DFS's administrative enforcement actions against Lockton and the NRA. See Dkt. No. 37 at ¶¶ 54-61, 108-110. These allegations are nearly identical to the claims dismissed by the court in Knowlton v. Shaw on a motion to dismiss, where the plaintiff challenged consent orders resulting from enforcement proceedings brought by the Maine Bureau of Insurance. 704 F.3d 1, 3-4, 9 (1st Cir. 2013).

The First Circuit held that the defendant Deputy Superintendent of the Maine Bureau of Insurance was entitled to absolute immunity in connection with the enforcement proceedings that

8

resulted in consent orders.  Id. at 6, 9.  In explaining why the decision to enter into the consent

orders was covered by absolute immunity, the Court stated that

> [t]he discretion officials exercise in deciding which cases should move forward to
> further legal proceedings and which may be resolved with consent agreements
> "might be distorted if their immunity from damages arising from that decision was
> less than complete."

Id. at 7 (quoting Butz, 438 U.S. at 515).  Like Superintendent Vullo here, the Maine Deputy

Superintendent had "the duty and authority to enforce the [state's] insurance laws," Knowlton, 704

F.3d at 6, and "made a judgment call" that the consent orders "best address[ed] [the defendants']

violations of the…Insurance Code" instead of proceeding further with the enforcement

proceedings, and therefore was entitled to absolute immunity.  Id.

A similar conclusion is warranted here.  The allegations in the Amended Complaint itself,

and the contents of the Lockton Consent Order, establish that DFS, through Superintendent Vullo,

similarly entered into the Consent Order as part of the administrative enforcement action against

Lockton.  Dkt. No. 37 at ¶¶ 54-61.  Therefore, for the same reasons that absolute immunity

prohibited the claim against the defendant Deputy Superintendent in Knowlton, the selective

enforcement claim against Superintendent Vullo is barred by absolute immunity.

As noted above, the only portion of Count 4 that survived the court's November 6, 2018

Decision and Order is a claim for past money damages against Governor Cuomo and

Superintendent Vullo in their individual capacities.  Because Governor Cuomo had no personal

involvement in the alleged selective enforcement, as established in Point III, and because

Superintendent Vullo has absolute immunity on this claim, as established here, Count 4 should now be dismissed in its entirety.

## POINT V

## ADDITIONAL GROUNDS REQUIRING THE DISMISSAL OF COUNT 4

For the foregoing reasons, Count 4 should be dismissed in its entirety against each of the Defendants.  Yet, there are two additional grounds that require dismissal of Count 4.  As set forth immediately below, Count 4 should be dismissed because it fails to state a cognizable equal protection selective enforcement claim for past money damages.  And even if Count 4 did properly state a claim, it still would fail as both Governor Cuomo and Superintendent Vullo are protected from money damages by qualified immunity.  See Point V.B. *infra*.

A. THE AMENDED COMPLAINT FAILS TO STATE A SELECTIVE ENFORCEMENT CLAIM[3] FOR PAST MONEY DAMAGES

A plaintiff alleging a selective enforcement claim under the Equal Protection Clause must show that (1) "'[it] was treated differently from other similarly situated businesses'" and (2) "'such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  Wandering Dago, Inc. v. Destito, 879 F.3d 20, 40 (2d Cir. 2018) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007)).  Generally, a plaintiff must satisfy both elements to establish a selective enforcement claim.  LaTrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, 70 (2d Cir. 1999) (citing Zahra v. Town of Southold, 48 F.3d 674, 684 (2d Cir. 1995)); Mitchell v. City of Albany, No. 08-CV-871 (TJM), 2010 U.S. Dist. LEXIS 31426, *25 (N.D.N.Y.

---

[3] Equal protection (including claims for selective enforcement) under the New York State Constitution are analyzed using the same framework as claims under the federal Equal Protection clause.  Selevan v. New York Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009).  Therefore, the Plaintiff's state and federal equal protection claims should be dismissed on the same grounds.

March 31, 2010) (quoting <u>LaTrieste</u>, 188 F.3d at 70).

Here, the NRA fails to allege similarly situated comparators and, thus, on the pleadings, cannot establish the first element of a selective enforcement claim.  The level of similarity between a plaintiff and any comparators "must be extremely high."  <u>See</u> <u>Kamholtz v. Yates County</u>, No. 08-CV-6210, 2008 U.S. Dist. LEXIS 97985, *16 (W.D.N.Y. Dec. 3, 2008), <u>aff'd</u>, 350 F. App'x 589 (2d Cir. 2009).  Thus, while the NRA attempts to identify other organizations whose insurance programs, it claims, contain similar violations, <u>see</u> Dkt. No. 37 at ¶ 59, no rational jury could find that those other organizations are similarly situated. This is so because none of their alleged violations include insurance coverage for criminal liability resulting from the use of a firearm—a far more serious violation of the Insurance Law than those violations identified in the Amended Complaint.

Also fatal to Count 4 is the NRA's failure to plead that DFS had any knowledge of the purported violations by other organizations having affinity programs marketed by Lockton, which is a required element of a selective enforcement claim. <u>See</u> <u>LaTrieste</u>, 188 F.3d at 70 ("'[S]elective prosecution implies that a selection has taken place.'… Absent a showing that the [defendant] knew of other violations, but declined to prosecute them, [the plaintiff] would ordinarily be unable to show that it was treated selectively."), citing <u>United States v. Armstrong</u>, 517 U.S 456, 469, 470 (1996).  In other words, the NRA "must demonstrate that the defendant was aware of similarly-situated entities, and failed to take comparable action against them." <u>Bernstein v. Vill. of Wesley Hills</u>, 95 F. Supp. 3d 547, 571 (S.D.N.Y. 2015) (citing <u>Diesel v. Town of Lewisboro</u>, 232 F.3d 92, 104 (2d Cir. 2000)).  Other than its conclusory statements that Defendants acted "knowingly and willfully," Dkt. No. 37 at ¶¶ 108-109, the Amended Complaint is devoid of any allegations that DFS, Governor Cuomo or Superintendent Vullo had knowledge of the specific violations

11

identified in paragraph 59 of the Amended Complaint, see generally, Dkt. No. 37.

Furthermore, the NRA's claim that Lockton has not been compelled "to discontinue its purportedly unlawful conduct with respect to these clients," Dkt. No. 37 at ¶ 58, is misleading. The Lockton Consent Order clearly indicates that DFS is investigating violations by such clients of Lockton, as the Consent Order requires Lockton to report such violations to DFS within 60 days of its execution. See Dkt. No. 37-4 at ¶ 49. And, in any event, the "mere failure to prosecute other offenders" is not a sufficient basis for an equal protection claim." LaTrieste, 188 F.3d at 70 (quoting LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980)).

Thus, even accepting the truth of the NRA's allegations, the Amended Complaint fails to sufficiently allege that the NRA was singled out from similarly situated comparators on the basis of its political views. Thus, the NRA has failed to sufficiently allege the first element of a selective enforcement claim. LaTrieste, 188 F.3d at 70 (citation omitted).

Even assuming that the NRA has sufficiently alleged similarly situated comparators, the selective enforcement claim fails for an additional reason: the NRA fails to sufficiently allege that any differential treatment was intended to punish the exercise of the NRA's constitutional rights. As acknowledged by the court in its November 6 order, Dkt. No. 56, Lockton and Chubb admitted to violating the Insurance Law with respect to certain of their NRA programs, see id. at pp. 8-9, 22, 41, 64, 67, 68, 69. Accordingly, the NRA cannot state a selective enforcement claim because the conduct at issue (i.e., unlawful insurance programs) is not constitutionally protected.

Finally, while the NRA's unlicensed insurance activities and other violations of the Insurance Law are under investigation by DFS, that investigation remains ongoing and, to date, has not resulted in any enforcement action against the NRA. Thus, because the Amended Complaint fails to allege that the Insurance Law was enforced against the NRA at all, the NRA

12

necessarily fails to allege that it was treated differently under the Insurance Law than others similarly situated.  In addition to the reasons noted in Points III and IV, Count Four of the Amended Complaint should therefore be dismissed for its failure to plead a cognizable selective enforcement claim for past money damages.

    B.  <u>GOVERNOR CUOMO AND SUPERINTENDENT VULLO ARE ENTITLED TO QUALIFIED IMMUNITY ON THE SELECTIVE ENFORCEMENT CLAIM</u>

Even if Count 4 did plead a viable selective enforcement violation (and it does not), it still would fail as both Governor Cuomo and Superintendent Vullo are protected from money damages by qualified immunity.  Qualified immunity shields government officials performing discretionary functions from civil liability if it was objectively reasonable for the official to believe that her acts did not violate clearly established rights.  <u>Anderson v. Creighton</u>, 483 US 635, 639 (1987).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  <u>Taylor v. Barkes</u>, 575 U.S. ___, 135 S.Ct. 2042, 2044 (2015) (internal citation omitted).  The defense "serves important interests in our political system," <u>Sound Aircraft Servs., Inc. v. Town of E. Hampton</u>, 192 F.3d 329, 334 (2d Cir 1999), and ensures that damages suits do not "unduly inhibit officials in the discharge of their duties" by burdening individual officers with "personal monetary liability and harassing litigation."  <u>Anderson</u>, 483 U.S. at 638.  <u>See also</u> <u>Connell v. Signoracci</u>, 153 F.3d 74, 79 (2d Cir 1998).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law".  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

Governor Cuomo and Superintendent Vullo are entitled to qualified immunity with respect to the NRA's selective enforcement claims against them.  First, there is no dispute that DFS may enforce the Insurance Law and commence enforcement actions against individuals or organizations that violate the Insurance Law.  N.Y. Ins. Law. §§ 109, 1104, 2110; Fin Servs. Law

13

§§ 301, 309, 408.  Since, as detailed in the Lockton Consent Order, Lockton admitted to several violations of the Insurance Law, Governor Cuomo and Superintendent Vullo could have reasonably believed that the enforcement proceeding and resulting Consent Order was consistent with the law, and not in violation of the NRA's constitutional rights.  This is especially so because Defendants did not overlook potential violations by Lockton's other affinity insurance programs in proceeding against Lockton based on the violations in the NRA's Carry Guard program.  Rather, Defendants required Lockton to report any such violations as part of the Consent Order.

Second, there is no requirement, much less clearly established law, that a law enforcement agency prosecute all similar violations of the law by various parties simultaneously. Law enforcement is instead entitled to prioritize among violators.  The Amended Complaint nonetheless alleges that DFS enforced various provisions of the Insurance Law against Lockton, while other companies violating some overlapping provisions—though not the ban on insurance coverage for criminal liability resulting from the use of a firearm, *see* Point V.A.—have not faced similar enforcement proceedings.  Dkt. No. 37 at ¶ 59.  An analysis of whether a right was clearly established at the time of an alleged action, "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Hauen, 543 U.S. 194, 198 (2004). In other words, the appropriate inquiry here is not whether the constitutional right to be free from selective enforcement of the laws was clearly established at that level of generality, but whether it was clearly established that the alleged actions of the individual defendants violated that right. The NRA's allegations are, essentially, that they have a constitutional right to continue to violate the

Insurance Law, so long as other organizations are violating the law, too. That is simply not a reasonable or credible interpretation of established law.

Instead, the law is clear that a law enforcement official has discretion in deciding what violations of the law to prosecute, and when. LaTrieste, 188 F.3d at 70. Based on this clearly established legal principle, Governor Cuomo and Superintendent Vullo were entirely reasonable in first addressing Lockton's administration of Carry Guard – a product that provided insurance coverage for causing unjustified deaths with a firearm – and any other violations of the law discovered during its investigation of Carry Guard, before addressing the types of violations alleged by the NRA to have been committed by the American Optometric Association, Veterans of Foreign Wars and Moose International Inc. (allegedly referring to an insurer's AM Best rating, and receiving compensation based on actual premiums collected), and Professional Photographers of America (allegedly offering insurance to member for no cost, and receiving compensation based on actual premiums collected). Dkt. No. 37 at ¶ 59. For these reasons, Governor Cuomo and Superintendent Vullo are entitled to qualified immunity on the NRA's selective enforcement claim.

## CONCLUSION

For the reasons discussed above, Count 4 of the Amended Complaint should now be dismissed in its entirety and DFS should be dismissed from Counts 1 and 2 pursuant to Rule 12(c).

Dated:  Albany, New York
       December 19, 2018

                                          BARBARA D. UNDERWOOD
Attorney General of the State of New York
Attorney for Defendants Andrew M. Cuomo,
        Maria T. Vullo and NYS Department of
        Financial Services
The Capitol
Albany, New York  12224


By: _s/ Adrienne J. Kerwin_
Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone:  (518) 776-2608
Fax:  (518) 915-7738 (Not for service of papers)
Email: Adrienne.Kerwin@ag.ny.gov


TO:    Sarah Rogers, Esq.
        Stephanie L. Gase, Esq.
        William A. Brewer, Esq.
        Brewer Attorneys & Counselors
        750 Lexington Avenue, 14th Flr.
        New York, NY  10022

        Charles J. Cooper, Esq.
        J. Joel Alicea, Esq.
        Michael W. Kirk, Esq.
        Cooper & Kirk, PLLC
        1523 New Hampshire Ave., NW
        Washington, DC  20036