# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| Plaintiff, | § § | CIVIL CASE NO.  18-CV-00566-TJM-CFH |
| v. | § § | |
| ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, | § § § § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS THE AMENDED COMPLAINT IN PART UNDER FRCP 12(C)**

William A. Brewer III (Bar No. 700217)
Stephanie L. Gase (Bar No. 700205)
Sarah B. Rogers (Bar No. 700207)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

Charles J. Cooper*
Michael W. Kirk*
J. Joel Alicea*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington D.C., 20036
Telephone: (202) 220-9660
Facsimile: (202) 220-9601

*Appearing *pro hac vice*

ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................1

II. ARGUMENTS AND AUTHORITIES ...........................................................3

    A.    Legal Standard ..........................................................................................3

    B.    The NRA More Than Sufficiently Pleads An Equal Protection Claim Against Cuomo And Vullo In Their Individual Capacities. ....................3

          1.    The Amended Complaint Identifies Multiple Affinity-Insurance Programs Situated Similarly (Or Identically) To Those Of The NRA, Which Were Not Targeted By Defendants.........................................4

          2.    A Jury Could Plausibly Conclude, And Cuomo Has Openly Stated, That Defendants Intend To Injure The NRA And Inhibit Its Political Speech.........................................8

          3.    The NRA Adequately Alleges Cuomo's Personal Involvement...............10

    C.    Vullo Is Not Entitled To Absolute Immunity. ........................................13

          1.    Vullo's Conduct Was Investigative In Nature. ..........................14

          2.    Even If Vullo's Conduct Could Not Squarely Be Categorized As "Investigative," The Motion Fails To Demonstrate Vullo Engaged In A "Quasi-Judicial Function." ...................................16

          3.    Any Ambiguity Regarding Absolute Immunity Should Be Resolved After Discovery..........................................17

    D.    Neither Cuomo Nor Vullo Is Entitled To Qualified Immunity............18

          1.    Qualified Immunity Is A Fact-Specific Inquiry That Should Be Undertaken After Fact Discovery. ............................19

          2.    The Conduct Alleged By The NRA Was Not "Objectively Reasonable" But, Rather, Violated Clearly Established Constitutional Rights. .........................20

    E.    Defendants' Argument Regarding The Definition Of A Person Under Section 1983 Does Not Preclude The NRA's Claims Based On State Law Constitutional Violations. ..........................................24

III. CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altman v. J.C. Christensen & Assocs., Inc.*,
   786 F.3d 191 (2d Cir. 2015)..................................................................................................3

*Anderson v. Creighton*,
   483 U.S. 635 (1987)................................................................................................19, 21

*Anilao v. Spota*,
   2018 WL 6190519 (E.D.N.Y. Nov. 28, 2018).......................................................14

*Anilao v. Spota*,
   774 F. Supp. 2d 457 (E.D.N.Y. 2011) ..................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................3

*Bailey v. Pataki*,
   708 F.3d 391 (2d Cir. 2013)...........................................................................22, 23

*Balakrishnan v. Kusel*,
   2009 WL 1291755 (E.D.N.Y. May 8, 2009) ......................................................20, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................3

*Bernstein v. City of N.Y.*,
   2007 WL 1573910 (S.D.N.Y. May 24, 2007) .....................................................19

*Bertuglia v. City of N.Y.*,
   839 F. Supp. 2d 703 (S.D.N.Y. 2012)..................................................................18

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978)..............................................................................................24

*Burns v. Citarella*,
   443 F. Supp. 2d 464 (S.D.N.Y. 2006)..................................................................23

*Burns v. Reed*,
   500 U.S. 478 (1991)........................................................................................13, 14

*Bush v. City of Utica, N.Y.*,
   558 F. App'x 131 (2d Cir. 2014) .........................................................................23

*Casciani v. Nesbitt*,
   659 F. Supp. 2d 427 (W.D.N.Y. 2009) ........................................................................23, 24

*Catanzaro v. City of N.Y.*,
   486 F. App'x 899 (2d Cir. 2012) ..............................................................................9

*Chamberlain v. City of White Plains*,
   986 F. Supp. 2d 363 (S.D.N.Y. 2013)...................................................................11

*Children First Found., Inc. v. Martinez*,
   2005 WL 600283 (N.D.N.Y. Mar. 14, 2005) .......................................................20

*Cine SK8, Inc. v. Town of Henrietta*,
   507 F.3d 778 (2d Cir. 2007)......................................................................................4

*Cleavinger v. Saxner*,
   474 U.S. 193 (1985)................................................................................................16

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000)................................................................................21, 22

*DiBlasio v. Novello*,
   344 F.3d 292 (2d Cir. 2003)...................................................................................17

*Donohue v. New York*,
   2015 WL 1284395 (N.D.N.Y. Mar. 20, 2015) .....................................................13

*Field Day, LLC v. Cnty. of Suffolk*,
   2005 WL 2445794 (E.D.N.Y. Sept. 30, 2005) .....................................................23

*Global Network Commc'ns, Inc. v. N.Y.C.*,
   458 F.3d 150 (2d Cir. 2006)......................................................................................3

*Goel v. Bunge, Ltd.*,
   820 F.3d 554 (2d Cir. 2016)......................................................................................3

*Graham v. Long Island R.R.*,
   230 F.3d 34 (2d Cir. 2000)........................................................................................5

*Harlen Assocs. v. Inc. Vill. of Mineola*,
   273 F.3d 494 (2d Cir. 2001)......................................................................................5

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)..........................................................................................13, 19

*Hayes v. City of Amsterdam*,
   770 N.Y.S.2d 138 (2d Dep't 2003) .......................................................................19

*Hemphill v. Schott,*
    141 F.3d 412 (2d Cir. 1998)........................................................................................20

*Hickey v. City of N.Y.,*
    2002 WL 1974058 (S.D.N.Y. Aug. 26, 2002) ........................................................18

*Hill v. City of New York,*
    45 F.3d 653 (2d Cir. 1995).................................................................................14, 18

*Holmes v. Grubman,*
    568 F.3d 329 (2d Cir. 2009).......................................................................................3

*Imbler v. Pachtman,*
    424 U.S. 409 (1976).............................................................................................2, 19

*Jones v. Parmley,*
    465 F.3d 46 (2d Cir. 2006).................................................................................18, 19

*Kalina v. Fletcher,*
    522 U.S. 118 (1997)................................................................................................14

*Kent v. New York,*
    2015 WL 1284824 (N.D.N.Y. Mar. 20, 2015) ......................................................13

*Kirschner v. Zoning Bd. of Appeals of Inc. Village of Valley Stream,*
    924 F. Supp. 385 (E.D.N.Y. 1996) ...........................................................................5

*Knowlton v. Shaw,*
    704 F.3d 1 (1st Cir. 2013)...................................................................................15, 16

*Kuritz v. New York,*
    2015 WL 1285225 (N.D.N.Y. Mar. 20, 2015) ......................................................13

*LaTrieste Rest. and Cabaret Inc. v. Vill. of Port Chester,*
    40 F.3d 587 (2d Cir. 1994).................................................................................4, 23

*Massi v. Flynn,*
    254 F. App'x 84 (2d Cir. 2007) ...............................................................................23

*McKenna v. Wright,*
    386 F.3d 432 (2d Cir. 2004)...............................................................................19, 20

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007)................................................................................................24

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,*
    815 F. Supp. 2d 679 (S.D.N.Y. 2011)....................................................................5, 8

*Munoz v. City of N.Y.*,
2008 WL 464236 (S.D.N.Y. Feb. 20, 2008) ........................................................19

*N.Y. State Law Enforcement Officers Union Council 82, AFSCME, AFL-CIO v.*
*Cuomo*,
2015 WL 1281068 (N.D.N.Y. Mar. 20, 2015) .....................................................13

*N.Y. State Police Investigators Ass'n, Local 4 IUPA, AFL-CIO v. New York*,
2015 WL 1281491 (N.D.N.Y. Mar. 20, 2015) .....................................................13

*Norton v. Town of Brookhaven*,
33 F. Supp. 3d 215 (E.D.N.Y. 2014) ............................................................14, 15

*Patel v. Contemporary Classics of Beverly Hills*,
259 F.3d 123 (2d Cir. 2001) ...............................................................................3

*Pearson v. Callahan*,
555 U.S. 223 (2009) ..........................................................................................21

*Peters v. City of Buffalo*,
848 F. Supp. 2d 378 (W.D.N.Y. 2012) ..............................................................14

*Provost v. City of Newburgh*,
262 F.3d 146 (2d Cir. 2001) ..............................................................................11

*Roberts v. New York*,
2015 WL 1285723 (N.D.N.Y. Mar. 20, 2015) .....................................................13

*Sassi v. Dutchess Cnty.*,
2017 WL 4773320 (N.D.N.Y. Oct. 20, 2017) ......................................................3

*Saucier v. Katz*,
533 U.S. 194 (2001) ...............................................................................18, 21, 22

*Simon v. City of N.Y.*,
819 F. Supp. 2d 145 (E.D.N.Y. 2011) ................................................................14

*Smith v. Garretto*,
147 F.3d 91 (2d Cir. 1998) ................................................................................15

*In re Thelen LLP*,
736 F.3d 213 (2d Cir. 2013) ..............................................................................20

*Tower Props. LLC v. Vill. of Highland Falls*
2015 WL 4124499 (S.D.N.Y. July 7, 2015) .....................................................4, 10

*Walker v. Mendoza*,
2000 WL 915070 (E.D.N.Y. June 27, 2000) .......................................................19

*Wandering Dago, Inc. v. Destito*,
   879 F.3d 20 (2d Cir. 2018)...........................................................................4, 10

*Wayte v. United States*,
   470 U.S. 598 (1985).........................................................................................24

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .......................................................................15

*Wrobel v. Cnty. of Erie*,
   692 F.3d 22 (2d Cir. 2012).................................................................................9

*Young v. Selsky*,
   41 F.3d 47 (2d Cir. 1994) ...............................................................................17

**Statutes**

42 U.S.C. § 1983..................................................................................2, 18, 24, 25

Insurance Law § 2116 .......................................................................................5, 7

Insurance Law § 2117 ..........................................................................................7

Insurance Law § 2118 .......................................................................................7, 8

Insurance Law § 2122(a) ..................................................................................5, 7, 8

Insurance Law § 2324(a) ..................................................................................5, 7, 8

**Other Authorities**

U.S. Constitution First Amendment...............................................................9, 11, 21

U.S. Constitution Second Amendment .............................................................1, 4, 11

U.S. Constitution Fourteenth Amendment................................................................21

Fed. R. Civ. P.  12(b)(6)..................................................................................3, 20

Fed. R. Civ. P. 12(c) ...................................................................................1, 3, 20

N.Y. Fin. Serv. § 202(a) ....................................................................................17

N.Y. Fin. Serv. § 305 .......................................................................................17

Plaintiff the National Rifle Association of America (the "NRA") submits this memorandum of law in opposition to the motion to dismiss the amended complaint in part under FRCP 12(c) ("Motion") of defendants New York Governor Andrew Cuomo ("Cuomo"); Maria T. Vullo ("Vullo"); and the New York State Department of Financial Services ("DFS") (collectively, "Defendants"), as follows:

## I. <u>PRELIMINARY STATEMENT</u>

The central allegation in this case is that Defendants used DFS to coerce banks and insurers to sever ties with Second Amendment advocates—especially the NRA.  Defendants' campaign to suppress the NRA's speech encompassed multiple prongs: official regulatory "guidance" letters and press releases that urged banks and insurers to "take prompt action" to "discontinue their business arrangements" with the NRA lest they "send the wrong message;"[1] backroom exhortations reinforcing such threats;[2] and the selective enforcement of insurance regulations to *only* target insurance products associated with the NRA, while permitting materially identical products associated with other entities to continue being sold.[3]

The current Motion targets the NRA's Equal Protection allegations regarding the selective-enforcement prong of Defendants' censorship scheme.[4]  In essence, the Motion seeks to foreclose any inquiry regarding the reasons why DFS chose to enforce specific regulations solely against NRA-related products, while ignoring materially identical non-NRA products—and the role that Cuomo or Vullo played in such decision-making.  Defendants argue that Governor Cuomo was

---

[1] *See* Amended Compl., at ¶¶ 45-47.

[2] *See id.*, at ¶ 38.

[3] *See id.*, at ¶ 59.

[4] In August 2018, Defendants moved to dismiss the NRA's claims.  With respect to the core constitutional allegations that are the subject of this Motion, Defendants failed.

not personally involved in DFS's targeting the NRA; that Vullo was exercising quasi-judicial, prosecutorial discretion which should be immunized from judicial review; and that even if neither of the foregoing is true, Defendants reasonably believed their actions were lawful.  These arguments lack merit.[5]

As set forth below, several of the issues raised in the Motion are, at best, premature: for example, the fact-intensive inquiry regarding whether Cuomo and Vullo could reasonably have believed their actions were lawful should be resolved if not "at trial" then after discovery.[6] However, if the Court chooses to consider Defendants' arguments on their merits now, it should reject them.  The NRA presented allegations concerning Defendants' selective enforcement of the Insurance Law with respect to NRA-related policies—including by identifying nine other policies marketed under identical language, which DFS even admits they would have known about no later than early July 2018 that have not been subject to any enforcement action.[7]  The NRA pleaded Cuomo's direct personal involvement—citing, among other things, Cuomo's own public statements.[8] The NRA pleaded unconstitutional, discriminatory conduct commencing at the earliest stages of DFS's current insurance investigation, continuing with the issuance of subpoenas and other contemporaneous fact-gathering efforts, which are not quasi-judicial functions covered by absolute immunity.[9]  The NRA is entitled to discovery on its well-pleaded allegations.

Accordingly, the Court should deny the motion for judgment on the pleadings.

---

[5] In addition to the arguments summarized above, the Motion asserts that DFS is not a proper defendant under 42 U.S.C. § 1983.  This argument is addressed *infra* at II.E.

[6] *See Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976).

[7] *See* Amended Compl., at ¶¶ 36, 59.

[8] *See* discussion *infra* at II.B.3.

[9] *See* discussion *infra* at II.C.

## II. ARGUMENTS AND AUTHORITIES

### A.     Legal Standard

The standard under to Rule 12(c) is identical to that under Rule 12(b)(6).[10]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11]  All facts alleged must be taken as true, and every reasonable inference from those facts must be drawn in the non-moving party's favor.[12]  Because a motion to dismiss tests only the legal sufficiency of a plaintiff's claims, inquiry into their substantive merits—that is, whether the facts pleaded are actually true—is inappropriate.[13]  Thus, a claim may not be dismissed where the facts pleaded, taken as true and accompanied by every reasonable inference in plaintiff's favor, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

### B.     The NRA More Than Sufficiently Pleads An Equal Protection Claim Against Cuomo And Vullo In Their Individual Capacities.

Defendants concede that a selective-enforcement claim arises where—as here—a plaintiff is "treated differently from other[s] similarly situated" and "such differential treatment was based on . . . intent to inhibit or punish the exercise of constitutional rights, or a malicious, bad faith

---

[10] *See Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015); *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12] *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).

[13] *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (citing *Global Network Commc'ns, Inc. v. N.Y.C.*, 458 F.3d 150, 155 (2d Cir. 2006)).

[14] *Sassi v. Dutchess Cnty.*, 9:16-cv-1450, 2017 WL 4773320, at *3 (N.D.N.Y. Oct. 20, 2017) (D.J., McAvoy) (quoting *Ashcroft*, 556 U.S. at 678).

intent to injure[.]"[15]   The Amended Complaint amply alleges both elements, particularly when

afforded the reasonable inferences required at the motion-to-dismiss stage.[16]   Defendants ignored

pervasive, identical insurance-marketing conduct involving affinity groups who were not engaged

in so-called "gun promotion" speech.[17]   Contemporaneously, both in official regulatory

documents[18] and via social media,[19] they announced their intent to inhibit the political speech of

"gun promotion" groups in general, and the NRA in particular,[20] including by wielding the

regulatory power of the State.[21]     In the face of these allegations, all of Defendants' dismissal

arguments fail.

> **1.     The Amended Complaint Identifies Multiple Affinity-Insurance Programs
> Situated Similarly (Or Identically) To Those Of The NRA, Which Were Not**

---

[15] *See* Motion, at 10 (quoting *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 40 (2d Cir. 2018) (holding that plaintiff-vendor's equal protection rights were violated under selective enforcement theory, reversing summary judgment in defendant's favor, and granting summary judgment in *plaintiff's* favor); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007); *see also LaTrieste Rest. and Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994).

[16] *See, e.g.*, *Tower Props. LLC v. Vill. of Highland Falls*, 2015 WL 4124499, at *11 (S.D.N.Y. July 7, 2015) (denying motion to dismiss selective-enforcement claim, because: "At this stage of the proceedings, Plaintiff is entitled to the reasonable inference that the Mayor's statements are 'code words' for African-Americans, and that the Defendants' actions were motivated at least in part by the race of Plaintiff's clientele, particularly in light of the disparate treatment that Plaintiff alleges between itself and the White Establishments").

[17] *See* Amended Compl., at ¶¶ 36, 58-60 ("Several of the purported 'violations' assessed . . . concern programs commonly engaged in by numerous additional affinity associations that do not publicly advocate for Second Amendment rights and, therefore, are <u>not</u> targets of Defendants' unconstitutional conduct.").

[18] *See, e.g.*, *Id.*, at ¶ 47 ("The April 2018 Letters . . . invoke the 'risk management' obligations of recipients, and direct banks and insurers to 'take prompt actions to manage' purported 'reputational risks' arising from 'dealings with the NRA or similar gun promotion organizations.'").

[19] *See, e.g.*, *Id.*, at ¶ 51 (pleading that Cuomo publicly tweeted that the NRA "is an extremist organization" and "urg[ing] companies in New York State to revisit any ties they have to the NRA").

[20] *See id.*

[21] *See* Dkt. No. 48-1, at 6 ("the regulations NY put in place are working.  We're forcing the NRA into financial jeopardy. We won't stop until we shut them down.").

**Targeted By Defendants.**

The NRA has sufficiently alleged facts such that "it is plausible that a jury could ultimately determine that the comparators are similarly situated."[22]  Indeed, the Amended Complaint details nine different affinity groups operating in New York whose insurance programs closely resemble those of the NRA, in some instances containing language identical to the allegedly-violative language associated with the NRA programs: the New York State Bar Association, the New York City Bar, the National Association for the Self-Employed, the New York Association of Professional Land Surveyors, the New York State Psychological Association, AOAExcel, Moose, the VFW, and the PPA.[23]  Each of these programs has the same "practices and features referenced by DFS in its investigation of the NRA's affinity programs," yet DFS has not enforced the same provision of the Insurance Law against any of them.[24]

Specifically, DFS and Vullo contend that Lockton Affinity, with respect to the NRA-endorsed policies only, violated:  (1) Insurance Law § 2122(a)(1) by referring to the insurer's A.M. Best rating; (2) Insurance Law § 2324(a) by giving or offering to give no cost insurance to NRA members in good standing; and (3) Insurance Law § 2116 by compensating the NRA based on actual premiums collected.  However, Lockton Affinity, the administrator of the NRA-endorsed insurance policies, acts as administrator to dozens of other affinity-type insurance programs for

---

[22] *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001) ("As a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury"); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *Kirschner v. Zoning Bd. of Appeals of Inc. Village of Valley Stream*, 924 F. Supp. 385, 394 (E.D.N.Y.1996) (holding that issue of whether two shops are similarly situated is "classic" issue of fact precluding summary judgment).

[23] *See* Amended Compl., at ¶¶ 36, 59.

[24] *See id.*, at ¶ 37.

membership organizations like the NRA.[25]  These other membership affinity-type programs acted and continue to act in the exact same manner Defendants describe as violating these provisions of the Insurance Law.[26]

For example, Lockton administers an insurance program for the American Optometric Association through AOAExcel ("AOAExcel"), which it markets as having the "backing of a carrier that is rated A+ (Superior) by A.M. Best."[27]  It also administers affinity insurance plans for the Veterans of Foreign Wars ("VFW")[28] and Moose International Inc. ("Moose"), and claims that underwriters for both plans are "rated 'Excellent' or higher by A.M. Best."[29]  Lockton also administers an affinity insurance program that is offered at no cost to members of the Professional Photographers of America ("PPA").[30]  The NRA further alleges that Lockton compensates each of these companies based on actual premiums collected.[31]

---

[25] *See* notes 23-24, *supra*.  For example, Lockton Affinity administers affinity-type insurance programs for AOAExcel, VFW, Moose, and the PPA.  *See* notes 27-30, *infra*.

[26] Although Defendants contend that the NRA failed to allege Defendants had knowledge of these other programs, Lockton was required to disclose all such programs to Defendants by July 2, 2018, weeks before Plaintiff filed the Amended Complaint.  *See* Motion, at 12; Amended Compl., Ex. D, at 16.

[27] *See* Amended Compl., at ¶ 59; *Questions? We have answers for you.*, AOAINSURANCEALLIANCE, http://aoainsurancealliance.com/faq/ (last visited May 7, 2018).

[28] At least one of the insurance plans (for VFW) is marketed as being free for VFW members.

[29] *See* Amended Compl., at ¶ 59; VFW INSURANCE, https://vfwinsurance.com/life-insurance/#no-cost (last visited January 4, 2019); MOOSE INSURANCE PROGRAM, http://mooseinsuranceprogram.com/ (last visited May 7, 2018); *see also* New York City Bar, http://nycbarinsurance.com/ (last visited January 4, 2019); NATIONAL PROFESSIONAL GROUP, http://locktonmedicalliabilityinsurance.com/lockton/?_ga=2.122946883.934107171.1546630822 -365430447.1546630822 (last visited January 4, 2019); BROOKFIELD PROPERTIES, https://bprtenantinsurance.com/about-us/ (last visited January 4, 2019).

[30] *See* Amended Compl., at ¶ 59; INSURANCE FOR PPA, https://www.ppa.com/benefits/protection/basic-equipment-insurance (last visited January 4, 2019).

[31] *See* Amended Compl., at ¶ 59.

The publicly available evidence strongly suggests that Lockton was not barred from doing business in New York with any other affinity partner besides the NRA.  In fact, even to this day, the affinity insurance programs mentioned in the Amended Complaint continue to operate in a manner Defendants deemed "unlawful" for the NRA-endorsed affinity programs.[32]

Defendants insist that none of the above-referenced programs, administered by the same entity and containing the same language as the challenged NRA policies, can be similarly situated—because the comparator policies do not involve "insurance coverage for criminal liability resulting from the use of a firearm."[33]  But Defendants' argument misses the point: although certain provisions of the Insurance Law do, purportedly, restrict firearm-related coverage in the manner Defendants recite,[34] ***the Amended Complaint does not allege selective enforcement of any firearm-related insurance regulation***.[35]  Instead, as alleged in the Amended Complaint, the provisions selectively enforced by Defendants—Insurance Law Sections 2116, 2117, 2118, 2122(a)(1), 2122(a)(2), and 2324(a)—are agnostic regarding the content of the insurance at issue, and relate to the procurement and advertising of excess-line carriers.[36]  Defendants cite no case,

---

[32] *See Id.*; *FVW Post Insurance Program, Program Information*, VFW INSURANCE, http://vfwinsurance.com/wp-content/uploads/sites/29/2017/12/VFW_Post_Insurance_Information_Packet.pdf (last visited January 3, 2019); INSURANCE FOR PPA, https://www.ppa.com/benefits/protection/basic-equipment-insurance (last visited January 4, 2019).

[33] *See* Motion, at 11.

[34] For example, the Lockton Consent Order alleged a violation of Insurance Law § 2324(a) because Lockton "gave, or offered to give, a free one-year NRA membership if a person purchased the Carry Guard Program insurance policy, when the NRA membership benefit was not specified in the policy and exceeded $25 in market value."  *See* Dkt. No. 37-4, at ¶ 36.

[35] The NRA reserves the right to further amend its complaint to reflect selective enforcement of such regulations, if appropriate.

[36] *See* Insurance Law § 2116 (prohibiting compensation of an unlicensed insurance broker based on actual premiums collected); § 2117 (disallowing acting for or aiding an unauthorized insurer from providing coverage to New York residents that may not be offered in the New York State

and the NRA is aware of no case, where the enforcement of these provisions has considered—let alone hinged upon—the involvement of firearms.

Accordingly, because the key features of these other membership organization affinity programs are the same as relevant NRA-related policies, the NRA has alleged facts sufficient for a jury to plausibly determine that the comparators are similarly situated.[37]

### 2.   A Jury Could Plausibly Conclude, And Cuomo Has Openly Stated, That Defendants Intend To Injure The NRA And Inhibit Its Political Speech.

Defendants' own public statements make clear that their selective-enforcement actions were intended to injure the NRA because of its political views. As discussed in the Amended Complaint, in the April 19, 2018 press release, Cuomo urged regulated entities to consider whether their continued association with the NRA "sends the wrong message," and he announced that he had directed Vullo to issue the April 2018 Letters that expressly targeted the NRA.[38]  Cuomo has subsequently reiterated that the purpose for which Defendants selectively wielded DFS's regulatory power was to put "the gun lobby out of business" in New York.[39]  For her part, Vullo praised those DFS-regulated entities that had severed ties with the NRA to "realign their company's values," stating that they "demonstrat[e] that business can lead the way and bring about the kind of positive social change needed."[40]  Vullo's April 2018 Letters single out the NRA and

---

excess like market); § 2118 (imposing a duty to properly secure declinations from authorized insurers for each insured); § 2122(a)(1) (precluding referencing an insurer's financial condition by referring to its AM Best rating); § 2122(a)(2) (mandating that insurance producers shall not call attention to any unauthorized insurers); § 2324(a) (restricting, *inter alia*, offering membership with the purchase of an insurance policy when the benefit is not listed in the policy and exceeds $25 in market value).

[37] *See Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 697-99; note 33, *supra*.

[38] *See* Amended Compl., at ¶ 45; Dkt. No. 37-1, at 2.

[39] *See* Amended Compl., at ¶ 51; Dkt. No. 48-1, at 4.

[40] Dkt. No. 37-1, at 2-3.

other "gun promotion" organizations, again praising entities that had "severed their ties with the NRA" as examples of "corporate social responsibility."[41]  Defendants' statements were followed up with the selective enforcement at issue in this case.[42]  The NRA is entitled to the same reasonable inference, with respect to selective enforcement, that led this Court to sustain the NRA's First Amendment claims: Defendants' express animus toward the NRA and its speech, and their contemporaneous, selective application of DFS's regulatory power, should not be dismissed as mere coincidence.[43]

Defendants' arguments urging such dismissal lack merit.  For example, it is immaterial that "unlawful insurance programs[] [are] not constitutionally protected"[44]—the NRA's right to be treated equally vis-à-vis similarly situated groups is protected, and has been violated here.  Similarly, Defendants' deflection that they may have lacked "knowledge of the purported

---

[41] *See* Dkt. No. 37-3, at 2; Amended Compl., at ¶¶ 46-49 (alleging that Vullo's "directive was packaged in a sharply worded media advisory meant to generate headlines – and apply maximum public pressure to the NRA and those with whom it associates); Dkt. No. 37-3, at 3 (concluding that DFS "encourages regulated institutions to review any relationships they have with the NRA or similar gun promotion organizations, and to take prompt actions to managing these risks and promote public health and safety").

[42] *See* Amended Compl., at ¶¶ 54-64.

[43] *See* Dkt. No. 56, at 23 (finding that the NRA's allegation that DFS communicated to banks and insurers that they would face regulatory action if they failed to terminate their relationships with the NRA is a "powerful" link to the recommendations in the Guidance Letters and Cuomo Press Release, and the enforcement actions carried out by DFS) (quoting *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 32 (2d Cir. 2012) ("A causal relationship can be demonstrated either indirectly  by means of circumstantial evidence, including that the protected speech was followed by adverse treatment, or by direct evidence of animus."); *Catanzaro v. City of N.Y.*, 486 F. App'x 899, 902 (2d Cir. 2012) ("Where a plaintiff has not alleged a specific connection between protected speech and an adverse action, causality can be shown through a close temporal proximity between the employer's awareness of protected conduct and the adverse action.") (internal quotation marks omitted)).  In addition, the NRA alleges explicitly that "Defendants selectively targeted the NRA because of the NRA's legislative and grassroots advocacy activities[,] . . . specifically intend[ing] to undermine the NRA's ability to conduct its affairs in New York."  *See* Amended Compl., at ¶ 37.

[44] Motion, at 12.

violations by other organizations having affinity programs marketed by Lockton"[45] contradicts the public record in this case.  The Lockton Consent Order expressly contemplated the existence of other violations, and ordered Lockton to detail them in a written submission to DFS no later than sixty days following the parties' execution of the agreement dated May 2, 2018.[46]  Absent discovery of that submission (or DFS's other communications with Lockton), it is difficult to envision how the NRA could allege more explicitly that Defendants were made aware of other, violative, Lockton-administered programs.[47]

Accordingly, the NRA has more than sufficiently alleged that Defendants' selective enforcement was motivated by a desire to punish the NRA for the exercise of its constitutional rights and to put the NRA out of business.  There is no basis to dismiss the NRA's Equal Protection claim.[48]

### 3.    The NRA Adequately Alleges Cuomo's Personal Involvement.

Cuomo is personally involved in the selective enforcement of the Insurance Law against the NRA.  As detailed in the Amended Complaint, these actions represent the latest salvo in a decades-long political vendetta,[49] and are the subject of several boastful admissions by Cuomo via

---

[45] Motion, at 11.

[46] *See* Dkt. No. 37-4, at 17 ("Lockton agrees to . . . provid[e] a . . . complete report . . . within 60 days of [May 2, 2018,] . . . that reports on[] . . . any additional violations of the Insurance Law, or regulations promulgated thereunder, that Lockton has identified[.]").

[47] *See Wandering Dago, Inc.*, 879 F.3d at 40 (reversing grant of summary judgment with respect to plaintiff's equal protection claim, notwithstanding the trial court's reasoning that "several inferences and knowledge of . . . underlying meaning" would have been required for state authorities to detect that two food-truck-license applicants were similarly situated; the fact that the comparator truck was granted a license, and plaintiff was not, illustrated selective enforcement); *Tower Props. LLC*, 2015 WL 4124499, at *11.

[48] *See id.*

[49] *See* Amended Compl., at ¶¶ 15-23.

Facebook, Twitter, and press releases.[50]

The Second Circuit has made clear that "direct participation" includes personal participation that "may be considered 'indirect,' 'such as **ordering or helping others to do the unlawful acts**, rather than doing them him- or herself.'"[51]  Here, the Amended Complaint is replete with allegations regarding Cuomo's personal participation, such as:

- Cuomo directed the campaign "involve[ing] selective prosecution . . . with a singular goal – to deprive the NRA and its constituents of their First Amendment rights to speak freely about gun-related issues and defend the Second Amendment;"[52]

- "Cuomo has embarked on a campaign to chill the political speech of the NRA . . . by punishing financial institutions which maintain 'business arrangements with the NRA;'"[53]

- Cuomo issued a press release, accompanying the April 2018 Letters, which announced that the letters had been issued at his specific direction;[54]

- Cuomo directed DFS and Vullo to initiate "costly investigations and penalties;"[55] and

- DFS levied multi-million-dollar fines against Lockton and Chubb after initiating an investigation at the behest of Cuomo.[56]

Undeterred by the filing of this lawsuit, Cuomo continued to trumpet his personal involvement in the State's conduct.  Several of his statements are incorporated in the Amended

---

[50] *See* Dkt. No. 48-1, at 4; Amended Compl., at ¶¶ 45, 51.

[51] *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 394 (S.D.N.Y. 2013) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (emphasis added)).

[52] *See* Amended Compl., at 1-2.

[53] *See id.*, at ¶ 21.

[54] *See id.*, at ¶¶ 17, 45 ("In April 2018, Cuomo directed DFS to publicly 'urge insurers and bankers statewide to determine whether any relationship they may have with the NRA or similar organizations sends the wrong message to their clients and their communities who often look to them for guidance and support.'") (quoting the Cuomo Press Release).

[55] *See id.*, at ¶ 22.

[56] *See id.*

Complaint, and further bolster its allegations.  In at least one instance, Cuomo adopted the first-person plural ("we") to describe actions conducted by DFS at his behest. For example:

- On August 3, 2018, Cuomo gloated that the actions of New York regulators "are working" because "[w]e're forcing the NRA into financial jeopardy.  We won't stop until we shut them down."[57]

- The very next day, Cuomo reiterated that "New York is forcing the NRA into financial crisis."[58]  Using the hashtag "#BankruptTheNRA," Cuomo reiterated his intent to "put the gun lobby out of business."[59]

- On August 5, 2018, Cuomo uploaded a video to YouTube that bragged: "New York has the NRA on the brink."[60]

Importantly, Cuomo not only directed Vullo and DFS to target the NRA in its enforcement of the Insurance Laws, but he also launched a "national effort urging states across the country to follow New York's lead" with respect to affinity insurance programs for the NRA.[61]

Against the backdrop of these allegations, the various NYSHIP cases upon which Defendants rely[62] are readily distinguished.  For example, in *Kuritz*, the court emphasized:

> In the amended complaint, the only allegations regarding Defendant Cuomo allege that Defendant Cuomo is the Governor of New York and that, "[u]pon information and belief, defendant Cuomo approved and directed the implementation of reduced health insurance benefits for retired State

---

[57] *See* Dkt. No. 48-1, at 6.

[58] *See* Dkt. No. 48-1, at 4.

[59] *Id.*

[60] *See* Dkt. No. 48-1, at 8.

[61] *GOVERNOR CUOMO LAUNCES NATIONAL EFFORT URGING STATES ACROSS THE COUNTRY TO FOLLOW NEW YORK'S LEAD AND OUTLAW NRA-BRANDED "CARRY GUARD" INSURANCE PROGRAM IF THEY DETERMINE IT DOESN'T ALREADY VIOLATE THEIR LAWS*, N.Y. STATE GOVERNOR ANDREW CUOMO (Aug. 4, 2018), https://www.governor.ny.gov/news/governor-cuomo-launches-national-effort-urging-states-across-country-follow-new-yorks-lead-and.

[62] *See* Motion, at 6.

employees, effective October 1, 2011."[63]

Here, Cuomo is not merely inferred to have supervised the activities at issue by virtue of his stature as the Governor of New York.  Instead, the NRA alleges that Cuomo personally drove and coordinated the campaign that is the subject of this action—allegations substantiated by multiple statements Cuomo has made. The NRA is entitled to discovery of additional statements, made behind closed doors, which may align with Cuomo's public posture.  Accordingly, dismissal is inappropriate.

## C.    Vullo Is Not Entitled To Absolute Immunity.

Defendants next argue that, notwithstanding the sufficiency of the NRA's Equal Protection allegations, the Court should refuse to hear such claims based on Defendants' stature as state officials—in the case of Vullo, based on absolute immunity.[64]  However, public policy rarely countenances immunizing civil servants for unconstitutional discrimination.[65]  Therefore, to invoke absolute immunity, Vullo must prove[66] that her actions were "quasi-judicial" in nature.[67] The Motion fails to meet this burden.  Instead, the Amended Complaint details conduct that falls

---

[63] *Kuritz v. New York*, 2015 WL 1285225, at *3 (N.D.N.Y. Mar. 20, 2015); *Roberts v. New York*, 2015 WL 1285723, at *4 (N.D.N.Y. Mar. 20, 2015) (involving cursory allegations of supervisory authority); *N.Y. State Law Enforcement Officers Union Council 82, AFSCME, AFL-CIO v. Cuomo*, 2015 WL 1281068, at *3 (N.D.N.Y. Mar. 20, 2015) (same); *N.Y. State Police Investigators Ass'n, Local 4 IUPA, AFL-CIO v. New York*, 2015 WL 1281491, at *3 (N.D.N.Y. Mar. 20, 2015) (same); *Kent v. New York*, 2015 WL 1284824, at *3 (N.D.N.Y. Mar. 20, 2015) (same); *Donohue v. New York*, 2015 WL 1284395, at *3 (N.D.N.Y. Mar. 20, 2015) (same).

[64] *See* Motion, at 7-10.

[65] *See Harlow v. Fitzgerald*, 457 U.S. 800, 809 (1982) (rejecting the application of absolute immunity to high government officials because their "greater power . . . affords a greater potential for a regime of lawless conduct") (internal quotation marks omitted).

[66] Vullo "bears the burden of showing that such immunity is justified for the function in question." *See Burns v. Reed*, 500 U.S. 478, 486 (1991); *Harlow*, 457 U.S. at 808.

[67] *Harlow*, 457 U.S. at 807 (explaining that the functions for which state officials are potentially immune for their actions include those that are quasi-judicial).

squarely within Vullo's *investigative* function.  In the investigative domain, it is well-settled that no absolute immunity applies.[68]   Moreover, even if Vullo's conduct were not clearly "investigative" in nature, the Motion would still fail to satisfy the Supreme Court's six-factor test for absolute immunity—especially given the procedural posture of this case.

### 1. Vullo's Conduct Was Investigative In Nature.

The Supreme Court has held that absolute immunity does not apply to functions typically performed by investigative agents, even if those functions are conducted by officials, such as prosecutors, who may enjoy immunity in other contexts.[69]  The Second Circuit has made clear that prior to a "formal legal proceeding" being initiated and the existence of probable cause for the proceeding, officials' conduct is deemed to be investigative, and absolute immunity does not exist.[70]  Nor does "the mere fact that a . . . later [proceeding is] convene[d] . . . automatically serve to cloak . . . prior investigatory actions with the protection of absolute immunity."[71]  Courts clearly distinguish between "'preparing for the presentation of an existing case,' on the one hand, and attempting to 'furnish evidence on which a prosecution could be based,' on the other hand—only

---

[68] *See Kalina v. Fletcher*, 522 U.S. 118, 129-30 (1997) (holding that a prosecutor was not entitled to prosecutorial immunity for a sworn affidavit filed in support of an application for an arrest warrant because the prosecutor was "perform[ing] an act that any competent witness might have performed"); *see also Burns*, 500 U.S. at 493 (stating that a prosecutor was not entitled to prosecutorial immunity for advising the police in the investigative phase of a criminal case).

[69] *See id.*

[70] *See Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995); *Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 230-31 (E.D.N.Y. 2014) (denying absolute immunity for the deputy town attorney with respect to investigative work prior to the filing of the formal complaint, including encouraging another defendant to file the formal complaint); *Peters v. City of Buffalo*, 848 F. Supp. 2d 378, 386 (W.D.N.Y. 2012) (opining that "'[a]ctions taken prior to the start of a formal legal proceeding are not entitled to absolute immunity because prior to the start of such a formal proceeding, the prosecutor has not stepped into his role as an advocate.'") (quoting *Simon v. City of N.Y.*, 819 F. Supp. 2d 145, 149 (E.D.N.Y. 2011)).

[71] *Anilao v. Spota*, 2018 WL 6190519, at *16 (E.D.N.Y. Nov. 28, 2018).

the former entitles a prosecutor to absolute immunity."[72]  Only the latter category of conduct is at issue here.[73]  Therefore, with respect to absolute immunity, the Motion fails.

Although both parties acknowledge that Defendants are investigating the NRA and the NRA contends that Defendants are threatening an enforcement action, no such action has been commenced.[74]  The NRA also alleges that Vullo violated its equal protection rights by selectively targeting the NRA in DFS's ***investigation*** of certain affinity programs, but failing to make similar inquiries into other similar membership affinity programs.[75]  Aware of this defect in their absolute-immunity argument, Defendants rely extensively on a non-binding First Circuit case, *Knowlton*,[76] which they contend is "nearly identical" to this case.[77]  In truth, the facts of *Knowlton* are not remotely identical to those here.[78]  Indeed, the *Knowlton* court expressly distinguished cases, like this one, which encompass "investigative steps taken to search for 'clues and corroboration'" (such as the issuance of subpoenas)[79] or actions taken "during the preliminary investigation" of a

---

[72] *Norton*, 33 F. Supp. 3d at 231 (quoting *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998)).

[73] *Cf. White v. Lee*, 227 F.3d 1214, 1228-29 (9th Cir. 2000) (United States Department of Housing and Urban Development officials could be held liable for investigation that threatened free speech).

[74] *See* Motion, at 12 ("while the NRA's . . . insurance activities . . . are under investigation by DFS, that investigation remains ongoing").

[75] *See* Amended Compl., at ¶¶ 36-37.

[76] *See* Motion, at 8-9.

[77] *See id.*, at 8.

[78] In *Knowlton*, an insurance-company employee who had been terminated pursuant to a consent decree between his employer and a state insurance regulator challenged his dismissal, asserting civil rights violations and various torts.  Noting specifically that plaintiff "fail[ed] to fully develop th[e] argument" that state officials' actions were investigative rather than prosecutorial in nature, the First Circuit upheld dismissal on absolute-immunity grounds.  *See Knowlton v. Shaw*, 704 F.3d 1, 7 (1st Cir. 2013).

[79] *See id.* at 8 (internal citations omitted).

potential offense (such as Vullo's alleged early coordination with Everytown and Cuomo to target the NRA for political reasons).[80]

**2.     Even If Vullo's Conduct Could Not Squarely Be Categorized As "Investigative," The Motion Fails To Demonstrate Vullo Engaged In A "Quasi-Judicial Function."**

Although an executive official's exercise of her investigative function represents one clear situation where no "quasi-judicial function" (thus, no absolute immunity) exists, the inquiry does not end there.  Even if the actions challenged by the NRA were not obviously investigative (and they are), absolute immunity would require that Vullo prove her actions were "quasi-judicial" pursuant to a six-factor test established by the United States Supreme Court.  These factors, commonly known as the *Butz* factors, are:

> (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal.[81]

Defendants do not even mention these factors in their Motion, and factors two through six, in particular, show that absolute immunity cannot apply to Vullo in this action.

Although there are some safeguards to protect parties from unconstitutional conduct by the DFS Superintendent, the efficacy of those safeguards is diminished by other provisions of the Financial Services Law.  Specifically, although a party is entitled to notice and a hearing, the "independence" of any hearing is severely undermined because it is held before the Superintendent or an individual directly designated by the Superintendent.  Additionally, the hearing officer only

---

[80] *See id.*; Amended Compl., at ¶¶ 34-37.

[81] *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985).

has the power to suggest a course of action, while the Superintendent has the final authority to reject the recommendation and issue whatever order she desires.[82]  In short, Vullo has virtually unfettered ability to act in an unconstitutional manner without appropriate safeguards.[83]

The third *Butz* factor, insulation from political influence, weighs heavily against absolute immunity because Vullo serves at the will of the Governor.[84]  Additionally, no provision of the Financial Services Law or the Insurance Law indicates that DFS or its Superintendent place any value on precedent when making decisions with respect to violations of the Insurance Law—nor has Vullo presented any such evidence.  Furthermore, the issuance of the Consent Orders (or any future order against the NRA) lacked key elements of an adversarial proceeding, such as a hearing in front of a "neutral decision maker and evidentiary rules."[85]

Finally, *Butz* also requires the Court to consider whether Vullo's actions are "correctabl[e] on appeal."  While an action taken by Vullo could be reviewed in an Article 78 proceeding, "in the context of determining whether absolute immunity is appropriate, Article 78 proceedings are generally not considered adequate avenues for 'appeal.'"[86]

Accordingly, even if the Court determines Vullo's action extend beyond mere investigatory functions, her conduct still does not entitle her to absolute immunity.

### 3.    Any Ambiguity Regarding Absolute Immunity Should Be Resolved After Discovery.

---

[82] *See* N.Y. Fin. Serv. § 305 (McKinney).

[83] *See DiBlasio v. Novello*, 344 F.3d 292, 299 (2d Cir. 2003).

[84] *See* N.Y. Fin. Serv. § 202(a) (McKinney) ("The head of [DFS], . . . shall be appointed by the governor [and] . . . shall hold office *at the pleasure of the governor*.") (emphasis added); *DiBlasio*, 344 F.3d at 298 (holding that if "the commissioner of health 'serves at the will of the Governor,' . . . it would be improper to characterize the commissioner as insulated from political influence").

[85] *See DiBlasio*, 344 F.3d at 299; N.Y. Fin. Serv. § 305(e) (McKinney).

[86] *DiBlasio*, 344 F.3d at 299 (quoting *Young v. Selsky*, 41 F.3d 47, 54 (2d Cir. 1994)).

Finally, "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss."[87]  The NRA believes that Vullo's contentions regarding absolute immunity can readily be rejected based on the four corners of the Amended Complaint.  However, to the extent that any doubt remains, the Court should defer resolution of this issue until after fact discovery.

### D.   Neither Cuomo Nor Vullo Is Entitled To Qualified Immunity.

The Motion additionally invokes qualified immunity with respect to both Vullo and Cuomo, seeking to shield them from liability on the ground that their actions were "objectively reasonable."[88]  This argument fails for two reasons:  (1) the application of qualified immunity in these circumstances is a highly factual inquiry inappropriate at the motion to dismiss stage;[89] and (2) Cuomo and Vullo violated clearly established constitutional law.[90]  The Court should not shield Cuomo and Vullo from their unconstitutional conduct because "[w]hen government officials abuse their offices, 'actions for damages may offer the only realistic avenue for the vindication of

---

[87] *Hill*, 45 F.3d at 663; *see Bertuglia v. City of N.Y.,* 839 F. Supp. 2d 703, 732 (S.D.N.Y. 2012) (delaying decision on whether a prosecutor was immune in an abuse of process claim because the role the prosecutor played "is a factual dispute that cannot be resolved on this motion [to dismiss]"); *Anilao v. Spota*, 774 F. Supp. 2d 457, 485 (E.D.N.Y. 2011) (deferring judgment on whether the prosecutors were acting as investigators or advocates in Section 1983 case); *Hickey v. City of N.Y.*, 2002 WL 1974058, at *4 (S.D.N.Y. Aug. 26, 2002) (reserving judgment on whether prosecutors were immune from false arrest and conspiracy claims since "the presence or absence of absolute immunity turns on what the prosecutor is alleged to have done, and not on the legal theory advanced or the label attached to the cause of action").

[88] *See* Motion, at 13.

[89] *See Jones v. Parmley*, 465 F.3d 46, 63-64 (2d Cir. 2006).

[90] *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

constitutional guarantees.'"[91]  This principle is especially true here, at the motion-to-dismiss stage, when the NRA's factual allegations illustrate clearly established violations of its equal protection rights.

### 1.    Qualified Immunity Is A Fact-Specific Inquiry That Should Be Undertaken After Fact Discovery.

Qualified immunity rarely supports a motion to dismiss and does not do so here.[92]  Given the nature of Defendants' attacks on the NRA, dismissal on grounds of qualified immunity would be particularly inappropriate.  Understanding the nature of Defendants' decision-making, and the circumstances and motivation giving rise to it, requires detailed factual analysis that cannot be definitively ascertained at this stage.[93]  The Supreme Court has cautioned that "[t]he fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence *at trial*."[94]

The Second Circuit has explained that "a defendant presenting an immunity defense on a

---

[91] *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Harlow*, 457 U.S. at 814 (internal brackets omitted)).

[92] *See McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004) (holding that a qualified immunity defense may be presented during a motion to dismiss, but "the defense faces a formidable hurdle when advanced . . . at this preliminary stage"); *Jones*, 465 F.3d at 63-64 (refusing to grant summary judgment on qualified immunity grounds because of factual disputes); *Hayes v. City of Amsterdam*, 770 N.Y.S.2d 138, 140-41 (2d Dep't 2003) (same); *Munoz v. City of N.Y.*, 2008 WL 464236, at *7 n.6 (S.D.N.Y. Feb. 20, 2008) (same).

[93] *See Munoz*, 2008 WL 464236, at *7 n.6 ("Clearly, without a factual resolution of the sharply conflicting versions of these events, it is not possible to determine whether defendants are qualifiedly immune.") (internal quotation marks omitted); *Bernstein v. City of N.Y.*, 2007 WL 1573910, at *9 (S.D.N.Y. May 24, 2007) ("Because the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to [Rule] 12(b)(6).'") (quoting *Walker v. Mendoza*, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000) (alterations in original)).

[94] *Imbler*, 424 U.S. at 419 n.13 (emphasis added).

Rule 12(b)(6) motion[95] instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route."[96] "Not only must the facts supporting the defense appear on the face of the complaint, but . . . the motion may be granted *only where it appears beyond doubt* that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[97] Therefore, when construing the instant Rule 12(c) motion, the Court is bound to not only make all reasonable inferences in the NRA's favor, but may only rely on allegations in the Amended Complaint to *support* any application of qualified immunity.[98] Defendants fail, however, to identify any allegations in the Amended Complaint that warrant granting qualified immunity.

It would be error for the Court to dismiss the NRA's equal protection claim on the grounds of qualified immunity because such a defense is highly fact specific.[99] Accordingly, the Court should require them to prove entitlement to this defense at a later stage.[100]

### 2.    The Conduct Alleged By The NRA Was Not "Objectively Reasonable" But,

---

[95] As discussed *supra*, the standard of review with respect to a motion to dismiss pursuant to Rule 12(b)(6) is the same as Rule 12(c), and the NRA is entitled to every inference in its favor. *See In re Thelen LLP*, 736 F.3d 213, 218 (2d Cir. 2013).

[96] *McKenna*, 386 F.3d at 436.

[97] *Id.* (internal quotation marks and citation omitted) (emphasis added).

[98] *Id.*

[99] *See Balakrishnan v. Kusel*, 2009 WL 1291755, at *9 (E.D.N.Y. May 8, 2009) (determining that "genuine issues of material fact preclude summary judgment on plaintiff's selective enforcement claim also preclude a grant of qualified immunity"); *see also Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998) (refusing to apply qualified immunity and explaining that "application of the doctrine [of qualified immunity] to claims in which an element of the violation is an unconstitutional motive or intent . . . creates the difficulty of . . . denying litigants the opportunity to present proof of that intent").

[100] *See Children First Found., Inc. v. Martinez*, 2005 WL 600283, at *3 (N.D.N.Y. Mar. 14, 2005) (determining that defendants "should assert qualified immunity in their answer and then proceed to a motion for summary judgment").

**Rather, Violated Clearly Established Constitutional Rights.**

A defendant may not invoke qualified immunity with respect to violations of clearly established constitutional law.[101]  This standard does not require that an official commit specific acts which have "previously been held to be unlawful;"[102] instead, wherever the unlawfulness of the alleged conduct would be "apparent" based on pre-existing law, qualified immunity vanishes.[103]   Here, the NRA alleges that Cuomo and Vullo deliberately tailored New York's enforcement of its Insurance Law to target one of Cuomo's political adversaries, as part of a coordinated, multi-pronged campaign to suppress a disfavored political viewpoint.[104]   Such conduct is obviously antithetical to the First and Fourteenth Amendments of the United States Constitution, and could not have been viewed as "reasonable"—indeed, if the same conduct were targeted at a group politically congenial to Defendants, the NRA suspects that the unreasonableness of such actions would be readily acknowledged.

If, and when, the Court undertakes a qualified-immunity analysis (which should not occur at this stage), a two-step inquiry is appropriate.[105]  **First**, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the . . . conduct violated a constitutional

---

[101] *See Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) ("A government official is entitled to qualified immunity from suit for actions taken as a government official if (1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or (3) the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.").

[102] *Anderson*, 483 U.S. at 640.

[103] *Id.*; *see Saucier*, 533 U.S. at 201(opining that the legal right violated by the public official need not have been specifically articulated by a court to be clearly established at the time of the violation).

[104] *See* Amended Compl., at ¶¶ 20-23, 108-10.

[105] *Saucier*, 533 U.S. at 201; *see Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009).

right?;"[106] and, **second,** (2) "if a violation could be made out on a favorable view of the parties' submissions . . . whether the right was clearly established."[107]  It is not necessary for courts to articulate a right in precisely the same way for it to be clearly established.[108]

Here, Defendants fail to satisfy either prong of the qualified immunity analysis.  As discussed *infra* at II.B., the NRA has more than sufficiently pleaded a selective enforcement claim for past monetary damages, illustrating that an equal protection right was violated.[109]  The NRA's amended complaint is replete with allegations that Defendants selectively enforced the Insurance Law against the NRA and its business partners,[110] causing direct personal injuries to the NRA.[111]  In seeking qualified immunity protection, Defendants erroneously contend—without presenting any evidence in support—that this is a case where they are prosecuting all offenders equally and just happened to start with the NRA.  However, contrary to these allegations and as they even admit in their Motion, Lockton Affinity informed them more than six months ago of all other affinity insurance programs violating the same laws, yet those affinity insurance programs have

---

[106] *Saucier*, 533 U.S. at 201.

[107] *Id.*  The Second Circuit has succinctly stated that a defendant is entitled to qualified immunity if he "can establish either that (1) a constitutional right was not violated or (2) the right was not clearly established."  *Bailey v. Pataki*, 708 F.3d 391, 404 (2d Cir. 2013) (internal quotation marks and alterations omitted).

[108] *Saucier*, 533 U.S. at 202. ("This is not to say that the formulation of a general rule is beside the point, nor is it to insist the courts must have agreed upon the precise formulation of the standard."); *Bailey*, 708 F.3d at 405 ("For a right to be clearly established, it is not necessary that courts have agreed upon the precise formulation of the standard.") (internal quotation marks omitted).  In addition, the Second Circuit has indicated that a state official is entitled to qualified immunity if her action was "objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken."  *Cuoco*, 222 F.3d at 109.

[109] *See* Amended Compl., at ¶¶ 20-23, 108-11.

[110] *See, e.g.*, *id.*, at ¶¶ 42-44, 109-10.

[111] *See id.* at ¶¶ 35, 57, 60, 69, 80, 108, 111.

not changed and continue to operate in the same manner Defendants declared was "unlawful" with respect to the NRA-endorsed affinity programs.[112]  The reason—the other affinity programs are not related to gun-promotion organizations.

Moreover, with regard to the second prong,[113] Defendants cannot disprove that the law was "clearly established" at the time the NRA's equal protection rights were infringed.[114]  Courts have routinely found that it is "clearly established that selective enforcement of a facially valid law based on an official's dislike of protected expression is unlawful."[115]  This is true regardless of whether the law in question makes conduct unlawful.[116]  Furthermore, Defendants do not need to initiate an enforcement action against the NRA to trigger equal protection concerns.[117]  All that is

---

[112] *See* Motion, at 12; Dkt. No. 37-4, at 17; note 33, *supra*.

[113] In answering this question, the Second Circuit looks to whether "(1) the right was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful."  *Bailey*, 708 F.3d at 404–05.

[114] Of course, it again bears mentioning that Defendants *continue* to violate the NRA's "clearly established" equal protection rights under the New York and United States Constitutions.  Similarly, Defendants fail to show that their actions were "objectively reasonable" in light of the clearly established law established at the time it was taken.  That is, Defendants actions of knowingly and in bad faith violating the NRA's constitutional rights cannot be construed as objectively reasonable, entitling Cuomo and Vullo to qualified immunity.  *See Balakrishnan*, 2009 WL 1291755, at *9 (denying summary judgment dismissal of plaintiffs' selective enforcement claim on qualified immunity grounds because material issues of fact remained as to the objective reasonableness of defendants' conduct).

[115] *Burns v. Citarella*, 443 F. Supp. 2d 464, 470 (S.D.N.Y. 2006) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 2005 WL 2445794, at *17 (E.D.N.Y. Sept. 30, 2005)); *see also Massi v. Flynn*, 254 F. App'x 84, 87 (2d Cir. 2007) (holding that "there can be no dispute" that the constitutional right to be free from selective treatment is clearly established); *Bush v. City of Utica, N.Y.*, 558 F. App'x 131, 134-35 (2d Cir. 2014) (same).

[116] *See LaTrieste Rest. and Cabaret Inc.*, 40 F.3d at 590 (the constitutional principal of equal protection is violated where a town enforces regulations making behavior unlawful only against certain political affiliations).

[117] *See Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 449 (W.D.N.Y. 2009) (holding that a claim of selective enforcement only needs *threatened* selective treatment).

necessary is for the NRA to plead selective treatment or even the mere threat of enforcement.[118]

Defendants argue that selective enforcement in this case cannot be clearly established because a "law enforcement official has discretion in deciding what violations of the law to prosecute, and when."[119]  However, Defendants misapprehend the doctrine of selective enforcement: while law enforcement discretion is broad, it is not "unfettered" and is subject to the exact constitutional constraints at issue in this case—that the *decision* to prosecute cannot be "'deliberately based upon an unjustifiable standard' . . . including the exercise of protected statutory and constitutional rights."[120]

Accordingly, Defendants fail to meet their burden of satisfying either of the two prongs required to warrant the application of qualified immunity to Cuomo or Vullo.

**E.    Defendants' Argument Regarding The Definition Of A Person Under Section 1983 Does Not Preclude The NRA's Claims Based On State Law Constitutional Violations.**

Defendants seek dismissal of the entirety of Counts 1, 2, and 4 because DFS does not constitute a "person" under Section 1983.  However, Defendants ignore that each of those claims include both federal constitutional violations under Section 1983 and state constitutional violations.[121]  At this stage, the NRA agrees to withdraw its Section 1983 claims under Counts 1, 2, and 4 against DFS.[122]  Should DFS additionally choose not to waive sovereign immunity with

---

[118] *See id.*; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (opining that "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").

[119] *See* Motion, at 14-15.

[120] *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

[121] *See* Amended Compl., at 28, 30, and 35.

[122] The NRA does not seek any monetary damages from DFS and Cuomo and Vullo in their official capacities under Section 1983.  Instead, the NRA seeks injunctive relief under Section 1983 from

respect to the pending state law claims against it, the NRA will agree to withdraw those claims and will promptly re-file its claims as to DFS' state constitutional violations in the appropriate State court.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the NRA respectfully requests that this Court deny Defendants' Motion in its entirety and grant the NRA all appropriate relief.

Dated: January 8, 2019                    Respectfully submitted,


By:     /s/ William A. Brewer III
        William A. Brewer III (Bar No. 700217)
        wab@brewerattorneys.com
        Stephanie L. Gase (Bar No. 700205)
        sgase@brewerattorneys.com
        Sarah B. Rogers (Bar No. 700207)
        sbr@brewerattorneys.com
        BREWER, ATTORNEYS & COUNSELORS
        750 Lexington Avenue, 14th Floor
        New York, New York 10022
        Telephone:  (212) 489-1400

        Charles J. Cooper*
        ccooper@cooperkirk.com
        Michael W. Kirk*
        mkirk@cooperkirk.com
        J. Joel Alicea*
        jalicea@cooperkirk.com
        COOPER & KIRK, PLLC
        1523 New Hampshire Ave., NW
        Washington D.C., 20036
        Telephone: (202) 220-9660
        Facsimile: (202) 220-9601

        *appearing *pro hac vice*

        **ATTORNEYS FOR PLAINTIFF THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

---

these Defendants and monetary relief under Section 1983 only from Cuomo and Vullo in their personal capacities.  Defendants' arguments to the contrary are incorrect.  *See* Motion, at 4.