**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL CASE NO.  18-CV-00566-TJM-** |
| **v.** | § | **CFH** |
| **ANDREW CUOMO, both individually and** | § | |
| **in his official capacity; MARIA T. VULLO,** | § | |
| **both individually and in her official** | § | |
| **capacity; and THE NEW YORK STATE** | § | |
| **DEPARTMENT OF FINANCIAL** | § | |
| **SERVICES,** | § | |
| **Defendants.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**</u>

William A. Brewer III (Bar No. 700217)
Stephanie L. Gase (Bar No. 700205)
Sarah B. Rogers (Bar No. 700207)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

Charles J. Cooper*
Michael W. Kirk*
J. Joel Alicea*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington D.C., 20036
Telephone: (202) 220-9660
Facsimile: (202) 220-9601

*Appearing *pro hac vice*

**ATTORNEYS FOR THE NATIONAL RIFLE
ASSOCIATION OF AMERICA**

## <u>TABLE OF CONTENTS</u>

I. PRELIMINARY STATEMENT ...................................................................................1

II. BACKGROUND...........................................................................................................1

    A.    The Crux Of This Lawsuit: Selective Enforcement As A Tool Of Censorship..........................................................................................................1

    B.    The NRA Serves Document Requests Targeting Information Critical To Its Claims. ...................................................................................................3

    C.    Despite Sustained Meet-Confer Efforts, Defendants Refuse To Provide Anything Beyond Boilerplate, Generalized Objections.........................................4

III. LEGAL STANDARD....................................................................................................7

IV. ARGUMENTS AND AUTHORITIES ........................................................................7

    A.    The NRA's Requests Are Reasonably Tailored To Seek Relevant Documents, And Defendants' Boilerplate Objections Should Be Stricken.............7

            1.    The NRA's Requests Concerning DFS's Investigations Of The NRA Endorsed Insurance Programs. ...........................................................8

            2.    The NRA's Requests Concerning The April 2018 Letters And The Corresponding Press Release. ...................................................................10

            3.    The NRA's Requests Concerning DFS's Investigation Of Other Affinity Insurance Programs.........................................................................11

            4.    The NRA's Requests Concerning Defendants' Communications With Financial Institutions Or Insurers Related To Their Business Relationships With The NRA Or Other Gun Promotion Organizations. .......................................................................................12

            5.    The NRA's Requests Concerning Adverse Or Enforcement Actions Against Financial Institutions With Business Arrangements With The NRA And Other Gun Promotion Organizations.................................13

            6.    The NRA's Requests Concerning Information Exchanged Between Defendants Related To This Action.........................................................14

            7.    The NRA's Requests Concerning Defendants' Referrals Of Matters To Other Government Agencies. ............................................................15

    B.    Defendants' Refusal To Provide A Privilege Log Is Improper, And Several Privileges Asserted Are Facially Inapplicable.........................................16

            1.    None Of The Privileges Asserted By Defendants Can Be Sustained Absent A Privilege Log. ...........................................................................16

i

2.  "Law Enforcement Privilege" And "Deliberative Process Privilege" Arise Only Upon Satisfaction Of Stringent Procedural Hurdles— Which Defendants Have Not Cleared. .......................................................18

3.  Defendants Fail To Make The Required Showing That The Law Enforcement Privilege Applies. ...............................................................19

4.  The Deliberative Process Privilege Does Not Protect Documents Or Information When The Deliberative Process Itself Is The Subject Of The Litigation ..................................................................................................20

5.  No "Inter-Agency Privilege" Or "Intra-Agency Privilege" Exists In Civil Litigation Discovery. ........................................................................23

6.  Defendants' Blanket Assertion Of Attorney-Client Privilege And The Work Product Doctrine With Respect To *All* Documents Created Since May 2018 Is Improper. ....................................................23

C.   The Court Should Award The NRA Attorneys' Costs And Fees. .........................24

V. CONCLUSION ..........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Rock Salt Co., LLC v. Norfolk S. Corp.*,
   228 F.R.D. 426 (W.D.N.Y. 2004) .......................................................................8

*Assoc. Container Trans. (Australia) Ltd. v. U.S.*,
   502 F. Supp. 505 (S.D.N.Y. 1980), *rev'd on other grounds,* 705 F.2d 53 (2d
   Cir. 1983) ............................................................................................................7

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) .............................................................................22

*Branch Ministries, Inc. v. Richardson*,
   970 F. Supp. 11 (D.D.C. 1997) ..........................................................................12

*Burka v. N.Y. City Trans. Auth.*,
   110 F.R.D. 660 (S.D.N.Y. 1986) ......................................................................22

*CapRate Events, LLC v. Knobloch*,
   2018 WL 4378167 (E.D.N.Y. Apr. 18, 2018) .....................................................8

*Children First Found., Inc. v. Martinez*,
   2007 WL 4344915 (N.D.N.Y. Dec. 10, 2007) ............................................21, 22

*Cipolla v. Cty. of Rensselaer*,
   2001 WL 1223489 (N.D.N.Y. Oct. 10, 2001) ...................................................22

*Citizens Union of City of N.Y. v. Atty. Gen. of N.Y.*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017) ...............................................................21

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
   2016 WL 7444910 (C.D. Cal. July 8, 2016) .....................................................18

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*,
   139 F.R.D. 295 (S.D.N.Y. 1991) ......................................................................22

*Dep't of Interior v. Klamath Water Users Prot. Ass'n*,
   532 U.S. 1 (2001) ...............................................................................................21

*In re Dep't of Investigation of City of N.Y.*,
   856 F.2d 481 (2d Cir. 1988) ..............................................................................20

*Doe v. Trs. of the Univ. of Penn.*,
   270 F. Supp. 3d 799 (E.D. Penn. 2017) .............................................................12

*Dowell v. Cox Okla. Telecom, LLC*,
 2019 WL 124843 (W.D. Okla. Jan. 7, 2019) ........................................................12

*Ebbert v. Nassau Cty.*,
 2007 WL 674725 (E.D.N.Y. Mar. 5, 2007) .........................................................22

*Envt'l Prot. Agency v. Mink*,
 410 U.S.73 (1973) ................................................................................................22

*Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*,
 2014 WL 1909446 (S.D.N.Y. May 13, 2014) .....................................................21

*Fine v. ESPN, Inc.*,
 2014 WL 12586848 (N.D.N.Y. Dec. 24, 2014) ...................................................17

*FTC v. Abbvie, Inc.*,
 2015 WL 8623076 (E.D. Pa. Dec. 14, 2015) .......................................................24

*Gould Inc. v. Mitsui Mining & Smelting Co.*,
 825 F.2d 676 (2d Cir. 1987) .................................................................................24

*Grand Cent. P'ship, Inc. v. Cuomo*,
 166 F.3d 473 (2d Cir.1999) .............................................................................21, 22

*In re Grand Jury Subpoena Dated August 9, 2000*,
 218 F. Supp. 2d 522 (S.D.N.Y. 2002) .............................................................18, 19

*Grossman v. Schwartz*,
 125 F.R.D. 376 (S.D.N.Y. 1989) .....................................................................21, 22

*Guillory v. Overbaugh*,
 Civ. No. 9:13-CV-1353, Dkt. No. 51 (N.D.N.Y. March 24, 2015) ......................20

*Henry v. Champlain Enterprises, Inc.*,
 212 F.R.D. 73 (N.D.N.Y. 2003) ...........................................................................24

*Henry v Liberty*,
 2017 WL 633409 (N.D.N.Y. Feb. 16, 2017) ........................................................20

*Hopkins v. H.U.D.*,
 929 F.2d 81 (2d Cir. 1991) ...................................................................................21

*Kelly v. City of San Jose*,
 114 F.R.D. 653 (N.D. Cal. 1987) ..........................................................................20

*King v. Conde*,
 121 F.R.D. 180 (E.D.N.Y. 1988) ..........................................................................20

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
    29 F. Supp. 3d 142 (E.D.N.Y. 2014) ...................................................24

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
    295 F.R.D. 28 (E.D.N.Y. 2013) ...........................................................24

*Kshel Realty Corp. v. City of N.Y.*,
    2004 WL 2978295 (S.D.N.Y. Dec. 20, 2004) ..............................17, 18

*Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*,
    845 F.2d 1177 (2d Cir. 1988)................................................................22

*Loguidice v. McTiernan*,
    2016 WL 4487779 (N.D.N.Y. Aug. 25, 2016) .....................................24

*Mantell v. Chassman*,
    512 F. App'x 21 (2d Cir. 2013) ............................................................25

*Marisol A. v. Giuliani*,
    1998 WL 132810 (S.D.N.Y. Mar. 23, 1998) ..................................21, 22

*Martin v. Albany Bus. Journal, Inc.*,
    780 F. Supp. 927 (N.D.N.Y. 1992)...................................................18, 19

*McCaskill v. Bresset*,
    Civ. No. 9:13-CV-1487, Dkt. No. 43 (N.D.N.Y. Jan. 7, 2015) ............20

*Matter of Minebea Co. Ltd.*,
    143 F.R.D. 494 (S.D.N.Y. 1992) ..........................................................24

*Mitchell v. Fishbein*,
    227 F.R.D. 239 (S.D.N.Y. 2005) ..........................................................22

*Mobil Oil Corp. v. Dept. of Energy*,
    520 F. Supp. 414 (N.D.N.Y. 1981) .......................................................18

*Morrissey v. City of N.Y.*,
    171 F.R.D. 85 (S.D.N.Y. 1997) ............................................................20

*Mr. and Mrs. B. v. Bd. of Educ. of Syosset Cent. Sch. Dist*,
    35 F. Supp. 2d 224 (E.D.N.Y. 1998) ....................................................22

*PKFinans Int'l Corp v. IBJ Schroder Leasing Corp*,
    1996 WL 525862 (S.D.N.Y. Sept. 17, 1996)........................................18

*Preston v. Malcolm*,
    2009 WL 4796797 (D.N.J. Dec. 8, 2009) .............................................20

*In re Priest v. Hennessy*,
   409 N.E.2d 983 (N.Y. 1980)........................................................................24

*Rattner v. Netburn*,
   1989 WL 223059 (S.D.N.Y. June 20, 1989), *aff'd*, 1989 WL 231310
   (S.D.N.Y. Aug. 23, 1989) ...........................................................................24

*Renegotiation Bd. v. Brumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975)....................................................................................21

*Robbins & Myers, Inc. v. J.M. Huber Corp.*,
   2010 WL 3992215 (W.D.N.Y. Oct. 12, 2010) .............................................25

*Rossi v. Blue Cross & Blue Shield of Greater NY*,
   540 N.E.2d 703 (N.Y. 1989).......................................................................24

*S. New England Tel. Co. v. Global NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010)........................................................................25

*S.E.C. v. Yorkville Advisors, LLC*,
   2015 WL 855796 (S.D.N.Y. Feb. 27, 2015)................................................25

*S.E.C. v. Yorkville Advisors LLC*,
   300 F.R.D. 152 (S.D.N.Y. 2014) ...............................................17, 18, 19, 23

*In re Savitt/Adler Litig.*,
   1997 WL 369387 (N.D.N.Y. June 24, 1997)...............................................25

*Schiller v. City of N.Y.*,
   2007 WL 136149 (S.D.N.Y. Jan. 19, 2007) ...............................................21

*In re Sealed Case*,
   856 F.2d 268 (D.C.C. 1988) .......................................................................19

*State of N.Y. v. Oneida Indian Nation of N.Y. (Oneida I)*,
   2001 WL 1708804 (N.D.N.Y. Nov. 9, 2001) ..............................................22

*In re The City of N.Y.*,
   607 F.3d 923 (2d Cir. 2010).......................................................17, 19, 20

*Tigue v. U.S. Dept. of Justice*,
   312 F.3d 70 (2d Cir. 2002)..........................................................................23

*Torres v. Kuzniasz*,
   936 F. Supp. 1201 (D.N.J. 1996) ...............................................................25

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
   843 F.2d 67 (2d Cir. 1988) .........................................................................25

vi

*U.S. v. Adlman*,
    68 F.3d 1495 (2d Cir.1995)........................................................................24

*U.S. v. Constr. Prods. Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996)........................................................................18

*U.S. v. Wey*,
    252 F. Supp. 3d 237 (S.D.N.Y. 2017)......................................................19

*von Bulow v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987), *cert. denied*, 481 U.S. 1015 (1987)..........19

*Wagner v. Dryvit Sys.*,
    208 F.R.D. 606 (D. Neb. 2001)..................................................................8

*In re Welspun Litig.*,
    2018 WL 4693587 (S.D.N.Y. Sept. 21, 2018)..........................................17

*Wolff v. State Univ. of N.Y. at Cortland*,
    2015 WL 13344112 (N.D.N.Y. Feb. 12, 2015)...........................................7

*Yu Chen v. LW Rest., Inc.*,
    2011 WL 3420433 (E.D.N.Y. Aug. 3, 2011)...............................................6

## Statutes & Other Authorities

5 U.S.C. § 552(b)(5) (2006), *amended by* OPEN Government Act of 2007, Pub.
    L. No. 110-175, 121 Stat. 2524................................................................23

FED. R. CIV. P. 26(b) ....................................................................7, 16, 17

FED. R. CIV. P. 34 .........................................................................1, 6, 8

FED. R. CIV. P. 34 advisory committee's note to 2015 amendment................8

FED. R. CIV. P. 37(a)(5)(A) ...................................................................24

N.D.N.Y. L.R. 7.1(d)(7) ........................................................................17

Plaintiff the National Rifle Association of America (the "NRA") submits this memorandum of law in support of its motion to compel ("Motion") defendants New York Governor Andrew Cuomo ("Cuomo"); Maria T. Vullo ("Vullo"); and the New York State Department of Financial Services ("DFS") (collectively, "Defendants"), as follows:

## I.      PRELIMINARY STATEMENT

This case involves a multi-pronged censorship-and-retaliation campaign in which New York State officials continue to wield state regulatory authority to suppress the NRA's political speech. From the outset, the NRA has sought swift, targeted discovery to stanch ongoing violations of its constitutional rights. Unfortunately, although the NRA's document requests to DFS and Cuomo have been substantively outstanding since June—and formally since November[1]—Cuomo, Vullo, and DFS refuse to provide any response beyond boilerplate, generalized objections of the type specifically prohibited by federal and local rules. Strikingly, Defendants have rebuffed efforts by the NRA to rephrase or negotiate purportedly-problematic discovery requests, and—despite extensive privilege claims—flatly refuse to provide a privilege log. Having exhausted considerable good-faith meet-and-confer efforts, the NRA now seeks relief from the Court.

## II.      BACKGROUND

### A.      The Crux Of This Lawsuit: Selective Enforcement As A Tool Of Censorship.

This case arises from Defendants' selective enforcement New York insurance regulations

---

[1] As discussed *infra* at Section II(A), the document requests which are the subject of this Motion were served November 21, 2018; pursuant to Fed. R. Civ. P. 34, responses were due by December 21, 2018. Although the requests served in November are broader than the requests the NRA filed with its still-pending Motion for Expedited Discovery on June 14, 2018, the NRA's earlier requests put Defendants on notice regarding the substance of the NRA's desired discovery because they sought the same core categories discussed herein.

to target NRA-related affinity policies, while permitting materially identical policies to continue being sold.  Accompanied by official regulatory "guidance" documents, press releases, and backchannel threats, Defendants' actions sent a clear message: financial institutions should sever ties with the NRA, lest they suffer the same fate as the NRA's affinity-insurance partners, Lockton and Chubb.[2]  During the pendency of their first motion to dismiss, Defendants continued to boast publicly of their efforts to "#BankrupttheNRA,"[3] and also continued their selective targeting of yet another NRA insurance provider, Lloyd's of London—which underwrote policies, including life insurance and health insurance, that had nothing to do with the "Carry Guard" coverage which purportedly sparked DFS's inquiry.[4]  On December 20, 2018, Lloyd's succumbed to Defendants' pressure, paid a $5 million penalty, and agreed to forbear from future, lawful affinity-insurance business with the NRA in the State of New York.[5]

The NRA has strong reason to infer that a robust body of nonpublic documents exist which support its claims, including: a panicked telephone call from an insurance executive targeted by

---

[2] As set forth in the Amended Complaint, just before commencement of this lawsuit, Lockton (the longtime broker and administrator of the NRA's affinity-insurance programs) and Chubb (the underwriter of one program, Carry Guard) entered into highly publicized consent orders with DFS, in which they paid multi-million dollar penalties and acceded to forbear from future NRA-related affinity business.  Importantly, the government did ***not*** penalize Lockton or Chubb with respect to any conduct undertaken on behalf of non-NRA clients—even where publicly available websites contained near-identical marketing statements.  *See, e.g.*, ECF No. 37, at 32-33, 35-36.

[3] *See* ECF No. 48-1, at 4.

[4] *See* ECF No. 40-1, at 5-7 (discussing how Carry Guard and its policies underwritten by Chubb and Lockton were the primary point of focus for the DFS's investigation beginning in August 2017).

[5] *See* Consent Order Under Sections 1102 and 3420 of the Insurance Law, *In re Certain Underwriters at Lloyd's London Subscribing to Insurance Policies to the National Rifle Association of America*, dated December 20, 2018, attached as Exhibit 21 to the Declaration of Stephanie L. Gase In Support of the NRA's Motion to Compel the Production of Documents, dated January 22, 2019 (the "Gase Decl.").  The NRA will cite to exhibits to the Gase Decl. in the form "Ex. ___."

Defendants' threats;[6] evidence of emails (including possible drafts of later-publicized documents) exchanged between DFS and the anti-NRA activist group Everytown for Gun Safety;[7] and, evidence that Governor Cuomo has communicated about the case through multiple digital channels including Facebook, Twitter, and YouTube.[8]  Accordingly, at the earliest opportunity under the Federal Rules of Civil Procedure,[9] the NRA served 24 Requests for Production upon Vullo, 27 Requests for Production upon Governor Cuomo, and 28 Requests for Production upon the DFS (the "Requests" and each, a "Request").[10]

**B.**     **The NRA Serves Document Requests Targeting Information Critical To Its Claims.**

In sum, the Requests seek records relating to seven topics:[11] (1) DFS's investigation of affinity insurance programs endorsed by the NRA;[12] (2) the April 2018 Letters and the April 19 Press Release that urged financial institutions to discontinue business arrangements with the

---

[6] *See* ECF No. 37, at 18.

[7] Although Defendants have produced only 95 documents to date, one email chain appears to suggest that Everytown had previously transmitted a draft press release, celebrating Chubb's abandonment of the NRA, to state officials. *See* Email from R. Loconte to E. Tirshwell, dated February 23, 2018, attached to the Gase Decl. as Exhibit 11.

[8] *See* ECF No. 48-1, at 4, 6, 8.

[9] In particular, the NRA served the Requests on November 21, 2018, immediately after the parties concluded their Rule 26(f) conference.

[10] *See* National Rifle Association of America's First Request for Production to Defendant Maria T. Vullo, dated November 21, 2018 (the "Vullo Reqs."), attached to the Gase Decl. as Exhibit 2; National Rifle Association of America's First Request for Production to Defendant Governor of New York Andrew Cuomo, dated November 21, 2018 (the "Cuomo Reqs."), attached to the Gase Decl. as Exhibit 3; National Rifle Association of America's First Request for Production to Defendant New York State Department of Financial Services, dated November 21, 2018 ("DFS Reqs."), attached to the Gase Decl. as Exhibit 1.

[11] Charts outlining the NRA's document requests and Defendants' corresponding responses, broken down by each of the seven categories, are attached to the Gase Decl. as Exhibit 14 – 20.

[12] *See* Ex. 2 (Vullo Reqs.), Request Nos. 1, 2, 17-23, 27; Ex. 3 (Cuomo Reqs.), Request Nos. 1, 2, 19-23, 27; Ex. 1 (DFS Reqs.), Request Nos. 1, 2, 19-23, 28, 31.

NRA;[13] (3) investigations or actions by Defendants concerning affinity-insurance programs ***not*** relating to the NRA (a key area of inquiry with respect to selective enforcement);[14] (4) communications between Defendants and non-parties, such as bankers and insurers, related to the non-parties' business relationships with the NRA;[15] (5) documents regarding potential or actual adverse actions against institutions that did business with the NRA or other so-called "gun promotion" organizations;[16] (6) information exchanged between Defendants related to this case;[17] and (7) documents related to any referral, by Defendants, of these matters to other governmental agencies.[18]   To ensure swift, manageable discovery, the NRA has limited ***all*** of its Requests to the time period from January 1, 2017, to present.

## C.   Despite Sustained Meet-Confer Efforts, Defendants Refuse To Provide Anything Beyond Boilerplate, Generalized Objections.

Rather than make a good faith effort to comply with the Requests, Defendants have rebuffed and sought to evade any discovery shedding light on the government's decision to pursue the NRA and its affinity-insurance partners.   After Defendants failed to obtain a stay of all discovery pending adjudication of their (meritless) motion to dismiss the NRA's selective-

---

[13] *See* Ex. 3 (Cuomo Reqs.), at Request Nos. 25–26; Ex. 1 (DFS Reqs.), at Request Nos. 29–30.

[14] *See* Ex. 2 (Vullo Reqs.), at Request Nos. 11–13, 27; Ex. 3 (Cuomo Reqs.), at Request Nos. 12–15; Ex. 1 (DFS Reqs.), at Request Nos. 12–14.

[15] *See* Ex. 2 (Vullo Reqs.), at Request Nos. 4, 6, 7; Ex. 3 (Cuomo Reqs.), at Request Nos. 4, 6, 7; Ex. 1 (DFS Reqs.), at Request Nos. 4, 6, 7.

[16] *See* Ex. 2 (Vullo Reqs.), at Request Nos. 8–9; Ex. 3 (Cuomo Reqs.), at Request Nos. 8–9; Ex. 1 (DFS Reqs.), at Request Nos. 8–9.

[17] *See* Ex. 2(Vullo Reqs.), at Request No. 26; Ex. 3 (Cuomo Reqs.), at Request No. 26; Ex. 1 (DFS Reqs.), at Request No. 26.

[18] *See* Ex. 2 (Vullo Reqs.), at Request Nos. 23, 24, 25; Ex. 3 (Cuomo Reqs.), at Request Nos. 23(2), 24, 25; Ex. 1 (DFS Reqs.), at Request Nos. 24, 24(2), 25.

enforcement claims,[19] they sought and were granted an extension of their deadline to produce documents in response to the Requests.[20]

Unfortunately, even with the benefit of that extension, Defendants' responses remain plainly deficient.[21]  Nearly every Request elicited boilerplate, generalized objections (regarding, e.g., "vague" "over broad"),[22] with no indication of how or why a particular Request was "vague" or "overbroad" or whether documents were being withheld pursuant to any objections.  When the NRA inquired whether particular phrasing contained in one of several purportedly "vague and ambiguous" Requests could be amended to resolve Defendants' objection, defense counsel replied that any **clarified wording would "not be fruitful"** because **nothing would change Defendants' "vague and ambiguous" objections**.[23]  For every Request, Defendants insisted that the phrase "all documents and communications" (accompanied by a subject-matter clause, such as "all documents and communications relating to the April 2018 Letters") was itself vague and ambiguous, notwithstanding that the NRA provided detailed definitions specifying the exact types of records

---

[19] Defendants' motion (ECF No. 63) is pending on a submission basis.

[20] Specifically, although Defendants' response was initially due December 21, 2018, they obtained an extension until January 5, 2019—with the explicit understanding that any responsive documents (distinguished from mere written "responses and objections") would be forthcoming on that date. *See* Gase Decl., at ¶¶ 4-5.

[21] *See* Objections to Plaintiff's First Request for Production to Defendant Vullo, dated December 21, 2018 ("Vullo Objs."), attached to the Gase Decl. as Exhibit 5; Objections to Plaintiff's First Request for Production to Defendant Cuomo, dated December 21, 2018 ("Cuomo Objs."), attached to the Gase Decl. as Exhibit 6; Objections to Plaintiff's First Request for Production to Defendant DFS, dated December 21, 2018 ("DFS Objs."), attached to the Gase Decl. as Exhibit 4.

[22] *See* Ex. 5 (Vullo Objs.) (asserting each of these boilerplate objections in all of her Responses); *see* Ex. 6 (Cuomo Objs.) (asserting each of these boilerplate objections in twenty-three out of twenty-four of his Responses); *see* Ex. 4 (DFS Objs.) (asserting each of these boilerplate objections in all of its Responses).

[23] *See* Gase Decl., at ¶ 12.

that would constitute "documents" or "communications."[24]

Defendants also assert a litany of privileges—including attorney-client, work product, law enforcement privilege, intra-agency privilege, inter-agency privilege, deliberative process privilege, and "any other applicable privileges"—yet cannot tell the NRA which privilege(s) apply to which document(s) or Request(s). Defendants have refused to produce a privilege log.[25]

On January 7, 2019, Defendants supplemented their written responses and objections.[26] Moreover, they finally produced documents: a scant ninety-five (95) records that were stripped of requested metadata.[27] The Supplemental Responses admit that there are potentially ***thousands*** of records being withheld pursuant to Defendants' boilerplate, generalized objections and privilege claims, but refuse to specify what is being withheld pursuant to which objection(s) and, as before, refuse to explain the basis for objections such as "ambiguous" and "over broad."[28]  Defendants still refuse to prepare a privilege log with respect to any of the privileges asserted.  And the

---

[24] *See* Gase Decl., at ¶ 13.

[25] *See generally* Supplemental Responses.

[26] *See* Supplemental Responses to Plaintiff's First Request for Production to Defendant Vullo, dated January 7, 2019 ("Vullo Resps."), attached to the Gase Decl. as Exhibit 9; Objections to Plaintiff's First Request for Production to Defendant Cuomo, dated January 7, 2019 ("Cuomo Resps."), attached to the Gase Decl. as Exhibit 10; Supplemental Responses to Plaintiff's First Request for Production to Defendant DFS, dated January 7, 2019 ("DFS Resps."), attached to the Gase Decl. as Exhibit 8 (collectively, "Supplemental Responses").

[27] In particular, although the documents produced by Defendants largely appear to consist of emails, the documents are converted to "PDF" format which precludes the NRA from examining metadata artifacts that would corroborate the date a message was sent or received, by whom, and how it was stored.  The omission of metadata also reduces the NRA's ability to search or sort the documents.  This is a violation of Fed. R. Civ. P. 34, which requires production of metadata where—as here—a party explicitly requests it.  *See, e.g.,* Ex. 2 (Vullo Reqs.), at 3, ¶ 5 (specifically seeking metadata); *Yu Chen v. LW Rest., Inc*., 2011 WL 3420433, at *14 (E.D.N.Y. Aug. 3, 2011) (concurring that "electronic discovery with original metadata" is required under Rule 34, and awarding sanctions for spoliation).

[28] *See, e.g.,* Ex. 9 (Vullo Resps.), Response No. 2.

Supplemental Responses contrive an additional ground for withholding documents, not found in any federal or local rule or case law: that because the NRA is the subject of an investigation by Defendants, it cannot pursue discovery concerning investigators' alleged violations of its constitutional rights.[29]

Having exhausted good faith meet-confer efforts, and cognizant of advancing case deadlines, the NRA now seeks relief from the Court.

### III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter."[30] Further, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  The party resisting discovery has the burden to show why the discovery should be denied.[31]

### IV.   ARGUMENTS AND AUTHORITIES

**A.   The NRA's Requests Are Reasonably Tailored To Seek Relevant Documents, And Defendants' Boilerplate Objections Should Be Stricken.**

Separate and apart from Defendants' meritless privilege assertions (which are addressed *infra* at Section II.B), the Court should strike Defendants' boilerplate, generalized objections

---

[29] *See e.g.*, Ex. 9 (Vullo Resps.); *see e.g.*, *Assoc. Container Trans. (Australia) Ltd. v. U.S.,* 502 F. Supp. 505, 509-10 (S.D.N.Y. 1980), *rev'd on other grounds,* 705 F.2d 53 (2d Cir. 1983) (denying a protective order and allowing discovery for petitioners that were the subject of an antitrust investigation in order to support a challenge to the merits of the investigation).

[30] FED. R. CIV. P. 26(b)(1).

[31] *See Wolff v. State Univ. of N.Y. at Cortland*, 2015 WL 13344112, at *2 (N.D.N.Y. Feb. 12, 2015).

concerning vagueness, ambiguity, overbreadth, and lack of proportionality.  Courts in this Circuit have long held that "generalized objections that discovery requests are vague, overly broad, or unduly burdensome are not acceptable and will be overruled,"[32] a principle further underscored by the December 2015 amendments to the Federal Rules of Civil Procedure.  Those amendments (and accompanying Advisory Committee notes) emphasize that, "an objection must state whether any responsive materials are being withheld . . . . [and] should state the scope that is [and is] not overbroad."[33]  Defendants have repeatedly failed to meet those obligations in this case, and good faith efforts by the NRA to elicit their compliance have been rebuffed.

Accordingly, the NRA respectfully requests that the Court strike Defendants' objections and order all responsive documents produced forthwith.  Moreover, even if the Court chooses to entertain Defendants' objections on their merits, the Court should compel compliance with each of the following categories of Requests for reasons set forth below.

1.    **The NRA's Requests Concerning DFS's Investigations Of The NRA Endorsed Insurance Programs.**

In Vullo Requests No. 1–3, 5, 10, and 17–22, Cuomo Requests No. 1–3, 5, 10, 11, 19–23, and 27, DFS Requests No. 1–3, 5, 10, 11, 18–23, and 31, the NRA seeks documents related to various aspects of DFS's investigation of the NRA endorsed insurance programs, which serves as

---

[32] *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 432 (W.D.N.Y. 2004); *see also CapRate Events, LLC v. Knobloch*, 2018 WL 4378167, at *2 (E.D.N.Y. Apr. 18, 2018) ("[T]he responses to requests . . . stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing."); *Wagner v. Dryvit Sys.*, 208 F.R.D. 606, 610 (D. Neb. 2001) ("The defendant has objected to nearly all of plaintiffs' discovery request by stating that the requests are overboard, vague, ambiguous and unduly burdensome. However, these objections are not sufficiently specific to allow the court to ascertain the claimed objectionable character of the discovery request.").

[33] *See* FED. R. CIV. P. 34 advisory committee's note to 2015 amendment.

the foundation of the NRA's claims.[34]   In response, Defendants offer generalized objections

regarding vagueness, ambiguity, and scope[35] (and assert various privileges).[36]

   The records sought by these Requests relate directly to the NRA's Equal Protection and

First Amendment claims, as well as certain defenses set forth in Defendants' Answer to the NRA's

Amended Complaint.   The NRA claims that Defendants improperly targeted the NRA for

investigation, not because of any alleged violation of the law, but because Defendants did not like

the NRA's public advocacy regarding the Second Amendment.[37]   Documents related to why such

an investigation was commenced or the extent of such an investigation go to the heart of the NRA's

claims.[38]   Furthermore, as Judge McAvoy acknowledged in the Motion to Dismiss Order,

information regarding the investigation and the timing of the Consent Orders is relevant to the

Court's analysis of the NRA's First Amendment claims.[39]

   Additionally, in their Answer, Defendants assert as a defense to this action that the NRA,

Lockton, and Chubb violated New York law.  The NRA has every right to seek discovery regarding

that defense, including information Defendants relied upon to make that conclusion and

information that may demonstrate no such violation existed.

---

[34] *See* Ex. 2 (Vullo Reqs.), at 10-13; Ex 3 (Cuomo Reqs.), at 10-13; Ex. 1 (DFS Reqs.), at 10-13; *see also* Ex. 14 (Chart of DFS's Investigation of the NRA Endorsed Insurance Programs).

[35] *See* Ex. 9 (Vullo Resps.), at Responses No. 1-3, 5, 10, 17-22; Ex. 10 (Cuomo Resps.), at Responses No. 1-3, 5, 10, 11, 19-23; Ex. 8 (DFS Resps.), at Responses No. 1-3, 5, 10, 11, 18-23.

[36] The NRA addresses all of Defendants' privilege assertions in Section B, *infra*, in lieu of addressing them on a request by request basis.

[37] *See* ECF No. 37, at 15-16.

[38] *See id.*

[39] *See, e.g.*, ECF No. 56, at 23, ("the temporal proximity between the Cuomo Press Release, the Guidance Letters, and the Consent Orders plausibly suggests that the timing was intended to reinforce the message that insurers and financial institutions that do not sever ties with the NRA will be subject to retaliatory action by the state").

Moreover, the time period covered by these Requests is narrow and the discovery sought is proportionate to the millions of dollars at stake in this litigation and the potential irreparable harm caused by constitutional violations.  According to DFS, its investigation of the NRA endorsed programs did not begin until September 13, 2017, during a meeting with the district attorney's office in New York State.[40]  Therefore, any responsive documents would have been generated during a period less than seventeen (17) months,[41] reducing the likelihood that the Requests encompass an unmanageable volume of material.

### 2.    The NRA's Requests Concerning The April 2018 Letters And The Corresponding Press Release.

In Cuomo Requests No. 25 and 26 and DFS Requests No. 29 and 30,[42] the NRA seeks materials concerning the April 2018 Letters and the subsequent April 19 Press Release, such as "the research, analyses, models, or estimates" developed by DFS regarding the reputational risk warned about in the April 2018 Letters and the April 19 Press Release; how "gun promotion organizations" are identified in the April 2018 Letters and April 19 Press Release; and Financial Institutions that sought guidance or clarification regarding the April 2018 Letters and April 19

---

[40] See ECF. No. 28-1, at ¶ 3.

[41] Additionally, for several of the requests, the time period involved is even smaller.  For example, DFS and Vullo Requests No. 20 and Cuomo Request No. 21 seeks documents and communications related to the reasons DFS commenced the NRA Insurance Investigation or the reasons DFS, Vullo, or Cuomo recommended the commencement of the NRA Insurance Investigation. Considering that Mr. Levine stated he was first approached about a potential investigation of the NRA on September 13, 2017, and that he commenced the investigation in or about October 2017, materials responsive to Requests No. 20 are likely to cover less than six weeks of time.  Similarly, DFS Request No. 31 seeks documents and communications related to four specific and limited provisions in two Consent Orders that were likely drafted, at most, over a few-month time frame.

[42] See Ex. 1 (DFS Reqs.), at 14-15; Ex. 3 (Cuomo Reqs.), at 13; see also Ex. 15 (Chart of April 2018 Letters and Press Release).

Press Release.[43]  In response, Defendants offer generalized objections regarding vagueness, ambiguity, and scope[44] (and assert various privileges).[45]

As discussed above, Defendants' boilerplate and unexplained objections are inadequate and improper.[46]  Furthermore, each of these requests cover less than one year and seek information directly related to the NRA's core First Amendment claims.  Specifically, the April 2018 Letters and April 19 Press Release form major components of the Defendants' censorship campaign against the NRA.  Materials related to these documents will aid the jury in determining the intent and purpose behind the issuance of these documents, as well as their effect on those who viewed the documents.

### 3.    The NRA's Requests Concerning DFS's Investigation Of Other Affinity Insurance Programs.

In Vullo Requests No. 11 – 13, and 27, Cuomo Requests No. 12 – 15, and DFS Requests No. 12 – 14, the NRA seeks materials spanning a two-year period concerning DFS's investigation into affinity insurance programs that have no ties or relationships to the NRA.[47]  In response, Defendants offer generalized objections regarding vagueness, ambiguity, and scope[48] (and assert various privileges).[49]

---

[43] *See* Ex. 1 (DFS Reqs.), at 15.

[44] *See* Ex. 10 (Cuomo Resps.), at Response Nos. 29, 30; Ex. 8 (DFS Resps.), at Response Nos. 29, 30.

[45] *See* Section B, *infra*.

[46] *See* Section IV(A)(1), *supra*.

[47] *See* Ex. 2 (Vullo Reqs.) at 12, 14; Ex. 3 (Cuomo Reqs.), at 11-12; Ex. 1 (DFS Reqs.), at 12; *see also* Ex. 16 (Chart of DFS Investigation of Other Affinity Insurance Programs).

[48] *See* Ex. 9 (Vullo Resps.), at Response Nos. 11–13, 27; Ex. 10 (Cuomo Resps.), at Response Nos. 12–15; Ex. 8 (DFS Resps.), Response Nos. 12–14.

[49] *See* Section B, *infra*.

As Defendants emphasize in their pending motion papers, the *sin qua non* of selective enforcement is that Defendants "knew of other violations, but declined to prosecute them."[50] Accordingly, Defendants' refusal to provide discovery regarding their awareness and treatment of similarly situated affinity-insurance programs is improper: such material is squarely relevant to this case.[51]  The NRA has no desire to conduct a fishing expedition encompassing DFS's entire docket, and specifically offered, during the course of meet-confer discussions, to negotiate limiting parameters to focus this category of discovery.[52]  Defendants simply refused, choosing to stand on their facially faulty, boilerplate objections.  Defendants' objections should be stricken, and they should be ordered to cooperate with the NRA regarding this category of discovery.

### 4. The NRA's Requests Concerning Defendants' Communications With Financial Institutions Or Insurers Related To Their Business Relationships With The NRA Or Other Gun Promotion Organizations.

In Vullo, Cuomo, and DFS Requests No. 4, 6, and 7, the NRA seeks information exchanged between Defendants and any Financial Institutions or Insurers that relate to business arrangements with the NRA or other Gun Promotion Organizations.[53]  In response, Defendants offer generalized

---

[50] *See* ECF No. 63-1, at 11.

[51] *See, e.g*, *Dowell v. Cox Okla. Telecom, LLC*, 2019 WL 124843, at \*4 (W.D. Okla. Jan. 7, 2019) (permitting discovery in a selective enforcement case of performance-related disciplinary records of employees who worked under the same supervisors and at the same location at the requesting party); *Doe v. Trs. of the Univ. of Penn.,* 270 F. Supp. 3d 799, 824-25 (E.D. Penn. 2017) (permitting discovery of the university's previous Title IX investigations into similarly-situated individuals to determine whether they were treated more favorably than he was in his own Title IX investigation); *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 19 (D.D.C. 1997) (ordering in a selective enforcement case that the IRS produce previous written determinations and advice memoranda for other churches and religious organizations that received determinations as to their tax exemption status based on their political activity).

[52] *See* Gase Decl., at ¶ 11.

[53] *See* Ex. 2 (Vullo Reqs.), at 10-11; Ex. 3 (Cuomo Reqs.), at 10; Ex. 1 (DFS Reqs.), at 10-11; *see also* Ex. 17 (Chart of Defendants' Communications with Financial Institutions and Insurers Regarding Business Relationships with the NRA or Other Gun Promotion Organizations).

objections regarding vagueness, ambiguity, and scope[54] (and assert various privileges).[55]

These requests are directly relevant to the NRA's First Amendment claims and only seek documents covering slightly more than two years.  The NRA alleges that Defendants are coercing Financial Institutions to stop doing business with the NRA.[56]   Communications between Defendants and regulated entities about the entities' actual or potential business relationships with the NRA are the exact type of evidence that could demonstrate such coercion.   Similarly, communications by Defendants to non-governmental organizations related to other Gun Promotion Organizations will directly demonstrate Defendants' viewpoint discrimination against organizations, like the NRA, the support citizens' rights under the Second Amendment.  The only way the NRA can ascertain the full scope of Defendants' exhortations to individuals is by reviewing the communications between Defendants and non-parties related to the NRA and other Gun Promotion Organizations.

### 5.    The NRA's Requests Concerning Adverse Or Enforcement Actions Against Financial Institutions With Business Arrangements With The NRA And Other Gun Promotion Organizations.

In Vullo, Cuomo, and DFS Requests 8–9, the NRA seeks information concerning any Adverse Actions or Enforcement actions pursuant to applicable Insurance Law against Financial Institutions with actual or potential business ties with the NRA or similar Gun Promotion Organizations.[57]  Specifically to avoid ambiguity, the NRA defined the range of "Adverse Actions"

---

[54] *See* Ex. 9 (Vullo Resps.), Response Nos. 4, 6, 7; Ex. 10 (Cuomo Resps.), Response Nos. 4, 6, 7; Ex. 8 (DFS Resps.), Response Nos. 4, 6, 7.

[55] *See* Section B, *infra*.

[56] *See* ECF No. 37, at 21.

[57] *See* Ex. 2 (Vullo Reqs.), at 11; Ex. 3 (Cuomo Reqs.), at 10-11; Ex. 1 (DFS Reqs.), at 11; *see also* Ex. 18 (Chart of Adverse or Enforcement Actions Against Financial Institutions with Business Arrangements with the NRA and Other Gun Promotion Organizations).

into which it was inquiring, drafting a detailed definition that referenced activities described verbatim on DFS's website.[58] Nonetheless, Defendants offer generalized objections regarding vagueness, ambiguity, and scope[59] (and assert various privileges).[60]

The NRA alleges that Defendants are coercing Financial Institutions to stop doing business with the NRA because they dislike the NRA's public advocacy in relation to the Second Amendment.[61] Any information regarding the Defendants' potential or actual Adverse Actions or enforcement actions against the Financial Institutions with business ties to the NRA, or other Gun Promotion Organization, is the exact type of evidence that could demonstrate such coercion.

**6.   The NRA's Requests Concerning Information Exchanged Between Defendants Related To This Action.**

In Vullo, Cuomo, and DFS Requests No. 26, the NRA seeks materials concerning information exchanged between defendants related to this Action.[62] In response, Defendants offer generalized objections regarding vagueness, ambiguity, and scope[63] (and assert various privileges).[64]

This action was commenced in May 2018, less than nine months ago. After the commencement of the action, Defendants did a massive media push extolling their belief as to the

---

[58] *See, e.g.*, Ex. 2 (Vullo Reqs.), at 4.

[59] *See* Ex. 9 (Vullo Resps.), at Response Nos. 8-9; Ex. 10 (Cuomo Resps.), Response Nos. 8-9; Ex. 8 (DFS Resps.), at Response Nos. 8-9.

[60] *See* Section B, *infra*.

[61] *See* ECF No. 37, at 21.

[62] *See* Ex. 2 (Vullo Reqs.), at 14; Ex. 3 (Cuomo Reqs.), at 13; Ex. 1 (DFS Reqs.), at 14; *see also* Ex. 19 (Chart of Information Exchanged Between Defendants Related to this Action).

[63] *See* Ex. 9 (Vullo Resps.), at Response No. 26; Ex. 10 (Cuomo Resps.), at Response No. 26(1); Ex. 8 (DFS Resps.), at Response No. 26.

[64] *See* Section B, *infra*.

substance of the allegations in the action and making various statements about the basis of their decisions described in the Action.[65]  Prior to many of the press releases and social media posts, it is likely Defendants exchanged communications or documents that are not protected by any privilege.  All such documents are direct evidence of and demonstrate Defendants' intent behind their censorship campaign against the NRA and are, therefore, highly relevant materials that must be produced.

7.     **The NRA's Requests Concerning Defendants' Referrals Of Matters To Other Government Agencies.**

In Vullo Requests No. 23, 24, and 25, Cuomo Requests No. 23(2), 24, and 25, and DFS Requests No. 24, 24(2), and 25, the NRA seeks information concerning Defendants referrals of matters to governmental agencies.[66]  In response, Defendants offer generalized objections regarding vagueness, ambiguity, and scope[67] (and assert various privileges).[68]

The NRA already has evidence that Defendants reached out to various Governors and insurance departments across the country regarding the NRA endorsed insurance programs.  The NRA believes that this behavior was highly unusual and done solely as part of Defendants implicit censorship campaign and as retaliation for Defendants' utilizing their First Amendment right to publicly advocate on behalf of its controversial views.  Accordingly, these requests seek to not only determine the extent of Defendants communications and referrals to other governmental agencies regarding the NRA, but also whether Defendants have made other referrals, unrelated to

---

[65] *See, e.g.*, ECF No. 48-1, at 4, 6, and 8.

[66] *See* Ex. 2 (Vullo Reqs.), at 13; Ex. 3 (Cuomo Reqs.), at 13; Ex. 1 (DFS Reqs.), at 13–14; *see also* Ex. 20 (Chart of Defendants' Referrals of Matters to Other Government Agencies).

[67] *See* Ex. 9 (Vullo Resps.), at Response Nos. 23, 24, 25; Ex. 10 (Cuomo Resps.), at Response Nos. 23(2), 24, 25; Ex. 8 (DFS Resps.) at Response Nos. 24, 24(2), 25.

[68] *See* Section B, *infra*.

the NRA, in the last two years.  This information is directly relevant to the NRA's First Amendment claims and, therefore, must be produced.

**B.      Defendants' Refusal To Provide A Privilege Log Is Improper, And Several Privileges Asserted Are Facially Inapplicable.**

In response to nearly every Request, Defendants assert a litany of privileges—but refuse to provide a privilege log substantiating any of them.  Even with respect to privileges that concededly may apply in this case (attorney-client privilege; work product doctrine), Defendants' flat refusal to provide a privilege log flouts their discovery obligations and should result in waiver. Moreover, Defendants claim additional privileges, such as law enforcement privilege and deliberative process privilege, that have limited or no proper application in a selective-enforcement case like this one, and/or can be overcome by a showing of substantial need.  These additional, governmental privileges also arise only upon satisfaction of threshold conditions—such as the close review of documents by a high-ranking agency official—that Defendants have not even attempted to satisfy.  Accordingly, the Court should compel Defendants to produce responsive documents irrespective of any purported privilege claims.

**1.      None Of The Privileges Asserted By Defendants Can Be Sustained Absent A Privilege Log.**

To date, Defendants have refused to provide any sort of log detailing what documents are being withheld under any privilege grounds and, instead, are solely relying on objections asserted in Defendants Responses.[69] This course of action is, without question, clearly inadequate under the federal and local rules.

Federal Rule 26(b)(5)(A) requires that:

> when a party withholds information otherwise discoverable by

---

[69] *See* Supplemental Responses.

claiming that the information is privileged or subject to protection as trial-preparation material, the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information privileged or protected, will enable other parties to assess the claim.[70]

This Court's Local Rules go even further and specifically prohibit the very action taken by Defendants: "The parties may not make any generalized claims of privilege."[71] Importantly, demonstrating the applicability of privilege on a document-by-document basis is critical to enforcing Defendants' asserted government privileges, including the law enforcement and deliberative process privileges.[72]

Here, Defendants breach their clear discovery obligations by refusing to submit any description of the documents withheld, much less a privilege log that expressly asserts what privilege is being claimed as to what material and describing the particular materials withheld in sufficient detail to assess the privilege claim.[73]   Accordingly, the Court should find Defendants

---

[70] FED. R. CIV. P. 26(b)(5)(A)(i)-(ii).

[71] N.D.N.Y. L.R. 7.1(d)(7) (requiring "[a] party claiming privilege with respect to a communication or other item" to "specifically identify . . . the grounds for the claimed privilege" and prohibiting a party from asserting "any generalized claims of privilege."); *see Fine v. ESPN, Inc.*, 2014 WL 12586848, at *3 (N.D.N.Y. Dec. 24, 2014) (holding that assertions of attorney-client privilege in the provided privilege log did not meet the requirements of either Federal Rule 26(b)(5) or Local Rule of Practice 7.1(d)(7)).

[72] *See In re The City of N.Y.*, 607 F.3d 923, 944 (2d Cir. 2010) (explaining that a party cannot assert a blanket claim of privilege for the law enforcement privilege, but must assert the privilege on a document-by-document basis); *S.E.C. v. Yorkville Advisors LLC*, 300 F.R.D. 152, 159–61 (S.D.N.Y. 2014) (describing necessity for detailing basis for asserting all privileges, including the law enforcement and deliberative process privileges).

[73] *See In re Welspun Litig.*, 2018 WL 4693587, at *2 (S.D.N.Y. Sept. 21, 2018) ("As with *all privileges*, the party asserting the privilege must submit a privilege log of withheld documents.") (emphasis added) (citing FED. R. CIV. P. 26(b)(5)(A)); *Kshel Realty Corp. v. City of N.Y.*, 2004 WL 2978295, at *3 (S.D.N.Y. Dec. 20, 2004) (requiring party to "promulgate a revised privilege log that identifies the subject matter of each document with as much specificity as possible while preserving the privilege [and then] . . . provide a document-by-document explanation of the

waived any assertion of the "claimed" privileges because of their willful and blatant violation of the federal and local rules.[74]

## 2. "Law Enforcement Privilege" And "Deliberative Process Privilege" Arise Only Upon Satisfaction Of Stringent Procedural Hurdles—Which Defendants Have Not Cleared.

Separate and apart from the preparation of a privilege log, the Second Circuit requires that Defendants meet specific, formal procedural requirements to invoke any government privileges, including the law enforcement and deliberative process privileges.[75] Primary among these requirements are (1) the privilege be asserted by the head of the agency having control over the requested information, or by any qualified, high-authority subordinate designated by the agency head to have the authority to assert the privilege,[76] and (2) such individual review the documents

---

relationship between the information contained in the document and the grounds on which the privilege is asserted.").

[74] *See Yorkville Advisors,* 300 F.R.D. at 167–168 ("[T]he SEC waived its privilege protections by failing to produce in a timely manner a privilege log that complied with the applicable rules."); *PKFinans Int'l Corp v. IBJ Schroder Leasing Corp,* 1996 WL 525862, at *4 (S.D.N.Y. Sept. 17, 1996) ("Limiting the remedy to the belated preparation of a privilege log effectively tells practitioners they can flout the Court's Rules and incur no sanction other than an Order directing compliance with the rules."); *U.S. v. Constr. Prods. Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996) (holding that waiver of applicable privileges was appropriate when the party asserting discovery privileges provided inadequate descriptions of the privileges asserted, failed to provide detail of the authors and recipients of the documents to which privilege applied, and only listed blanket assertions of privilege to multiple documents in the log); *see also Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2016 WL 7444910, at *3 (C.D. Cal. July 8, 2016) (rejecting "blanket assertion" of law enforcement, deliberative process, and attorney client privileges, as well as the work product doctrine, in responses to discovery requests without production of privilege log).

[75] *Martin v. Albany Bus. Journal, Inc.*, 780 F. Supp. 927, 932 (N.D.N.Y. 1992) ("[A] privilege is a 'governmental privilege simply by virtue of the fact that it is uniquely the government's privilege to assert.'"); *Mobil Oil Corp. v. Dept. of Energy*, 520 F. Supp. 414, 416–17 (N.D.N.Y. 1981).

[76] *See In re Grand Jury Subpoena dated August 9, 2000*, 218 F. Supp. 2d 544, 552–53 (S.D.N.Y. 2002); *Martin*, 780 F. Supp. at 932 ("The 'agency head' may delegate his authority to claim the privilege, but only to a subordinate of high authority, and the delegation *must be accompanied by guidelines on the use of the privilege*.") (emphasis added); *see also Martin*, 520 F. Supp. at 416 ("The requirement that delegation be restricted to high-level subordinates ensures that the delegate

and submit an affidavit sufficiently describing the documents.[77]   Absent proper delegation of authority, any assertion of a government privilege must be rejected.   Here, Defendants do not show that a qualified subordinate has been designated while accompanied with proper guidelines to invoke the law enforcement privilege and the deliberative process privileges.[78]   Further, even if the agency heads did assert the privileges, or if a proper delegation was made, Defendants have not produced an affidavit that demonstrates the agency head or designee reviewed the documents and described the nature of the documents and why the privilege was to be asserted.[79] As a result, Defendants have failed to meet the requirements to assert these privileges in response to Plaintiff's requests for production.

### 3.   Defendants Fail To Make The Required Showing That The Law Enforcement Privilege Applies.

Defendants fail to meet their burden to establish, beyond mere conclusory statements, that any documents contain information that the law enforcement privilege is intended to protect.[80] To qualify for protection, the documents must contain information that: (1) pertains to "law enforcement techniques and procedures," (2) undermines "the confidentiality of sources," (3)

---

official 'has sufficient expertise in the agency's operations and functions' to be able to render a well-informed decision on whether to invoke the privilege[.]") (citations omitted).

[77] *See U.S. v. Wey*, 252 F. Supp. 3d 237, 249-251 (S.D.N.Y. 2017) (rejecting *ipse dixit* assertions of law enforcement and deliberative process privileges by counsel).

[78] *Martin*, 780 F. Supp. at 932; *see In re Sealed Case*, 856 F.2d 268, 271 (D.C.C. 1988) ("[T]here must be a formal claim of [the law enforcement] privilege by the head of the department having control over the requested information[.]"); *Yorkville Advisors,* 300 F.R.D. at 160 (citing *In re Grand Jury Subpoena Dated August 9, 2000*, 218 F. Supp. 2d at 552–53) ("Moreover, 'the deliberative process privilege must be asserted by the head of the governmental agency, or an appropriately qualified designee[.]").

[79] *See Wey*, 252 F. Supp. 3d at 250.

[80] *In re The City of N.Y.*, 607 F.3d at 948–49; *see von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987), *cert. denied*, 481 U.S. 1015 (1987).

endangers "witness and law enforcement personnel," (4) undermines "the privacy of individuals involved in an investigation," or (5) seriously impairs "the ability of a law enforcement agency to conduct future investigations."[81]  Even if Defendants could establish, on a document by document basis, that each document falls into one of these categories—which Defendants refused to even attempt—the law enforcement privilege is only a qualified privilege[82] and, therefore, the documents may still be subject to discovery if:  (1) the NRA's suit is "non-frivolous and brought in good faith," (2) the document is not "available through other discovery or from other sources," and (3) the document sought is "importan[t]" to the NRA's case.[83]

Defendants cannot meet the "substantial threshold showing" that there are specific harms likely to accrue from disclosure of specific material they are claiming under the law enforcement privilege.[84]  Furthermore, where documents are critical to the NRA's case and, in fact, go to the very heart of Defendants' conduct violating the NRA's constitutional rights, the documents must nevertheless be disclosed.[85]

### 4.   The Deliberative Process Privilege Does Not Protect Documents Or Information When The Deliberative Process Itself Is The Subject Of The

---

[81] *In re The City of N.Y.*, 607 F.3d at 948 (quoting *In re Dep't of Investigation of City of N.Y.,* 856 F.2d 481, 484 (2d Cir. 1988), and *Morrissey v. City of N.Y.*, 171 F.R.D. 85, 90 (S.D.N.Y. 1997)); *McCaskill v. Bresset*, Civ. No. 9:13-CV-1487, Dkt. No. 43 (N.D.N.Y. Jan. 7, 2015) (applying law enforcement privilege to Inspector General's file and allowing Plaintiff to only examine and to take notes of redacted file); *Guillory v. Overbaugh*, Civ. No. 9:13-CV-1353, Dkt. No. 51 (N.D.N.Y. March 24, 2015) (same); *Henry v Liberty*, 2017 WL 633409, at *4 (N.D.N.Y. Feb. 16, 2017).

[82] *In re The City of N.Y.*, 607 F.3d at 948–49.

[83] *Id.* at 945.

[84] *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988) (quoting *Kelly v. City of San Jose,* 114 F.R.D. 653, 669 (N.D. Cal. 1987)).

[85] *See Preston v. Malcolm*, 2009 WL 4796797, at *6-8 (D.N.J. Dec. 8, 2009) (rejecting a blanket assertion of law enforcement privilege and holding that, "[i]n a § 1983 case, a claim of governmental privilege 'must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action'").

**Litigation.**

The deliberative process privilege "protects the decision making processes of the executive branch in order to safeguard the quality and integrity of governmental decisions."[86]  The policy behind the privilege is to encourage officials to candidly communicate with one another without fear of discovery of the communications during litigation.[87]  Nevertheless, the deliberative process privilege is a qualified privilege that does not automatically bar a document from being discoverable.[88]  Instead, Defendants must establish that the documents sought to be withheld are "predecisional" (*i.e.*, were "prepared in order to assist an agency decisionmaker in arriving at his decision")[89] and "deliberative," *i.e.*, "actually . . . related to the process by which policies are formulated."[90] (Defendants must establish that the documents are inter-agency or intra-agency documents that is both (1) predecisional and/or (2) deliberative.[91]  The deliberative process privilege does not operate indiscriminately to shield all decision-making by public officials,"[92] nor

---

[86] *Citizens Union of City of N.Y. v. Atty. Gen. of N.Y.*, 269 F. Supp. 3d 124, 157–58 (S.D.N.Y. 2017); *Marisol A. v. Giuliani*, 1998 WL 132810, at *6 (S.D.N.Y. Mar. 23, 1998) (quoting *Hopkins v. H.U.D.*, 929 F.2d 81, 84 (2d Cir. 1991)).

[87] *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 2014 WL 1909446, at *1 (S.D.N.Y. May 13, 2014) (quoting *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8–9 (2001)); *see also Marisol A.*, 1998 WL 132810, at *6 (the deliberative process privilege is premised upon the notion that "effective decision-making requires a free flow of information amongst government officials and that this free flow would be constrained if these communications had the potential to be revealed to outsiders"); *Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 157–58.

[88] *See Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 166-67.

[89] *Renegotiation Bd. v. Brumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).

[90] *Hopkins*, 929 F.2d at 84.

[91] *See Children First Found., Inc. v. Martinez*, 2007 WL 4344915, at *6 (N.D.N.Y. Dec. 10, 2007); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir.1999).

[92] *Schiller v. City of N.Y.*, 2007 WL 136149, at *10 (S.D.N.Y. Jan. 19, 2007) (quoting *Grossman v. Schwartz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989)).

does it "cover purely factual matters."[93]

Furthermore, where, as here, the party's cause of action is directed to the government's intent in rendering its policy decision, the deliberative process privilege "evaporates."[94]  In their letter briefing before the Magistrate Judge, Defendants cite no case—and the NRA is aware of no case—in which deliberative process privilege was successfully invoked by a government agency facing selective enforcement allegations.  Indeed, documents shedding light on the government's decision-making are essential to the prosecution of such allegations.  Illustratively, in the recent *Backpage* case (where, as here, the government allegedly targeted financial services providers in an indirect effort to suffocate disfavored speech), Judge Posner's ruling relies prominently on the contents of an internal law-enforcement strategy memo[95]—exactly the type of document that

---

[93] *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d at 482 (quoting *Envt'l Prot. Agency v. Mink*, 410 U.S.73, 87-88 (1973) for the proposition that "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery"); *Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988) ("Purely factual material not reflecting the agency's deliberative process is not protected.")); *Cipolla v. Cty. of Rensselaer*, 2001 WL 1223489, at *2 (N.D.N.Y. Oct. 10, 2001).

[94] *See Children First Found., Inc.*, 2007 WL 4344915, at *7; *see, e.g.*, *Ebbert v. Nassau Cty.*, 2007 WL 674725, at *11 (E.D.N.Y. Mar. 5, 2007) (finding that when the deliberations are "among the central issues in the case" or "when the subject of the lawsuit is the very nature of the decision making process, the privilege should not foreclose the production of critical information") (internal quotations and citations omitted); *Mitchell v. Fishbein*, 227 F.R.D. 239, 250 (S.D.N.Y. 2005) (surveying cases on the waiver); *State of N.Y. v. Oneida Indian Nation of N.Y. (Oneida I)*, 2001 WL 1708804, at *6 (N.D.N.Y. Nov. 9, 2001) (finding that the privilege must give way when the decision making process is the subject of the litigation) (citing *Marisol A*, 1998 WL 132810, at *7-8); *Mr. and Mrs. B. v. Bd. of Educ. of Syosset Cent. Sch. Dist*, 35 F. Supp. 2d 224, 230 (E.D.N.Y. 1998) (when the agency's position is "pivotal to the lawsuit"); *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 139 F.R.D. 295, 299 (S.D.N.Y. 1991) ("Where the deliberations of government are genuinely at issue, privileges designed to shield the deliberative process from public scrutiny 'may not be raised as a bar against disclosure.'") (quoting *Burka v. N.Y. City Trans. Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) & citing *Grossman v. Schwarz*, 125 F.R.D. 376, 385 (S.D.N.Y. 1989)).

[95] *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 232–33 (7th Cir. 2015).

Defendants seek to withhold from the NRA.

Accordingly, Defendants cannot shield documents related to DFS's NRA Insurance Investigation from production through the deliberative process privilege.

### 5.   No "Inter-Agency Privilege" Or "Intra-Agency Privilege" Exists In Civil Litigation Discovery.

Defendants inaccurately assert throughout their Responses to the NRA's requests both an intra-agency and inter-agency privilege to protect certain documents from discovery.[96]  These privileges, however, do not exist in civil litigation.[97]  Instead, Defendants likely conflated these alleged "privileges" with exemptions under the Freedom of Information Act.[98]  Accordingly, the Court should require Defendants to produce any documents withheld based on an intra- or inter-agency privilege.

### 6.   Defendants' Blanket Assertion Of Attorney-Client Privilege And The Work Product Doctrine With Respect To *All* Documents Created Since May 2018 Is Improper.

Defendants attempt to cloak all documents created after the initiation of this lawsuit with attorney-client privilege or the work product doctrine, regardless of whether an attorney was involved or whether the communication relates to legal advice.  Neither law nor common sense

---

[96] *See, e.g.*, Ex. 9 (Vullo Resps.) at Response No. 1 ("Defendant Vullo objects to this request as it seeks information protected from disclosure by the . . . intra-agency privilege and . . . the inter-agency privilege.").

[97] *See Yorkville Advisors*, 300 F.R.D. at 161–62 ("[T]he [party] asserts a privilege it denominates as the intergovernmental investigative privilege . . . [n]either my own research nor defendants' has disclosed any federal case recognizing the privilege."); *see also Tigue v. U.S. Dept. of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (equating the inter-agency privilege to the deliberative process privilege for purposes of civil litigation).

[98] 5 U.S.C. § 552(b)(5) (2006), *amended by* OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524; *see Tigue*, 312 F.3d at 76 ("FOIA Exemption 5 . . . protects from disclosure 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . under normal discovery rules.'").

supports this approach.   Only communications between an attorney and a client where the "predominant purpose" of the communication is to obtain or provide legal advice is protected by the attorney client privilege.[99]   Likewise, the work product doctrine only protects an attorney's mental processes, strategies, and legal impressions in relation to the litigation.[100]   Defendants' assertation that either privilege is applicable simply based on the creation of a document after the initiation of a lawsuit is wrong.[101]   An illustrative, non-exhaustive list of documents created after the imitation of this lawsuit which are unambiguously discoverable include: press releases, tweets, and other forms of media by an attorney are not protected by the work product doctrine.[102]   Indeed, even communication with counsel, in connection with the foregoing types of communications—or communications that constitute mere recitations of fact—are not privileged.[103]

**C.**     **The Court Should Award The NRA Attorneys' Costs And Fees.**

The NRA is entitled to its attorneys' fees and costs incurred in connection with bringing this Motion.[104]   As mandated by the Second Circuit and the Federal Rules of Civil Procedure, a court "*must* order a sanction under Rule 37(a)(5) if it is forced to grant a motion to compel

---

[99] *FTC v. Abbvie, Inc.*, 2015 WL 8623076 (E.D. Pa. Dec. 14, 2015); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142, 146 (E.D.N.Y. 2014); *Rossi v. Blue Cross & Blue Shield of Greater NY,* 540 N.E.2d 703 (N.Y. 1989); *In re Priest v. Hennessy,* 409 N.E.2d 983 (N.Y. 1980).

[100] *U.S. v. Adlman,* 68 F.3d 1495, 1501 (2d Cir.1995) (citing *Hickman v. Taylor,* 329 U.S. 495 (1947)); *Matter of Minebea Co. Ltd.,* 143 F.R.D. 494, 499 (S.D.N.Y. 1992); *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 87–88 (N.D.N.Y. 2003); *Gould Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676, 680 (2d Cir. 1987).

[101] *See* ECF No. 70, at 5.

[102] *See Rattner v. Netburn*, 1989 WL 223059, at *6 (S.D.N.Y. June 20, 1989), *aff'd,* 1989 WL 231310 (S.D.N.Y. Aug. 23, 1989).

[103] *See Loguidice v. McTiernan*, 2016 WL 4487779, at *17–19 (N.D.N.Y. Aug. 25, 2016); *Koumoulis v. Indep. Fin. Mkt. Grp., Inc.*, 295 F.R.D. 28, 44–45 (E.D.N.Y. 2013).

[104] Fed. R. Civ. P. 37(a)(5)(A).

discovery or the requested discovery is provided after such a motion was filed."[105]   Here, Defendants' complete lack of effort in crafting their responses and objections to legitimate discovery requests warrants impositions of sanctions.[106]   An award is particularly appropriate where the objecting party submits broad invocations of privilege as to entire categories of documents that prevent the requesting party from making a reasoned argument in response and the Court from making an informed balancing decision on the merits of the invoked privilege.[107]

## V.   CONCLUSION

The NRA requests that the Court enter an order:  (1) granting this motion; (2) overruling Defendants' objections; (3) requiring Defendants to produce all responsive documents within five days; (4) overruling all of Defendants' asserted privileges; (5) requiring production of all documents withheld on the basis of any privilege; (6) awarding the NRA its reasonable attorneys' fees and costs in bringing this motion; and (7) awarding the NRA all other appropriate relief.

---

[105] *Mantell v. Chassman*, 512 F. App'x 21, 25 (2d Cir. 2013) (emphasis added); *see also In re Savitt/Adler Litig.*, 1997 WL 369387, at *5 (N.D.N.Y. June 24, 1997) (recognizing the mandatory nature of awarding attorneys' fees and expenses unless the nondisclosure was justified).  The award of attorneys' fees and costs serves several important purposes, including to compensate the moving party, *see Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2010 WL 3992215, at *3 (W.D.N.Y. Oct. 12, 2010), to "ensure that a party will not benefit from its own failure to comply," and to "serve a general deterrent effect on the case at hand and on other litigation." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).

[106] *See Torres v. Kuzniasz*, 936 F. Supp. 1201, 1213 (D.N.J. 1996); *S.E.C. v. Yorkville Advisors, LLC*, 2015 WL 855796, at *3, 7–10 (S.D.N.Y. Feb. 27, 2015).

[107] *See Torres*, 936 F. Supp. at 1213; *Yorkville Advisors*, 2015 WL 855796, at *3, 7–10.

Dated: January 22, 2019                    Respectfully submitted,


By:     /s/ William A. Brewer III
        William A. Brewer III (Bar No. 700217)
        wab@brewerattorneys.com
        Stephanie L. Gase (Bar No. 700205)
        sgase@brewerattorneys.com
        Sarah B. Rogers (Bar No. 700207)
        sbr@brewerattorneys.com
        BREWER, ATTORNEYS & COUNSELORS
        750 Lexington Avenue, 14th Floor
        New York, New York 10022
        Telephone:  (212) 489-1400

        Charles J. Cooper*
        ccooper@cooperkirk.com
        Michael W. Kirk*
        mkirk@cooperkirk.com
        J. Joel Alicea*
        jalicea@cooperkirk.com
        COOPER & KIRK, PLLC
        1523 New Hampshire Ave., NW
        Washington D.C., 20036
        Telephone: (202) 220-9660
        Facsimile: (202) 220-9601

        *appearing pro hac vice

        **ATTORNEYS FOR PLAINTIFF THE NATIONAL
        RIFLE ASSOCIATION OF AMERICA**