# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § | |
|       Plaintiff, | § | CIVIL CASE NO. 18-CV-00566- |
| v. | § | TJM-CFH |
| | § | |
| ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, | § § § § § § | |
|       Defendants. | § | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

William A. Brewer III (Bar No. 700217)
Stephanie L. Gase (Bar No. 700205)
Sarah B. Rogers (Bar No. 700207)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

Charles J. Cooper*
Michael W. Kirk*
J. Joel Alicea*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington D.C., 20036
Telephone: (202) 220-9660
Facsimile: (202) 220-9601

*Appearing *pro hac vice*

ATTORNEYS FOR THE NATIONAL RIFLE
ASSOCIATION OF AMERICA

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................1

II. ARGUMENT AND AUTHORITIES ......................................................................1

    A.    Defendants Ignore The NRA's Arguments Regarding Relevance. ........................1

        1.    Discovery Related To DFS's Investigation Is Highly Relevant. ................1

        2.    Discovery Related To Other Affinity Programs Is Relevant. .....................4

        3.    Discovery Related To Defendants' Selective Referral Of Matters To Other Agencies Is Relevant. ..................................................................6

    B.    Defendants' Motion Fails To Substantiate Its Facially Inapplicable Privilege Claims...........................................................................................6

        1.    Defendants Must Describe With Specificity Any Document They Are Withholding On The Basis Of A Privilege. ..........................................6

        2.    Defendants Fail To Meet Their Burden To Properly Assert The Law Enforcement And Deliberative Process Privileges. ...................................8

            a.    Defendants' Conclusory Assertions Fall Far Short Of Their Burden To Demonstrate That The Law Enforcement Privilege Applies...........................................................................9

            b.    Defendants Have Not Properly Invoked Or Established The Applicability Of The Deliberative Process Privilege....................10

        3.    The Deliberative Process and Law Enforcement Privileges Are Qualified Privileges That Do Not Preclude Discovery In This Action...................................................................................................17

            a.    Even Assuming Arguendo The Documents Are Properly Withheld Under The Law Enforcement Privilege, They Are Still Discoverable...........................................................18

            b.    Even If Defendants Made The Threshold Showing, The Deliberative Process Privilege Still Cannot Foreclose The Requested Discovery. ..................................................19

        4.    The Attorney-Client Privilege Is Not Available When DFS Attorneys Acted In A Regulatory, Rather Than Legal, Capacity. .............22

        5.    The NRA Has A Substantial Need For The Documents Withheld Pursuant To The Work Product Doctrine. .................................................23

        6.    The Common Interest Doctrine Cannot Shield Otherwise Nonprivileged Documents. .......................................................................24

i

III. CONCLUSION................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.N.S.W.E.R. Coalition v. Jewell*,
   292 F.R.D. 44 (D.D.C. 2013)......................................................................................8

*A.T. v. Everett Sch. Dist.*,
   2017 WL 4811361 (W.D. Wash. Oct. 25, 2017) ......................................................4

*Aguilar v. Immigration and Customs Enf't Div. of the U.S. Dept. of Homeland
Sec.*,
   259 F.R.D. 51 (S.D.N.Y. June 23, 2009) ................................................................19

*Allocco Recycling, Ltd. v. Doherty*,
   220 F.R.D. 407 (S.D.N.Y. 2004) .............................................................................16

*Anderson v. Marion Cty. Sheriff's Dept.*,
   220 F.R.D. 555 (S.D. Ind. 2004)..............................................................................14

*Ascom Halser Mailing Sys., Inc. v. U.S. Postal Serv.*,
   267 F.R.D. 1 (D.D.C. 2010)......................................................................................15

*Auto. Club of N.Y., Inc. v. Port Authority of N.Y. and N.J.*,
   297 F.R.D. 55 (S.D.N.Y. 2013) ................................................................11, 14, 15

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) ...................................................................................21

*Bloomingburg Jewish Educ. Center v. Village of Bloomingburg, N.Y.*,
   171 F. Supp. 3d 136 (S.D.N.Y. 2016).......................................................................8

*Breiterman v. United States Capitol Police*,
   323 F.R.D. 36 (D.D.C. 2017)........................................................................14, 15, 17

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. Dept. of Homeland Sec.*,
   331 F. Supp. 3d 74 (S.D.N.Y. 2018).......................................................................16

*Burka v. N.Y. City Trans. Auth.*,
   110 F.R.D. 660 (S.D.N.Y. 1986) ............................................................................20

*Cal. Native Plant Soc. v. U.S. E.P.A.*,
   251 F.R.D. 408 (N.D. Cal. 2008).............................................................................17

*Children First Found., Inc. v. Martinez*,
   2007 WL 4344915 (N.D.N.Y. June 9, 2014) ....................................................20, 21

*Cine SK8, Inc. v. Town of Henrietta*,
  507 F.3d 778 (2d Cir. 2007) ............................................................................ 2

*Cipolla v. Cty. of Rensselaer*,
  2001 WL 1223489 (N.D.N.Y. Oct. 10, 2001) ................................................. 21

*Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Justice*,
  955 F. Supp. 2d 4 (D.D.C. 2013) .................................................................... 15

*City of N.Y. v. FedEx Ground Package Sys., Inc.*,
  2017 WL 4155410 (S.D.N.Y. Sept. 19, 2017) ........................... 8, 10, 11, 16

*Coleman v. Cty. of Suffolk*,
  174 F. Supp. 3d 747 (E.D.N.Y. 2016) ............................................................ 10

*Conte v. Cty. of Nassau*,
  No. 2:06-cv-04746-JFB-GRB (E.D.N.Y. May 15, 2009) (Memorandum
  Opinion and Order), ECF No. 317 ................................................................. 12

*Cordero v. City of N.Y.*,
  2017 WL 6375739 (E.D.N.Y. Dec. 13, 2017) .................................................. 4

*Crawford v. Dominic*,
  469 F. Supp. 260 (E.D. Pa. 1979) ............................................................ 18, 19

*Crawford-El v. Britton*,
  523 U.S. 574 (1998) ........................................................................................ 20

*In re Cty. of Erie*,
  473 F.3d 413 (2d Cir. 2007) ........................................................................... 22

*Culp v. Devlin*,
  78 F.R.D. 136 (E.D. Pa. 1978) .................................................................. 18, 19

*Davis v. City of N.Y.*,
  2011 WL 1742748 (S.D.N.Y. May 5, 2011) ........................................ 11, 16, 17

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*,
  139 F.R.D. 295 (S.D.N.Y. 1991) .................................................................... 20

*E.B. v. N.Y. City Bd. of Educ.*,
  233 F.R.D. 289 (E.D.N.Y. 2005) .................................................................... 22

*Ebbert v. Nassau Cty.*,
  2007 WL 674725 (E.D.N.Y. Mar. 5, 2007) .................................................... 20

*Frankenhauser v. Rizzo*,
  59 F.R.D. 339 (E.D. Pa. 1973) ....................................................................... 18

*Grand Cent. P'ship, Inc. v. Cuomo,*
   166 F.3d 473 (2d Cir.1999)......................................................................................22

*In re Grand Jury Subpoena Dated Aug. 9, 2000,*
   218 F. Supp. 2d 544 (S.D.N.Y. 2002) ....................................................................11

*In re Grand Jury Subpoena Dated Jan. 4, 1984,*
   750 F.2d 223 (2d Cir. 1984).................................................................................8, 9

*In re Grand Jury Subpoena Duces Tecum,*
   731 F.2d 1032 (2d Cir. 1984) .................................................................................8

*Grossman v. Schwarz,*
   125 F.R.D. 376 (S.D.N.Y. 1989) ..........................................................................20

*Harper v. Port Auth. of N.Y. & N.J.,*
   2006 WL 1910604 (S.D.N.Y. July 10, 2016) ..................................................17, 18

*Haus v. City of N.Y.,*
   2004 WL 3019762 (S.D.N.Y. Dec. 29, 2004) .......................................................16

*Holten v. City of Genoa,*
   No. 3:02-cv-50201 (N.D. Ill. June 6, 2006) (Memorandum Opinion and
   Order), ECF No. 70-2 ...........................................................................................19

*Hopkins v. U.S. Dept. of Housing and Urban Devt.,*
   929 F.2d 81 (2d Cir. 1991).....................................................................................22

*Inmates of Unit 14 v. Corr. Officers Ribideau, et al.,*
   102 F.R.D. 122 (N.D.N.Y. 1984)........................................................................4, 19

*Ismail v. Cohen,*
   1986 WL 2186 (S.D.N.Y. Feb. 10, 1986)..............................................................19

*Kaufman v. City of N.Y.,*
   1999 WL 239698 (S.D.N.Y. Apr. 22, 1999)....................................................11, 13

*King v. Conde,*
   121 F.R.D. 180 (E.D.N.Y 1988) .........................................................................9, 19

*Kitevski v. City of N.Y.,*
   2006 WL 680527 (S.D.N.Y. Mar. 16, 2006) ....................................................17, 18

*Koumoulis v. Indep. Fin. Mkt. Grp., Inc.,*
   295 F.R.D. 28 (E.D.N.Y. 2013) ............................................................................25

*Kunstler v. City of N.Y.,*
   2005 WL 2656117 (S.D.N.Y. Oct. 18, 2005) ....................................................9, 10

*Lapointe v. Target Corp.*,
    2017 WL 3288506 (N.D.N.Y. Mar. 24, 2017) ....................................................................3

*Locurto v. Safir*,
    264 F.3d 154 (2d Cir. 2001)....................................................................................................21

*Loguidice v. McTiernan*,
    2016 WL 4487779 (N.D.N.Y. Aug. 25, 2016) ......................................................................25

*MacNamara v. City of N.Y.*,
    249 F.R.D. 70 (S.D.N.Y. 2008) ............................................................................10, 21, 22

*Marisol A. v. Giuliani*,
    1998 WL 132810 (S.D.N.Y. Jan. 16, 2007) ........................................................................20

*Martin v. Valley Nat. Bank of Az.*,
    140 F.R.D. 291 (S.D.N.Y. 1991) ..........................................................................................23

*Menell v. Rialto Unified Sch. Dist.*,
    2016 WL 3452920 (C.D. Cal. June 20, 2016) ........................................................................7

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    643 F. Supp. 2d 439 (S.D.N.Y. 2009)...........................................................................9, 11, 13

*Micillo v. Liddle & Robinson LLP*,
    2016 WL 2997507 (S.D.N.Y. May 23, 2016) ................................................................10, 12

*Mitchell v. Fishbein*,
    227 F.R.D. 239 (S.D.N.Y. 2005) ..........................................................................................20

*Mobil Oil Corp. v. Dep't of Energy*,
    102 F.R.D. 1 (N.D.N.Y. 1983)...............................................................................11, 22, 23

*Morrisey v. City of N.Y.*,
    171 F.R.D. 85 (S.D.N.Y. 1997) ............................................................................................13

*Mr. and Mrs. B. v. Bd. of Educ. of Syosset Cent. Sch. Dist*,
    35 F. Supp. 2d 224 (E.D.N.Y. 1998) ....................................................................................20

*Nat'l Congress for Puerto Rico Rights ex rel. Perez v. City of N.Y.*,
    194 F.R.D. 88 (S.D.N.Y. 2000) ......................................................................................16, 21

*N.L.R.B. v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975)...............................................................................................................12

*Nehad v. Browder*,
    2016 WL 2745411 (S.D. Cal. May 10, 2016).........................................................................4

*New York Times Co. v. U.S. Dep't of Def.*,
  499 F. Supp. 2d 501 (S.D.N.Y. 2007) ...................................................................16

*Parke, Davis & Co. v. Califano*,
  623 F.2d 1 (6th Cir. 1980) ....................................................................................16

*Pensacola Firefighters' Relief & Pension Fund Bd. of Dir. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2010 WL 11519376 (N.D. Fla. June 28, 2010) ......................................................7

*Pierson v. United States*,
  428 F. Supp. 384 (D. Del. 1977) ...........................................................................13

*Ramos v. Town of E. Hartford*,
  2016 WL 7340282 (D. Conn. Dec. 19, 2016) ..........................................................4

*Rattner v. Netburn*,
  1989 WL 223059 (S.D.N.Y. June 20, 1989) .........................................................25

*Raza v. City of N.Y.*,
  998 F. Supp. 2d 70 (E.D.N.Y. 2013) .....................................................................24

*Resolution Trust Corp. v. Diamond*,
  773 F. Supp. 597 (S.D.N.Y. 1991) ...........................................................12, 13, 22

*Ri Sau Kuen Chan v. NYU Downtown Hosp.*,
  2004 WL 1886009 (S.D.N.Y. Aug. 23, 2004) ......................................................24

*S.E.C. v. Collins & Aikman Corp.*,
  256 F.R.D. 403 (S.D.N.Y. 2009) ..........................................................................14

*S.E.C. v. Shanahan*,
  2009 WL 1955747 (E.D. Mo. July 6, 2009) .........................................................19

*S.E.C. v. Stratton Oakmont, Inc.*,
  1992 WL 226924 (S.D.N.Y. May 22, 1992) .........................................................23

*S.E.C. v. Thrasher*,
  1995 WL 46681 (S.D.N.Y. Feb. 7, 1995)..............................................................23

*S.E.C. v. Yorkville Advisors, LLC*,
  300 F.R.D. 152 (S.D.N.Y. 2015) ..........................................................................11

*Saxholm AS v. Dynal, Inc.*,
  164 F.R.D. 331 (E.D.N.Y. 1996) ............................................................................8

*Schomburg v. N.Y.C. Police Dep't*,
  298 F.R.D. 138 (S.D.N.Y. 2014) .....................................................................13, 22

*Secalt S.A. v. Wuxi Shenxi Constr. Machinery Co.*,
    2009 WL 10693517 (D. Nev. June 25, 2009) ........................................................................7

*Seife v. United States Dept. of State*,
    298 F. Supp. 3d 592 (S.D.N.Y. 2018) .................................................................................11

*Senate of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dept. of Justice*,
    823 F.2d 574 (D.C. Cir. 1987) ............................................................................................16

*Sheppard v. Beerman*,
    94 F.3d 823 (2d Cir. 1996) ..................................................................................................21

*Skibo v. N.Y.*,
    109 F.R.D. 58 (E.D.N.Y. 1985) .....................................................................................17, 18

*Spell v. McDaniel*,
    591 F. Supp. 1090 (E.D.N.C. 1984) ...............................................................................17, 18

*Spencer v. Philemy*,
    540 F. App'x 69 (2d Cir. 2013) ..........................................................................................21

*State of N.Y. v. Oneida Indian Nation of N.Y. (Oneida I)*,
    2001 WL 1708804 (N.D.N.Y. Nov. 9, 2001) .....................................................................20

*Strougo v. BEA Assoc.*,
    199 F.R.D. 515 (S.D.N.Y. 2001) ........................................................................................22

*Swenson v. Troy*,
    2015 WL 10739984 (Ill. Cir. Ct. June 26, 2015) ..............................................................19

*Swenson v. Troy*,
    2015 WL 10741294 (Ill. Cir. Ct. Nov. 5, 2015) (Trial Order) ............................................19

*In re The City of N.Y.*,
    607 F.3d 923 (2d Cir. 2010) ..................................................................................................8

*United States v. Krug*,
    868 F.3d 82 (2d Cir. 2017) .............................................................................................24, 25

*United States v. McGraw-Hill Cos., Inc.*,
    2014 WL 1647385 (C.D. Cal. Apr. 15, 2014) ...................................................................3, 9

*United States v. McGraw-Hill Cos., Inc.*,
    No. 2:13-CV-00779 (C.D. Cal. Feb. 24, 2014), ECF No. 101-1 ............................................3

*United States v. Painting Known as "Le Marche"*,
    2008 WL 2600659 (S.D.N.Y. June 25, 2008) ....................................................................18

*United States v. Philip Morris Inc.*,
   347 F.3d 951 (D.C. Cir. 2003) ...........................................................................7

*United States v. Sawinski*,
   2000 WL 1702032 (S.D.N.Y. Nov. 14, 2000) ...................................................18

*United States v. Wey*,
   252 F. Supp. 3d 237 (S.D.N.Y. 2017) ...........................................................12, 13

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) .........................................................................................22

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm.*,
   2017 WL 1049388 (W.D. Tex. Mar. 16, 2017) ..................................................4

*Wandering Dago, Inc. v. Destito*,
   879 F.3d 20 (2d Cir. 2018) ................................................................................2

*Wells v. Connolly*,
   2008 WL 4443940 (S.D.N.Y. Sept. 25, 2008) ..................................................18

**Other Authorities**

Fed. R. Civ. P. 26(b)(3)(A)(ii) ................................................................................23

Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii) ............................................................................7

N.D.N.Y. L.R. 7.1(d)(7) ............................................................................................7

Plaintiff the National Rifle Association of America (the "NRA") submits this memorandum of law in opposition to defendants New York Governor Andrew Cuomo's ("Cuomo"); Maria T. Vullo's ("Vullo"); and the New York State Department of Financial Services' ("DFS") (collectively, "Defendants") motion for a protective order, as follows:

## I. PRELIMINARY STATEMENT

The NRA successfully pleaded claims for, among other things, selective enforcement of New York's Insurance Law and retaliation with respect to the exercise of First Amendment rights. The NRA is entitled to discovery on these claims, and soon—six months have elapsed since the NRA filed its Amended Complaint, and case deadlines are swiftly approaching. Nonetheless, with scant legal support, Defendants insist that purposefully tailored requests are unreasonable, that the central subject matter of this case is undiscoverable, and that sweeping, vague assertions of privilege need not be documented at all. Accordingly, the Court should deny Defendants' motion for a protective order and award the NRA legal fees and costs incurred in connection therewith.

## II. ARGUMENT AND AUTHORITIES

### A.     Defendants Ignore The NRA's Arguments Regarding Relevance.

#### 1.     Discovery Related To DFS's Investigation Is Highly Relevant.

Documents related to DFS's Investigation[1] are relevant: (1) to prove that Defendants improperly targeted the NRA for its political speech, rather than any alleged legal or regulatory violation; (2) to demonstrate that the contents and timing of the Consent Orders, the April 2018 Letters and Press Releases, and backchannel threats were deliberately coordinated to maximize chilling effects; and (3) to rebut the defense that Defendants cannot be liable for a violation of the

---

[1] All capitalized terms are defined in the NRA's First Request for Production to Defendant New York State Department of Financial Services, dated November 21, 2018. *See* ECF No. 73-2.

NRA's constitutional rights because the NRA, Lockton, and Chubb violated New York law.

Defendants misinterpret Judge McAvoy's decision limiting the NRA's equal protection claim as it relates to the Consent Orders (and not its First Amendment claim) to mean that the NRA cannot seek discovery relating to the investigation leading up to the Consent Orders and the motives which propelled it.[2]  Importantly, however, the NRA's equal protection claim for damages arising from selective enforcement, as well as its First Amendment claim that the DFS investigation effected censorship and retaliation, remain intact.  Indeed, the Court expressly found that the NRA successfully alleged "selective enforcement of certain New York insurance laws . . . [including] through the Lockton Consent Order."[3]  Additionally, Judge McAvoy found that the NRA sufficiently alleged First Amendment retaliation and censorship claims based on allegations that Defendants' actions in imposing the Consent Orders "were taken in an effort to suppress the NRA's gun promotion advocacy"[4] and that the "enforcement actions against Lockton and Chubb . . . [were done] to impose a content-based restriction on NRA-affiliated businesses based on viewpoint animus that serves no substantial government interest."[5]

The NRA is now entitled to discovery which would prove those allegations, including

---

[2] *See* ECF No. 78-1 (*Mem. Of Law in Supp. of Defs' Mot. for a Prot. Order*, Feb. 4, 2019 ("Motion")), at 12-13.

[3] *See* ECF No. 56 (*Dec. and Order*, Nov. 6, 2018 ("Order")), at 48.  Discovery into the intent behind this selective enforcement is clearly permissible where the NRA must prove that the differential treatment was based on Defendants' "intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure."  *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 40 (2d Cir. 2018); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007).

[4] *See* Order, at 28 (referencing allegations of the Amended Complaint stating that Defendants imposed the Consent Orders with "the intent to obstruct, chill, deter, and retaliate against the NRA's core political speech").

[5] *See id.*, at 28.

documents that shed light on Defendants' knowledge of whether non-NRA entities violated the same laws, Defendants' reasons for selecting or prioritizing certain enforcement targets over others, and Defendants' viewpoint animus toward "gun promotion" advocates.[6] Defendants tacitly admit in their Response to the NRA's Motion to Compel that responsive, relevant discussions with financial institutions regarding the NRA did occur, but are being withheld because they pertain to "enforcement actions" that are the subject of this case.[7] These discussions are the exact type of "backroom exhortations" that the NRA describes in its complaint[8] and that the Court has already indicated are highly relevant to the NRA's claims.[9] Against this backdrop, Defendants' insistence that documents relating to the investigation are "not legally relevant" is fanciful and wrong.[10]

In tandem with their relevance objection, Defendants baldly assert[11] that because the

---

[6] *See also United States v. McGraw-Hill Cos., Inc.*, 2014 WL 1647385, at *7 (C.D. Cal. Apr. 15, 2014) (permitting discovery to support the plaintiff's selective prosecution claim, including documents relating to the government's investigation into the plaintiff—a major credit ratings agency—and the investigation's relationship to the plaintiff's decision to downgrade the credit rating of the United States' national debt); Decl. of Floyd Abrams, Exhibit A, Requests Nos. 21, 33, 34, 51, 52, 53, *United States v. McGraw-Hill Cos., Inc.*, No. 2:13-CV-00779 (C.D. Cal. Feb. 24, 2014), ECF No. 101-1 (discovery requests in support of plaintiff's selective-prosecution claim), attached as Exhibit 1 to the Declaration of Stephanie L. Gase In Support of Plaintiff's Memorandum of Law In Opposition to Defendants' Motion for Protective Order, dated Feb. 15, 2019 (the "Gase Decl.").

[7] *See* ECF No. 79 (Mem. Of Law in Opp. To Pls.' Mot. to Compel, Feb. 4, 2019 ("Response")), at 3 ("Other than . . . the enforcement actions . . . DFS has not had any discussions with any financial institutions that related to the NRA."). Defendants include the investigation into Lockton, Chubb, and Lloyd's as part of the DFS's "Investigation of the NRA." *See id.*

[8] *See* ECF No. 37, at 1-2, 29-33, 39.

[9] *See* Order, at 24-26.

[10] *See* Motion, at 12.

[11] The Federal Rules of Civil Procedure prescribe a six-part proportionality analysis which Defendants ignore. *See Lapointe v. Target Corp.*, 2017 WL 3288506, at *2 (N.D.N.Y. Mar. 24, 2017) (Hummel, J.) ("The specific proportionality factors to be considered are 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving issues, and

NRA's requests encompass documents created more than "six months before the issuance of the Guidance Letters or the Press Releases," discovery would not be "proportional[]" to the needs of this case.[12]   In fact, federal policy favors broad discovery in civil rights actions,[13] which may include production of tens of thousands of documents spanning a multi-year period.[14]   In this dispute among sophisticated parties, with voluminous economic damages and crucial constitutional freedoms at stake, Defendants offer no justification (nor can they) for an arbitrary six-month document-discovery cutoff.

### 2.   Discovery Related To Other Affinity Programs Is Relevant.

Defendants' argument that their enforcement actions only truly targeted "illegal firearm coverages," or illegal activity in connection with "criminal defenses coverages"—thus, discovery regarding disparate treatment of non-firearm-related affinity insurance should be disallowed—is without merit.[15]   The very affidavits and declarations Defendants submit in support of their

---

whether the burden or expense of the proposed discovery outweighs its likely benefit.'") (quoting FED. R. CIV. P. 26(b)(1)).

[12] *See* Motion, at 13.

[13] *Inmates of Unit 14 v. Corr. Officers Ribideau, et al.*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984); *Ramos v. Town of E. Hartford*, 2016 WL 7340282, at *8 (D. Conn. Dec. 19, 2016) ("The fact that the claims implicate important federal rights . . . counsels in favor of requiring greater disclosure under the [Federal Rules'] proportionality standard.").

[14] *See, e.g.*, *Cordero v. City of N.Y.*, 2017 WL 6375739, at *2-4 (E.D.N.Y. Dec. 13, 2017) (finding a two-year timeframe prior to the alleged harm proportional for discovery in a § 1983 case); *A.T. v. Everett Sch. Dist.*, 2017 WL 4811361, at *7 (W.D. Wash. Oct. 25, 2017) (finding a ten year timeframe for discovery proportional to the needs of a § 1983 action); *see also Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm.*, 2017 WL 1049388, at *2 (W.D. Tex. Mar. 16, 2017) (holding that, in an equal protections case, the production of 68,000 documents was proportional); *Nehad v. Browder*, 2016 WL 2745411, at *8 (S.D. Cal. May 10, 2016) (deeming discovery of thousands of documents proportional in a civil rights action "considering the importance of the issues at stake in the action and the importance of discovery in resolving these disputes").

[15] *See* Motion, at 18-19.

4

asserted privileges lay bare their evasive gamesmanship.  For example, whether computed by quantity of policies issued or by dollar amount, it is apparent from the face of Mr. Levine's Declaration that the allegedly unlawful Carry Guard product constituted less than three percent (3%) of the NRA's affinity-insurance business in New York[16]—yet Defendants purposefully pursued, and sought indefinitely to prohibit, ***all*** NRA-related affinity business.  The NRA is entitled to discovery regarding affinity programs similar to the other 97% of policies that Defendants prohibited but failed to address in Mr. Levine's Declaration, including affinity programs providing life, health, and property insurance.[17]

Similarly, Defendants' admission that they entered into a Supplemental Consent Order that imposes far-lesser penalties (and no meaningful prospective-sale bans) regarding non-NRA affinity programs underscores that documents exist which shed light on the disparate approach taken with respect to NRA and non-NRA programs.[18]  Defendants claim that the Supplemental Consent Order executed recently with Lockton can be distinguished because none of the non-NRA endorsed affinity insurance programs involve the same "type and degree of unauthorized insurance activity with respect to a Lockton insurance policy containing illegal criminal defense coverage" alleged for the NRA.[19]  Implicitly, then, Defendants concede that non-NRA policies ***containing***

––––––––––––––––––––––

[16] *See* Decl. Of Matthew L. Levine In Opp. To Pl.'s Mot. To Compel And In Supp. Of Defs' Mot. For A Protective Order, signed Feb. 4, 2019 ("Levine Declaration"), at ¶ 31 (identifying that the alleged illegal Carry Guard policies constituted only 680 out of the 28,015 total insurance policies issued under NRA-endorsed insurance programs for individuals in New York); *id.*, at ¶ 32 (identifying that the NRA received royalties for the Carry Guard program of approximately $21,198, out of the total $1,872,737 in royalties for other NRA-endorsed programs).

[17] The non-Carry Guard policies include coverage for, among others, life, health, property, and casualty policies. *See* ECF No. 37 (Am. Compl.), at ¶ 32.

[18] *See* ECF No. 78-7 (Supp. Consent Order), at 2-3.

[19] *See* Motion, at 18.

*illegal criminal defense coverage* can justifiably be subject to disparate treatment vis-à-vis NRA policies because the "type and degree" of such coverage differs.  What Defendants do not concede—but discovery should explore—is whether the unspecified non-NRA endorsed affinity insurance programs insured more New Yorkers than the mere 680 who purchased Carry Guard, or otherwise exceeded the "type and degree" of the NRA's allegedly unlawful activity.  This information is highly relevant to whether Defendants selectively treated the NRA-endorsed affinity programs—i.e., requiring Lockton, Chubb, and Lloyd's terminate all such relationships—while allowing other affinity organizations that are not gun promotion organizations to conduct the exact same activity on a larger scale than the NRA.  Accordingly, the Court should overrule Defendants' objections and require them to promptly produce all documents regarding this category of discovery.

      **3.**      **Discovery Related To Defendants' Selective Referral Of Matters To Other Agencies Is Relevant.**

Defendants make no substantive argument regarding the relevance of the materials related to the referral of matters to other government agencies and, instead, in a single conclusory statement simply assert that "[n]one of the documents or communications . . . can satisfy the relevance standard."[20]  This is not true.  Defendants' decision to reach out to other states and attempt to instigate coordinated action against the NRA—but not against other purported violators of state insurance regulations—reflects the political animus, and censorious purpose, driving their conduct here.  The NRA is entitled to discovery of this material.

**B.**      **Defendants' Motion Fails To Substantiate Its Facially Inapplicable Privilege Claims.**

      **1.**      **Defendants Must Describe With Specificity Any Document They Are**

---

[20] *See* Motion, at 20.

## **Withholding On The Basis Of A Privilege.**

Even with respect to privileges that may conceivably apply in this case—e.g., attorney-client privilege and work product protection—Defendants' boilerplate objections do not relieve them of their obligation to specifically describe documents withheld.[21]  Moreover, if a document is specifically withheld not on the basis of an objection but because of a privilege assertion, both the Federal and Local Rules mandate a party to specifically describe that document.[22]  Defendants have failed to do so—despite admitting that they possess "further documentation that may be responsive to this demand, but has been withheld based on the aforementioned privileges."[23] Without a specific description of the documents being withheld on the basis of privilege, it is impossible for the NRA or this Court to evaluate Defendants' privilege claims, which means Defendants have necessarily failed to carry their burden of demonstrating their asserted privileges (including attorney-client and work product privileges) apply.

The Levine Declaration does not satisfy the requirements of the Federal and Local Rules. Although a party can utilize an affidavit to establish threshold elements of a privilege, the affidavit

---

[21] *See, e.g.*, *Menell v. Rialto Unified Sch. Dist.*, 2016 WL 3452920, at \*4 (C.D. Cal. June 20, 2016) (holding that defendant submitted boilerplate relevance and vagueness objections to plaintiff's discovery requests, and as a result, any concurrent assertions of privilege to the requests need be supported by a privilege log pursuant to Rule 26(b)(5)); *Secalt S.A. v. Wuxi Shenxi Constr. Machinery Co.*, 2009 WL 10693517, at \*7 (D. Nev. June 25, 2009) (same, and holding that failure to provide a privilege log shall constitute a waiver of any claimed privilege); *see also United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (holding that objections to discovery request not made in good faith may result in a waiver of asserted privileges if the privileges were asserted simultaneously with the objections but without a privilege log); *Pensacola Firefighters' Relief & Pension Fund Bd. of Dir. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2010 WL 11519376, at \*5 (N.D. Fla. June 28, 2010) (holding that boilerplate and presumptively insufficient objection to discovery requests necessitated a contemporaneously-submitted privilege log to establish the basis for withholding the documents on any overlapping assertions of privilege).

[22] *See* FED. R. CIV. P. 26(b)(5)(A)(i)-(ii); N.D.N.Y. L.R. 7.1(d)(7).

[23] *See, e.g.*, ECF No. 73-2 (Objections to Plaintiffs' First Request for Production to Defendant Cuomo, dated Jan. 7, 2019 ("Cuomo Responses")), at Responses No. 3, 4, 6, 25, 26.

must expressly make the privilege claim and describe the withheld documents in sufficient detail.[24]

By contrast, the Levine Declaration articulates no specific privilege claim, and fails to specify any

subject documents—much less describe them with particularity sufficient to assess the potential

privilege.[25]   Accordingly, the Court should find that Defendants' failure to properly assert any

privilege in response to the NRA's discovery requests constitutes a waiver of such privilege.

**2.**   **Defendants Fail To Meet Their Burden To Properly Assert The Law Enforcement And Deliberative Process Privileges.**

Defendants carry the burden to establish the elements of the deliberative process privilege

and the law enforcement privilege.[26]   They fail to do so.   This burden is not a mere technicality,

---

[24] *See Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333-34 (E.D.N.Y. 1996) (quoting *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036 (2d Cir. 1984)) (holding that an affidavit in support of the attorney-client privilege must establish sufficient facts to the prove the privilege's applicability and establish the elements of the privilege, outlined as: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived."); *Bloomingburg Jewish Educ. Center v. Village of Bloomingburg, N.Y.*, 171 F. Supp. 3d 136, 143-44 (S.D.N.Y. 2016) (rejecting bare-boned affidavits and holding that parties that seek to assert the work-product privilege via affidavit must present courts with "competent evidence and targeted arguments" to allow for a particularized determination that the documents fall within the scope of the privileges); *City of N.Y. v. FedEx Ground Package Sys., Inc.*, 2017 WL 4155410, at *5-6 (S.D.N.Y. Sept. 19, 2017) (deeming sufficient for invoking the deliberative process privilege an affidavit that formally invoked the privilege after a personal review of the documents, identified and described the documents at issue, and provided precise reasons why the documents are both predecisional and deliberative); *A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 50-52 (D.D.C. 2013) (deeming sufficient for invoking the law enforcement privilege an affidavit that formally invoked the privilege after personal consideration by the affiant of the material at issue and provided a detailed, *non-conclusory* explanation of the information withheld and the privilege's applicability to that information).

[25] *See* Levine Decl., at ¶¶ 39, 41, 42; *see also* Decl. of Nathaniel J. Dorfman, signed Feb. 4, 2019 ("Dorfman Declaration"), at ¶¶ 1, 10-14, 16-24; Affirmation of Tanisha Edwards, Esq., signed Feb. 4, 2019 ("Edwards Declaration"), at ¶¶ 1, 10-12.

[26] *See, e.g.*, *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984); *In re The City of N.Y.*, 607 F.3d 923, 944 (2d Cir. 2010).

raised simply to harass and annoy Defendants.  Rather, by duly enforcing the threshold criteria for the assertion of government privileges, courts safeguard the norm of full, fair transparency in litigation.[27]  In that same tradition, the Court should reject Defendants' defective privilege claims.

a.   **Defendants' Conclusory Assertions Fall Far Short Of Their Burden To Demonstrate That The Law Enforcement Privilege Applies.**

Defendants merely recite in boilerplate fashion, in their Motion and supporting Declarations, the language from the case law: that the documents relate to "law enforcement techniques and procedures, impact the confidentiality of sources, and/or interfere with DFS's ongoing investigation of the NRA."[28]  However, Defendants' burden cannot be "discharged by mere conclusory or *ipse dixit* assertions"[29] based on a generalized knowledge of the documents and not a personal review and consideration of the contents of each document.[30]  Instead, district courts in this Circuit have required "a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted."[31]  The party invoking the privilege "may not rely simply on generalized reiterations of the policies underlying the

---

[27] *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009) (the deliberative process privilege "reflects a deviation from the norm of full transparency in litigation").

[28] *See* Levine Decl., at ¶ 41; Dorfman Decl., at ¶ 14.

[29] *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d at 224-25 (internal quotation marks omitted).

[30] *See McGraw-Hill Cos., Inc.*, 2014 WL 1647385, at *7 (rejecting application of the investigatory files privilege for law enforcement-related documents because the declarant supporting the privilege did not sufficiently specify the documents over which the privilege was claimed or how each category of documents fell within the scope of the privilege and, instead, merely claimed a generalized knowledge of the documents at issue and not that he had seen and considered the contents of the documents himself).

[31] *Kunstler v. City of N.Y.*, 2005 WL 2656117 at *1 (S.D.N.Y. Oct. 18, 2005) (citing *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y 1988)).

privilege"—yet this is what Defendants attempt here.[32]

Defendants' boilerplate privilege claims cannot meaningfully be distinguished from those rejected in *Kunstler*, *MacNamara*, *Coleman*, and *Micillo*.[33]  Defendants have thus failed to meet their burden to make a "substantial threshold showing" that the law enforcement privilege applies.

      **b.**      **Defendants Have Not Properly Invoked Or Established The Applicability Of The Deliberative Process Privilege.**

Defendants' arguments fare no better with respect to the deliberative process privilege. Having belatedly submitted two deficient declarations,[34] Defendants conclude without any details or support that the declarations "clearly establish that the request[ed] documents are pre-decisional in nature"[35]—while completely ignoring every other requirement to invoke the deliberative

---

[32] *See id.* at *3 ("Simply stating that 'specific harm' will result from public disclosure . . . does not constitute a showing of anticipated harm, much less the specific showing mandated by the caselaw."); *FedEx Ground Package Sys., Inc.*, 2017 WL 4155410, at *4 n.3 (rejecting conclusory assertions in support of the law enforcement privilege, including declarations that the documents at issue "reflect[] information on law enforcement techniques and procedures, and information which, if revealed, would undermine the confidentiality of sources and may impair future investigations"); *Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747, 756-57 (E.D.N.Y. 2016) (rejecting law enforcement privilege when the invoking party merely asserted in conclusory fashion that disclosure of an internal affairs report would "undermine the privacy of individuals involved the investigation" and  "impair the ability of law enforcement agencies to conduct future investigations"); *Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *4-5 (S.D.N.Y. May 23, 2016) (rejecting "conclusory" declaration stating that disclosure "would impair [its] ability to conduct future investigations"); *MacNamara v. City of N.Y.*, 249 F.R.D. 70, 85 (S.D.N.Y. 2008).

[33] *See* Levine Decl., at ¶ 41 (stating that the requested documents would "reveal law enforcement techniques and procedures, might impact the confidentiality of sources, and would interfere with DFS's ongoing investigation of the NRA."); Dorfman Decl., at ¶ 14 ("[The documents] were compiled for law enforcement purposes and their disclosure would reveal law enforcement techniques and procedures, impact the confidentiality of sources, and/or interfere with DFS's ongoing investigation of the NRA."). *Compare, e.g.*, *FedEx Ground Package Sys., Inc.*, 2017 WL 4155410, at *4 n.3; *Coleman*, 174 F. Supp. 3d at 756–57; *Micillo*, 2016 WL 2997507, at *4-5.

[34] *See* Dorfman Decl., at ¶¶ 1, 16-24; Edwards Decl., at ¶¶ 1, 10-12.

[35] *See* Motion, at 22.

process privilege.[36]   Specifically, the Dorfman and Edwards Declarations fail to properly assert the deliberative process privilege because:  (1) the declarants are neither the heads of the relevant agency nor an individual properly designated to assert the deliberative process privilege; (2) the declarants failed to personally review the documents at issue;[37] (3) the declarations fail to identify and describe the documents at issue;[38] and (4) the declarations fail to establish the documents at issue are both pre-decisional and deliberative.[39]

---

[36] *See Seife v. United States Dept. of State*, 298 F. Supp. 3d 592, 620 (S.D.N.Y. 2018) (deeming party's invocation of the deliberative process privilege wholly conclusory because it merely states that the privilege applies to documents that are "pre-decisional and deliberative with respect to a final decision"); *Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 8 (N.D.N.Y. 1983) (rejecting deliberative process privilege when invoking party provides conclusory justifications for asserting the privilege, such as that disclosure would "hamper the intra-agency exchange of information and ideas," without any explanation as to why confidentiality was actually necessary).

[37] *See, e.g.*, *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 160 (S.D.N.Y. 2015) (quoting *In re Grand Jury Subpoena Dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 552-53 (S.D.N.Y. 2002)) ("'[T]he deliberative process privilege must be asserted by the head of the governmental agency, or an appropriately qualified designee, after personal review of the documents.'"); *MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 443 ("The claim of deliberative-process privilege must be lodged by the head of the agency after personal consideration of the allegedly privileged material or by a subordinate with high authority pursuant to guidelines on the use of the privilege issued by the head of the agency." (internal quotation marks omitted)); *Kaufman v. City of N.Y.*, 1999 WL 239698, at *3 (S.D.N.Y. Apr. 22, 1999) ("The agency head or his or her authorized designee must invoke the privilege through an affidavit which states, *inter alia*, that he or she has reviewed each of the relevant documents and provides the reason(s) why preserving confidentiality—rather than the agency's interest in the particular action—outweighs the public interest in disclosure.").

[38] *See FedEx Ground Package Sys., Inc.*, 2017 WL 4155410, at *5–6; *Seife*, 298 F. Supp. 3d at 620 (rejecting deliberative process privilege where claimants provided document descriptions devoid of detail, as well as omitted the documents' dates, and the roles of the authors and recipients in the decision-making process); *Auto. Club of N.Y., Inc. v. Port Authority of N.Y. and N.J.*, 297 F.R.D. 55, 63 (S.D.N.Y. 2013) (deeming insufficient a privilege log invoking the deliberative process privilege that failed to sufficiently delineate the authors and recipients of withheld documents); *Davis v. City of N.Y.*, 2011 WL 1742748, at *3-4 (S.D.N.Y. May 5, 2011) (rejecting a privilege log used that invoked the deliberative process privilege while using vague, confusing, or conclusory descriptions of document categories, precluding the Court from assessing whether the document is deliberative and/or predecisional).

[39] *See Auto. Club of N.Y., Inc.*, 2014 WL 2518959, at *3-4.

Defendants fail to provide sufficient declarations explaining which documents were personally reviewed by anyone and why; nor do the declarations attempt to address what specific agency decision or high-level policy was at issue,[40] or why disclosure would compromise the agency decision-making process to such a degree that doing so outweighs the public interest in disclosure.[41]  Defendants' approach to these issues unfortunately appears to betray their general view that, notwithstanding what the law says, the Court should just presume that the privilege applies rather than holding Defendants to their burden.  The Court should reject Defendants' attempt to effect such "an unprecedented . . . expansion of the privilege."[42]

> **(1)** **The Declarants Are Neither The Head Of Their Agencies Nor Properly Designated To Assert The Deliberative Process Privilege.**

Both the Edwards and Dorfman Declarations are insufficient on their face because neither declarant can properly assert the deliberative process privilege.  Edwards makes no attempt whatsoever to identify that she is the agency head or sufficiently qualified designee that may invoke the privilege—Edwards merely identifies her position as Assistant Counsel to Governor Cuomo.[43]  The Dorfman Declaration is likewise insufficient—it states that Dorfman, as General Counsel for DFS, asserts the law enforcement privilege, but it does not state that he has been

---

[40] *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-53 (1975).

[41] *Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 604-05 (S.D.N.Y. 1991).

[42] *Micillo*, 2016 WL 2997507, at *5.

[43] *See* Edwards Decl. at ¶ 1. *Compare United States v. Wey*, 252 F. Supp. 3d 237, 252-54 (S.D.N.Y. 2017) (rejecting a claim of deliberative process privilege because, *inter alia*, counsel merely asserted the privilege in its pleadings without any invocation of the privilege from the agency head or a qualified designee); *Conte v. Cty. of Nassau*, No. 2:06-cv-04746-JFB-GRB, (E.D.N.Y. May 15, 2009) (Memorandum Opinion and Order), ECF No. 317 (deeming the government claim of the privilege procedurally insufficient because the only affidavit submitted in support of the privilege completely lacked any indication that the affiant had been designated the authority to claim the privilege), attached to the Gase Decl. as Exhibit 2.

granted such authority by the head of the DFS.[44]  Furthermore, counsel for an agency asserting the privilege, like Dorfman and Edwards, *cannot* serve as the affiant asserting the deliberative process privilege.[45]  This rule does not turn on the attorney's failure to "specifically" assert the privilege; instead, it is a general proposition that it is improper for an attorney to invoke the privilege on behalf of the agency.[46]

> **(2)      The Declarants Failed To Properly Review The Documents Being Withheld.**

Both Declarations also fail to establish that the declarants personally reviewed the individual documents at issue.  Both Dorfman and Edwards state they base their assertions on their "familiarity" with the documents[47] or based on "knowledge, information, and belief,"[48] but neither declarant explicitly states that they personally reviewed the documents in question to determine if the privilege was applicable.[49]  Further, while Edwards does state that a "diligent search" of the

---

[44] *See* Dorfman Decl. at ¶13.

[45] *See In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 443 ("It is never appropriate for the general counsel of a government agency to serve as the reviewing authority prior to the assertion of a deliberative process privilege); *Kaufman*, 1999 WL 239698, at *4 (citing *Pierson v. United States*, 428 F. Supp. 384, 395 (D. Del. 1977)) ("The governmental deliberative process privilege may not be asserted by government counsel."); *Schomburg v. N.Y.C. Police Dep't*, 298 F.R.D. 138, 144 (S.D.N.Y. 2014) (confirming that it is improper for an attorney to assert the privilege).

[46] *See* note 45, supra.

[47] *See* Dorfman Decl. at ¶ 13.

[48] *See* Edwards Decl. at ¶ 10.

[49] *Compare Wey*, 252 F. Supp. 3d at 252 (deeming the privilege assertion insufficient because the pleadings made no indication that the documents has been personally reviewed and their privilege status considered); *Morrisey v. City of N.Y.*, 171 F.R.D. 85, 89 n.3 (S.D.N.Y. 1997) (rejecting the privilege assertion because, while the government entity did submit an affidavit to assert the privilege, it did not state that he personally reviewed the documents in question to determine the applicability of the privilege); *Resolution Trust Corp.*, 773 F. Supp. at 602–04 (holding that the agency head did not properly assert that he reviewed the documents when he merely asserted in his affidavit that he "personally determined that the documents were predecisional and

13

Executive Chamber's document repositories took place, Edwards does not actually clarify that she herself conducted the search as required for the privilege to be successfully invoked.[50]

**(3)**   **The Declarations Fail To Identify And Describe The Documents At Issue.**

The Declarations do not sufficiently identify and describe the information purportedly subject to the privilege. Both Declarations provide very general, categorical descriptions of the documents deemed to be privileged.[51] Such generalized descriptions fail to meet the level of descriptive specificity needed to assert the privilege.[52] Further, Edwards' and Dorfman's respective categorical descriptions of the withheld documents fall well below the acceptable standard.[53] For example, in contrast to the descriptions provided in *Breiterman*, Dorfman merely

---

deliberative" and that it is his policy as agency head that "documents which are part of the deliberative and decisional processes of the [agency] . . . are not to be disclosed[.]").

[50] *See* Edwards Decl. at ¶ 10.

[51] *See id.* at ¶ 10 ("[T]he only other category of document responsive to the NRA's discovery demands are internal deliberations among Executive Chamber staff regarding decisions on the content of the Press Release."); *see* Dorfman Decl. at ¶ 16 (listing five categories of documents purportedly subject to the privilege).

[52] *Compare S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416–17 (S.D.N.Y. 2009) (rejecting the asserted privilege because (1) the explanation of the withheld documents merely included a brief description of the type of document, such as "memorandum," the addresses, and the subject matter, and (2) because it provided broad categorical descriptions that would require the requesting party to seek court intervention to obtain the information necessary to assess the strength of the privilege claims); *Anderson v. Marion Cty. Sheriff's Dept.*, 220 F.R.D. 555, 562 (S.D. Ind. 2004) (holding that the submitted affidavit fell short of establishing the privilege because the affidavit described the withheld information *generally* and without any identification of the specific documents being withheld).

[53] *See Auto. Club of N.Y., Inc.*, 297 F.R.D. at 58 (holding the description of withheld documents must include a date and description of the related agency decision, the subject-matter of the documents, the nature of the opinions and analyses in the documents, and the roles of the document authors in the deliberative process); *Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 46-47 (D.D.C. 2017) (upholding invocation of the privilege because, *inter alia*, the affidavit provided categories of documents withheld that identified the number of documents within each category, along with the specific type of document in each category, such as "notes of interviews

14

provides a general description of the documents withheld, such as "drafts, analysis, and internal communications relating to investigative matters concerning the Carry Guard program and other NRA-endorsed insurance programs."[54]  Such a description does not assist the NRA in evaluating the merits of Defendants' asserted privilege.

        **(4)**     **Defendants Have Not Met Their Burden To Show The Documents At Issue Are Pre-Decisional.**

The Declarations also completely disregard the requirement to show that the withheld documents are predecisional and, instead, provide conclusory statements regarding the pre-decisional nature of the withheld information.[55]  Further, the Declarations do not identify the specific decisions to which the information correlate or verify that the documents precedes the decisions in which they relate.[56]

---

with Department officials, attorney, and bargaining unit representatives in preparation for the report.").

[54] *See* Dorfman Decl. at ¶ 16.

[55] *See* Edwards Decl. at ¶ 12 ("Documents related to such pre-decisional deliberations concerning the Press Release are shielded from disclosure and discovery[.]"); Dorfman Decl. at ¶ 19 –24 (stating that "the internal documents are pre-decisional" for each category of documents without further explanation). *Compare Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Justice*, 955 F. Supp. 2d 4, 18 (D.D.C. 2013) (rejecting privilege assertion because the affidavits provide circular justifications for withholding the documents that merely parrots the standards for the privilege, such as "the documents are deliberative in nature because they discuss investigation strategies and analyze potential criminal claims or other legal issues"); *Ascom Halser Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 5–6  (D.D.C. 2010) (deeming a declaration insufficient to support the privilege because it merely claimed, in a conclusory manner, that the documents related to pre-decisional deliberations of the U.S. Postal Service concerning various policy initiatives in the 1970s and 1980s without providing details of the specific decisions made related to such deliberations and the extent to which the material was relied on to make those decisions).

[56] *See Auto. Club of N.Y., Inc.*, 2014 WL 2518959, *3; *see also Breiterman*, 323 F.R.D. at 45–46 (concluding that a report from the Office of the Inspector General was predecisional based on the declaration of the Inspector General for the United States Capitol Police that clearly indicated that that report did not contain "the final Department policy" relating to the disciplinary procedures for members of the U.S. Capitol Police, but instead, it contained an "advisory opinion and recommendation from the OIG to the U.S. Capitol Police" to assist in the improvement of the

**(5)** **Defendants Have Not Met Their Burden To Show The Documents At Issue Are Deliberative.**

Finally, the Declarations fail to properly establish the deliberative element necessary to prove the applicability of the deliberative process privilege.[57]  A document is considered "deliberative" if it is "'actually related to the process by which policies are formulated.'"[58]  There must be enough detail presented in this showing to permit the court to determine "how each document fits into the deliberative process."[59]  Furthermore, the agency asserting the privilege should point to the decision, investigation, or policy at issue for which the agency prepared the document.[60]

Here, the Declarations are wholly conclusory and do not establish that the documents are

---

department's operations, which the Capitol Police adopted in part); *FedEx Ground Package Sys., Inc.,* 2017 WL 4155410, at *7 (concluding that two redacted documents were predecisional in nature based on the declaration of the Deputy Commissioner and Counsel for the New York State Department of Taxation and Finance that indicated that the redacted content articulated a preliminary policy position regarding Department enforcement actions involving the illegal possession and transportation of unstamped cigarettes in the State, and that "further discussions will occur prior to any final policy adopted by the Department").

[57] *See Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. Dept. of Homeland Sec.*, 331 F. Supp. 3d 74, 95 (S.D.N.Y. 2018) (holding that a declaration could not sufficiently demonstrate a document's deliberative nature because it merely recited that it "was drafted during the preliminary development stages of the [program at issue], and does not reflect a final decision" on the program); *Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 413 (S.D.N.Y. 2004) (rejecting deliberative process privilege when party asserted that the documents were "by their very nature" deliberative because they led to the publication of a final policy report, but the party lacked an explanation of how the documents *actually* reflected the entity's decision-making process); *Haus v. City of N.Y.*, 2004 WL 3019762, at *3 (S.D.N.Y. Dec. 29, 2004) (rejecting the deliberative process privilege when the supporting declaration merely stated that the documents were "part of the deliberative process and [] best informs final department decisions").

[58] *FedEx Ground Package Sys., Inc.*, 2017 WL 4155410, at *5 (quoting *Nat'l Congress for Puerto Rico Rights ex rel. Perez v. City of N.Y.*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000)).

[59] *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980); *see Davis*, 2011 WL 1742748, at *5; *New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 514–15 (S.D.N.Y. 2007).

[60] *See Senate of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dept. of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987); *Davis*, 2011 WL 1742748, at *5.

16

deliberative. Dorfman provides boilerplate explanations for how each category of documents relate to various actions or processes within the DFS, but fails to indicate the documents' role in the decision-making processes listed.[61] Similarly, Edwards states that "the deliberations regarding the content and creation of the Press Release relate to the decisions on the presentation of the public policy of the Governor's Office on the topic of insurance enforcement," but does not indicate *how* the information at issue relates to the agency's decisions.[62]

### 3. The Deliberative Process and Law Enforcement Privileges Are Qualified Privileges That Do Not Preclude Discovery In This Action.

Numerous courts reviewing demands for information from law enforcement agencies have found that a plaintiff's need for the information outweighs the government's claim of privilege and have ordered documents disclosed.[63] The government's desire for confidentiality faces even

---

[61] *See* Dorfman Decl. at ¶¶ 19–24. *Compare Davis*, 2011 WL 1742748, at *5 (holding that party invoking the deliberative process privilege failed to indicate the role a group of documents had in the deliberative process because the category descriptions were insufficiently detailed, such as "drafts of the training curriculum/training scenarios concerning revised P.G. 212-60"); *Cal. Native Plant Soc. v. U.S. E.P.A.*, 251 F.R.D. 408, 412–13 (N.D. Cal. 2008) (rejecting agency's assertion that documents were deliberative because the provided description of the documents were conclusory, such as "email contains or reflects dialogue between clients and/or attorneys regarding or reflecting legal advice, recommendations, and/or opinions," which does not establish how the documents were deployed in the agency's decision making process).

[62] *See* Edwards Decl. at ¶ 10–11; *see also Davis*, 2011 WL 1742748, at *5; *Breiterman*, 323 F.R.D. at 47 ("The [documents at issue] were deliberative . . . because they reflect [the agency's] assessment of which aspects of the interviewed employees' testimony would be most pertinent to the [agency's] evaluation of the [police's] disciplinary practices, thereby implicating an 'exercise of judgment.'").

[63] *See, e.g.*, *Kitevski v. City of N.Y.*, 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2006) (plaintiff entitled to documents from the police internal affairs bureau concerning evidence of previous police misconduct); *Harper v. Port Auth. of N.Y. & N.J.*, 2006 WL 1910604, at *2 (S.D.N.Y. July 10, 2016) (plaintiff entitled to both substantiated and unsubstantiated complaint records made against the port authority in a § 1983 case, including records concerning false arrests, false imprisonment, excessive force, and the violation of other constitutional rights); *Skibo v. N.Y.*, 109 F.R.D. 58 (E.D.N.Y. 1985) (plaintiff entitled to information concerning all citizen complaints against police officers); *Spell v. McDaniel*, 591 F. Supp. 1090 (E.D.N.C. 1984) (plaintiff entitled to "records of complaints filed, investigations conducted and reports written for internal and

greater scrutiny when, as here, a plaintiff seeking documents claims that a misuse of government power caused a violation of his civil rights.[64]

> ### a. Even Assuming Arguendo The Documents Are Properly Withheld Under The Law Enforcement Privilege, They Are Still Discoverable.

Once a party meets its burden to demonstrate that documents are protected by the law enforcement privilege (which Defendants have not), courts still weigh a number of factors to determine whether the documents must nevertheless be produced.[65] Defendants mischaracterize this traditional multifactor analysis, insisting—without citing any supportive decisions—that it gives rise to a *per se* rule against producing documents to a party that is the target of an ongoing investigation.[66] Defendants' regime would require the victim of selective enforcement or retaliation to wait patiently for the government to complete its unconstitutional campaign, then sue after-the-fact. Unsurprisingly, their contentions have no basis in United States law.

Although courts give more weight to certain factors, Defendants have not cited, nor could they cite, any case that weighed whether an investigation was pending or whether the party seeking

---

external use, allegations of abuse and unreasonable force"); *Culp v. Devlin*, 78 F.R.D. 136 (E.D. Pa. 1978) (plaintiff entitled to information concerning all complaints of abuse or police brutality).

[64] *See Kitevski*, 2006 WL 680527, at *3; *Harper*, 2006 WL 1910604, at *2; *Skibo,* 109 F.R.D. at 63 ("Because the government has a strong interest in safeguarding citizens' civil rights and upholding the integrity of state law enforcement institutions, impediments to the full disclosure of the facts in a § 1983 case are not favored"); *Spell,* 591 F. Supp. at 1114 (holding party's assertion "that relevant evidence is privileged must be so meritorious [in a § 1983 claim] as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action").

[65] *See Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973) (articulating ten factors to use, including "whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; [and] . . . whether the police investigation has been completed"); *Crawford v. Dominic*, 469 F. Supp. 260, 262–63 (E.D. Pa. 1979); *Wells v. Connolly*, 2008 WL 4443940, at *2 (S.D.N.Y. Sept. 25, 2008); *United States v. Painting Known as "Le Marche"*, 2008 WL 2600659, at *2 (S.D.N.Y. June 25, 2008); *United States v. Sawinski*, 2000 WL 1702032, at *3 (S.D.N.Y. Nov. 14, 2000).

[66] *See* Motion, at 14-15.

discovery was the subject of investigation more heavily than any other factor.  In fact, courts routinely find that one particular factor—the importance of the information sought to plaintiff's case—is the most important factor or "a most important factor."[67]  Here, the documents and communications related to DFS's Investigation, which include potential backroom exhortations to terminate lawful business with the NRA,[68] are critically important to the NRA's claims and would constitute "strong support" for the claims.[69]  Indeed, numerous courts have granted discovery into pending investigations served by the subject of the investigation, despite claims that the law enforcement privilege protected the materials.[70]

        **b.**      **Even If Defendants Made The Threshold Showing, The Deliberative Process Privilege Still Cannot Foreclose The Requested Discovery.**

---

[67] *See Inmates of Unit 14*, 102 F.R.D. at 128; *Crawford*, 469 F. Supp. at 263; *Ismail v. Cohen*, 1986 WL 2186, at *3 (S.D.N.Y. Feb. 10, 1986); *King*, 121 F.R.D. at 194; *Culp*, 78 F.R.D. at 139–41.

[68] *See* Section II(A)(1), supra.

[69] *See* Order, at 24.

[70] *See Swenson v. Troy*, 2015 WL 10741294, at *1 (Ill. Cir. Ct. Nov. 5, 2015) (Trial Order) (denying motion to quash subpoena to depose state police troopers during an ongoing investigation into the plaintiff despite the invocation of the law enforcement privilege by the objecting party); Subpoena Respondent Illinois State Police's Motion to Quash, *Swenson v. Troy*, 2015 WL 10739984 (Ill. Cir. Ct. June 26, 2015) (Trial Motion, Memorandum and Affidavit) (arguing for the application of the law enforcement privilege to prevent the discovery of information on an ongoing police investigation to which the requesting party is the subject); *Aguilar v. Immigration and Customs Enf't Div. of the U.S. Dept. of Homeland Sec.*, 259 F.R.D. 51, 60 (S.D.N.Y. June 23, 2009) (rejecting invocation of the law enforcement privilege concerning certain documents and holding that the government failed to make a threshold showing that disclosure of such documents would create specific harm to its *ongoing* investigation into the plaintiff); *Holten v. City of Genoa*, No. 3:02-cv-50201 (N.D. Ill. June 6, 2006) (Memorandum Opinion and Order), ECF No. 70-2 (holding the qualified law privilege did not preclude discovery because the applicable balancing factors favored plaintiff's need to conduct discovery over the possibility of interference of the ongoing criminal investigation into the plaintiff), attached to the Gase Decl. as Exhibit 3; *see also S.E.C. v. Shanahan*, 2009 WL 1955747, at *2-3 (E.D. Mo. July 6, 2009) (granting motion to compel discovery of investigatory materials concerning the S.E.C.'s ongoing civil investigation into plaintiff that were previously provided to the S.E.C. by the attorney general's office during its criminal investigation of the plaintiff on similar issues).

The deliberative process privilege "evaporates" where, as here, a party's cause of action is directed to the government's intent in rendering a policy decision.[71]   Defendants' intentions animating their decision to issue the April 2018 Letters and accompanying statements are plainly relevant to the NRA's retaliation claim—as well as Defendants' qualified immunity defense. Furthermore, Defendants do not dispute (nor could they) that the intentions driving their pursuit of the NRA (including the actions detailed in the Amended Complaint) are squarely relevant to the NRA's selective enforcement, implicit censorship, and retaliation claims.

As the United States Supreme Court has made clear, "an official's motive is a necessary element . . . [for claims of] retaliation for the exercise of free speech."[72]   Here, the NRA specifically alleges that both the April 2018 Letters and the Press Releases were issued in retaliation for the NRA's political speech protected by the First Amendment.[73]   Accordingly, the reasoning that motivated Defendants' conduct is highly relevant.  Indeed, other courts weighing similar First

---

[71] *See Children First Found., Inc. v. Martinez*, 2007 WL 4344915, at *7 (N.D.N.Y. June 9, 2014); *see, e.g.*, *Ebbert v. Nassau Cty.*, 2007 WL 674725, at *11 (E.D.N.Y. Mar. 5, 2007) (finding that when the deliberations are "among the central issues in the case" or "when the subject of the lawsuit is the very nature of the decision making process, the privilege should not foreclose the production of critical information") (internal quotations and citations omitted); *Mitchell v. Fishbein*, 227 F.R.D. 239, 250 (S.D.N.Y. 2005) (surveying cases on the waiver); *State of N.Y. v. Oneida Indian Nation of N.Y. (Oneida I)*, 2001 WL 1708804, at *6 (N.D.N.Y. Nov. 9, 2001) (finding that the privilege must give way when the decision making process is the subject of the litigation) (citing *Marisol A. v. Giuliani*, 1998 WL 132810, at *7-8 (S.D.N.Y. Jan. 16, 2007)); *Mr. and Mrs. B. v. Bd. of Educ. of Syosset Cent. Sch. Dist*, 35 F. Supp. 2d 224, 230 (E.D.N.Y. 1998); *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 139 F.R.D. 295, 299 (S.D.N.Y. 1991) ("Where the deliberations of government are genuinely at issue, privileges designed to shield the deliberative process from public scrutiny 'may not be raised as a bar against disclosure.'") (quoting *Burka v. N.Y. City Trans. Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) & citing *Grossman v. Schwarz*, 125 F.R.D. 376, 385 (S.D.N.Y. 1989)).

[72] *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998); *see also* Order, at 18 (recognizing that, with respect to the NRA's retaliation claim, the NRA must show that Defendants' "actions were motivated or substantially caused by [the NRA's] exercise" of its First Amendment rights).

[73] *See* Am. Compl., at ¶ 86.

Amendment claims have emphasized these factors, including as revealed by internal law enforcement documents.[74]

Furthermore, Defendants' subjective intent and motive must also be evaluated in relation to Defendants' affirmative defense of qualified immunity.[75]  As the Second Circuit has made clear with respect to a qualified immunity analysis, "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law."[76]  The factfinder will, therefore, be required to evaluate Defendants' motive in issuing the April 2018 Letters and the Press Releases before deciding if they are entitled to qualified immunity on the NRA's retaliation claim.[77]  Accordingly, the deliberative process privilege cannot apply as Defendants' motive and deliberations are a primary issue in the case.[78]

Furthermore, the deliberative process privilege does not protect factual assertions.[79]

---

[74] *See, e.g.*, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 232–33 (7th Cir. 2015) (focusing on internal law-enforcement strategy memo in upholding First Amendment claim); *MacNamara*, 249 F.R.D. at 82 (focusing on an internal law enforcement policy memo concerning a "mass arrest processing plan" in a First Amendment case).

[75] *See* ECF No. 59 (*Answer*, Nov. 11, 2018), at ¶ 148.

[76] *Locurto v. Safir*, 264 F.3d 154, 168-69 (2d Cir. 2001) (rejecting argument that "subjective intent is *per se* irrelevant to the inquiry into objective reasonableness); *Sheppard v. Beerman*, 94 F.3d 823, 828 (2d Cir. 1996) ("[T]he employer's actual (subjective) motive is not irrelevant in a qualified immunity inquiry" on a First Amendment retaliation claim.").

[77] *See Spencer v. Philemy*, 540 F. App'x 69, 72 (2d Cir. 2013) (holding defendants "would be entitled to qualified immunity 'only if a finder of fact determined that [they] had no retaliatory motive'").

[78] *See* Motion, at 19-20.  Defendants insist that courts only "sometimes" refuse to apply the deliberative process where, as here, the government's deliberations are squarely at issue in the litigation; however, they fail to cite a single decision where any court actually enforced the privilege when the agency's deliberations were at issue.  *See id.* at 23.

[79] *Children First Found., Inc.*, 2007 WL 4344915, at *6 ("As a general rule, the privilege does not cover purely factual matters"); *Natl. Cong. for Puerto Rican Rights ex rel. Perez*, 194 F.R.D. at 93 (same); *Cipolla v. Cty. of Rensselaer*, 2001 WL 1223489, at *2 (N.D.N.Y. Oct. 10, 2001);

Therefore, to the extent documents or communications related to DFS's Investigation are being withheld based on the deliberative process privilege and they discuss factual assertions, such as the number of policies or amounts paid to the NRA as discussed in Levine's Declaration, that information cannot be protected by the deliberative process privilege.[80]

### 4. The Attorney-Client Privilege Is Not Available When DFS Attorneys Acted In A Regulatory, Rather Than Legal, Capacity.

Defendants are claiming attorney-client privilege regarding every aspect of communication or participation remotely related to DFS's Investigation and the associated consent orders.[81]  Even if the Court determines that the Declarations and the Motion are proper assertions of the attorney-client privilege—which it should not—Defendants asserted the privilege without the requisite claim that the communications were confidential and for the *primary* purpose of seeking legal advice.[82]  The fact that an in-house counsel holds a law degree does not automatically protect every communication in which he or she is involved.[83]  Furthermore, when the attorney is performing regulatory, not legal, duties, the attorney-client privilege does not apply.[84]

---

*Schomburg,* 298 F.R.D. at 144 (same); *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 482 (2d Cir.1999) (same); *Hopkins v. U.S. Dept. of Housing and Urban Devt.*, 929 F.2d 81, 84 (2d Cir. 1991) (same); *MacNamara,* 249 F.R.D. at 78 (stating that "a document is not 'deliberative' where it concerns 'purely factual' information regarding, for example, investigative matters or factual observations"); *E.B. v. N.Y. City Bd. of Educ.,* 233 F.R.D. 289, 292 (E.D.N.Y. 2005) (same).

[80] *See* Motion, at 16-17; Levine Decl., at ¶ 35.

[81] *See* Motion, at 15; Levine Decl., at ¶ 41.

[82] *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Strougo v. BEA Assoc.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001).

[83] *See, e.g.*, *In re Cty. of Erie*, 473 F.3d 413, 418-421 (2d Cir. 2007).

[84] *See In re Cty. of Erie*, 473 F.3d at 421 (holding that consultations from an attorney in a non-legal capacity, such as a policy-advisor capacity, are not protected by attorney-client privilege); *Resolution Trust Corp*, 773 F. Supp. at 600 ("[T]he attorney-client privilege does not normally protect communications between client and counsel where counsel are acting as regulatory decision-makers rather than as attorney advisors[.]"); *Mobil Oil Corp.*, 102 F.R.D. at 10 (holding

Here, Defendants provide only a bare, conclusory justification for the application of the attorney-client privilege to internal memoranda, drafts, and communications concerning the Investigation,[85] which this Court has found to be insufficient when the attorneys' preparing or receiving these types of documents also operate in a regulatory decision-making capacity.[86] Accordingly, without more, the Court should reject Defendants' assertion of the attorney-client privilege.

5.   **The NRA Has A Substantial Need For The Documents Withheld Pursuant To The Work Product Doctrine.**

If the work product doctrine protects documents Defendants are withholding—which it does not[87]—the NRA need only show that it has a "substantial need for the materials to prepare its case" and that it "cannot, without undue hardship, obtain their substantial equivalent by other means."[88]  The withheld documents go the heart of this controversy:  the improper motivation of

---

that documents that address regulatory-related matters do not come within the attorney-client privilege "merely by being forwarded to or routed through the counsel's office.").

[85] *See* Motion, at 15-16; Levine Decl., at ¶ 42.

[86] *See Mobil Oil Corp.*, 102 F.R.D. at 10 (rejecting application of attorney-client privilege where proponent failed to show information was communicated between the EPA Administrator and General Counsel for the Department of Energy for the *primary purpose* of rendering legal advice on the regulatory issue at concern and not for the purpose of formulating a regulatory response).

[87] *S.E.C. v. Thrasher*, 1995 WL 46681, at *3 (S.D.N.Y. Feb. 7, 1995), *aff'd*, 1995 WL 456402 (S.D.N.Y. Aug. 2, 1995) (rejecting Commission's work product claim that documents created in the course of an investigation are automatically work product); *S.E.C v. Stratton Oakmont, Inc.,*1992 WL 226924, at *1 (S.D.N.Y. May 22, 1992) (rejecting Commission's claim of work product for notes of interviews "taken by the SEC while conducting a fact gathering investigation and prior to the Commission's determination to institute litigation against the . . . defendants"); *Martin v. Valley Nat. Bank of Az.*, 140 F.R.D. 291, 308 (S.D.N.Y. 1991) (rejecting Division of Investigation's claim that all inquiries and the documents generated by them automatically qualify as work product).

[88] FED. R. CIV. P. 26(b)(3)(A)(ii).

Defendants in investigating the NRA endorsed affinity programs, issuing the April 2018 Letters and accompanying statements; and issuing the Lockton, Chubb, and Lloyd's consent orders. The NRA has "substantial need" for such documents, especially given the difficulty of proving a party's intent in a civil rights case, and has no way to obtain the equivalent documents showing Defendants' intent in pursuing its campaign against the NRA.[89]

### 6.   The Common Interest Doctrine Cannot Shield Otherwise Nonprivileged Documents.

The Court should reject Defendants' argument that all "communications and documents exchanged between the defendants in this case" relating to this action are protected because of the common interest doctrine.[90]  Although common interests among these parties may exist, common interest doctrine cannot transform an otherwise non-privileged document into a privileged one.[91] As the Second Circuit recently made clear:

> "[A] communication directly among the clients is not privileged unless made for the purpose of communicating with a privileged person," i.e., the lawyer, "agents of" the client or of the lawyer "who facilitate communications between" the client and the lawyer, and "agents of the lawyer who facilitate the representation."  In this vein, we have stated that it is not "necessary for the attorney representing the

---

[89] *See, e.g.*, *Raza v. City of N.Y.*, 998 F. Supp. 2d 70, 82 (E.D.N.Y. 2013) (granting broad discovery in a First Amendment and Equal Protections case against the NYPD because "the central fact at issue, discriminatory intent, is difficult to establish"); *Ri Sau Kuen Chan v. NYU Downtown Hosp.*, 2004 WL 1886009, at *4–6 (S.D.N.Y. Aug. 23, 2004) (holding that broad discovery is necessary for claimants to build their case because "employers rarely leave a paper trail—or 'smoking gun'— attesting to a discriminatory intent," a required component of a discrimination claim).

[90] *See* Motion, at 21.  The Court should also reject Defendants' inextricable argument that documents related to the action are somehow protected by the deliberative process privilege, even though they have identified no connection with any agency decision or how the documents would be predecisional or deliberative.  *See* Section II(B)(2)(b), supra.

[91] *United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) (rejecting a claim of privilege pursuant to the common interest doctrine where the communications at issue "did not serve the interests that justify the privilege" because they were made "outside the presence of any lawyer" and "were not made for the purpose of obtaining legal advice from a lawyer").

communicating party to be present when the communication is made to the other party's attorney" under a common-interest agreement.  Ultimately, "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."[92]

The Second Circuit went on to acknowledge that they "know of no precedent applying the attorney-client privilege" on the sole ground that a communication occurs "among co-defendants who had joined in a joint defense agreement."[93]  This was true even though the communications at issue occurred after the initiation of litigation—the same period Defendants inaccurately insist automatically affords privilege protections.[94]  There are numerous documents created after the initiation of litigation that unambiguously are not protected by the attorney-client privilege or the work product doctrine, and certainly would, therefore, not be protected under the common interest doctrine.[95]  Accordingly, the Court should require Defendants to produce documents responsive to DFS, Vullo, and Cuomo Requests No. 26 and, to the extent the Court does not find Defendants waived any privileges, log any documents withheld on the basis of privilege.

## III. CONCLUSION

For the reasons discussed above, together with the reasons discussed in the NRA's memorandum of law in support of its motion to compel (ECF No. 73-1), Defendants' Motion should be denied in its entirety.

---

[92] *Id.*

[93] *Id.*

[94] *Id.* at 85.

[95] *See, e.g.*, *Rattner v. Netburn*, 1989 WL 223059, at *6 (S.D.N.Y. June 20, 1989), *aff'd,* 1989 WL 231310 (S.D.N.Y. Aug. 23, 1989) (draft press release authored by counsel is not privileged); *Loguidice v. McTiernan*, 2016 WL 4487779, at *17–19 (N.D.N.Y. Aug. 25, 2016) (communications regarding factual recitation of conversation, list of case names, and draft report to inspector general are not privileged); *Koumoulis v. Indep. Fin. Mkt. Grp., Inc.*, 295 F.R.D. 28, 44–45 (E.D.N.Y. 2013) (communications, draft interview questions, and statements are not privileged by virtue of an attorney drafting them).

Dated: February 15, 2019   Respectfully submitted,


By:  */s/ William A. Brewer III*    

William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Stephanie L. Gase (Bar No. 700205)
sgase@brewerattorneys.com
Sarah B. Rogers (Bar No. 700207)
sbr@brewerattorneys.com
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400

Charles J. Cooper*
ccooper@cooperkirk.com
Michael W. Kirk*
mkirk@cooperkirk.com
J. Joel Alicea*
jalicea@cooperkirk.com
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington D.C., 20036
Telephone: (202) 220-9660
Facsimile: (202) 220-9601

*appearing *pro hac vice*

**ATTORNEYS FOR PLAINTIFF THE NATIONAL
RIFLE ASSOCIATION OF AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon

the following counsel of record in the above cause via ECF in accordance with the Federal Rules

of Civil Procedure and the Local Rules on this 15th day of February, 2019.

Adrienne J. Kerwin
Assistant Attorney General
New York State Attorney General's Office
Albany Office
The Capitol Albany, New York
12224-0341
Email: Adrienne.Kerwin@ag.ny.gov

William A. Scott
Assistant Attorney General, Of Counsel
New York State Attorney General's Office
Albany Office
The Capitol Albany, New York
12224-0341
Email: William.Scott@ag.ny.com

/s/  *Stephanie L. Gase*
Stephanie L. Gase

4852-0015-9111.8