UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NATIONAL RIFLE ASSOCIATION OF AMERICA,

                                                 *Plaintiff*,

-against-

ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES.

                                                 *Defendants*.

18-cv-00566 (TJM/CFH)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

                                               LETITIA JAMES
                                               Attorney General of the State of New York
                                               Attorney for Defendants
                                               The Capitol
                                               Albany, New York 12224-0341

William A. Scott
Assistant Attorney General, of Counsel
Bar Roll No. 512434
Telephone: (518) 776-2255
Fax: (518) 915-7740 (Not for service of papers)                      Date: February 20, 2019

# Table of Contents

Preliminary Statement ................................................................................................................. 1

Argument .................................................................................................................................... 2

   I.  PLAINTIFF'S ARGUMENTS REGARDING RELEVANCE OF THEIR INAPPROPRIATE DEMANDS ARE WITHOUT MERIT ...................................................... 2

      A. Plaintiff is Not Entitled to Discovery Related to DFS's Investigation of the NRA's Illegal CarryGuard Program ..................................................................................................... 3

      B. The Illegal CarryGuard Program is Unique and The NRA Is Not Entitled To Discovery Into Unrelated DFS Investigations ............................................................................... 4

      C. The NRA's Argument Regarding Referrals to Other Agencies Understates the Broad Nature of Their Request ................................................................................................ 6

      D. The NRA's Demands Relating to the DFS Guidance Letters and Press Statements ......... 7

   II.  PLAINTIFF'S ARGUMENTS REGARDING PRIVILEGE ARE WITHOUT MERIT ...... 7

      A. No Privilege Log is Required as Plaintiff's Demands are Improper ................................. 8

      B. Defendants Have Properly Asserted Appropriate Privileges at This State of the Litigation ................................................................................................................................... 8

      C.  Attorney Client Privilege Applies Even in the Regulatory Context ............................... 10

Conclusion ................................................................................................................................ 10

## **Table of Authorities**

Cases

Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778 (2d Cir. 2007) ................................................. 5
City of New York, v. FedEx Ground Package System, 2017 WL 4155410 (S.D.N.Y., 2017) ...... 9
Franco v. Yale University, 80 Fed. Appx. 707 (2d Cir. 2003) .......................................................... 8
Kamholtz v. Yates County, No. 08-CV-6210, 2008 U.S. Dist. LEXIS 97985 (W.D.N.Y. Dec. 3, 2008) ............................................................................................................................................. 5
King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988) .............................................................................. 9
Macnamara v. City of New York, 249 F.R.D. 70 (S.D.N.Y. 2008) ................................................... 9
Resolution Tr. Corp. v. Diamond, 773 F. Supp. 597 (S.D.N.Y. 1991) .......................................... 10
SEC v. McGinn, 2011 U.S. Dist. LEXIS 54416 (N.D.N.Y. 2011) .................................................. 9
Strougo v. BEA Assocs., 199 F.R.D. 515 (S.D.N.Y. 2001) ............................................................. 9
Wandering Dago, Inc. v. Destito, 879 F.3d 20 (2d Cir. 2018) .......................................................... 5
Zieper v. Metzinger, 392 F.Supp. 2d 516 (S.D.N.Y. 2005) .............................................................. 7

**Preliminary Statement**

Defendants' application for a protective order seeks to preclude discovery by the Plaintiff NRA into four categories of legally irrelevant and privileged documents. Plaintiff's opposition does little more than repeat its inaccurate overstatements of the breadth of this litigation following the Courts Decision and Order on Defendants' motion to dismiss [Dkt 56] and again ignores the impropriety of its discovery demands.

The improper nature of the Plaintiff's demands in this matter have now resulted in many pages of briefing. Though this memorandum will attempt to avoid undue repetition, the context of these demands must be reiterated. The Plaintiff commenced this litigation with little to no legal authority and it has survived by the narrowest of margins. New York, Washington[1] and California[2] have each, to varying degrees, recognized the illegality of the NRA's Carry Guard insurance. As set forth in the Defendants' underlying motion papers, the NRA has refused to engage in any attempts to resolve New York's investigation, instead choosing to file this lawsuit.

It is in that context that the Plaintiff has served patently improper discovery demands. The documents sought by the Plaintiff are irrelevant to its narrow legal claims and are protected by multiple, well-settled privileges. A protective order is necessary in this matter to ensure that the target of a valid investigation does not abuse the civil discovery rules to improperly pry into and interfere with a pending investigation. The Plaintiff fails to interpose any proper arguments in opposition to the Defendants' request.

---

[1] See https://thehill.com/homenews/state-watch/425676-washington-state-deems-nra-branded-insurance-program-illegal
[2] See https://www.insurancejournal.com/news/west/2018/09/11/500773.htm

**Argument**

### I.  PLAINTIFF'S ARGUMENTS REGARDING RELEVANCE OF THEIR INAPPROPRIATE DEMANDS ARE WITHOUT MERIT

The Plaintiff continues to seek four categories of material that are irrelevant to this litigation.  The first category of materials are documents relating to the DFS's ongoing investigation of Carry Guard and other NRA-endorsed programs. The DFS investigation of the NRA is ongoing and DFS should not be required to provide any parts of its investigative files to the target of the investigation.  More importantly, these documents are irrelevant to any of the surviving claims in this action. The relevant standard on the NRA's First Amendment claim is an objective one and the Court has specifically rejected the NRA's improper attempt to collaterally attack lawful settlements, to which the NRA was not a party.  Thus, the demanded discovery cannot possibly be relevant.

The second category of materials are documents relating to DFS's investigation of affinity insurance programs that have no relationship to the NRA or any of its claims. The declarations supporting the Defendants' motion for a protective order demonstrate that there are no similarly situated comparators to the NRA.  In order to sustain its cause of action, the NRA must look to similarly situated comparators, not dissimilar investigations, such as those sought in the NRA's demands.  As the NRA has acknowledged that is not aware of a similarly situated comparator– and its opposition memorandum does not even suggest that such a comparator exists – the NRA should not be entitled to discovery on unrelated third parties that cannot support its claims.

The third category of materials are documents regarding Defendants' referral of matters to

other government agencies. As Defendants have already produced all referrals by DFS that relate to the NRA, no further discovery should be permitted, as the NRA's request for referral documents unrelated to the NRA is improper. None of the documents or communications related to the referral of unrelated matters can satisfy the relevance standard in Rule 26.

The fourth category of materials subject to this motion are deliberative materials related to DFS' guidance letters and the Governor's press release. These documents are both irrelevant to the proceedings and clearly protected by deliberative privilege.

### A. Plaintiff is Not Entitled to Discovery Related to DFS's Investigation of the NRA's Illegal CarryGuard Program

As explained in the Defendants' underlying motion papers, the files associated with the investigations into the NRA's illegal conduct are not relevant to any remaining claim in this action. To the extent that the NRA seeks to argue that the investigative files are relevant to their First Amendment claims, this simply is not the law. The applicable standard is set forth in Zieper v. Metzinger, 392 F.Supp. 2d 516, 525 (S.D.N.Y. 2005), aff'd, 474 F.3d 60 (2007). The court in Zieper explained: "The test is objective: whether the official's comments 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request' to cease engaging in protected speech." Id. (internal citation omitted).

The NRA fails to rebut what the Defendants have shown: that the Consent Orders speak for themselves as to both the substance of the orders and their effective dates. Nothing else relating to DFS's investigations is relevant to the surviving claims in this case.

The NRA's argument that this information is relevant to its selective enforcement claim is also without merit. Indeed, Judge McAvoy has already dismissed the selective enforcement claim as it

3

related to the investigation and settlement of the regulatory actions against Lockton and Chubb. Judge McAvoy explained, "Lockton and Chubb may not desire to vacate their consent agreements and/or do business with the NRA related to affinity insurance programs, and even if they wanted to do both, those are matters that should be advocated by [L]ockton and Chubb - not the NRA." [Dkt. No. 56 at 42]. In dismissing the NRA's selective enforcement claim related to the investigation and settlement of consent orders to which the NRA is not a party, the Court specifically rejected the NRA's arguments as to its ability to collaterally attack those consent orders. Dkt. 56 at 43-45. This is yet another attempt to improperly challenge these orders and the Court should again reject these attempts as they are wholly improper.

Finally, it bears repeating that the selective enforcement claims are subject to a motion pursuant to FRCP 12(c). To the extent that the court is not persuaded that discovery into this area is entirely inappropriate, no such discovery should be permitted before the court rules on that motion.

The Plaintiff is simply not entitled to documentation concerning DFS' investigation into the NRA's illegal activities, and a protective order is necessary to prevent the NRA from continuing to collaterally attack lawful consent orders which resolved admitted violations of law, and to which the NRA is not a party. As set forth in the Defendants' underlying motion papers these documents are also subject to various privileges, particularly as the Plaintiff is the subject of an ongoing investigation. As set forth below, Plaintiffs arguments regarding privileges are without merit and a protective order is necessary for the further purpose of preserving these privileges and the integrity of the ongoing investigation in the NRA.

### B. The Illegal CarryGuard Program is Unique and The NRA Is Not Entitled To Discovery Into Unrelated DFS Investigations

A plaintiff alleging a selective enforcement claim must show that: (1) "'[it] was treated differently from other similarly situated businesses,'" and; (2) "'such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Wandering Dago, Inc. v. Destito, 879 F.3d 20, 40 (2d Cir. 2018) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 [2d Cir. 2007]).  The level of similarity between a plaintiff and any comparators "must be extremely high."  See Kamholtz v. Yates County, No. 08-CV-6210, 2008 U.S. Dist. LEXIS 97985, *16 (W.D.N.Y. Dec. 3, 2008), aff'd, 350 F. App'x 589 (2d Cir. 2009).

Discovery relating to entities other than the NRA is only relevant if the other entity is "similarly situated" to the NRA.  As demonstrated in the Defendant's opening papers, there are no entities that were similarly situated to the NRA.  No one else has sponsored an affinity group insurance product that provided coverage for the illegal use of a firearm and no one else engaged in the type of marketing of criminal defense coverage engaged in by the NRA.  Despite ample opportunity to do so, the NRA has not identified any such comparable entity.

Instead, the NRA seeks this Court's blessing to conduct a fishing expedition in a vain attempt to find a comparator. [Dkt. 83 at 16].  The fact that the NRA has failed to, and indeed cannot, plead a similarly situated comparator is exactly the reason the selective enforcement claim should be dismissed pursuant to Defendants FRCP 12(c) motion.  More importantly, the NRA cannot meet its burden of showing the relevance of documents related to affinity programs that are not substantially similar to the NRA's illegal policies.  Its inability to show that comparators exist, a fact clearly refuted by the Defendants, precludes the NRA from arguing that documents related to affinity programs unrelated to the NRA are relevant.  As such a protective

order as to these documents must be issued.

### C. The NRA's Argument Regarding Referrals to Other Agencies Understates the Broad Nature of Their Request

The NRA's request for "referrals" to other agencies as confirmed by counsel at a number of meet and confers, is not as limited as the language of the request would indicate. Nor, as the Plaintiff seems to imply in their opposition papers, is the request limited to communications related to the NRA. To date, the Defendants have provided the Plaintiff with all responsive communications to other governmental entities regarding the NRA.[3] However, a protective order remains necessary as the Plaintiff improperly continues to seek all communications between the Defendants and any governmental agency anywhere in the world and unrelated to the NRA, other gun promotion organizations or, indeed, any relevant issue in this case. This demand is the very image of an improper fishing expedition and the Plaintiff does nothing to try to establish the relevancy of these documents.

Nor is this demand proportional to the needs of this case, as both the DFS and the Governor routinely communicate with New York State agencies about a litany of issues that have no bearing on this matter. By way of example, the Plaintiff's demand would call for the production of every communication between the Governor's Office and the Office of the State Comptroller. Similarly, DFS's enforcement division routinely refers matters to the United States Department of Justice including various United States Attorneys' Offices in New York, the District Attorney for New York County, and various other district attorneys throughout the state. There is simply no purpose for this sort of discovery and the Plaintiff has failed to rebut the

---

3 Even these documents are of negligible relevance as New York does not control the investigations or enforcement actions undertaken by its sister states.

Defendants' showing that they are entitled to a protective order as to this overbroad and harassing demand.

**D. The NRA's Demands Relating to the DFS Guidance Letters and Press Statements**

The declarations submitted to establish and assert the deliberative privilege as it relates to these categories of documents are clearly sufficient. The Plaintiff argues, in sum, that every deliberative document concerning the guidance letters and press release is somehow relevant following Judge McAvoy's Decision and Order. However, Judge McAvoy's decision in no way suggests such an evisceration of the deliberative privilege.

The Plaintiff's claim in this regard hinges on what impact, if any, the guidance letters and press release had on outside financial institutions. Even the Plaintiff's baseless allegations of backchannel communications concern alleged communications with outside entities, not internal, pre-decisional discussions. As with the documents associated with the NRA investigation, the test is an objective one. See Zieper, 392 F.Supp. 2d at 525 (S.D.N.Y. 2005). Internal, pre-decisional discussions that by their very nature could not have acted as a threat to financial institutions have no bearing on this claim. As such, a protective order is necessary to maintain the deliberative privilege associated with these documents.

**II. PLAINTIFF'S ARGUMENTS REGARDING PRIVILEGE ARE WITHOUT MERIT**

The NRA continues to seek materials that are clearly protected by a privilege. The NRA's responses regarding the formalities of a privilege log or who signs a declaration, ignore the patently defective nature of the demands themselves. Even if the NRA's discovery requests were proper—and they are not—the documents sought subject to various privileges which Defendants have consistently preserved and of which Defendants have made more than ample

7

showings at this stage in the litigation.

### A. No Privilege Log is Required as Plaintiff's Demands are Improper

Contrary to Plaintiff's arguments in opposition, no privilege log is required in response to improper discovery demands. As explained in Defendants' opposition to Plaintiff's motion to compel, the document demands suffer from numerous defects and thus are not otherwise discoverable. [Dkt. 79 at pg. 16-17]. Therefore, no privilege log is required in response. See Franco v. Yale University, 80 Fed. Appx. 707, 710 (2d Cir. 2003).

### B. Defendants Have Properly Asserted Appropriate Privileges at This State of the Litigation

The NRA, faced with Defendants' clear demonstration of the impropriety of their discovery demands, is forced to fall back to formalities related to privileges in its opposition rather than arguing as to the merits. The Plaintiff argues that: 1) The declarations submitted in support of the Defendants' motion are insufficient, and; 2) That none of the documents sought in these overbroad demands are protected by the law enforcement, deliberative or attorney-client privilege. Neither of these arguments is accurate.

The declarations of Messrs. Levine and Dorfman, provide detailed descriptions of the NRA investigation, the documents that are associated with that investigation and the reasons why those documents are protected by the privileges asserted. Both declarants have also set forth their respective positions within the DFS and have affirmed their respective familiarity with the issues and documents involved in this case. Contrary to the Plaintiff's assertion, "there is no categorical prohibition on individuals who are attorneys as well as qualified designees of high authority from providing the required affidavit." City of New York, v. FedEx Ground Package

8

System, 2017 WL 4155410, *6 (S.D.N.Y., 2017). Simply, the declarations provided are more than sufficient to assert the relevant privileges and to describe the reasons for asserting these privileges.

As to the law enforcement privilege, the declarations of Messrs. Levine and Dorfman, provide great detail regarding the problematic nature of disclosing these sensitive materials to the very target of the investigation. The law enforcement privilege prevents the very scenario presented here, where the target of an investigation, who has refused to accept accountability, seeks to obtain information, which, if disclosed, would substantially hinder the investigation. "[This] privilege exists to encourage and shield the efforts of law enforcement and regulatory agencies to obtain information without fear of premature disclosure to those under investigation." SEC v. McGinn, 2011 U.S. Dist. LEXIS 54416, *19 (N.D.N.Y. 2011). Moreover, as the documents sought are irrelevant to the remaining claims, no ancillary factors weigh in favor of lifting the law enforcement privilege. See e.g., McNamara v. City of New York, 249 F.R.D. 70, 80 (S.D.N.Y. 2008) (citing King v. Conde, 121 F.R.D. 180, 194-195 [E.D.N.Y. 1988]).

Similarly, the declaration of Mr. Dorfman clearly explains the pre-decisional nature of these materials and the reasons why counsel provides input into the subject investigations. Though the Plaintiff may wish it otherwise, these documents are protected as deliberative material, by the attorney-client privilege and by the work product privilege. See e.g., Strougo v. BEA Assocs., 199 F.R.D. 515, 521 (S.D.N.Y. 2001); see also ACLU v. DOD, 2017 U.S. Dist. LEXIS 159108, at *13 (S.D.N.Y. Sep. 27, 2017). Neither Mr. Dorfman nor Ms. Edwards are counsel of record in this litigation, and both have been delegated the authority to assert the deliberative process privilege on behalf of their principals.

9

Particularly given the improper demands pursued by the Plaintiff, no more is required of the Defendants at this stage of the litigation, especially given that Defendants have consistently asserted the proper privileges and have produced affidavit from high ranking officials with personal knowledge of the relevant documents.

### C. Attorney Client Privilege Applies Even in the Regulatory Context

In arguing that attorney-client privilege disappears where a lawyer renders legal advice in the regulatory context, Plaintiff misstates the law, even as stated in the cases they cite. See Resolution Tr. Corp. v. Diamond, 773 F. Supp. 597, 600-01 (S.D.N.Y. 1991) (rejecting the argument that communications which are for regulatory or legislative purposes cannot be privileged and finding such documents to be "absolutely privileged").  It is obvious that the simple fact that the legal advice offered by attorneys within the Executive Chamber and DFS related to regulatory matters does not make it any less privileged.  To find otherwise would be to rewrite the law of attorney client privilege.  The Plaintiff's attempt to obtain documents that consist of communications between the Defendants about the pending litigation, and not as to any of the underlying claims therein, is improper and a protective order should be issued.

### Conclusion

What purpose the Plaintiff intends to further with its improper discovery requests is unknown, but it is certainly not related to this litigation and the Defendants' request for protective order is appropriate and necessary to curtail the Plaintiff's improper demands.  As such, the Protective Order sought herein should be issued by the Court, together with such other and further relief as the Court deems proper and necessary.

Dated: Albany, New York
February 20, 2019

                                    LETITIA JAMES
                                    Attorney General of the State of New York
                                    Attorney for Defendants
                                    The Capitol
                                    Albany, New York  12224-0341
                                    By: s/ *William A. Scott*
                                    William A. Scott
                                    Assistant Attorney General, of Counsel
                                    Bar Roll No. 512434
                                    Telephone:  (518) 776-2255
                                    Email: William.Scott@ag.ny.gov

TO:    Sarah Rogers, Esq.
        Stephanie L. Gase, Esq.
        William A. Brewer, Esq.
        Brewer Attorneys & Counselors
        750 Lexington Avenue, 14th Flr.
        New York, NY  10022

        Charles J. Cooper, Esq.
        J. Joel Alicea, Esq.
        Michael W. Kirk, Esq.
        Cooper & Kirk, PLLC
        1523 New Hampshire Ave., NW
        Washington, DC  20036