IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,<br><br>     Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    CIVIL CASE NO. 18-CV-00566-TJM-CFH |

## STIPULATED ESI ORDER

Pursuant to Fed. R. Civ. P. 16 and Fed. R. Civ. P. 26(f), Plaintiff the National Rifle Association and Defendants New York Governor Andrew Cuomo, Maria T. Vullo, and the New York State Department of Financial Services (individually, a "party"; together, the "parties"), conferred regarding matters affecting the discovery of electronically stored information ("ESI" or "E-discovery") and agreed on the following procedures regarding the production of ESI in this case, which the Court finds appropriate. The Court being fully advised in the premises:

It is hereby **ORDERED** as follows:

### I.

### DEFINITIONS

1. **"Electronically stored information"** or **"ESI,"** as used herein, has the same meaning as contemplated by the Federal Rules of Civil Procedure.

2. **"Native data format"** means and refers to the format of ESI in which it was originally generated and/or normally kept by the producing party in the usual course of its business and in its regularly conducted activities.

3.  **"Metadata"** means and refers to information about electronic documents or data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

4.  **"Static Image"** refers to a representation of ESI produced by converting a native file into standard image format capable of being viewed and printed on standard computer systems.

5.  **"Documents"** has the meaning contemplated in the Federal Rules of Civil Procedure.

6.  **"Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

## II.

## FORMAT OF PRODUCTION

**A.    Production of Native Files.**

Unless such materials contain privileged or redacted information, Microsoft Excel, Microsoft Project, Microsoft Access, other spreadsheets, audio files, video files, and database files will be produced in native format. If these files, however, contain privileged or redacted information, they need not be produced in native format but shall be produced with the extracted text and metadata fields set forth in this Order if possible, except to the extent the extracted text or metadata fields are themselves redacted. Excel files that contain privileged information should be produced as an Excel file in a manner that does not prevent Excel functions from performing, but with privileged information redacted. Each native file produced will be accompanied with its

metadata as outlined in Attachment A, and an image placeholder designating the document was produced in native format. The native file will be produced in a folder labeled with the Bates number of the native file document in the following format:

1. Single file per document.

2. Filenames should be of the form:

   a) <Bates num><designation>.<ext>

   b) Where <Bates num> is the BATES number of the document, <designation> any designation applicable to the document, and <ext> the appropriate extension for the document (.ppt, .xls, etc.).

**B.    Document Unitization and Load Files.**

For files not produced in their native format, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files. The producing party shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting:

**1.    Document Unitization Load File**

Document productions should include Concordance document load files containing the metadata listed in Attachment A.

**2.    OCR and Extracted Text Files (.TXT Files)**

Individual document-level text files containing the full extracted text for each produced document must be produced. When extracted text is not available (for instance, for image-only documents), individual document-level text files containing the document's full OCR text must be provided.

Pages must be separated by form feed character (decimal 12, hex 0xC) and text files must

be divided into subfolders containing no more than 5000 files.

Filenames should be in the following format:

1. &lt;Bates num&gt;.txt

2. Where &lt;Bates num&gt; is the BATES number of the first page in the document.

3. Text must be encoded in ASCII, except where documents contain characters requiring UTF-8 in order to be read. Such documents shall be produced in UTF-8 format.

### 3. Image Files

Image files should be single page per image and single image per file. The default format shall be TIFF (or jpeg, if the document is in color) unless the following formats are agreed to: jpeg2000, gif, png, single image tiff, and bmp. Filenames should be in the following format:

1. &lt;Bates num&gt;.&lt;ext&gt;

2. Where &lt;Bates num&gt; is the BATES number of the page, and &lt;ext&gt; is the appropriate extension for the image format (.jpg, .tif, .png, etc.).

### 4. Metadata Load Files

Load files should be of the following format:

1. .OPT for images in Comma Separated Value format and .DAT for metadata.

2. The first line must contain the column/field names.

3. Every row must have the same number of columns/fields (empty values are acceptable).

4. Text must be encoded in ASCII.

5. Values must be enclosed by ASCII character 254.

6. Multiple entries in a field must be separated by ASCII character 174.

       7.       New line value in data must be indicated by ASCII character 059.

       8.       Values must be separated by ASCII character 020.

**5.** **Duplicates**

Where a producing party has more than one identical copy of an electronic document or e-mail (i.e., the documents or e-mails are exact duplicates as that term is used in the electronic discovery field), the producing party need only produce a single copy of that document or e-mail (as long as all family relationships are maintained). A party may de-duplicate ESI across each party's custodians or sources.

**6.** **Encryption**

The parties will make reasonable efforts to ensure that all encrypted or password-protected documents are successfully processed for review and production under the requirements of this Order, and if produced in native form, the decrypted document is produced. To the extent encrypted or password-protected documents are successfully processed according to the requirements of this Order, the parties have no duty to identify the prior encrypted status of such documents. To the extent such documents are not successfully processed despite use of reasonable efforts, including reasonable efforts to obtain passwords, the producing party agrees to produce an inventory of such files that are determined to have a reasonable likelihood of containing relevant information as is apparent without decryption such as attachments to responsive files, or metadata suggestive of responsiveness, such as relevant file names, and in any case shall include any containers files such as PST or ZIP files. The inventory shall contain any required metadata and document identifying information, including family relationships, to the extent that such information can be extracted using reasonable efforts during document processing. The inventory shall be produced in accordance with the Load File specifications provided in Attachment A. Each party may request production of such encrypted files, as well as a written description of the efforts

undertaken by the producing party to decrypt the file, and such requests will not be unreasonably denied.

### 7. Email Thread Analysis

Email thread analysis may be used to reduce the volume of emails reviewed and produced, provided that the parties disclose such use prior to or at the time of production. The produced emails must include all the responsive information from a thread, including attachments.

### 8. System and Program Files

System and program files, defined as the NIST, need not be processed, reviewed or produced. Additional files may be excluded by mutual agreement of the parties.

### 9. Color

For files not produced in their native format, if an original document contains color, the producing party may produce black and white image(s), but shall produce color images upon the request of the receiving party.

### 10. Bates Numbering

#### a. Document images

Each page of a produced document shall have a unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably conceal, or interfere with any information from the source document. Any confidentiality legend shall be "burned" onto each document's image at a location that does not unreasonably obscure any information from the source document.

#### b. Native format documents

Documents produced in Native Format will be produced with a placeholder TIFF image. Each TIFF placeholder will contain the Bates Number and confidentiality designation, if any.

**11.     Production Media**

Documents shall be produced by FTP, FTPS, or SFTP site or on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each item of Production Media shall be produced in a Bates labeled folder corresponding to the Bates label on the image placeholder. Each native file produced will be accompanied with its metadata as outlined in Attachment A.

**12.     Attachments**

Email attachments and embedded files or links must be mapped to their parent by the document or production number. If attachments and embedded files are combined with their parent documents, then "BeginAttach" and "EndAttach" fields listing the unique beginning and ending number for each attachment or embedded document must be included.

**13.     Compressed Files**

Compression file types (e.g., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**14.     Non-Responsive Attachments**

The parties agree that fully non-responsive attachments to responsive parent documents need not be produced; however, non-responsive parent documents must be produced if they contain any responsive attachments. Where the parties withhold a fully non-responsive attachment, they will produce a Bates numbered TIFF slip sheet in place of the attachment, along with all metadata for that attachment as specified in Attachment A. The TIFF slip sheet for each withheld attachment will state 'Family Member Withheld as Non-Responsive' and, to the extent technologically reasonable, identify each withheld attachment's FileName and ParentID. If a

producing party does not believe it is technologically reasonable to identify a withheld attachment's FileName and ParentID on the TIFF slip sheet, the producing party will consult in good faith with the receiving party prior to its initial production of ESI containing non-responsive attachments.

The receiving party has the right to request the production of any attachment withheld solely on the ground of non-responsiveness. The parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

### 15. Embedded

If a document has information from another file embedded in it (e.g., a Word document containing an embedded spreadsheet), the producing party shall produce the document with all embedded information, and the receiving party may request that the embedded file be produced as a standalone file. The producing party shall promptly respond in writing if it cannot produce the requested embedded file as a standalone file, after which the parties shall meet and confer.

### III.

### OBJECTIONS TO ESI PRODUCTION

Documents that present imaging or format production problems shall be promptly identified and disclosed to the requesting party; the parties shall then meet and confer to attempt to resolve the problems. If either party objects to producing the requested information on the grounds that such information or production in the requested format is not reasonably accessible because of undue burden or cost, before asserting such an objection, the parties will meet and confer to find if there is a reasonable alternative form of production for the requested information that would not impose an undue burden or cost. Notwithstanding anything contained herein to the contrary, a producing party shall not produce ESI in a format not requested or designated by the requesting party unless the parties have met and conferred—and were unable to resolve such

format production conflict at such meet and confer session—prior to referral to and resolution of such issue by the Court.

## IV.

## PRIVILEGE AND WORK PRODUCT CLAIMS

**A.    Privilege Log.**

Any privilege log shall include the Bates document number (or document identification), custodian, date of the document, author(s), recipient(s), a description of the document, a description of the document's subject matter, an explanation of the privilege(s) being asserted, and, for emails, subject.  Privilege logs shall be produced within thirty (30) days of a party's completion of each production of documents on a rolling basis, provided that all privilege logs are produced no later than thirty (30) days before the discovery cut-off date.  Should the receiving party in good faith have reason to believe a particular entry on the privilege log does not reflect a privileged document, the receiving party may request that the producing party produce additional information to substantiate the claim(s) of privilege.

**B.    Clawback.**

The production of documents (including both paper documents and ESI) subject to protection by the attorney-client privilege and/or protected by the work product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, provided that the producing party notifies the receiving party, in writing, of the production after its discovery of the same.  If the producing party notifies the receiving party after discovery that privileged materials (hereinafter referred to as the "Identified Materials") have been produced, the Identified Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted, on request of the producing party.  If the receiving party has any notes or other work product reflecting

the contents of the Identified Materials, the receiving party will not review or use those materials unless the Court later designates the Identified Materials as not privileged or protected. The Identified Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms and any other location that stores the documents. The receiving party may not make use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents are later designated by a court as not privileged or protected. The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of their contents before the notice was made. If any receiving party is in receipt of a document from a producing party, which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the producing party of the production of that document so that the producing party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Order. The party returning the Identified Materials may move the Court for an order compelling production of some or all of the material returned or destroyed, but the basis for such a motion may not be the fact or circumstances of the production. The parties agree that this Order is an Order entered under Fed. R. Evid. 502, and thus the disclosure of Inadvertent Materials is not a waiver of the privilege in any other federal or state proceeding. This Order does not constitute a concession by any party that any documents are subject to protection by the attorney-client privilege, the work product doctrine, or any other potentially applicable privilege or doctrine. This Order is not intended to waive or limit in any way the parties' right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the Order.

## V.

## **MISCELLANEOUS**

This Order is not intended to govern any protections or restrictions related to the production of privileged litigation material, which would be separately addressed in further orders of this Court. Any documents recalled due to this Order's clawback provision shall have a specific protocol followed to ensure all copies of each such document are appropriately removed from the review system of the opposite party as set forth in Section IV.B above. In the event of individual issues that arise with regard to the identification and production of ESI and ESI-related information, as set forth in this Order, any practice or procedure provided for herein as to such identification and/or production may be varied by written agreement of the parties where such variance is deemed appropriate to facilitate the timely and economical exchange of documents, ESI or ESI-related information. The parties shall meet and confer in the event of any dispute over the need for or nature of such variance in practice or procedure in an effort to reach an agreement prior to informing the Court of any unresolved issues. This Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

Dated this  14  day of  March  2019.

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge

Dated:   March 14, 2019                                    Respectfully submitted,

                                         By:         */s/ Stephanie L. Gase*
                                                William A. Brewer III (Bar No. 700217)
                                                wab@brewerattorneys.com
                                                Stephanie L. Gase (Bar No. 700205)
                                                sgase@brewerattorneys.com
                                                Sarah B. Rogers (Bar No. 700207)
                                                sbr@brewerattorneys.com
                                                BREWER, ATTORNEYS &
                                                COUNSELORS
                                                750 Lexington Avenue, 14th Floor
                                                New York, New York 10022
                                                Telephone:  (212) 489-1400
                                                Facsimile:  (212) 751-2849

                                                Charles J. Cooper*
                                                ccooper@cooperkirk.com
                                                Michael W. Kirk*
                                                mkirk@cooperkirk.com
                                                J. Joel Alicea*
                                                jalicea@cooperkirk.com
                                                COOPER & KIRK, PLLC
                                                1523 New Hampshire Ave., NW
                                                Washington D.C., 20036
                                                Telephone: (202) 220-9660

                                                *Appearing *pro hac vice*

                                                **ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

                                                             and

                                                LETITIA JAMES
                                                Attorney General of the State of New York
                                                The Capitol
                                                Albany, New York 12224

                                                By:   */s/ William A. Scott*
                                                William A. Scott
                                                Assistant Attorney General, of Counsel
                                                Bar Roll No. 512434
                                                Telephone: (518) 776-2255
                                                Fax: (518) 915-7738 (Not for service of papers)
                                                Email: William.Scott@ag.ny.gov

**ATTORNEY FOR DEFENDANTS ANDREW M. CUOMO, MARIA T. VULLO AND DEPARTMENT OF FINANCIAL SERVICES**

**ATTACHMENT A**

| Field Name | Field Description | Document Type |
|---|---|---|
| BEGPRODBATE | Beginning Production Number | ALL |
| ENDPRODBATE | Ending Production Number | ALL |
| PROD_VOLUME | Production Volume (ex. MOF-PD001) | ALL |
| BEGPRODATT | Beginning Production Family Number | ALL |
| ENDPRODATT | Ending Production Family Number | ALL |
| CUSTODIAN | Custodian of records name. I.E. Doe, John. | ALL |
| CUST_APPEND | Names of custodians with duplicate emails/and or native files (eDocs) | ALL |
| CONFIDENTIALITY | Confidentiality designations | ALL |
| PARENTID | BeginBates number for the parent email of a family (will not be populated for documents that are not part of a family) | ALL |
| PAGES | Total page count per document | ALL |
| FILENAME | Document File Type | EDOCS |
| FILEEXT | File extension of original document | EDOCS |
| LOCATION | Original file path for electronic documents or folder path from mailbox for email | ALL |
| SENT_DATE | Email Sent Date (MM/DD/YYYY) | EMAILS |
| SENT_TIME | Email Sent Time (HH:MM:SS) GMT | EMAILS |
| SORT_DATE | Carries email sent date for email + attachments and last modified date for loose eDocs (MM/DD/YYYY) | ALL |
| SORT_TIME | Carries email sent time for email + attachments and last modified time for loose eDocs (HH:MM:SS) GMT | ALL |
| LASTMODDATE | Document Last Modified Date (MM/DD/YYYY) | EDOCS |
| CREATION_Date | Email: (Empty) Native: Date the document was created. | EDOCS |
| DATERCVD | Email: Date the email was received. Native: (Empty) | EMAILS |
| FILESIZE | Document file size in bytes | EDOCS |
| AUTHOR | Creator of document | EDOCS |
| SUBJECT | Email Subject | EMAILS |
| FROM | Author of Email | EMAILS |
| RECIPIENT | Recipient of Document | EMAILS |
| CC | Copies on Communications | EMAILS |
| BCC | BCC | EMAILS |
| NATIVELINK | Location of native file in volume if provided | EDOCS |
| MD5HASH | MD5HASH of Electronic Loose File or Attachments | EDOCS |

| MESSAGEID | Internet message identifier | EMAILS |
|---|---|---|
| TEXTPATH | Location of OCR Text File in volume. | ALL |