**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

NATIONAL RIFLE ASSOCIATION OF
AMERICA,

                                        Plaintiff,

            v.                                                  No. 1:18-CV-566
                                                                (TJM/CFH)

ANDREW CUOMO, both individually and in
his official capacity; MARIA T. VULLO, both
individually and in her official capacity; and
THE NEW YORK STATE DEPARTMENT
OF FINANCIAL SERVICES,

                                        Defendants.

_____

**APPEARANCES:**                                  **OF COUNSEL:**

Brewer Attorneys & Counselors                SARAH ROGERS, ESQ.
750 Lexington Avenue, Fl. 14                  STEPHANIE L. GASE, ESQ.
New York, New York 10022                      WILLIAM A. BREWER, III, ESQ.
Attorneys for plaintiff

Cooper & Kirk, PLLC                           CHARLES J. COOPER, ESQ.
1523 New Hampshire Avenue, N.W.               HAROLD S. REEVES, ESQ.
Washington, D.C. 20036                        JOSE JOEL ALICEA, ESQ.
Attorneys for plaintiff                       MICHAEL Q. KIRK, ESQ.

Office of Attorney General, State of          ADRIENNE J. KERWIN, ESQ.
New York                                      WILLIAM A. SCOTT, ESQ.
The Capitol                                   HELENA O. PEDERSON, ESQ.
Albany, New York 12224                        MICHAEL G. MCCARTIN, ESQ.
Attorneys for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION & ORDER**

**I.  Background**

Presently pending before the Court is an "Order to Show Cause for Expedited Discovery," filed by plaintiff, National Rifle Association of America ("NRA").  Dkt. No. 21.  Defendants, Andrew Cuomo, Maria. T. Vullo, and the State of New York ("defendants") opposed the motion.  Dkt. No. 28.[1]  Plaintiff filed a reply.  Dkt. No. 60.  For details regarding the facts and claims underlying this action, reference is made to the amended complaint.  Dkt. No. 37.

At issue before the Court is plaintiff's request to compel the deposition of defendant Maria T. Vullo, former Superintendent of the Department of Financial Services ("DFS").[2]  Plaintiff argues that, although Ms. Vullo was considered a "high-ranking official" at the time of the events alleged in its amended complaint, Ms. Vullo is no longer Superintendent, and, thus, the protections do not apply.  Alternatively, plaintiff argues that, even if the "high-ranking official exception" applies to Ms. Vullo, she is not immune from deposition because Ms. Vullo "has personal knowledge of the subject matter of the litigation in question and that information cannot be obtained from another source."  Dkt. No. 60 at 11.

Defendants appear to contend that Ms. Vullo is immune from deposition regardless of the fact that she is no longer the Superintendent because she held this role at the time of the events alleged in the amended complaint and because plaintiff seeks to depose Ms. Vullo about matters relating to her responsibilities as

---

[1]  Except where otherwise noted, page numbers within the Court's citations are to the pagination generated by the Court's electronic filing system, CM/ECF, located at the header of each document.

[2]  As there is a pending dispositive motion in this action, the undersigned will be addressing this motion only insofar as it seeks to depose defendant Vullo, as agreed to and understood by the parties. See Text Min. Entry dated Mar. 8, 2019.

Superintendent.  Dkt. No. 28 at 34-35; T at 9.  Further, defendants argue that plaintiff

has failed to demonstrate that extraordinary circumstances exist warranting the

deposition as it has not shown that it seeks to depose Ms. Vullo about matters that

cannot be obtained through any other source or means. Dkt. No. 28 at 32-37.  The

parties appeared for oral argument on March 13, 2019 on this issue.  Dkt. No. 86.


## II.  Legal Standards

Generally, a high-ranking government official is immune from depositions.

> It is  general proposition that high-ranking government
> officials are not subject to deposition for justifiable reasons.
> Depositions of high-level governmental officials are
> permitted however upon a showing that (1) the deposition is
> necessary in order to obtain information that cannot be
> obtained from any other source and (2) the deposition would
> not significantly interfere with the ability of the official to
> perform his or her governmental duties.

New York v. Oneida Indian Nation of N.Y,, No. 95-CV-0554 (LEK/RFT), 2001 WL

1708804, at *3 (N.D.N.Y. Nov. 9, 2001), aff'd sub nom. State of New York v. Oneida

Indian Nation of N.Y., No. 1:05-CV-554 (LEK/RFT), 2007 WL 2287878 (N.D.N.Y. Aug.

7, 2007)).  One reason for the immunity is because, "if high ranking officials, such as

the head of a government agency, were routinely deposed, he or she would be

'spending their time giving depositions and would have no opportunity to perform their

functions.'" Cannon v. Correctional Medical Care, Inc., 9:15-CV-1417 (GLS/DJS), 2017

WL 2790531, at *5 (N.D.N.Y. June 27, 2017) (quoting Marisol A. v. Giuliani, No. 95 CIV.

10533 (RJW), 1998 WL 132810, at *3 (S.D.N.Y. Mar. 23, 1998).  However, "[t]he

3

purpose of this rule is not only to leave officials free to conduct government business, . . . but also to protect the mental processes of executive and administrative officers in order to promote open channels of communication within government." L.D. Leasing Corp v. Crimaldi, No. 91-CV-2430 (EHN), 1992 WL 373732, at *1 (E.D.N.Y. Dec. 1, 1992) (internal citations omitted)).  However, where "extraordinary circumstances" exist, high-ranking officials may be deposed.  Marisol A., 1998 WL 132810, at *3 (quoting Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.D.C. 1985)).  Courts have held that extraordinary circumstances may exist where "the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." Lederman v. New York City Dep't of Parks & Recreation, 731 F.3d 199, 203 (2d Cir. 2013).

### III.  Analysis

### A.  Is Ms. Vullo a "high-ranking official"?

The Court finds first that the high-ranking official standard applies to Ms. Vullo as the former Superintendent of DFS.  Although plaintiff argues that the high-ranking official exception should not apply to Ms. Vullo, as plaintiff intends to depose Ms. Vullo about her potential involvement in matters that occurred in her capacity as Superintendent, the rationale underlying the high-ranking official exemption applies, and plaintiff must demonstrate the existence of extraordinary circumstances in order to overcome this protection.

4

Although plaintiff did not offer case law in her moving papers supporting its argument that Ms. Vullo was no longer a high-ranking official, during oral argument, plaintiff's counsel cited three cases, Universal Calvary Church v. City of N.Y., No. 96 CIV. 4606RPP, 1999 WL 350852, at *5[3] (S.D.N.Y. June 2, 1999);  Toussie v. County of Suffolk, No. CV 05-1814 (JS/ARL), 2006 WL 1982687, at *2 (E.D.N.Y. July 13, 2006); and Sanstrom v. Rosa, No. 93 Civ. 7146 (RLC), 1996 WL 469589, at *5 (S.D.N.Y. Aug. 16, 1996).  T at 5.

In Universal Calvary Church, the plaintiffs sought to compel the deposition of a named defendant who was the former deputy commissioner of police.  The Southern District of New York noted that the proposed deponent "is a named defendant in the complaint and is not protected by the rule in Martin[4] limiting discovery of public officials," but found that "plaintiffs have not shown the need for his testimony on factual matters at this late stage of the litigation, i.e, immediately before trial."  1999 WL 350852, at *5.  This case does not conclude, however, that a party who was, at times relevant to the case, undisputedly a high-ranking official, should automatically lose the high-ranking official immunity once that person no longer holds that position.

In Sanstrom v. Rosa, the Southern District noted that the high-ranking official exception applied where the requesting party "show[ed] both the need for the deposition and that it will not hinder government functions."  1996 WL 469589, at *5.  There, the

---

[3]  During oral argument, plaintiff's counsel cited to 1999 WL 350852, at *3, however, review of this portion of the decision reveals that it does not address the underlying issue, suggesting that plaintiff's counsel had intended to direct the Court to *5.  T at 5.  Regardless, neither portion of that decision supports plaintiff's argument.

[4]  Martin v. Valley Nat. Bank of Arizona, 140 F.R.D. 291 (S.D.N.Y. 1991).

Court concluded that a former governor could not claim the high-ranking official privilege, at least in part because he was no longer governor.  The Court went on to note that, even if the proposed deponent were the sitting governor, "his deposition would be required because he 'possesses particular information necessary to the development . . . of the [plaintiffs'] case, which cannot be reasonably obtained by another discovery mechanism."  Id. (quoting Am. Broadcasting Companies v. United States Info. Agency, 599 F. Supp. 765 (D.D.C. 1984)).  To the extent the Sanstrom Court intended to set out a bright-line rule holding that the exception does not apply when the official no longer holds the role, this Court would disagree.  It is well settled in courts throughout this Circuit that the high-ranking official inquiry has two parts: (1) whether the deposition would interfere with the high-ranking official's ability to perform his or her work functions; and (2) whether the high-ranking has relevant, unique information that cannot be reasonably obtained from another source or method. Oneida Indian Nation of N.Y., 2001 WL 1708804, at *3.

Here, it is conceded that the answer to the first question is "no," as Ms. Vullo no longer holds the Superintendent office, see T[5] at 4; however, the Court's analysis does not end there.  Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives, 161 F. Supp. 3d 199, 252 (S.D.N.Y. 2015) ("[T]he 'exceptional circumstances' doctrine is premised on the notion that high-ranking officials should not be required to testify regarding their official decision-making processes.").   Indeed,

---

[5] Citations to "T" refer to the transcript of the oral argument occurring before the Court on March 13, 2019.  Dkt. No. 90.  Citations are to the transcript's original pagination.

other courts in this Circuit have held that the high-ranking official doctrine applies to current and former officials.  See Moriah v. Bank of China Ltd., 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014); RI, Inc. v. Gardner, No. CV 10-1795 (LDW) (ETB), 2011 WL 4974834, at *2 (E.D.N.Y. Aug. 11, 2011);  Victory v. Pataki, No. 02-CV-003S(Sr), 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008).  Thus, insofar as plaintiff cites Sanstrom to argue that there exists, or should exist, a bright-line rule such that the high-ranking official exception does not apply once that official leaves office, this Court rejects that argument as without force.

In the final case plaintiff's counsel cited, Toussie v. County of Suffolk, the Eastern District of New York, citing Sanstrom, proclaimed, "specific rules governing depositions of high level government officials do not apply to Mr. Gaffney as he is no longer the County Executive."  2006 WL 1982687, at *2; T at 5.  It is not clear from the Toussie decision whether the plaintiffs sought to depose the county executive about matters that occurred when he was in office.  See id.  Further, as the Court determined that the former official "may possess particular information necessary to the development of the plaintiffs' case," it is not clear whether the Court concluded that the high-ranking official exception did not apply because the deponent was not a high-ranking official, because he had unique personal knowledge, or a combination of the two.  Id. Regardless, as discussed above, the Court rejects any sweeping conclusion that a former high-ranking government official loses the high-ranking official immunity solely because he or she no longer holds the office if the proposed deposition would question relevant matters that were alleged to have occurred while the official held

7

office and in which that official was personally involved.

Instead, where a party seeks to depose a former high-ranking government official about matters in which she or he was personally involved at the time she or he held that office, the Court applies the high-ranking official exemption unless the party opposing the deposition demonstrates that the proposed deponent does not possess unique information not obtainable from another source or discovery method. That Ms. Vullo no longer holds the position is relevant only to the question whether the deposition would interfere with her ability to perform her governmental duties.   Accordingly, the Court holds that Ms. Vullo is to be considered a high-ranking official under the high-ranking official doctrine.

### B. **Has plaintiff demonstrated the existence of extraordinary circumstances?**

In its Reply memorandum, plaintiff argues that "Vullo has personal knowledge of the subject matter of this action" as she is "the leader of DFS, signatory of the consent orders, and author of the April 2018 Letters."  Dkt. No. 60 at 12.  Plaintiff is "seeking to depose Vullo because of what she said and what she did" which is "entirely within Vullo's personal knowledge."  Id.  Plaintiff argues that it "cannot ascertain this information absent Vullo's testimony" and could not "adequately pursue preliminary injunctive relief without developing an understanding as to the breath of Vullo's personal knowledge."  Dkt. No. 60 at 12.

Defendants argue that plaintiff has not met its burden of demonstrating the existence of extraordinary circumstances warranting deposing Ms. Vullo because

plaintiff has failed to (1) identify the specific matters about which it seeks to question Ms. Vullo, and (2) show that the information it seeks is unavailable from another source. Dkt. No. 28 at 35.-36. During oral argument, defendants argued that plaintiff needs to make "at least some initial effort to get that information from someone else" such as by (1) asking questions of the California official and the other officials with whom she allegedly communicated; (2) reaching out to the financial agencies with whom it "did business" and ask those institutions whether Ms. Vullo communicated with them; or (3) seeking to depose other DFS employees, potentially the General Counsel or Head of Investigations of DFS.  T at 10-11, 19.  Defendants also argued that discussions Ms. Vullo may have had with out-of-state officials are not relevant to plaintiff's equal protection claim as plaintiff's "allegation isn't as to what the State of California did to enforce or didn't enforce.  The question is what happened at DFS.  So even in this context of wanting to get into discussions with other governmental agencies doesn't really further that claim."  Id. at 19.  Similarly, defendants argued that, before attempting to depose Ms. Vullo, plaintiff must first seek to "narrow" the questions it seeks of Ms. Vullo by first submitting interrogatories.  Id. at 14, 15, 22.  Thus, defendants posit plaintiff has not shown that Ms. Vullo has unique personal knowledge not reasonably available from any other source.

Insofar as defendants argue that plaintiff's request to depose Ms. Vullo must be denied as it has failed to identify the specific questions or topics about which it seeks to depose Ms. Vullo, the Court rejects this argument.  The Court agrees that plaintiff's

memoranda in support of its motion are lacking in this respect.[6]  See dkt. nos. 21-1, 60.

Indeed, the only references they contain to the topics about which plaintiff seeks to

depose Ms. Vullo are that plaintiff seeks to depose her: (1) "in an individual fact-witness

capacity, not a Rule 30(b)(6) capacity, which should limit the burden of any required

preparation"; and (2) "because of what she said and what she did.  This information is

entirely within Vullo's personal knowledge.  The NRA cannot ascertain this information

absent Vullo's testimony, nor could it adequately pursue preliminary injunctive relief

without developing an understanding as to the breadth of Vullo's personal knowledge."

Dkt. No. 21-1 at 20; Dkt. No. 60 at 12.  However, during oral argument, plaintiff

suggested that there is information that may be uniquely within Ms. Vullo's personal

knowledge insofar as plaintiff's counsel pointed to an e-mail between Ms. Vullo and a

California government official.  T at 7.  Plaintiff contended that the e-mail, in which Ms.

Vullo allegedly sought out an official from the Insurance Department of the State of

California to discuss New York's investigation of Carry Guard and similar

communications to other state officials could support their selective enforcement and

"censorship campaign" claims, and, thus, is central to their case.  Id. at 20.  Plaintiff

argued that, because Ms. Vullo was the only person included in the e-mail

communications with the out-of-state officials, there is no other source within DFS who

could testify as to these communications.  Id. at 6-7.  Further, plaintiff argued that

interrogatories are unlikely to garner the answers needed, as "trying to get a full-fledged

---

[6] The Court does acknowledge the contention of plaintiff's counsel that t did not receive any
discovery production until January 2019, after the motion was fully submitted.  T at 6.

discussion of the – of what she said with respect to the Insurance Department of California with regard to the NRA's Carry Guard program, a tit-for-tat or a he-said-she-said is not what we really anticipate every being able to get from an interrogatory response." Id. at 17.

Insofar as defendants argue that plaintiff failed to demonstrate that there is no less burdensome means by which to obtain the information because plaintiff must first proceed with interrogatories, the Court disagrees. During oral argument, defendant contended that plaintiff should first submit interrogatories as a means of identifying the questions or topics about which they seek from Ms. Vullo and to identify potential other sources who may have such information. T at 7, 14-15. However, defendant identifies no case law, nor could the court find any such case, which *requires* a party to first submit interrogatories before seeking a deposition of a high-ranking government official. See generally Lederman, 731 F.3d at 203 ("the official has unique first-hand knowledge related to the litigated claims *or that the necessary information cannot be obtained through other, less burdensome or intrusive means*."); T at 22 (contending that "the case law sets forth that there does have to be those initial steps."). Although proceeding with interrogatories may be a less burdensome and adequate alternative to deposing a high-ranking official in some situations, here, it does not appear that interrogatories would be comparable to Ms. Vullo's deposition nor useful to obtain the information plaintiff seeks. As parties are well aware, interrogatories are limited in scope and number. See FED. R. CIV. P. 33. Were plaintiff to ask through interrogatories the kinds of questions it seeks to ask in a deposition setting, it likely

11

would be met with several routine objections, ultimately resulting in parties returning to the Court to again address the matter of Ms. Vullo's deposition.  Thus, it would seem, in the facts of this case, that "'[o]rdering a deposition at this time is a more efficient means' of resolving [plaintiff's] claims 'than burdening the parties and the [official] with further rounds of interrogatories, and, possibly, further court rulings and appeals.'"  State v. United States Dep't of Commerce, 333 F. Supp. 3d 282, at 290 (S.D.N.Y. 2018), vacated as moot by State of New York v. United States Dep't of Commerce, 351 F. Supp.3d 502 (S.D.N.Y. 2019) (quoting City of New York, 07-CV-2067 (NGG/RLM), 2009 WL 2423307, at *3 (E.D.N.Y. Aug. 5, 2009)).

Next, insofar as defendants argue that Ms. Vullo does not possess unique knowledge because plaintiff could depose the out-of-state officials with whom plaintiff alleges Ms. Vullo was communicating, as plaintiff opined during oral argument, it is likely that if defendants sought to depose out-of-state officials, those officials would raise similar privileges and would seek to bar any depositions about communication they may have had with Ms. Vullo.  T at 8, 21.  Plaintiff further argued that, because at least some of the communications were between just Ms. Vullo and the out-of-state official, there would not be another person in DFS with personal knowledge who would be able to testify as to those communications.  Id. at 8.

The Court finds that plaintiff has demonstrated that Ms. Vullo's specific rationale for her alleged actions is at issue in this case such that her deposition testimony may be the only way to address these "critical blanks" in the record.  See generally United States Dept. of Commerce, 333 F. Supp. 3d at 289.  The Court does not find that the

12

case law requires that there be *no* other source for this information; rather, that there be

no other less burdensome or intrusive source or means for obtaining the information.

See generally Lederman, 731 F.3d at 203.  Plaintiff reasonably observes that requiring

plaintiff to attempt to depose similarly high-ranking officials in other states will likely to

be met with similar privileges and bars, and, thus, cannot be considered a less

burdensome or practical alternative to deposing Ms. Vullo.  T at 8, 21.  As plaintiff has

demonstrated that Ms. Vullo may have knowledge that is unique to her and any other

potential source of such information would be from outside DFS, and is, at best,

impractical, plaintiff has met its burden of demonstrating the existence of extraordinary

circumstances warranting the deposition.  Although the Court recognizes the high bar

that must be met to overcome the high-ranking official exemption, it is warranted where,

as here, there exists no other practical method by which plaintiff could obtain this

information.  The Court concludes that it cannot be said that seeking to depose the

high-ranking out-of-state officials or proceeding with interrogatories can be considered a

reasonable or practical alterative means of obtaining the information it seeks from Ms.

Vullo.  To the extent defendants argue that they may raise certain privileges should the

Court permit the deposition, such as the investigatory privilege, any privileges are not

before the Court on this motion and not a consideration in assessing whether Ms. Vullo

may be deposed.  Accordingly, plaintiff's motion is granted in part insofar as plaintiff will

be permitted to depose Ms. Vullo to address the extent and/or nature of her

communications with others to support plaintiff's selective enforcement and/or

"censorship campaign" claims.  All other requests for relief in the Motion, to the extent

13

not otherwise addressed, are denied.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Order to Show Cause, dkt. no. 21, is **GRANTED IN PART** insofar as plaintiff will be permitted to depose defendant Maria T. Vullo, and that plaintiff's Order to Show Cause is otherwise **DENIED**; and it is further,

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: March 20, 2019
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

14