1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF NEW YORK

3

4    **NATIONAL RIFLE ASSOCIATION**          )
     **OF AMERICA,**                         )
5                                            )
               Plaintiff,          )         CASE NO. **1:18-CV-566**
6                                            )
          vs.                                )
7                                            )
     **ANDREW CUOMO, both individually** )
8    **and in his official capacity,**   )
     **et al.,**                              )
9                                            )
               Defendants.         )
10   _____  )

11                  **TRANSCRIPT OF PROCEEDINGS**
               **BEFORE THE HON. CHRISTIAN F. HUMMEL**
12               **WEDNESDAY, MARCH 13, 2019**
                    **ALBANY, NEW YORK**
13

14   **FOR THE PLAINTIFF:**
          Brewer Attorneys & Counselors
15        By:  Stephanie L. Gase, Esq.
          1717 Main Street, #5900
16        Dallas, Texas  75201

17

18   **FOR THE DEFENDANTS:**
          Office of the New York State Attorney General
19        By:  William A. Scott, AAG
          The Capitol
20        Albany, New York  12224

21

22

23

24             **THERESA J. CASAL, RPR, CRR, CSR**
               Federal Official Court Reporter
25              445 Broadway, Room 509
               Albany, New York  12207

                 *THERESA J. CASAL, RPR, CRR*
          *UNITED STATES DISTRICT COURT - NDNY*

*NRA v. Cuomo - 18-V-566*

```
 1                    (Court commenced at 11:01 AM.)
 2          THE CLERK:  The case is National Rifle Association
 3    of America versus Cuomo, et al., docket number 18-CV-566.
 4    Appearances for the record, please.
 5          MS. GASE:  Good morning, your Honor.  My name is
 6    Stephanie Gase, with Brewer Attorneys & Counselors, on
 7    behalf of the NRA.
 8          THE COURT:  Good morning, Ms. Gase.
 9          MR. ALICEA:  Good morning, your Honor.  Jose Joel
10    Alicea, from Cooper & Kirk, on behalf of plaintiff, National
11    Rifle Association.
12          THE COURT:  Good morning, Mr. Alicea.
13          MR. SCOTT:  Good morning, your Honor.  William
14    Scott, New York State Office of the Attorney General, on
15    behalf of the defendants.
16          THE COURT:  Good morning, Mr. Scott.
17          MR. SCOTT:  Good morning.
18          THE COURT:  All right.  The Court scheduled oral
19    argument with respect to this matter.  This is a Notice of
20    Motion -- actually an Order to Show Cause, which was filed
21    by the plaintiff, seeking expedited discovery with respect
22    to a number of matters.  That Order to Show Cause is docket
23    number 21.
24          Docket number 28 is a response which was filed by
25    the defendants in this matter and during the course of that
```

*NRA v. Cuomo - 18-V-566*

1  response, particularly at part three, Mr. Scott had raised

2  an objection to the deposition of the defendant Maria T.

3  Vullo upon the grounds that she was a high-ranking

4  government official and is, therefore, not subject to being

5  deposed.

6         Docket number 60 is a reply which was filed on

7  November 26th of 2018 on behalf of the plaintiff, and at

8  part C of that Memorandum of Law and response, the issue of

9  the deposition of Ms. Vullo was addressed.

10        Ms. Gase, I don't know if I should address this to

11 you or Mr. Alicea --

12        MS. GASE:  I'll be arguing, your Honor.

13        THE COURT:  All right.  Let me ask you just a

14 preliminary question, then I would be happy to hear from

15 you.  It would appear to me there are two issues here:  One

16 is whether or not at the time of the incidents and

17 occurrences set forth in the complaint, whether or not

18 Ms. Vullo was a high-ranking official; and then number two,

19 depending on what your response is, whether or not there is

20 someone else who can provide the testimony which you seek

21 from Ms. Vullo.

22        So I guess preliminarily, Ms. Gase, is it your

23 position that at the time of the incidents set forth in the

24 complaint she was or was not a high-ranking official?

25        MS. GASE:  Your Honor, at the time of the

*NRA v. Cuomo - 18-V-566*

1    incidents set forth in the complaint, I don't think we are

2    contesting that she would qualify as a high-ranking

3    official.

4          THE COURT:  I didn't sense you were, Counsel, but

5    I wanted to make sure the record was complete.  Go ahead,

6    Ms. Gase, what would you like to tell me.

7          MS. GASE:  We certainly are contesting whether she

8    is a high-ranking official now and whether the same standard

9    applies to her as she is no longer a high-ranking official.

10         THE COURT:  Okay.  Why don't you tell me, why

11   don't you address that issue, and then address the issue

12   which is of greater importance to the Court as to whether or

13   not this information can be obtained from someone else.

14         MS. GASE:  Sure, your Honor.  To the extent Your

15   Honor is not aware, starting earlier this year, Ms. Vullo is

16   no longer with the Department of Financial Services.

17         THE COURT:  Right.

18         MS. GASE:  Now, the purpose of this kind of

19   limited immunity from deposition testimony is to ensure that

20   these high-ranking officials have the necessary time to

21   dedicate to their official duties and that they have greater

22   responsibilities and more limited time constraints than

23   other individuals who we sought to depose.  So the Courts in

24   the Southern District and Eastern District, and though we

25   have not found in the Northern District, have not always

*NRA v. Cuomo - 18-V-566*

1   applied this kind of immunity standard with respect to

2   people who are former government officials.  In particular,

3   in the case of *Universal Calvary Church versus the City of*

4   *New York*, which is 1999 WL 350852, with a pin cite at

5   page 3, out of the Southern District of New York, in 1999.

6   In that case, the Court ruled the Martin test simply does

7   not apply to former officials.  And *Sanstrom versus Rosa*,

8   1996 WL 469589, with a pin cite at 5, out of the Southern

9   District of New York, the Court in particular even allowed

10  the deposition against the former Governor Cuomo because the

11  test wouldn't apply because he was a former Governor and not

12  an acting Governor.  Similarly, in 2006 in *Toussie versus*

13  *County of Suffolk*, 2006 WL 1982687, with a pin cite at 2,

14  out of the Eastern District of New York, the Court similarly

15  ruled that that test just does not apply.

16         However, here, regardless of whether you don't

17  apply the test or you do apply the test, we are still

18  entitled to the deposition of Ms. Vullo.

19         THE COURT:  Tell me why.

20         MS. GASE:  She has unique firsthand knowledge

21  related to our claims.  First going back to the time we even

22  filed the complaint, it was clear she signed two of the

23  consent orders that are at the heart of the litigation, she

24  made statements in press releases that were intended to

25  threaten and get financial institutions and insurers under

*NRA v. Cuomo - 18-V-566*

1   her authority to stop doing business with the NRA.  The same

2   statements that she made were statements that the Court

3   relied on in its motion to dismiss -- or its decision on the

4   motion to dismiss to maintain the NRA's claims with respect

5   to the First Amendment claim.

6           Additionally, your Honor, she was the author of

7   the April 2018 letters that were sent to every financial

8   institution and insurer under the authority of the

9   Department of Financial Institutions.  Your Honor, that's

10  just what we knew about at the time of the complaint.  We

11  since have found out more than that.  So to date, in

12  January, the only productions that have been done in this

13  case was exactly 95 documents.  Almost 20 percent of those

14  documents are correspondence solely from Ms. Vullo to people

15  outside of the Department of Financial Services, with not a

16  single other person in the Department of Financial Services

17  on that correspondence.  And it is all correspondence

18  showing that Ms. Vullo was specifically involved in the

19  conspiracy -- pardon me, not conspiracy, the censorship

20  campaign against the NRA.

21          And your Honor, while we certainly did not include

22  this in our original motion, as we didn't receive the

23  production until January, I brought one example of that

24  correspondence that not only shows what Ms. Vullo was doing,

25  but that shows that she has verbal conversations about

*NRA v. Cuomo - 18-V-566*

```
 1   the exact topics and issues that are part of the NRA's

 2   complaints and allegations.  And to the extent that

 3   Ms. Vullo is having individual conversations by herself with

 4   people trying to get them to stop doing business with the

 5   NRA --

 6             THE COURT:  You acknowledge these conversations

 7   were with people outside of DFS?

 8             MS. GASE:  Absolutely, your Honor.  Would you like

 9   to see the example I brought?

10             THE COURT:  Sure.  Mr. Scott, were you provided

11   with a copy?

12             MR. SCOTT:  Just now, yes.

13             MS. GASE:  So this was one of the documents that

14   defendants produced to us in January of this year to -- an

15   email from Ms. Vullo to Dave Jones in the Insurance

16   Department in the State of California, and there she is

17   specifically attaching various documents, the Lockton and

18   Chubb consent orders that are at issue in this

19   investigation.  In particular, if you go to the third

20   sentence, you can see that she is talking about that she's

21   having -- or the email shows that she's having discussions

22   with Mr. Jones related to investigation of the Carry Guard

23   program, which is part of our selective enforcement

24   allegations that the only and sole reason that that

25   investigation is being conducted is because of the NRA's
```

*NRA v. Cuomo - 18-V-566*

1   political views with respect to the Second Amendment.

2           So, your Honor, to the extent Ms. Vullo is having

3   individual personal communications, there's no one else we

4   can ask about who she's talking to and what she's doing and

5   her reasons behind those communications.  To go and try to

6   have communications -- to instead go and depose all of these

7   other individuals, like Mr. Jones, who is part of the

8   Insurance Department in California, or other high-ranking

9   public officials out of state that she is urging to go after

10  the NRA, it's simply something that we'll be arguing in

11  front of those officials as well, why they're high-ranking

12  officials that shouldn't be deposed, but this is in

13  particular in relation to her actions and what she is doing.

14  A high-ranking government official should not be able to

15  hide behind their position to preclude deposition testimony

16  regarding her specific actions and the steps that she took

17  to violate the NRA's constitutional rights.  This is not a

18  case where she's being deposed because of her position, your

19  Honor; this is a case she is being deposed because of what

20  she does and she has unique personal knowledge regarding her

21  own actions and the justification for those actions.

22           THE COURT:  All right.  Mr. Scott, let me ask you

23  the same preliminary question.  There doesn't seem to be any

24  dispute that at the time of the incident set forth in the

25  complaint that Ms. Vullo was a high-ranking official.

*NRA v. Cuomo - 18-V-566*

1  Ms. Gase argues that a separate standard or different

2  standard applies now that she's no longer in that position.

3  What's your response to that argument?

4        MR. SCOTT:  First of all, we do agree that she was

5  obviously a high-ranking official at the time, but we

6  disagree that the standard does not apply for two reasons:

7  First of all, the general purpose behind the standard isn't

8  just to present the interference with that officer's

9  day-to-day operations.

10        THE COURT:  But that's certainly part of the

11  consideration.

12        MR. SCOTT:  Yes, yes, it is.

13        THE COURT:  And you have to concede she is no

14  longer in that position.

15        MR. SCOTT:  That's correct.

16        THE COURT:  Okay.

17        MR. SCOTT:  But the rule does exist to try to

18  protect their former status as an executive official and to

19  protect their thought processes and communications in that

20  regard.  And in our case, in our opposition brief, we cite

21  to the case of *RIE v. Gardner*, which dealt with -- out of

22  the Southern District as well, in 2011, where the plaintiff

23  sought to depose the former Commissioner for the Department

24  of Labor and that request was denied applying the Martin

25  standard.  So the standard still applies even though she is

*NRA v. Cuomo — 18-V-566*

 1   no longer the Commissioner.

 2          And then you do have to look to the second factor

 3   of does she have unique information that can only be

 4   obtained from her, and the plaintiffs haven't made the

 5   necessary showing in this.

 6          THE COURT:  Let me ask you a question.  Ms. Gase

 7   argues that Ms. Vullo engaged, for example, in conversations

 8   with people involved in the Insurance Department in the

 9   State of California.  How else would they garner information

10   regarding the subject of those conversations?

11          MR. SCOTT:  The extent of those conversations,

12   your Honor, are only to the extent, even in this email, of

13   providing the consent orders.  And we can look to the *RIE*

14   case again on this issue.  The Court in that case said that

15   plaintiff's contention that no one can testify as to why

16   Miss Smith signed the determination order, if sincere, is

17   simplistic and naive.  And they went on to deny the request

18   and depose that former Commissioner.

19          THE COURT:  So I guess to go back to my question,

20   how would you propose they explore these issues which are

21   central to their claim that there was some conspiracy to or

22   attempt to censor the NRA?

23          MR. SCOTT:  I think there has to be at least some

24   initial effort to get that information from somebody else.

25          THE COURT:  All right.  Who would you propose they

*NRA v. Cuomo − 18−V−566*

1    attempt to get it from?

2           MR. SCOTT:  They have their −− we've submitted

3    affidavits from the head of investigations of DFS, we've

4    submitted affidavits from the General Counsel.  There are

5    certainly other people from the DFS that they can start with

6    before they get to −−

7           THE COURT:  My sense is if they attempted to

8    depose people from the investigative services, you're gonna

9    raise a privilege argument.

10          MR. SCOTT:  Well, and that goes to another point

11   that we have in this case.  We have both a 12(c) motion

12   pending as to the equal protection claim, which may limit

13   the amount of discovery and may negate the ability to

14   inquire into this, and we also have a protective order

15   pending where if Ms. Vullo is proceeding in her

16   investigatory capacity, there may be privileges associated

17   with that.

18          THE COURT:  Isn't your argument somewhat circular

19   then.  You say they should go to people in their

20   investigative department rather than Ms. Vullo to get this

21   information.  When they go to depose the people from your

22   investigative department, you're going to say they can't do

23   that because of the investigative privilege.

24          MR. SCOTT:  Well, they may not be able to obtain

25   the information at all.

*NRA v. Cuomo - 18-V-566*

1          THE COURT:  Well, how are they supposed to proceed

2     with their litigation if they're not entitled to conduct

3     discovery?

4          MR. SCOTT:  Well, our position is that the equal

5     protection claim should be dismissed in any event, so it

6     shouldn't proceed to discovery.

7          THE COURT:  But it has not happened at this point.

8     So how would you propose they proceed with discovery if they

9     can't depose Ms. Vullo and they can't depose your

10    investigative people?

11         MR. SCOTT:  Assuming discovery goes forward in

12    this case and they are able -- again, depending on the

13    Court's ruling on the protective order -- if they're able to

14    inquire as to those conflicts, they should start with the

15    investigation folks.  If the Court says that that is a claim

16    that is going to proceed forward and they have the ability

17    to inquire into that, the first stop is not Ms. Vullo, the

18    first stop is other people involved in the investigation.

19         THE COURT:  And when they go to the investigation

20    department, you're gonna argue that the investigative

21    privilege applies and they're not entitled to question those

22    people.

23         MR. SCOTT:  Well, we argued that and the Court

24    ruled on it.

25         THE COURT:  Assuming for purposes of discussion

*NRA v. Cuomo - 18-V-566*

1   the Court agrees with you, aren't we back where we started?

2           MR. SCOTT:  Well, then the same privilege would

3   apply to Ms. Vullo to the extent that, again, if she's

4   discussing the investigation and what's going on with that,

5   the same privilege would attach to her.

6           THE COURT:  So your position is they're not

7   entitled to conduct discovery with respect to this issue

8   because she's a high-ranking official and there are a

9   variety of privileges available.

10           MR. SCOTT:  As we've outlined in our motion for a

11   protective order.

12           THE COURT:  Then how would you suggest they

13   proceed with their litigation?

14           MR. SCOTT:  My suggestion would be they not

15   proceed as to these claims, again because they're not

16   appropriate and they don't have a right to be free from

17   investigation into their criminal acts and they certainly

18   haven't identified that they've been treated differently

19   than anyone else who committed similar criminal acts.

20           THE COURT:  That sort of avoids the point.  How

21   would you suggest they garner information in support of

22   their claim?

23           MR. SCOTT:  Again, I think it would depend on the

24   Court's ruling as to the pending motion.  If the Court

25   denies that motion and says there is no investigative

*NRA v. Cuomo - 18-V-566*

1   privilege as to the NRA investigation, then we would start

2   with the people who were investigating it, why they did what

3   they did, whom they communicated with and why they

4   communicated with them.  And if that testimony yields we can

5   only get this information from Ms. Vullo, then the issue can

6   be addressed at that point in time.  But they have the

7   burden now to demonstrate that they have hit all of those

8   marks already, not that they might be hit at some point in

9   the future.

10          THE COURT:  I guess my concern is, Mr. Scott, so

11  assuming I grant your motion with respect to the issue of

12  the investigatory privilege, and just assuming that for

13  purposes of discussion, aren't we back here again?

14          MR. SCOTT:  Again, not necessarily, because we

15  haven't done -- there hasn't been any other discovery in

16  this case.  There haven't been interrogatories served by the

17  plaintiff.

18          THE COURT:  Again, my question is:  Who do you

19  suggest they send the interrogatories to to be responded to?

20          MR. SCOTT:  Well, I think if we are dealing with

21  the issue of interrogatories, that may deal with a different

22  question with Ms. Vullo, that is a less invasive and

23  potentially more narrow discovery device that they could use

24  in this case as compared to an open-ended deposition to, as

25  they say, talk about what she said and what she did.

*NRA v. Cuomo - 18-V-566*

1          THE COURT:  So your proposal is they would send

2     interrogatories to Ms. Vullo and assuming you don't have any

3     number of objections, they would get those back and then

4     determine if they need to depose Ms. Vullo?

5          MR. SCOTT:  I think the interrogatories may narrow

6     that issue down.

7          THE COURT:  Ms. Gase, what's your response to

8     that?

9          MS. GASE:  Your Honor, we believe we've already

10    made the showing that Ms. Vullo has unique personal

11    knowledge.

12         THE COURT:  Ms. Gase, I understand that's your

13    position, but my question was assuming -- as the Court has

14    not made a determination as yet with respect to that issue,

15    what is your objection, if any, to his suggestion that you

16    proceed by way of interrogatory, then, if necessary, come

17    back to conduct a deposition?  And before you respond, all

18    of this discovery can be held in abeyance pending a decision

19    by Judge McAvoy on the motion to dismiss because you don't

20    know if DFS will be a party, so --

21         MS. GASE:  Well, your Honor, just to be clear, no

22    matter what happens on the motion to dismiss, Ms. Vullo will

23    still be a party --

24         THE COURT:  I understand that.

25         MS. GASE:  -- and she is a party because of our

*NRA v. Cuomo – 18-V-566*

1    First Amendment claims regarding retaliation.

2            THE COURT:  I guess what I'm trying to convey to

3    you is if you want to proceed with Ms. Vullo's deposition

4    before you get a decision from Judge McAvoy, you can do

5    that, but you're not getting a second bite of the apple if

6    he rules in your favor on that motion.  I want you to

7    understand that we are not bringing the same witness back

8    twice if I determine you can depose her.

9            MS. GASE:  No, we absolutely understand that, your

10   Honor.  It was our understanding that any type of stay of

11   discovery with respect to the equal protection claim was

12   already denied.

13           THE COURT:  Right.

14           MS. GASE:  Discovery is supposed to be going

15   forward on the equal protection.

16           THE COURT:  I understand that.  But I want you to

17   understand that if you depose Ms. Vullo -- for purposes of

18   discussion, if I determine you can depose her and Judge

19   McAvoy denies their motion, again for purposes of

20   discussion, you're not bringing Ms. Vullo back to conduct a

21   second deposition, that was sort of my point.

22           MS. GASE:  And I absolutely understand that and I

23   guess I want to clarify that we have every intention -- it's

24   not our understanding that we can't depose Ms. Vullo right

25   now on both issues, 'cause there's been no stay as to asking

*NRA v. Cuomo - 18-V-566*

1   her about the equal protection issues.

2          THE COURT:  We are getting somewhat far afield

3   because I haven't determined whether you can depose her, but

4   I'm somewhat perplexed as to the validity of deposing

5   someone on that issue pending a decision on the motion.

6   Let's go back to my interrogatory question.  Why are

7   interrogatories not a way to preliminarily proceed and see

8   if you can get this information from Ms. Vullo without the

9   need for a deposition?

10          MS. GASE:  Because, your Honor, the type of

11  questions and discovery we need with respect to her

12  deposition aren't of the type we anticipate being able to

13  get through an interrogatory response.  So, for example,

14  trying to get a full-fledged discussion of the -- of what

15  she said with respect to the Insurance Department of

16  California with regard to the NRA's Carry Guard program, a

17  tit-for-tat or a he-said-she-said is not what we really

18  anticipate ever being able to get from an interrogatory

19  response.  Typically, in fact, when you ask someone to

20  describe in detail a conversation in an interrogatory

21  response, the response comes back and says we're not gonna

22  do that, that's the type of thing you would get in

23  deposition testimony.  And there is no one else we are going

24  to be able to get to find out what Ms. Vullo said to these

25  individuals when she's the only person in those meetings.

*NRA v. Cuomo - 18-V-566*

```
 1  We can't get that from the head of investigations, we can't
 2  get that from the General Counsel of DFS, we can only get
 3  that from her and why she said it, what her thought process
 4  was behind why she is going to these other governmental
 5  agencies and telling them you guys need to go after the NRA,
 6  you guys need to do various actions and steps regarding the
 7  NRA.  And that kind of detail is not what we're gonna get
 8  from an interrogatory.  Don't get me wrong, we absolutely do
 9  intend to propound interrogatories with respect to the
10  defendants in this litigation.  Part of the reason why we
11  withheld on that is because we want to get some of the
12  issues resolved that's in the motion to compel currently and
13  get some of the documents prior to that.  But there's no
14  reason to hold off on a decision when there is sufficient
15  evidence right now to show that Ms. Vullo has unique
16  personal knowledge.  And we're not sitting here today and
17  gonna say that, you know, we need a deposition of her
18  tomorrow.  We would like to get some documents after Your
19  Honor responds on the motion to compel, but there's also no
20  reason to continue to push down an issue that has been fully
21  briefed and that can be decided right now based on the few
22  documents that the parties have already produced in this
23  litigation and the public documents that are available
24  showing Ms. Vullo is making public statements and is going
25  and having individual discussions as part of this censorship
```

*NRA v. Cuomo - 18-V-566*

1   retaliation claim, the First Amendment claim that will

2   survive regardless of any decision on the motion to dismiss.

3          THE COURT:  All right, Mr. Scott, what else do you

4   want to tell me?

5          MR. SCOTT:  Just one thing I should note, your

6   Honor, that in the context of this equal protection claim,

7   the allegation isn't as to what the State of California did

8   to enforce or didn't enforce.  The question is what happened

9   at DFS.  So even in this context of wanting to get into

10  discussions with other governmental agencies doesn't really

11  further that claim.

12         Secondly, the cases we point out several times in

13  our papers hinges upon the baseless allegations of back room

14  dealings and financial institutions cutting off business

15  with the NRA.  I assume that before the guidance letters

16  were issued, the NRA knows who they did business with, I

17  assume after they were issued who stopped doing business

18  with them, and that they could inquire of them if they had

19  communications with Ms. Vullo to point to that claim.  So it

20  points out again there are other ways to try to get this

21  information other than going directly to the superintendent

22  of DFS.

23         THE COURT:  Anything else you want to tell me,

24  Mr. Scott?

25         MR. SCOTT:  No, your Honor.

*NRA v. Cuomo - 18-V-566*

1          MS. GASE:  The only other comment I have is

2    focusing on this equal protection claim, they do support her

3    censorship campaign claim that Ms. Vullo is going out there

4    and affirmatively trying to get other companies, the other

5    governmental agencies to censor the NRA, that is the

6    substance and basis of our First Amendment claim that is

7    going to proceed, that has survived a motion to dismiss

8    because of those exact allegations.

9          THE COURT:  All right.  We are gonna take a

10   recess, a ten-minute recess so I can speak to my law clerks

11   and see if I have any additional questions for you.  I am

12   gonna reserve decision on this matter.  Initially, I was

13   going to try to issue a decision from the bench, but I don't

14   think I can do that today.  I would like to see my law

15   clerks.

16          MR. SCOTT:  Thank you, your Honor.

17                    (Short recess taken at 11:25 AM.)

18                    (Court reconvened at 11:36 AM.)

19          THE COURT:  All right.  Please be seated.

20          Ms. Gase, let me ask you a question.  For example,

21   if we go back and look at this email which you gave to me,

22   which is dated August 7th of 2018, apparently directed to

23   Dave Jones, who is someone in the Insurance Department in

24   the State of California, why can't you garner information

25   regarding what transpired in that transaction from Mr. Jones

*NRA v. Cuomo − 18−V−566*

 1    as opposed to Ms. Vullo?

 2            MS. GASE:  Well, again, so Ms. Vullo has had these

 3    conversations not only with Mr. Jones −−

 4            THE COURT:  I just used him as an example.

 5            MS. GASE:  −− yes, so with dozens of other people.

 6    It's my understanding that she's talking to other heads

 7    of −− Commissioners.

 8            THE COURT:  Okay.  So your concern is if you go to

 9    California and you seek to depose Mr. Jones, he is gonna

10    raise the same −−

11            MS. GASE:  Absolutely, your Honor, and he −−

12            THE COURT:  −− California privilege?

13            MS. GASE:  And he has a whole heck of a lot less

14    of involvement, direct involvement, than Ms. Vullo does.

15            THE COURT:  All right.  I guess, Mr. Scott, my

16    question to you is I remain concerned about how they're to

17    proceed with their litigation if I tell 'em they can't

18    depose Ms. Vullo, when they go to talk to your counsel's

19    office, you're gonna raise the attorney/client privilege,

20    and when they go to talk to your investigators, you're gonna

21    raise the investigation privilege.  How are they capable of

22    doing discovery?

23            MR. SCOTT:  Well, again, your Honor, I think one

24    of the problems that maybe the Court's facing and I'm facing

25    in trying to answer this is we're trying to guess what those

*NRA v. Cuomo - 18-V-566*

1  questions are gonna be in a vacuum, which is why I brought

2  up the question of interrogatories, that that may be a way

3  of dealing with this issue.  We will know whether or not the

4  questions are something that we're going to be asserting a

5  privilege for or that they're an appropriate, less intrusive

6  means to deal with the case.

7          THE COURT:  I guess, Mr. Scott, my concern is, and

8  I agree with Ms. Gase, certainly these questions are not

9  appropriate for interrogatories.  If I want to know what

10  transpired in the conversation between Mr. Jones and

11  Ms. Vullo, that's traditionally something you pursue at a

12  deposition, not through an interrogatory.  So, the other

13  thing is they're limited to the number of interrogatories

14  they can ask.  My understanding is when they depose a

15  witness under the Federal Rules, they're entitled to seven

16  hours.  The number of interrogatories is severely limited.

17  So they're not exactly equal discovery tools.

18          MR. SCOTT:  Well, but, again, the case law sets

19  forth that there does have to be those initial steps.  If

20  the interrogatories prove to be insufficient and that there

21  is further information as appropriate to be the subject of a

22  deposition, that would be the issue raised at that time, but

23  you don't get there until they make those efforts.

24          THE COURT:  So they're gonna serve their -- and I

25  believe it's 26 interrogatories --

*NRA v. Cuomo - 18-V-566*

1          MR. SCOTT:  Twenty-six or 25, I think.

2          THE COURT:  -- whatever the number is under the

3     Federal Rules, they clearly can't explore or gain all the

4     information they want, so aren't we just sort of delaying

5     this discussion?

6          MR. SCOTT:  I don't think so, your Honor, because

7     I think some of this is going to be questions of, again,

8     what discussions, if any, occurred because if we're talking

9     about discussions that occurred with other financial

10    institutions, other people, there may be answers where there

11    were no discussions.  If we're talking about what the

12    communication was with California, again, to a certain

13    extent, I don't even know that that's a relevant inquiry

14    because we don't govern what California does or doesn't do

15    by way of regulation.

16         THE COURT:  I understand that, but depending on

17    what was said by Ms. Vullo in the course of that

18    conversation, it could be supportive of their theory that an

19    effort was made by the Governor and Ms. Vullo to censor the

20    NRA.  I don't know whether it is or is not, but absent some

21    knowledge as to that conversation, it's sort of hard to

22    know.

23         MR. SCOTT:  Except I would say that this email

24    that they produced in this context somewhat speaks for

25    itself, so to the extent that their question is, well, what

 1   does this email say and what does it mean, it just indicates

 2   that they're being provided with these consent orders and

 3   there really, frankly, isn't that much more to it.

 4          THE COURT:  I read the letter a little more

 5   broadly than you do.  It says the attached letters on a

 6   different topic that I discussed with your GC yesterday,

 7   which I assume is General Counsel, the NRA's Carry Guard

 8   program, I know you're looking at it, but please let me know

 9   if you want any further information from us.  The attachment

10   also included two consent orders.  I assume Ms. Gase would

11   like to know what the subject of the conversation was

12   between Ms. Vullo and the GC.

13          MR. SCOTT:  I think that would go to Your Honor's

14   first question to her then, why not ask the GC as compared

15   to Ms. Vullo, because, again, that isn't necessarily a

16   high-ranking government official.

17          THE COURT:  It's also someone in California.

18          MR. SCOTT:  Understood.  But they have a case

19   where they're making these allegations as to other states

20   being involved in these claims.  That's the case they've

21   presented.

22          THE COURT:  The essence of their case is Governor

23   Cuomo and Ms. Vullo allegedly started this process, not the

24   State of California.

25          MR. SCOTT:  Well, they're apparently making an

*NRA v. Cuomo - 18-V-566*

 1   allegation that somehow they're interfering with --

 2   encouraging California to investigate, so they are raising

 3   that specter.  But, again, if they want to know what the GC

 4   was told, there is a nonhigh-ranking government official

 5   mentioned in that email that can be inquired of that.

 6           THE COURT:  Of course, the GC may be considered a

 7   high-ranking official in California --

 8           MR. SCOTT:  I don't know, your Honor.

 9           THE COURT:  -- and then we're back here again.

10   Anything else you want to tell me, Mr. Scott?

11           MR. SCOTT:  Not at this time, your Honor.

12           THE COURT:  Ms. Gase, would you like the last

13   word?

14           MS. GASE:  My final comment would be the initial

15   steps that the defendants keep referring to, that's not a

16   requirement before you can get a deposition of a

17   high-ranking official who has unique personal knowledge and

18   who was personally involved in the claims at issue.  That's

19   not something that you have to go out and do X, Y and Z

20   before this issue gets raised before the Court.

21           THE COURT:  I think the essence of Mr. Scott's

22   argument is that you can get this information from someone

23   else, it's not unique to her but can be garnered from

24   someone else.  I understand that's not your position, but

25   pretty clearly their position.

*NRA v. Cuomo - 18-V-566*

1          All right.  We will get you folks a decision

2   before the end of the month.  Thank you for coming in.  Have

3   a good day.

4          MR. SCOTT:  Thank you, Judge, you, too.

5                    (This matter adjourned at 11:43 AM.)

6                         - - - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATION OF OFFICIAL REPORTER

2

3

4              I, THERESA J. CASAL, RPR, CRR, CSR, Official

5     Realtime Court Reporter, in and for the United States

6     District Court for the Northern District of New York, do

7     hereby certify that pursuant to Section 753, Title 28,

8     United States Code, that the foregoing is a true and correct

9     transcript of the stenographically reported proceedings held

10    in the above-entitled matter and that the transcript page

11    format is in conformance with the regulations of the

12    Judicial Conference of the United States.

13

14             Dated this 19th day of March, 2019.

15

16    **/s/ THERESA J. CASAL**

17             THERESA J. CASAL, RPR, CRR, CSR

18             FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*