UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATIONAL RIFLE ASSOCIATION OF AMERICA,

*Plaintiff*,

-against-

1:18-CV-0566

ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,

TJM/CFH

*Defendants*.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION**

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

William A. Scott
Assistant Attorney General, of Counsel
Bar Roll No. 512434
Telephone: (518) 776-2255
Fax: (518) 915-7740 (Not for service of papers)

Date: April 3, 2019

# Table of Contents

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

**I. Standard for a Motion to Reconsider** .......... 1

**II. Ms. Vullo is a High-Ranking Official Who May Not Be Deposed Absent an Extraordinary Showing by the Plaintiff** .......... 3

**III. Scope of the Deposition** .......... 6

CONCLUSION .......... 7

# Table of Authorities

**Cases**

California v. U.S., 2006 WL 2621647 (N.D.Cal. 2006) .......... 5
Delaney v. Selsky, 899 F. Supp. 923 (N.D.N.Y. 1995) .......... 2
In re Office of Inspector General, 933 F.2d 276 (5th Cir. 1991) .......... 2
Judicial Watch v. U.S. Department of State, 2016 WL 10770466 (D.C. 2016) .......... 4, 5
Moriah v. Bank of China, 72 F.Supp.3d 437 (S.D.N.Y. 2014) .......... 4
Munafo v. Metro. Transp. Auth., 381 F.3d 99 (2d Cir. 2004) .......... 2, 3
SEC v. Committee on Ways and Means, 161 F.Supp.3d 199 (S.D.N.Y. 2015) .......... 3, 4
Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575 (D.C. Cir. 1985) .......... 2

## PRELIMINARY STATEMENT

The Court's familiarity with the facts of this matter is assumed given the substantial briefing that has occurred to date. However, missing in that briefing is an argument by the Plaintiff that is sufficient to warrant the deposition of former DFS Superintendent Vullo as recently ordered by the Court. Defendants respectfully ask that the Court reconsider its order. Alternatively, Defendants request that the Court limit the boundaries of Ms. Vullo's deposition to the discrete issue raised by Plaintiff during oral argument. [Transcript pg. 17-18, 20-21, 23].[1]

By way of brief background, the Plaintiff's request to depose Ms. Vullo came in the context of an improper motion for expedited discovery. [Dkt. 21]. As noted in the Court's recent order the Plaintiff's papers seeking expedited discovery, even when coupled with their reply, provide no basis for deposing a high-ranking official such as Ms. Vullo. [Dkt. 89 at pg. 9-10]. The arguments presented by the Plaintiff for the first time during oral argument that form the basis for the Court's recent order, remain insufficient. It is respectfully requested that the Court reconsider its Order directing Ms. Vullo's deposition. Should the Court decline to do so, given the vague nature of the Plaintiff's supporting papers on this issue, Defendants seek an Order clarifying that the Plaintiff is only entitled to inquire as Ms. Vullo's communication with the California Department of Insurance. Such communication is the only information that Plaintiff identified as being uniquely within Ms. Vullo's possession.2

## ARGUMENT

### I. Standard for a Motion to Reconsider

1 References to the Transcript, refer to the transcript of argument held before this Court on March 13, 2019, a copy of which is annexed hereto as Exhibit A.

2 As has also been argued to the Court, to the extent that the Plaintiff seeks to inquiry as to the background of the Chubb or Lockton Consent Orders, such questioning is inappropriate of a high-ranking official such as Ms. Vullo. See e.g., RI, Inc. v. Gardner, 2011 WL 4974834, *2 (E.D.N.Y. 2011). As set forth in RI, Inc., simply signing documents is not sufficient to overcome the presumption against deposing high ranking officials. Id.

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. Delaney v. Selsky, 899 F. Supp. 923, 925 (N.D.N.Y. 1995). Reconsideration should be granted where necessary to correct for "clear error" or to "prevent manifest injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004).

This Court has already held Ms. Vullo is a high-ranking official. [Dkt. 89 at pg. 4] Accordingly, her deposition should not be permitted "absent extraordinary circumstances." In re Office of Inspector General, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam) (quoting Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575, 586, 247 U.S. App. D.C. 85 (D.C. Cir. 1985)). Plaintiff's submissions in this matter were, and are, insufficient to meet the burden required to establish entitlement to the deposition of former Superintendent Vullo. Initially, the Plaintiff's motion was presented in the context of a motion for expedited discovery, which as of the Court's ruling as to Ms. Vullo's deposition, was moot given the Court's issuance of a scheduling order in this matter. Further, motions are still pending before the Court which will likely affect the scope of Ms. Vullo's deposition, as with any other potential deponents. Which is to say nothing of the fact that discovery in this matter is still in the relevantly nascent stages[3] and the potential for Ms. Vullo being deposed before any other official runs contrary to the law on this issue.

3 In this vein it should be noted that the Plaintiff has recently furnished their initial, and insufficient, response to the Defendants first set of discovery demands and interrogatories. It is anticipated that further motion practice will be required as the NRA has improperly asserted claims of confidentiality throughout their responses as to information that it has put directly at issue in this case. Moreover, these responses have failed to documents or information that could be properly categorized as a "backroom exhortation" as the Plaintiff has so often referenced.

Compelling Ms. Vullo's deposition on such an insufficient showing is both an error of law and would work a manifest injustice. To allow the Plaintiff to depose Ms. Vullo in a case that already hangs upon tenuous allegations at best, would only serve to undermine the protections afforded to high-ranking government officers such as Ms. Vullo and amounts to nothing more than a fishing expedition into issues that are irrelevant to the Plaintiff's remaining claims.

## II. Ms. Vullo is a High-Ranking Official Who May Not Be Deposed Absent an Extraordinary Showing by the Plaintiff

As the Court held, Ms. Vullo, regardless of whether she continues to occupy the position of DFS Superintendent, is considered a high-ranking government official. [Dkt. 89 at pg. 8]. The question remaining is whether the Plaintiff has demonstrate that extraordinary circumstances exist, that require inquiry into specific relevant information that is uniquely within Ms. Vullo's possession. [Dkt. 89 at pg. 9-10]. Though the Court has acknowledged that the Plaintiff's motion papers do not identify the specific information sought, or how any information is solely within Ms. Vullo's possession, the Court accepted the Plaintiff's request to inquire as to an email sent by Ms. Vullo to the Commissioner of California's Department of Insurance.[4]

A party seeking the deposition of a high-ranking government official must demonstrate "exceptional circumstances." See SEC v. Committee on Ways and Means, 161 F.Supp.3d 199, 252 (S.D.N.Y. 2015). This heavy burden "is premised on the notion that high-ranking officials

4 The Plaintiff's allegation that they are hindered in their ability to produce evidence on this issue due to the early stages of discovery is a problem entirely of their own creation. Had the Plaintiff presented this motion in the normal course of affairs, as compared to a meritless motion for expedited discovery, the question of what material and information is available and the source through which it is available would be more fully realized. Additionally, questions of privilege and relevance would have been fully resolved and the Court and Defendants would not be left to guess as to the scope of the Plaintiff's enquiries. The Plaintiff's inability to meet its burden of proof as a result of its own litigation strategies does not alleviate that burden.

should not be required to testify regarding their official decision-making processes." Id. SEC is also informative as the requesting party in that matter did not seek to enquire as to the official's decision making process, but instead whether a particular communication occurred at all. Id. The court held that the former would an inappropriate inquiry into an executive's thought process, while the later, a simple question of fact, could be more properly posed to the relevant official. Id.

Plaintiff in this case seeks precisely that information which the Court in SEC found to have been improper. The Plaintiff does not seek to find out if communications occurred.[5] Indeed, the Plaintiff has already been provided with the subject communication. Instead the Plaintiff herein seeks to delve into Ms. Vullo's thought process in sending the subject email. [Transcript pg. 8]. The Plaintiff's request to enquire as to Ms. Vullo's "reasons behind those communications," is the very thought process information that cannot form the basis for the deposition of a high-ranking official. Id.

Nor has the Plaintiff demonstrated that there is not a less burdensome or intrusive means to obtain the information. See e.g., Judicial Watch v. U.S. Department of State, 2016 WL 10770466, *6-7 (D.C. 2016); see also Moriah v. Bank of China, 72 F.Supp.3d 437, 441 (S.D.N.Y. 2014) (holding that the requesting party could more properly use interrogatories to limit the scope of their inquiry). In Judicial Watch, as in the current matter, the plaintiff sought to depose then Secretary of State Hillary Clinton, regarding her email accounts. Judicial Watch, 2016 WL at *6-7. The plaintiff argued that the use of interrogatories directed to Secretary Clinton was insufficient as that device would not account for appropriate follow-up questions. Id. Despite this protestation, the Court held that the plaintiff "failed to demonstrate that it cannot obtain the discovery it seeks through other, less burdensome or intrusive means such as interrogatories." Id. The Court noted

5 Additionally, if the Plaintiff wishes to enquire as to whether communications with particular entities occurred, that question could be less burdensomely answered through the use of interrogatories.

that the plaintiff's desire to depose Secretary Clinton to allow for follow-up questions was "not persuasive," and indicated that if further discovery was necessary the Court could simply authorize further interrogatories. Id.

Though the Plaintiff hypothesized that interrogatories are insufficient to obtain relevant information in this matter, this argument has been made in a vacuum. The Plaintiff has not submitted interrogatories, nor have they identified why the information sought from Ms. Vullo could not be sought through such a mechanism. As in Judicial Watch, the unnecessary and improper burden placed upon Ms. Vullo through a deposition could be resolved through the use of less intrusive means, and the Plaintiff's desire to utilize a different discovery method is an insufficient basis to subject Ms. Vullo to a deposition. See also California v. U.S., 2006 WL 2621647, *1 (N.D.Cal. 2006) (denying a request to depose a high-ranking official who had submitted a declaration as to the merits of the subject claim, when the requesting party failed to establish that the requested information could not be obtained through a less obtrusive means such as interrogatories);

Defendants would repeat for emphasis a point they advanced at oral argument, *i.e.*, that the email presented by the Plaintiff as a basis for Ms. Vullo's deposition points to no information that is relevant to the claims presented in this case. The email itself, which was not sent until *after* this litigation was commenced and the Consent Orders already made public, discusses a national meeting of regulators and refers to two committee meetings that have nothing to do with the NRA or this litigation in general. The Plaintiff's equal protection claim, to the extent it may survive the pending 12(c) motion, is premised, in short, upon the theory that DFS declined to prosecute other insurance entities who committed similar violations as the NRA. Communications between Ms. Vullo and regulators in other states provide no insight or

information into the Plaintiff's claim that DFS, independent of another sovereign state, improperly instituted an investigation into the NRA's wrongdoing.

Nor has the Plaintiff presented any argument as to why such an inquiry is relevant or necessary in this matter. All that the Plaintiff has argued is that these letters show "that Ms. Vullo was specifically involved in the . . . censorship campaign against the NRA." [Transcript pg. 6]. The Plaintiff goes on to argue that this email somehow demonstrates that "Ms. Vullo is having individual conversations by herself with people trying to get them to stop doing business with the NRA." [Transcript pg. 7]. As they are wont to do, the NRA has again misstated its own case and the substance of the email.

The NRA's First Amendment claim has survived solely because of the allegation that the Defendants engaged in backroom exhortations that caused financial institutions to cut ties with the NRA. An email to a distant state in no way demonstrates a "censorship campaign," nor is it evidence of a backroom exhortation that caused a financial institution to stop doing business with NRA. The email amounts to nothing more than the provision of documents that, by that point, were publically available, and it is certainly not a sufficient basis to overcome into the significant protections afforded to a high-ranking official's thought process.

**III. Scope of the Deposition**

In the event that the Court declines to reconsider its decision, the Defendants request that the Court clarify the limited scope of the deposition. Plaintiff's motion papers failed to set forth a basis for the deposition, and the Court's order granted the motion based on the Plaintiff's argument that a single email to the California Insurance Commissioner formed the basis for Ms. Vullo's deposition. Although Defendants believe the Court's Order makes it clear that the scope

of the deposition is limited to this issue, Defendants are concerned that Plaintiff may seek to go beyond that scope and accordingly seek clarification to avoid future disputes.

If the Plaintiff is permitted to move forward with Ms. Vullo's deposition it must, based on the defects in the Plaintiff's submissions, be limited to the only issue that they have purportedly identified as being uniquely within Ms. Vullo's knowledge. Namely, her communications with the heads of sister agencies in other states. [Transcript at pg. 21]. The Plaintiff has presented no other basis or argument for deposing Ms. Vullo, and it has certainly not demonstrated that it is entitled to ask Ms. Vullo about any communication she might have had with any entity, whether it be a sister state or some person or entity within New York, regarding the NRA.

In this regard, the Court's order directing that Ms. Vullo be deposed "to the extent and/or nature of her communications with others," exceeds both the proper scope of a deposition of a high-ranking official and the nominal evidence presented by the Plaintiff in support of their request. [Dkt. 89 at pg. 13]. As such, and to avoid what would be an inevitable dispute during the course of Ms. Vullo's deposition, it is asked the Court's order be clarified to instruct the Plaintiff that it may only inquire as to Ms. Vullo's communication with the California insurance regulator, which is the only proof the Plaintiff has submitted in this matter regarding the proposed scope of Ms. Vullo's testimony.[6]

## **CONCLUSION**

6 Though not argued by the Plaintiff, in the interest of full disclosure to the Court, the Defendants also produced during the limited discovery that has occurred in this matter, a series of form letters sent under Ms. Vullo's signature to her counterparts in Pennsylvania, New Jersey, Massachusetts, Rhode Island, New Mexico, Hawaii, Washington, California, Vermont, Minnesota, Oregon, the District of Columbia, Connecticut and Virginia, advising those regulators of New York's investigation regarding the Carry Guard Program and the subsequent Lockton and Chubb consent decrees. Again, these letters, as with the email presented by the Plaintiff, form an insufficient basis for Ms. Vullo's deposition, but further highlight the Plaintiff's failure to submit proper proof to this Court as to the proposed scope of Ms. Vullo's deposition.

For the foregoing reasons, it is asked that the Court reconsider its Order and reverse its determination regarding the deposition of Ms. Vullo or, in the alternative, clarify its Order as to the scope of Ms. Vullo's deposition.

Dated: Albany, New York
April 3, 2019

    LETITIA JAMES
    Attorney General of the State of New York
    Attorney for Defendants
    The Capitol
    Albany, New York  12224-0341
    By: s/ *William A. Scott*
    William A. Scott
    Assistant Attorney General, of Counsel
    Bar Roll No. 512434
    Telephone:  (518) 776-2255
    Email: William.Scott@ag.ny.gov

TO:    Sarah Rogers, Esq.
        Stephanie L. Gase, Esq.
        William A. Brewer, Esq.
        Brewer Attorneys & Counselors
        750 Lexington Avenue, 14th Flr.
        New York, NY  10022

        Charles J. Cooper, Esq.
        J. Joel Alicea, Esq.
        Michael W. Kirk, Esq.
        Cooper & Kirk, PLLC
        1523 New Hampshire Ave., NW
        Washington, DC  20036