**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF** | § | |
| **AMERICA,** | § | |
| **Plaintiff,** | § | **CIVIL CASE NO.  18-CV-00566-TJM-** |
| **v.** | § | **CFH** |
| | § | |
| **ANDREW CUOMO, both individually and** | § | |
| **in his official capacity; MARIA T. VULLO,** | § | |
| **both individually and in her official capacity;** | § | |
| **and THE NEW YORK STATE** | § | |
| **DEPARTMENT OF FINANCIAL** | § | |
| **SERVICES,** | § | |
| **Defendants.** | § | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL LLOYD'S ENTITIES TO COMPLY WITH NON-PARTY SUBPEONAS, OR ALTERNATIVELY, TO COMPEL THE DFS TO EFFECTUATE SERVICE

William A. Brewer III (Bar No. 700217)
Sarah B. Rogers (Bar No. 700207)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

Charles J. Cooper*
ccooper@cooperkirk.com
Michael W. Kirk*
mkirk@cooperkirk.com
J. Joel Alicea*
Jalicea@cooperkirk.com
Nicole Frazer Reaves*
nreaves@cooperkirk.com
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington D.C., 20036
Telephone: (202) 220-9660
Facsimile: (202) 220-9601

*Appearing *pro hac vice*

**ATTORNEYS FOR THE NATIONAL**
**RIFLE ASSOCIATION OF AMERICA**

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ...................................................................................1

II.  BACKGROUND .......................................................................................................3

    A.  The NRA Seeks Discovery From The Lloyd's Entities Critical To Its
        Claims .............................................................................................................3

    B.  The NRA Appropriately Served the Subpoenas on the DFS
        Superintendent—And DFS Initially Accepted Service on Behalf Of The
        Lloyd's Entities ...............................................................................................5

    C.  The Lloyd's Entities Refuse to Comply with the Subpoenas ................................6

III.  LEGAL STANDARD .................................................................................................7

IV.  ARGUMENTS AND AUTHORITIES..........................................................................8

    A.  Service Upon DFS Was Valid and Proper Pursuant to the Insurance Policy .........8

    B.  Service Upon DFS Was Valid and Proper Pursuant to Section 1213 of the
        New York Insurance Law .................................................................................11

    C.  Because Service Was Validly Effected, DFS's Purported Rejection and
        Return of the Subpoenas Had No Legal Effect....................................................14

    D.  The Court Has Jurisdiction To Enforce The Subpoenas.......................................16

    E.  Alternatively, the Court Should Compel The Superintendent Of The DFS
        To Effectuate Service Of The Subpoenas On The Lloyd's Entities .....................18

V.  CONCLUSION........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*150 Broadway N.Y. Assoc. L.P. v. Bodner*,
   784 N.Y.S.2d 63 (1st Dept. 2004) ........................................................................10

*In re Air Cargo Shipping Servs. Antitrust Litigation*,
   No. 06-MDL-1775(JG)(VVP), 2010 WL 10947344 (E.D.N.Y. Sept. 22, 2010) ...................15

*Arkwright Mut. Ins. Co. v. Scottsdale Ins. Co.*,
   874 F. Supp. 601 (S.D.N.Y. 1995) ........................................................................12

*ATSI Comm's, Inc. v. The Shaar Fund, Ltd.*,
   No. 02 Civ. 8726(LAK), 2003 WL 1877227 (S.D.N.Y. Apr. 9, 2003) ...................................15

*Austrian Lance & Stewart, P.C. v. Rockefeller Center, Inc.*,
   163 A.D.2d 125 (N.Y. App. Div. 1st Dept. 1990) .................................................................15

*Bd. of Educ. of Half Hollow Hills Central School Dist. of Huntington v. Half
   Hollow Hills Teachers Assoc.*,
   358 N.Y.S.2d 285 (Sup. Ct. 1974) ........................................................................8

*Beare v. Millington*,
   No. 07-CV-3391(ERK)(MDG), 2010 WL 234771 (E.D.N.Y. Jan. 13, 2010) ...................1, 7

*Bossuk v. Steinberg*,
   447 N.E.2d 56 (N.Y. Ct. App. 1983) ........................................................................15

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
   206 F.R.D. 78 (S.D.N.Y. 2002) ........................................................................11

*CBS Corp. v. Eaton Corp.*,
   No. 97 Civ. 11344(LBS), 2009 WL 4756436 (S.D.N.Y. Dec. 7, 2009) .................................11

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................................17

*Fashion Page, Ltd. v. Zurich Ins. Co.*,
   50 N.Y.2d 265 (1980) ........................................................................1, 7

*Friends of Gateway v. Slater*,
   257 F.3d 74 (2d Cir. 2001) ........................................................................12

*Greenfield v. Phillies Records*,
   780 N.E.2d 166 (2002) ........................................................................10

*Gucci America, Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014)..................................................................17

*King v. Crown Plastering Corp.*,
    170 F.R.D. 355 (E.D.N.Y. 1997) ...................................................15, 16

*Licci v. Lebanese Canadian Bank*,
    20 N.Y.3d 327 (2012) ...........................................................................17

*Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*,
    No. 03 CIV 982(GBD), 2004 WL 1574732 (S.D.N.Y. July 13, 2004) .................3, 10, 15, 19

*Nat. Resources Def. Council, Inc. v. U.S. Consumer Product Safety Com'n*,
    597 F. Supp. 2d 370 (S.D.N.Y. 2009).................................................12

*Nycal Corp. v. Inoco PLC*,
    166 F.3d 1201 (2d Cir. 1998)................................................................11

*Orix Fin. Servs., Inc. v. Kielbasa*,
    No. 01 Civ. 12789, 2007 WL 4258207 (S.D.N.Y. Dec. 3, 2007).................8

*Orix Fin. Servs., Inc. v. Phipps*,
    No. 91 Civ. 2523(RPP), 2009 WL 30263 (S.D.N.Y. Jan 6, 2009)...........8

*Recyclers Consulting Grp., Inc. v. IBM-Japan, Ltd*,
    No. 96 Civ. 2137(JFK), 1999 WL 615014 (S.D.N.Y. Oct. 3, 1997) ............................ *passim*

*Securities Exchange Commission v. Pence*,
    322 F.R.D. 450 (S.D.N.Y. 2017) .........................................................15

*The Rockefeller Univ. v. Ligand Pharmaceuticals*,
    581 F. Supp. 2d 461 (S.D.N.Y. 2008)..................................................16

*U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*,
    487 U.S. 72 (1988)................................................................................16

*Ultradent Prods., Inc. v. Hayman*,
    No. M8-85 RPP, 2002 WL 31119425 (S.D.N.Y. Sept. 24, 2002).........16

*Vera v. Republic of Cuba*,
    91 F. Supp. 3d 561 (S.D.N.Y. 2015), *rev'd on other grounds, Vera v. Republic of Cuba*, 867 F.3d 310 (2d Cir. 2017)...........................................16, 17

*In re Wagar*,
    Civ. No. 1:06-MC-127, 2006 WL 3699544 (N.D.N.Y. Dec. 13, 2006) ...................................7

*Warburg, Pincus Equity Partners, L.P. v O'Neill*,
    No. 124221/02, 2003 WL 25780844 (N.Y. Sup. Ct. July 18, 2003) ...................................8, 10

**Other Authorities**

Federal Rule of Civil Procedure Rule 45 ..............................................................................7, 8, 15

N.Y. Ins. Law § 1212 ...................................................................................................12, 13, 14

New York Insurance Law § 1213 ...................................................................... *passim*

N.Y. C.P.L.R. § 302(a) .................................................................................................17

General Counsel Opinion 8-5-2009, 2008 WL 2712332 (NY INS BUL)....................................13

# I.

## <u>PRELIMINARY STATEMENT</u>

The crux of this case involves allegations that the DFS (acting in concert with the other Defendants) selectively wielded its powers to advance a political vendetta against the NRA. Regrettably, that same conduct now infects discovery.  Although it serves as the registered agent for service of process upon several relevant insurers, DFS has obstructed service of third-party subpoenas without any basis.  The insurers, for their part, have received fair and actual notice of the subpoenas—but refuse to comply until DFS formally transmits them.  In New York and the Second Circuit, where documents are delivered in a manner "calculated to give the corporation fair notice, the service should be sustained."[1]  To that end, the NRA seeks relief from the Court.

The specific discovery at issue here consists of valid, narrowly tailored subpoenas (the "Subpoenas") addressed to several Lloyd's of London syndicates that underwrote insurance policies targeted by Defendants (those syndicates, collectively with their managing agents, the "Lloyd's Entities").[2]  As set forth below, discovery from the Lloyd's Entities is critical to this

---

[1] *Fashion Page, Ltd. v. Zurich Ins. Co*., 50 N.Y.2d 265, 272 (1980); *see also Beare v. Millington*, No. 07-CV-3391(ERK)(MDG), 2010 WL 234771, at *4 (E.D.N.Y. Jan. 13, 2010) (collecting cases).

[2] Although "Lloyd's of London" is sometimes colloquially referred to as an insurance company, it is actually "a society of members which underwrite insurance (each for their own account) as members of syndicates." *See Lloyd's of London in Study for N.Y. Insurance Market*, DealBook, N.Y. TIMES (March 25, 2010), https://dealbook.nytimes.com/2010/03/25/lloyds-of-london-in-study-for-n-y-insurance-market/; *see also The Lloyd's Market*, LLOYD'S, https://www.lloyds.com/about-lloyds/what-is-lloyds/the-lloyds-market (last visited April 18, 2019), https://www.lloyds.com/about-lloyds/what-is-lloyds/the-lloyds-market (describing the structure of the Lloyd's market).  Entities known as "managing agents" manage the Lloyd's syndicates on behalf of Lloyd's members.  The individual Lloyd's syndicates and managing agents that were involved in the policies at issue here, and upon whom the NRA seeks to serve subpoenas, are: AUW 0609; BRT 2987; CNP 0958; CNP 4444; CSL 1084; GER 1206; KLN 0510; LIB 4472; ROC 1200; SAM 0727; AmTrust Syndicates Limited; Argo Managing Agency Limited; Atrium Underwriters Limited; Brit Syndicates Limited; Canopius Managing Agents

1

case: the NRA believes that Lloyd's-related persons were recipients of the "backroom exhortations" identified in the Amended Complaint.

On March 26, 2019, the NRA successfully served the Subpoenas upon the Superintendent of DFS via the DFS office located at 99 Washington Ave., Albany, New York 12210.  The Superintendent initially accepted service, but later purported to revoke that acceptance and refused to transmit the Subpoenas to the Lloyd's Entities.[3]  Although they timely and separately received courtesy copies of the Subpoenas from the NRA's counsel, the Lloyd's Entities maintain, based on the position taken by DFS, that they have not been served.[4] Consequently, they refuse to comply with the Subpoenas.

Against this backdrop, DFS and the Lloyd's Entities insist that the Lloyd's Entities can underwrite insurance in New York, enter into a consent order in New York, and be sued in New York, but not be served with a subpoena by their client regarding its own insurance policies—an outcome that contravenes explicit provisions of the Lloyd's Entities' contract with the NRA, as well as New York public policy and a New York statute.  Addressing similar facts, at least two courts in this Circuit have held that even if a designated agent for service of process does not know it has been so-designated, and even if the agent purports to refuse service, service that is

---

Limited; Chaucer Syndicates Limited; Liberty Managing Agency Limited; S.A. Meacock & Company Limited; Tokio Marine Kiln Syndicates Limited.  All are located in the United Kingdom.

[3] *See* discussion *infra* at Section IV.A; Affidavits of Service, attached as Exhibit C to the Declaration of Sarah B. Rogers In Support of Plaintiff's Motion to Compel Lloyd's Entities to Comply with Non-Party Subpoenas, or Alternatively, to Compel the DFS to Effectuate Service, dated April 19, 2019 (the "Rogers Decl.").  The NRA will cite to exhibits to the Rogers Decl. in the form "Ex. __."

[4] *See* Letter from Michael D. Hynes to Stephanie Gase, dated March 28, 2019, Ex. F.

2

validly effected on a contractually designated agent should nonetheless be treated as retrospectively binding if the party served had actual, fair notice of the proceedings.[5]

The Court should therefore order the Lloyd's Entities to comply with the mandates of the Subpoenas.  Alternatively, in order to avoid further frustration of the NRA's crucial and narrowly tailored discovery, the Court should compel the Superintendent of the DFS to formally effect service of the Subpoenas on the Lloyd's Entities.

## II.

## BACKGROUND

### A.   The NRA Seeks Discovery From The Lloyd's Entities Critical To Its Claims.

This case arises from Defendants' selective enforcement of New York insurance regulations to target NRA-related affinity policies, while permitting materially identical policies to continue being sold.  Accompanied by official regulatory "guidance" documents, press releases, and backchannel threats, Defendants' actions sent a clear message: financial institutions should sever ties with the NRA, lest they suffer the same fate as the NRA's affinity-insurance partners, Lockton and Chubb.[6]  Just before the NRA commenced this lawsuit, the leadership of the Lloyd's of London insurance marketplace signaled publicly that Lloyd's received

---

[5] *See Recyclers Consulting Grp., Inc. v. IBM-Japan, Ltd*, No. 96 Civ. 2137(JFK), 1999 WL 615014, at *3 (S.D.N.Y. Oct. 3, 1997); *Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*, No. 03 CIV 982(GBD), 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004); *see also* Section IV.A, *infra*.

[6] As set forth in the Amended Complaint, just before commencement of this lawsuit, Lockton (the longtime broker and administrator of the NRA's affinity-insurance programs) and Chubb (the underwriter of one program, Carry Guard) entered into highly publicized consent orders with DFS, in which they paid multi-million dollar penalties and acceded to forbear from future NRA-related affinity business.  Importantly, the government did ***not*** penalize Lockton or Chubb with respect to any conduct undertaken on behalf of non-NRA clients—even where publicly available websites contained near-identical marketing statements.  *See, e.g.*, ECF No. 37, at 32-33, 35-36.

Defendants' message loud and clear—announcing on May 9, 2018, that Lloyd's would discontinue business arrangements with the NRA.[7]

During the pendency of their first motion to dismiss, Defendants continued to target Lloyd's, despite the fact that the policies it underwrote for the NRA had nothing to do with the "Carry Guard" coverage that purportedly sparked DFS's inquiry.[8]   Defendants' selective enforcement  culminated in a Consent Order between ten Lloyd's syndicates[9] and DFS, in which the syndicates paid multi-million dollar penalties and acceded to forbear from future NRA-related affinity business.[10]

Based on this timeline of events, the NRA has strong reason to infer that the Lloyd's Entities are in possession, custody, and control of a robust body of nonpublic information relevant to this case, including documents and testimony that would reflect interactions between Lloyd's and DFS, as well as Lloyd's internal decision-making in response to DFS pressure. Accordingly, the NRA initiated the process of serving non-party subpoenas on ten syndicates

---

[7] *See Lloyd's Withdraws From National Rifle Association (NRA) Programmes*, LLOYD'S (May 9, 2018), https://www.lloyds.com/news-and-risk-insight/news/lloyds-news/2018/05/nra-statement ("This is now subject to an inquiry by the [DFS].  Therefore Lloyd's Corporation has decided to direct underwriters in the market to terminate any existing programmes of this type and not to enter any new ones.").

[8] *See* ECF No. 40-1, at 5-7 (discussing how Carry Guard and its policies underwritten by Chubb and Lockton were the primary point of focus for the DFS's investigation beginning in August 2017).

[9] Lloyd's syndicates are comprised of one or more members of the Lloyd's market that provide capital to underwrite insurance policies.  They are renewed annually and function as permanent insurance operations, many of which will operate with specific expertise for particular classes of businesses that operate within the insurance market.  *See The Lloyd's Market*, LLOYD'S, https://www.lloyds.com/about-lloyds/what-is-lloyds/the-lloyds-market (last visited April 18, 2019).

[10] *See* In the Matter of Certain Underwriters at Lloyd's, London Subscribing to Insurance Policies Issued to the National Rifle Association of America, *Consent Order Under Sections 1102 and 3420 of the Insurance Law*, dated Dec. 20, 2018 (the "Consent Order), Ex. A.

from the Lloyd's of London insurance market that were subject the Lloyd's Consent Order, as well as the syndicates' respective managing agents.[11]

## B. The NRA Appropriately Served the Subpoenas on the DFS Superintendent—And DFS Initially Accepted Service on Behalf Of The Lloyd's Entities.

It is undisputed that the NRA, on the one hand, and the Lloyd's Entities, on the other hand, are party to that certain Master Lloyd's Policy dated August 9, 2016 (the "Insurance Policy"). Pursuant to the Insurance Policy, the Lloyd's Entities designate the Superintendent of DFS to receive service of "any lawful process in any action, suit or proceeding instituted by or on behalf of the [NRA] or any beneficiary hereunder arising out of" the Insurance Policy.[12] Moreover, even irrespective of the Insurance Policy, the NRA had another, independent basis for serving process via DFS. New York Insurance Law § 1213 provides explicitly that excess-line insurers, such as the Lloyd's Entities, designate the DFS Superintendent as their agent for service in actions, like this one, that arise out of or relate to their contracts with insureds.[13]

Operating in accordance with its contractual rights and New York law, the NRA served the Subpoenas on the Superintendent of the DFS on March 26, 2019.[14] The sworn affidavit from the NRA's process server confirms that a DFS employee at the Albany, New York DFS office accepted service of the non-party subpoenas.[15] The following day, an employee from the DFS office called the NRA's process server and indicated that the DFS office would not accept

---

[11] *See* Lloyd's Consent Order at 1, Ex. A. For a full list of the Lloyd's Entities, see note 2, supra.

[12] *See* Lloyd's Master Policy, Ex. I.

[13] *See* New York Insurance Law § 1213.

[14] *See* Affidavits of Service, dated March 27, 2019, Ex. C.

[15] *See id.*

service of the Subpoenas, and the DFS office would mail the subpoenas back to the process server.[16]

Following the service of the Subpoenas on the DFS, the NRA sent each of the Lloyd's Entities, along with their counsel, courtesy copies of the Subpoenas.[17] The NRA also sent Defendants a copy of the Subpoenas, the Affidavits of Service for the Subpoenas, and online receipts indicating that the Lloyd's Entities received courtesy copies of the Subpoenas.[18]

**C.**    **The Lloyd's Entities Refuse to Comply with the Subpoenas.**

The Lloyd's Entities refuse to comply with the lawfully-served Subpoenas. In correspondence dating March 28, 2019, the Lloyd's Entities contend that the Subpoenas have not yet been served because the Superintendent of the DFS purportedly refuses to accept service of the Subpoenas and has refused to send copies of the Subpoenas to the Lloyd's Entities.[19] Additionally, the Lloyd's Entities argue that the Subpoenas have not been served because the DFS states on its website that it does not accept service of subpoenas on behalf of "authorized" insurance companies—*i.e.*, those which are formally authorized do business in the State of New York.[20] However, it is undisputed that the Lloyd's Entities are unauthorized, "excess-line" insurers.[21]

---

[16] *See id.*

[17] *See* Rogers Decl. at ¶ 6–7.

[18] *See* Rogers Decl. at ¶ 6–7.

[19] *See* Letter from Michael D. Hynes to Stephanie Gase, dated March 28, 2019, Ex. F; Letter from Michael D. Hynes to William Scott, dated April 8, 2019, Ex. H.

[20] *See* Letter from Michael D. Hynes to Stephanie Gase, dated April 2, 2019, Ex. G.

[21] *See* Lloyd's Consent Order at 5, ¶ 9, Ex. A.

The NRA, Lloyd's Entities, and DFS have met and conferred on this issue,[22] but the Lloyd's Entities maintain that they are under no present obligation to comply with the Subpoenas, because service was rejected (or acceptance of service revoked) by DFS.[23]

Having attempted to resolve this issue with the Lloyd's Entities and the DFS, the NRA now seeks relief from the Court.

## III.

## <u>LEGAL STANDARD</u>

Rule 45 of the Federal Rule of Civil Procedure provides that a person who has been served with a subpoena is under a duty to produce the documents as they are kept in the usual course of business.[24] The cornerstone of valid service under Rule 45 consists of "delivery which reasonably ensures actual receipt by a witness;"[25] similarly, the New York Court of Appeals has commented that "if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained."[26] A party seeking discovery pursuant to Rule 45 shall "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."[27] The same party may request court intervention if there are objections to such a subpoena.[28]

---

[22] *See* Rogers Decl. at ¶ 9.

[23] *See* Letter from Michael D. Hynes to William Scott, dated April 8, 2019, Ex. H.

[24] FED. R. CIV. P. 45.

[25] *See, e.g.*, *Beare v. Millington*, No. 07-CV-3391(ERK)(MDG), 2010 WL 234771, at *4 (E.D.N.Y. Jan. 13, 2010) (collecting cases).

[26] *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272 (1980).

[27] *See* FED. R. CIV. P. 45(c)(1).

[28] *See In re Wagar*, Civ. No. 1:06-MC-127 (LEK/RFT), 2006 WL 3699544, at *4 (N.D.N.Y. Dec. 13, 2006).

Further, the Subpoenas can be enforced in this Court because they command the production of documents within this Court's jurisdiction.[29]

<strong>IV.</strong>

<strong><u>ARGUMENTS AND AUTHORITIES</u></strong>

**A.**   **<u>Service Upon DFS Was Valid and Proper Pursuant to the Insurance Policy.</u>**

It is well settled that two parties can contractually designate a third party as an agent for service of process in lawsuits arising out of or relating to their contract.[30]  New York courts have applied this principal to natural persons, corporations and partnerships, as well as government entities.[31]  Although some jurisdictions require that the contracting parties file official documentation placing the public on notice of such designation, failure to observe such formalities does not destroy otherwise-valid service.[32]  Accordingly, even if the third-party designated agent is unaware that it has been so-designated, and purports to refuse service, the

---

[29] *See* FED. R. CIV. P. 45. The Subpoenas command the production of documents at 468 Ashwood Avenue, Utica, New York 13502, a location within the jurisdiction of this Court.  *See* NRA's Notice of Intent to Request for Production of Documents of Tokio Marine Kiln Syndicates Limited, dated March 18, 2019, Ex. B.

[30] *See Orix Fin. Servs., Inc. v. Kielbasa*, No. 01 Civ. 12789, 2007 WL 4258207, at *3 (S.D.N.Y. Dec. 3, 2007) ("It is well settled that parties to a contract may agree to service upon a third person with respect to litigation arising from the contract[.]"); *Orix Fin. Servs., Inc. v. Phipps*, No. 91 Civ. 2523(RPP), 2009 WL 30263, at *7 (S.D.N.Y. Jan 6, 2009) (same).

[31] *See, e.g.*, *Bd. of Educ. of Half Hollow Hills Central School Dist. of Huntington v. Half Hollow Hills Teachers Assoc.*, 358 N.Y.S.2d 285 (Sup. Ct. 1974) (acknowledging the expanding concept of contractually agreeing that a third party, such as an attorney on behalf of one of the contracting entities, can be served to satisfy New York state law requirements for service of process) (citing *Nat'l Equipment Rental v. Szukhent*, 375 U.S. 311 (1964)).

[32] *See, e.g.*, *Warburg, Pincus Equity Partners, L.P. v O'Neill*, No. 124221/02, 2003 WL 25780844 (N.Y. Sup. Ct. July 18, 2003) (even if "the formalities of CPLR 318 [providing that a writing designating a third-party agent for service should be filed with the office of the clerk of the county in which the principal to be served resides] were not complied with," service was valid under the fair-notice principles set forth in *Recyclers*).

8

party who relied on its valid contract to effect service is entitled to have its reliance vindicated—so long as the principal served received fair, actual notice of the proceedings.

These principles were articulated at length in *Recyclers Consulting Group*, 1997 WL 615014 (S.D.N.Y. Oct. 3, 1997), where a removal dispute required the court to determine the date on which a lawsuit had validly been served.  In *Recyclers*, a contract between the plaintiff (a Connecticut corporation) and the defendant (a Japanese corporation) designated CT Corporation (a registered-agent services firm) as the defendant's agent—but CT Corporation was never informed about, nor did it accept, the appointment.[33]  In a sequence of events nearly identical to those here, the plaintiff's process server deposited relevant documents with an employee of CT Corporation; the very next day, CT Corporation responded by letter that it was not the defendant's agent and returned the papers.[34]  Thereafter, the plaintiff mailed the papers to the defendant.[35]  The *Recyclers* court concurred with the plaintiff that service was effected on the date the documents were deposited by the process server, explaining that the contractual designation "cloaked CT corporation with apparent authority to accept service," upon which the plaintiff was entitled to rely "[*r]egardless of whether Defendant informed CT Corporation of its appointment or whether CT Corporation accepted* that appointment."[36]  Courts in New York and the Second Circuit have applied the same reasoning to retroactively treat, as valid, service on

---

[33] *Recyclers Consulting Grp.*, 1997 WL 615014, at *2.

[34] *Id.*

[35] *Id.*

[36] *Id.* at *3 (emphasis added).

9

uncooperative agents in other cases,[37] in each instance noting that the principal served received

fair, actual notice of the proceedings.[38]

Here, too, the NRA is entitled to rely on the provisions of the Insurance Policy it

purchased from Lloyd's.  Section G of the Personal Firearms Liability Insurance Policy Form

contained in the Insurance Policy, titled "Service of Suit," designates the DFS Superintendent as

"the[] true and lawful attorney upon whom may be served ***any lawful process in any action, suit,***

***or proceeding*** instituted by or on behalf of the insured (or reinsured) or any beneficiary

hereunder ***arising out of*** this contract of insurance and hereby designated the above mentioned as

the person to whom [process should be mailed]." [39]  Without question, a subpoena is a process of

a court, and the Insurance Policy must be construed according to its plain meaning to encompass

"any lawful process."[40]  Moreover, courts generally interpret "arising out of" broadly,[41] and it is

---

[37] *See Mastec Latin Am.*, 2004 WL 1574732, at *3 (holding that a designated agent's receipt and subsequent return of service did not render service ineffective when the agent was in fact authorized by contractual agreement between a third-party and the principal—a foreign corporation—to accept service on behalf of the principal, and when the third-party properly served the agent in accordance to the contractual agreement); *O'Neill*, 2003 WL 25780844 (approving of service on a law firm designated by a contracting party to be the agent for service of process, even though the law firm initially rejected such service).

[38] *See, e.g.*, *Mastec Latin Am.*, 2004 WL 1574732, at *3 ("Defendant does not deny that service upon its designated agent was effected in accordance with the terms' of the parties contract. Nor does defendant deny receiving prompt notice of the action.  Defendant's failure to dispute the fact that it was served in accordance with the procedures set forth in the contract, allowing for service on its designated agent, warrants a finding that defendant was properly served.").

[39] *See* Lloyd's Master Policy, Ex. I (emphasis added).  Indeed, the same provision provides that in all U.S. jurisdictions (including, but not limited to, New York) where an insurer may designate the insurance superintendent or commissioner as its agent for service, Lloyd's elects to makes such designation.

[40] *See Greenfield v. Phillies Records*, 780 N.E.2d 166, 170 (2002) (holding that unambiguous contracts must be interpreted in accordance with their plain meaning); *150 Broadway N.Y. Assoc. L.P. v. Bodner*, 784 N.Y.S.2d 63, 66 (1st Dept. 2004) (holding that contracts must be interpreted "to avoid an interpretation that would leave contractual clauses

10

clear that the NRA's contractual relationship with Lloyd's is one of the key facts out of which

this lawsuit arises. Consistent with the fair-notice principles articulated in *Recyclers* and similar

cases, it is undisputed that the NRA provided actual notice and copies of the Subpoenas to the

Lloyd's Entities.[42]   Accordingly, the Court should hold that the Lloyd's Entities were validly

served.

**B.   Service Upon DFS Was Valid and Proper Pursuant to Section 1213 of the New York
       Insurance Law.**

Additionally, just like all foreign, excess-line insurers who underwrite policies or New

York residents, the Lloyd's Entities have designated DFS as their agent for service pursuant to

New York Insurance Law § 1213.[43]

Section 1213 requires that the Superintendent of DFS be appointed as the true and lawful

attorney for purposes of accepting service of process for all unauthorized or alien insurers

operating in the State of New York.[44]   The statute explicitly states, in relevant part, that the

---

meaningless"); *see also CBS Corp. v. Eaton Corp.*, No. 97 Civ. 11344(LBS), 2009 WL 4756436, at *5 (S.D.N.Y. Dec. 7, 2009) (applying rules of plain meaning contract interpretation and rejecting a party's interpretation of a phrase "previous generations" in an indemnification agreement because the interpretation ran contrary to the plain meaning of the phrase and the limitation was not expressly provided for in the agreement).

[41] See *Nycal Corp. v. Inoco PLC*, 166 F.3d 1201 (2d Cir. 1998) (interpreting the phrase "arising out of" in insurance contracts to support "only a broad reading"); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 90 (S.D.N.Y. 2002) (reasoning that "while disputes arising 'under' the contract would be limited to disputes between [the parties], disputes arising 'out of' the [contract] are not so limited," and noting explicitly that the clause at issue would have encompassed non-party subpoenas).

[42] *See* Rogers Decl. at ¶ 6–7.

[43] *See* New York Insurance Law § 1213.  The Lloyd's Entities were operating as excess line insurance carriers, which are not licensed by the DFS but are still permitted to do business in New York.  As a result, the Lloyd's Entities fall within the scope of New York Insurance Law § 1213.  *See* Lloyd's Consent Order at 5, ¶ 9, Ex. A.

[44] New York Insurance Law § 1213.

11

issuance or delivery of contracts of insurance to New York residents or operating entities by

unauthorized or alien insurers is "equivalent to and constitutes its appointment of the

[Superintendent of the DFS] . . . to be [the insurer's] true and lawful attorney upon whom may be

served *all* lawful process in *any* proceeding instituted by or on behalf of an insured or beneficiary

arising out of such contract of insurance[.]"[45]   This provision confers jurisdiction over

unauthorized insurers that carry out business in New York.[46]

Notably, § 1213 contains no language limiting the type of process that may be served on

the Superintendent of the DFS.[47]   Indeed, the provision permits service of ***all*** lawful process in

***any*** proceeding, with no exceptions pertaining to subpoenas.[48]   That § 1213 permits service in

situations like this one becomes particularly obvious when that statute is read against the

backdrop of an adjacent and different provision—§ 1212, which addresses service of process

upon domestic and authorized (*i.e.*, non-excess-line) insurers, and upon which DFS wrongly

relies here.[49]   Unlike § 1213, § 1212 expressly circumscribes the agent-for-service designation to

---

[45] *Id.* (emphasis added).

[46] *See Arkwright Mut. Ins. Co. v. Scottsdale Ins. Co.¸* 874 F. Supp. 601, 605 (S.D.N.Y. 1995) (citing *Morgan v. Am. Risk Mgmt, Inc.*, No. 89CIV2999(JSM)(KAR), 1990 WL 106837, at *5–6 (S.D.N.Y. July 20, 1990)) ("Section 1213 operates as an alternative long-arm statute which subjects unauthorized foreign insurers who transact business in New York to jurisdiction in the state.").

[47] *See generally* New York Insurance Law § 1213.

[48] *See generally id.*

[49] *See Friends of Gateway v. Slater*, 257 F.3d 74, 81–82 (2d Cir. 2001) (comparing legislative provisions and finding that the presence of restrictions in one act, and absence of restrictions in another, demonstrates legislative intent to implement restrictions in a precise manner); *Nat. Resources Def. Council, Inc. v. U.S. Consumer Product Safety Com'n*, 597 F. Supp. 2d 370, 385 (S.D.N.Y. 2009) (holding that the use of restrictive prohibitions in one provision of a consumer safety statute and not in another in the same statute was a meaningful legislative choice that should be accepted by an interpreting court).

12

apply only in any "lawful process or proceeding against it [i.e. against the insurer.]"[50] Interpreting this language, the Superintendent of the DFS has refused to accept non-party subpoenas served upon domestic and authorized insurers pursuant to § 1212, instead accepting service under § 1212 only if the insurer is a named defendant.[51]   Here, the Superintendent of DFS relies on this guidance to similarly reject service of the Subpoenas, but differences between § 1212 and § 1213 makes such reliance improper.

For reasons articulated expressly by the New York State legislature within the text of the statute itself, § 1213 provides for service in a broader array of situations than § 1212. Specifically, the legislature "declares that it is a subject of concern that many residents of this state," holding policies underwritten by foreign excess-line insurers, could face "the often insuperable obstacle of resorting to distant forums" if they seek to enforce rights arising out of, or relating to, their insurance policies.[52]   To enhance the recourse available to New York residents dealing with excess-line foreign insurers who might otherwise operate beyond the reach of local courts, the New York legislature deviated from the statutory scheme of § 1212 to focus, first and foremost, on protecting insureds and beneficiaries—even in proceedings that are not commenced "against" the insurer.[53]   For ease of reference, parallel excerpts of the two statutes appear below (with emphasis added in each instance):

---

[50] New York Insurance Law § 1212(a).

[51] *See* General Counsel Opinion 8-5-2009, 2008 WL 2712332 (NY INS BUL) (available at https://www.dfs.ny.gov/insurance/ogco2009/rg090802.htm).

[52] New York Insurance Law §1213(a).

[53] *See id.*

| N.Y. Ins. Law § 1212 *Applies to Domestic Insurers, Plus Foreign Insurers Authorized to Do Business In New York* | "…all lawful process in *any proceeding against it on* a contract delivered or issued for delivery, or on a cause of action arising, in this state…" |
| --- | --- |
| N.Y. Ins. Law § 1213 *Applies to Foreign Unauthorized Insurers* | "…all lawful process in *any proceeding instituted by or on behalf of an insured or beneficiary arising out of* any such contract of insurance [issued or delivered to New York residents or to corporations authorized to do business in New York, or meeting certain other criteria]." |

Here, as their consent order with the DFS recites, the Lloyd's Entities were operating as excess-line insurers when they underwrote the policies at issue in this lawsuit, thus bringing them within the scope of § 1213.[54]  Therefore, even though no court has examined or upheld DFS's refusal as a matter of policy to serve subpoenas pursuant to § 1212, that DFS policy cannot reach these facts—nor should it.[55]  The NRA is a New York insured that purchased a policy from a foreign excess-line insurer, and now seeks to serve legal process to vindicate its rights.  Consistent with the express intent of the New York State legislature (memorialized by the plain language of a New York statute), the Court should recognize the NRA's service of the Subpoenas and enforce the Subpoenas accordingly.

**C.    Because Service Was Validly Effected, DFS's Purported Rejection and Return of the Subpoenas Had No Legal Effect.**

The Lloyd's Entities must comply with the Subpoenas because they were properly served on the Superintendent of the DFS as registered agent for the Lloyd's Entities.

---

[54] *See* Lloyd's Consent Order at 5, ¶ 9, Ex. A.

[55] At no point during the course of the parties' meet/confer efforts did DFS identify a single prior instance wherein it rejected service of a nonparty subpoena under § 1213—as distinguished from § 1212.

The Lloyd's Entities and DFS both contend that the Superintendent of the DFS's purported "rejection" of service means that the Lloyd's Entities have not been formally served with the Subpoenas. It is irrelevant, however, whether DFS keeps or returns the Subpoenas to the process server. Indeed, a designated agent's refusal to accept service *after* receipt of service does not invalidate service.[56] As New York courts have previously pointed out, resistance or rejection of process by the proper designated agent does not automatically invalidate service.[57]

Although they are in receipt of the Subpoenas, the Lloyd's Entities refuse to comply with their discovery obligations until, and unless, copies of the Subpoenas are separately mailed to them by the adverse litigant opposing discovery in this case, DFS. Accommodating their insistence and thwarting the NRA's service would give primacy to form over substance,[58] in direct contravention of the fair-notice principles that govern service of process in this Circuit.[59]

---

[56] *See Recyclers Consulting Grp.*, 1999 WL 615014, at *3; *Mastec Latin Am.*, 2004 WL 1574732, at *3.

[57] *See Recyclers Consulting Grp.*, 1999 WL 615014, at *3; *Mastec Latin Am.*, 2004 WL 1574732, at *3; *Bossuk v. Steinberg*, 447 N.E.2d 56, 58 (N.Y. Ct. App. 1983); *Austrian Lance & Stewart, P.C. v. Rockefeller Center, Inc.*, 163 A.D.2d 125, 128 (N.Y. App. Div. 1st Dept. 1990).

[58] *See In re Air Cargo Shipping Servs. Antitrust Litigation*, No. 06-MDL-1775(JG)(VVP), 2010 WL 10947344, at *35 (E.D.N.Y. Sept. 22, 2010) (rejecting the elevation of form over substance and embracing the liberal scope of Rule 4 of the Federal Rules of Civil Procedure to find that service was effective when the party had actual notice of the service, even though there was technically an error in the actual service of process); *see also ATSI Comm's, Inc. v. The Shaar Fund, Ltd.*, No. 02 Civ. 8726(LAK), 2003 WL 1877227, at *3 (S.D.N.Y. Apr. 9, 2003) ("The Federal Rules of Civil Procedure . . . must be 'construed and administered to secure the *just*, speedy, and inexpensive determination of every action.' In consequence, the Court must concern itself with substance as well as form.") (quoting FED. R. CIV. P. 1) (emphasis in original).

[59] FED. R. CIV. P. 45(b)(1); *see King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997) (holding that proper service of a subpoena under Rule 45 only requires service in a manner that "reasonably insures actual receipt of the subpoena by the witness"); *see also Securities Exchange Commission v. Pence*, 322 F.R.D. 450, 454 (S.D.N.Y. 2017) ("By its text, Rule 45 requires only "delivering" the subpoena to the named person, and does not dictate the manner in which the delivery must occur.").

Service on the Superintendent of the DFS—the designated agent for the Lloyd's Entities—was reasonably measured to insure the actual receipt of the Subpoenas by the Lloyd's Entities.[60] Further, the NRA sent courtesy copies of the Affidavits of Service, along with copies of the Subpoenas, to both the Lloyd's Entities and their counsel so that the Lloyd's Entities would have full notice that service on their designated agent had taken place.[61]  Presented with these facts, the Court should not allow DFS's gamesmanship to thwart discovery.

**D.**     **The Court Has Jurisdiction To Enforce The Subpoenas.**

The subpoena power of this Court extends as far as its jurisdiction.[62]   Financial institutions, such as insurance syndicates and managing agents, that are domiciled or do business principally in a foreign country may still be subject to general personal jurisdiction in the federal courts of any U.S. state where they operate and submit to state-level financial authority.[63] General personal jurisdiction is especially likely to arise where, as here, the entity maintains the

---

[60] *See, e.g.*, *Ultradent Prods., Inc. v. Hayman*, No. M8-85 RPP, 2002 WL 31119425, at *3 (S.D.N.Y. Sept. 24, 2002) (holding that service of a subpoena upon the Secretary of State as the designated agent to a corporation is reasonably measured to insurance the actual receipt of the subpoena by the corporation); *King*, 170 F.R.D. at 356 n.1 (holding that adherence to New York's procedural law for service is sufficient for accomplishing service under Rule 45).

[61] Rogers Decl. at ¶ 6–7.

[62] *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988).

[63] *See Vera v. Republic of Cuba*, 91 F. Supp. 3d 561, 570–71 (S.D.N.Y. 2015), *rev'd on other grounds, Vera v. Republic of Cuba*, 867 F.3d 310 (2d Cir. 2017) (holding that a foreign bank was subject to the court's general jurisdiction because it was authorized to operate in the state by the Superintendent of the Department of Financial Services); *The Rockefeller Univ. v. Ligand Pharmaceuticals*, 581 F. Supp. 2d 461, 465–66 (S.D.N.Y. 2008) (holding that a foreign business consented to the state's general jurisdiction when it was authorized by the New York Secretary of State to conduct its business in the state, and subsequently, to be sufficiently present in the state as to be subject to personal jurisdiction).

ability to sue and be sued in particular U.S. states.[64]  Moreover, at least one court in this Circuit has emphasized that when foreign financial institutions receive the "privileges and benefits associated with" operating in New York, they incur "commensurate, reciprocal obligations," including the obligation "to participate as third-parties in lawsuits" that implicate the interests of this State.[65]  Importantly, general personal jurisdiction should not be construed so narrowly as to permit foreign entities with an active presence in a state to avoid the courts' reach entirely. Indeed, previous precedent on this issue should not construed to wholly preclude a state's ability to perform necessary regulatory oversight into foreign entities that operate regularly within the United States.[66]

Separately, New York's long-arm statute provides that the Court can exercise specific personal jurisdiction over "any entity that transacts any business within the state or contracts anywhere to supply goods or services in the state,"[67] so long as there is an "articulable nexus or substantial relationship" between the relevant transaction and the claims asserted.[68]

---

[64] *See Vera*, 91 F. Supp. 3d at 570.

[65] *See id.* (emphasizing the foreign bank's obligation to participate as a third party "in lawsuits which involve assets under its management").

[66] Indeed, previous holdings from *Daimler AG v. Bauman*, 571 U.S. 117 (2014) and *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) should not be construed to prevent the Court from enforcing the Subpoenas, as they are an extension of the state of New York's regulatory authority into the business practices of foreign unauthorized insurers in New York.  *See Vera*, 91 F. Supp. 3d at 570–71.

[67] N.Y. C.P.L.R. § 302(a).

[68] *See, e.g.*, *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012) (internal citations omitted).  Separately, as discussed above, the Court has specific jurisdiction pursuant to § 1213. *See* note 46, supra.

In this case, the Lloyd's Entities entered into more than 24,000 insurance policies or insurance agreements in New York,[69] including insurance policies for which the NRA (a New York not-for-profit) was the named insured.  The Lloyd's Entities then announced that they would be terminating future New York business with their New York counterparty,[70] the NRA, specifically due to an inquiry by a New York regulator, DFS.[71]  They ultimately entered into a consent order with the DFS, which obligates them to appear before the DFS in New York[72] and be subject to legal proceedings in New York under certain conditions.[73]  Of course, the DFS investigation and consent order, as well as the Lloyd's Entities' actions relating thereto, are part of the core sequence of events from which this lawsuit arises.[74]  Therefore, the criteria for both general personal jurisdiction and specific personal jurisdiction are satisfied.  Accordingly, the Court has the power to compel the Lloyd's Entities to comply with the mandates of the Subpoenas.

**E.      Alternatively, the Court Should Compel The Superintendent Of The DFS To Effectuate Service Of The Subpoenas On The Lloyd's Entities.**

If the Court wishes to avoid making a ruling on this motion which would directly bind the Lloyd's Entities (who contend they have not been validly served), the NRA respectfully requests that the Court compel the Superintendent of DFS to formally transmit the Subpoenas to the

---

[69] *See* Lloyd's Consent Order at 5–6, ¶ 12, Ex. A.

[70] *See* ECF No. 37 at ¶ 65 (discussing how in May of 2018, Lloyd's terminated future New York business with the NRA because the Lloyd's Entities' insurance programs offered, marketed, and endorsed or otherwise made available through the NRA were subject to an inquiry by the DFS).

[71] *See id.*

[72] *See* Lloyd's Consent Order at 11, ¶ 28.

[73] *See id.* at 11, ¶ 29.

[74] *See, e.g.*, ECF No. 37 at ¶¶ 74–75, 86–88.

Lloyd's Entities, thus eliminating any ambiguity regarding proper service.   The information targeted by the Subpoenas includes the records of several "backroom exhortations" referenced in the Amended Complaint.[75]   The DFS should not be permitted to derogate its duties under § 1213 in order to obstruct discovery in a matter to which it is a party.   Although the NRA maintains that service has been effected on the Lloyd's Entities—irrespective of DFS returning relevant papers[76]—an order by the Court compelling the DFS to formalize service would provide an acceptable mechanism of relief.

## V.

## <u>CONCLUSION</u>

Because the Lloyd's Entities are legally obligated to comply with the Subpoenas based on effective service on the Superintendent of the DFS, the NRA respectfully requests that this Court grant the NRA's motion to compel the Lloyd's Entities to comply with the Subpoenas, or alternatively, to compel the Superintendent of the DFS to effectuate proper service of the Subpoenas on the Lloyd's Entities.

---

[75] *See, e.g.*, ECF No. 56, p. 24–26 (acknowledging that the NRA's claims of Defendants "backroom exhortations" provide strong support for the NRA's claims that Defendants engaged in an implicit censorship and retaliation campaign against the NRA).

[76] *See Mastec Latin Am.*, 2004 WL 1574732, at *3.

Dated: April 19, 2019                    Respectfully submitted,

By:    /s/ William A. Brewer III
          William A. Brewer III (Bar No. 700217)
          Sarah B. Rogers (Bar No. 700207)
          BREWER, ATTORNEYS & COUNSELORS
          750 Lexington Avenue, 14th Floor
          New York, New York 10022
          Telephone:  (212) 489-1400
          Facsimile:  (212) 751-2849

          Charles J. Cooper*
          ccooper@cooperkirk.com
          Michael W. Kirk*
          mkirk@cooperkirk.com
          J. Joel Alicea*
          Jalicea@cooperkirk.com
          Nicole Frazer Reaves*
          nreaves@cooperkirk.com
          COOPER & KIRK, PLLC
          1523 New Hampshire Ave., NW
          Washington D.C., 20036
          Telephone: (202) 220-9660
          Facsimile: (202) 220-9601

          *Appearing pro hac vice

          **ATTORNEYS FOR THE NATIONAL
          RIFLE ASSOCIATION OF AMERICA**

4824-8365-0452.8