# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § | CIVIL CASE NO. 18-CV-00566-TJM-CFH |

**NATIONAL RIFLE ASSOCIATION OF AMERICA'S NOTICE OF
INTENT TO REQUEST FOR PRODUCTION OF DOCUMENTS OF
TOKIO MARINE KILN SYNDICATES LIMITED**

TO:  Defendants, by and through their counsel of record, Letitia James, Attorney General of the State of New York and and William A. Scott, Assistant Attorney General, Of Counsel, New York State Attorney General's Office, Albany Office, The Capitol Albany, New York, 12224-0341.

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, the National Rifle Association of America, by and through its counsel of record, shall issue a subpoena to Tokio Marine Kiln Syndicates Limited ("Tokio") to produce documents, information or objects at Custom Court Reporting c/o Lexitas, 468 Ashwood Avenue, Utica, NY 13502, on March 29, 2019, at 5:00 p.m.

A copy of the subpoena is attached hereto as **Exhibit A**.

Dated: March 18, 2019         Respectfully submitted,

By:   *William A. Brewer III*
    William A. Brewer III (Bar No. 700217)
    wab@brewerattorneys.com
    Stephanie L. Gase (Bar No. 700205)
    sgase@brewerattorneys.com
    Sarah B. Rogers (Bar No. 700207)
    sbr@brewerattorneys.com
    BREWER, ATTORNEYS & COUNSELORS
    750 Lexington Avenue, 14th Floor
    New York, New York 10022
    Telephone: (212) 489-1400
    Facsimile: (212) 751-2849

    Charles J. Cooper*
    ccooper@cooperkirk.com
    Michael W. Kirk*
    mkirk@cooperkirk.com
    J. Joel Alicea*
    jalicea@cooperkirk.com
    Nicole Frazer Reaves
    nreaves@cooperkirk.com
    COOPER & KIRK, PLLC
    1523 New Hampshire Ave., NW
    Washington D.C., 20036
    Telephone: (202) 220-9660

    *Appearing *pro hac vice*

    **ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the following counsel of record in the above cause via Federal Express and electronic mail in accordance with the Federal Rules of Civil Procedure and the Local Rules on this 18th day of March 2019.

William A. Scott
Assistant Attorney General, Of Counsel
New York State Attorney General's Office
Albany Office
The Capitol Albany, New York
12224-0341
Email: William.Scott@ag.ny.gov

/s/ *Stephanie L. Gase*
Stephanie L. Gase

**EXHIBIT 1: DOCUMENTS REQUESTED TO BE PRODUCED**

In accordance with Rule 45 of the Federal Rules of Civil Procedure and the Local Rules of this District, Plaintiff the National Rifle Association of America (the "NRA") hereby request that the recipient of this subpoena, Tokio Marine Kiln Syndicates Limited ("Tokio") produce the following information and documents in keeping with the instructions and definitions provided herein. Tokio is commanded to produce the requested documents at Custom Court Reporting c/o Lexitas, 468 Ashwood Avenue, Utica, NY 13502, on March 29, 2019, at 5:00 p.m.

## I.

### INSTRUCTIONS

1. The requests for documents made herein ("Requests") are incorporated by reference into the subpoena to which they are appended.

2. To the extent that the responding party believes that any of the following requests are vague or ambiguous, the responding party is requested to notify the NRA immediately and a clarification will be provided.

3. These Requests are intended to include all documents in your possession, or subject to your custody or control, whether directly or indirectly. A document is deemed to be within your possession, custody, or control if: (1) it is within your actual possession, custody or control; or (2) it is within the possession of any other person or entity and you have the right to obtain the document from such person or entity, and you: (a) own the document in whole or in part; (b) have a right by contract, statute or otherwise to use, inspect, examine or copy such documents on any term; or (c) as a practical matter, have been able to use, inspect, examine or copy such document when you have sought to do so. For the avoidance of doubt, these Requests are intended to include,

EXHIBIT 1
Page 1

but are not limited to, all documents subject to your control that are stored on any computers, tablets, and cellular devices, including Blackberries, iPhones, or other smart phones.

4.  Unless otherwise specified, the time period covered by each Request is from January 1, 2017 to present.

5.  These Requests seek production of responsive documents in their entirety, without abbreviation, deletion, or redaction. For the avoidance of doubt, each responsive e-mail message should be produced with all of its respective e-mail attachments, and each responsive e-mail attachment should be produced with its respective parent e-mail message and with all e-mail attachments to that respective parent e-mail message. To the extent that you consider an e-mail message and its corresponding e-mail attachment(s) to constitute separate documents, the NRA requests the production of all documents attached to each responsive e-mail message, as well as all e-mail messages for which a responsive document is attached, and all other documents attached to said e-mail messages. For the further avoidance of doubt, all responsive electronic documents should be produced with all their corresponding metadata. To the extent that you consider an electronic document's metadata to constitute a separate document, the NRA requests the production of all metadata that correspond to each responsive electronic document and all electronic documents that correspond to each responsive piece of metadata.

6.  In the event you interpose an objection to the request or requests, you should clearly indicate to which part or portion of the request or requests the objection is directed and provide all documents to which objection is not made as if such part or portion were propounded as a separate request.

7.  In the event that you seek to withhold any document, thing or information on the basis that it is properly entitled to some privilege or other limitation of discovery, you are instructed

EXHIBIT 1
Page 2

to supply counsel for the NRA with a numerical list of document(s) and thing(s) for which privilege or limitation of discovery is claimed, indicating:

    a.    the name of each author, writer, sender, creator or initiator of such document or thing, if any;

    b.    the name of each recipient, addressee, or party for whom such document or thing was intended, if any;

    c.    the date of each such document, if any, or an estimate thereof and so indicated as an estimate if no date appears on said document;

    d.    the general subject matter as described in the document; and

    e.    the claimed grounds for privilege or limitation of discovery.

You are to produce the documents as they are kept in the ordinary course of business, with appropriate markings or designations, so that it may be determined to what request they are intended to be responsive.

## II.

## DEFINITIONS

1.   **"Action"** shall mean the lawsuit styled *National Rifle Association of America v. Andrew Cuomo, both individually and in his official capacity; Maria T. Vullo, both individually and in her official capacity; and the New York State Department of Financial Services*, Civil File No. 18-CV-00566-LEK-CFH, pending in the United States District Court for the Northern District of New York, Albany Division.

2.   **"Adverse Action"** shall mean any of the following actions by DFS: any investigation, inquiry, or issuance of a subpoena, letter request, or other request for information; the issuance or modification of any regulatory rating, assessment, or classification, to the extent that the foregoing could be construed as unfavorable or have unfavorable effects; the conduct of any examination or audit; the restriction or revocation of any assistance or favorable consideration

EXHIBIT 1
Page 3

provided or facilitated by DFS with respect to any government benefit, loan, grant, service, or contract; the imposition of any new or increased fine, penalty, tax, or other financial liability or obligation; and/or, the issuance of any communication that is intended, or reasonably likely, to stigmatize the subject person or Financial Institution or negatively impact the goodwill or business reputation of such person or Financial Institution.

3. **"Affinity Insurance Program"** shall mean any customized insurance program or specialty market solution for affinity organizations and their members or affiliates.

4. **"All"** and **"any"** shall be construed so as to bring within the scope of the request all documents which might otherwise be construed to be outside the scope.

5. **"April 19 Press Release"** shall mean the press release issued April 19, 2018, by the Governor's Office, entitled, Governor Cuomo Directs Department of Financial Services to Urge Companies to Weigh Reputational Risks of Business Ties to the NRA and Similar Organizations.

6. **"April 2018 Letters"** shall mean the guidance letters issued April 19, 2018, by Vullo and DFS directed at the chief executive officers, or equivalents, of all New York State chartered or licensed financial institutions and all insurers doing business in New York.

7. The **"Carry Guard Program"** refers, in part, to insurance coverage (the **"Carry Guard Insurance Product"**) underwritten by Chubb, administered by Lockton Affinity, and offered to enrolled and potential NRA members for part of the calendar year 2017. The Carry Guard Program also includes non-insurance related elements such as firearms safety training offered by the NRA. For the avoidance of doubt, the term "Carry Guard Program" refers to and incorporates the insurance component of the Program (i.e. the Carry Guard Insurance Product) and the non-insurance components of the Program.

EXHIBIT 1
Page 4

8. **"Chubb"** refers to Chubb Group Holdings Inc. and shall include its officers, directors, employees, principals, attorneys or other entities acting on its behalf, and all successor or predecessor entities.

9. **"Chubb Consent Order"** shall mean the Consent Order Under Sections 1102 and 3420 of the Insurance Law entered into between Chubb, Illinois Union, and DFS dated May 7, 2018, which imposes a civil monetary penalty of $1.3 million.

10. **"Communication"** shall mean any oral, written, or recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, emails, text messages, conversations, facsimiles, letters, telegrams, cables, telexes, dialogues, discussions, negotiations, interviews, consultations, telephone calls, agreements, and other understandings, among two or more persons. The term "communication" includes written summaries of any of the foregoing communications.

11. **"Consent Order Managing Agents"** refers to the following managing agents, including each managing agent's officers, directors, employees, principals, attorneys or other entities acting on its behalf, and all successor or predecessor entities: Tokio; Atrium Underwriters Limited; S.A. Meacock & Company Limited; Canopius Managing Agents Limited; Chaucer Syndicates Limited; Argo Managing Agency Limited; AmTrust Syndicates Limited; Brit Syndicates Limited; and Liberty Managing Agency Limited.

12. **"Consent Order Syndicates"** refers to the following underwriters in the Lloyd's of London market subject to the Lloyd's Consent Order, including each underwriter's agents, officers, directors, employees, principals, attorneys, and all successor or predecessor entities: KLN 0510; AUW 0609; SAM 0727; CNP 0958; CSL 1084; ROC 1200; GER 1206; BRT 2987; CNP 4444; and LIB 4472.

EXHIBIT 1
Page 5

13. **"Cuomo"** shall mean Governor of New York Andrew Cuomo, and all other persons acting or purporting to act with, for or on his behalf, including but not limited to consultants, advisors, attorneys, or any person acting in an advisory or consulting capacity.

14. **"Defendants"** shall mean the Defendants in this Action, individually and collectively, each or all of the following persons, or any combination of them acting in concert: DFS; Cuomo; Vullo.

15. **"DFS"** shall mean the New York State Department of Financial Services and all other persons acting or purporting to act with, for or on its behalf, including but not limited to consultants, advisors, attorneys, or any person acting in an advisory or consulting capacity.

16. **"Document(s)"** has the broadest meaning permitted by the Federal Rules of Civil Procedure, including without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, files, printouts, tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription, computer tapes, databases, emails, pictures, photographs, slides, films, microfilms, motion pictures, or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including without limitation originals, drafts, electronic documents with included metadata, and all non-identical copies of each document (which, by reason of any variation, such as the presence or absence of handwritten notes or underlining, represents a separate document within the meaning of this term). The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently in documentary form or not.

EXHIBIT 1
Page 6

17. **"February 23rd Announcement"** refers to MetLife's Twitter announcement on February 23, 2018, that it would end its discount program with the NRA.

18. **"February 26th Announcement"** refers to Lockton's Twitter announcement on February 26, 2018, that it has notified the NRA that it will discontinue providing brokerage services for NRA-endorsed insurance programs.

19. **"Financial Institution"** shall mean any: bank, or agency, branch, or representative office thereof; bank holding company; trust company; check casher; credit union; mutual company, or related charitable foundation; investment company; licensed lender; money transmitter; mortgage banker, broker, originator, or servicer; New York State Regulated Corporation; premium finance agency; safe deposit company; sales finance company; savings bank, thrift, or savings & loan association; and/or, any insurance agent, insurance underwriter, insurance broker, or other insurance-industry firm.

20. **"Gun Promotion Organization"** shall mean any: (a) organization, business entity, or publication that promotes, advocates, campaigns, organizes, lobbies, reports, or publicizes concerning any: firearms, firearm accessories, including but not limited to firearm ammunition, magazines, and gunstocks; or firearm self-defense, including but not limited to firearms liability insurance products; or pro-firearm, pro-right to bear arms or pro-Second Amendment viewpoints or beliefs; or (b) manufactures, designs, buys, sells, trades, or in any way transacts firearms, firearm accessories, including but not limited to, firearm ammunition, magazines, and gunstocks; and includes any person acting, or who has so acted, on behalf of any person of type (a) or (b), including, but not limited to, any of their agents, principals, supervisors, representatives, officers, directors, employees (current and former), independent contractors, stockholders, subsidiaries, divisions, parent corporations, assignees, predecessors, successors, consultants, attorneys and each

EXHIBIT 1
Page 7

and every person acting on their behalf or at their direction or on whose behalf they were acting with respect to the matters referred to herein.

21. **"Illinois Union"** refers to Illinois Union Insurance Company, and shall include its officers, directors, employees, principals, attorneys or other entities acting on its behalf, and all successor or predecessor entities.

22. **"Insurance Law"** shall mean the Insurance Laws of the New York Consolidated Laws and the articles, sections, and provisions contained therein.

23. **"Insurance Program Agreement"** refers to the Amended and Restated Insurance Program Agreement between Lockton Affinity and NRA, effective January 1, 2011.

24. **"Insurance Program"** refers to the program covered by the Insurance Program Agreement and the Management Agreement, through which various NRA Endorsed Insurance Products are offered to NRA members and their families.

25. **"Lloyd's" or "Lloyd's of London"** refers to the society incorporated by the Lloyd's Act of 1871 by the name of Lloyd's, or the "Corporation of Lloyd's".

26. **"Lloyd's America"** refers to Lloyd's America, Inc., and shall include its officers, directors, employees, principals, attorneys and other entities acting on its behalf, and all successor or predecessor entities.

27. **"Lloyd's Consent Order"** shall mean the Consent Order Under Sections 1102 and 3420 of the Insurance Law entered into between KLN 0510, managing agent Tokio Marine Kiln Syndicates Limited; AUW 0609, managing agent Atrium Underwriters Limited; SAM 0727, managing agent S.A. Meacock & Company Limited; CNP 0958, managing agent Canopius Managing Agents Limited; CSL 1084, managing agent Chaucer Syndicates Limited; ROC 1200, managing agent Argo Managing Agency Limited; GER 1206, managing agent AmTrust

EXHIBIT 1
Page 8

Syndicates Limited; BRT 2987, managing agent Brit Syndicates Limited; CNP 4444, managing agent Canopius Managing Agents Limited; and LIB 4472, managing agent Liberty Managing Agency Limited, and DFS dated May 2, 2018, which imposes a civil monetary penalty of $5 million.

28. **"Lockton KC"** refers to Kansas City Series of Lockton Companies, LLC, and shall include its officers, directors, employees, principals, attorneys or other entities acting on its behalf, and all successor or predecessor entities.

29. **"Lockton Affinity"** refers to Lockton Affinity Series of Lockton Affinity, LLC, f/k/a Lockton Risk Services, Inc., and shall include its officers, directors, employees, principals, attorneys or other entities acting on its behalf, and all successor or predecessor entities.

30. **"Lockton Companies"** refers to Lockton Companies, LLC, and shall include its officers, directors, employees, principals, attorneys or other entities acting on its behalf, and all successor or predecessor entities.

31. **"Lockton Consent Order"** shall mean the Consent Order Under Articles 21, 23 and 34 of the Insurance Law entered into between Lockton Affinity, Lockton Companies, and DFS dated May 2, 2018, which imposes a civil monetary penalty of $7 million.

32. **"MetLife"** refers to MetLife, Inc. and any person acting, or who has so acted, on its behalf, including, but not limited to, any of their agents, principals, supervisors, representatives, officers, directors, employees (current and former), independent contractors, stockholders, subsidiaries, divisions, parent corporations, assignees, predecessors, successors, consultants, attorneys and each and every person acting on their behalf or at their direction or on whose behalf they were acting with respect to the matters referred to herein.

EXHIBIT 1
Page 9

33. **"May 9th Announcement"** refers to Lloyd's of London's announcement on May 9, 2018, that it would direct underwriters to terminate all insurance offered, marketed, endorsed or otherwise made available through the NRA in response to DFS inquiries.

34. **"No Cost ArmsCare Firearms Insurance"** and **"ArmsCare Basic"** refer to insurance coverage, procured by Lockton Affinity, available to NRA members in good standing, for up to $2,500 in value against the loss of or damage to such NRA members' legally owned firearms and attached accessories.

35. **"NRA"** shall mean the National Rifle Association of America and America, and includes any of its officers, directors, representatives, employees, and attorneys.

36. **"NRA Endorsed Insurance Products"** refers to the various affinity insurance programs offered to NRA members from the calendar year 2000 to the present, that were created, marketed, and/or administered by Lockton Affinity, or associated with affinity insurance programs managed by Lockton KC. Examples of NRA Endorsed Insurance Products include but are not limited to the Carry Guard Insurance Product, the NRA Retired Law Enforcement Officer Self-Defense Insurance Program, and No Cost ArmsCare Firearms Insurance.

37. **"NRA Insurance Investigation"** shall mean the investigation that was referenced by the *Wall Street Journal* in its October 24, 2017, article titled *New York Regulator Probes NRA-Branded Self-Defense Insurance*, and which led to the Lockton, Chubb, and Lloyd's Consent Orders.

38. The **"NRA Retired Law Enforcement Officer Self-Defense Insurance Program"** refers to insurance coverage, procured by Lockton Affinity, available to law enforcement veterans that covers criminal and civil defense costs and liability for bodily injury and damage caused by legal use of a firearm in self-defense by such law enforcement veterans.

EXHIBIT 1
Page 10

39. **"Person"** and **"persons"** includes natural persons, groups of natural persons acting in a collegial capacity (e.g., a committee or counsel), firms, corporations, partnerships, associations, joint ventures, trusts, and any other incorporated or unincorporated business, governmental, public or legal entity.

40. **"Relating to"** or **"concerning"** shall mean relating to, concerning, reflecting, referring to, having a relationship to, pertaining to, identifying, containing, pertinent to, compromising, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, or constituting, directly or indirectly, in whole or in part, or to be otherwise factually, legally or logically connected to the subject matter of the particular Request.

41. **"Tokio,"** **"You,"** and **"Your"** refers to Tokio Marine Kiln Syndicates Limited and shall include its agents, officers, directors, employees, principals, attorneys or other entities acting on its behalf, and all successor or predecessor entities.

42. **"Vullo"** refers to the Superintendent of the New York State Department of Financial Services, Maria T. Vullo, and all other persons acting or purporting to act with, for or on her behalf, including but not limited to consultants, advisors, attorneys, or any person acting in an advisory or consulting capacity.

43. Whenever appropriate, the singular form of a word shall be interpreted in the plural, and vice-versa, and the words "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the Requests all documents that might otherwise be construed to be outside their scope.

44. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

EXHIBIT 1
Page 11

### III.

### DOCUMENT REQUESTS

**REQUEST NO. 1:**

All documents and communications relating to the May 9th Announcement.

**REQUEST NO. 2:**

All documents relating to Lloyd's decision to direct underwriters to terminate existing NRA insurance-affinity programs or to not to enter into new NRA programs.

**REQUEST NO. 3:**

All communications between You and Lloyd's, Lloyd's America, any other Consent Order Managing Agents, or any Consent Order Syndicates relating to Lloyd's direction to You to discontinue or not renew coverage for any NRA-endorsed insurance programs issued in New York.

**REQUEST NO. 4:**

All documents and communications between You and Lockton relating to Your decision to not renew coverage for any NRA-endorsed insurance programs issued in New York for which You act as carrier.

**REQUEST NO. 5:**

All documents and communications You sent to, received from, or exchanged with any other Consent Order Managing Agents or Consent Order Syndicates relating to Your decision to not renew coverage for any NRA-endorsed insurance programs issued in New York for which You act as carrier.

**REQUEST NO. 6:**

All documents and communications relating to Your decision to enter into the Lloyd's Consent Order, including, without limitation, Your decision to be bound by paragraph 20 of the

EXHIBIT 1
Page 12

Lloyd's Consent Order.

**REQUEST NO. 7:**

All documents and communications You sent to, received from, or exchanged with any Defendant that relate to the NRA or the NRA Insurance Investigation, including, without limitation, any documents produced in response to a subpoena or similar request or demand from DFS.

**REQUEST NO. 8:**

All documents reflecting communications with Defendants regarding Gun Promotion Organizations or the NRA.

**REQUEST NO. 9:**

All documents reflecting or discussing communications by Defendants to or with Lloyd's, Lloyd's America, any other Consent Order Managing Agents, or any Consent Order Syndicates regarding the NRA.

**REQUEST NO. 10:**

All documents and communications You sent to, received from, exchanged with, or prepared for the purpose of dissemination to Lloyd's, Lloyd's America, any other Consent Order Managing Agents, or any Consent Order Syndicates regarding the NRA Insurance Investigation or the NRA-endorsed insurance programs.

**REQUEST NO. 11:**

All documents and communications relating to the April 2018 Letters or the April 19 Press Release.

**REQUEST NO. 12:**

All documents and communications relating to the Chubb or Lockton Consent Orders.

EXHIBIT 1
Page 13

**REQUEST NO. 13:**

All documents and communications relating to the February 23rd Announcement.

**REQUEST NO. 14:**

All documents and communications relating to the February 26th Announcement.

**REQUEST NO. 15:**

Documents sufficient to identify all Affinity Insurance Programs You underwrite, administer, broker, or participate in for New York residents.

**REQUEST NO. 16:**

Documents sufficient to identify any actual or potential Adverse Action by Defendants against You regarding any Affinity Insurance Program.

4841-8009-2808, v. 8

EXHIBIT 1
Page 14
4841-8009-2808.8
2277-05