**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NATIONAL RIFLE ASSOCIATION OF AMERICA,**

                                            **Plaintiff,**

    **-against-**                                                  **1:18-CV-0566**

**ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,**

                                            **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.   INTRODUCTION**

Plaintiff the National Rifle Association of America ("Plaintiff" or "the NRA") commenced this action against defendants New York Governor Andrew Cuomo, both individually and in his official capacity ("Gov. Cuomo"), Superintendent of the New York State Department of Financial Services Maria T. Vullo, both individually and in her official capacity ("Supt. Vullo"), and the New York State Department of Financial Services ("DFS") (collectively, "Defendants"), asserting several federal and New York State constitutional claims, and a New York common law tort claim. *See* Am. Compl., Dkt. No. 37.  After a decision on Defendants' Fed. R. Civ. P. 12(b)(6) motion, *see* 11/06/18 Dec. & Ord., Dkt. No. 56, only Plaintiff's First Amendment claims (Counts 1 and 2) and that portion of its selective

1

enforcement claims (Count 4) seeking money damages for past acts remain to be litigated. *See* Dkt. No. 56.  Defendants now move pursuant to Fed. R. Civ. P. 12(c) to dismiss any 42 U.S.C. § 1983 ("Section 1983") claims against DFS because DFS is not a "person" subject to liability under Section 1983; to dismiss all money damage claims against DFS, and against Gov. Cuomo and Supt. Vullo in their official capacities, as barred by the Eleventh Amendment; to dismiss Count 4 for failing to state a legally cognizable selective enforcement claim; to dismiss any remaining selective enforcement claims against Gov. Cuomo for lack of personal involvement; to dismiss any remaining selective enforcement claims against Supt. Vullo on the grounds that she is shielded from liability by the doctrine of absolute immunity; and to grant Gov. Cuomo and Supt. Vullo qualified immunity on any remaining selective enforcement claims.  Dkt. No. 63.  The NRA opposes some of Defendants' contentions, *see* Dkt. No. 69, and Defendants have filed a reply.  Dkt. No. 71.  The Court has elected to decide the motion without oral argument.  For the reasons that follow, Defendants' motion in granted in part and denied in part.

## II.   STANDARD OF REVIEW

The standard of review under to Rule 12(c) is identical to that under Rule 12(b)(6). *See Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015); *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  The Court applies the Rule 12(b)(6) standard of review set forth in the November 6, 2018 Decision and Order, *see* Dkt. No. 56, at 2-3, and need not repeat it here.

## III.  BACKGROUND

The Court presumes familiarity with the allegations in the Amended Complaint, *see*

2

Am. Compl., Dkt. No. 37, which the Court discussed in detail in the November 6, 2018 Decision and Order. *See* Dkt. No. 56, *passim*. The Court will set forth below only those factual allegations relevant to the decisions made here.

## IV. DISCUSSION

### a. Section 1983 claims against DFS

Defendants seek to dismiss all Section 1983 claims against DFS on the grounds that DFS is not a "person" under §1983. Def. Mem. L. at 4 (citing *Will v. Michigan Dep't. of the State Police*, 491 U.S. 58, 71 (1989) (the state is not a "person" under 42 U.S.C. §1983); *Cunningham v. DOCS*, 2009 U.S. Dist. LEXIS 42778, *5 (S.D.N.Y. May 20, 2009) (an agency of New York State is not a "person" under 42 U.S.C. §1983)). In response, Plaintiff indicates that it agrees to withdraw its Section 1983 claims against DFS. Pl. Mem. L., at 24.[1] Accordingly, all Section 1983 claims against DFS are dismissed as withdrawn.

### b. Money Damage Claims & the Eleventh Amendment

Next, Defendants move to dismiss all money damage claims against DFS, and against Gov. Cuomo and Supt. Vullo in their official capacities, as barred by the Eleventh Amendment. Def. Mem. L. at 4-5. Plaintiff offers no opposition to this portion of Defendants' motion. These claims for money damages against these defendants are deemed abandoned and, therefore, subject to dismissal on this basis. *See Thurmand v. Univ. of Connecticut*, No. 3:18-CV-1140 (JCH), 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019)("Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them.")(collecting cases); *Russell v. N.Y.*

---

[1] Plaintiff notes that the Amended Complaint also contains claims of state constitutional law violations separate from the Section 1983 claims alleging federal constitutional violations.

3

*Univ.*, No. 1:15-cv-2185, 2017 U.S. Dist. LEXIS 111209, at *99 (S.D.N.Y. July 17, 2017)(failure to address defendant's arguments for dismissal of claims deems those claims abandoned).

Moreover, the Eleventh Amendment bars claims for money damages against DFS, and against Gov. Cuomo and Supt. Vullo in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Will*, 491 U.S. at 64; *Cory v. White*, 457 U.S. 85, 90-91 (1982)*; Kentucky v. Graham,* 473 U.S. 159, 167-68 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 95 (2d Cir. 1990), *cert. denied*, 501 U.S. 1211 (1991); *Hurst v. Mollnow*, No. 9:16-CV- 1062 (DNH/TWD), 2018 WL 4178226, at *10 (N.D.N.Y. July 20, 2018), *report and recommendation adopted*, 2018 WL 4153926 (N.D.N.Y. Aug. 30, 2018); *Newman v. Hoyt*, No. 3:17-CV-0808 (TJM/DEP), 2017 WL 4797844, at *3 (N.D.N.Y. Sept. 19, 2017), *report and recommendation adopted*, 2017 WL 4803914 (N.D.N.Y. Oct. 23, 2017).  Accordingly, Defendants' motion in this regard is granted and all money damage claims against DFS, and against Gov. Cuomo and Supt. Vullo in their official capacities, are dismissed.

### c. Selective Enforcement Claims

Defendants argue that Plaintiff fails to plead facts plausibly supporting actionable selective enforcement claims under federal and New York equal protection law.  Plaintiff alleges in Count 4 that Defendants engaged in selective enforcement of the New York insurance laws ("Insurance Law") in violation of the NRA's rights to equal protection of law as secured by the Fourteenth Amendment to the United States Constitution, and by Article 1, Section 11 of the New York Constitution.  Am. Compl. ¶¶ 107-113.  In this regard, the

NRA alleges that Defendants "knowingly and willfully violated the NRA's equal protection rights by seeking to selectively enforce certain provisions of the Insurance Law against Lockton's affinity-insurance programs for the NRA.  Meanwhile, other affinity-insurance programs that were identically (or at least similarly) marketed by Lockton, but not endorsed by 'gun promotion' organizations, have not been targeted by DFS's investigation." *Id.* at ¶ 108.  Plaintiff further contends that "Defendants' selective enforcement of the Insurance Law against the NRA and its business partners has been knowing, willful, arbitrary, capricious, unreasonable, discriminatory, and undertaken in bad faith and without a rational basis," *id.* at 109, and that this selective enforcement "is based on the NRA's political views and speech relating to the Second Amendment."  *Id.* ¶ 110.

A plaintiff alleging a selective enforcement claim under either federal or New York equal protection must show that (1) "'[it] was treated differently from other similarly situated businesses'" and (2) "'such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 40 (2d Cir. 2018) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)); *see Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)(equal protection claims (including claims for selective enforcement) under the New York State Constitution are analyzed using the same framework as claims under the federal Equal Protection Clause).  Defendants argue that the selective enforcement claims must be dismissed because the Amended Complaint lacks plausible factual allegations that similarly

5

situated organizations exist. *See* Def. Mem. L., at 11.[2]

> In a selective enforcement claim, "plaintiffs 'must identify comparators whom a prudent person would think were roughly equivalent[, but] [p]laintiff[s] need not show an exact correlation between [themselves] and the comparators.'" *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) (quotation omitted). "Put another way: 'The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.... Exact correlation is neither likely or necessary, but the cases must be fair congeners.'" *Id.* (quoting *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 463 (E.D.N.Y. 2002)). At the motion to dismiss stage, "a court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. Thus, '[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim.'" *Id.* at 698 (quotation omitted).

*Lanning v. City of Glens Falls*, No. 116-CV- 00132 (MAD/DJS), 2017 WL 922058, at *8 (N.D.N.Y. Mar. 8, 2017), *aff'd*, 908 F.3d 19 (2d Cir. 2018)

The Amended Complaint details several affinity groups operating in New York whose insurance programs allegedly resemble those of the NRA, in some instances containing language identical to the allegedly-violative language associated with the NRA programs, that were not targeted by the DFS. *See* Am. Compl. at ¶¶ 36,[3] 59.[4] Plaintiff argues that

---

[2]In this regard, Defendants argue:

[W]hile the NRA attempts to identify other organizations whose insurance programs, it claims, contain similar violations, *see* Dkt. No. 37 at ¶ 59, no rational jury could find that those other organizations are similarly situated. This is so because none of their alleged violations include insurance coverage for criminal liability resulting from the use of a firearm—a far more serious violation of the Insurance Law than those violations identified in the Amended Complaint.

Def. Mem. L., at 11.

[3]Plaintiff alleges in paragraph 36 of the Amended Complaint that "[w]ithin weeks of commencing its investigation [of the NRA Carry Guard insurance program], DFS began to target [the NRA's] insurance

(continued...)

6

"although certain provisions of the Insurance Law do, purportedly, restrict firearm-related coverage in the manner Defendants recite, *the Amended Complaint does not allege selective enforcement of any firearm-related insurance regulation*." Pl. Mem. L. at 7 (emphasis in original). Rather, Plaintiff contends, the Amended Complaint contains sufficient allegations that Defendants enforced certain Insurance Law provisions against Lockton in relation to its NRA-endorse affinity programs but did not enforce these same provisions against the comparator organizations.[5]

The allegations that the comparators had affinity-insurance programs that operated in ways in which non-firearm-related Insurance Law provisions were enforced against the NRA is enough to plausibly establish that the NRA and the comparator-organizations were similarly situated - at least to the extent they all maintained affinity-insurance programs that violated certain non-firearm-related Insurance Law regulations. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011)("[I]t is plausible that a jury could ultimately determine that the comparators are similarly situated.").

---

[3](...continued) programs that had nothing to do with firearms, and instead provided coverage similar or identical to coverage endorsed by other New York affinity organizations such as the New York State Bar Association, the New York City Bar, the National Association for the Self-Employed, the New York Association of Professional Land Surveyors, and the New York State Psychological Association."

[4]Plaintiff identifies Lockton affinity-insurance programs administered for the American Optometric Association through AOAExcel ("AOAExcel"), the Veterans of Foreign Wars ("VFW"), Moose International Inc. ("Moose"), and the Professional Photographers of America ("PPA") operated in ways that were deemed to violate the Insurance Law in regard to the programs administered for the NRA.

[5]Plaintiff points to Insurance Law § 2116 (prohibiting compensation of an unlicensed insurance broker based on actual premiums collected); § 2117 (disallowing acting for or aiding an unauthorized insurer from providing coverage to New York residents that may not be offered in the New York State excess like market); § 2118 (imposing a duty to properly secure declinations from authorized insurers for each insured); § 2122(a)(1) (precluding referencing an insurer's financial condition by referring to its AM Best rating); § 2122(a)(2) (mandating that insurance producers shall not call attention to any unauthorized insurers); and § 2324(a) (restricting, *inter alia*, offering membership with the purchase of an insurance policy when the benefit is not listed in the policy and exceeds $25 in market value).

Defendants also argue that the selective enforcement claims must be dismissed because the Amended Complaint lacks plausible allegations that Defendants had knowledge of the purported Insurance Law violations by the comparators. The Court agrees.

"[M]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999)(citing *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)). This is because "selective prosecution implies that a selection has taken place." *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 469, (1996)). "Absent a showing that [a defendant] knew of other violations, but declined to prosecute them, [a plaintiff] would ordinarily be unable to show that it was treated selectively." *Id.* (quoting *Armstrong*, 517 U.S. at 470). Thus, "a plaintiff 'ordinarily cannot establish an equal protection violation unless it shows that the [defendant] consciously applied a different standard of enforcement to similarly[-]situated [entities].'" *Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 571 (S.D.N.Y. 2015), *aff'd*, 644 F. App'x 42 (2d Cir. 2016) (quoting *LaTrieste Rest.*, 188 F.3d at 70). To make this showing, "the plaintiff must demonstrate that the defendant was aware of similarly-situated entities, and failed to take comparable action against them." *Id.* at 571-72 (citing, *inter alia*, *Diesel v. Town of Lewisboro*, 232 F.3d 92, 104 (2d Cir. 2000) ("Knowledge is ordinarily required to establish the first element of a selective treatment claim.")(brackets and internal quotation marks omitted)).

After the Court's November 6, 2018 Decision and Order limiting Count 4 to claims seeking money damages for Defendants' past acts of selective enforcement, and the

8

application of the Eleventh Amendment as discussed above, the only defendants remaining on Count 4 are Gov. Cuomo and Supt. Vullo in their individual capacities.  Plaintiff's conclusory statements in Count Four that "Defendants" acted "knowingly and willfully," Dkt. No. 37 at ¶¶ 108-109, is insufficient.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Mere "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action do not suffice, nor does a complaint that makes "naked assertion[s]" devoid of "further factual enhancement." *Id.*  Other than Plaintiff's conclusory statements of Defendants' scienter, the Amended Complaint is devoid of factual allegations indicating that either Gov. Cuomo or Supt. Vullo had knowledge of the specific violations identified in paragraph 59 of the Amended Complaint.  *See generally*, Dkt. No. 37.

     Plaintiff's argument that "Defendants' own public statements make clear that their selective-enforcement actions were intended to injure the NRA because of its political views," Pl. Mem L. at 8, fails to provide a factual basis upon which to conclude that either Gov. Cuomo or Supt. Vullo were aware of the comparators' violations of the non-firearm-related Insurance Law provisions enforced against Lockton.  Even assuming that Gov. Cuomo and Supt. Vullo's public statements portend their intention to harm the NRA for its gun-promotion efforts and advocacy, Plaintiff fails to point to specific statements plausibly supporting the inference that either defendant knew of similar non-firearm-related

Insurance Law violations by the comparators but consciously declined to prosecute them. Similarly, Plaintiff's argument that it is entitled to an inference that Defendants intended to harm the NRA based on the temporal proximity between the public statements and the DFS enforcement action fails to support an inference that either Gov. Cuomo or Supt. Vullo were aware of similar violations by the comparators yet failed to take comparable action against them.

Plaintiff's argument that Defendants' knowledge of the comparators' violations of the Insurance Law can be inferred from "the public record in this case" is without merit. *See* Pl. Mem. L. at 10. Plaintiff points to a portion of the Lockton Consent Order that required Lockton to provide DFS with a report that detailed "any additional violations of the Insurance Law, or regulations promulgated thereunder, that Lockton has identified," *see* Pl. Mem. L., at 10, n. 46 (citing and quoting from Dkt. No. 37-4, at 17[6]), and argues that this provision "contemplated the existence of other violations" thereby providing a basis to infer Defendants' knowledge of the comparators' violations. Pl. Mem. L., 9-10. The Court disagrees that this provision supplies factual allegations supporting a plausible inference that either Gov. Cuomo or Supt. Vullo were aware of the comparators' Insurance Law violations. The cited-portion of the Lockton Consent Order does not indicate that either defendant was aware of Insurance Law violations in the insurance programs of other entities, but merely requires Lockton to report on other such violations in which it might have been involved. As Defendants argue, "that Lockton may have provided information

---

[6] Plaintiff cites Dkt. No. 37-4, at 17, which provides: "Lockton agrees to . . . provid[e] a . . . complete report . . . within 60 days of [May 2, 2018,] . . . that reports on[] . . . any additional violations of the Insurance Law, or regulations promulgated thereunder, that Lockton has identified[.]"

10

regarding other potential insurance law violations *after* the Consent Order was executed does not indicate that DFS was aware of such potential violations when the investigation into Lockton and its NRA affinity insurance products was *commenced*." Def. Reply Mem. L., at 5 (emphasis in original).  The cited-provision of the Lockton Consent Order does not provide facts from which a plausible inference could be drawn that either Gov. Cuomo or Supt. Vullo knew of other violations but declined to prosecute them.  Further, a reasonable inference that could be drawn from this provision of the Lockton Consent Order is that DFS was attempting to learn of other violations of the Insurance Law for purposes of prosecution.

Inasmuch as Plaintiff has failed to specifically plead that either Gov. Cuomo or Supt. Vullo knew of non-firearm-related Insurance Law violations by the comparators when DFS commenced its investigation into the NRA's insurance programs, or allege facts plausibly supporting the conclusion that these defendants were aware of such violations by the comparators yet consciously declined to enforce the Insurance Law against the comparators, the equal protection claims must be dismissed. The dismissal is without prejudice to re-pleading.

### d. Remaining Issues

Because the selective enforcement claims have been dismissed, the Court declines to address whether the Amended Complaint adequately alleges Gov. Cuomo's personal involvement in this claim; whether Supt. Vullo is entitled to absolute immunity on this claim; and whether Gov. Cuomo and Supt. Vullo are entitled to qualified immunity on this claim. Accordingly, Defendants' motion in these respects is denied with leave to renew if viable

11

selective enforcement claims are re-pled.

## V. CONCLUSION

For the reasons discussed above, Defendants' Rule 12(c) motion (Dkt. No. 63) is

**GRANTED in part** and **DENIED in part**.  In this regard,

- Defendants' motion to dismiss all Section 1983 claims against DFS is granted, and all Section 1983 claims against DFS are **DISMISSED as withdrawn**; and

- Defendants' motion to dismiss all money damage claims against DFS, and against Gov. Cuomo and Supt. Vullo in their official capacities, is granted, and  all money damage claims against DFS, and against Gov. Cuomo and Supt. Vullo in their official capacities, are **DISMISSED**; and

- Defendants' motion to dismiss Count 4 is granted, and Plaintiff's selective enforcement claims are **DISMISSED without prejudice to repleading**; and

-  Defendants' motions to dismiss Gov. Cuomo and Supt. Vullo from any remaining selective enforcement claims are denied with leave to renew if viable selective enforcement claims are re-pled.

**IT IS SO ORDERED.**

Dated: May 9, 2019

Thomas J. McAvoy
Senior, U.S. District Judge