UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA,<br><br>      Plaintiff,<br><br> v.<br><br>ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,<br><br>      Defendants. | Case No. 18 Civ. 566 (TJM)(CFH) |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR RECONSIDERATION

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Defendant Maria Vullo*

LETITIA JAMES
Attorney General of the State of New York
The Capitol Albany
New York 12224-0341
(518) 776-2255

*Attorneys for Defendants Andrew Cuomo and
The New York State Department of Financial Services*

TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.     THE NRA HAS NOT ESTABLISHED THAT VULLO'S DEPOSITION IS NECESSARY, AS IS REQUIRED TO DEPOSE A HIGH-LEVEL OFFICER ........................................................................................................... 2

    II.    EVEN IF VULLO'S DEPOSITION IS PERMITTED, THE NRA CANNOT REWRITE THE COURT'S ORDER TO DRASTICALLY EXPAND THE DEPOSITION'S SCOPE ........................................................................... 3

        A.    The Court Recognized that the NRA Could Only Point to a Single Email to Establish a Need for the Deposition ........................... 4

        B.    The NRA's Attempt to Rewrite this Court's Ruling and Conduct a "Fishing Expedition" Deposition Must be Rejected ................................ 5

        C.    At Most, the NRA Must Choose to Either Conduct a Single Deposition Limited to the Specific Topics the Court Found Uniquely in Vullo's Knowledge or Attempt to Make a More Fulsome Showing at a Later Stage ....................................................................................... 7

CONCLUSION ............................................................................................................................... 9

## PRELIMINARY STATEMENT

In the guise of opposing a motion for reconsideration, the NRA is trying to exploit the extremely-narrow basis it presented to seek an extraordinary deposition of a high-ranking official. It seeks to convert the deposition into a roving license to question a high-ranking official at will about her decision-making processes and mental impressions—exactly what the rule was designed to prevent. Having convinced this Court that deposing Maria Vullo, a high-ranking official, was appropriate on the *limited* basis of a single email with the California insurance department, the NRA now seeks to engage in a broad "fishing expedition" deposition of every communication Ms. Vullo ever had and her "motivations" for every such communication, even as the NRA's selective prosecution claim has now been dismissed.

The NRA's request to depose Ms. Vullo is premature in the first place given the limitations on deposing high-ranking officials. The NRA originally styled its premature request as a motion for expedited discovery, but the Court has since issued a scheduling order and the NRA *admits* it is in no great hurry to depose Ms. Vullo. *See* Transcript at 11.[1] Ms. Vullo's deposition should only occur if (and after) depositions of lower-ranking officials establish that she has unique personal knowledge relevant to the remaining claims in this case.

If the Court nonetheless adheres to its decision permitting the NRA to depose Ms. Vullo now, the Court should clarify that the deposition is limited to the narrow grounds the NRA put forward to overcome a high-ranking official's "immunity from depositions"—namely the communication between Ms. Vullo and California regulators. And the NRA must be barred from any further bites at the apple.

---

[1] References to "Transcript," refer to the transcript of an argument held before this Court on March 13, 2019, a copy of which was submitted as Exhibit A to Defendants' motion for reconsideration.

# ARGUMENT

## I. The NRA Has Not Established that Vullo's Deposition Is Necessary, as Is Required to Depose a High-Level Officer

The NRA cannot dispute that it is unprecedented to order a deposition of a high-ranking official *before* other deponents establish the need to depose the high-ranking official, warranting reconsideration. Even in the cases the NRA located where courts ordered a high-ranking official deposed, the courts did so *only after* the depositions of other witnesses. Only after the record is replete with evidence from non-high-ranking officials is a court well-positioned to analyze whether the knowledge the high-ranking official is *alleged* to uniquely possess is, *in fact*, uniquely in her or his control. *See, e.g.*, *State v. U.S. Dep't of Commerce*, 333 F. Supp. 3d 282, 289 (S.D.N.Y. 2018) (ordering deposition of Secretary Ross only after his "three closest and most senior advisors who advised on the citizenship question . . . . testified repeatedly that Secretary Ross was the only person who could provide certain information central to Plaintiffs claims"), *vacated as moot*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019); *Judicial Watch v. U.S. Dep't of State*, No. CV 13-1363, 2016 WL 10770466, at *5 (D.D.C. Aug. 19, 2016) ("[Clinton's] closest aides at the State Department, in their depositions in this case, did not have personal knowledge of Secretary Clinton's purpose in using the system.").

Here, neither party has taken a single deposition in this case. It is premature to determine whether non-high-ranking deponents can provide the evidence the NRA seeks. It is very possible—indeed, likely—that others at DFS who are not high-ranking are equally if not more knowledgeable about matters relevant to the NRA's claims in this case. Moreover, the NRA's motion was based, in part, on its alleged selective prosecution claim—which was just dismissed by the Court. [Dkt. 112.]

Accordingly, the Court should deny the NRA's motion to depose Ms. Vullo "without prejudice to renew upon a greater showing of [her] exclusive personal knowledge."[2] *New York v. Oneida Indian Nation of New York*, No. 95-CV-0554(LEK/RFT), 2001 WL 1708804, at *4 (N.D.N.Y. Nov. 9, 2001) (denying *without prejudice* leave to depose Secretary to the Governor and Governor Cuomo), *aff'd sub nom. State of New York v. Oneida Indian Nation of New York*, No. 1:95CV554 (LEK/RFT), 2007 WL 2287878 (N.D.N.Y. Aug. 7, 2007).

## II. Even if Vullo's Deposition Is Permitted, the NRA Cannot Rewrite the Court's Order to Drastically Expand the Deposition's Scope

This Court's decision was grounded in a specific email communication which, the Court found, established that Ms. Vullo has unique information. If Ms. Vullo is to be deposed, her deposition must be limited in scope to the communication reflected in that email. Yet the NRA's brief rewrites the Court's decision and claims a "broad" and expansive right to depose Ms. Vullo on "communications with out-of-state regulators *and other parties*, as well as her *motivations* behind those communications." [Dkt. 103 at 7, 11 (emphasis added).] The NRA asserts, without support, that it cannot be limited to "just the topic of Vullo's out-of-state regulatory communications"—though such communication was the only specific topic the NRA identified to the Court. *Id.* at 11-12. The NRA's approach is at odds with the law protecting high-ranking officials and the Court's ruling.

---

[2] The law is clear that the NRA, as the party seeking this extraordinary deposition, has the burden of establishing its necessity. *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) ("to depose a high-ranking government official, a party must demonstrate exceptional circumstances"). To the extent the Court's decision placed the onus on Defendants, as the party "opposing the deposition," to "demonstrate[] that the proposed deponent does not possess unique information not obtainable from another source or discovery method," that was error requiring reconsideration. [Dkt. 89 at 8.]

3

### A. The Court Recognized that the NRA Could Only Point to a Single Email to Establish a Need for the Deposition

The Court appropriately recognized that it was the NRA's burden to "identify the specific questions or topics about which it seeks to depose Ms. Vullo," consistent with Second Circuit precedent. [Dkt. 89 at 9]; *see Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (a party seeking to depose a high-ranking official must "identify with particularity the information they need[]"); *Kingsley v. N.Y.C. Police Dep't*, No. 07 CIV. 7629 (NRB), 2008 WL 5215648, at *2 (S.D.N.Y. Dec. 9, 2008) (party seeking high-ranking official deposition must delineate "the topics on which she wishes to examine each prospective deponent").

The Court also found that the NRA, in its initial written submissions, did not meet its burden to identify specific topics warranting deposing Ms. Vullo: the NRA's "memoranda in support of its motion are lacking in this respect." [Dkt. 89 at 9-10.] Nonetheless, the Court held that the NRA cured this deficiency at oral argument. At argument, "plaintiff's counsel pointed to an e-mail between Ms. Vullo and a California government official." [*Id.* at 10]; *see also* Transcript at 20-21 (describing August 7, 2018 email communication between Ms. Vullo and Dave Jones at the California Insurance Department). Indeed, the transcript reflects that, in stark contrast to the NRA's current position, at the March 13, 2019 court conference, the NRA's counsel *repeatedly* pointed to that email as the basis to depose Ms. Vullo. Transcript at 7, 8, 17, 21.

As a result, the Court permitted the NRA to depose Ms. Vullo on this limited topic: to probe "what she [Vullo] said with respect to the Insurance Department of California with regard to the NRA's Carry Guard program." [Dkt. 89 at 10-11.] The Court also found insufficient the alternative of deposing "the out-of-state officials with whom plaintiff alleges Ms.

4

Vullo was communicating," further indicating that the scope of Ms. Vullo's purportedly-unique information was her communication with California government officials. [*Id.* at 12.]

Yet the NRA now insists that it should not be limited by the single email *it chose* to present to the court. It claims this email is "but one example" of Ms. Vullo's communications. [Dkt. 103 at 11-12 & n.45.] This is the same double-talk that the Court found "lacking" in the NRA's initial briefing. [Dkt. 89 at 9-10.] The NRA has the burden to "identify the specific questions or topics," that are uniquely in Ms. Vullo's knowledge to overcome her immunity from deposition. [*Id.* at 9]; *Lederman*, 731 F.3d at 203 ("identify with particularity"). It cannot meet that burden by claiming there may be other, unspecified, communications. Moreover, the NRA has *never* pointed to any other specific topic to support deposing Ms. Vullo, though it now has had three opportunities to do so—its original brief, the March 13 conference, and its reconsideration brief. A deposition of a high-ranking official is not a fishing expedition.

The NRA asks this Court to *again* excuse its failure to provide the required specifics by making vague claims about the insufficiency of Defendants' discovery responses. The NRA made a motion to compel, which was opposed by Defendants. The Court will resolve that motion in due course. But the NRA cannot have it both ways, insisting on a deposition before document discovery is completed, and then claiming it cannot meet its burden to establish the propriety of a high-ranking official's deposition because there is outstanding document discovery.

**B.  The NRA's Attempt to Rewrite this Court's Ruling and Conduct a "Fishing Expedition" Deposition Must be Rejected**

Here, the *only* information that the NRA even arguably was able to "identify with particularity" was a single email indicating that Ms. Vullo spoke to someone at the California insurance department. From that single email, the NRA claims this Court permitted it to depose

5

Ms. Vullo on "communications with out-of-state regulators *and other parties*, as well as her *motivations* behind those communications." [Dkt. 103 at 7 (emphasis added).] This expansive read must be rejected.

First, California is the only "out-of-state regulator" that the NRA identified as having a communication with Ms. Vullo that is uniquely in her knowledge.[3] More fundamentally, "other parties," by its terms, means everyone in the whole world. This is no limitation at all. The NRA seeks to probe every communication Ms. Vullo has had. Yet the NRA has made no showing that Ms. Vullo has any unique knowledge about communications with "other parties" or any government regulator other than the California regulators.

Nor can the NRA depose Ms. Vullo on her "motivations" for communicating with California (or any other party). A principal basis for the high-ranking official exception, as this Court recognized, is to "protect the mental processes of executive and administrative officers in order to promote open channels of communication within government." [Dkt. 89 at 4 (internal quotations omitted).] Indeed, where courts permit depositions of high-ranking officials, it is generally because the deposing party *disclaims* seeking to probe mental processes. *See SEC v. Comm. on Ways & Means*, 161 F. Supp. 3d 199, 252 (S.D.N.Y. 2015) ("There is no evidence here, however, that the SEC intends to question Sutter about anyone's decision-making process."). *State v. United States Dep't of Commerce*, cited in the Court's order, involved the rare case where a wealth of record evidence demonstrated that the high-ranking official, Secretary Ross, was "personally and directly involved in the decision, and the unusual process leading to it, to an *unusual degree*." 333 F. Supp. 3d 287 (emphasis added). Here there is no

---

[3] "In the interest of full disclosure to the Court," in their opening brief, Defendants identified "a series of form letters sent under Ms. Vullo's signature" which were sent to regulators in a number of others states. [Dkt 95-1 at 7 n.6.] The NRA, in opposition, never claimed those form letters demonstrate relevant information uniquely in Ms. Vullo's knowledge, nor could they.

6

such evidence. And Secretary Ross was never deposed because the trial court's order was stayed by the Supreme Court and the deposition became moot. 351 F. Supp. 3d 502 (S.D.N.Y. 2019) (vacating as moot order permitting Ross deposition).

Moreover, the NRA cannot establish that Ms. Vullo's motivations in communicating with California regulators are relevant, both because its selective enforcement claim has been dismissed and because its remaining claims are not based on communications with out-of-New York regulators. At oral argument, the NRA's counsel claimed the California "email shows that she's having discussions with Mr. Jones related to investigation of the Carry Guard program, which is part of *our selective enforcement allegations*." Transcript at 7. Last Friday, the Court dismissed the NRA's selective enforcement claim, so the NRA's stated basis to depose Ms. Vullo based on the California communication no longer exists. [Dkt. 112.] And, as detailed in Defendants' motion for reconsideration and unrebutted by the NRA, the communication occurred *after* the press releases at issue, after the enforcement action, and after the Consent Orders and guidance letters. [Dkt. 95-1 at 5-6.]

### C. At Most, the NRA Must Choose to Either Conduct a Single Deposition Limited to the Specific Topics the Court Found Uniquely in Vullo's Knowledge or Attempt to Make a More Fulsome Showing at a Later Stage

While the NRA originally styled its premature request as motion for expedited discovery to file a preliminary injunction motion, the NRA's papers make no mention of any proposed motion. Indeed, at oral argument, the NRA's counsel made clear the NRA has no imminent plans to depose Ms. Vullo, even if the motion were granted: "we're not sitting here today and gonna say that, you know, we need a deposition of her tomorrow. We would like to get some documents after Your Honor responds on the motion to compel . . . ." Transcript at 18.

7

As even the NRA admits, there is no need for Ms. Vullo's deposition to occur right now. Fairness and the high-level official doctrine require the NRA to make a choice, **EITHER**:

(1) Depose Ms. Vullo now concerning only the California email communication the NRA presented to the Court to make its showing or such other limited, specific topics the Court finds that the NRA has established are within Ms. Vullo's unique knowledge. Under this approach, the NRA should not be permitted "two bites at the apple," as this Court recognized, because it is the NRA's choice to insist on a deposition before the record is developed. Transcript at 16 ("understand that we are not bringing the same witness back twice if I determine you can depose her").

**OR**

(2) Await further discovery and then, if that discovery provides specific evidence of a fuller range of specific topics uniquely in Ms. Vullo's knowledge, the NRA can make a motion to this Court detailing such evidence as a basis to depose Ms. Vullo on that larger topic list, and, if the Court agrees after full briefing, the NRA can depose Ms. Vullo on those topics demonstrably in her unique knowledge.

What the NRA *cannot* be permitted to do is engage in a fishing expedition and conduct a nearly-limitedness deposition of Ms. Vullo, without ever demonstrating such wide swath of information is uniquely within Ms. Vullo's personal knowledge. And the NRA certainly should not be permitted to depose Ms. Vullo based on the limited discovery to date and then claim, at a future date, that additional discovery provides a basis to depose Ms. Vullo again.

If the NRA is making a strategic choice to depose Ms. Vullo before obtaining a fuller record, the consequences of that choice are (a) the NRA must be limited to the *specific*

*topics* the evidence to date demonstrates is within Ms. Vullo's unique personal knowledge and (b) the NRA must not be permitted to depose this high-level official a second time.

## CONCLUSION

For the reasons detailed above and in the opening brief, this Court should grant the motion for reconsideration and hold that, at this stage, the NRA has not made the necessary showing under the high-ranking government official jurisprudence to depose Ms. Vullo. In the alternative, the Court should limit Ms. Vullo's deposition to the limited topics on which it found that the NRA demonstrated that Ms. Vullo has unique personal knowledge—namely the communication with California regulators—and order that the NRA will not be permitted to depose Ms. Vullo a second time regardless of future discovery.

Dated: New York, New York
May 13, 2019

        EMERY CELLI BRINCKERHOFF
          & ABADY LLP

By:     */s/ Andrew G. Celli, Jr.*
       Andrew G. Celli, Jr.
       Elizabeth Saylor
       Debra L. Greenberger
       600 Fifth Avenue
       New York, New York 10020
       (212) 763-5000

*Attorneys for Defendant Maria Vullo*

LETITIA JAMES
Attorney General of the State of New York
The Capitol Albany, New York 12224-0341
William A. Scott
Assistant Attorney General, of Counsel
(518) 776-2255

*Attorneys for Defendants Andrew Cuomo and
The New York State Department of Financial
Services*