**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

NATIONAL RIFLE ASSOCIATION OF
AMERICA,

                                        Plaintiff,

          v.                                                         1:18-CV-566
                                                                        (TJM/CFH)
ANDREW CUOMO, MARIA T. VULLO, THE NEW
YORK STATE DEPARTMENT OF FINANCIAL
SERVICES,

                                        Defendants.

_____

**APPEARANCES:**                        **OF COUNSEL:**

Brewer Attorneys & Counselors           SARAH ROGERS, ESQ.
750 Lexington Avenue, Floor 14          WILLIAM A. BREWER, III, ESQ.
New York, New York 10022
Attorneys for plaintiff

Cooper & Kirk, PLLC                     CHARLES J. COOPER, ESQ.
1523 New Hampshire Avenue, N.W.         HAROLD S. REEVES, ESQ.
Washington D.C. 20036                   JOSE JOEL ALICEA, ESQ.
Attorneys for plaintiff                 MICHAEL W. KIRK, ESQ.

Office of Attorney General              ADRIENNE J. KERWIN, ESQ.
State of New York                       WILLIAM A. SCOTT, ESQ.
The Capitol                             HELENA O. PEDERSON, ESQ.
Albany, New York 12224                  MICHAEL G. MCCARTIN, ESQ.
Attorneys for defendant Andrew
Cuomo, Maria T. Vullo, the New
York State Dept. of Fin. Svcs.

Emery Celli Brinckerhoof & Abady LLO    DEBRA L. GREENBERGER, ESQ.
600 Fifth Avenue, 10th Floor            ELIZABETH S. SAYLOR, ESQ.
New York, New York 10020
Attorneys for defendant Maria T. Vullo

New York State Department of Financial          NATHANIEL J. DORFMAN, ESQ.
Services
One State Street
New York, New York 10004-1511
Attorneys for defendant New York
State Dept. of Fin. Svcs.

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER

Presently pending before the Court is plaintiff's Motion to Compel (Dkt. No. 73)

and defendants' Governor Andrew Cuomo ("Cuomo"), Maria T. Vullo ("Vullo"), and The

New York State Department of Financial Services ("DFS") (collectively, "defendants"),

Motion for a Protective Order (Dkt. No. 74).  Defendants opposed the Motion to

Compel.  Dkt. No. 79.  Plaintiff opposed the Motion for a Protective Order.  Dkt. No. 83.

Both parties filed replies.  Dkt Nos. 81, 84.[1]  For the reasons that follow,

plaintiff's motion to compel and defendants' motion for a protective order are denied

with leave to renew.


## I.  Background

For a more detailed review of the facts underlying this action, reference is made

to the amended complaint.  Dkt. No. 37.  In its November 16, 2018, Decision & Order,

the Court (1) dismissed without prejudice the following claims: (a) Count 3, freedom of

association pursuant to the First and Fourteenth Amendments; (b) Count 5, conspiracy

---

[1]  Also pending before the Court is a Motion for Reconsideration and a Motion to Compel nonparty
Lloyd's of London entities to comply with non-party subpoenas or to compel DFS to effectuate service.
Dkt. Nos. 95, 100. These motions will be addressed in due course.

pursuant to § 1983; and (c) portions of Count 6, stigma plus claim pursuant to the Fourteenth Amendment; and (2) dismissed with prejudice: (a) Count 6, Fourteenth Amendment due process claim, and (b) Count 7, tortious interference claim.  Dkt. No. 56.  "After a decision on Defendants' [first] Fed. R. Civ. P. 12(b)(6) motion . . . only Plaintiff's First Amendment claims (Counts 1 and 2) and that portion of its selective enforcement claims (Count 4) seeking money damages for past acts remains to be litigated" as raised against defendants Cuomo and Vullo in their individual capacities. Dkt. No. 112 at 1-2 (citing Dkt. No. 56), 9.

In its May 10, 2019, Decision & Order addressing defendants' second Motion to Dismiss,[2] the Court, as relevant here, dismissed without prejudice plaintiff's selective enforcement claim pursuant to the equal protection clause of the Fourteenth Amendment.  Dkt. No. 112 at 12. The Court also (1) denied defendants' "motions to dismiss Gov. Cuomo and Supt. Vullo from any remaining selective enforcement claims . . . with leave to renew if viable selective enforcement claims are re-pled," (2) dismissed all section 1983 claims against DFS as withdrawn; and (3) dismissed all money damages claims against DFS, Cuomo, and Vullo in their official capacities.  Id. Thus, currently remaining are plaintiff's First Amendment claims (Counts 1 and 2).

## II.  Legal Standards

The scope of discovery in a federal civil action is governed by Rule 26(b) of the

---

[2]  The Motion to Dismiss sought to dismiss "Count Four of the Amended Complaint in its entirety" and "Counts One and Two of the Amended Complaint as against DFS."  Dkt. No. 63.

Federal Rules of Civil Procedure ("Fed. R. Civ. P."). "Parties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense –

including the existence, description, nature, custody, condition, and location of any

documents or other tangible things and the identity and location of persons having

knowledge of any discoverable matter." FED. R. CIV. P. 26(b)(1). Further, "[i]nformation

within this scope of discovery need not be admissible in evidence to be discoverable."

Id.

> When moving to compel discovery, a requesting party must
> demonstrate at least the possibility of a nexus between the
> information sought and the claims or defenses of a party. If
> the moving party meets this "relatively low threshold," the
> non-moving party must show that, "despite the broad and
> liberal construction afforded the federal discovery rules," the
> request lacks relevance and the information sought is,
> therefore, not discoverable.

T.H. by Shepherd v. City of Syracuse, No. 5:17-CV-1081 (GTS/DEP), 2018 WL

3738945, at *2 (N.D.N.Y. Aug. 7, 2018) (internal citations omitted).

> Rule 26(b) recognizes certain specific, potentially overriding
> considerations that can effectively circumscribe the required
> production of otherwise relevant discovery. For example,
> the rule expressly encompasses a rule of proportionality,
> providing that a party may only obtain discovery regarding
> information 'that is relevant to any party's claim or defense
> and proportional to the needs of the case.

Id. at *3.

The specific proportionality factors to be considered are 'the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in resolving

issues, and whether the burden or expense of the proposed discovery outweighs its

4

likely benefit.'" Lapoint v. Target Corp., 16-CV-216 (GTS/CFH), 2017 WL 1397317, at

*2 (N.D.N.Y. Mar. 6, 2017) (quoting FED. R. CIV. P. 26(b)(1)).  Under Rule 26," the

bounds of permissible discovery in a civil action are generally broad." T.H. by Shepherd

2018 WL 3738945, at *2 (citing Maresco v. Evans Chemetics, Div. of W.R. Grace &

Co., 964 F.2d 106, 114 (2d Cir. 1992)).

Under Rule 26(c)(1),

> A party or any person from whom discovery is sought may
> move for a protective order in the court where the action is
> pending – or as an alternative on matters relating to a
> deposition, in the court for the district where the deposition
> will be taken.  The motion must include a certification that
> the movant has in good faith conferred or attempted to
> confer with the other affected parties in an effort to resolve
> the dispute without court action.  The court may, for good
> cause, issue an order to protect a party or person from
> annoyance, embarrassment, oppression, or undue burden or
> expense, including one or more of the following: (A)
> forbidding the disclosure or discovery; (B) specifying terms,
> including the time and place or the allocation of expenses,
> for the disclosure or discovery; (C) prescribing a discovery
> method other than the one selected by the party seeking
> discovery; (D) forbidding inquiry into certain matters, or
> limiting the scope of disclosure or discovery to certain
> matters; (E) designating the persons who may be present
> while the discovery is conducted; (F) requiring that a
> deposition be sealed and opened only on court order; (G)
> requiring that a trade secret or other confidential research,
> development, or commercial information not be revealed or
> be revealed only in a specified way; and (H) requiring that
> the parties simultaneously file specified documents or
> information in sealed envelopes, to be opened as the court
> directs.

FED. R. CIV. P. 26(c)(1).  "Before a protective order is issued, Rule 26(c)(1) requires a

showing of 'good cause.'" Burks v. Stickney, No. 9:16-CV-0759 (FJS/DEP), 2017 WL

1401312, at *4 (N.D.N.Y. Apr. 19, 2017) (quoting FED. R. CIV. P. 26(c)(1)).  "Good cause

5

exists when the party seeking protection demonstrates that 'disclosure will result in a

clearly defined, specific and serious injury.  Broad allegations of harm, unsubstantiated

by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.

Moreover the harm must be significant not a mere trifle.'"  Id. (quoting Schiller v. City of

New York, 04 Civ. 7922, 04 Civ. 7921, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19,

2007)).


## III.  Arguments

Plaintiff indicates that its Motion to Compel relates to seven "topics" or categories

of records and information:

> (1) DFS's investigation of affinity insurance programs
> endorsed by the NRA; (2) the April 2018 letters and the April
> 19 Press Release that urged financial institutions to
> discontinue business arrangements with the NRA; (3)
> investigations or actions by Defendants concerning affinity-
> insurance programs not relating to the NRA (a key area of
> inquiry with respect to selective enforcement); (4)
> communications between Defendants and non-parties, such
> as bankers and insurers, related to the nonparties' business
> relationships with the NRA; (5) documents regarding
> potential or actual adverse actions against institutions that
> did business with the NRA or other so-called "gun
> promotion" organizations; (6) information exchanged
> between Defendants related to this case; and (7) documents
> related to any referral, by Defendants, of these matters to
> other governmental agencies.

Dkt. No. 73-1 at 11-12.  Plaintiff states, "[t]o ensure swift, manageable discovery, the

NRA has limited all of its Requests to the time period from January 1, 2017 to present."

Id. at 12.  Plaintiff argues that defendants' objections to its requests are improper as

they present "boilerplate, generalized objections (regarding, e.g., 'vague' 'overbroad'), with no indication of how or why a particular Request was 'vague' or 'overbroad' or whether documents were being withheld pursuant to any objections."  Dkt. No. 73-1 at 13.

In response, defendants argue: (1) the law enforcement privilege protects documents related to defendants' ongoing investigation of plaintiff; (2) documents relating to defendants' Carry Guard investigation are legally irrelevant due to the claims dismissed from this case, the requests do not satisfy Rule 26's proportionality standard, the documents are privileged; (3) many documents are protected by the attorney-client privilege as they "were prepared by or for the attorneys representing DFS in the course of that representation for the purpose of providing or obtaining legal advice"; (4) many documents are protected by the work product doctrine "because DFS must prepare for the possibility that every investigation, if not resolved by agreement in consent orders or otherwise terminated by DFS, may give rise to an administrative hearing that is subject to challenge in a proceeding under Article 78 of the New York Civil Practice Law and Rules"; (5) many documents are protected by the deliberative process privilege; (6) no privilege log is required because the requests are improper; (7) guidance letters and press statements are legally irrelevant and privileged; (8) defendants have fully responded regarding their communications with financial institutions or insurance organizations and their business relationship with the NRA and other gun promotion organizations; (9) communications between defendants are protected by the attorney-client privilege, work product doctrine, and deliberative process privilege; (10)

defendants' referral of matters to other agencies is not relevant under Rule 26 and is

protected by the law enforcement, deliberative process, and attorney-client privileges.

See Dkt. Nos. 79, 78-1.

In reply, plaintiff argues that defendants

> misinterpret Judge McAvoy's decision limiting the NRA's
> equal protection claim as it relates to the Consent Orders
> (and not its First Amendment claim) to mean that the NRA
> cannot seek discovery relating to the investigation leading up
> to the consent orders.  However, Judge McAvoy's Order
> contradicts this proposition. Defendants cannot plausibly
> assert that the very information Judge McAvoy found helpful
> in allowing the NRA's First Amendment claims to move
> forward is now somehow "not legally relevant."

Dkt. No. 81 at 7.  Next, plaintiff urges the Court to reject a conclusion that "six months

before the publication of the April 2019 Letters and Press Releases is not proportional

to the needs of the case."  Id. at 7-8.  Plaintiff further contends that such discovery is

relevant for both its retaliation claim and defendants' qualified immunity defense.  Id. at

8.

Plaintiff also argues that the privileges defendants raise do not apply to bar

discovery.  Dkt. No. 81 at 12.  Addressing the law enforcement privilege specifically,

plaintiff contends that, even if the privilege applied, "courts still weigh a number of

factors to determine whether the documents must nevertheless be produced."  Id.

Plaintiff also contends that defendants must submit a privilege log with respect to this

privilege.  Id. at 10-12.  As to the deliberative process privilege, plaintiff contends that

defendants did not properly assert this privilege because "the declarants are neither the

heads of the relevant agency nor an individual properly designated to assert the

deliberative process privilege," because "the declarants failed to personally reviewed [sic] the documents at issue," "the declarations fail to identify and describe the documents at issue," and "the declarations fail to establish the documents at issue are both pre-decisional and deliberative." Dkt. No. 81 at 11-12. Further, plaintiff contends that the deliberative process privilege, even if it applied, "'evaporates' where, as here, a party's cause of action is directed to the government's intent in rendering a policy decision." Id. at 13. Plaintiff argues that defendants' intentions in issuing the "2018 Letters and accompanying statements are plainly relevant to the NRA's retaliation claim – as well as Defendants' qualified immunity defense." Id.

Next, addressing its request for "'communications and documents exchanged between defendants in this case' relating to this action," plaintiff contends that the common interest doctrine "cannot transform an otherwise non-privileged document into a privileged one." Dkt. No. 81 at 14. More specifically, plaintiff argues that "there are numerous documents created after the initiation of litigation that unambiguously are not protected by attorney-client privilege or the work product doctrine, and certainly would, therefore, not be protected under the common interest doctrine." Id. Finally, plaintiff argues that defendants' objections to its request numbers 4, 6, 7, 8, and 9, "as they relate to Defendants' communications with (or adverse actions against) financial institutions with business relationships with the NRA or other gun promotion organizations," inaccurately characterize their production as complete even though they are withholding documents based on their objections. Id. at 14. Plaintiff contends that these requests are relevant, and, as such, they must be produced. Id. at 15.

9

In the Motion for a Protective Order, defendants make nearly identical arguments to those presented in its opposition to plaintiff's Motion to Compel, and present identical declarations in support.  Dkt. No. 78-1.  Defendants seek a protective order for four "categories of information": (1) DFS's Carry Guard investigation, (2) DFS's investigations of affinity programs unrelated to the NRA, (3) defendants' referral of matters to other government agencies, and (4) privileged internal communications protected by the deliberative process privilege, the attorney-client privilege, and the work product doctrine.  Id. at 12-13.  Specifically, defendants seek the Court to enter an order "forbidding the discovery or disclosure of the documents demanded that fall within each category; forbidding inquiry into these four categories, and/or; limiting the scope of disclosure or discovery as it relates to the four categories."  Id. at 13.

Plaintiff's opposition to defendants' Motion for a Protective Order sets forth similar arguments to those raised in support of its motion to compel.  Dkt. No. 83.  Essentially, plaintiff contends that the discovery requested is relevant; defendants fail to identify with specificity the documents they wish withheld based on privileges; defendants fail to meet their burden to demonstrate the applicability of various privileges; and the privileges raised do not preclude discovery, even if they apply.  Id. Plaintiff requests legal fees and costs associated with responding to defendants' cross motion.  Id. at 11.  In reply, defendants reassert the arguments raised in their Motion for a Protective Order and contend that a privilege log is not yet required.  Dkt. No. 84.

## IV.  Analysis

10

## A.  April 2018 Letters and Press Release

Plaintiff's Motion to Compel, as it relates to the April 2018 Letters, seeks the

Court to compel from Cuomo, "[a]ll documents and communications relating to the April

2018 Letters," and from DFS, "[a]ll documents and communications relating to the April

2018 Letters, including, without limitation,"

> (a) Any research, analyses, models, or estimates developed
> or compiled by DFS regarding 'reputational risks[] that may
> arise from [] dealings with the NRA or similar gun promotion
> organizations,' and the impact of such risks upon the
> solvency, safety, or soundness of New York financial
> institutions; (b) Documents sufficient to identify the 'gun
> promotion organizations' referenced in the April 2018
> Letters; and (c) Any communications received by
> Defendants from Financial Institutions seeking guidance or
> clarification regarding the April 2018 Letters, or concerning
> the potential impact of the April 2018 Letters upon the business practices of such Fir

Dkt. No. 73-2 at 21-22 (DFS request); 55 (Cuomo request).

As to the press release, plaintiff seeks, of both DFS and Cuomo,

> All documents and communications relating to the April 19
> Press Release including, without limitation:
> (a) All documents and communications relating to the
> concern that Financial Institutions might "send[] the wrong
> message' by doing business with the NRA;" (b) Any
> research, analyses, models, or estimates developed or
> compiled by Defendants to substantiate the expectation that
> the April 2018 Letters would "encourage strong markets"; (c)
> Documents sufficient to identify the risk(s) from which
> Defendants, by their issuance of the April 2018 Letters, seek
> to "protect consumers"; and (d) Any communications
> received by Defendants from Financial Institutions seeking
> guidance or clarification regarding the April 19 Press
> Release upon the business practices of such Financial
> Institutions.

Id. at 22, 55-56 (identical request for DFS and Cuomo).

11

### 1. Objections

### a. Legally Irrelevant

Plaintiff contends that such information is relevant because the April 2018 Letters and April 19 Press Release are "directly related to the NRA's core First Amendment claims" as these materials "form major components of the Defendants' censorship campaign against the NRA" and will "aid the jury in determining the intent and purpose behind the issuance of these documents, a well as their effect on those who viewed the documents." Dkt. No. 73-1 at 19.  Plaintiff further argues that defendants' "boilerplate and unexplained objections are inadequate and improper."  Id.

Defendants argue that plaintiff's demands with respect to the April 2018 Letters and April 19 Press release seek legally-irrelevant and privileged material.  Dkt. No. 79 at 21.  Defendants contend that, because "no document other than the final versions of the guidance letters or press statements were ever publicly released," any drafts or related materials cannot be said to be relevant to plaintiff's First Amendment claim – alleging that DFS threatened coercive action against financial institutions that did business with the NRA.  Id.  Defendants further contend that "because the NRA's First Amendment claim is subject to an objective legal standard that does not require an assessment of the author's subjective intent[,]" drafts and related documents plaintiff seeks, purportedly to demonstrate the authors' intent, cannot be said to be relevant.  Id. Defendants also contend that, "[t]he First Amendment issue in this case is not how the Guidance Letters or Press Release were created, but whether they contain any threats of adverse government action."  Id. at 22.  Plaintiff counters, arguing that "subjective

12

intent and motive are critical elements to . . . the NRA's retaliation claim . . . and . . . Defendants' qualified immunity defense." Dkt. No. 81 at 8.

As to plaintiff's contention that evidence demonstrating subjective intent is relevant to defendants' qualified immunity defense, the law is well-settled that "a defense of qualified immunity may not be rebutted by evidence that a defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." Crawford-El v. Britton, 523 U.S. 574, 588 (1998); Doninger v. Neihoff, 642 F.3d 344, 349 (2d Cir. 2011). "Granted, this rule does not apply when intent is an element of a First Amendment claim or defense 'as defined by clearly established law' and a factual dispute as to intent precludes the conclusion that a government official's conduct was objectively reasonable." Doninger, 642 F.3d at 349 (quoting Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001)); see also Donovan v. Inc. Vill. of Malverne, 547 F. Supp. 2d 210, 221 (E.D.N.Y. 2008) (quoting Rapkin v. Rocque, 228 F. Supp. 2d 142, 148 (D. Conn. 2002) ("'[T]he Second Circuit has held that where motive or intent is part of the constitutional tort, the employer's actual subjective motive is not irrelevant in a qualified immunity inquiry.'")). Thus, the Court must assess whether intent is an element of plaintiff's First Amendment claims.

Plaintiff's Amended Complaint sets forth two First Amendment[3] claims: free speech/"implied censorship campaign" (count 1) and retaliation (count 2). Dkt. No. 37

---

[3] Also pending are plaintiff's claims that defendants violated Article 1, § 8 of the New York State Constitution. As this Court has noted before, these claims are subject to the same standard as claims brought under the First Amendment. Dkt. No. 55 at 15.

at 28-30.  To state a claim for First Amendment retaliation, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Odermatt v. New York City Dep't of Educ., 694 F. App'x 842, 845 (2d Cir. 2017) (summary order), cert. denied sub nom. Odermatt v. Way, et al., 139 S. Ct. 1183 (2019) (quoting Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 106-07 (2d Cir. 2001)).

> To show retaliation in violation of the First Amendment, a "plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."

Mental Disability Law Clinic, Touro Law Ctr. v. Hogan, 519 F. App'x 714, 717 (2d Cir. 2013) (summary order) (quoting Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)).

As this Court has previously set forth,

> As applicable to the allegations in Counts One and Two, "the First Amendment prohibits government officials from encouraging the suppression of speech in a manner which 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request.'" Zieper, 474 F.3d at 65-66 (quoting Hammerhead Enters., Inc. v. Brezenoff, 707 F.2d 33, 39 (2d Cir. 1983)).  In determining whether government statements impede upon First Amendment rights, "what matters is the 'distinction between attempts to convince and attempts to coerce.'" Id. at 66 (quoting Okwedy v. Molinari, 333 F.3d 339, 344 (2d Cir. 2003) (per curiam).

Dkt. No. 56 at 18.

Here, although defendants correctly observe that the question of whether the documents are protected speech is an objective standard, as plaintiff points out, the analysis does not end there.  As the Second Circuit has laid out, "[a]lthough a showing of retaliatory intent is required for a retaliatory First Amendment claim, it appears not to be required for most affirmative First Amendment claims." Greenwich Citizens Comm., Inc. v. Ctys. of Warren & Washington Indus. Dev. Agency, 77 F.3d 26, 32 (2d Cir. 1996 (emphasis added).  As retaliatory intent is relevant to plaintiff's First Amendment retaliation claim, and, thus, arguably relevant to the qualified immunity defense as it relates to the First Amendment retaliation claim, plaintiff has demonstrated "at least the possibility of a nexus" between such documents that may show the intent behind the drafting of the April 19 letters and press release and its First Amendment retaliation claim.  T.H. by Shepherd, 2018 WL 3738945, at *2.  Thus, plaintiff has met its burden relevance under Rule 26(b) as to its demands relating to the April 2018 letters and press release.

### b.  Privileges

Although plaintiff has demonstrated that documents and communications relating to the April 2018 letters and press release may be relevant to its First Amendment retaliation claim, defendants contend that these documents would be protected by various privileges: the deliberative process privilege, attorney client privilege, and

15

attorney work product doctrine.[4]

### i. Deliberative Process Privilege

The deliberative process privilege prevents discovery as to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Grand Central P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (citation omitted); see also In re County of Erie, 473 F.3d 413, 417 n.3 (2d Cir. 2007) (citing Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) ("[T]he deliberative process privilege [is] a sub-species of work-product privilege that covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.")).  "In order for a document to be protected by this privilege, it must be an inter-agency or intra-agency document which is both predecisional and deliberative."  Children First Found., Inc. v. Martinez, No. 1:04-CV-0927, 2007 WL 4344915, at *6 (N.D.N.Y. Dec. 10, 2007) (citing Grand Cent. P'ship, Inc., 166 F.3d at 482 (additional citation omitted).  "To be 'predecisional, a document must be prepared to "assist an agency decisionmaker in arriving at his decision.'  To be deliberative, a document must actually be 'related to the process by which policies are formulated.'" Wright v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:13-CV-0564 (MAD/ATB), 2017 WL 564503, at *1 (N.D.N.Y. Feb. 10,

---

[4] Nathaniel J. Dorfman, General Counsel for DFS, asserted these privileges on behalf of DFS. Dkt. No. 79-7.

2017) (quoting Fox News Network, LLC v. U.S. Dep't of the Treasury, 678 F. Supp. 2d 162, 167, 168 (S.D.N.Y. 2009) (citation omitted)).  "In making this determination, 'courts look to whether the document '(i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency.'"  Ramooe, Inc. v. City of New York, No. 13-CIV-01045 SLT/VMS, 2017 WL 5054713, at *3 (E.D.N.Y. Nov. 2, 2017) (citing Azon v. Long Island R.R., No. 00 CIV 6301, 2001 WL 1658219, at *2 (S.D.N.Y. Dec. 26, 2001) (quoting Nat'l Cong. for Puerto Rican Rights v. City of New York, 194 F.R.D. 88, 92 (S.D.N.Y. 2000)).

Further,

> An inter-agency or intra-agency document may be withheld from the public purview if it is prepared in order to assist an agency in arriving at its decision and actually related to the process by which policies are formulated.  Intra-agency documents are those that remain within a single agency's walls while inter-agency documents are those that pass from one governmental agency to another; but in terms of this privilege, they are treated the same.  Generally speaking, the efficiency of government would be clearly hamstrung if it was not for such protection.

Children First Found., Inc., 2007 WL 4344915, at *6 (internal citations omitted).

Notably, the deliberative process privilege is not without its limits.  "The deliberative process privilege 'does not operate indiscriminately to shield all decision-making by public officials.'"  Id. (quoting Schiller, 2007 WL 136149, at *10 and Grossman v. Schwartz, 125 F.R.D. 376, 381 (S.D.N.Y. 1989)).  "Nor does it protect documents which are peripheral to the policy formulation."  Id. (citing Grand Cent. P'ship, 166 F.3d at 482).   "[T]he privilege is not an absolute bar but rather qualified."

17

Id. (citing Ebbert v. Nassau Cty., No. CV 05-5445, 2007 WL 674725, at *11 (E.D.N.Y.

Mar. 5, 2007)).

> The deliberative process privilege is fashioned in such a way
> that it protects the government's deliberative process from
> inquiry if it is collateral to the litigation itself.  However, if the
> party's cause of action is directed at the government's intent
> in rendering its policy decision and closely tied to the
> underlying litigation then the deliberative process privilege
> "evaporates."

Id. at *7 (citing In re Subpoena Duces Tecum Served on the Office of the Comptroller,

145 F.3d 1422, 1424 (D.C. Cir. 1998)).

The deliberative process privilege

> does not include "opinions or conclusions of those not part of
> that process . . . . underlying factual documents that are
> relied on in the decisionmaking process . . . , statements that
> summarize facts . . . , documents that describe an agency's
> policy after it has been adopted, or . . . pre-decisional
> documents that are incorporated into the agency's final
> decision."

New York v. Nat'l R.R. Passenger Corp., No. 04-CV-962 (DNH/RFT), 2007 WL

4377721, at *3 (N.D.N.Y. Dec. 12, 2007) (quoting United States v. Hooker Chem. &

Plastics Corp., 123 F.R.D. 3, 15 (W.D.N.Y.1998)).  Further,

> It does not protect "memoranda consisting only of compiled
> factual material or purely factual material contained in
> deliberative memoranda and severable from its context."
> Mink, 410 U.S. at 91. Factual materials tend not to be
> privileged unless they are "inextricably intertwined with
> policy-making processes." Nat'l Wildlife Fed'n v. U.S. Forest
> Serv., 861 F.2d 1114, 1119 (9th Cir. 1988). "Non-factual
> materials that express opinions or recommendations, on the
> other hand, are clearly protected." Trentadue v. Integrity
> Comm., 501 F.3d 1215, 1226-29 (10th Cir. 2007); see, e.g.,
> NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)
> ("The cases . . . focus on documents reflecting advisory

18

> opinions, recommendations and deliberations comprising
> part of a process by which governmental decisions and
> policies are formulated.") (citation & quotation omitted);
> Coastal States Gas, 617 F.2d at 866 ("The exemption thus
> covers recommendations, draft documents, proposals,
> suggestions, and other subjective documents which reflect
> the personal opinions of the writer rather than the policy of the agency.").

Ramooe, Inc., 2017 WL 5054713, at *3.  When a Court determines the deliberative

process privilege applies, in order to determine whether the privilege will bar disclosure

or whether to permit disclosure, notwithstanding the privilege, a Court is to consider:

> [1] the relevance of the evidence sought to be protected; [2]
> the availability of other evidence; [3] the seriousness of the
> litigation and the issues involved; [4] the role of the
> government in the litigation; and [5] the possibility of future
> timidity by government employees who will be forced to
> recognize that their secrets are violable.

Childrens First Found., 2007 WL 4344915, at *8 (citing In Re Subpoena Duces Tecum,

145 F.3d at 1424).

Defendants note that, "[a]lthough courts have sometimes held that the

Deliberative Process privilege does not apply when an agency's deliberations are the

primary issue in litigation, the objective standard that applies to the NRA's First

Amendment claims is an absolute bar to the NRA's reliance on this exception to the

privilege."  Dkt. No. 79 at 22.  Further, defendants argue that they properly assert the

deliberative process privilege because, "even if the Plaintiff's assertion that by simply

putting a government decision at issue the deliberative process privilege somehow

vanishes was correct, nothing in the deliberative process of drafting the Guidance

Letters or the Press Releases would inform whether any threats were made by the

publication of the final forms of those documents."  Id. at 23.

19

As this Court decided above, plaintiff's First Amendment retaliation claim does involve an assessment defendants' intent.  In assessing whether the deliberative process privilege applies where the agency's deliberations are at issue, some cases have applied a balancing test, whereas others have rejected this approach.  This District has applied both methods.  Compare Children First Found., Inc., 2007 WL 4344915, at *6  (no balancing test) and New York v. Salazar, 701 F. Supp. 2d 224, 237 n.9 (N.D.N.Y. 2010) (no balancing test) (citing cases) with Mary Imogene Bassett Hosp. v. Sullivan, 136 F.R.D. 42, 44-45 (N.D.N.Y. 1991) (applying balancing test).  Other districts within this Circuit largely appear to apply a balancing test.  See Noel v. City of New York, 357 F. Supp.3d 298, 303 (S.D.N.Y. 2019); Citizens Union of City of New York v. Attorney General of New York, 269 F. Supp. 3d 124, 159 (S.D.N.Y. 2017); In re Delphi Corp., 276 F.R.D. 81, 85-86 (S.D.N.Y. 2011); Burbar v. Incorp. Vill. of Garden City, 303 F.R.D. 9, 14 (E.D.N.Y. 2014) (noting the split in the districts and concluding that "[b]oth approaches tend to yield the same result."); Carver v. Nassau Cnty. Interim Fin. Auth., No. CV 11-1614, 2012 WL 12266891, at *3 (E.D.N.Y. Aug. 9, 2012); Citizens Against Casino Gambling in Erie Cnty. v. Stevens, 814 F. Supp.2d 261, 270 (W.D.N.Y. 2011).

Defendants' argument, although creative and facially convincing, ultimately is without force.  Dkt. No. 79 at 22-23.  Although it is relevant whether the final documents contained threats – or arguably what would be perceived as threats – it is at least arguable that prior drafts, or communications made in conjunction with those drafts, would be relevant to the authors' intent in releasing the final version.  Defendants

20

appear to argue that, where language may have existed in a draft but such language was excluded from the final version, it cannot be said that the draft that includes the excluded language can show the intent of the final version that was issued.  Id. However, edits that were included, excluded, or modified may demonstrate the drafters' intention behind the issuance of the final draft and the particular language chosen for that draft. The relevant inquiry may be whether any documents or communications exist which may support the authors' intent behind the final versions.

Here, the Court finds that the application of a balancing test is appropriate to assess plaintiff's interest in accessing such information against "the public's need to know and the government's need to protect frank discussion and to prevent injury to the quality of the agency's decision." Children First Found., 2007 WL 4344915, at *8. However, the Court does not have before it either a privilege log or any specifics about draft documents or communications connected to the April letters or Press Releases. Although defendants argue that a privilege log or formal assertion of privilege "is not yet required" as they believe that plaintiff's requests are improper, dkt. no. 79 at 19-20, because the Court determines that the requests are not facially improper, a privilege log is required in order for this Court to assess the claims of privilege.  The Court cannot fully or appropriately assess the application of the deliberative process privilege, and, if applied, which documents – if any – must be produced or protected.  Further, the Court cannot determine, without having some knowledge about the actual documents or communications that exist, whether any documents are purely factual or the government's interest in nondisclosure. Children First Found., 2007 WL 4344915, at *8.

21

At least one Court in this Circuit has held, where the deliberative process privilege is claimed, "it is appropriate for the court to undertake an in camera review of the documents at issue so it can determine whether 'the government's interest in non-disclosure outweighs the interests of the litigants and the public in disclosure." Armtek Corp. v. U.S., 94-CV-928S, 1996 WL 469015, at *2 (W.D.N.Y. June 20, 1996); U.S. v. Schichman, No. CV 97-7432-LDW WDW, 2002 WL 393070, at *3 (E.D.N.Y. Feb. 16, 2002). In order to be able to assess the applicability of the deliberative process privilege, the Court must be able to review the documents and communications relevant to this request, along with a privilege log. See, e.g.,Shichman, 2002 WL 393070, at *3 ("Accordingly, defendants, 'within two weeks of receipt of this order, [must] submit to the court, under seal, the documents and redacted sections of documents listed on the privilege log. The Court will conduct an in camera review of those documents and then rule on the motion to compel in regard to them.'"). Any such privilege log for documents and communications defendants seek to withhold on the basis of this privilege or others must "contain sufficient information such that the reviewing party can make an intelligent determination as to whether the withheld documents are 'predecisional' and 'deliberative.'" Ramooe, Inc., 2017 WL 5054713, at *4.

> [A] log of documents withheld on the basis of the deliberative process privilege should provide various pieces of information, including, but not limited to, a description of the decision to which the documents relate, the date of the decision, the subject-matter of the documents in issue, the nature of the opinions and analyses offered, the date that documents were generated, the roles of the agency employees who authored or received the withheld documents and the number of employees among whom the documents were circulated. These sort of details, while not

> exhaustive, would provide the receiving party with sufficient
> facts to assess whether the documents were "related to the
> process by which policies are formulated."

Id. (quoting Nat'l Council of La Raza, 411 F.3d at 356.

Accordingly, within twenty-one (21) days from the filing date of this

Memorandum-Decision & Order, defendants must provide to the Court a detailed

privilege log with respect to the documents and/or portions thereof defendants believe

fall within the deliberative process privilege, along with unredacted copies of such

documents for in camera review.  Insofar as plaintiff seeks to compel the production of

documents and communications relating to the April 2018 letter and April 19 press

release, the motion is denied with leave to renew following the Court's in camera

review.  Insofar as defendants cross-move for a protective order based on the

deliberative process privilege, that request is similarly denied with leave to renew,

following the Court's in camera review.  Following the Court's review, the Court will

reconsider the arguments raised in the motions. Should the Court require further

briefing at that time, the Court will advise the parties as such.


### ii. Attorney-Client Privilege & Attorney Work Product

Defendants argue that any materials beyond the final versions of the April 2018

Letters or April 19 press release are protected by the attorney-client privilege and

attorney work-product doctrine.  Dkt. No. 79 at 22.  Plaintiff argues that defendants'

claim of privilege is overbroad and cannot be sustained absent a privilege log.  Dkt. No.

73-1 at 24.

23

In <u>New York Teamsters Council Prepaid Legal Servs. Plan v. Primo & Centra</u>,

this Court clearly explained the attorney-client privilege:

> The attorney-client privilege is a privilege of common law
> that is to be applied "in light of reason and experience."
> <u>United States v. Zolin</u>, 491 U.S. 554, 562, 109 S.Ct. 2619,
> 2625-26, 105 L.Ed.2d 469 (1989); Fed. R. Evid. 501. The
> central purpose behind the attorney-client privilege is "to
> encourage full and frank communication between attorneys
> and their clients and thereby promote broader public
> interests in the observance of law and administration of
> justice." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389,
> 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Nonetheless, the
> privilege is not absolute. "Since the privilege has the effect of
> withholding relevant information from the factfinder, it applies
> only where necessary to achieve its purpose."   <u>Fisher v.
> United States</u>, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48
> L.Ed.2d 39 (1976).

159 F.R.D. 386, 388 (N.D.N.Y. 1995).

The attorney-client privilege "enable[s] attorneys to give informed legal advice to

clients" and "protects communications between a client and its attorney that are

intended to be, and in fact were, kept confidential." <u>Schaeffler v. United States</u>, 806

F.3d 34, 40 (2d Cir. 2015).  This Court has held that communications are deemed

confidential if:

> (1) . . . legal advice of any kind is sought, (2) from a
> professional legal advisor in his or her capacity as such,
> (3) the communication relates to that purpose, (4) made in
> confidence, (5) by the client, and (6) are at his or her
> insistence permanently protected, (7) from disclosure by the
> client or the legal advisor, (8) except if the protection is
> waived.[5]

---

[5] The federal attorney-client privilege standard has also been defined in the following manner:
(1) [t]he attorney-client privilege protects communications between a client and his or her attorney (2) that
are intended to be, and in fact, were, kept confidential (3) for the purpose of obtaining or providing legal

Trudeau v. New York State Consumer Protection Bd., 237 F.R.D. 325, 335-36 (N.D.N.Y. 2006) (citing United States v. Int'l Bd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997) and (In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir. 1984); see also Mejia, 655 F.3d at 132. The privilege protects the attorney's advice to the client and the information communicated by the client that provides a basis for giving advice. See Upjohn Co., 449 U.S. at 390; In re Six Grand Jury Witnesses, 979 F.2d 939, 943-44 (2d Cir. 1992); Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 554 (S.D.N.Y. 2013). "But since the privilege stands in derogation of the public's right to every man's evidence, . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000). The burden of proving the existence of the privilege rests with the party asserting the privilege. See Mejia, 655 F.3d at 132; In re Grand Jury Subpoena Dated July 6, 2005, 256 F. App'x 379, 382 (2d Cir. 2007) (summary order). Thus, "[t]he party asserting the privilege must establish the essential elements of the privilege." United States v. Constr. Prod. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996) (citations omitted). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd 29 F. Supp. 3d 142 (E.D.N.Y. 2014) (citing Scholtisek v. Eldre Corp., 441 F. Supp. 2d 459, 462 (W.D.N.Y. 2006) (additional citations omitted)).

---

advice." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The undersigned finds both iterations of the privilege to be a proper statement of the law, and finds no substantial difference between the two in their application.

As discussed above, because the Court does not have any documents before it, it cannot assess the application of the attorney-client privilege or attorney work product privilege.  Insofar as defendants argue that <u>all</u> communications or documents drafted with respect to the April 2018 Letters and Press release are protected by these privileges, documents do not automatically gain the protections of these privileges solely because they were authored by an attorney.  <u>See</u>, <u>e.g.</u>, <u>Albany Coll. of Pharmacy & Health Sci. v. Acer, Inc.</u>, 1:09-CV-098 RFT, 2009 WL 10720998, at *2 (N.D.N.Y. Dec. 18, 2009) ("[N]ot all communications with lawyers constitute privileged communications. Only those communications where advice is sought and advice is given is cloaked by the attorney-client privilege.").  What matters is whether the documents and communications amounted to the giving and receiving of legal advice.  <u>Id.</u>  As plaintiff has demonstrated potential relevance of such discovery, the burden shifts to defendants to demonstrate the applicability of the privilege.  Because the Court does not have a privilege log or documents before it, the Court cannot determine whether any or all communications connected to the April 2018 letter and press release are protected by the attorney-client privilege and/or amount to attorney work product.  <u>See generally</u> <u>Loguidice v. McTiernan</u>, 1:14-CV-1323 (TJM/CFH), 2016 WL 4487779, at *21 (N.D.N.Y. Aug. 25, 2016) (where parties sought to compel documents alleged to be protected by attorney-client privilege and Court denied motion to compel, noting that did not have documents or privilege log before it).

Thus, as indicated above, within twenty-one (21) days from the filing date of this Memorandum-Decision & Order, defendants must provide to the Court all documents

and communications related to the drafting of the April 2018 Guidance Letters and

press release, along with a detailed privilege log explaining with sufficient detail why the

documents are attorney-client privileged or work product privilege or why any redactions

are required due to such privileges.

## B. Referrals[6]

As for the referrals of NRA-related matters to other governmental agencies,

defendants argue that "[a]ll documents referring matters relating to the NRA to other

government agencies have been produced to the Plaintiffs including follow-up

---

[6]    These requests relate to Vullo Request numbers 23, 24, 25; Cuomo Requests numbers 23(2), 24, 25), and DFS requests 24, 24(2), and 25.
    Vullo Request 23: "All documents and communications related to your referral of matters concerning the NRA to any governmental agency, including without limitation to the New York Office of the Attorney General." Dkt. No. 73-2 at 38.
    Vullo Request 24:"All documents and communications relating to your referral of matters concerning any Gun Promotion Organization to any governmental agency, including without limitation to the New York Office of the Attorney General." Dkt. No. 73-2 at 38.
    Vullo Request 25: "Documents and communications sufficient to identify your referral of any matter not concerning either the NRA or any Gun Promotion Organization to any governmental agency, including without limitation to the New York Office of the Attorney General." Dkt. No. 73-2 at 28.
    Cuomo Request No. 23(2): "All documents and communications related to your referral of matters concerning the NRA to any governmental agency, including without limitation to the New York Office of the Attorney General." Dkt. No. 73-2 at 55.
    Cuomo Request No. 24: "All documents and communications related to your referral of matters concerning any Gun Promotion Organization to any governmental agency, including without limitation to the New York Office of the Attorney General." Dkt. No. 73-2 at 55.
    Cuomo Request No. 25: "Documents and communications sufficient to identify your referral of any matter not concerning either the NRA or any Gun Promotion Organization to any governmental agency, including without limitation to the New York Office of the Attorney General." Dkt. No. 73-2 at 55.
    DFS Request No. 24: "All documents and communications relating to your referral of matters concerning the NRA to any governmental agency, including without limitations to the New York Office of the Attorney General." Dkt. No. 73-2 at 20.
    DFS Request No. 24(2): "All documents and communications related to your referral of matters concerning any Gun Promotion Organization to any governmental agency, including without limitation to the New York Office of the Attorney General." Dkt. No. 73-2 at 20.
    DFS Request No. 25: "Documents and communications sufficient to identify your referral of any matter not concerning either the NRA or any Gun Promotion Organization to any governmental agency, including without limitation to the New York Office of the Attorney General." Dkt. No. 73-2 at 21.

communications between DFS and other states' insurance regulators."  Dkt. No. 79 at 27.[7]  As for referrals involving entities other than the NRA to government agencies, defendants argue that documents or communications "related to the referral of unrelated matters" cannot satisfy Rule 26's relevancy requirements and that such material is protected by the law enforcement privilege, deliberative process privilege, attorney-client privilege, and work product doctrine, "and may also be precluded by grand jury secrecy rules."  Id. at 27.  In reply, plaintiff contends that whether defendants made other referrals "unrelated to the NRA [] in the last two years" is "directly relevant to the NRA's First Amendment claims and, therefore, must be provided."  Dkt. No. 73-1 at 23-24.

As plaintiff's selective enforcement claims have been dismissed, it is unclear how materials or communications related to defendants' referral to government agencies of matters not connected with the NRA materials, is relevant to plaintiff's First Amendment claims. Plaintiff appears to suggest that defendants' alleged conduct of "reach[ing] out to various Governors and insurance departments across the country regarding the NRA endorsed insurance programs" was "done solely as part of Defendants['] implicit censorship campaign and as retaliation for defendants' utilizing their First Amendment right to publicly advocate on behalf of its controversial views."  Dkt. No. 73-1 at 23. They argue, but do not explain, how defendants' referrals of matters "unrelated" to the

---

[7]  Insofar as plaintiff contends that referrals of NRA-related matters was retaliatory, and thus, connected to their First Amendment claims, as such referrals were "highly unusual," and, thus, demonstrate retaliation, dkt. no. 73-1 at 23, defendants' contention that all such material has been provided would appear to satisfy this demand.

NRA would further support plaintiff's claim that defendants' engaged in a retaliatory censorship campaign.  Id.  The requests for referrals of non-NRA matters seek documents and communications relating to (1) non-NRA gun promotion organizations, and (2) matters not tied to the NRA nor other gun promotion organizations. The Court declines to reach whether such matters would be privileged, as it concludes that plaintiff has failed to meet its burden of demonstrating that such communications and documents are relevant to any of its remaining claims.  FED. R. CIV. P. 26(b).

As for referral of matters unrelated to the NRA – both for other "gun promotion organizations" and matters unreleated to gun promotion –  plaintiff wholly fails to demonstrate relevancy under Rule 26.  Whether defendants referred matters to outside government agencies regarding "any matter" unrelated to the NRA is overbroad.  As defendants indicate, defendants may refer matters to several agencies and entities throughout the state.  Although plaintiff contends that referral of matters to outside agencies unrelated to the NRA is relevant to its First Amendment claims, it fails to elaborate or support this argument.  Dkt. No. 73-1 at 23-24.

Accordingly, insofar as plaintiff seeks to compel defendants to produce documents or communications relating to defendants' referral of matters to other government agencies unrelated to the NRA, such request is denied.  As the Court concludes that plaintiff has failed to demonstrate the relevancy of these requests, the Court need not reach whether these requests fall under the various privileges defendant has raised.  Insofar as plaintiff requests referrals of matters related to the NRA to other government agencies, defendants have indicated that all such materials have been

provided.  However, within fourteen (14) days, defendants must provide to the Court and plaintiff a signed affidavit indicating that they have conducted a diligent search but that they are unaware of the existence of any documents or communications responsive to such demands.   Insofar as defendant seeks a protective order with respect to these claims, such request is denied as moot as this Court's ruling renders a protective order unnecessary at this time.

## C.  Investigations

### 1.  Investigative Files

Plaintiff seeks to compel documents relating to (1) defendants' investigations of the NRA and "NRA endorsed insurance programs" relating to Chubb, Lockton, and Lloyds; (3) defendants' investigative files of non-NRA endorsed affinity insurance programs; (4) defendants' communications with financial institutions or insurers relating to their business relationships with the NRA and non NRA-gun promotion organizations; (5) adverse or enforcement actions against financial institutions with business arrangements with NRA or non-NRA gun promotion organizations; and (6) communications exchanged between defendants "related to this action."  Dkt. No. 73-1 at 16-18.  Defendants argue that these requests seek legally-irrelevant materials and are protected by the law enforcement privilege, deliberative process privilege, inter- and intra-agency privilege, attorney-client privilege, and that such documents and communications are attorney work product. Dkt. No. 79 at 16.

Defendants first contend that documents and/or communications relating to their

investigations of the NRA and Lockton, Chubb, and Lloyd's[8] and any

---

[8] **DFS requests 1, 2, 3, 4, 10, 11, 18-23, 31**:

DFS Request 1: "All documents and communications (including, without limitation, communications between or among Defendants) relating to the compliance of the Carry Guard insurance program described in the Lockton Consent Order and the Chubb Consent Order with the Insurance Law." Dkt. No. 73-2 at 17.

DFS Request 2: "All documents and communications You sent to, received from, or exchanged with Lockton and/or Chubb (including, without limitation, all documents produced by the foregoing entities) relating to the NRA Insurance Investigation." Dkt. No. 73-2 at 17.

DFS Request 3: "All documents and communications You sent to, received from, or exchanged with, or prepared for the purpose of dissemination to any governmental agency—including, without limitation, the New York Office of the Governor and the New York Office of the Attorney General—which relate to the NRA Insurance Investigation." Dkt. No. 73-2 at 17.

DFS Request 4: "All documents and communications You sent to, received from, or exchanged with, or prepared for the purpose of dissemination to any non-governmental organization—including without limitation Everytown—which relate to any Gun Promotion Organization." Dkt. No. 73-2 at 17.

DFS Request 10: "All documents and communications relating to any Defendants' utilization of other governmental agencies to investigate any Gun Promotion Organization, including without limitation the NRA." Dkt. No. 73-2 at 19.

DFS Request 11: "All documents and communications relating to any Defendants' utilization of other governmental agencies to investigate the NRA." Dkt. No. 73-2 at 19.

DFS Request 18: "All documents and communications relating to any Defendants' investigation of the NRA's promotional activities." Dkt. No. 73-2 at 19.

DFS Request 19: "All documents and communications relating to any Defendants' investigation of the NRA's lobbying activities." Dkt. No. 73-2 at 20.

DFS Request 20: "All documents and communications relating to the reasons You commenced or recommended the commencement of the NRA Insurance Investigation." Dkt. No. 73-2 at 20.

DFS Request 21: "All documents and communications relating to revenues generated, or expected to be generated, by the sale of any affinity insurance policy or program endorsed by the NRA." Dkt. No. 73-2 at 20.

DFS Request 22: All documents and communications relating to your determination that Lockton should pay a civil monetary penalty of $7 million." Dkt. No. 73-2 at 20.

DFS Request 23: "All documents and communications relating to your determination that Chubb should pay a civil monetary penalty of $1.3 million." Dkt. No. 73-2 at 20.

DFS Request 31: "All documents and communications relating to any of the following provisions of the Lockton Consent Order or the Chubb Consent Order: (a) Lockton Consent Order paragraphs 42 and 43; (b) Chubb Consent Order paragraphs 21 and 22." Dkt. No. 73-2 at 22.

**Vullo Requests**:

Vullo Request 1: "All documents and communications (including, without limitation, communications between or among Defendants) relating to the compliance of the Carry Guard insurance program." Dkt. No. 73-2 at 35.

Vullo Request 2: "All documents and communications You sent to, received from, or exchanged with Lockton and/or Chubb (including, without limitation, all documents produced by the foregoing entities) relating to the NRA Insurance Investigation." Dkt. No. 73-2 at 35.

Vullo Request 3: "All documents and communications You sent to, received from, or exchanged with, or prepared for the purpose of dissemination to any governmental agency—including, without limitation, the New York Office of the Governor and the New York Office of the Attorney General—which relate to the NRA Insurance Investigation." Dkt. No. 73-2 at 35.

Vullo Request 5: "All documents and communications You sent to, received from, or exchanged

"enforcement actions" or "adverse actions" against other financial institutions "with

actual or potential business ties with the NRA or similar Gun Promotion Organizations"

are legally irrelevant, excepting, perhaps, "the actual consent orders executed by DFS

and Lloyds, Lockton, and Chubb." Dkt. No. 79 at 15. Further, defendants argue that

"[p]laintiff[']s attempt to look behind the Consent Orders and obtain access to all of

DFS's investigative material cannot conceivably advance any of the claims that survived

Judge McAvoy's Decision & Order." Dkt. No. 79 at 15. Defendants further argue that

> [i]t was the issuance of these Consent Orders that the NRA
> argues was selective enforcement of the Insurance Law.
> The Consent Orders speak for themselves as to both the
> substance of the orders and their effective dates.[] Nothing
> else relating to DFS's investigations is relevant to the
> surviving claims in this case.

Id. Additionally, defendants contend that, as to proportionality of plaintiff's demands,

---

with, or prepared for the purpose of dissemination to any non-governmental organization—including
without limitation Everytown—which relate to the NRA Insurance Investigation." Dkt. No. 73-2 at 35.
    Vullo Request 10: " All documents and communications relating to any Defendants' utilization of
other governmental agencies to investigate any Gun Promotion Organization, including without
limitation the NRA." Dkt. No. 73-2 at 36.
    Vullo Request 17: "All documents and communications relating to any Defendants' investigation of
the NRA's promotional activities." Dkt. No. 73-2 at 37.
    Vullo Request 18 "All documents and communications relating to any Defendants' investigation of
the NRA's lobbying activities." Dkt. No. 73-2 at 37.
    Vullo Request 19: "All documents and communications relating to the reasons You commenced
or recommended the commencement of the NRA Insurance Investigation. Dkt. No. 73-2 at 37.
    Vullo Request 20: "All documents and communications relating to revenues generated, or
expected to be generated, by the sale of any affinity insurance policy or program endorsed by the NRA."
Dkt. No. 73-2 at 38.
    Vullo Request 21: "All documents and communications relating to your determination that Lockton
should pay a civil monetary penalty of $7 million." Dkt. No. 73-2 at 38.
    Vullo Request 22: "All documents and communications relating to your determination that Chubb
should pay a civil monetary penalty of $1.3 million." Dkt. No. 73-2 at 38.

**Cuomo requests**:
Cuomo Requests 1-3, 5, 10, 11, 19-23. See Dkt. No. 73-2 at 51-54 ; Dkt. No. 79 at 14-15 n. 2 (noting that
Cuomo's response to these demands stated that he is not in possession of any responsive documents
other than the April Press Release).

"DFS's investigation of the NRA-endorsed affinity programs including Carry Guard began over six months before the issuance of the Guidance Letters or the Press Releases – which the Court has found to be the 'critical' issue here." Id. at 15.

Second, defendants argue that such investigative materials are subject to the law enforcement privilege, as well as the attorney-client and work product privileges. Dkt. No. 79 at 16-17. They contend that

> [p]roviding an investigative file to its target – mid-investigation – is a completely improper proposition that would clearly undermine the investigation . . . . If the target of an investigation could obtain premature access to its investigative file by merely filing a lawsuit, litigation would flourish and the law enforcement privilege would be too easily circumnavigated.

Dkt. No. 79 at 17. Defendants contend further that the requested documents or communications fall within the scope of the law enforcement privilege as they were "compiled for law enforcement purposes and their disclosure would reveal law enforcement techniques and procedures, impact the confidentiality of sources, and/or interfere with DFS's ongoing investigation of the NRA." Dkt. No. 79-9 at 3. Defendants suggest that the only investigative material relevant to plaintiff's remaining claims are the consent orders themselves. Id. at 15.

In response, plaintiff argues that the records requested relating to the investigations "go to the heart of" its Equal Protection and First Amendment claims, "as well as certain defenses set forth in Defendants' Answer to the NRA's Amended Complaint." Dkt No. 73-1 at 17. Plaintiff states, "as Judge McAvoy acknowledged in the Motion to Dismiss Order, information regarding the investigation and the timing of

33

the Consent Orders is relevant to the Court's analysis of the NRA's First Amendment claims." Id. (citing Dkt. No. 56 at 23).[9]  Plaintiff further contends that, even assuming that the documents would be protected by the law enforcement privilege, "courts still weigh a number of factors to determine whether the documents must nevertheless be produced."  Dkt. No. 81 at 12.

> The purpose of the law enforcement privilege is "'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" These are important goals of very real consequence. Nevertheless, the law enforcement privilege is not an instrument by which law enforcement agencies may shield themselves from public scrutiny. Therefore, courts must vigilantly review an assertion of the privilege and must often conduct an in camera inspection of the materials in question.

Floyd v. City of New York, 739 F. Supp. 2d 376, 379 (S.D.N.Y. 2010)

The Second Circuit has held that "the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question."  In re The City of New York, 607 F.3d 923, 944 (2d Cir. 2010) (citing In re Sealed Case, 856 F.2d 268, 271-72 (D.C. Cir. 1988)).  In meeting this burden, "the

---

[9]  As relevant here, the November 6, 22018, Decision & Order provides:

> Viewing the allegations in the light most favorable to the NRA, and drawing reasonable inferences in its favor, the temporal proximity between the Cuomo Press Release, Guidance Letters, and the Consent Orders plausibly suggests that the timing was intended to reinforce the message that insurers and financial institutions that do not sever ties with the NRA will be subject to retaliatory action by the state.

Dkt. No. 56 at 23.

party opposing disclosure must make a 'clear and specific evidentiary showing of the

nature and extent of the harm that is likely to be encountered if disclosure is permitted.'"

Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec., 259

F.R.D. 51, 57 (S.D.N.Y. 2009) (quoting Schiller v. City of New York, 252 F.R.D. 204,

207 (S.D.N.Y. 2008) modified on reconsideration, No. 04CIV.7921(RJS)(JCF), 2008 WL

4933645 (S.D.N.Y. Oct. 6, 2008), objections overruled sub nom. MacNamara v. City of

New York, No. 04 CIV. 7921 (RJS/JCF), 2009 WL 4789421 (S.D.N.Y. Dec. 14, 2009),

mandamus granted, order vacated sub nom. In re The City of New York, 607 F.3d 923

(2d Cir. 2010).

> To meet this burden, the party asserting the law
> enforcement privilege must show that the documents contain
> information that the law enforcement privilege is intended to
> protect. Such protected information includes information
> pertaining to "law enforcement techniques and procedures,"
> information that would undermine "the confidentiality of
> sources," information that would endanger "witness and law
> enforcement personnel [or] the privacy of individuals
> involved in an investigation," and information that would
> "otherwise . . . interfere[ ] with an investigation." "An
> investigation," however, "need not be ongoing for the law
> enforcement privilege to apply as 'the ability of a law
> enforcement agency to conduct future investigations may be
> seriously impaired if certain information' " is revealed to the
> public.

In re The City of New York, 607 F.3d at 944 (internal citation omitted).

The law enforcement privilege is a qualified privilege. See MacNamara v. City of

New York, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (internal citation omitted).  "Once the

party asserting the privilege 'make[s] a threshold showing that the privilege attaches,'

the court must then "'balance the public interest in nondisclosure against the need of

the particular litigant for access to the privileged information.'" Schiller, 252 F.R.D. at 207 (quoting Kunstler v. City of New York, 439 F. Supp.2d 327, 328 (S.D.N.Y.2006) and City of New York v. Beretta, 222 F.R.D. 51, 66 (E.D.N.Y. 2004) (internal quotation marks and citation omitted)).

Further, "the party seeking disclosure may rebut the presumption by establishing: (1) that the suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) that the party has a compelling need for the privileged information." Floyd, 739 F. Supp. 2d at 381 (citations omitted). "In balancing the interests favoring and disfavoring disclosure, the sensitivity of the information in question is a significant factor—the greater the sensitivity, the greater the protection, and vice versa." Id. at 381. "In determining whether to order disclosure, the court "'must also consider the value of appropriate protective orders and redactions.'" Schiller, 252 F.R.D. at 207 (quoting MacNamara, 249 F.R.D. at 79)); see also Floyd, 739 F. Supp. 2d at 381 ("[T]he court 'must consider the effect of a protective order restricting disclosure to the plaintiff and the plaintiff's attorney, or to the plaintiff's attorney alone. Such an order can mitigate many if not all of the oft-alleged injuries to the police and to law enforcement.'") (citation omitted).

### a. NRA-Endorsed Affinity Insurance Programs

Plaintiff appears to argue that its discovery demands[10] relating to defendants'

---

[10] Plaintiff contends that this argument addresses the following discovery demands: Vullo requests 1-3, 5, 10, 17-22; Cuomo Requests 1-3, 5, 10, 11, 19-23, 27; DFS requests 1-3, 5, 10, 11, 18-23, and 31.  Dk. No. 73-1 at 16.

investigation of NRA-endorsed affinity insurance programs are legally relevant because

> The NRA claims that Defendants improperly targeted the
> NRA for investigation, not because of any alleged violation
> of the law, but because Defendants did not like the NRA's

public advocacy regarding the Second Amendment.  Documents related to why such an investigation was commenced or the extent of such an investigation go to the heart of the NRA's claims.

Dkt. No. 73-1 at 17.  Further, plaintiff argues that because defendants argue, "as a defense to this action," that the "NRA, Lockton, and Chubb violated New York Law[,]" "[t]he NRA has every right to seek discovery regarding that defense, including information Defendants relied upon to make that conclusion and information that may demonstrate no such violation existed."  Id.  Plaintiff contends that its demands are "narrow" and "proportionate" "because the NRA provides that its investigation began on September 13, 2017; [t]herefore, any responsive documents would have been generated during a period less than seventeen (17) months, reducing the likelihood that the Requests encompass an unmanageable volume of material."  Id. at 18.  Plaintiff contends that defendants' response to their requests was insufficient as they provided "generalized objections regarding vagueness, ambiguity, and scope."  Dkt. No. 73-1 at 17.

Defendants argue that plaintiff's demands for documents relating to the defendants' investigation of Chubb, Lockton, and Lloyds or other NRA-endorsed affinity insurance programs are legally irrelevant and seek privileged documents.  Dkt. No. 79 at 14-19.  Defendants argue that further the plaintiff cannot demonstrate that documents relating to its investigation of Chubb, Lockton, and Lloyds are legally relevant because, as Judge McAvoy held, "[t]here is no plausible basis to conclude that

Supt. Vullo signed the Consent Orders to carry out a purported plan she and Gov.

Cuomo had to violate the NRA's constitutional rights, as opposed to signing these

documents in her role as DFS Superintendent." Dkt. No. 79 at 14-15. Defendants

provide that because the investigations of the NRA are ongoing, providing the material

relevant to the investigation of the NRA could compromise the investigation. Id. at 17.

Thus, defendants contend that its investigative files of NRA-endorsed insurance

programs are protected by the law enforcement privilege.  Id. at 15-16.

In its November 6, 2018, Decision & Order, this Court concluded that the fact

that DFS "exercised regulatory authority over Chubb and Lockton, two regulated entities

that fall within the same scope of DFS's authority as the entities addressed in the

Guidance Letters and Cuomo Press Release . . . does not help Plaintiff's claims

because Chubb and Lockton admitted violations of New York insurance laws." Dkt. No.

56 at 23.  However, the Court observed that the

> Amended Complaint alleged that "during the course of DFS
> investigations into Chubb and Lockton, 'DFS communicated
> to banks and insurers . . . that they would face regulatory
> action if they failed to terminate their relationships with the
> NRA, indicating that any business relationship whatever with
> the NRA would invite adverse action.'  This is a powerful
> factual allegation linking the recommendations in the
> Guidance Letter and Cuomo Press Release that regulated
> entities consider (and possibly end) their associations with
> the NRA, and the enforcement actions carried out by DFS
> against Chubb and Lockton.

Id. at 23.

Thus, this Court acknowledged that, although the enforcement actions against

Chubb and Lockton themselves could not support a First Amendment claim due to their

admissions of violations of the law,[11] plaintiff's allegations that defendants used its investigations of Lockton and Chubb essentially as leverage to prevent other businesses from engaging in lawful transactions with plaintiff could support their claims. Dkt. No. 56 at 23.  Therefore, documentation and communications between defendants and any financial institutions or insurers that were doing or potentially doing business with plaintiff is potentially relevant to plaintiff's First Amendment claim as it may support plaintiff's claim that defendants sought to suppress the plaintiff's gun promotion advocacy by convincing financial institutions and insurers to avoid engaging in lawful affinity insurance plan contracts with plaintiff for fear that defendants would investigate or perpetuate enforcement actions against them.

However, as this Court has made clear, it cannot be said that communications between the NRA and financial institutions or insurers such as Chubb, Lockton, and Lloyds –  who have already entered into consent orders admitting to violations of New York State Law – is relevant to plaintiff's First Amendment claims.  Unlike communications between defendant and financial institutions or insurers relating to the Chubb, Lockton, or Lloyds enforcement actions would be contact between defendants and financial institutions/insurers indicating or implying that the enforcement actions it took against Chubb, Lockton, and Lloyds would occur to those entities if they did not

---

[11]    Plaintiff points out that defendants assert "that the NRA, Lockton, and Chubb violated New York law."  Dkt. No. 73-1 at 17, and, thus, it "has every right to seek discovery regarding that defense, including information Defendants relied upon to make that conclusion and information that may demonstrate no such violation existed."  Id. Thus, although the Court finds that material related to defendants' contention that plaintiff violated the law would likely be relevant to this defense, plaintiff has failed to demonstrate that there would be any relevance to materials relating to defendants' determination that Lockton, Chubb, or Lloyds violated the law, as these entities admitted to various violations of New York State Insurance Law. Dkt. No. 56 at 8 (citing Dkt. No. 37-4 at ¶¶34-40, Dkt. No. 37-5 at ¶¶ 18-19).

cease or avoid business transactions with plaintiff, plaintiff has failed to show even the possibility of a nexus with its First Amendment claims regarding its communications directly with Chubb, Lockton, and Lloyds.

Accordingly, plaintiff has demonstrated the potential relevance of communications and documentation between defendants and financial institutions or insurers doing business or potentially doing business with plaintiff but has failed to demonstrate relevance of defendants' investigative file of Chubb, Lockton, and Lloyds as these organizations have entered into consent orders with defendants that admit to violations of New York State law. Accordingly, insofar as plaintiff seeks to compel defendants to provide documents[12] relating to its investigation of Chubb, Lockton, and Lloyds, that request is denied. Despite finding potential relevancy of material and communications for financial institutions or insurers doing business or potentially doing business with plaintiff other than Lockton, Chubb, and Lloyds, defendants have raised several claims of privilege with respect to these documents or communications.[13]

---

[12]  DFS requests 1-3, 4, 10-11, 18-23, and 31; Vullo requests 1-3, 5, 10, 17-22; and Cuomo requests 1-3, 5, 10-11, 19-23.

[13]    In its reply brief, plaintiff cites this Court's November 6, 2018, Decision & Order, arguing, in connection with their demand for discovery related to DFS's investigation of the NRA and its affinity insurance programs: "Defendants cannot plausibly assert that the very information Judge McAvoy found helpful in allowing the NRA's First Amendment claims to move forward is now somehow 'not legally relevant.'" Dkt. No. 81 at 7. In a footnote, plaintiff quotes portions of Judge McAvoy's Decision & Order:

> See, e.g., Order at 28 ("Defendants' actions in imposing the Consent Orders were taken in an effort to suppress the NRA's gun promotion advocacy."); see also id. (the "enforcement actions against Lockton and Chubb . . . [were done] to impose a content-base restriction on NRA-affiliated businesses based on viewpoint animus that serves no substantial governmental interest.").

Dkt. No. 81 at 7 n.4. However, a full review of the Decision & Order shows that the Court's conclusions were not as far reaching as the cited partial quotes may suggest.

Defendants' investigation of the NRA and its alleged violations of the New York State Insurance Law is ongoing.  Dkt. No. 79 at 17.  Although plaintiff facially challenges defendants' argument that documents or communications relating to defendants' investigation of the NRA would be subject to the law enforcement privilege, it does not rebut this assertion with arguments that the privilege does not apply.  Dkt. No. 81 at 11.  Instead, plaintiff largely argues that the documents are necessary to the First Amendment claims and defendants' defense.  Dkt. No. 73-1 at 17.

The Court finds that plaintiff has arguably demonstrated that such documents and communications relating to defendants' investigation of the NRA other than its investigative file connected with its investigation of Lockton, Chubb, and Lloyds would be relevant to its First Amendment claim and that portion of defendants' defense that contends that the NRA violated New York State law.  However, the Court cannot determine in the abstract the applicability of the law enforcement privilege, or whether

───────────────────────

> The Amended Complaint contains sufficient allegations plausibly supporting the conclusion that Defendants' Actions were taken in an effort to suppress the NRA's gun promotion advocacy. See Am. Comp. at ¶ 21, 76, 78, 86.  Moreover, the NRA's allegations that Defendants' enforcement actions against Lockton and Chubb impeded the NRA's ability to enter contracts for lawful affinity insurance plans, but did not take similar action against other membership organizations that did not engage in gun promotion advocacy, see Am. Compl. at ¶ 36-37, provides a plausible basis to conclude that Defendants sought to impose a content-based restriction on NRA-affiliated businesses based on viewpoint animus that serves no substantial government interest."

Dkt. No. 56 at 28.  Here, the Court was finding that plaintiff's allegations of selective enforcement, and contention that defendants were using their enforcement actions against Lockton and Chubb to "scare" other financial institutions/insurers to avoid doing business with the NRA, supported plaintiff's claim of First Amendent viewpoint animus.  The Court did not conclude that the enforcement actions against Lockton and Chubb themselves, wherein these entities admitted to violating New York State law, plausibly amounted to content-based restriction and viewpoint animus.

41

plaintiff's interests overcome the privilege to these general categories of potential documents. Without the documents before the Court, it is not clear that a protective order or confidentiality order could allay defendants' concerns. The target of defendants' ongoing investigation is plaintiff itself, and a confidentiality or protective order may not prevent the NRA from accessing such materials even if the Court were to limit access to counsel and prohibit the NRA from access.  As neither party has provided anything beyond extremely broad, vague categories of information, the Court can not unilaterally assess the varying interests and assess whether a confidentiality or protective order is proper.

Accordingly, plaintiff has demonstrated that there may materials relevant to their First Amendment claims relating to their demands for defendants' investigations of financial institutions or insurers affiliated with plaintiff other than Lockton, Lloyds, and Chubb, and defendants have further made an initial showing that at least certain portions of these documents may be protected by privilege, in camera review of such documents and a privilege log is required for this Court to further assess both the relevancy of the documents and the raised privileges.  Accordingly, defendants are directed to turn over to the Court for in camera review, within twenty-one (21) days from the entry date of this Memorandum-Decision & Order, all documents relating to its investigation of NRA-endorsed  ffinity programs – excepting those documents directly connected with its investigation of Lockton, Chubb, and Lloyds – along with a privilege log specifically asserting why defendants believe the privilege applies to such document or communication and why redactions or a protective order may or may not address

their concerns.

### b.  Non-NRA Endorsed Affinity Insurance Programs

Plaintiff argues that defendants' investigation into affinity insurance programs not affiliated with plaintiff is relevant to its remaining claims because plaintiff entered into a "Supplemental Consent Order which imposes far lesser penalties (and no meaningful protective-sale bans) regarding non-NRA affinity programs" which plaintiff argues "underscores that documents exist which shed light on the disparate approach taken with respect to NRA and non-NRA programs."  Dkt. No. 81 at 9, n.13.  Plaintiff contends that such discovery is a "key element" to their selective enforcement claim.  Dkt. No. 73-1 at 12.

Defendants argue that demands for investigative files of parties "not parties to this action and for conduct that has no nexus to the NRA" are "improper," especially if the selective enforcement claims were dismissed, as defendants argue that the request is the only claim "to which these records could be relevant to."  Dkt. No. 79 at 23.  They contend that the only relevant documents they should have to produce are the "Supplemental Consent Order and any other documents that identify affinity group policies or affinity group sponsors that are sufficiently comparable to Carry Guard and the NRA under established selective enforcement case law."  Id. at 24.  Defendants provide that

> unlike the Carry Guard program and other NRA-endorsed
> programs, none of the policies brokered by Lockton were
> specific to firearm usage that provides liability coverage for

> bodily injury or property damage from use of a firearm, or for
> liability coverage for bodily injury or property damage
> expected or intended from the insured's standpoint to extend
> beyond those occasions where bodily injury results from the
> use of reasonable force to protect persons or property.  Id.

Additionally, defendants advise that

> the Supplemental Consent Order establishes that unlike the
> NRA's conduct, DFS did not identify any other sponsor of an
> affinity-style insurance product that committed the type and
> degree of unauthorized insurance activity with respect to a
> Lockton insurance policy containing illegal criminal defense
> coverage that was committed by the NRA with respect to
> Carry Guard.

Id. at 24.

In its May 10, 2019, Decision & Order, the Court dismissed without prejudice plaintiff's selective enforcement claim.  Dkt. No. 112.  Although the Court dismissed the claim without prejudice to repleading, as the current operative complaint does not have before it a valid selective enforcement claim, plaintiff fails to show that discovery on this matter is warranted to the extent plaintiff seeks such material for its selective enforcement claim.

Insofar as plaintiff contends that defendants misinterpreted Judge McAvoy's November 6, 2018, Decision& Order (Dkt. No. 56) "limiting the NRA's equal protection claims (and not its First Amendment claim," and that the Court has not limited its ability to seek discovery "relating to the investigation leading up to the Consent Orders," as defendants' "discussions with financial institutions that relate to the NRA during the course of the investigations, i.e. 'the enforcement actions . . . result[ing] in . .[the] consent orders" are the exact type of 'backroom exhortations' that the NRA describes in

44

its complaint," Dkt. No. 81 at 7, it is clear that the Court has dismissed the selective

enforcement claims that served as a basis for its equal protection claim, which relates

to the selective enforcement of certain New York insurance laws. Dkt. Nos. 56, 112.

The Court found that plaintiff did not allege sufficient "factual allegations indicating that

either Gov. Cuomo or Supt. Vullo had knowledge of the specific violations identified in

paragraph 59 of the Amended Complaint." Dkt. No. 112 at 9. The Court further held

that,

> as Plaintiff has failed to specifically plead that either Gov.
> Cuomo or Supt. Vullo knew of non-firearm-related Insurance
> Law violations by the comparators when DFS commenced
> its investigation into the NRA's insurance programs, or
> allege facts plausibly supporting the conclusion that these
> defendants were aware of such violations by the
> comparators yet consciously declined to enforce the
> Insurance Law against the comparators, the equal protection
> claims must be dismissed.

Insofar as plaintiff seeks to compel responses to requests relating to defendants'

investigation of non-NRA related affinity insurance programs to support selective

enforcement claims, plaintiff's motion to compel is denied, as plaintiff has failed to show

the relevance of such discovery to any remaining claim. As the Court finds that plaintiff

has failed to demonstrate the relevance of these documents, it denies plaintiff's

discovery request; therefore, a protective order is not needed with respect to such

demands.

## E.  Communications with Financial Institutions/Insurers

Plaintiff seeks to compel (Vullo, Cuomo, and DFS Requests numbers 4, 6, 7)

from defendants information exchanged between defendants and financial institutions and insurers regarding their business arrangements with plaintiff or other gun promotion organizations.  Dkt. No. 73-1 at 20-21.  Plaintiff argues that these communications or documents are "directly relevant to NRA's First Amendment claims" as plaintiff "alleges that Defendants are coercing Financial Institutions to stop doing business with the NRA."  Id. at 21.  Further, plaintiff argues that communications between defendants and "non-governmental organizations related to other Gun Promotion Organizations will directly demonstrate Defendants' viewpoint discrimination against organizations, like the NRA, the [sic] support citizens' rights under the Second Amendment."  Id.

In response, defendants argue that "[w]ith the exception of the documents that relate to DFS's investigation of Chubb, Lockton, and Lloyds, which gave rise to the Consent Orders addressed above, all documents responsive to these requests including the two DFS Guidance Letters have been produced to the NRA."  Dkt. No. 79 at 25.  Defendants also contend that such communications would be protected by the law enforcement privilege.  Id. at 16.

As to communications between financial institutions connected with the DFS investigation of Chubb, Lockton, and Lloyds, as this Court held in its November 6, 2018, Decision & Order, Chubb, Lockton, and Lloyds entered into Consent Orders admitting that they engaged in illegal activity with plaintiff.  Dkt. No. 56.  Thus, it is unclear to the Court how such investigative documents would shed light on plaintiff's remaining First Amendment claims or defendants' defense that plaintiff or Chubb, Lockton, and Lloyds violated the New York State Insurance Law.  However, plaintiff appears to argue that,

regardless of the illegality of the conduct, defendants targeted plaintiff and organizations with which it had business connections or potential business connections because of the NRA's viewpoint, not because of any illegal or allegedly illegal activity. Dkt. No. 37.  Thus, although the Court determines that plaintiff has failed to demonstrate the relevance of communications between defendants and Lockton, Chubb, and Lloyds due to their admitted violations, certain communications between defendants and other nonparty insurers/financial institutions may be relevant to plaintiff's First Amendment claims.

Communications (beyond the April 2018 Letters and Press Release) between defendants and financial institutions or insurers other than Chubb, Lockton, or Lloyds could potentially support a claim that defendants interfered with potentially legal business arrangements with banks/financial institutions doing business, or potentially doing business, with plaintiff. Keeping in mind the liberal discovery standards, it is arguable that certain information exchanged between defendants and other insurers or financial institutions about their relationship with plaintiff may be relevant to their First Amendment claims.  However, as defendants contend that such communications are protected by the law enforcement privilege – a claim the Court cannot determine based on the record before it – defendants must provide to the Court for in camera review, within twenty-one (21) days, documents responsive to this request, along with a detailed privilege log explaining the bases for their claims of privilege.

Insofar as plaintiff seeks communications between defendants and financial institutions/insurers about their business relationships with non-NRA gun promotion

organizations, the Court finds that plaintiff has failed to demonstrate how communication between defendants and financial institutions or insurers about their business relationship with non-NRA gun promotion organizations is relevant to their First Amendment claims.  As discussed, plaintiff's selective enforcement claims have been dismissed.  Accordingly, plaintiff's motion to compel is denied with respect to demands seeking communications between defendants and financial institutions or insurers about their relationship with non-NRA gun promotion organizations.  As no protective order is needed due to this denial, defendants' motion for a protective order is also denied with respect to these requests,

### F.  Adverse/enforcement Actions against Financial Institutions

Plaintiff seeks to compel defendants to provide information or documentation regarding adverse or enforcement actions taken against any "Financial Institutions with actual or potential business ties with the NRA or similar Gun Promotion Organizations." Dkt. No. 73-1 at 21 (citing Vullo requests 8-9, DFS requests 8-9, Cuomo requests 8-9). In response, defendants contend that "[t]he only investigation of affinity groups other than the NRA conducted since 2017 was a spin-off of the investigation of the NRA-enforced programs including the Carry Guard program." Dkt. No. 79 at 23. Defendants further advise that the "spin-off investigation" related to violations of the insurance law involving Lockton and "its excess lines business including affinity group insurance unrelated to the NRA." Id. at 23.

Plaintiff fails to demonstrate the relevance of any adverse or enforcement

actions defendants may have taken or considered taking against financial institutions or insurers doing business with "similar Gun Promotion organizations" and non NRA-organizations.  Plaintiff's First Amendment claims specifically state that defendants targeted the NRA for its viewpoints and political beliefs and advocacy, and that defendants "caused financial institutions doing business with the NRA to end their business relationships with the NRA, or explore such action."  Dkt. No. 37 at 29-30 (emphasis added).  These remaining claims do not express how defendants' alleged conduct regarding financial institutions doing business with non-NRA organizations supports their First Amendment claims.  Accordingly, insofar as plaintiff seeks to compel discovery regarding any adverse or enforcement actions defendants may have taken against financial institutions doing business with non-NRA organizations "similar Gun Promotion organizations," such request is denied for failure to demonstrate relevancy.

Insofar as plaintiff seeks to compel documents and communications relevant to adverse actions against the NRA, such documents would appear to be relevant to plaintiff's First Amendment claims.  Defendants provide, "[w]ith the exception of the documents that relate to defendants' investigation of Chubb, Lockton, and Lloyds, which gave rise to the consent orders addressed above, all documents responsive to these requests including the two DFS Guidance Letters have been produced to the NRA."  Dkt. No. 79 at 25.  Thus, although such documents and communications would appear to be legally relevant to plaintiff's First Amendment claims, defendants affirm that no further documents exist.  Accordingly, within fourteen (14) days from the date of

this Memorandum-Decision & Order, defendants are directed to provide to the Court a signed affidavit stating that, there exist no documents relevant to adverse or enforcement actions against banks doing business or potentially doing business with the NRA, other than Lockton, Chubb, and Lloyds beyond what has already been provided to plaintiff.[14]

### G.  Communications between Defendants Related to this Action

Plaintiff seeks to compel (1) from Vullo "[a]ll documents and communications [defendants Vullo, Cuomo, and DFS] sent to, received from, or exchanged with, or prepared for the purpose of dissemination to any Defendants relating to the Action"; (2) from Cuomo "[a]ll documents and communications relating to the NRA Insurance Investigation, the Lockton Consent Order, or the Chubb Consent Order"; and (3) from DFS "[a]ll communications You sent to, received from, or exchanged with, or prepared for the purpose of dissemination to any Defendants relating to the Action." Dkt. No. 73-2 at 21, 39, 56.  Plaintiff contends that such communications or documents "are direct evidence of and demonstrate Defendants' intent behind their censorship campaign against the NRA and are, therefore, highly relevant materials that must be produced." Dkt. No. 73-1 at 23.

Defendants argue that plaintiff's demands for all materials and communications exchanged between defendants relating to defendants' investigation of the NRA and its

---

[14]  Insofar as plaintiff seeks documents relevant to defendants' investigation of Lockton, Lloyds, and Chubb that resulted in the consent orders, these demands are addressed in section IV, C, 2, a, supra.

investigations must be denied as such material relates to pending litigation, and, thus, is protected by the attorney-client, the common interest, and the deliberative process privileges.  Dkt. No. 79 at 26.  Plaintiff says no inter-agency or intra-agency privilege applies, that these privileges are likely "conflated" with exemptions existing under the Freedom of Information Act.  Dkt. No. 73-1 at 31.

As indicated above, the Court cannot, on the record before iy, assess whether these privileges apply to such a broad, amorphous category of information and communications.  As it is unlikely that all communications exchanged between or prepared by defendants in relation to this action or its investigation of Lockton, Chubb, and Lloyds are relevant to plaintiff's First Amendment claims.  Further, it cannot be said that a request for all communications at all related to this action is proportional to plaintiffs' remaining claims.  However, because the Court does not have such documents or a privilege log before it, the Court is unable to determine whether any such documents are relevant, or if such documents are protected by the deliberative process privilege, law enforcement privilege, or attorney- client or work-product privileges.  Accordingly, insofar as plaintiff seeks the Court to compel defendants to respond to this demand, the motion is denied with leave to renew.  Further, defendants' cross-motion for a protective order is similarly denied with leave to renew.  Defendants are ordered to submit to the Court for in camera review, within twenty-one (21) days, all communications exchanged between defendants related to plaintiff's First Amendment claims, from September 13, 2017, until the filing date of this Memorandum-Decision & Order, along with a detailed privilege log setting forth the bases for these assertions of

privilege should defendants wish to include redactions, defendants must also submit

unredacted versions such that the Court may assess whether such redactions are

proper.  Following in camera review of the privilege log and documents, the Court will

reconsider parties' arguments on both motions, and, if needed, request supplemental

briefing from the parties.

## F.  Attorneys' Fees

Plaintiff demands attorneys' fees and costs in connection with filing its motion.

Dkt. No. 73-1 at 32.  Defendant opposes, and contends that, even if the Court orders

production, its responses to the demands were made in good faith, and, thus, do not

warrant sanctions.  Dkt. No. 79 at 27-28.  The Court does not find that issuing a

sanction requiring defendants to pay plaintiff's attorney's fees and costs in connection

with its motion to compel are warranted at this time.  Although the Court is unable to

review the vast majority of the parties claims due to the lack of privilege log, the Court

does not conclude that defendants' objections to plaintiff's demands or failure to include

a privilege log was done in bad faith.  Accordingly, plaintiff's request is denied..

## V.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Motion to Compel (dkt. no. 73) is **DENIED**.  Insofar as

plaintiff seeks to compel defendants to provide discovery relating to: (1) referral of

matters to other government agencies unrelated to the NRA, (2) investigation of non-

NRA endorsed affinity programs, (3) communications between defendants and financial institutions or insurers regarding non-NRA gun promotion organizations,

(4) enforcement actions or adverse actions taken against financial institutions or insurers doing business with non-NRA gun promotion organizations, these demands are **DENIED** with prejudice to this motion, but without prejudice to renew should plaintiff successfully move to amend its amended complaint to reallege a selective enforcement claim, and plaintiff's remaining demands raised within the motion to compel are **DENIED** without prejudice and leave to renew following the Court's in camera review; and it is further

ORDERED, that plaintiff's request for sanctions (dkt. no. 73-1 at 32-33) is **DENIED**, and it is further

ORDERED, that defendants' Motion for a Protective Order (dkt. no. 78) is **DENIED**, without prejudice and with leave to renew, following the Court's in camera review; and it is further

ORDERED, that, within **twenty-one (21)** days from the filing date of this Memorandum-Decision & Order, defendants are to provide to the Court, a detailed privilege log, addressing any documents it seeks to withhold on the basis of any privilege, along with all documents responsive to the following categories of demands: (1) April 2018 guidance letters and April 19 press release; (2) defendants' investigations of affinity insurance programs endorsed by plaintiff; (3) communications between defendants and financial institutions/insurers other than Chubb, Lockton, and Lloyds about the financial institution or insurers' relationship or potential relationship with

plaintiff; (4) communications between defendants related to this action excepting its investigation of Chubb, Lockton, and Lloyds; and it is further

**ORDERED**, that within **fourteen (14)** days from the filing date of this Memorandum-Decision & Order, defendants are to provide to the Court a signed affidavit indicating that they conducted a diligent search but do not possess responsive documents, or have already provided all responsive documents, for the following categories of material: (1) referral of matters involving plaintiff to other government agencies; (2) any adverse or enforcement actions taken against financial institutions doing business or potentially doing business with plaintiff;

**ORDERED**, that, if the Court determines, following in camera review, that any supplemental briefing is required, the Court shall notify the parties and provide such opportunity for additional briefing on any claims raised within the Motion to Compel and Motion for Protective Order than have been dismissed without prejudice.

**IT IS SO ORDERED**.

Dated: August 8, 2019
         Albany, New York



Christian F. Hummel
U.S. Magistrate Judge