## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § | |
| Plaintiff, | § | CIVIL CASE NO.  18-CV-00566-TJM- |
| v. | § | CFH |
| ANDREW CUOMO, both individually and | § | |
| in his official capacity; MARIA T. VULLO, | § | |
| both individually and in her official | § | |
| capacity; and THE NEW YORK STATE | § | |
| DEPARTMENT OF FINANCIAL | § | |
| SERVICES, | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTIONS
## TO MAGISTRATE JUDGE'S RULINGS ON MOTION TO COMPEL

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................................1

II. BACKGROUND.......................................................................................................................3

      A.    Defendants Seek to Strangle the NRA's Speech By Targeting Financial-
            Services and Insurance Providers ............................................................................3

      B.    The NRA Seeks Discovery From Defendants .........................................................4

      C.    The NRA Submits Its Motion to Compel, and Defendants Submit Their
            Motion for Protective Order...................................................................................5

      D.    The Magistrate Judge Submits An Order Ruling On The Motion To Compel
            And Motion for Protective Order............................................................................6

III. LEGAL STANDARD...............................................................................................................7

IV. ARGUMENT ...........................................................................................................................8

      A.    Relevant Evidence For The NRA's First Amendment Claims And
            Defendants' Defenses ............................................................................................9

      B.    The August 8 Order Failed To Apply Applicable Law Concerning The
            Relevance of Plaintiff's Requested Discovery To Its First Amendment
            Retaliation Claim .................................................................................................13

V. CONCLUSION........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Backpage.com, LLC v. Dart,*
  807 F.3d 229 (7th Cir. 2015) .................................................................................10, 11, 16

*Bantam Books, Inc. v. Sullivan,*
  372 U.S. 58 (1963).................................................................................................................12

*Colozzi v. St. Joseph's Hosp. Health Ctr.,*
  No. 5-08-CV-1220, 2009 WL 2045315 (N.D.N.Y. May 27, 2009) ...........................8

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,*
  282 F.3d 83 (2d Cir. 2002)...............................................................................................1, 10

*Franzon v. Massena Memorial Hosp.,*
  32 F. Supp. 2d 528 (N.D.N.Y. 1998) ............................................................... *passim*

*Garrasi v. Cavalry Portfolio Servs., LLC,*
  No. 115CV1319BKSDEP, 2016 WL 7742782 (N.D.N.Y. Apr. 4, 2016) ................8

*Hammerhead Enterprises, Inc. v. Brezenoff,*
  707 F.2d 33 (2d Cir. 1983)......................................................................................................1

*Hartman v. Moore,*
  547 U.S. 250 (2006).................................................................................................................9

*Hickman v. Taylor,*
  329 U.S. 495 (1947).................................................................................................................9

*N.A.A.C.P. v. Claiborne Hardware Co.,*
  458 U.S. 886 (1982)..........................................................................................................12, 15

*Noble v. Gonzalez,*
  No. 1:07-cv-0111, 2013 WL 4517774 (E.D. Cal. Aug. 26, 2013) ...........................9

*Okwedy v. Molinari,*
  333 F.3d 339 (2d Cir. 2003)................................................................................................12

*Rattner v. Netburn,*
  930 F.2d 204 (2d Cir. 1991)................................................................................................12

*T.Z. v. City of N.Y.,*
  No. CV-05-5111, 2007 WL 2077730 (E.D.N.Y. July 18, 2007)..............................8

*Tomaino v. Williams*,
   No. 05 CV 3916, 2007 WL 2743602 (E.D.N.Y. Sept. 18, 2007) .........................11, 12, 15, 17

*U.S. v. Kross*,
   14 F.3d 751 (2d Cir.), *cert. denied*, 513 U.S. 828 (1994) ........................................................11

*U.S. v. McGraw-Hill Co., Inc.*,
   No. CV 13-779, 2014 WL 1647385 (C.D. Cal. Apr. 15, 2014)............................11, 12, 15, 17

*Wagner Farm Properties, LLC v. Tri-State Solarcrete, LLC*,
   No. 1:09-CV-0485, 2010 WL 11541929 (N.D.N.Y. Dec. 6, 2010) ..........................................8

## Other Authorities

Fed. R. Civ. P. 26...............................................................................................................8, 9, 11

Fed. R. Civ. P. 72......................................................................................................................7

# I.

## PRELIMINARY STATEMENT

The core allegation in this case is that Defendants, in order to suppress and punish pro-gun speech, undertook a campaign of adverse regulatory actions—some public, some covert—that targeted insurance companies and banks doing business with the NRA.  This Court has repeatedly sustained First Amendment implicit-censorship and retaliation claims by the NRA arising from these events.  Accordingly, the NRA is entitled to discovery concerning each element of those claims, including: whether Defendants communicated to the NRA's business partners that "some form of punishment or adverse regulatory action w[ould] follow the failure"[1] to sever ties with the NRA; and, whether Defendants' actions were "prompted or substantially caused by" the NRA's political speech.[2]

Not surprisingly, Defendants stridently resisted discovery that would shed light on these topics.  All told, they produced a paltry ninety-five (95) documents to the NRA.[3]  On January 22, 2019, the NRA moved to compel remaining responsive materials, which Defendants claimed to have withheld pursuant to assorted investigative and law-enforcement privileges.  In his August 8, 2019 order substantially denying the NRA's Motion to Compel, the Magistrate Judge provided for *in camera* review of certain categories of purportedly privileged documents—but ruled that numerous other categories, irrespective of any claimed privilege, were ***not relevant*** to discovery. It is this ruling to which the NRA objects.

---

[1] *See Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983).

[2] *See, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) (setting forth elements of a First Amendment retaliation claim).

[3] By contrast, the NRA has produced 94,910 individual documents to Defendants.

1

Notably, the Magistrate Judge conceded that certain documents sought by the NRA might be relevant to the NRA's Equal Protection claims, which were dismissed without prejudice by this Court during the pendency of the NRA's Motion to Compel.[4]  Although the NRA intends to replead such claims—which concern unconstitutional, disparate enforcement responses to identical alleged regulatory violations by NRA vs. non-NRA entities—the NRA believes that the Court need not await its amended pleading before such discovery can proceed.  Indeed, this Court has explicitly held that documents showing disparate treatment of similarly situated persons are discoverable in First Amendment cases, like this one, where a plaintiff points to such disparities as evidence of retaliatory animus.[5]

Magistrate Judge Hummel has already ordered Defendants to produce certain disputed documents *in camera*, along with logs asserting purported privileges.  Because the portion of the August 8 Order that deems other categories of documents sought by the NRA to be "irrelevant" to the NRA's First Amendment claims is erroneous, contrary to law, and unduly restricts vital discovery, this Court should sustain the NRA's objections and order Defendants to supplement their submissions to the Magistrate Judge with responsive documents (and any applicable privilege-log entries) in response to relevant requests.

---

[4] *See, e.g.*, Memorandum-Decision & Order, dated August 8, 2019, ECF No. 121 (the "August 8 Order"), at 28, 43–45, 48, 53.

[5] *See Franzon v. Massena Memorial Hosp.*, 32 F. Supp. 2d 528, 532 (N.D.N.Y. 1998) (McAvoy, C.J.); *see also* discussion *infra* at Section IV.A.

## II.

## BACKGROUND

### A.   Defendants Seek to Strangle the NRA's Speech By Targeting Financial-Services and Insurance Providers.

As the NRA's operative complaint recounts, among the highest-profile targets of Defendants' blacklisting campaign were Lockton,[6]  Chubb,[7] and Lloyd's,[8] which are major insurance-industry players that serve a wide variety of membership groups, including the NRA, who provide insurance to their members.  Although these firms provided identical or near-identical insurance programs to numerous membership groups, Defendants subjected them to lopsided penalties for purported regulatory violations by NRA-related programs, while imposing lighter penalties (or none at all) for comparable dealings with non-NRA clients.[9]  Incredibly, Defendants also coerced consent decrees from Lockton, Chubb, and Lloyd's that prohibit future *lawful* insurance business with the NRA. Defendants made no secret of their motivation: they believed that New York financial institutions would "send[] the wrong message" by doing business with

---

[6] "Lockton" shall refer to Lockton Affinity, LLC and Lockton Companies, LLC.  As set forth in the NRA's First Amended Complaint and Jury Demand, dated July 20, 2018, ECF No. 37 ("Amended Complaint"), Lockton is a major player in the affinity-insurance market, and brokered and administered similar insurance programs for dozens of entities, including the NRA.  On May 2, 2018, Lockton entered into consent order with DFS that forbade it from undertaking future lawful affinity-insurance business with the NRA, but imposed no analogous constraints on similar programs administered for non-NRA entities. *See* Amended Complaint, ECF No. 37, ¶¶ 58–61.

[7] "Chubb" shall refer to Chubb Group Holdings, Inc. and Illinois Union Insurance Company.  Chubb underwrites insurance for numerous clients, but is currently prohibited by DFS from undertaking future, lawful affinity-insurance business with the NRA. *See* Amended Complaint ¶¶ 62–64.

[8] Lloyd's" shall refer to the Lloyd's insurance marketplace, including certain underwriting syndicates and managing agents therein.  *See* Amended Complaint ¶ 65.

[9] *See* Amended Complaint, ECF No. 37, ¶¶ 58–61. ¶¶.

3

"gun-promotion organizations," like the NRA, that engage in disfavored political speech.[10]  These communications were accompanied by backroom exhortations to Lockton, Chubb, Lloyd's and others, making clear that DFS-regulated entities doing business with pro-gun groups, especially the NRA, should cut ties—or face the full range of consequences a displeased regulator may impose.[11]  Based on these events, the NRA alleged (and this Court upheld) claims that Defendants violated the First Amendment by seeking to choke off access to funds sustaining disfavored political speech,[12] and by taking adverse actions in retaliation for disfavored speech.[13]

**B.    The NRA Seeks Discovery From Defendants.[14]**

On November 21, 2018, the NRA served on each Defendant individual sets of discovery requests.[15]  The requests covered several topics central to the NRA's claims, including its First Amendment implicit-censorship and retaliation claims against Defendants.[16]  Despite the parties'

---

[10] *See* Press Release, *GOVERNOR CUOMO DIRECTS DEPARTMENT OF FINANCIAL SERVICES TO URGE COMPANIES TO WEIGH REPUTATIONAL RISK OF BUSINESS TIES TO THE NRA AND SIMILAR ORGANIZATIONS*, NEW YORK DEPARTMENT OF FINANCIAL SERVICES, May 7, 2018, available at https://www.dfs.ny.gov/about/press/pr1805071.htm.

[11] *See* Amended Complaint, ECF No. 37, ¶¶ 75, 86, 96, 126.

[12] *See* Amended Complaint, ECF No. 37, Count I.

[13] *See* Amended Complaint, ECF No. 37, Count II.

[14] A full summary of the events leading up to the NRA's Motion to Compel can be found in the Memorandum of Law in Support of Plaintiff's Motion to Compel the Production of Documents, dated January 22, 2019, ECF No. 73–1 ("Motion to Compel").

[15] *See* National Rifle Association of America's First Request for Production to Defendant Maria T. Vullo, dated November 21, 2018 (the "Vullo Reqs."), attached to the Declaration of John C. Canoni In Support of Plaintiff's Objections to Magistrate Judge's Ruling on Motion to Compel dated August 22, 2019 ("Canoni Decl.") as Exhibit A; National Rifle Association of America's First Request for Production to Defendant Andrew Cuomo, dated November 21, 2018 (the "Cuomo Reqs."), attached to the Canoni Decl. as Exhibit B; National Rifle Association of America's First Request for Production to Defendant New York Department of Financial Services, dated November 21, 2019 ("DFS Reqs."), attached to the Canoni Decl. as Exhibit C.

[16] For a summary of the seven categories of requests made by the NRA to Defendants, see Motion to Compel, ECF No. 73–1, at 3.

efforts to meet and confer concerning the NRA's requests, Defendants' production of documents was—and still remains—woefully insufficient.[17]  At the same time, Defendants offered a litany of unsubstantiated objections and privilege assertions in order to justify withholding ***thousands*** of potentially responsive documents.[18]  Once Defendants made it clear that they had no intention of producing additional documents or revising their responses to the requests, the NRA submitted the issue to the Court.

**C.    The NRA Submits Its Motion to Compel, and Defendants Submit Their Motion for Protective Order.**

The NRA submitted its Motion to Compel on January 22, 2019, and sought the immediate production of documents withheld by Defendants pursuant to improper objections and assertions of privilege.[19]  Defendants opposed the Motion to Compel,[20] and the NRA submitted its reply in support of the Motion to Compel.[21]

Contemporaneously with its Response to the Motion to Compel, Defendants submitted its Motion for Protective Order on February 4, 2019, in which Defendants contended that the documents sought by the NRA's requests should be withheld pursuant to various objections and

---

[17] As discussed in the Motion to Compel, Defendants produced a mere ninety-five (95) documents to the NRA.  These documents were stripped of the requested metadata, which precludes the NRA from examining metadata artifacts necessary for a full evaluation of the documents.  *See* Motion to Compel, ECF No. 73–1, at 4–7.

[18] *See* Motion to Compel, ECF No. 73–1, at 6.

[19] *See* Motion to Compel, ECF No. 73.

[20] *See* Memorandum of Law In Opposition to Plaintiffs' Motion to Compel, dated February 4, 2019, ECF No. 79.

[21] *See* Reply Memorandum of Law In Support of Plaintiff's Motion to Compel the Production of Documents, dated February 8, 2019, ECF No. 81.

assertions of privilege.[22]  The NRA opposed the Motion for Protective Order,[23] and Defendants

filed a reply in support of the Motion for Protective Order.[24]

### D.  The Magistrate Judge Submits An Order Ruling On The Motion To Compel And Motion for Protective Order.

On August 8, 2019, Magistrate Judge Hummel filed an Order in which the NRA's Motion

to Compel and Defendants' Motion for a Protective Order were denied with leave to renew.[25]  The

August 8 Order held that a number of the NRA's requests included documents relevant to its First

Amendment claims, while also holding that a number of its requests were not relevant to its First

Amendment claims.[26]  The August 8 Order held that the following categories of documents were

not relevant to the NRA's First Amendment claims:

- Documents relating to Defendants' referrals of non-NRA investigations to other government entities;[27]
- Defendants' investigative files relating to its respective investigations of Lockton, Chubb, and Lloyd's;[28]
- Defendants' investigative files relating to its investigations of non-NRA endorsed affinity programs;[29]
- Communications, and documents reflecting communications, between Defendants and Lockton, Chubb, and/or Lloyd's;[30]

---

[22] *See* Notice of Motion, dated February 4, 2019, ECF No. 78.

[23] *See* Memorandum of Law In Opposition to Defendants' Motion For A Protective Order, dated February 15, 2019, ECF No. 83.

[24] *See* Memorandum of Law In Further Support of Defendants' Motion For A Protective Order, dated February 20, 2019, ECF No. 84.

[25] Memorandum-Decision & Order, dated August 8, 2019, ECF No. 121 (the "August 8 Order").  The August 8 Order was distributed to the parties via ECF on the morning of August 9, 2019.

[26] *See* August 8 Order, ECF No. 121 at 52–54.

[27] *See id.* at 29–30.

[28] *See id.* at 39–40.

[29] *See id.* at 43–45.

[30] *See id.* at 46.

- Communications, and documents reflecting communications, between Defendants and insurers and financial institutions (excluding Lockton, Chubb, and Lloyd's) concerning business relationships with other Gun Promotion Organizations;[31] and

- Documents relating to Defendants' potential or actual adverse actions against non-NRA organizations, including other Gun Promotion Organizations.[32]

For the documents deemed relevant by the Magistrate Judge, the August 8 Order requires that Defendants submit for an *in camera* review the unredacted documents and a privilege log substantiating the assertions of privilege, or submit an affidavit stating that responsive documents have either already been produced in full to the NRA, or do not exist.[33]

The NRA objects to the Magistrate Judge's Order to the extent that it deemed the NRA's requested documents to be irrelevant to its First Amendment claims, and it seeks an appropriate order from this Court directing the Defendants to supplement their submissions to the Magistrate Judge with the documents (and accompanying log) that are responsive to the NRA's requested documents as discussed herein.

### III.

### LEGAL STANDARD

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, "The district judge to whom the case is assigned shall consider such objections and shall modify and set aside any portion of the Magistrate Judge's [nondispositive] order found to be clearly erroneous or contrary to law."[34] A magistrate judge' finding is clearly erroneous when the reviewing court, assessing the entirety of the evidence, is left with the firm conviction that a mistake has been committed.[35]  Similarly,

---

[31] *See id.* at 46–47.

[32] *See* August 8 Order, ECF No. 121 at 48–49.

[33] *See id.* at 53–54.

[34] Fed. R. Civ. P. 72(a).

[35] *Franzon*, 32 F. Supp. 2d at 532.

an order is contrary to law when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure."[36] The objections asserted herein concern the scope of discovery under Fed. R. Civ. P. 26, which is construed broadly[37] by courts to encompass "whatever facts . . . [a party] has in his or her possession" which are "relevant to any party's claim or defense."[38]

## IV.

## ARGUMENT

The August 8 Order is clearly erroneous in its holding that certain materials the NRA requested from Defendants during discovery are irrelevant to the NRA's First Amendment claims. Specifically, the ruling fails to apply well-established case law regarding the scope of discovery for First Amendment claims and defenses—including the exact claims and defenses asserted here, which encompass retaliation against protected speech[39] as well as qualified immunity.[40] This Court has already determined that the NRA's allegations that "Defendants' actions in imposing the Consent Orders were taken in an effort to suppress the NRA's gun promotion advocacy" and that

---

[36] *Wagner Farm Properties, LLC v. Tri-State Solarcrete, LLC*, No. 1:09-CV-0485, 2010 WL 11541929, at *2 (N.D.N.Y. Dec. 6, 2010); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, No. 5-08-CV-1220, 2009 WL 2045315, at *5 (N.D.N.Y. May 27, 2009) (vacating magistrate judge's order to the extent it included language in a class action notice that that prohibited communications between the parties, their counsel, and potential opt-in plaintiffs, as well as language indicating that potential plaintiffs could be liable for costs, expenses, and damages in the litigation, as both decisions were contrary to law); *T.Z. v. City of N.Y.*, No. CV-05-5111, 2007 WL 2077730, at *5 (E.D.N.Y. July 18, 2007) (reversing in part because the magistrate judge erred in denying the defendants the opportunity to inspect and photograph of the scene of an assault).

[37] *See, e.g.*, *Fine v. ESPN*, Inc., No. 512CV0836LEKDEP, 2014 WL 12586847, at *5 (N.D.N.Y. Oct. 16, 2014), *aff'd*, No. 5:12-CV-0836 LEK/DEP, 2015 WL 3447690 (N.D.N.Y. May 28, 2015).

[38] *See, e.g.*, *Garrasi v. Cavalry Portfolio Servs.*, LLC, No. 115CV1319BKSDEP, 2016 WL 7742782, at *1 (N.D.N.Y. Apr. 4, 2016).

[39] *See* Amended Complaint, ECF No. 37, Count II.

[40] *See* Answer, dated November 20, 2018, ECF No. 59, at ¶ 148 ("Answer").

the "enforcement actions against Lockton and Chubb . . . [were done] to impose a content-based restriction on NRA-affiliated businesses based on viewpoint animus that serves no substantial governmental interest" were sufficient to state First Amendment claims.[41] However, the Magistrate Judge erroneously concluded that discovery related to such allegations was not relevant.  By denying the NRA this and other requested discovery, the Magistrate Judge unduly restricted the NRA's access to the discovery to which it is entitled.[42]  The Magistrate Judge focused on the NRA's selective enforcement claims under the Fourteenth Amendment, which were dismissed without prejudice, and which the NRA intends to replead, yet somehow ignored that the same or similar evidence will also support the NRA's First Amendment claims for which this Court has ruled the NRA is entitled to discovery.[43]

## A.    Relevant Evidence For The NRA's First Amendment Claims And Defendants' Defenses.

It is well settled that valid claims of government discrimination and retaliation under the First Amendment based on protected speech allow for a broad scope of discovery for a party to support its claim or defense.[44]   The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."[45] To establish a claim redressing such retaliation, a plaintiff "must show that (1) his conduct was

---

[41] *See* ECF No. 56 at 28.

[42] *See* Fed. R. Civ. P. 26(b)(1).

[43] *See, e.g.* Order, ECF No. 121 at 28-29, 44-45, 47-48.

[44] *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 506–07 (1947) ("Information is relevant to the subject matter if it might reasonably assist a party in evaluating the case, preparing for trial or facilitating settlement."); *Noble v. Gonzalez*, No. 1:07-cv-0111, 2013 WL 4517774, at *6 (E.D. Cal. Aug. 26, 2013) (granting motion to compel despite the fact that the relevance of the requested documents "appear[ed] remote" but could still tie in to a First Amendment retaliation claim).

[45] *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

protected by the First Amendment, and (2) such conduct prompted or substantially caused defendant's [adverse] action."[46] In *Franzon v. Massena Memorial Hospital*, this Court considered a question before it now: whether a plaintiff alleging retaliation in violation of the First Amendment can obtain discovery concerning the government's treatment of others, similarly situated, who did not engage in the same targeted speech.   Specifically, *Franzon* involved allegations by a physician that a public hospital refused to renew his admitting privileges after the physician publicly criticized hospital policies.[47]   The physician sought discovery of documents indicating how the hospital had treated other, similarly situated physicians—which the Magistrate Judge ruled irrelevant.  The Court reversed that finding, holding that:

> Because the Federal Rules of Civil Procedure permit discovery of information that reasonably will lead to the discovery of admissible evidence, plaintiffs are entitled to obtain discovery of that which would tend to support their claim of retaliation. **This may well include evidence demonstrating that he was treated differently than other employees because of his alleged protected speech**.[48]

Other courts have allowed discovery of and relied on similar evidence in similar fact patterns to support First Amendment claims, including viewpoint discrimination and retaliation. For instance, the Seventh Circuit relied on internal emails of a third-party victim of government coercion to conclude that the plaintiff's First Amendment claims were valid.[49]   Specifically, the court in *Dart* analyzed a series of communications between a third party and the defendants which

---

[46] *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002).

[47] *See Franzon*, 32 F. Supp. 2d at 532.

[48] *Id.* (emphasis added).  Although the *Franzon* court distinguished a prior case wherein a plaintiff "did not alleged that the retaliation was evidenced by the disparate treatment he received after having engaged in the protected speech," that is clearly not the situation here.  The Amended Complaint emphasizes, repeatedly, that Defendants' disparate treatment of NRA vs. non-NRA programs demonstrates their political animus.  *See, e.g.*, Amended Complaint, ECF No. 37, ¶¶ 19, 57, 118–120.

[49] *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 232–33 (7th Cir. 2015).

reflected the defendants' coercive tactics to force the third party to withdraw business services provided to the plaintiff.[50]  Similarly, another court, under circumstances resembling those here, held that discovery of the government's investigation into other similarly situated entities involving the same conduct for which defendant was targeted, as well as materials provided by those entities to the government, were relevant to the defendant's First Amendment retaliation defense.[51] And the Eastern District of New York held that evidence of a police officer properly ticketing the plaintiff's car and not any of the other similarly situated cars nearby was relevant to the plaintiff's First Amendment retaliation claim and the defendant's qualified immunity defense.[52]  Consistently, courts find that even circumstantial and indirect evidence of the government's animus toward, or disparate treatment of, a person or entity based on their speech is relevant, and a party is entitled to discovery relating to such evidence to support their First Amendment claims.[53]

Moreover, the NRA is entitled to discovery regarding the government's coercion of the NRA's insurance providers, including materials in the DFS investigation files, because such discovery is relevant to the perceived threat by the providers and the demonstrable impact of that threat upon the NRA, in addition to Defendants' viewpoint-based animus and resulting damage to

---

[50] *See id.*  Notably, in *Dart*, the Court ruled favorably for the plaintiffs despite the fact that the third party in question had stated via affidavit that it did not perceive to be threatened or coerced by the defendants.  The affidavit also stated that its choice to withdraw its business services to the plaintiffs followed the defendant's communications with the third party, which only increased the likelihood that the third party was forcibly coerced by the defendants to act against the plaintiffs. *See id.* at 233.

[51] *See U.S. v. McGraw-Hill Co., Inc.*, No. CV 13-779, 2014 WL 1647385, at *8–10 (C.D. Cal. Apr. 15, 2014).

[52] *See Tomaino v. Williams*, No. 05 CV 3916, 2007 WL 2743602, at *4 (E.D.N.Y. Sept. 18, 2007).

[53] *See, e.g.*, *Franzon*, 32 F. Supp. 2d at 533 (citing FED. R. CIV. P. 26(b)(1) and *U.S. v. Kross*, 14 F.3d 751, 754 (2d Cir.), *cert. denied*, 513 U.S. 828 (1994)).

the NRA. Courts routinely utilize such evidence in determining whether a party has sufficiently proven violations of the First Amendment, or whether a qualified immunity defense has been proven.[54] Even in instances where there is prior wrongful conduct, the government may not use such conduct as a pretext to immunize it from explicit viewpoint discrimination or retaliation.[55]

The importance of the discovery sought by the NRA, and potentially foreclosed by the August 8 Order, is readily apparent based on consideration of hypothetical documents or testimony which, if they exist, would be critical to the parties' claims and defenses—yet were deemed "irrelevant" by the Magistrate Judge:

- Testimony by New York officials that the idea to target the NRA arose during discussions about countering the NRA's Second Amendment lobbying influence— not from any analysis of the NRA's insurance products;

- Notes taken during a telephone call or conversation between DFS and Lockton, Chubb, or Lloyd's, recounting a candid admission by DFS that it is interested in blocking the NRA's access to insurance in New York;

- Documents produced by Lockton, Chubb, or Lloyd's to DFS which prove that DFS was aware of other, more serious violations relating to non-NRA insurance products—yet chose to focus exclusively on the NRA;

- Penalty calculations or formulas, devised by DFS, that are deliberately weighted to inflict disproportionate harm on pro-gun organizations (compared to other groups who engaged in identical conduct), or which change to become more punitive in the wake of specific political speech by the NRA;

---

[54] *See, e.g., Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963); *Rattner v. Netburn*, 930 F.2d 204, 210 (2d Cir. 1991); *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003); *McGraw-Hill Co.*, 2014 WL 1647385, at *8–10.

[55] *See, e.g., N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 909 (1982) (violations can be punished, but cannot be used as a mechanism to otherwise punish protected speech); *Tomaino*, 2007 WL 2743602, at *4 (the fact that plaintiff's car was properly ticketed did not mean that it was not also valid evidence of the plaintiff's First Amendment retaliation claim and the defendant's qualified immunity defense).

- Non-public documents that align with Defendants' focus, in already-publicized documents, on "gun promotion organizations" generally[56]—not just the NRA. Such documents would reveal that DFS's purported interest in the technical features aspects of the NRA's insurance programs was pretextual, and DFS instead targeted the NRA based on its "gun promotion" viewpoint.

At minimum, the NRA should be entitled to make reasonably tailored inquiries—and Defendants should be obligated to apply reasonably tailored search terms—to identify such documents if they exist.

**B.     The August 8 Order Failed To Apply Applicable Law Concerning The Relevance of Plaintiff's Requested Discovery To Its First Amendment Retaliation Claim.**

As demonstrated herein, the Magistrate Judge failed to apply the foregoing applicable law concerning discovery relevant for the NRA's First Amendment claims, and for Defendants' defenses, when evaluating the relevance of the NRA's discovery requests in its Motion to Compel.

First, the Magistrate Judge held that documents and materials related to Defendants' referral of non-NRA matters to other government agencies are irrelevant to the NRA's First Amendment claims.[57]   However, such referrals could be accompanied by commentary, including the pursuit of a joint strategy to suppress the political influence of the NRA, which would be squarely relevant to the NRA's First Amendment claims.   Moreover, even referrals made without such commentary could be relevant to the parties' claims and defenses if Defendants knew of identical business practices by multiple nationwide organizations but chose only to take adverse action against the NRA, and the NRA is entitled to discovery exploring the reason for Defendants' disparate approach.

---

[56] *See, e.g.*, Amended Complaint, ECF No. 37, ¶¶ 45–47.

[57] *See* August 8 Order, ECF No. 121, at 28–29.

13

Second, the Magistrate Judge held that Defendants' investigative files relating to Lockton, Chubb, and Lloyd's are not relevant to the NRA's First Amendment claims.[58]  This would exclude the exact types of documents that proved decisive in the *Backpage* case.[59]   Moreover, such discovery is especially critical because Lockton, Chubb, and Lloyd's are large firms that effectively serve as insurance-market intermediaries for a wide variety of clients—both "gun promotion organizations," and otherwise.  If Defendants indeed targeted insurance-market players who had engaged in particular speech (rather than particular insurance-market conduct), this disparity would be highly likely to be reflected in DFS's investigative files for large insurance firms that served both targeted and non-targeted entities.  Evidence of disparate treatment along these lines would be highly relevant to the NRA's First Amendment Claims, including retaliation, as this Court has previously recognized.[60]

As noted, that the entities admitted wrongdoing in the Consent Orders is not the end of the relevance analysis for discovery purposes.  If the Consent Orders merely fined those entities for the purported violations of the New York State Insurance Law, then perhaps the investigative files might not be relevant to the NRA's First Amendment claims.  But the Consent Orders went much further than necessary to address infractions – they affirmatively precluded those entities from doing business with the NRA in the future.  That is the gravamen of the NRA's First Amendment claims – Defendants' discrimination and retaliation for the NRA's gun-rights advocacy and Defendants' unconstitutional efforts to put the NRA out of business in order to silence a critic with whom they vehemently disagreed.  The NRA needs discovery of the Defendants' threats and

---

[58] *See* August 8 Order, ECF No. 121, at 39–40.

[59] *See* discussion Section **Error! Reference source not found.**, *infra.*

[60] *See, e.g.*, *Franzon*, 32 F. Supp. 2d at 533 ("This may well include evidence demonstrating that he was treated differently than other employees because of his alleged protected speech").

coercion against those entities in order to demonstrate the elements of its claims. And that highly relevant discovery is likely to be found—and perhaps only found—in the Defendants' investigative files of those entities. Given that the Magistrate Judge has already committed to review certain documents produced by Defendants *in camera*, there is no apparent reason why the same procedure cannot be applied with respect to the documents sought here—minimizing or eliminating any prejudice to Defendants from the production of sensitive materials. However, to completely foreclose production on the mere ground that Lockton, Chubb, and Lloyd's admitted violations of certain insurance regulations runs clearly contrary to case law.[61]

Third, the Magistrate Judge held that Defendants' investigative files concerning non-NRA endorsed affinity programs are not relevant to the NRA's First Amendment claims.[62] With these requests, the NRA seeks documents concerning Defendants' investigations, if any, of affinity programs similar to those in the Defendants' investigation of Lockton, Chubb, and Lloyd's.[63] Again, these documents are relevant to the NRA's First Amendment retaliation claim to demonstrate the disparate treatment of Lockton, Chubb, and Lloyd's, on account of doing business with the NRA compared to other insurers or financial institutions with similar non-NRA programs.[64] The NRA has alleged that Defendants selectively targeted the NRA's insurance partners for trivial practices that are likely not violations of the New York Insurance Law, and

---

[61] *See, e.g., N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 909 (1982) (violations can be punished, but cannot be used as a mechanism to otherwise punish protected speech); *Tomaino*, 2007 WL 2743602, at *4 (the fact that plaintiff's car was properly ticketed did not mean that it was not also valid evidence of the plaintiff's First Amendment retaliation claim and the defendant's qualified immunity defense).

[62] *See* August 8 Order, ECF No. 121, at 43–45.

[63] *See* Vullo Requests No. 11–13; Cuomo Requests No. 12–15; DFS Requests No. 12–14.

[64] *See, e.g.*, *Franzon*, 32 F. Supp. 2d at 532; *McGraw-Hill*, 2014 WL 1647385, at *8–10; *Tomaino*, 2007 WL 2743602, at *4.

regardless, were at the time and still are actively carried on by other non-NRA affinity insurance programs.[65]  Evidence supporting those allegations is directly relevant to prove the NRA's First Amendment claims of viewpoint discrimination and retaliation.  That such evidence may support the NRA's selective enforcement claim that will be re-plead does not detract from the fact that such evidence also supports the NRA's existing First Amendment claims and the Defendants' defenses.

Fourth, the Magistrate Judge held that Defendants' communications with Lockton, Chubb, and Lloyd's were not relevant to the NRA's First Amendment claims.[66]  These requests seek evidence of, *inter alia*, coercive communications between Defendants and Lockton, Chubb, or Lloyd's prior to and during Defendants' investigations into each entity.[67]  As in *Dart*, these communications would be clearly indicative of a First Amendment violation if Defendants coerced Lockton, Chubb, or Lloyd's to terminate their business relationships with the NRA prior to or during Defendants' investigations into each entity's affinity insurance programs.[68]  Any evidence probative of such coercion is relevant to the NRA's First Amendment claims of viewpoint discrimination and retaliation.  Further, the communications are perhaps the most likely source of evidence of Defendants' animus toward the NRA.

Fifth, the Magistrate Judge held that documents reflecting communications between Defendants and various insurers and financial institutions (excluding Lockton, Chubb, and Lloyd's) are not relevant if the communications relate to their business relationships with non-

---

[65] *See* First Amended Complaint, ECF No. 37 at Paragraphs 37, 57-60

[66] *See* August 8 Order, ECF No. 121, at 46–47.

[67] *See* Vullo Requests No. 4, 6, and 7; Cuomo Requests No. 4, 6, and 7; DFS Requests No. 4, 6, and 7.

[68] *See Dart*, 807 F.3d at 232–33.

NRA gun promotion organizations.[69]  But again, it is highly probable that evidence indicating Defendants' viewpoint animus toward the NRA, and disparate treatment of the NRA, may be found in such communications.  Take for example an email from an insurance company that sponsors non-NRA affinity insurance programs to the DFS asking whether they need to correct business practices that are included in the Consent Orders as violations of the New York Insurance Law, and the DFS responding that such practices can continue.  That is directly relevant to the NRA's First Amendment claims of viewpoint discrimination and retaliation, and, moreover, directly relevant to Defendants' qualified immunity defense.[70]

Sixth, the Magistrate Judge held that documents or other materials related to Defendants' potential or adverse actions against non-NRA organizations—including other Gun Promotion Organizations—were not relevant to the NRA's claims.[71] For the same reasons as noted above, it is more than likely that evidence indicating Defendants' viewpoint animus toward the NRA, and disparate treatment of the NRA, may be found in such materials.  And such evidence is directly relevant to the NRA's First Amendment claims of viewpoint discrimination and retaliation, and, moreover, directly relevant to Defendants' qualified immunity defense.[72]

---

[69] *See* August 8 Order, ECF No. 121, at 46–47.

[70] *See, e.g.*, *Franzon*, 32 F. Supp. 2d at 532; *McGraw-Hill*, 2014 WL 1647385, at *8–10; *Tomaino,* 2007 WL 2743602, at *4.

[71] *See* August 8 Order, ECF No. 121, at 48–49; Vullo Requests No. 8–9; Cuomo Requests No. 8–9; DFS Requests No. 8–9.

[72] *See, e.g.*, *Franzon*, 32 F. Supp. 2d at 532; *McGraw-Hill*, 2014 WL 1647385, at *8–10; *Tomaino,* 2007 WL 2743602, at *4.

## V.

### CONCLUSION

Because the Magistrate Judge clearly erred in holding that the above-listed categories of documents were not relevant to the NRA's First Amendment Claim, the Court should sustain the NRA's objections and order the Defendants to supplement their submissions to the Magistrate Judge with the documents (and accompanying log) in response to the applicable requests.

Date: August 23, 2019

Respectfully submitted,

By:  */s/ William A. Brewer III*
William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Sarah B. Rogers (Bar No. 700207)
sbr@brewerattorneys.com
John C. Canoni (Bar No. 515899)
jcanoni@brewerattorneys.com
BREWER, ATTORNEYS &
COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

**ATTORNEYS FOR THE NATIONAL
RIFLE ASSOCIATION OF AMERICA**

4827-5403-8690.3
2277-05

18