1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF NEW YORK

3

4    NATIONAL RIFLE ASSOCIATION OF )
     AMERICA,                      )
5                                  )
              Plaintiff,           )        **CASE NO. 1:18-CV-566**
6                                  )
         vs.                       )
7                                  )
     **ANDREW CUOMO, et al.,**         )
8                                  )
              Defendants.          )
9    _____)

10           TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HON. CHRISTIAN F. HUMMEL
11            FRIDAY, APRIL 12, 2019
                ALBANY, NEW YORK

12

13   **FOR THE PLAINTIFF:**
         Brewer Attorneys & Counselors
14       By:  Sara Rogers, Esq.
         750 Lexington Avenue, Floor 14
15       New York, New York  10022

16

     **FOR THE DEFENDANTS:**
17       Office of the New York State Attorney General
         By:  William A. Scott, AAG
18       The Capitol
         Albany, New York  12224
19        -and-
         Nathaniel Dorfman, Esq., Department of Financial Srvcs.
20

21

22

23

24           **THERESA J. CASAL, RPR, CRR, CSR**
             Federal Official Court Reporter
25             445 Broadway, Room 509
             Albany, New York  12207

             *THERESA J. CASAL, RPR, CRR*
         *UNITED STATES DISTRICT COURT - NDNY*

```
 1                      (Court commenced at 2:04 PM.)

 2              THE CLERK:  Case is National Rifle Association of

 3    America versus Cuomo, et al., docket number 18-CV-566.

 4    Appearances for the record, please.

 5              MS. ROGERS:  Sarah Rogers, your Honor, with the

 6    Brewer Law Firm, on behalf of the National Rifle

 7    Association.

 8              THE COURT:  Good afternoon, Miss Rogers.

 9              MS. ROGERS:  Good afternoon.

10              MR. SCOTT:  William Scott, New York State Attorney

11    General's Office, on behalf of defendants.

12              MR. DORFMAN:  Hello, your Honor.  Nat Dorfman from

13    the New York State Department of Financial Services.  This

14    is my first time appearing before you.  Good afternoon.

15              THE COURT:  Good afternoon, Mr. Dorfman.  Good

16    afternoon, Mr. Scott.

17              MR. SCOTT:  Good afternoon.

18              THE COURT:  All right.  I scheduled this

19    conference because I received a flurry of letters from the

20    attorneys regarding this matter.

21              Docket number 93 is a letter which was filed by

22    the attorneys for the NRA by Ms. Rogers, indicating that she

23    and Mr. Scott were having some difficulty agreeing to the

24    terms of a protective order and asking the Court's

25    intervention.
```

1          Docket number 96 is a letter from the Brewer Law

2     Firm on behalf of the plaintiffs indicating that there would

3     be some difficulty regarding the service of subpoenas on the

4     Superintendent of the Department of Financial Services, who

5     the plaintiffs allege is a registered agent for the various

6     Lloyd entities.

7          Docket number 98 is a response from Mr. Scott to

8     the various correspondence filed by the NRA, and then docket

9     number 96 (sic) is a letter from the NRA indicating they may

10    be seeking a briefing schedule to hold in contempt Lloyds of

11    London for failing to respond to certain subpoenas.

12          And I know also on the docket is a Notice of

13    Motion and Motion for Withdrawal of Appearance by Miss Gase,

14    who apparently was previously a partner with the law firm of

15    Brewer & Attorneys and she has left that firm.  The Court is

16    going to do a text order granting her application or motion

17    to be relieved as counsel as there are a number of other

18    attorneys from the Brewer Firm whom have appeared.

19          Ms. Rogers, let me ask you a question:  Have you

20    and Mr. Scott had any further conversation regarding the

21    issue of the protective order?

22          MS. ROGERS:  Your Honor, not since this conference

23    was requested, apart from the correspondence that you've

24    seen.  We didn't expect to need to seek relief from the

25    Court for something like a protective order and we didn't do

1    so lightly or readily, but we've been attempting to meet and

2    confer about it since November and not gotten anywhere,

3    sometimes not even been able to elicit a response.  So our

4    hope was to tee this up for today, get some guidance or

5    assistance.  We'd hoped the protective order provisions we

6    are asking for are not controversial or exotic and we'd like

7    them to get in place so that third-parties on whom we've

8    served subpoenas can submit documents so that the NRA can

9    supplement its expert report which has schedules we have not

10   been able to serve since they're confidential and so the

11   litigation can move along.

12          THE COURT:  Mr. Scott, sir, what can we do to move

13   the issue of the protective order forward?

14          MR. SCOTT:  Well, I think there's a couple of

15   issues here, Judge, the first of which is the

16   confidentiality order that we're discussing, I have no

17   reason to believe that we won't be able to reach terms on.

18   But the broader issue of that is that the order that we've

19   been discussing, the terms that we've indicated to Counsel

20   that we'd be agreeable to, don't allow the NRA to designate

21   this information as confidential or any other party to

22   designate as confidential.  The order is designed only to

23   how the material will be handled if it's designated as

24   confidential by the Court or by agreement by the parties.

25   As we see in the NRA disclosures in this case, they asserted

1  confidentiality for a large swath of materials that we don't

2  think are, frankly, confidential, and I suspect that that is

3  going to require further motion practice before this Court

4  to clear up.

5  THE COURT:  Just to clarify to you and Ms. Rogers,

6  there's no awards to the litigants who file the most motions

7  in one year.  I know the two of you seem confused by that,

8  but I think there are seven motions pending.  There is not

9  an award when you hit ten, for example.

10  MR. SCOTT:  I understand.

11  THE COURT:  I just wanted to make certain.  Go

12  ahead.

13  MR. SCOTT:  I think our position is that we would

14  be -- even if we're able to resolve the terms of that

15  confidentiality order, it's not going to resolve the

16  designation of this material as confidential.  And if they

17  decide to turn over that document without an agreement as to

18  being confidential or directed to be confidential by this

19  Court, they're certainly free to, but that's not an

20  acknowledgement on our behalf that it is so designated.

21  THE COURT:  So do you have some suggestion as how

22  to move this matter forward?

23  MR. SCOTT:  I do.  I think that we're going to,

24  frankly, need to set a schedule for how to brief those

25  motions to compel the plaintiff's responses to our discovery

1    demands and interrogatories.  I'm sure that they may want to

2    be heard as to a protective order on that issue.  And I

3    think, frankly, given the outstanding subpoenas that are at

4    issue in this case, I know there's been over a dozen

5    third-party subpoenas served thus far, the discovery motions

6    that are pending and that we think will be pending, that's

7    appropriate to at least extend if not stay the discovery

8    deadlines in this case.

9         THE COURT:  You haven't really answered my

10   question.  Do you have some suggestion as to how to resolve

11   the confidentiality and protective order issue without the

12   need for more motion practice?

13        MR. SCOTT:  I don't know that there is a way,

14   frankly, your Honor, to resolve that because I think that we

15   have a fundamental disagreement as to what amounts to

16   confidential information in this case.  The NRA seems to be

17   of the opinion that anything that they don't want to be made

18   public is confidential, whether it's at issue in this matter

19   or not.  So I don't know that there is a way for the two

20   parties to come to an agreement on that.

21        THE COURT:  Ms. Rogers, do you have some

22   suggestion?

23        MS. ROGERS:  Yes, your Honor.  The order that we

24   filed as Exhibit A to our letter we believe is reasonable,

25   fairly customary.  We have a provision in there that governs

1    the parameters of what can be designated confidential.

2    We've tried to make that align with Rule 26(c).  So just

3    like the criteria for a protective order to protect a party

4    from embarrassment, harassment, disclosure of proprietary or

5    trade secret information, that's what we've set forth in

6    here.  So we only allow parties to designate materials

7    confidential that are proprietary, trade secret,

8    commercially sensitive financial information, things that at

9    least in counsel's experience parties designate confidential

10   routinely within the parameters of 26(c) and there is a

11   mechanism in the order.  First of all, Mr. Scott makes the

12   point -- I'm not sure, he seems to argue that there's not an

13   actual mechanism in here to designate things, but there is.

14   The order specifies that if you produce a document and you

15   produce it in TIF form (phonetic), which is standard

16   e-discovery practice, that you can stamp it "confidential,"

17   that's paragraph 4 of the order.  And there's also a

18   mechanism, if we designate something confidential that they

19   wish to contest or vice versa, if the Attorney General or a

20   third-party designates something confidential that the NRA

21   wishes to contest, we can meet and confer about that and if

22   that can't be resolved, hopefully it could be, we could seek

23   guidance from Your Honor.

24         So, you know, our preference would be to get this

25   order in place.  It allows plenty of latitude if there's a

1    controversial document for the NYAG to assert its rights,

2    but I'm meeting and conferring with third-parties responding

3    to subpoenas saying things like we're an insurance company,

4    we can't produce the names of our insureds without a

5    protective order, and we're stymied until we can get one.

6         THE COURT:  Mr. Scott, let me ask you a question:

7    Annexed to docket number 93 is a 16-page confidentiality and

8    protective order, which I assume you've seen.  Do you have

9    specific objections to the order?

10        MR. SCOTT:  Well, to the extent that the order

11   allows them to designate materials confidential, yes, we do

12   object to that.  We have -- the discussions up to this point

13   have included revisions deleting their ability to make such

14   designations.  We think that they are attempting to

15   improperly designate material unilaterally as confidential

16   and that's --

17        THE COURT:  Well, my understanding is, and you'll

18   correct me if I'm wrong, if they designate a document

19   confidential and you dispute whether or not it's, in fact,

20   confidential, then you have the right to come to court and

21   have the Court adjudicate the matter.

22        MR. SCOTT:  As I expressed to Counsel before on

23   this issue, I think we are sort of kicking that can down the

24   line instead of dealing with it now, which is where we feel

25   it should be addressed, upfront, as compared to as we're

```
 1    preparing for summary judgment or some other stage in the

 2    litigation.

 3              THE COURT:  So do you intend -- do you propose to

 4    do this document by document?

 5              MR. SCOTT:  Well, I think in the course of their

 6    demands, they have asserted these confidentiality issues.  I

 7    think they can be dealt with on a broader basis, based on

 8    those responses, so not necessarily document by document,

 9    but they have categories of information that they seem to

10    feel are confidential.

11              THE COURT:  Isn't that true in any dispute

12    involving a confidentiality order, Mr. Scott?

13                        (Pause in proceedings.)

14              MR. SCOTT:  I'm sorry, your Honor.

15              THE COURT:  Isn't that true in any discovery

16    dispute where there's a confidentiality order, one party

17    thinks something is confidential, the other does not, and if

18    you can't resolve it, you come to court and we adjudicate it

19    for you?

20              MR. SCOTT:  We can.  I think the question is the

21    timing of it as to whether or not we have to -- if they're

22    allowed to designate it initially or -- and we resolve the

23    matter now before the designation is made.

24              THE COURT:  So you want me to go through and look

25    at each and every one of these documents one at a time to
```

1    determine whether or not it's confidential?

2            MR. SCOTT:  I don't think we would want the Court

3    to have to go through that level of --

4            THE COURT:  That was the correct answer,

5    Mr. Scott, very good.  Do you understand, Mr. Scott,

6    Ms. Rogers, I have 300 other cases?  I understand this case

7    is very important, but it's no more or less important than

8    my other 300 cases, so I am not gonna sit down and go

9    through every one of your documents with you, I can assure

10   you of that.  So you both seem like smart, experienced

11   lawyers t me.  Do you have some idea how to move this

12   forward, Mr. Scott, without our eighth and ninth motion?

13           MR. SCOTT:  I can readdress the issue with my two

14   clients and see if they would revise their position as to

15   the confidentiality order, your Honor.

16           THE COURT:  Well, who are your clients that are

17   taking this position?

18           MR. SCOTT:  I would say that both clients, we've

19   addressed the issue with them and that both had concerns

20   regarding the NRA's attempts to improperly designate

21   materials as confidential.

22           THE COURT:  So are we talking about the Governor

23   and Maria T. Vullo?

24           MR. SCOTT:  And we also represent the Department

25   of Financial Services.

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT – NDNY*

 1                THE COURT:  So you have three clients.

 2                MR. SCOTT:  Correct, your Honor.

 3                THE COURT:  Want me to give you a briefing

 4     schedule?  What do you want to do?

 5                MS. ROGERS:  Your Honor, obviously, our preference

 6     would be to avoid further briefing and just get an order

 7     entered today, but if Your Honor isn't prepared to enter the

 8     order over --

 9                THE COURT:  Well, I am not gonna enter the order

10     over their objection no more than I would enter the order

11     over your objection.  You okay if I do that?

12                MS. ROGERS:  I understand, your Honor.  So, I

13     mean --

14                THE COURT:  What kind of motion do you want to

15     file?

16                MS. ROGERS:  Well, we would move for a protective

17     order.  I mean, I guess that's what we're trying to do --

18                THE COURT:  With respect to specific documents?

19                MS. ROGERS:  We would prefer, your Honor, to have

20     a confidentiality order entered substantially in the form of

21     the one that we've attached as Exhibit A to our letter to

22     allow for, you know, when a new document comes up, we don't

23     have to bring it to the Court and make another order, we can

24     just stamp "confidential" on it.

25                THE COURT:  All right.  So you want to make a

1  motion to the Court to approve the proposed protective

2  order?

3          MS. ROGERS:  Yes, your Honor.

4          THE COURT:  When do you want to file that by?

5          MS. ROGERS:  We could file that, let's see,

6  today's the 12th?  We can file that Monday.

7          THE COURT:  Would you like some additional time so

8  you don't spend the weekend in the office?  It's supposed to

9  be 70 degrees.

10          MS. ROGERS:  That's fair, your Honor.  How about

11  Tuesday.

12          THE COURT:  I was gonna go crazy and give you

13  Wednesday, Ms. Rogers, but...  All right.  So you'll file

14  your motion by April 17th.  Mr. Scott, when are you gonna

15  file your response?

16          MR. SCOTT:  If we could have a week on that, your

17  Honor.

18          THE COURT:  You can have two weeks, Mr. Scott.

19  You'll file your response by May 1st, and to the extent that

20  you feel compelled, Ms. Rogers, to file a reply, you'll file

21  a reply of no more than five pages by May 6th.

22          There's an additional issue -- or a number of

23  issues you raise, Ms. Rogers.  Then you served a series of

24  subpoenas on people, including Lloyds of London, and there

25  appears to be some question as to whether or not Mr. Scott's

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

1    client will accept service on behalf of Lloyds, is that

2    correct?

3             MS. ROGERS:  Yes, your Honor.  So it's a bit of a

4    misnomer, people colloquial think of Lloyds of London as an

5    insurance company, but it's really an insurance marketplace

6    where many individual underwriting syndicates offer

7    insurance.  And so what we've actually done is we've served

8    19 separate subpoenas on these different Lloyd syndicates,

9    we define them as the Lloyds entities.  Under New York

10   Insurance Law, foreign entities like these that underwrite

11   insurance in New York must designate the New York Department

12   of Financial Services as their agent for service of process.

13   There are various technicalities that go into that.  The

14   designation statute is a bit different depending upon

15   whether these are entities that are authorized to do

16   business in the State or whether they are excess line

17   insurers, which was the capacity in which the Lloyds

18   entities functioned when they underwrote insurance for the

19   NRA.  So we think we have two separate bases to serve these

20   Lloyds entities via DFS.  One basis to serve them is New

21   York Insurance Law Section 1213 which makes very clear that

22   it's the public policy of the State of New York that you

23   don't want foreign entities underwriting insurance in this

24   state and then you don't want to leave New Yorkers with no

25   remedy, no mechanism to sue them if something goes wrong, so

1   that statute is one basis.

2          The other basis is that in the NRA's insurance

3   policy with Lloyds, there's actually a clause that

4   contractually designates DFS as the agent for service of

5   process and we've cited a couple of cases in my letter dated

6   April 5th.  There's the *Recyclers* case --

7          THE COURT:  Right.

8          MS. ROGERS:  -- I don't remember the full name,

9   but it starts with *Recyclers*.

10          THE COURT:  It's *Recyclers Consulting Group versus*

11   *IMB Japan, Limited*.

12          MS. ROGERS:  Thank you, your Honor.  And in those

13   cases, there are similar fact patterns where you have a

14   third-party designated as an agent under a contract, the

15   third-party purports to reject service, but service is still

16   valid.

17          At this point, your Honor, I think most

18   realistically we would just be requesting a briefing

19   schedule and --

20          THE COURT:  What kind of motion do you want to

21   brief?

22          MS. ROGERS:  Rather than to hold Lloyds in

23   contempt, your Honor, we'd be content to just bring a motion

24   to compel.  We just want the issue adjudicated.

25          THE COURT:  All right.  I'm hard-pressed to hold

1   them in contempt until there's some showing that they've

2   been properly served.

3           So, I guess, Mr. Scott, what's your clients'

4   position, if you have one, regarding this issue?

5           MR. SCOTT:  Well -- and that's partly why

6   Mr. Dorfman is here, your Honor.

7           THE COURT:  Right.

8           MR. SCOTT:  As the Court is likely aware, the

9   Attorney General's Office scope of representation doesn't

10  generally extend to --

11          THE COURT:  Right.

12          MR. SCOTT:  -- subpoenas served, so that's why

13  Mr. Dorfman is here to answer questions for the Court.

14          THE COURT:  Mr. Dorfman, what's your position

15  regarding whether or not you're required to accept service

16  on behalf of the various Lloyd entities?

17          MR. DORFMAN:  We do not accept service of

18  third-party subpoenas on behalf of any of our regulated

19  entities.  We haven't ever as far as I know.  We have

20  opinion letters going back to 1952 which address this

21  precise issue that the agency does not accept third-party

22  record keeper subpoenas, which is what is at issue in this

23  case.  We have additional guidance as recently as --

24          THE COURT:  Let me ask you a question,

25  Mr. Dorfman:  So suppose you have an entity that is not

1  present in the United States, like Lloyds, but that sells

2  insurance products in the United States, in New York State.

3  How do people effectuate service of a subpoena upon them?

4          MR. DORFMAN:  If they're a named defendant in the

5  action, then we accept service of the cause of action.  If

6  it's a third-party subpoena, here I would presume I would

7  have to go through the Hague Convention.

8          THE COURT:  Ms. Rogers.

9          MS. ROGERS:  So, your Honor, we are content to

10  file Hague papers as a backstop to avoid further delay, but

11  we believe here that the guidance letters that DFS has

12  issued in the past pertain to Section 1212 of the Insurance

13  Law --

14          THE COURT:  Right.

15          MS. ROGERS:  -- which deals with entities that

16  have more of a footing in and a connection to the State of

17  New York than the Lloyds entities do in this capacity in

18  this case.  So we believe this is a fresh issue, a different

19  issue than the one that DFS' past letters address.

20          Also, I've not seen the department address that we

21  have a contract that separately designates them as the agent

22  for service of process and does not limit the type of

23  process, it does not say only a complaint.  The subpoena is

24  process, it needs to be served.

25          THE COURT:  Yeah, I'm somewhat troubled by the

1  idea, though, that two parties can enter into a contract

2  among themselves that requires the Department of Financial

3  Services to become the recipient of service.  I'm not sure

4  how you do that.

5          Do you want to make a motion or how do you want to

6  proceed?  'Cause they're not gonna accept your subpoenas.

7          MS. ROGERS:  Certainly, your Honor.  So I think we

8  would move to compel -- I would like to style the motion as

9  follows, and Your Honor can tell me if this is agreeable:  A

10  motion to compel Lloyds to respond to the subpoena, which

11  was properly served, or, in the alternative, a motion to

12  compel DFS to effect service.

13          THE COURT:  Who are you gonna serve the Lloyds

14  motion upon?

15          MS. ROGERS:  We would have to serve it upon the

16  Lloyds entities,which we would try to do through DFS.

17          THE COURT:  DFS is not gonna accept service of a

18  motion.  Maybe I'm incorrect, but Mr. Dorfman is shaking his

19  head, so I assume DFS is not gonna accept service of a

20  motion on behalf of Lloyds, is that correct?

21          MR. DORFMAN:  That's correct, and Lloyds has

22  advised us that they don't view our acceptance of a subpoena

23  as being permissible under the statute either.  I haven't

24  asked them about a motion, but I assume their position would

25  be the same.

1              THE COURT:  Now my question becomes:  How do you

2    intend to effectuate service upon Lloyds?

3              MS. ROGERS:  So, one option, your Honor, in a

4    couple of those cases I cited, I have the same question you

5    did, how can two parties in a contract designate a

6    third-party without the third-party knowing or agreeing, and

7    that's actually addressed.  There's a case where CT

8    Corporation is identified as the agent, CT doesn't know it,

9    there's nothing filed with the Secretary of State, service

10   is still deemed effective, so we could simply file the

11   motion, make Lloyds aware of it and if we win the motion,

12   then Lloyds is bound by the outcome.  That seems to be what

13   the Southern District did in those other cases, although the

14   procedural posture wasn't the same --

15             THE COURT:  Right.

16             MS. ROGERS:  -- it was basically after the fact,

17   once the party won the motion, service was effectuated.  The

18   other thing we could do is, you know, if we style the motion

19   as I propose, which is a two-pronged motion, either compel

20   Lloyds to respond or compel DFS to serve, then even if

21   Lloyds isn't compelled to respond, DFS has to go serve.

22   Does that make sense?

23             THE COURT:  It only makes sense if you prevail

24   against DFS.  If you don't prevail against DFS, then you're

25   back to my original question of how do you get jurisdiction

```
 1    over Lloyds.  But you tell me how you want to proceed, what
 2    kind of motion you want to make, and I'll set a briefing
 3    schedule?
 4              MS. ROGERS:  So we would like to move to compel
 5    Lloyds to respond to the subpoenas which they have received
 6    actual notice of and which we contend were properly served,
 7    and, in the alternative, to compel DFS to effect service.
 8              THE COURT:  Ms. Rogers, have you had any direct
 9    conversation or correspondence yourself with people from
10    Lloyds about this issue?
11              MS. ROGERS:  Yes, we have, and they basically
12    articulate the position that they don't have a dog in this
13    fight, they've acknowledged they've received copies of the
14    subpoenas and they believe this is -- you know, DFS
15    maintains service wasn't proper, so they haven't been
16    served.
17              THE COURT:  All right.  When do you want to file
18    this motion by?
19              MS. ROGERS:  Next Friday perhaps.
20              THE COURT:  So you're gonna file this motion by
21    April 19th.
22              MS. ROGERS:  Yes, your Honor.
23              THE COURT:  And you're gonna serve that upon
24    Lloyds and upon DFS?
25              MS. ROGERS:  We will serve it -- yes, we will
```

1   serve it on Lloyds via DFS and can litigate whether the

2   service is proper.

3           THE COURT:  And I guess, Mr. Scott, is that

4   something you would be responding to or is that something

5   Mr. Dorfman probably would be more inclined to respond to?

6           MR. SCOTT:  That would likely be through DFS

7   Counsel.  We may assist, but it would generally be through

8   Corporate Counsel.

9           THE COURT:  I guess, Mr. Scott and Mr. Dorfman,

10  when would you folks like to file your response by?

11          MR. DORFMAN:  Two weeks would be sufficient time

12  if that's acceptable to the Court.

13          THE COURT:  Sure.  Sure.  You'll file by May 3rd,

14  a slightly different schedule than the other motion, but --

15  and Ms. Rogers, to the extent you want to file a reply of no

16  more than five pages, you can do so by May 9th.

17          MS. ROGERS:  Thank you, your Honor.

18          THE COURT:  Have I addressed all of the issues

19  raised in your various correspondence, Miss Rogers, or is

20  there more?

21          MS. ROGERS:  You've addressed -- I kicked off the

22  flurry of letters and you've addressed my issues, your

23  Honor.  The only other minor point I would note in response

24  to something Mr. Scott said earlier about an extension of

25  discovery, we understand the Court has other important cases

```
 1    and we -- you know, our constitutional rights are at stake

 2    and we want to proceed expeditiously, but that's subject to

 3    the Court's resources.  We think that if discovery is

 4    extended at any point, it should be an asymmetrical

 5    extension that acknowledges that the NRA has abided by all

 6    of the deadlines so far.  It's DFS -- it's defendants,

 7    excuse me, who have failed to meet and confer meaningfully

 8    with us on a protective order despite our attempting to

 9    since November.

10         THE COURT:  Of course, he has a different view of

11    those events.

12         MS. ROGERS:  Of course, your Honor, and we would

13    brief it if necessary.  But the only thing we want to flag

14    is dates are advancing --

15         THE COURT:  Right.

16         MS. ROGERS:  -- and if deadlines do get extended,

17    we want the extension to be tailored to bear in mind that

18    this is a case we've brought with some degree of urgency and

19    that we've complied with our deadlines.

20         THE COURT:  All right.  Let me make you aware, and

21    perhaps you're aware of this, perhaps you're not, but there

22    is a motion to dismiss or partial motion to dismiss pending

23    for failure to state a claim, which was filed back on

24    December 19th.  That motion will be decided by Judge McAvoy,

25    that motion is not on my radar, so I can't control when
```

```
 1   Judge McAvoy will decide that.  So that, in some way, will
 2   determine what we do with respect to discovery because what
 3   claims are remaining, if any, I won't know until then.  So
 4   you can continue to conduct discovery, but I will give you
 5   sufficient time to conduct discovery once he renders a
 6   decision on that, but I don't know when he will do that.
 7   I'm hard-pressed to go down to the Senior District Judge's
 8   chambers and tell him perhaps he ought to pick up his game a
 9   little bit.  I need this job, so we're not gonna do that.
10           Mr. Scott, what can we do for you, if anything?
11           MR. SCOTT:  Yeah, your Honor, as I said earlier, I
12   think it does make sense to have some sort of extension of
13   discovery in this case.
14           THE COURT:  And I will grant you an extension of
15   discovery once I get some sense of what the issues are.  I
16   mean, I'm telling you now that discovery will be extended.
17   I'm trying to get a sense of when Judge McAvoy is gonna
18   decide that case, what claims remain and then we can have a
19   conversation and I'll extend the deadlines for you.
20           MR. SCOTT:  Understood.  I think the only deadline
21   that's slightly more imminent is our expert disclosure
22   response, which may be somewhat curtailed by where things
23   stand in discovery.
24           THE COURT:  Right.  And they haven't filed their
25   expert disclosure response, or maybe they have.
```

1          MR. SCOTT:  They have, but I think they're in the

2     same position where they feel they need more documentation

3     to fully submit.

4          THE COURT:  Sure.  That was my sense from the

5     conversation.  So, once we get a decision from Judge McAvoy

6     on that motion, I will schedule another conference and I

7     will reset the deadlines for you.

8          MS. ROGERS:  Thank you.

9          MR. SCOTT:  Appreciate it.

10         THE COURT:  Anything else we can do for you,

11    Mr. Scott?

12         MR. SCOTT:  No, your Honor.

13         THE COURT:  Mr. Dorfman?

14         MR. DORFMAN:  No, your Honor, thank you.

15         THE COURT:  All right.  You folks have a nice

16    weekend.

17         MR. SCOTT:  Thank you.

18         MS. ROGERS:  Thank you, your Honor.

19                   (This matter adjourned at 2:29 PM.)

20                        - - - - -

21

22

23

24

25

1          CERTIFICATION OF OFFICIAL REPORTER

2

3

4          I, THERESA J. CASAL, RPR, CRR, CSR, Official

5    Realtime Court Reporter, in and for the United States

6    District Court for the Northern District of New York, do

7    hereby certify that pursuant to Section 753, Title 28,

8    United States Code, that the foregoing is a true and correct

9    transcript of the stenographically reported proceedings held

10   in the above-entitled matter and that the transcript page

11   format is in conformance with the regulations of the

12   Judicial Conference of the United States.

13

14          Dated this 27th day of June, 2019.

15

16   **/s/ THERESA J. CASAL**

17   THERESA J. CASAL, RPR, CRR, CSR

18   FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*