

DALLAS | NEW YORK

November 25, 2019

<u>Via ECF</u>

Hon. Christian F. Hummel
United States Magistrate Judge
United States District Court
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, New York 12207

     Re:    *National Rifle Association of America v. Cuomo*, No. 18-cv-00566-TJM-CFH

Dear Judge Hummel:

This firm represents the National Rifle Association of America ("NRA"). During the telephonic conference held this morning regarding the NRA's request to file a motion for leave to amend its complaint to re-plead its selective enforcement claim, Your Honor scheduled a conference before this Court on December 4, 2019, at 1:00 p.m. Your Honor also directed the NRA to submit, by 5:00 p.m. this afternoon, a detailed explanation of the timeline by which the NRA gathered the information in preparation to re-plead its selective enforcement claim.

As an initial matter, the NRA acknowledges that this Court's original scheduling order[1] established a deadline of January 31, 2019 for the parties to amend their pleadings. The NRA further notes that the discovery deadline of June 17, 2019, in the original scheduling order has already been extended once and will undoubtedly be extended again, perhaps more than once.

Courts will permit an amended pleading to be filed after the date set forth in the scheduling order "when a party has diligently employed his time in conducting discovery and investigation, the request should be favorably received. Or, if it is demonstrated that the deadline cannot be reasonably met despite the perseverance of the moving party, good cause will be established as well."[2] Given that Judge McAvoy's ruling dismissing the NRA's selective enforcement claim without prejudice to repleading did not occur until May 9, 2019—over three months after the scheduling order deadline—the NRA could not have met the deadline. Thus, this letter brief will focus on the NRA's diligence in seeking to re-plead once it discovered the factual basis for such re-pleading.

Judge McAvoy's May 9, 2019 Order dismissed the NRA's selective enforcement claim without prejudice to re-pleading. Following the May 9 Order, the NRA acted diligently to obtain

---

[1] ECF No. 66.

[2] *Ruel v. McGrath*, 2013 WL 12130427, at *4 (N.D.N.Y. June 21, 2013) (citations omitted).

# B R E W E R

Hon. Christian F. Hummel
November 25, 2019
Page 2

information needed to enable it to plead the facts Judge McAvoy indicated should be included in any re-pleading of that claim. The evidence of certain facts at the core of the NRA's re-pleaded selective enforcement claim have only recently become available to the NRA because they come from third-party sources not under the NRA's control.

With respect to information from the Corporation of Lloyd's, the NRA only obtained documents from Lloyd's America, Inc. ("LAI") this summer. In order to obtain those documents, the NRA negotiated a bespoke protective order covering documents produced by LAI, then LAI had to produce the documents, which did not happen until June. The NRA sought the deposition of a representative of LAI to interpret the Lloyd's documents, but negotiations over such a deposition broke down over the summer, necessitating the NRA's service of a subpoena upon LAI's general counsel, Joseph Gunset in late July 2019. Significantly, during resulting meet and confer negotiations, LAI was opposed to producing a witness for a deposition until the Court ruled on the NRA's appeal to Judge McAvoy[3] of the NRA's objections to this Court's rulings on the motions to compel,[4] which was filed on August 23, 2019, submitted without argument on September 27, 2019, and remains pending.

Separately, the NRA did not receive notice until November 14, 2019, that the Department of Financial Services ("DFS") recently took additional selective-enforcement action against another insurer, AGIA, which offers health and life insurance to NRA members. DFS's hostilities against AGIA are squarely relevant to the NRA's re-pleading, because it is unambiguous that DFS was informed by Lockton, during 2018, about non-NRA affinity-insurance programs comparable to those underwritten by AGIA. Even equipped with such information, DFS chose only to pursue NRA-related programs. In the past, DFS has argued that enforcement disparities between NRA and non-NRA insurance programs are attributable to the involvement of firearms, or insurance for criminal acts[5]—but even if meritorious, this defense would not explain disparate enforcement with respect to innocuous health and life insurance products.

The NRA engaged in meet-and-confer efforts with Defendants on November 12 and 14, which were not successful, and the NRA thereafter wrote to this Court requesting the pre-motion conference (held this morning) on November 15, 2019.[6]

Thus, the NRA sought leave to amend within a short time of its having received the Lloyd's documents, before it has deposed a Lloyd's or LAI representative, and the same week it uncovered

---

[3] ECF No. 130.

[4] ECF No. 121.

[5] ECF. No. 63 at ¶ 11.

[6] ECF No. 142.

# BREWER

**Hon. Christian F. Hummel**
November 25, 2019
Page 3

evidence of DFS's recent hostilities against yet another NRA-related insurance underwriter. This record of diligence is more than sufficient to demonstrate good cause.[7] Moreover, this Court should recognize that judicial economy favors the NRA's decision to seek leave to amend when it concluded it had sufficient facts to warrant re-pleading.[8]

Although the NRA submits it has adequately demonstrated good cause and diligence, even if this Court somehow concludes the NRA did not act diligently, this court "has discretion to grant a motion to amend even where the moving party has not shown diligence."[9] This is especially true where there is no demonstrated prejudice to Defendants from permitting the amendment,[10] and Defendants have the burden of demonstrating prejudice from the amendment.[11] Although several months have passed since the Court's ruling on Defendants' motion to dismiss, the posture of the case has not significantly progressed—document discovery remains ongoing, and the vast majority of responsive documents identified by Defendants (in response to discovery requests served nearly a year ago) were only recently tendered to the Special Master. Depositions have not occurred, and it is not possible for Defendants to demonstrate prejudice because they will expend no additional resources in litigating the claim.

In light of the above, the NRA respectfully requests that this Court grant it leave to file a motion to amend, in order to re-plead its selective enforcement claim in compliance with the May 9 Order. While the NRA was prepared to file its motion, along with its proposed Second Amended Complaint, on December 2, 2019, the NRA will file the motion shortly after the December 4, 2019 conference ordered by this Court this morning.

---

[7] *See, e.g., Veeder v. Nutting*, 2012 WL 1416266, at *5 (N.D.N.Y. Apr. 24, 2012) (delay of several months was not "undue delay" to deny motion to amend); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y.2010) (plaintiff acted with diligence in seeking leave to amend within two months of discovering the facts underlying its new cause of action).

[8] *Wandering Dago, Inc. v. N.Y. State Office of General Servs.*, 2014 WL 12797920, at *6 (N.D.N.Y. July 28, 2014) (court granted motion to amend filed after scheduling order deadline because party wanted to file one amended pleading rather than seek leave to amend multiple times, noting "Plaintiff could have very well filed a series of motions to amend as information related to certain allegations became available, but such piecemeal filings would not have been efficient for either the litigants or the Court.")

[9] *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014). *See also Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399-400 (S.D.N.Y. 2017).

[10] *Id.*

[11] *See, e.g., Ruel*, 2013 WL 12130427, at *5 ("The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial.").

# BREWER

**Hon. Christian F. Hummel**
November 25, 2019
Page 4

Respectfully,

John Canoni

cc:     All Counsel of Record (via ECF)