UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,<br><br>                    Defendants. | Case No.  18 Civ. 566 (TJM)(CFH) |

## DEFENDANT VULLO'S OPPOSITION
## TO PLAINTIFF'S MOTION TO AMEND

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Defendant Maria Vullo*

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY ................................................................................................... 4

I.     THE DISTRICT COURT DISMISSED THE NRA'S SELECTIVE
ENFORCEMENT CLAIMS AGAINST MS. VULLO LAST MAY .................... 4

II.    THE NRA'S SHIFTING BASES FOR AMENDMENT ....................................... 6

*The NRA Received Documents from Lloyd's in June Which Make
No Mention of Ms. Vullo* .......................................................................... 6

*Discovery Proceeds Without the Selective Enforcement Claim* ............................. 7

*At the December Court Conference, the NRA Seeks Amendment Based
on Information from Someone "Knowledgeable of the Conversations"
between DFS, Ms. Vullo and Lloyd's. In Response to an Interrogatory,
the NRA Acknowledges that No Percipient Witness Exists To Support
its New Theory.* ..................................................................................... 8

*In its Motion to Amend, the NRA Changes Its Claimed Basis Yet Again* ............... 9

ARGUMENT .......................................................................................................................... 9

I.     THE PROPOSED COMPLAINT DOES NOT SUFFICIENTLY ALLEGE
THAT MS. VULLO PERSONALLY HAD KNOWLEDGE OF
COMPARATOR VIOLATIONS THAT SHE FAILED TO PROSECUTE,
AS THE DISTRICT COURT REQUIRED ......................................................... 9

A.    The Complaint Is an Exercise in Distraction; Boiled to Its Essence,
There are Only Three New Allegations Even Arguably
Concerning Ms. Vullo .......................................................................... 10

B.    The Three Vullo-Specific Allegations Do Not Allege Knowledge
of Comparators, as the District Court Required ..................................... 13

II.    THE NRA CANNOT MEET ITS BURDEN TO ESTABLISH DILIGENCE
AND LACK OF BAD FAITH ............................................................................ 16

III.   VULLO WOULD BE PREJUDICED BY THIS
UNTIMELY AMENDMENT .............................................................................. 19

CONCLUSION ..................................................................................................................... 20

i

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 6, 11

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*,
    304 F.R.D. 170 (S.D.N.Y. 2014) ..................................................................................... 17

*LaTrieste Rest. v. Vill. of Port Chester*,
    188 F.3d 65 (2d Cir. 1999) ................................................................................................ 4

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000) ........................................................................................... 16

*Verdone v. Am. Greenfuels, LLC*,
    No. 3:16-CV-01271 (VAB), 2017 WL 3668596 (D. Conn. Aug. 24, 2017) ............. 16, 18

*WL Cruz v. United Automobile Workers*,
    2019 WL 3239843 (N.D.N.Y. 2019) ............................................................................. 17

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................ 10

Fed. R. Civ. P. 15(a) ........................................................................................................... 16

Fed. R. Civ. P. 16 ......................................................................................................... 16, 19

Fed. R. Civ. P. 26 .................................................................................................................. 9

## PRELIMINARY STATEMENT

Seven months ago, the District Court dismissed the NRA's selective enforcement claim against the New York State Department of Financial Services former Superintendent Maria Vullo.  It found that the NRA failed to allege the facts essential to a claim of selective enforcement: that Ms. Vullo was specifically aware of and knowingly failed to prosecute similar violations of the Insurance Law committed by entities that were not involved in firearm-related advocacy.  For over five months, the case continued and the NRA made no effort to revive this failed claim—until after this Court held that the dismissal of the NRA's selective enforcement claim rendered irrelevant certain of the NRA's discovery requests.  Intent on extending discovery beyond the bounds delimited by this Court, the NRA sought to revive the selective claim in support of those requests.

But the District Court's holding cannot be ignored: in order to plead a cognizable claim of selective enforcement, the NRA must proffer detailed and specific allegations that Maria Vullo knew about specific insurance-law violations by specific "comparator" entities yet declined to prosecute them.  In the current posture, the NRA must also establish that it acted diligently over the last seven months to investigate this issue, and that it has good cause for this untimely amendment.  The NRA can do neither.

The NRA's proposed amendment fails to satisfy the pleading standard set out by the District Court in its May 2019 decision.  A plaintiff bringing a selective enforcement claim must allege facts sufficient to show that the defendant "consciously applied a different standard of enforcement to similarly-situated entities . . . [i.e., that] the defendant was aware of similarly-situated entities, and failed to take comparable action against them."  Dkt. 112 ("Dismissal Decision") at 8.  Merely asserting that a defendant is a high-level official of a large regulatory agency does not permit imputing to such an official alleged industry-wide knowledge.  High-

1

level officials are not "deemed" to know everything that occurs in their agencies or their regulated industries and cannot be sued for damages in their personal capacity by every law violator who asserts they should not have been investigated.  Rather, the plaintiff must assert a specific *factual basis* to allege that the agency head had personal knowledge of similarly-situated comparators who had broken the law, and that she deliberately failed to prosecute them.  Judge McAvoy held that the relevant comparator-violations were those committed by Lockton with respect to its *non*-NRA affiliate programs.  The defect in the NRA's complaint was that the NRA had not pleaded that Ms. Vullo knew about those violations when DFS commenced its investigation and declined to pursue them.

The NRA's proposed complaint suffers from precisely the same defect.  Stripped of its inflammatory rhetoric, sweeping references to "Defendants," intentionally vague word choice (because the NRA cannot, in good faith, allege that Ms. Vullo "said" something, it alleges that she "made [something] clear"—without saying how), the proposed Second Amended Complaint contains *no* allegation that Ms. Vullo knew about the Insurance Law violations committed by Lockton as to the four non-NRA affiliate programs described in the Complaint.  It also makes no allegations that Ms. Vullo knew of any *other* specific violations by a non-NRA entity in October 2017, when DFS launched the Carry Guard investigation, as Judge McAvoy specifically required.  The NRA makes no allegation that she consciously refused to prosecute same. Instead, the proposed Complaint makes conclusory statements about knowledge of "infractions relating to other, similarly situated policies."  This is not nearly enough to meet the standard set forth by Judge McAvoy.  Absent a detailed pleading of *who* allegedly violated *which* provision of the Insurance Law, the Court cannot determine whether these are fair comparators for a selective enforcement claim—and thus, it cannot uphold the claim for selective enforcement. *See* Dismissal Decision at 6 ("At the motion to dismiss stage, a court must determine whether,

2

based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." (internal quotation marks omitted)). Because the proposed Complaint does not comply with the District Court's order, amendment must be denied.

It also bears stating that the NRA's scurrilous allegations about Ms. Vullo are completely false: Ms. Vullo never knew of any other similar violations by comparators that DFS did not prosecute. No documents and no witness will say otherwise. The NRA has no factual basis for making these allegations, and it hasn't offered one. Without *some* basis for amendment, the NRA cannot meet its burden of demonstrating good cause to amend.

The NRA's motion and its pre-motion submissions are a study in delay, obfuscation and shifting stories. The NRA offers no explanation for its five-month delay in seeking this amendment, and there is none. The NRA obtained documents from Lloyd's in June 2019 and claimed, at first, that they provided a basis to add a claim for selective enforcement against Maria Vullo. When it became clear that the documents do not even mention Ms. Vullo, much less implicate her in illegal conduct, the NRA backpedaled and switched gears, asserting that it had identified "a witness" with knowledge of allegedly inculpatory statements by Ms. Vullo. That assertion quickly collapsed as well, when the NRA was forced to admit, in response to an interrogatory, that its "witness" was not a percipient or even hearsay witness, but a consulting expert with no personal knowledge of the matter. The NRA now asserts that the basis for its allegations against Ms. Vullo is an "investigation"—although it offers no description of the timeframe, findings, or evidence such an "investigation" uncovered. The NRA's house of cards is crumbling fast.

What is clear is that the NRA has *no more basis now* to bring a selective enforcement claim against Ms. Vullo than it did when the District Court dismissed its claim. It tries to hide

that inadequacy behind a veil of broad and unsupported allegations.  The NRA cannot be

permitted to amend where it has not detailed, at a bare minimum, what information it received

that supports its specific Vullo-related allegations, when it received such information, and why it

could not have obtained that information earlier in the exercise of diligence.

**PROCEDURAL HISTORY**

**I.      THE DISTRICT COURT DISMISSED THE NRA'S SELECTIVE
        ENFORCEMENT CLAIMS AGAINST MS. VULLO LAST MAY**

In a decision dated May 9, 2019, Judge McAvoy dismissed the NRA's selective

enforcement claim against Ms. Vullo "because the [First] Amended Complaint lacks plausible

allegations that Defendants had knowledge of the purported Insurance Law violations by the

comparators."  Dismissal Decision at 8.

The District Court explained that a law enforcement target cannot make out a selective

enforcement claim simply by alleging that it was treated more harshly than other violators.  Law

enforcement is always operating with limited information and resources, so "'[m]ere failure to

prosecute other offenders is not a basis for a finding of denial of equal protection.'"  Dismissal

Decision at 8 (quoting *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999)).

Instead, in order to state a damages claim against a law enforcement official, the plaintiff must

plead facts demonstrating that the *specific* law enforcement officer defendant "knew of other

violations, but declined to prosecute them," and "consciously applied a different standard of

enforcement to similarly-situated entities.'"  *Id.* at 8.  Only by showing a conscious decision not

to prosecute can a plaintiff establish a constitutional equal protection violation that would permit

such a claim in a high official's personal capacity.  Moreover, at the motion to dismiss stage, the

Court must analyze whether there are sufficient well-pleaded facts about the alleged comparators

4

that, "based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Id.* at 6.

Applying that standard, the District Court based its review of the claim on the assertions made in Paragraph 59 on the Complaint.  In Paragraph 59, the NRA alleged the existence of three specific insurance law violations committed by Lockton Affinity—violations that DFS allegedly has not prosecuted: (1) referring to the "insurer's AM Best rating" for the affinity programs for the American Optometric Association ("AOAExcel"), the Veterans of Foreign Wars ("VFW"), and Moose, (2) offering to give no-cost insurance to members of the Professional Photographers of America ("PPA") and the VFW, and (3) paying AOAExcel, Moose, VFW, and PPA based on actual premiums collected.  The Court held, at the pleading stage, that these comparator organizations were "similarly situated" to the NRA "at least to the extent they all maintained affinity insurance programs that violate certain non-firearm-related Insurance Law regulations."  Dismissal Decision at 7.

But the District Court dismissed the First Amended Complaint's selective enforcement claims because the NRA failed to make specific "factual allegations indicating that either Gov. Cuomo or Supt. Vullo had knowledge of the specific violations identified in paragraph 59 of the Amended Complaint." *Id.* at 9.  A selective enforcement claim requires a showing that the named law enforcement official "*knew*" of the similar violations and "*consciously* applied a different standard of enforcement to similarly-situated entities." *Id.* at 8 (emphases added; internal citations and alterations omitted).  It was not enough that comparable violations arguably exist; to seek damages from Ms. Vullo, the NRA had to allege that Ms. Vullo—not others in the industry, not someone else in a 1,400-person state agency—"knew of similar non-firearm-related Insurance Law violations by the comparators but consciously declined to prosecute them." *Id.* at 9-10.

Citing the seminal Court decision of *Ashcroft v. Iqbal,* where the Supreme Court held that Plaintiff did not sufficiently allege that Attorney General Ashcroft "knew of" and "was the principal architect" of the DOJ's discriminatory policy, 556 U.S. 662, 680-81 (2009), the District Court here held that the NRA did not come close to pleading knowledge.  Knowledge, Judge McAvoy held, cannot be "inferred" from the public record.  Dismissal Decision at 10.  And "conclusory statements of Defendants' scienter," "naked assertions" and "formulaic recitation[s]," do not suffice.  *Id.* at 9.

The District Court allowed the NRA to re-plead its selective enforcement claim, *if* it could specifically allege that "Vullo knew of non-firearm-related Insurance Law violations by the comparators when DFS commenced its investigation in the NRA's insurance programs, or allege facts plausibly supporting the conclusion that the defendants were aware of such violations by the comparators yet consciously declined to enforce the Insurance Law against the comparators."  *Id.* at 11.  Plaintiff failed to even attempt to re-plead the claim—until its discovery efforts were limited by this Court's rulings.

## II.    THE NRA'S SHIFTING BASES FOR AMENDMENT

The NRA's stated basis for amendment has changed, repeatedly, since it first sought amendment in November 2019.  Throughout this odyssey of shifting rationales, the NRA has been unable to offer a single solitary factual statement supporting the claim that Ms. Vullo had *any* knowledge of specific comparator violations or *ever* consciously declined to prosecute same.

### *The NRA Received Documents from Lloyd's in June Which Make No Mention of Ms. Vullo*

On June 6, 2019—less than a month after the Court's Dismissal Decision—in response to the NRA's subpoena, Lloyd's produced documents to NRA that the NRA would then claim provided a basis to amend the Complaint.  None of those three short documents state—and none even imply—that Ms. Vullo had any knowledge of violations by any other entities.  *See* Dkts.

6

154-7 (Sealed Ex. B), 154-8 (Sealed Ex. C), and 154-9 (Sealed Ex D).  In fact, Ms. Vullo is not even mentioned in the three documents (other than where her name is printed on the DFS letterhead), and the documents make no mention of *any* law insurance violations by any other entities, let alone violations by valid comparators like Lockton Affinity.[1]  *Id.*

### *Discovery Proceeds Without the Selective Enforcement Claim*

On August 8, 2019, this Court denied, in relevant part, the NRA's motion to compel the production of certain documents.  Dkt. 121.  Your Honor held that certain documents were rendered irrelevant by Judge McAvoy's dismissal of the NRA's selective enforcement claim.  *See, e.g.*, *id.* at 28, 44, 45 ("Insofar as plaintiff seeks to compel responses to requests relating to defendants' investigation of non-NRA related affinity insurance programs to support selective enforcement claims, plaintiff's motion to compel is denied, as plaintiff has failed to show the relevance of such discovery to any remaining claim"), 48.  The NRA appealed that decision to the District Court.  Dkt. 130.  In opposing, Defendants also argued that the dismissal of the selective enforcement claim bolstered the irrelevancy of the information the NRA sought.  Dkt. 134 at 4.

### *The NRA's November Amendment Request*

For more than five full months—from early June until November 2019—the NRA made no effort to seek to amend based on the documents it received from Lloyd's on June 6, 2019.  On November 25, 2019, the NRA wrote to the Court seeing leave to amend.  It claimed its

---

[1]

amendment was timely because it was based on "the Lloyd's documents and DFS' recent hostilities against yet another NRA-related insurance underwriter." Dkt. 145 (Canoni Ltr.) at 2-3.  At that point, the NRA offered no *other* basis for its amendment.  In response, Defendants pointed out that the Lloyd's documents had been in the NRA's custody for *over five months,* the documents in no way implicated Ms. Vullo, and Ms. Vullo had left DFS on February 1, 2019 so recent DFS conduct was irrelevant.  *See* Dkt. 146 (Scott Ltr., Nov. 26, 2019); Dkt. 147 (Greenberger Ltr., Nov. 26, 2019).

***At the December Court Conference, the NRA Seeks Amendment Based on Information from Someone "Knowledgeable of the Conversations" between DFS, Ms. Vullo and Lloyd's.  In Response to an Interrogatory, the NRA Acknowledges that No Percipient Witness Exists To Support its New Theory.***

At a December 4, 2019 conference, this Court pressed the NRA to explain its (inexplicable) delay in moving to amend sooner.  At that point, Plaintiff admitted that the NRA "couldn't just amend on the basis of the documents [from Lloyd's] themselves" and that the NRA was "not able" "to get that information [about whether Ms. Vullo has knowledge about any competitors' violations] from Lloyd's."  Greenberger Decl. Ex. 1 at 5, 14-15.  Shifting gears away from the Lloyd's documents, the NRA instead asserted, for the first time, that it had obtained new, allegedly incriminating information specifically about Ms. Vullo through "investigative efforts from non-parties."  *Id.*  When asked to identify the non-party witness, Plaintiff refused to disclose the name but claimed it was a "consulting individual" who was "knowledgeable of the conversations between DFS, Ms. Vullo and Lloyd's."  *Id.* at 6.

Promptly after the December 4, 2019 conference, Ms. Vullo, through her counsel, served an interrogatory on the NRA seeking the identity of anyone who "Plaintiff will claim possess[es] knowledge or information that Maria Vullo has or had knowledge" of similarly-situated comparator's violations that were not prosecuted by DFS.  Greenberger Decl. Ex. 2 at 2.  In

response, the NRA objected because "consulting experts" need not be disclosed under Rule 26 (along with boilerplate objections). *Id.* at 2-3. It did not name *any person* with personal knowledge—of either the percipient or the hearsay variety. *Id.*

### *In its Motion to Amend, the NRA Changes Its Claimed Basis Yet Again*

On December 20, 2019, the NRA filed the instant motion, along with a proposed Second Amended Complaint ("Prop. SAC"). Dkt. 154-1. In its accompanying memorandum of law, the NRA acknowledged that its proposed amendment was not based on statements by a percipient witness, or even the hearsay statements of one; instead, its basis for the assertion that "Maria Vullo knew" was the word of "a consulting expert [the NRA retained] to assist in interpreting the Lloyd's documents." Dkt. 155 at 7. In the vaguest terms that one can conjure, the NRA also claimed that it had "engaged in additional investigative work to uncover the factual allegations in the Second Amended Complaint regarding Vullo's knowledge." *Id.* It did not detail what this investigative work entailed, who was involved, or how the so-called investigation provided a basis to make the—wholly false—allegations about Ms. Vullo. The NRA's motion is similarly vague as to timeline; it does not state when it supposedly obtained this information, only that it had "concluded" this work (somehow) in *both* "September and October of 2019." *Id.*

## ARGUMENT

## I.   THE PROPOSED COMPLAINT DOES NOT SUFFICIENTLY ALLEGE THAT MS. VULLO PERSONALLY HAD KNOWLEDGE OF COMPARATOR VIOLATIONS THAT SHE FAILED TO PROSECUTE, AS THE DISTRICT COURT REQUIRED

The proposed Second Amended Complaint, while seeking to add many new allegations, makes virtually no effort to satisfy the District Court's requirement that it allege that Maria Vullo had personal knowledge of non-NRA violations and declined to prosecute them—because it

cannot, in good faith, do so.  The few things the NRA does say on this subject fail to meet the standard in the District Court's Dismissal Decision.[2]

> ### A.   The Complaint Is an Exercise in Distraction; Boiled to Its Essence, There are Only Three New Allegations Even Arguably Concerning Ms. Vullo

Recognizing that it has virtually nothing to allege about Ms. Vullo specifically, the NRA aims to distract the reader with allegations that are simply irrelevant to the key question on a claim for selective enforcement: whether "Vullo knew of non-firearm-related Insurance Law violations by the comparators when DFS commenced its investigation in the NRA's insurance programs."  Dismissal Decision at 11.  Allegations that do not go to such specific knowledge cannot serve as a basis to permit re-pleading to cure the deficiencies the Dismissal Decision cited.

In the main, the proposed Complaint's attempt at alleging scienter amounts to  vague and unsupported allegations about the "knowledge" of "Defendants" or "DFS" *generally*, without naming Ms. Vullo *specifically*: ¶¶ 22 ("Defendants were fully aware"), 65 ("Defendants became aware"), 66 ("they knew"), 76 ("DFS also became specifically cognizant"; "DFS verbally conveyed"), 77 ("provided a report to DFS"), 78 ("what DFS already knew"), 79 ("DFS recently subpoenaed").  Dkt. 154-1 (Prop. SAC).  Indeed, some of these allegations cannot reasonably include Ms. Vullo, because they involve events that occurred *after* Ms. Vullo's departure from DFS.  *See, e.g.*, *id.* ¶ 79.

None of these allegations meets the District Court's standard—or the Supreme Court's, as Judge McAvoy already held.  Dismissal Decision at 9-11.  The Dismissal Decision relied on

---

[2] The NRA's proposed Second Amended Complaint also fails to state a claim because, among other reasons, the conduct the NRA complains of does not amount to selective prosecution, the NRA cannot establish harm, Ms. Vullo is entitled to absolute immunity, and Ms. Vullo is protected by qualified immunity.  Should the Court permit this amendment, Ms. Vullo will seek dismissal under Rule 12 on a variety of grounds.

*Ashcroft v. Iqbal*, which involved analogous facts.  *Iqbal* held that high-level officials who were sued for discrimination "cannot be held liable unless *they themselves* acted on account of a constitutionally protected characteristic," and, at the pleading stage, a complaint must be dismissed where it "does not contain any factual allegation sufficient to plausibly suggest [the government official's] discriminatory state of mind."  556 U.S. at 683 (emphasis added); *see also id.* at 680-81 (holding insufficient that the complaint alleged "that Ashcroft was the 'principal architect' of this invidious policy, and that Mueller was 'instrumental' in adopting and executing it," as these were "formulaic" "bare assertions" (internal citations omitted)).  That analysis applies equally here:  Ms. Vullo ran a 1,400+ person agency with oversight over New York's immense insurance industry.  She did not, and could not, know about every possible law violation in the industry or all the activity the agency may have been involved in on a daily basis. There is certainly no basis to ascribe to her the "general knowledge" of the industry (if that even exists and is provable), much less a "conscious decision" on her part not to prosecute certain violations.[3]

This leaves just three factual allegations that even arguably purport to allege Ms. Vullo's knowledge.  They do not come close to meeting the standard the District Court articulated.

They are as follows:

- ¶ 21: "For example, beginning in February 2018, Vullo met personally with executives of regulated institutions, including Lloyd's.[17]  ([17]: Vullo met with, and threatened, executives of Lloyd's of London ('Lloyd's' and its United States affiliate, Lloyd's America, Inc, ('LAI').)  During the meetings she discussed

_____

[3] ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

an array of technical regulatory infractions plaguing the affinity-insurance marketplace. Vullo made it clear, however, that DFS was less interested in pursuing the infractions of which she spoke, so long as Lloyd's ceased providing insurance to gun groups, especially the NRA."

- ¶ 67: "In the aftermath of the Parkland tragedy, Vullo met with senior executives of Lloyd's and LAI, and presented Defendants' views on gun control and their desire to leverage their powers to combat the availability of firearms, including specifically by weakening the NRA. These backchannel meetings began on or about February 27, 2018, in the wake of a speech by Vullo at a breakfast meeting of the New York City Bar Association; participants included Vullo herself, along with Joseph Gunset of LAI."

- ¶ 69: "Vullo and DFS made clear that Lloyd's could avoid liability for infractions relating to other, similarly situated insurance policies, so long as it aided DFS's campaign against gun groups."[4]

We pause here to inform the Court that each of these allegations is emphatically false and the NRA has no basis to make these allegations. Ms. Vullo ardently denies these allegations. As the Superintendent of an agency charged with regulating the insurance and banking industries, she regularly made public speeches about her agency's work and, in the aftermath of those speeches, representatives of regulated entities would often approach her in public places. But she can state categorically, contrary to the NRA's allegations, that she never "discussed an array of technical regulatory infractions plaguing the affinity-insurance marketplace" with Lloyd's executives or stated to them that "DFS was less interested in pursuing the infractions of which

---

[4] In the "Claims" section at the end of its proposed Complaint, the NRA relies on boilerplate language to plead its selective enforcement claim, stating that Ms. Vullo  "was aware" that "other identical (or at least similar in all material respects) affinity-insurance programs had the same legal infirmities that resulted in the penalties against Lockton, Chubb, and Lloyd's." Prop. SAC ¶¶ 110-12 (claiming that Ms. Vullo "was aware" that "other identical (or at least similar in all material respects) affinity-insurance programs had the same legal infirmities that resulted in the penalties against Lockton, Chubb, and Lloyd's").  The District Court was already quite clear that such "naked assertions devoid of further factual enforcement" are "conclusory statements" which are entitled to no weight.  Dismissal Decision at 9 (quotations omitted).

she spoke, so long as Lloyd's ceased providing insurance to gun groups, especially the NRA."
*Id.* ¶ 21.  She never told executives of Lloyd's that Defendants "desire[d] to leverage their powers to combat the availability of firearms, including specifically by weakening the NRA." *Id.* ¶ 67.  She never "made clear that Lloyd's could avoid liability for infractions relating to other, similarly situated insurance policies, so long as it aided DFS's campaign against gun groups."  *Id.* ¶ 69.  She never had "backchannel meetings" with Lloyd's executives or "threatened" them.   *Id.* ¶¶ 21 n.17 & ¶ 67.

If it would be helpful to the Court, Ms. Vullo would be happy to provide an affidavit swearing, under oath, that these allegations are false.  Should the NRA have a legitimate basis for its amendment—and it is clear it does not—it should be willing to make the same offer. While such an affidavit would admittedly not be routine at the pleading stage, given the age of the case, the Court surely has discretion to avoid substantial motion practice, *see supra* n. 2, where an exchange of affidavits will demonstrate a pleading's falsity at the outset.

That said, the Court can deny the motion without considering the falsity of the NRA's allegations, because these three allegations do not adequately allege knowledge of comparators as the District Court required for the NRA to re-plead its selective enforcement claim.

## B.   The Three Vullo-Specific Allegations Do Not Allege Knowledge of Comparators, as the District Court Required

Eight months after the District Court's dismissal of its selective enforcement claims, the NRA still cannot allege that "Supt. Vullo had knowledge of the specific violations identified in paragraph 59 of the Amended Complaint," as the District Court required.  *Id.*  As detailed above, paragraph 59 made *specific* allegations about Lockton's violations of three specified provisions of the Insurance Law—¶¶ 2212(a)(1), 2324(a), and 2116—for four specified and identified affinity programs—AOAExcel, Moose, VFW, and PPA.  *See supra* at 5.  While the District

13

Court concluded that "the NRA and the comparator-organizations are similarly situated," it dismissed the claim nonetheless because there was no allegation that Ms. Vullo knew about these comparator violations and consciously declined to prosecute them.  Dismissal Decision at 7.

The NRA does not even *attempt* to make a showing that Ms. Vullo knew of the Lockton-related violations that Judge McAvoy held were valid comparators.  The allegations in ¶¶ 21, 67, and 69 of the proposed Complaint do not speak of Lockton at all; they speak to the conduct of Lloyd's.[5]  Certainly, the proposed Complaint does not allege that Ms. Vullo knew of any of the specific violations by the Lockton "comparators" identified by the Court, as detailed in paragraph 59.  Dismissal Decision at 11.

Similarly, the NRA does not comply with the District Court's *timing* requirement:  the NRA must plead that Ms. Vullo knew of comparators' violations at the time "when DFS commenced its investigation in the NRA's insurance programs."  *Id.*  The NRA pleads that the DFS investigation "launched" in "October 2017."  Prop. SAC ¶ 35.  Yet the NRA does not—and cannot—allege that Ms. Vullo knew of any comparator before October 2017.  The NRA's Vullo-related allegations (bare bones as they are) reference alleged communications that began four months later—in February 2018.  *Id.* ¶¶ 21, 67, and 69.  These failures by the NRA to comply with the District Court's decision are, themselves, a ground for denial of the amendment.

The NRA's allegations that Ms. Vullo had generic knowledge of infractions "plaguing the affinity-insurance marketplace," *id.* ¶ 21, do not suffice, as the District Court already held, *see* Dismissal Decision at 9 ("conclusory statements of Defendants' scienter," "naked assertions"

---

[5] Lockton is an excess lines broker, while Lloyd's is a carrier ("Lloyd's" is used in this brief to refer to Lloyd's of London, its United States affiliate, Lloyd's America, Inc., and the Lloyd's syndicates who were parties to the DFS consent order).  The nature of insurance law obligations differs for each, as the separate consent orders reflect.  The NRA's attempted bait and switch on its selective enforcement claim is yet another reason to deny this late motion.

and "formulaic recitations," do not suffice).  The NRA must detail what specifically Ms. Vullo allegedly knew to support its claim that she made a conscious decision to not prosecute such violations.  This it has not done, and it cannot do.

Even more to the point, absent such specific allegations, the Court cannot determine whether the (alleged) non-enforcement was against a similarly-situated entity which is a fair comparator.  The Dismissal Decision only considered whether the NRA had appropriately alleged knowledge *after* finding that the NRA had demonstrated that the specific paragraph 59 affiliate program violations (connected to Lockton Affinity) were a fair comparator.  In contrast, the NRA's three Vullo-related allegations concerning Lloyd's are so vague as to be meaningless. Unlike the Lockton-related violations described in Paragraph 59, these new allegations do not describe specific provisions of the Insurance Law, or specific product offerings, or specific affiliate relationships.  In the proposed complaint, the NRA merely alleges that Ms. Vullo discussed "an array of technical regulatory infractions plaguing the affinity-insurance marketplace" and refers generally to "infractions relating to other, similarly situated insurance policies."  Prop. SAC ¶¶ 21, 69.  There is no factual allegation about what these "other infractions" were, and none about what the "other, similarly situated insurance policies" might be.  None of this is sufficient for a selective prosecution claim.

These paragraphs are in marked contrast to the specifics in paragraph 59 which Judge McAvoy relied on in determining that the Lockton Affiliate programs were valid comparators. Without an allegation that Ms. Vullo knew about *a specific violation, by a specific violator*, the Court cannot even begin to assess whether those violators are "similarly-situated entities." Dismissal Decision at 8.  The NRA's claim that the other policies are "similarly situated" are "mere labels and conclusions" and "naked assertions" which are entitled to no weight.  *Id.* at 9.

The District Court already rejected such "conclusory statements" as insufficient to ground a claim of selective enforcement.  *Id.*  The instant motion fails for the same reason.  The District Court provided the NRA with a clear roadmap of how it should seek to amend, *if* it had the factual basis to do so.  Because the NRA's allegations do not meet the specific standard for what is necessary to bring a selective enforcement claim against a high-level official under the law of this case, its motion to amend must be denied.

## II.   THE NRA CANNOT MEET ITS BURDEN TO ESTABLISH DILIGENCE AND LACK OF BAD FAITH

The NRA's dilatory conduct in seeking amendment is undeniable.   For over five months after the District Court's dismissal decision, the NRA sat on its hands and did nothing to seek to amend the complaint and add back a selective prosecution claim.  Plaintiff bears the burden of showing "good cause" to permit this proposed amendment because it is beyond the time set by the Court's scheduling order, which fixed a January 31, 2019 deadline.  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[T]he Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings."); *see also* Dkt. 66 (citing Rule 16(b) as standard to extend deadlines in Court's scheduling order).

The "good cause" standard chiefly "depends on the diligence of the moving party." *Parker*, 204 F.3d at 340. "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline." *Verdone v. Am. Greenfuels, LLC*, No. 3:16-CV-01271 (VAB), 2017 WL 3668596, at *7 (D. Conn. Aug. 24, 2017) (internal quotation marks omitted) (quoting *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174-75

16

(S.D.N.Y. 2014).  The moving party bears the burden of showing diligence.  *Id.*  Plaintiff has

made no such showing.

By its terms, the NRA's motion provides only a *single sentence* describing its ostensible

basis for amendment.  There, the NRA asserts that the amendment arises from: (i) documents the

NRA obtained from Lloyd's—last June; (ii) a consulting expert who "interpret[ed]" those

documents; and (iii) unspecified "additional investigative work" the NRA did.  Dkt. 155 at 7.

The NRA has no documents that provide a basis to amend; it has identified no witnesses who can

support its latest allegations.  In short, the NRA cannot come close to meeting its "good cause"

burden, particularly given its shifting and incomplete bases for amendment.

To the extent that the NRA has suggested that its basis to amend arises from documents

obtained in discovery from Lloyd's, those documents were in the NRA's possession in early

June 2019—and they make no reference to Ms. Vullo or to any non-prosecuted violations by

comparators in any event.  *See* Sealed Exs. B, C, and D.  The NRA's baseless claims of

discovery delays are a red herring: discovery serves to provide evidence, or refute, well-pleaded

claims; a plaintiff cannot misuse discovery to fish for information to conjure a basis to plead a

claim in the first instance (must less re-plead a failed claim).  *See WL Cruz v. United Automobile

Workers*, 2019 WL 3239843, *25 (N.D.N.Y. 2019) (citing caselaw).  Given the timing, and their

contents, an amendment based on these documents was not "diligently" asserted.

As to the other two purported bases that the NRA points to—the "consulting expert" and

the "investigation" that the NRA references—absolutely no detail as to either is provided, and

thus it is impossible to know whether the NRA's conduct as to each was or was not "diligent."

In a context where it is the movant's burden to affirmatively demonstrate diligence, this absence

of information is fatal.

More critically, the purported "bases" that the NRA asserts are not, upon examination, true factual bases for allegations against Ms. Vullo at all—raising a legitimate question whether the amendment has been proposed in good faith.  The NRA has now admitted that it "couldn't just amend on the basis of the documents [from Lloyd's] themselves" and that it obtained *no* "information from Lloyd's" about whether Ms. Vullo has knowledge about any competitors' violations.  Greenberger Decl. Ex. 1 at 5-6, 14-15.  In an interrogatory response, *see* Greenberger Decl. Ex. 2, the NRA all but admits that it has no percipient or even hearsay witness to support its allegation that Ms. Vullo "made it clear" she knew about and would not prosecute other "technical regulatory infractions so long as Lloyd's ceased providing insurance to gun groups." Prop. SAC ¶ 21.  Even as it refuses to provide his or her identity, the NRA admits that the "consulting expert" it has retained only "interpret[ed] the Lloyd's documents."  Dkt. 155 at 7.  A witness who "interprets" documents is not a person with personal knowledge.  There is no way to "interpret" the Lloyd's documents to claim that Ms. Vullo made statements evidencing knowledge of comparators—because the documents do not even mention Ms. Vullo *at all*. Sealed Exs. B, C, and D.  And it beggars the imagination how a stranger could "interpret documents" to determine what was in Ms. Vullo's mind at any point.

That leaves only the NRA's unspecified "additional investigative work."  Dkt. 155 at 7. But other than those three words, the NRA provides no details about what the "work" was, how it provided a basis to amend, or, critically, *when* the investigation occurred.  The NRA cannot meet its burden with such empty words.  Even the date the NRA's alleged "investigation" "concluded"—the only information the NRA provides—doesn't help the NRA, because it is beside the point.  Dkt. 155 at 7.  Could the NRA have learned this same information "in advance of the motion"?  *Verdone*, 2017 WL 3668596, at *7.  How can an "investigation" that apparently did not involve a single witness provide a basis for making allegations about a defendant's

18

knowledge and statements?  Why has the NRA's basis for amendment repeatedly changed?  The

NRA offers answers to none of these questions; its motion must be denied.

To demonstrate diligence, the NRA had to answer three specific questions:  When,

specifically, did it learn the specific information it relies on in the proposed Complaint, why

could it not have learned that information earlier had it acted diligently, and has the amendment

been sought in good faith?  Here, the NRA fails to answer any of these questions—and thus fails

to meet the standard under Rule 16.

### III.   VULLO WOULD BE PREJUDICED BY THIS UNTIMELY AMENDMENT

Years into this case, the NRA still has no evidence to support its claims; instead, it

propounds a proposed amendment that is ripe with falsehoods.  Ms. Vullo would be prejudiced

by further unnecessary motion practice that further delays resolution of this case.  She would be

prejudiced by permitting the NRA to make claims based on false allegations the NRA has no

basis to make.  She would be prejudiced by permitting a selective prosecution claim that has no

basis in fact or law.  She *is* prejudiced by the ongoing harm that flows from this baseless lawsuit,

and the additional baseless and scurrilous allegations in the proposed amended complaint.

The NRA's motion is an attempt to turn back the clock on the Court's August 23, 2019

discovery order.  In holding that the NRA's discovery demands sought irrelevant evidence, the

Court appropriately relied, in part, on the dismissal of the selective enforcement claim.  The

NRA, which had sought to use discovery as a fishing expedition, was clearly upset by the

decision; it appealed to the District Court despite having no basis to do so.  This Court should not

permit the NRA to revive a baseless selective enforcement claim—despite the NRA's lack of

witnesses or documentary support for its false allegations—which would cause further discovery

disputes and motion practice, so that the NRA can then claim a newfound entitlement to

discovery the Court has already ruled out of bounds.

**CONCLUSION**

The NRA cannot be permitted to amend where it has not met the pleading standard provided in the District Court's May 2019 decision and has not demonstrated good cause and diligence for its delay.  At the last conference, the Court appropriately asked about "mov[ing] this matter forward in a more expeditious and orderly fashion."  Greenberger Decl. Ex. 1 at 16. Ms. Vullo shares the Court's desire to move this case forward to a conclusion.  Holding the NRA to its burden and denying its baseless and untimely motion to amend would serve that goal.

Dated: New York, New York
        January 27, 2020

EMERY CELLI BRINCKERHOFF
  & ABADY LLP

By:         /s/ Debra Greenberger
        Andrew G. Celli, Jr.
        Elizabeth Saylor
        Debra L. Greenberger
        600 Fifth Avenue
        New York, New York 10020
        (212) 763-5000

*Attorneys for Defendant Maria Vullo*

20