IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CASE NO. 18-CV-566-TJM-CFH |

**THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S REPLY
IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff the National Rifle Association of America (the "NRA" or "Plaintiff") submits this reply in further support of its Motion for Leave to File its Second Amended Complaint and Jury Demand (the "Motion"), as follows:

**I.**

**PRELIMINARY STATEMENT**

The NRA's Memorandum of Law in Support of the Motion[1] demonstrates that: the NRA did not unreasonably delay bringing the Motion; neither Defendant Maria T. Vullo ("Vullo") nor the other Defendants would be prejudiced by the amendment; and, there is no basis to conclude the amendment would be futile. In her opposition,[2] which is long on invective but short on supporting authority, Vullo summarily insists that the NRA's amended allegations are untrue and

---

[1] ECF No. 155.

[2] ECF No. 164.

urges this Court to foreclose any discovery or trial based on flimsy pretenses of prejudice and delay. Defendants Andrew Cuomo ("Cuomo") and the New York State Department of Financial Services ("DFS") also filed opposition papers[3] apparently to remind this Court that the Motion does not seek to re-plead a claim against them. Their arguments lack substance, fail to demonstrate significant prejudice, and complain about a party substitution that the Motion expressly says it is not seeking. Stripped of these distractions, Defendants' oppositions do not approach the requisite "showing by the nonmovant of prejudice or bad faith"[4] that would impair an amendment under the Federal Rules' "liberal"[5] standard.

## II.

## ARGUMENT

### A. The NRA Has Been Diligent Under The Circumstances

The NRA more than adequately demonstrated its diligence in retaining a consulting expert and engaging in investigative work, which culminated in October 2019 – mere weeks before the NRA sought the consent of Defendants (November 12, 2019) to request a conference with this Court to discuss the Motion. The core allegations in the NRA's proposed pleading relate to interactions between Defendants and the Corporation of Lloyd's ("Lloyd's")—headquartered overseas beyond the reach of expedient discovery devices that could have expedited re-pleading in an ordinary dispute. While awaiting rulings on its motion to compel service through DFS on Lloyd's affiliates,[6] and its motion to conduct discovery through the Hague Convention,[7] the NRA

---

[3] ECF No. 162.

[4] *See, e.g.*, *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

[5] *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

[6] *See* ECF No. 100 (Plaintiff's Mot. to Compel Lloyd's Entities, filed Apr. 19, 2019).

[7] *See* ECF No. 129 (Plaintiff's Mot. for Issuance of Letters of Request, filed Aug. 23, 2019).

**NRA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND**                    **Page 2**

managed to obtain a limited number of documents from Lloyd's America, Inc. ("LAI")—subject to stringent confidentiality restrictions that impaired the NRA's ability to show or describe them to others and, thus, delayed the NRA's investigation. Importantly, efforts to expedite matters by deposing an LAI executive stalled when the deponent refused to set a deposition date until the NRA's then-pending appeal of this Court's August 8, 2019 decision (which remains pending today) was resolved.[8] Thus, to understand the documents obtained from LAI and craft allegations that expounded accurately upon their contents, the NRA retained a consulting expert and conducted additional, methodical, time-consuming investigative work.

The principal case upon which Vullo relies to impugn the NRA's diligence is *Fresh Del Monte Produce*—where the movant's motion to amend was **granted** despite protestations like those here.[9] Although Vullo purports to cite the case for the proposition that a party "is not considered to have acted diligently where the proposed amendment is based on information the party knew, or should have known, in advance of the motion deadline,"[10] that principle finds no coherent application here. As this Court pointed out at the December 4, 2019, conference, because Judge McAvoy's May 9, 2019 ruling was issued over three months after the scheduling order deadline, the NRA could not under any circumstances have met the deadline. In the same period, discovery-related motions and appeals were filed and remain pending, and the engagement of the Special Master was negotiated. Given these factors, threshold questions governing the scope and timing for discovery were unanswered. Nonetheless, the NRA did not rest on its laurels; instead, it dug for alternate sources of facts and documents which would facilitate re-pleading. Under the circumstances, the NRA's diligence is clear.

---

[8] See ECF No. 145 at 2.

[9] *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170 (S.D.N.Y. 2014).

[10] ECF No. 164 at 17.

**NRA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND**                    Page 3

Of course, even if the NRA were not diligent (the NRA was), the Motion should still be granted absent a showing by Defendants of bad faith or undue prejudice.[11] Defendants show neither.

## B.     Defendants Will Not Be Unduly Prejudiced By The Amendment

Defendants concede that they bear the burden to demonstrate undue prejudice,[12] but cite no facts (and not a single case) which would support a finding of undue prejudice here. As *Fresh Del Monte Produce* makes clear, "allegations that an amendment will require the expenditure of additional time, effort or money do not themselves constitute undue prejudice."[13] And, "the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."[14] No depositions have occurred and document discovery from Defendants is in its infancy due to Defendants' refusal to produce documents amid spurious claims of privilege. Moreover, from its outset, this case has squarely concerned allegations of "backroom exhortations" by Vullo and DFS to DFS-regulated entities, including Lloyd's. Indeed, since December 2018, the NRA propounded (and Defendants objected to) discovery to support the allegations contained in the Amended Complaint. Defendants argue that the scope of discovery was altered when the NRA's selective-enforcement claims were dismissed in May 2019 without prejudice to re-pleading. However, allowing the NRA to re-plead those claims would not radically alter the discovery landscape, but rather provide additional, redundant legal grounds underpinning discovery requests outstanding for many months.

---

[11] *See Fresh Del Monte Produce*, 304 F.R.D. at 174, 176; *see also Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399-400 (S.D.N.Y. 2017).

[12] *See, e.g., Ruel v. McGrath*, 2013 WL 12130427, at *5 (N.D.N.Y. June 21, 2013) ("the party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial.").

[13] *Fresh Del Monte Produce*, 304 F.R.D. at 174 (citations omitted).

[14] *Id.* (citations omitted).

**NRA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND**                              **Page 4**

Defendants' argument that the NRA's amendment is designed solely to obtain discovery that this Court denied in its decision on August 8, 2019, regarding the NRA's motion to compel[15] is not well founded and does not provide a good faith basis to claim prejudice. The same evidence supports the NRA's First Amendment retaliation claim,[16] and the NRA continues to push for that discovery regardless of the proposed amendment. In any event, the NRA's appeal has no bearing on the newly discovered information (in September and October) which prompted the Motion.

Vullo also claims prejudice based on the conclusory, inaccurate insistence that the NRA's allegations are false. Of course, allegations cannot be gainsaid by a defendant at the pleading stage based merely upon the denials of a defendant.  And none of the Defendants identify why the proposed amendment will require them to expend significant additional resources or significantly delay the resolution of the dispute. It is almost a certainty that Defendants will interpose numerous objections to any additional discovery, and this Court's appointment of a Special Master to determine such objections means that the issues can be streamlined for an efficient resolution, permitting the case to proceed without significant delay.

Importantly, at present, discovery has not ended and no summary judgment motions have been filed,[17] nor is the case close to trial ready for any party.[18] No witnesses have been deposed, and Defendants are still providing information to the Special Master regarding the 15,000+

---

[15] ECF No. 121.

[16] *See, e.g.*, *Franzon v. Massena Memorial Hosp.*, 32 F. Supp. 2d 528, 533 (N.D.N.Y. 1998) (admissible evidence in First Amendment retaliation cases "may well include evidence demonstrating that [plaintiff] was treated differently" than others similarly situated).

[17] *See, e.g., Ansam Assocs. Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir. 1985) (denial proper when discovery is complete and summary judgment motion pending); *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (finding "prejudice where the parties have already completed discovery and the defendant has moved for summary judgment.").

[18] *See e.g., Champlain Enterprises, Inc. v. United States*, 945 F. Supp. 468, 476 (N.D.N.Y. 1996) (sufficient prejudice when plaintiff did not seek amendment until the eve of trial and proposed amendment would require discovery delaying the trial date); *Barrows v. Forest Laboratories, Inc.,* 742 F.2d 54, 58-59 (2d Cir.1984) (denial proper where new claims significantly expand discovery when the case is otherwise ready for trial).

**NRA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND**            **Page 5**

documents slated for *in camera* review. Critical discovery in the case, which the NRA seeks through the Hague Convention, remains pending, and if granted, will further extend the discovery period.[19] The proposed amendment is based on the same operative facts as the current complaint, and as such, "much of the discovery conducted in the case would readily lend itself to a prosecution or defense" of the amended claim.[20] Accordingly, any delay in discovery would be relatively minor and not constitute significant delay to Defendant.[21]

C.  **The NRA Adequately Pleads Vullo's Knowledge of Comparators**

Vullo's argument that the NRA must demonstrate her knowledge of the comparators at the time DFS ***commenced*** its investigation into the NRA's insurance programs[22] is contradicted by ample authority in the Second Circuit.[23]

Indeed, a case from this District, *Spiegel v. Adirondack Park Agency*,[24] plainly contradicts Vullo's premise. In that case, the Adirondack Park Agency (the "Agency") was alleged to have selectively enforced restrictions contained in an Agency Permit (the "Permit") against plaintiffs. The Agency was not aware of Permit violations by other homeowners until it began investigating a neighbor's complaint against plaintiffs.[25] This was not fatal to plaintiffs' selective enforcement claim. Instead, describing virtually the same circumstances as here, the court noted:

---

[19] *See* ECF No. 129; *see also Fresh Del Monte Produce*, 304 F.R.D. at 177 (while the proposed amendment will require additional expenses and extended discovery, the additional discovery and delay is not "significant" in the grand scheme; the claims have considerable overlap, and thus, granting amendment is more efficient.).

[20] *See Spetalieri v. Kavanaugh*, 36 F. Supp. 2d 92, 112 (N.D.N.Y. 1998).

[21] *See Fresh Del Monte Produce*, 304 F.R.D. at 177 (holding that delay on discovery "will be relatively minor given that fact depositions, expert witness discovery, summary judgment motions, and a trial have yet to occur.").

[22] ECF No. 164 at 6, 10.

[23] Although Judge McAvoy's Order dated May 9, 2019, without citing any supporting legal authority, copied a line from Defendants' reply brief regarding the investigation commencement (ECF No. 112 at 11 (citing ECF No. 71 at 5)), the statement was not determinative of or germane to the issues therein, and is, therefore, dicta.

[24] *Spiegel v. Adirondack Park Agency*, 662 F. Supp. 2d 243 (N.D.N.Y. 2009).

[25] *Id.* at 254.

**NRA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND**                           Page 6

The parties also agree that after the Agency commenced an investigation into the Spiegel violations, the Spiegels brought other Permit violations to the Agency's attention. Although the Agency opened investigative files on each of the alleged violations, no other Fawn Ridge homeowner has received a cease and desist order, and no other enforcement proceedings have been brought.[26]

In denying the Agency's motion for summary judgment, the court held:

[E]vidence that the Agency consciously chose not to investigate or pursue Permit violations by similarly situated homeowners, essentially declining to take official action against the other Permit violators, could establish that the Spiegels were treated selectively. A reasonable jury could conclude that the Spiegels had received intentionally different treatment.[27]

The same result obtains here. As the name of the claim implies, it is the adverse *enforcement* that gives rise to liability in a selective-enforcement case, and the moment of such enforcement is when knowledge of comparators must be assessed.[28] Importantly, although this case is at an earlier procedural stage than *Spiegel* (a summary judgment decision), facts which have emerged to date already depict starker enforcement disparities than in *Spiegel*. Unlike the agency in *Spiegel*, Defendants here did not even open investigative files on non-NRA entities engaged in identical affinity-insurance market conduct. In any event, the date that DFS opened its investigation into the NRA's insurance programs is irrelevant. The relevant date (or dates) is the date DFS took action against the NRA, or its business partners.

Here, the NRA's proposed amendment alleges that DFS became aware of "pervasive" comparator market conduct "beginning during the Fall of 2017," at the same time its investigation

---

[26] *Id.*

[27] *Id.*

[28] *See, e.g., Abel v. Morabito*, 2009 WL 321007, at *6 (S.D.N.Y. Feb. 10, 2009) (plaintiff must allege "that defendants had knowledge of the similarly situated individuals *at the time they decided to sue him*.") (emphasis added); *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 227 (N.D.N.Y. 2012) (plaintiff "failed to put forth any other similarly situated individuals whose property taxes were not increased (during the same time period)."); *Lamothe v. Town of Oyster Bay*, 2012 WL 6720781, at *9 (E.D.N.Y. Dec. 27, 2012) (defendant "was not aware of [other] building code violations" when it enforced the building code against the plaintiffs); *Bernstein v. Village of Wesley Hills*, 95 F. Supp. 3d 547, 571 (S.D.N.Y. 2015) ("plaintiff must demonstrate that the defendant was aware of similarly-situated entities, and failed to take comparable action against them.").

**NRA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND**                     Page 7

of the NRA commenced; the proposed pleading goes further and details the nature of such market conduct, and why it was known to be pervasive.[29] The NRA alleges that DFS's knowledge of this pervasive comparator conduct surfaced in surreptitious meetings conducted beginning February 2018.[30] As 2018 wore on, and Defendants continued to single out the NRA's business partners in preparation for the "inevitable" enforcement action against the NRA, the proposed pleading cites mounting proof that DFS was "specifically cognizant" of non-NRA policies, marketed to other Lockton groups, which exhibited the same purported regulatory issues as the NRA's policies.[31]

To the extent Vullo argues she is not personally liable for the constitutional violations committed on her watch by senior DFS employees that she supervised, she is incorrect. Vullo is:

> [P]ersonally involved in a constitutional deprivation within the meaning of § 1983 if [s]he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) failure [sic] to act on information indicating that unconstitutional acts were occurring.[32]

The proposed Second Amended Complaint adequately pleads many, if not all, of these scenarios under which Vullo is liable for the unconstitutional selective enforcement actions of Vullo and DFS against the NRA. For the same reason, DFS's argument—that the proposed amendment should not refer to DFS's actions when DFS the entity cannot be liable—is groundless. The allegations of constitutional violations by senior employees at DFS give rise to Vullo's liability.

Judge McAvoy's roadmap in the May 9, 2019 Order highlighted that the NRA needed to "allege facts plausibly supporting the conclusion that [Cuomo or Vullo] were aware of [non-

---

[29] *See* Proposed Second Am. Compl. ¶ 65.

[30] *See id.* ¶ 69.

[31] *Id.* ¶¶ 76-78.

[32] *Wandering Dago, Inc. v. N.Y. State Office of General Servs.*, 2014 WL 12797920, at *10 (N.D.N.Y. July 28, 2014) (citing *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

**NRA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR**
**LEAVE TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND**                                    **Page 8**

firearm-related Insurance Law] violations by the comparators yet consciously declined to enforce the Insurance Law against the comparators."[33] That is precisely what the Second Amended Complaint does, with more than sufficient detail.[34] The proposed pleading has specific allegations plausibly demonstrating Vullo's knowledge of the affinity-insurance comparators beginning in February/March of 2018—prior to the April 2018 Guidance Letters and prior to any of the May 2018 Consent Orders—and continuing through the December 2018 Lloyd's Consent Order. Despite this knowledge, Vullo and DFS have not brought any enforcement action against the nine affinity-insurance comparators. Thus, the NRA's re-pleaded selective enforcement claim fully complies with Judge McAvoy's conditions.

The NRA also pleads a "see-no-evil" selective enforcement claim in the proposed Second Amended Complaint.[35] This alternative claim does not require the NRA to plead or prove Defendants' knowledge of the comparators. In *LaTrieste Rest. v. Village of Port Chester*, the Second Circuit said: "We do not hold that knowledge will be required in every case. It is conceivable that selective treatment could be shown, where, for example, proof was offered that a municipality did not know of prior violations because it adhered to a see-no-evil policy of not enforcing an ordinance, and then abandoned that policy with respect to a violator engaged in protected activity."[36] The proof at trial will establish that Vullo and DFS had never enforced the Insurance Law provisions against affinity insurance programs in the way those provisions were enforced against the NRA, then abandoned that policy to punish the NRA for engaging in constitutionally protected activity. At this stage, however, all the NRA needs to do to withstand a

---

[33] ECF No. 112 at 11.

[34] *See* Proposed Second Am. Compl. ¶¶ 21-22, 65-79.

[35] *Id.* ¶¶ 111-12.

[36] *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 70 n.1 (2d Cir. 1999); *Abel*, 2009 WL 321007, at *6.

motion to dismiss is allege "enough facts to state a claim to relief that is plausible on its face."[37] The proposed amendment adequately pleads Vullo's and DFS's adherence to a see-no-evil policy of not enforcing the Insurance Law provisions at issue prior to the NRA.

The NRA met its pleading obligations to demonstrate Vullo's specific knowledge of the nine comparators when Vullo and DFS were taking adverse enforcement action against the NRA, and that Vullo and DFS consciously chose not to take adverse action against the comparators. Further, the NRA's see-no-evil selective enforcement claim does not require this knowledge in order for the claims to proceed to discovery. Either way, the NRA has adequately pled a selective enforcement claim, and this Court cannot conclude that the proposed amendment is futile.

### III.

### CONCLUSION

For the reasons set forth above and in the NRA's opening brief, its Motion for Leave to File its Second Amended Complaint and Jury Demand should be granted.

Dated:  February 14, 2020            Respectfully submitted,

By: ___/s/ William A. Brewer III___
William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Sarah B. Rogers (Bar No. 700207)
sbr@brewerattorneys.com
**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

---

[37] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).