**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

NATIONAL RIFLE ASSOCIATION OF
AMERICA,

                        Plaintiff,

   v.                                              1:18-CV-566
                                                              (TJM/CFH)

ANDREW CUOMO, MARIA T. VULLO, THE NEW
YORK STATE DEPARTMENT OF FINANCIAL
SERVICES,

                        Defendants.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Brewer Attorneys & Counselors<br>750 Lexington Avenue, Floor 14<br>New York, New York 10022<br>Attorneys for plaintiff | SARAH ROGERS, ESQ.<br>WILLIAM A. BREWER, III, ESQ. |
| Office of Attorney General<br>State of New York<br>The Capitol<br>Albany, New York 12224<br>Attorneys for defendant Andrew<br>Cuomo, Maria T. Vullo, the New<br>York State Dept. of Fin. Svcs. | ADRIENNE J. KERWIN, ESQ.<br>WILLIAM A. SCOTT, ESQ.<br>HELENA O. PEDERSON, ESQ.<br>MICHAEL G. MCCARTIN, ESQ. |
| Emery Celli Brinckerhoof & Abady LLO<br>600 Fifth Avenue, 10th Floor<br>New York, New York 10020<br>Attorneys for defendant Maria T. Vullo | DEBRA L. GREENBERGER, ESQ.<br>ELIZABETH S. SAYLOR, ESQ. |
| New York State Department of Financial<br>Services<br>One State Street<br>New York, New York 10004-1511<br>Attorneys for defendant New York<br>State Dept. of Fin. Svcs. | NATHANIEL J. DORFMAN, ESQ. |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER

Presently pending before the Court is plaintiff's the National Rifle Association ("NRA" or "plaintiff") Motion to Compel Non-party Lloyd's entities to comply with non-party subpoenas or, alternatively, to compel defendant Department of Financial Services ("DFS") to effectuate service on the Lloyd's entities. Dkt. No. 100-1. Defendant DFS opposed. Dkt. No. 109. Plaintiff filed a reply. Dkt. No. 111. For the reasons that follow, plaintiff's Motion to Compel is denied.

### I. Background

As defendants provide, "[f]our calendar days prior to the March 26, 2019 date that the NRA identifies as the service date, the NRA attempted service of the subpoenas at issue in this motion." Dkt. No. 109 at 7. On March 22, 2019, a process server attempted to serve upon a DFS clerk, who informed the process server that "the Department does not accept service of third-party subpoenas." Id. On March 26, 2019, the process server returned to DFS and met with a different clerk. Id. The Clerk "mistakenly concluded that the 19 packages were summonses (not subpoenas) with lawsuit initiating documents and issued a receipt to the process server." Id. Moments later, the clerk called the process server advising the server that the papers could not be accepted as DGS could not accept third-party subpoenas. Id. at 7-8. The process server refused to return and advised that he was instructed to leave the documents

2

even if service was refused.  Id. at 8.  The next day, DFS mailed the documents and check back to the process server.  Id.  When the NRA served DFS it also served courtesy copies on the Lloyd's entities.  Id.

The NRA seeks to compel the service of subpoenas on 19 syndicates or managing agents of Lloyd's of London ("Lloyd's") that were subject to a consent order with the NRA.  Dkt. No. 100-1 at 10.  DFS was named as the agent for service of process in a contract between the NRA and several Lloyd's syndicates/managing agents that underwrote insurance policies for the NRA.  Id.  The Lloyd's entities refused to comply with the subpoenas, arguing that service was not validly effected on DFS, its contractually-designated agent.  The NRA argues that the subpoenas are "critical" to their case as it "believes that Lloyd's-related persons were recipients of the 'backroom exhortations' identified in the Amended Complaint."  Id. at 7.  Similarly, it contends that the Lloyd's entities "are in possession, custody, and control of a robust body of nonpublic information relevant to this case, including documents and testimony that would reflect interactions between Lloyd's and DFS, as well as Lloyd's internal decision-making in response to DFS pressure."  Id. at 9.

## II. Discussion

### A. Arguments

Plaintiff contends that plaintiff and the Lloyd's entities can validly name the Superintendent of DFS as the agent for service of process by contract even if DFS is not aware of this designation.  Dkt. No. 100-1 at 13-15.  Next, plaintiff argues that New

3

York Insurance Law § 1213 "provides explicitly that excess-line insurers, such as the Lloyd's Entities, designate the DFS Superintendent as their agent for service in actions, like this one, that arise out of or relate to their contracts with insureds." Id. at 10. Plaintiff avers that "§1213 contains no language limiting the type of process that may be served on the Superintendent of the DFS. Indeed, the provision permits service of all lawful process in any proceeding, with no exceptions pertaining to subpoenas." Id. at 17. Thus, because it validly effectuated service on DFS, plaintiff argues, DFS's 'purported rejection and return of the subpoenas' has no legal effect." Id. at 19-21. Finally, plaintiff argues that this Court has jurisdiction to enforce the subpoenas as the Lloyd's entities were doing business in New York or, alternatively, because of the state's long-arm statute. Id. at 21-22.

By contrast, DFS argues that New York Insurance Law §§ 1212 and 1213 do not apply to this dispute as it involves an unauthorized foreign insurer – as Lloyd's is an excess line insurer – and third-party subpoenas, not case-initiating documents in an action against the insurer. Dkt. No. 109. DFS contends that to conclude that section 1213 authorizes service of third-party subpoenas on DFS would be "contrary to the canon of statutory construction that '[w]henever possible, statutory language should be harmonized, giving effect to each component and avoiding a construction that treats a word or phrase as superfluous.'" Id. at 15 (quoting In re DeVera v. Elia, 32 N.Y.2d 423, 436 (N.Y. 2018) (additional citation omitted)). Further, DFS argues that the agency has long interpreted §1212 as applying only to papers used to commence a lawsuit against

4

the insurer.  Dkt. No. 109 at 11.[1]   Similarly, they argue that DFS's interpretation is supported by case law.  Id.

Next, DFS argues that a private contract between the NRA and the Lloyd's entities cannot expand DFS's responsibility or "statutory powers," especially because DFS is not a party to the agreement.  Dkt. No. 109 at 5, 18.  Moreover, DFS contends that the contractual provision between NRA and the Lloyd's entities (1) mirrors the language of 1213(e) and is titled "Service of Suit," showing that "the intent of the provision is to be consistent with the understanding that the 'process' which may be accepted by the Superintendent under the Insurance Law"; and (2) "is limited to service of process arising out of a contract of insurance" where as "[t]he conduct at issue in this case is limited to allegations that the NRA has made against the Governor, the former Superintendent of [DFS], and [DFS]."  Id. at 18-19.  Lastly, DFS opines that the NRA has alternative means to effectuate the service of third-party subpoenas on Lloyd's entities – the Hague Convention.  Id. at 20-21.

In reply, plaintiff reiterates its argument that section 1213 authorizes service of the third-party subpoenas, noting that "Section 1213(b), in particular, uses broader language inclusive of lawful process 'in any proceeding instituted by or on behalf of an insured or beneficiary arising out of such contract of insurance.'"  Dkt. No. 111 at 4-5.  Plaintiff opines that § 1212's language limiting service of process to proceedings against the insurer is "inapposite."  Id. at 5.  Similarly, plaintiff contends that DFS

---

[1] DFS also argues that the Office of General Counsel has similarly made such a conclusion in a 1952 advisory opinion.  Dkt. No. 109 at 11.

5

improperly relies on other subsections of §1213 – §1213(c)(1) and §1213(d) – but "the granular specificity of §1213(c) and §1213(d) underscores, by contrast, the breadth of §1213 as a whole. If §1213 were intended only to govern lawsuits 'against' an insurer, its bond-posting requirements and attorney-fee provisions could apply uniformly without qualification." Id. Plaintiff further contends that §1213(e) does not apply as it exempts contracts obtained through an excess-line broker, whereas the Lloyd's entities are "'unauthorized insurers' (underwriters), not brokers, of relevant policies." Id. at 6. Plaintiff urges the Court to reject defendants' interpretation "that multiple, redundant designations of the Superintendent as the insurer's agent can nullify one another, depriving a New York insured of swift recourse to a New York court" and "'frustrate the clear intent of the Legislature and lead to an absurd result.'" Id.

## B. Analysis

It is well-settled that "the starting point for interpreting a statute is the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). "[W]here the language of the statute to be interpreted is clear the court must go no further." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Envtl. Conservation, 810 F. Supp. 1331, 1338 (N.D.N.Y.), modified on recon., 831 F. Supp. 57 (N.D.N.Y. 1993), aff'd in part, rev'd in part, 17 F.3d 521 (2d Cir. 1994) (citing State of Conn. v. U.S. Envtl. Prot. Agency, 656 F.2d 902, 909 (2d Cir. 1981)).

> As the Second Circuit has explained, statutory interpretation must "begin with the plain language, giving all undefined terms their ordinary meaning while attempt[ing] to ascertain

6

> how a reasonable reader would understand the statutory text, considered as a whole." Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc., 810 F.3d 861, 868 (2d Cir. 2015) (internal quotation marks and citation omitted); see Prot. & Advocacy For Pers. With Disabilities, Conn. v. Mental Health & Addiction Servs., 448 F.3d 119, 124 (2d. Cir. 2006). If a statutory provision is ambiguous, the court must "then turn to canons of statutory construction for assistance in interpreting the statute." Greathouse v. JHS Sec. Inc., 784 F.3d 105, 111 (2d Cir. 2015) (citing Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 423 (2d Cir. 2005)). "These include looking to the purpose of [a statute], and affording some degree of weight to the interpretations of the agencies charged with enforcing it." Id. at 113.

Disability Rights New York v. Wise, 171 F. Supp. 3d 54, 58 (N.D.N.Y. 2016).

> When faced with an unsettled question of state statutory interpretation, a federal court should consider "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, and federal cases which construe the state statute."

In re Gen. Motors LLC Ignition Switch Litig., 339 F. Supp.3d 262, 275 (S.D.N.Y. 2018) (quoting Bensmiller v. E.I. Dupont de Nemours & Co., State of La., 47 F.3d 79, 82 (2d Cir. 1995) (internal quotation marks and alterations omitted).

"[T]he statement of an agency interpreting a statute which it administers . . . is entitled to deference." Wagar v. BASF Corp., No. 88-CV-90, 1990 WL 124069, at *3 (N.D.N.Y. Aug. 24, 1990) (citing Weeks v. Quinlan, 838 F.2d 41, 43 (2d Cir. 1988)); Wise, 171 F. Supp. 3d at 59 ("Under, Chevron[, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984)], an agency's interpretation of a statute it is responsible for administering is entitled to deference so long as it is reasonable in light of the two-step analysis set forth by the Supreme Court.").

7

Despite a diligent search, the Court could find no case law, state or federal, discussing the application of third-party subpoenas to §1213. Indeed, there is little case law reviewing section 1213 at all outside of the context of the bond-posting requirements and due process concerns. See generally Danaher Corp. v. Travelers Indem. Co., No. 10-CV-121 JPO, 2014 WL 7008938, at *3 (S.D.N.Y. Dec. 12, 2014) ("The precise relationship between these statutory bases for jurisdiction over insurers is not well defined in the New York case law."). Section 1213(a) expresses the legislative intent behind the section – to protect insureds or beneficiaries by assisting them in bringing actions against their insurers arising under the policies. NY INS. §1213(a). However, the plain language explicitly setting forth the legislative intent is narrower than the plaintiff's proposed interpretation suggests. Dkt. No. 100-1 at 17. The legislative intent is reflected in the statute's clear language: (1) "The purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits on or behalf of insureds or beneficiaries **under** certain insurance contracts[,]" (2) "it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums <u>for the purpose of asserting legal rights</u> **under such policies**." NY INS § 1213(a). The Court understands this language to mean that the statute was created to allow insureds or beneficiaries the ability to serve the foreign insurer relating to matters <u>arising under</u> the insurance contract. Here, plaintiff, although the insured/beneficiary, seeks to serve third-party subpoenas on an unauthorized insurer, the underlying action is decidedly not

8

to "assert legal rights under such policies" between plaintiff and the Lloyd's entities.  Id.; see compl.  Instead, the dispute is against another entity and is not directly regarding the terms of the contract/policy.

In arguing for their preferred statutory interpretations, parties make much of §1213(e), which excludes application of the section to:

> any proceedings against any unauthorized foreign or alien insurer arising out of any contract of insurance effectuated in accordance with . . . section 2105[2] of this chamber where such contract designates the superintendent or his successors in office the insurers true and lawful attorney upon whom may be served all lawful process in any proceeding instituted on or on behalf of an insured or beneficiary arising out of such contract.

NY INS § 1213(e).  This section is inapplicable to this case.  As plaintiff points out, the Lloyd's entities are not excess line brokers, rather, they are excess line insurers.  Dkt. No. 111 at 5-6.  Thus, although plaintiff and Lloyd's entities have a contract designating the Superintendent as agent for service of process, because it appears undisputed that Lloyd's is not an excess line broker, this section is of no force.[3]

Moreover, is clear that § 1212 – which applies to proceedings against unauthorized or alien insurers – does not apply to the service of third-party subpoenas.  NY INS § 1212.  Indeed, it does not appear disputed that § 1212 applies only where the foreign or alien insurer is authorized in New York State and allows an insured or beneficiary to serve the superintendent "in any proceeding against it on a contract

---

[2]  New York Insurance Law § 2105 applies to excess line brokers.  See NYS INS §2105.

[3]  Although the Court need not reach the issue, it does note that it is entirely possible that the legislature did not wish to include disputes arising out of contracts involving excess line brokers and health maintenance organizations under §1213's protection.

9

delivered or issued for delivery, or on a cause of action arising, in this state." NY INS §1213.  Thus, its application is limited to authorized foreign/alien insurers and in actions arising out of the insurance contract.  This case has neither as neither party disputes that Lloyd's is not an authorized insurer, rather a foreign excess line insurer, and that the underlying action is not a proceeding against Lloyd's relating to the contract of insurance between the Lloyd's entities and plaintiff.

Plaintiff next suggests the language of §1212, "in any proceeding against it," further supports its argument that §1213 is meant to be broader than §1212, as it does not contain such limiting language, instead stating that it applies "in suits on or behalf of insureds or beneficiaries." NY INS §1212.  Although the Court agrees that §1212 limits its application to proceedings against the foreign/unauthorized insurer, the language need not be identical between §1212 and §1213 to rationally reach the Court's reasoning.  Indeed, although §1213 employs different language than §1212, it still contains limiting language applying to disputes involving the underlying insurance contract.  See NY INS §§ 1212, 1213.[4]  Use of language of "in suits by or on behalf of insureds or beneficiaries under certain insurance contracts," suggests that the subject of that suit would be one that arises out of the contract.  Id. §1213.  Here, the suit before the Court is not one arising out of the insurance contract.  Indeed, the intent of the statute is to allow insureds/beneficiaries the opportunity to bring proceedings

---

[4] Although not dispositive and limited to reviewing §1212, the Court finds persuasive DFS's interpretation of the statutory provisions in this exact context.  See N.Y. Dept. of Ins. Gen. Counsel Op., No. 09-08-02, 2009 WL 2712332, at *1 (Aug. 5, 2009) ("May the Superintendent accept service of a subpoena on an authorized insurer when the insurer is not a defendant in the underlying legal action ('a third-party subpoena')."  See, e.g., Chevron., 467 U.S. 837 (1984).

10

against the foreign insurer – that is not the kind of proceeding or action at issue here.

As the Court finds that §1213 does not authorize the Superintendent of DFS to act as an agent for service of process regarding non-party subpoenas, the Court does not find DFS's initial acceptance of service to be dispositive. See Dkt. No. 100-1 at 10-11. Similarly, the insurance contract between the Lloyd's entities and the NRA does not require a contrary result. Although plaintiff cites much case law to support its argument that the agent need not be aware of the contractual designation for it to be valid, dkt. no. 100-1 at 13-16, those cases arise where the named agent is a private party. Specifically, plaintiff argues that the superintendent need not be aware of the contractual designation in order for it to be valid, citing Recyclers Consulting Grp., Inc. v. IBM-Japan, Ltd., No. 96 Civ. 2137(JFK), 1999 WL 615014 (S.D.N.Y. Oct. 3, 1997). Yet, as DFS opines, this is not a case involving a state agency; rather, it involves a contractual designation of a private entity. Id. Further, as DFS points out, although the Court concludes that the contractual designation is not enforceable under these facts, it observes that "Service of Suit" provision contract, much like the language of section 1213, states that the service referenced is "any lawful process in any action, suit, hereunder arising out of this contract of insurance." See Dkt. No. 100-11 at 5.[5] Regardless of the more inclusive contractual language of "any lawful process in any

---

[5] The Service of Suit provision reads: "[Pursuant to any statute of any state . . . of the United States which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute . . . as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary herein arising out of this contract of insurance and hereby designated the above mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof."). Dkt. No. 100-11 at 4-5.

11

action, suit or proceeding," the limiting language that immediately follows cannot be ignored – "arising out of this contract of insurance." Id.  Here, the dispute cannot be fairly said to arise out of the contract of insurance.   Accordingly, the Court rejects plaintiff's arguments that the contract between plaintiff and Lloyd's entities must compel the Superintendent of DFS to serve the non-party subpoenas.  Thus, where the Court finds that the statute limits designation of DFS as an agent for service of process to proceedings where the foreign insurer is either authorized (§1212) or, if unauthorized, (§1213) where the proceeding is against the insurer for matters arising out of the insurance contract, a contractual designation of the superintendent as agent for service of process for any proceeding other than those statutorily permitted is of no force.

      Finally, insofar as plaintiff argues that this Court can either compel defendants to effectuate service or to compel the Lloyd's entities to accept service directly through "general personal jurisdiction" or New York's long-arm statute due to Lloyd's entities practice of business or contracts[6] within New York State, dkt. no. 100-1 at 22-24, the Court disagrees.  Plaintiff provides the Court with no case law supporting its expansive view.  Its citations to Vera v. Republic of Cuba, 91 F. Supp. 3d 561, 570-71 (S.D.N.Y. 2015), vacated by Vera v. Bilbao Vizcaya Argentaria, S.A., 946 F.3d 120 (2d Cir. 2019), and The Rockefeller Univ v. Ligand Pharm., 581 F. Supp. 2d 461, 465-66 (S.D.N.Y. 2008) do not require a contrary finding.  There, the entities in question were authorized by the state to conduct business in the state.  See id.  Here, the Lloyd's entities are

---

[6] Plaintiff notes "the Lloyd's Entities entered into more than 24,000 insurance policies or insurance agreements in New York."

12

unauthorized, foreign insurers.  As the Court finds that there is no statutory authorization under which it can compel DFS to accept service of non-party subpoenas on behalf of an unauthorized insurer where the underlying dispute is not directly involving the terms or benefits of the contract itself, it cannot, as plaintiff requests, compel DFS to effectuate service of the non-party subpoenas due to the doctrine of sovereign immunity.  See generally In re N.Y. State Superfund Coal. v. N.Y. D.E.C., 18 N.Y.3d 289, 294 (N.Y. 2011) ("It is axiomatic that 'an agency's authority must coincide with its enabling statute.") (quoting Matter of New York State Superfund Coal., 75 N.Y.2d 88, 92 (N.Y. 1989). Further, insofar as plaintiff urges this Court to compel the Lloyd's entities to accept service directly, as plaintiff has not provided support for this approach, the Court declines to find that general personal jurisdiction or New York State's long arm statute dictates such result.

Although the Court is cognizant that compelling DFS to effectuate service of the Lloyd's entities or compelling Lloyd's to accept service directly would be a more expedient approach for plaintiff in effectuating service and proceeding with discovery, this consideration alone cannot change the clear statutory language.  Indeed, plaintiff is not without an option to properly serve the Lloyd's entities.  Although it may be more cumbersome and less expedient, plaintiff may appropriately resort to the Hague Convention for proper service upon the Lloyd's entities.

### III. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion to Compel (Dkt. No. 100) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated: February 18, 2020
      Albany, New York

_/s/ Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge