IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, <br><br> Defendants. | § § § § § § § § § § § § § § § § § <br><br> CASE NO. 18-CV-566-TJM-CFH |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff the National Rifle Association of America (the "NRA" or "Plaintiff") submits this reply memorandum in further support of its Motion for a preliminary injunction restraining Defendant the New York State Department of Financial Services ("DFS") from initiating enforcement proceedings against the NRA (the "Motion").

**I.
PRELIMINARY STATEMENT**

The NRA's Memorandum of Law in Support of the Motion[1] demonstrates that the NRA is entitled to a preliminary injunction because: the NRA will suffer irreparable harm absent an injunction; the NRA is likely to succeed on the merits of its claims; the balance of hardships favors the NRA; and, an injunction is in the public interest. Defendant's opposition (the "Opposition")[2]

---

[1] ECF No. 176.

[2] ECF No. 183.

never acknowledges (let alone distinguishes) *Schoolcraft*,[3] an authority central to the NRA's argument which is directly on point. Moreover, the Opposition completely ignores the NRA's First Amendment retaliation claim, and insists disingenuously that, since the NRA's re-pleaded selective-enforcement claim targets the DFS Superintendent in her official capacity rather than DFS itself (a technical workaround due to sovereign immunity),[4] no harm can come from DFS adjudicating factual issues germane to that claim. These arguments fail. So, too, does the Opposition's reliance on the *Younger* abstention doctrine, which plainly exempts cases dealing with the constitutional right of free speech.

The NRA's motion only seeks to forestall DFS's proceeding until overlapping issues are adjudicated in this previously-filed action—an outcome that will not prejudice the State. Indeed, it has become clear that some delay in the DFS proceeding is inevitable, due to extraordinary public health considerations.[5] The NRA has offered to toll any applicable statutes of limitations, preserving DFS's ability to obtain any relief to which it is ultimately entitled. Of course, if the Superintendent's hostilities against the NRA are determined to have been part and parcel of an unconstitutional selective-enforcement and retaliation scheme, DFS may not be entitled to any relief at all—another reason to delay an administrative hearing. In sum, the Opposition identifies no ground to deny the NRA the relief it seeks.

---

[3] *Schoolcraft v. City of New York*, 955 F. Supp.2d 192, 199 (S.D.N.Y. 2013) (granting preliminary injunction where an administrative adjudication of issues that overlap with those pending before the district court could generate preclusive effects and interfere with the district court's ability to fully adjudicate the issues).

[4] *See* discussion *infra* at n.19.

[5] Declaration of Sarah B. Rogers executed on March 19, 2020 ("Rogers Decl.") ¶ 8.

# II.
# ARGUMENT

## A. The NRA Will Suffer Irreparable Harm Absent An Injunction

The NRA's opening memorandum cites numerous decisions in the Second Circuit applying the presumption of irreparable harm to alleged violations of the Free Speech and Equal Protection Clauses, as well to an administrative hearing lacking the safeguards afforded by this Court and controlled by the very agency the NRA is, in effect, suing.[6] The Opposition misleadingly cites cases involving deprivation of property rights, not the right of free speech.[7] Moreover, the *Joglo* case on which Defendants principally rely[8] is distinguishable because the *Joglo* plaintiffs "d[id] not even contend that they w[ould] suffer any constitutional injury because of the DEC enforcement proceeding"—a set of facts unlike those here.[9]

---

[6] ECF No. 176 at 12-14.

[7] *See* ECF No. 183 at 10-11. Contrary to the Opposition's cases that allege constitutional violations resulting in the loss of a property rights, the NRA asserts that DFS's actions directly limit its free speech. *See Dorsett-Felicelli, Inc. v. Cty. of Clinton*, 349 F. Supp. 2d 355, 366 (N.D.N.Y. 2004) ("Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed," but loss of job will not suffice); *see also Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (deprivation of parking spot insufficient harm).

[8] ECF No. 183 at 10-11.

[9] *See* ECF No. 176 at 13 ("[T]he Second Circuit has applied the presumption of irreparable harm to alleged violations of the Free Speech and Equal Protection Clauses. Here, the NRA alleges violations of both clauses…"); *see also* Miller Decl. ¶¶ 16-17. The *Joglo* court also noted that there was no evidence the administrative proceeding sought to be enjoined would consider issues, such as the treatment of comparators, which were germane to Joglo's federal claims. *See Joglo Realties, Inc. v. Seggos*, No. 16CV1666ARRCLP, 2016 WL 4491409, at *17 (E.D.N.Y. Aug. 24, 2016) ("Second, the proceeding will adjudicate only whether or not plaintiffs committed the various environmental claims alleged in the complaint—not whether plaintiffs own the Esplanade, whether Drescher has behaved appropriately or injuriously toward them, or whether plaintiffs' neighbors have also committed numerous environmental violations similar to those with which plaintiffs have been charged. Thus, even if the findings from the proceeding were afforded some form of preclusive effect, it is impossible to imagine how any DEC finding could in any way compromise plaintiffs' ownership rights to the Esplanade or limit plaintiffs' ability to pursue their federal constitutional claims."). By contrast, the NRA's Motion is supported by an expert affidavit from a former DFS hearing officer which states: "In an administrative enforcement proceeding conducted by DFS regarding purported violations of New York Insurance Law §§ 2102 and 2117, the parties are highly likely to present evidence, and the hearing officer is highly likely to make factual determinations, regarding: (i) whether, and to what extent, comparable conduct occurred in the marketplace; and (ii) if violations occurred, whether similarly situated violators were treated similarly by New York State. In other words, it is highly likely that such a proceeding would adjudicate factual issues overlapping with those before this Court." *See* ECF No. 176-26 (Cashin Decl.) ¶ 19.

The Opposition's only effort to counter the powerful argument by Professor Arthur Miller—consistent with applicable case law—that the NRA stands to suffer irreparable harm if issues germane to its constitutional claims are shunted into a DFS-controlled forum is to complain in a footnote that Professor Miller was not properly disclosed as an expert.[10] However, the expert disclosures contemplated by Fed. R. Civ. P. 26 apply only to experts slated to testify at trial; expert affidavits may separately be submitted to support or oppose a motion for a preliminary injunction, and can properly be considered by the court at that stage.[11] The Opposition also dismisses any harms stemming from compelled administrative-hearing testimony by key fact witnesses on issues which overlap with those here, on the ground that several NRA employees already provided sworn testimony in closed, deposition-style sessions pursuant to investigative subpoenas.[12] But that testimony is inadmissible against the NRA in federal court, because the NRA was denied any opportunity to participate in DFS's closed hearings,[13] and because DFS intentionally prevented witnesses from reviewing their transcripts to identify errata.[14]

---

[10] ECF No. 183 at 11.

[11] *See, e.g.*, *Wreal LLC v. Amazon.Com, Inc.*, No. 14-21385-CIV, 2015 WL 1281042, at *2 (S.D. Fla. Mar. 20, 2015) (the use of an expert's affidavit in opposition to a preliminary injunction did not transform the expert into a testifying expert for discovery, disclosure, and privilege purposes).

[12] *See* Opposition at 7.

[13] *See* Rogers Decl. ¶¶ 6-7. Even if the declarant is unavailable, the prior sworn testimony can only be offered in federal court against a party who "had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination" when the testimony was initially taken.). *See* F. R. Evid. 804(b)(1); *Jordonne v. Ole Bar & Grill, Inc.*, 13 Civ. 1573 (VB)(JCM), 2016 WL 3409088, at *7 (S.D.N.Y. Apr. 26, 2016), *report and recommendation adopted*, 2016 WL 3360524 (S.D.N.Y. June 16, 2016). The New York Civil Practice Law and Rules, which regulate DFS's issuance of testimonial subpoenas, contain the same requirement. *See* CPLR § 3117(3); *see also, e.g., Claypool v. City of New York*, 267 A.D.2d 33, 35 (1st Dep't 1999) (transcript of Rule 50-h administrative examination could not be used against defendants to establish liability "since they were not notified and were not present at the hearing").

[14] *See* Fed. R. Civ. P. 30(e) (requiring that, in connection with any deposition in a federal proceeding, "the deponent must be allowed 30 days . . . to review the transcript or recording[] and . . . if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them."). Federal courts that treat unsigned transcripts as admissible do so solely on the ground that the deponent had a chance, and failed or refused, to submit a timely errata sheet. *See, e.g.*, *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp.3d 109, 116 (S.D.N.Y. 2016). The New York Civil Practice Law and Rules, which regulate DFS's issuance of testimonial subpoenas, also require that a witness be allowed to review a deposition transcript. *See* CPLR

**B.    The NRA is Likely to Succeed on the Merits of Its Claims.**

In a curious gambit, the Opposition insists repeatedly that the NRA's "selective enforcement claim . . . forms the exclusive basis for the Plaintiff's current motion."[15] It ignores the three-page section of the NRA's opening memorandum entitled, "The NRA Is Likely to Succeed On The Merits Of Its First Amendment Retaliation Claim."[16] Having failed to contest the NRA's likelihood of success on this claim, Defendants must concede this point to the NRA.[17] Moreover, the NRA's pending motion to amend its complaint (which the Court is obliged to consider under a "liberal" standard)[18] re-pleads selective-enforcement claims against the DFS Superintendent in her official capacity—claims which are identical to claims against the agency itself.[19]

---

§ 3116. DFS repeatedly denied counsel's requests for copies of transcripts, despite protests that this would preclude verification or the submission of errata. *See* Rogers Decl. ¶ 6.

[15] *See* ECF No. 183 at 9. *See also id.* at 3-4, 7, 11.

[16] ECF No. 176 at 15-18. The NRA's retaliation claim raises many of the same core factual issues as its selective-enforcement claim, including DFS's treatment of similarly situated comparators. *See, e.g.*, *Franzon v. Massena Memorial Hosp.*, 32 F. Supp.2d 528, 533 (N.D.N.Y. 1998) (reversing magistrate's denial of discovery concerning potential disparate treatment of peers in First Amendment retaliation case because admissible evidence in such cases "may well include evidence demonstrating that [the plaintiff] was treated differently" than others similarly situated); *cf.* ECF No. 37 (Am. Compl.) at 30-32; *see* ECF No. 154 (Notice of Mot. for Leave to File Second Am. Compl. Ex. 1, Proposed Second Am. Compl.) at 37-39.

[17] *Rusyniak v. Gensini*, No. 507-CV-0279(GTS/GHL), 2009 WL 3672105, at *1 (N.D.N.Y. Oct. 30, 2009) (granting motion to dismiss, reasoning that "As a result of Plaintiffs' failure to address Defendants' argument regarding Plaintiffs' First Cause of Action, Defendants' burden on this motion is somewhat lightened with regard to that cause of action."); *Spero v. Vestal Cent. Sch. Dist.,* No. 317CV0007GTSML, 2019 WL 6840175, at *6 (N.D.N.Y. Dec. 16, 2019) ("when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a 'modest' burden."); *Albany Molecular Research, Inc. v. Waterville Valley Techs., Inc.,* 323 F.R.D. 489, 494 (N.D.N.Y. 2018) (unopposed motion for default judgment met the modest burden because defendants failed to address parts of arguments.); *see also* Local Civ. R. 7.1(b)(3).

[18] *See, e.g.*, *Shannon v. Goon*, No. 9:12-CV-395 GLS/CFH, 2013 WL 160274, at *3 (N.D.N.Y. Jan. 15, 2013); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. The leave sought should, as the rules require be 'freely given.'"); *see also* FED. R. CIV. P. 15(a)(2).

[19] *See McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n. 2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent.") (internal quotations and citations omitted); *Krug v. Cty. of Rennselaer*, No. 104CV0640TJMDRH, 2005 WL 8169542, at *2 (N.D.N.Y. Dec. 8, 2005), *citing Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 509-10 (2d Cir. 1994)(Suits against officers of the United States for actions taken in their official capacities are considered suits against the United States.).

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION                    Page 5**

C.     **The Balance of the Hardships Favors the NRA.**

The Opposition does not address the balance of hardships (as the injunction standard requires), and certainly proffers no evidence that an injunction sought by the NRA would cause Defendants to suffer prejudice. The NRA merely seeks to delay a proceeding which circumstances beyond the parties' control have already delayed, and this minor accommodation averts the serious threat of collateral-estoppel interference with important, previously-filed constitutional claims. Importantly, Defendants could simply have represented that they would not seek to introduce DFS's own findings for collateral-estoppel purposes in this lawsuit against the DFS Superintendent. Defendants did not make that representation, because Defendants seek to preempt this Court's consideration of crucial issues by adjudicating the same issues summarily in a forum DFS controls.

D.     **An Injunction is in the Public Interest.**

The Opposition claims that DFS's enforcement proceeding advances substantial public interests in the regulation insurance markets. Yet as the NRA's motion and supporting Cashin affidavit establish, DFS's attempt to proceed against the NRA is unprecedented and suspect, precisely because the agency now seeks to penalize the ***client*** of an insurance firm—not the insurance firm itself.[20] Moreover, to the extent that DFS's actions amount to unconstitutional retaliation or selective enforcement, there is substantial public interest in enjoining them.

---

[20] *See* ECF No. 176-26 (Cashin Decl.) ¶ 33 ("[T]he NRA would traditionally be viewed as the 'customer' in this situation. I have reviewed all of the Consent Orders posted on DFS's website for the period from 2014 to present, and all of the Disciplinary Actions Against Companies, Agents, Brokers, and Adjusters taken by DFS during the same period. Consistent with my experience as an insurance regulator, I find no evidence of proceedings by DFS against any other affinity client."); *see also id*. ¶ 35 ("DFS has direct regulation of licensees in granting their license to operate in New York … licensees profess to have knowledge of the insurance laws and regulations and agree to conduct their activities in conformity with those laws and regulations. Membership organizations like the NRA make no such profession nor commitments and should not be held, nor have they historically been held, to the same level of accountability as licensees. That pattern appears to hold true in this case: except for the NRA, DFS has not proceeded against any of Lockton's non-licensee affinity clients."); *see also id.* ¶ 37 ("In forty-five years of experience as a

**E.     *Younger* Abstention Does Not Apply.**

Despite the issue being raised directly in *Schoolcraft* as well as in a number of the cases they rely on, Defendants make no effort to demonstrate why the retaliatory/bad faith exception to the *Younger* abstention doctrine is not met in this case. Courts will not abstain where, as here, the administrative proceeding is brought to retaliate against constitutionally protected speech or to deter such speech. "[A] refusal to abstain is also justified where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass. In such cases, a showing of retaliatory or bad faith prosecution establishes irreparable injury for the purposes of the *Younger* doctrine."[21] "If the facts show that the prosecution is in retaliation for past speech or shows a pattern of prosecution to inhibit speech beyond the acts being prosecuted, the exception should apply and abstention may be improper."[22] Indeed, one of the *Younger* abstention cases on which Defendants rely recognizes explicitly that "[t]o invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."[23] The NRA has plainly made the showing necessary to invoke the exception, and this Court should refuse to abstain so that it can protect the federal jurisdiction over the NRA's constitutional claims.

The Opposition also makes no effort to distinguish *Schoolcraft* (and does not even cite it), which is telling. However, Defendants do rely on a case which acknowledges and describes the

---

property/casualty industry practitioner, including my years as a senior New York insurance regulator, I have never witnessed hostilities against an affinity client that are comparable to those directed by DFS at the NRA.").

[21] *Cullen v. Fliegner*, 18 F.3d 96, 103-04 (2d Cir. 1994) (citations omitted), *cert. denied sub nom. Tuxedo Union Free School Dist. v. Cullen*, 513 U.S. 985 (1994).

[22] *Schlagler v. Phillips*, 166 F.3d 439, 443 (2d Cir. 1999).

[23] *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002).

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION                                    Page 7**

*Schoolcraft* ruling, highlighting facets which are directly relevant here. Specifically, in *Ingber v. N.Y. City Dep't of Educ.*, the United States District Court for the Southern District of New York declined to enjoin disciplinary proceedings against the plaintiff schoolteacher because, *inter alia*, his failure to raise constitutional claims until long after the disciplinary proceeding commenced disfavored a finding of irreparable harm.[24] The *Ingber* court distinguished *Schoolcraft* on the ground that, "[t]here, the federal action had been pending for several years and had proceeded past the motion-to-dismiss stage before the plaintiff sought injunctive relief against the state disciplinary proceeding."[25] Of course, this case is postured similarly. This Court need not, and should not, abstain from entering the preliminary injunction so that the NRA's constitutional claims against Defendants can be adjudicated in the appropriate forum the NRA selected, rather than the stacked-deck administrative proceeding with woefully insufficient safeguards DFS prefers.

---

[24] *See Ingber v. N.Y. City Dep't of Educ.*, No. 14 Civ. 3942(JMF), 2014 WL 2575780, at *3 (S.D.N.Y. June 9, 2014) (distinguishing *Schoolcraft*, and noting, "By contrast, Plaintiff here did not even file the instant complaint until six days before the hearing was scheduled to resume, months after the hearing originally began. … Plaintiff sought the very relief he seeks here in his first federal lawsuit, filed almost six months ago, and by the fact the [sic] he knew the hearing would resume at some point. Plaintiff's failure to seek relief until the very eve of the hearing date fatally undermines any claim of irreparable harm.").

[25] *Id.*

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER**
**SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**                               Page 8

## III.
## CONCLUSION

For the reasons set forth above and in the NRA's opening brief, its Motion for a preliminary injunction restraining the New York State Department of Financial Services from initiating enforcement proceedings against the NRA should be granted.

Dated:   March 19, 2020                    Respectfully submitted,

                                           By:   */s/ William A. Brewer III*
                                                 William A. Brewer III (Bar No. 700217)
                                                 wab@brewerattorneys.com
                                                 Sarah B. Rogers (Bar No. 700207)
                                                 sbr@brewerattorneys.com
                                                 **BREWER, ATTORNEYS &
                                                 COUNSELORS**
                                                 750 Lexington Avenue, 14th Floor
                                                 New York, New York 10022
                                                 Telephone: (212) 489-1400
                                                 Facsimile: (212) 751-2849

                                                 **ATTORNEYS FOR THE NATIONAL
                                                 RIFLE ASSOCIATION OF AMERICA**