UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATIONAL RIFLE ASSOCIATION OF AMERICA,

                                          *Plaintiff*,

                  -against-                         1:18-CV-0566

ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,          TJM/CFH

                                         *Defendants*.

---

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION

                                              LETITIA JAMES
                                              Attorney General of the State of New York
                                              Attorney for Defendants
                                              The Capitol
                                              Albany, New York 12224-0341

William A. Scott
Assistant Attorney General, of Counsel
Bar Roll No. 512434
Telephone: (518) 776-2255
Fax: (518) 915-7740 (Not for service of papers)                Date: April 28, 2020

# Table of Contents

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    **Reconsideration is Warranted to Remedy a Clear Error of Law and to
    Prevent Manifest Injustice** ................................................................................................ 3

        *A. Reconsideration is Needed to Correct a Clear Error of Law* ............................ 3

        *B. Reconsideration is Needed to Prevent Manifest Injustice* ................................. 6

        *i. Referrals to Other Government Agencies* ............................................................. 6

        *ii. Lockton, Chubb and Lloyd's Investigation Files and Communications
        with Those Entities* .................................................................................................. 7

        *iii. Investigative Files Relating to Non-NRA Endorsed Affinity Programs* ............ 8

        *iv. Communications between Defendants and Insurers and Financial
        Institutions (excluding Lockton, Chubb and Lloyd's) Concerning Business
        Relationships with Other Gun Promotion Organizations* ....................................... 9

        *v. Enforcement Actions or Adverse Actions Taken Against Financial
        Institutions or Insurers Doing Business With Non-NRA Gun Promotion
        Organizations* ........................................................................................................ 10

        *vi. Summary* ............................................................................................................. 10

CONCLUSION ............................................................................................................................. 12

# Table of Authorities

**Cases**
*Bishop v. Suffolk County*, 2015 WL 5719802 (E.D.N.Y. 2015) ..................................................... 6
*Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677 (N.D.N.Y. 2015) .................................................... 4
*Delaney v. Selsky*, 899 F. Supp. 923 (N.D.N.Y. 1995) ................................................................... 3
*Dinler v. City of New York*, 607 F.3d 923 (2d Cir. 2010) .............................................................. 9
*Franzon v. Massena Mem'l Hosp.*, 189 F.R.D. 220 (N.D.N.Y. 1999) ..................................... 4, 11
*ICM Controls Corp. v. Honeywell Int'l*, 2019 WL 7631075 (N.D.N.Y 2019) ............................... 3
*In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988) ............................................................. 9
*In re Effecten-Speigel AG*, 2018 WL 3812444 (S.D.N.Y. 2018) .................................................... 6
*In re Six Grand Jury Witnesses*, 979 F.2d 939 (2d Cir. 1992) ...................................................... 6
*LaPointe v. Target*, 2017 WL 1397317 (N.D.N.Y. 2017) ............................................................ 11
*Leonel Cruz v. United Automobile Workers Union*, 2019 WL 3239843 (N.D.N.Y. 2019) ........... 5
*Lugosch v. Congel*, 443 F. Supp. 2d 254 (N.D.N.Y 2006) ............................................................ 3
*Maldonado v. Rogers*, 99 F.Supp.2d 235 (N.D.N.Y., 2000) ......................................................... 3
*Munafo v. Metro. Transp. Auth.*, 381 F.3d 99 (2d Cir. 2004) ........................................................ 3
*Neitzke v. Williams*, 490 U.S. 319 (1989) ...................................................................................... 5
*Neogenix Oncology, Inc. v. Gordon*, 2017 WL 1207558 (E.D.N.Y. 2017) .................................... 3
*State Farm v. Fayda*, 2015 WL 7871037 (S.D.N.Y. 2015) ......................................................... 11
*Statewide Aquastore, Inc. v. Pelseal Techs., LLC*, 2010 WL 610685 (N.D.N.Y. Feb. 17, 2010) .. 4
*Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522 (2d Cir. 1990) ......................................... 4
*Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp.2d 70 (N.D.N.Y. 2000) ............................... 4
*United States v. Isiofia*, 370 F.3d 226 (2d Cir. 2004) .................................................................... 4
*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948) ............................................................... 4
*Utts v. Bristol-Myers Squib*, 251 F.Supp.3d 644 (S.D.N.Y. 2017) ................................................ 5
*Zanowic v. Reno*, 2000 WL 1376251 (S.D.N.Y. 2000) .................................................................. 3

**Statutes**
28 U.S.C. § 636[b][1][A] ................................................................................................................ 4

**Rules**
Fed. R. Civ. P. 72[a] ........................................................................................................................ 4

## **PRELIMINARY STATEMENT**

The Court is familiar with both the factual and procedural history of this case, and they will not be fully restated here. In the current motion Defendants DFS and Governor Cuomo ask that the Court reconsider its recent reversal [Dkt. 188] of Magistrate Judge Hummel's denial of certain discovery demands made by the Plaintiff [Dkt. 121].

In its recent decision the Court directed the Defendants to produce for in camera inspection documents associated with: 1) Referral of matters unrelated to the NRA to government agencies; 2) Investigative files relating to Lockton, Chubb and Lloyd's, including communications between Defendants and Lockton, Chubb and/or Lloyds; 3) Investigations of non-NRA affinity programs; 4) Communications between the Defendants and financial institutions or insurers regarding non-NRA gun promotion organizations, and; 5) Enforcement or adverse actions taken against financial institutions or insurers doing business with non-NRA gun promotion organizations.

Magistrate Judge Hummel previously determined that the demands for these documents are not relevant to the litigation and denied the Plaintiff's motion to compel. This Court held that Magistrate Judge Hummel did not abuse his discretion and further held that these demands amounted to nothing but a fishing expedition. [Dkt. 188 at pg. 6, 8-9, 11-12]. Despite these two findings the Court directed the Defendants to provide a potentially enormous amount of documentation for Magistrate Judge Hummel and the Special Master to review, not only as to the privileges asserted by the Defendants, but also as to relevance.

It is respectfully submitted that in light of the Court's determination that Judge Hummel did not abuse his discretion and further that the Plaintiff's demands are a fishing expedition, the appropriate relief is to deny the Plaintiff's appeal. Additionally, requiring the Defendants to

1

2

locate and provide this enormous amount of material, even for the purpose of submitting documents for in camera review, would result in an unreasonable amount of expense and work for the Defendants, Magistrate Judge Hummel and the Special Master, that is not proportional to the needs of the case, nor permitted without the Plaintiff meeting their burden to demonstrate the relevance of the demands in the first instance.

## ARGUMENT

**Reconsideration is Warranted to Remedy a Clear Error of Law and to Prevent Manifest Injustice**

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995). Reconsideration should be granted where necessary to correct for "clear error" or to "prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004). While there has been no change in the law since the Court's decision, reconsideration is appropriate here both to correct a clear error of law and to prevent a manifest injustice.

*A. Reconsideration is Needed to Correct a Clear Error of Law*

As noted by Magistrate Judge Hummel, it was the Plaintiff's burden to establish that its demands are both relevant and proportional to the needs of the case. *See e.g., Zanowic v. Reno*, 2000 WL 1376251, \*6 (S.D.N.Y. 2000); *Neogenix Oncology, Inc. v. Gordon*, 2017 WL 1207558, \*10 (E.D.N.Y. 2017). Magistrate Judge Hummel determined that the Plaintiff failed to meet this burden. [Dkt. 121 at pg. 28-29, 39-40, 44-45, 46-47]. As noted by this Court, the Plaintiff's demands are nothing more than a fishing expedition, which should require no response. [Dkt. 188 at pg. 6, 11]; *see also Maldonado v. Rogers*, 99 F.Supp.2d 235, 240 (N.D.N.Y., 2000) (denying a plaintiff's motion to engage in a fishing expedition to attempt to substantiate their claims).

In deciding a non-dispositive motion relative to discovery related issues Magistrate Judge Hummel is entitled to substantial deference. *See ICM Controls Corp. v. Honeywell Int'l*, 2019 WL 7631075, \*9 (N.D.N.Y 2019) (noting that this standard "is incompatible with de novo review"); *see also Lugosch v. Congel*, 443 F. Supp. 2d 254, 276 (N.D.N.Y 2006). When considering an

3

appeal from a magistrate judge's ruling on a non-dispositive matter, a district court will only modify or set aside any portion of the magistrate judge's ruling that it finds to be "clearly erroneous or contrary to law." 28 U.S.C. § 636[b][1][A]; Fed. R. Civ. P. 72[a]; *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *Statewide Aquastore, Inc. v. Pelseal Techs., LLC*, 2010 WL 610685, *2 (N.D.N.Y. Feb. 17, 2010).  A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp.2d 70, 74 (N.D.N.Y. 2000).

Based on the Court's findings in the underlying order, the Plaintiff did not establish that Magistrate Judge Hummel clearly erred or abused his discretion, nor did Plaintiff establish that its demands are relevant. *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 686 (N.D.N.Y. 2015) (upholding a Magistrate's order even though "the Court might have (in its discretion) reached a different conclusion de novo under the circumstances . . . it can find no clear error or mistake of law in Magistrate Judge Hummel's conclusion, given the body of caselaw he relied on and the rationale he offered"). Based on the well settled law on this topic the Plaintiff failed to carry its burden on the underlying motion and the Plaintiff certainly did not meet its burden in appealing Magistrate Judge Hummel's decision. *Statewide Aquastore, LLC*, 2010 WL at *4-5 ("Considering that magistrate judges are given broad discretion with respect to pre-trial discovery matters, reversal is warranted only when that discretion is abused."); *see also Franzon v. Massena Mem'l Hosp.*, 189 F.R.D. 220, 222 (N.D.N.Y. 1999) (recognizing that a Magistrate's discovery order is only disturbed where there is clear error or it is contrary to law and noting that "the Magistrate

Judge [is] in the best position to determine whether the need for particular documents outweigh[s] the [claimed] privilege and the Court sees no reasons to disturb these findings.)

Though not explicitly cited as a basis for the Court's decision the Plaintiff's attempt to amend its complaint cannot form a basis for allowing their requested fishing expedition. A plaintiff cannot utilize discovery, particularly a fishing expedition, to try to revive claims that have already been dismissed by the Court. *See Leonel Cruz v. United Automobile Workers Union*, 2019 WL 3239843, *25 (N.D.N.Y. 2019). "Discovery is burdensome and expensive, and the Federal Rules of Civil Procedure do not provide for it unless the pleading can survive a Rule 12(b)(6) motion." *Utts v. Bristol-Myers Squib*, 251 F.Supp.3d 644, 673 (S.D.N.Y. 2017). Allowing the Plaintiff to pursue these burdensome and irrelevant demands serves only to contravene a specific function of Rule 12(b)(6), namely to dispense "with needless discovery and fact finding." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989).

The Plaintiff's selective enforcement claims did not survive the motion to dismiss stage, and the Plaintiff cannot be allowed to subject the Defendants to a protracted and expensive fishing expedition to try to revive claims that Court already dismissed. Moreover, and as the Defendants have oft repeated, the selective enforcement claims were withdrawn as to DFS, further compounding the impropriety of the Plaintiff's demands. Even if the Plaintiff is successful in repleading, after months of unjustified delay, its meritless claim against Defendant Vullo, the only defendant against which it has sought to replead, there will never be a claim against DFS for selective enforcement, as it has been abandoned. Further, as of today, no such claim is presently before the Court, and thus ordering a party such as DFS to produce documents the Court itself has found to be a fishing expedition is inappropriate. *See e.g., In re Six Grand Jury Witnesses*, 979

F.2d 939, 943 (2d Cir. 1992) (noting that liberal discovery rules still do not allow for discovery into matters that are not relevant to a party's claims).

### B. Reconsideration is Needed to Prevent Manifest Injustice

In addition to the Plaintiff's failure to meet its burden on either the underlying motion to compel or on its appeal of Magistrate Judge Hummel's order, a fact that on its own demands reconsider and affirmation of Magistrate Judge Hummel's Order, the significant burden and manifest injustice the Defendants will have to shoulder to respond to the Plaintiff's fishing expedition must be stressed.  In preparing the current motion the Defendants were unable to locate any caselaw where a court found that discovery demands amounted to a fishing expedition yet required a response to those same demands.  Instead, the case law on this topic recognizes that it is more appropriate to deny a party's request for a fishing expedition, than to burden the producing party with complying with such improper demands.  *See e.g. Bishop v. Suffolk County*, 2015 WL 5719802, *6 (E.D.N.Y. 2015) (holding that denying the plaintiff's request for a fishing expedition did not work a manifest injustice); *In re Effecten-Speigel AG*, 2018 WL 3812444, *4 (S.D.N.Y. 2018).  As described below, the efforts that Defendants will need to undertake to respond to these demands is in no way proportional to the needs of matter, particularly as these responses are highly unlikely to yield relevant material.

### i. Referrals to Other Government Agencies

The first group of documents the Defendants must now provide are all referrals of matters to other government agencies unrelated to the NRA.  As noted in the Defendants' response to these demands, the Plaintiff has indicated that this demand is not limited to a referral for action, nor is it limited to New York State agencies.  Instead, the Plaintiff seeks any form of communication between the Defendants and any governmental agency anywhere in the world.  The demand is also not limited to DFS' regulation of the insurance industry.  DFS' scope of authority includes a wide

6

swath of topics that have no connection to this matter, each of which will have to be examined in order to respond to this fishing expedition.

As directed by the Court, DFS has begun searching for and compiling material responsive to these demands. Complying with that directive has proven to be particularly difficult as this request is for "referrals." DFS does not have a formal referral process that would allow the Defendants to easily locate documents that would constitute a referral for some type of action, for instance a referral to a local district attorney for a prosecution outside DFS' scope of authority. As mentioned, the Plaintiff's demand is not limited to referrals for action, but instead includes all communications with other government entities. A vast number of current and former DFS staff communicate with insurance or banking regulators in other states or the federal government, creating a completely untenable number of individuals who would have to be interviewed to comply with this demand.

Using the Plaintiff's definition of the term, in order to determine if any "referrals" were made, DFS will be required to interview every individual employed by DFS since January 1, 2017, to determine if a matter was "referred" to a different agency. Then those employees' files and emails will need to be searched to determine if there is documentation relating to a referral. This process will be highly time consuming and labor intensive and is unlikely to yield any documents relevant to this case. Given the broad and unreasonable nature of the demand, wading through every communication with a government agency by any DFS employee would take years. Even after those efforts it would still be difficult, if not impossible, for DFS to fully certify that all responsive documents have been produced, barring some limitation of the demand.

*ii. Lockton, Chubb and Lloyd's Investigation Files and Communications with Those Entities*

The demands related to the Lockton, Chubb and Lloyd's investigations and all correspondence between the Defendants and those entities creates similar problems to those

7

discussed above. It is believed that the investigation files for these entities will be double the size of the NRA investigation file, which itself was in excess of 50,000 pages. As these documents relate to investigations into three different entities, it is expected that it will also take twice as much time to review the investigative files for each entity; and could take at least three months merely to compile this information in a manner that is consistent with DFS' prior production to the Court. DFS, the Magistrate and the Special Master will then be required to comb through thousands of pages of material, despite the Plaintiff's failure to demonstrate the relevance of the material.

The foregoing difficulties relate only to the enforcement files themselves. This problem is compounded for the communications between these entities. Lockton, Chubb and Lloyd's represent three of the largest insurance entities in the world, particularly considering that Lloyd's is not an insurance provider, but a marketplace comprised of many different syndicates. Given DFS' broad scope of responsibility coupled with the size of these three entities and their own broad spheres of influence, it is entirely possible that many items of communication exist between DFS and these entities. It is equally likely that these documents have nothing to do with this matter. More importantly, the Plaintiff fails to demonstrate the relevancy of this information, particularly as weighed against the significant effort and expense that will be required to satisfy its baseless curiosity.

### iii. Investigative Files Relating to Non-NRA Endorsed Affinity Programs

The Defendants maintain their earlier argument that these documents are irrelevant to the current matter, however, efforts to comply with the Court's Order indicates that there are relatively few documents responsive to this demand. As such, the burden of complying with this particular portion of the Court's directive is not as substantial as the other categories of documentation discussed herein. The burden on DFS of complying with the Plaintiff's abusive discovery demands related to a claim which Plaintiff already abandoned as against DFS is heavy enough. The

documents demanded in this category are by definition law enforcement files that bear no relationship to the NRA, they are not relevant, they are privileged, they should not be the subject of discovery in this case. [Dkt. 121 at pg. 43-45]; [Dkt. 79 at pg. 23-25]; *see In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988); *see also Dinler v. City of New York*, 607 F.3d 923, 944 (2d Cir. 2010).

### *iv. Communications between Defendants and Insurers and Financial Institutions (excluding Lockton, Chubb and Lloyd's) Concerning Business Relationships with Other Gun Promotion Organizations*

The broad and improper nature of this demand creates a scenario in which the Defendants may have little documentation responsive to the demand itself, but the process for searching for responsive documentation is itself unwieldly. This problem is highlighted by the Plaintiffs definition of the term "Gun Promotion Organization." The Plaintiff's discovery demands define a Gun Promotion Organization as:

> any: (a) organization, business entity, or publication that promotes, advocates, campaigns, organizes, lobbies, reports, or publicizes concerning any: firearms, firearm accessories, including but not limited to firearm ammunition, magazines, and gunstocks; or firearm self-defense, including but not limited to firearms liability insurance products; or pro-firearm, pro-right to bear arms or pro-Second Amendment viewpoints or beliefs; or (b) manufactures, designs, buys, sells, trades, or in any way transacts firearms, firearm accessories, including but not limited to, firearm ammunition, magazines, and gunstocks; and includes any person acting, or who has so acted, on behalf of any person of type (a) or (b), including, but not limited to, any of their agents, principals, supervisors, representatives, officers, directors, employees (current and former), independent contractors, stockholders, subsidiaries, divisions, parent corporations, assignees, predecessors, successors, consultants, attorneys and each and every person acting on their behalf or at their direction or on whose behalf they were acting with respect to the matters referred to herein.

This definition includes not only promotional organizations, but also gun manufacturers, retailers and "each and every person acting on their behalf." This implausibly broad definition

would require DFS to run such a wide search for documents, that it will likely require significant time and effort to comb through just to determine if any documents are responsive to this demand. As above, this all with the backdrop of the Plaintiff's failure to demonstrate the relevancy of these demands.

### v. *Enforcement Actions or Adverse Actions Taken Against Financial Institutions or Insurers Doing Business With Non-NRA Gun Promotion Organizations*

As with the preceding group of documents, the broad definition of gun promotion organization makes the effort of searching for and responding to these demands completely disproportional to the needs of this case. Additionally, the demand itself is not limited to a request for investigations stemming from the entity's relationship with the gun organization. This means the complications of searching for responsive demands are further compounded as the Defendants will need to look at each entity it has investigated since 2017 to determine if that entity also happened to have some relationship with a gun promotion organization.

### vi. *Summary*

Each of the above examples illustrate the significant burden that will be placed on the Defendants in order to respond to the Plaintiff's fishing expedition. This is to say nothing of the subsequent burden of compiling, categorizing and describing those documents for Magistrate Hummel and/or the Special Master's review, and the subsequent review of those documents that must be conducted by Magistrate Hummel and/or the Special Master. For each of these categories of documents once they are compiled by DFS they will need to be reviewed by DFS counsel and tagged for not only privilege objections, but now relevancy as well. Once that task is complete the documents will need to be transmitted to the Office of the Attorney General for review and tagging. Additionally, and per Judge Hummel's prior order in this case, a declaration will need to

accompany the material describing the documents and explaining the Defendants' arguments on privilege and now as to relevance.

For the Court's reference, the NRA's investigation file consisted of over 50,000 pages of documents. Including the Court's request for supplemental information it took the Defendants a period of months to compile and organize the material to allow for the Court's review. The Defendants are now being asked to undertake that process for even more material that has no relevance to the current matter. This burden is exacerbated as the discovery at issue relates only to an abandoned and dismissed selective enforcement claim, which this Court has not and should not grant permission to replead, and even if permission to replead is granted, would not replead the claim against the Defendant from whom discovery is sought.

Weighing this burden against the proportional needs of this case demonstrates that the appropriate resolution is to deny the Plaintiff's appeal, particularly in light of the Court's finding that Magistrate Hummel did not abuse his discretion and that the demands amount to nothing more than a fishing expedition. *See e.g., LaPointe v. Target*, 2017 WL 1397317, *2 (N.D.N.Y. 2017) (discussing the elements of proportionality including the importance of the discovery at issue and whether the burden of production outweighs the benefit of the discovery); *see also State Farm v. Fayda*, 2015 WL 7871037, *2 (S.D.N.Y. 2015) (citing to the advisory committee notes to FRCP 26(b)(1) that the current rules of discovery "encourage judges to be more aggressive in identifying and discouraging discovery overuse.") It must also be noted that it is neither the Court nor the Defendants' obligation to cull down or revise the Plaintiff's demands. It was the Plaintiff's burden to establish the relevancy of this material, which it fails to do. *See Franzon*, 189 F.R.D. at 222 (noting that "the Magistrate Judge [is] in the best position to determine whether the need for

11

particular documents outweigh[s] the [claimed] privilege and the Court sees no reasons to disturb these findings.")

When Magistrate Judge Hummel proposed employing the services of a special master the Defendants opposed burdening the taxpayers of the State of New York with an additional expense necessitated only by the Plaintiff's improper discovery demands. Now, at a time when the residents of New York and the State itself are confronted with difficult financial circumstances, they are being compelled to subsidize the Plaintiff's fishing expedition. This cost should not be imposed merely to satisfy the Plaintiff's curiosity about documents that it has failed to demonstrate are relevant to this matter.

During the course of this matter the Court expressed frustration with the slow pace at which discovery has progressed. This motion is not submitted to further delay that process, indeed, if the Court denies this motion it will serve only to exponentially delay the discovery in this matter only to satisfy the Plaintiff's improper fishing expedition for irrelevant material. Expressed in the vernacular of the current motion, to allow the current order to stand would work a substantial and manifest injustice, and the Defendants' motion for reconsideration should be granted.

## **CONCLUSION**

For the foregoing reasons, it is asked that the Court reconsider its Order and affirm Magistrate Judge Hummel's denial of the Plaintiff's Motion to Compel. In the alternative, and at a minimum, the Court should remand the issue to Magistrate Judge Hummel for an appropriate limitting of the requests before the heavy burden described in this brief is brought to bear on the Defendants. If any of these categories of demands are deemed relevant, Magistrate Judge Hummel, and not the Plaintiff, should determine how the demands are appropriately limited to

ensure only relevant documents are required to be compiled by the Defendants and reviewed by the Court.

Dated: Albany, New York
       April 28, 2020

                              LETITIA JAMES
                              Attorney General of the State of New York
                              Attorney for Defendants
                              The Capitol
                              Albany, New York  12224-0341
                              By: s/ *William A. Scott*
                              William A. Scott
                              Assistant Attorney General, of Counsel
                              Bar Roll No. 512434
                              Telephone:  (518) 776-2255
                              Email: William.Scott@ag.ny.gov


TO:    All Counsel of Record via ECF