**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NATIONAL RIFLE ASSOCIATION OF
AMERICA,

                        Plaintiff,

       v.                                  1:18-CV-566
                                                (TJM/CFH)
ANDREW CUOMO, MARIA T. VULLO, THE NEW
YORK STATE DEPARTMENT OF FINANCIAL
SERVICES,

                        Defendants.

---

**APPEARANCES:**                        **OF COUNSEL:**

Brewer Attorneys & Counselors       SARAH ROGERS, ESQ.
750 Lexington Avenue, Floor 14       WILLIAM A. BREWER, III, ESQ.
New York, New York 10022
Attorneys for plaintiff

Stanton LLP                       JOHN C. CANONI, ESQ.
1717 Main Street
Suite 3800
Dallas, TX 75201
Attorneys for plaintiff

Office of Attorney General          ADRIENNE J. KERWIN, ESQ.
State of New York                WILLIAM A. SCOTT, ESQ.
The Capitol                      HELENA O. PEDERSON, ESQ.
Albany, New York 12224         MICHAEL G. MCCARTIN, ESQ.
Attorneys for defendant Andrew
Cuomo, Maria T. Vullo, the New
York State Dept. of Fin. Svcs.

Emery Celli Brinckerhoof & Abady LLO  DEBRA L. GREENBERGER, ESQ.
600 Fifth Avenue, 10th Floor       ELIZABETH S. SAYLOR, ESQ.
New York, New York 10020
Attorneys for defendant Maria T. Vullo

New York State Department of Financial  NATHANIEL J. DORFMAN, ESQ.

Services
One State Street
New York, New York 10004-1511
Attorneys for defendant New York
State Dept. of Fin. Svcs.

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER

Presently pending before the Court[1] is plaintiff National Rifle Association's

("NRA" or "plaintiff") Motion for Leave to File a Second Amended Complaint.  Dkt. Nos.

154, 155.  Defendants Governor Andrew Cuomo ("Cuomo"), Department of Financial

Services ("DFS"), and Maria T. Vullo ("Vullo") (collectively "defendants") have opposed.

Dkt. Nos. 162, 164.  Plaintiff filed a reply.  Dkt. No. 169.  For the following reasons,

plaintiff's motion is granted in part and denied in part.

### I.  Legal Standard

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a)(2), leave to

amend a complaint should be freely given in the absence of any apparent or declared

reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

---

[1]  "[T]he Second Circuit has repeatedly chosen to characterize motions  to amend a pleading as non-dispositive in nature."  Utica Mut. Ins. Co. v. Century Indem. Co., No. 6:13-CV-995 (DNH/ATB), 2015 WL 3429116, at *2 (N.D.N.Y. May 11, 2015).  Accordingly, a Magistrate Judge may address a motion to amend in the first instance, as a Memorandum-Decision & Order, subject to review in the event of an appeal to a District Judge on a "clearly erroneous" or "contrary to law" standard.  Id.

amendment, or futility of the amendment.  Yennard v. Herkimer BOCES, 241 F. Supp. 3d 346, 361 (N.D.N.Y. 2017), amended and superceded on other grounds, 2017 WL 11317859 (N.D.N.Y. Mar. 27, 2017) (citing Foman v. Davis, 371 U.S. 178 (1962)).

> In determining what constitutes "prejudice", [the Court is to] consider whether assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

Block v. First Blood Assoc., 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted).  If the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend."  Eldridge v. Rochester City Sch. Dist., 968 F. Supp. 2d 546, 553 (W.D.N.Y. 2013) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)).  The determination whether a proposed amendment is futile is made under the same standard as that used to determine whether a claim would be subject to a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) – "namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted."  Id.  To avoid dismissal, the proposed amended claims must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If the underlying facts or circumstances relied on by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits.  See U.S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,

889 F.2d 1248, 1254 (2d Cir. 1989).

However, "[t]he Second Circuit has held that Rule 16's more exacting 'good cause' standard is properly applied in instances where a motion to amend is filed after the expiration of a court's scheduling order deadline for the amendment of the pleadings." BCA, LLC v. Ulster Cty., No. 1:08-CV-149 (GLS/RFT), 2009 WL 10721011, at *1 (N.D.N.Y. May 6, 2009) (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007)).

> In determining whether good cause exists, "the primary consideration is whether the moving party can demonstrate diligence." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.2d 229, 244 (2d Cir. 2007). But diligence is not the only consideration. "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the opposing party]." Id.

CAC Atl., LLC v. Hartford Fire Ins. Co., No. 1:16-CV-5454-GHW, 2017 WL 3149340, at *2 (S.D.N.Y. July 25, 2017).

## II. Arguments[2]

### A. Plaintiff's Arguments

Plaintiff provides that it seeks to amend to replead its selective enforcement claim. Dkt. No. 155 at 4. Plaintiff also contends that it wishes to make minor,

---

[2] Unless otherwise indicated, the Court's citations to page numbers refer to the pagination generated by the Court's electronic filing system, located at the header of each page, not to the pagination created by the parties in the individual documents.

nonsubstantive changes and substitute the current DFS commissioner for defendant

Vullo in its claim for injunctive relief.  Id. at 3 n.7.  Plaintiff argues that good cause exists

for permitting plaintiff to amend.  Plaintiff contends that it proceeded with due diligence

in seeking the amendments.[3]  Plaintiff argues that "[t]he evidence of certain facts at the

core of the NRA's re-pleaded selective enforcement claim have only recently become

available to the NRA because they come from third-party sources not under the NRA's

control."  Id. at 6.  More specifically, plaintiff provides that it obtained documents from

Lloyd's in June 2019 after "negotiat[ing] a bespoke protective order covering documents

produced by LAI."  Id.  Plaintiff further indicates that it sought to depose a Lloyd's

representative to "interpret" the documents it produced, but that negotiations over such

deposition "broke down in the summer," resulting in service of a subpoena in August

2019.  Id. at 7.  Further, plaintiff contends that at some point it learned that Lloyd's was

"hesitant" to produce anything until after Judge McAvoy ruled on plaintiff's appeal of the

undersigned's Memorandum-Decision & Order addressing the Motion to Compel.  Id.

Thereafter, plaintiff "retained a consulting expert and the investigative work did not

conclude until September and October of 2019—mere weeks before the NRA

requested a conference with this Court to discuss this Motion."  Id.  Thus, plaintiff

argues that it has demonstrated a "record of diligence" demonstrating good cause.  Id.

Next, plaintiff contends that defendant Vullo would not be significantly prejudiced

---

[3]   Plaintiff contends that it could not have sought leave to amend before the expiration of the deadline for amendment of pleadings set in the Uniform Pretrial Scheduling order as "Judge McAvoy's ruling dismissing the NRA's selective enforcement claim without prejudice to repleading did not occur until May 9, 2019—over three months after the scheduling order deadline[.]" Dkt. No. 155 at 6.

by the amendments.  Dkt. No. 155 at 8.   Plaintiff points out that, at the time it filed its

motion to amend, "the posture of the case has not significantly progressed—document

discovery remains ongoing, and the vast majority of responsive documents identified by

Defendants (in response to discovery requests served nearly a year ago) were only

recently tendered to the Special Master."  Id.  Plaintiff also argues that no depositions

have occurred, and "Vullo will expend no additional resources in litigating this claim" nor

will the amendments "significantly delay this matter, if at all."  Id.  Plaintiff also alleges

that the interests of justice support permitting plaintiff to amend as the second amended

complaint would not add new claims or parties.  Id. at 9.

Finally, plaintiff argues that the amendments are not futile.  Dkt. No. 155 at 9.

Plaintiff contends that Judge McAvoy's order dismissing the selective enforcement

claim found that plaintiff sufficiently pleaded the similarly situated prong, but that the

claim failed to demonstrate that defendants Vullo or Cuomo had knowledge of similar

violations by comparators but failed to enforce the insurance law against the

comparators.  Id. at 9-10.  Plaintiff argues that the proposed second amended

complaint now sufficiently alleges such knowledge.  Id. at 10.


### B.  Defendant Vullo's Arguments

First, defendant Vullo contends that plaintiff failed to demonstrate diligence and

lack of bad faith due to their delay in seeking this motion to amend.  Dkt. No. 164 at 19.

Vullo points out that Judge McAvoy dismissed the selective enforcement claim on May

9, 2019.  She argues that plaintiff fails to offer a reasonable explanation for a five-

month delay in bringing the motion insofar as plaintiff obtained the documents upon which it relies in June 2019, and provides only vague statements about hiring a "consulting expert" to "interpret" the documents and performing unspecified "investigative work" to explain its failure to bring the motion until December 2019. Id. at 20. Further, Vullo argues that the documents plaintiff obtained from Lloyds and purports to rely on in support of its motion make no reference to Vullo. Id. As for the consulting expert and the unspecified investigation work, because plaintiff provides the Court with no detail about either, Vullo asserts that "it is impossible to know whether the NRA's conduct as to each was or was not 'diligent.'" Id.

Next, Vullo argues that plaintiff inappropriately has "shifted" its basis for seeking leave to amend repeatedly. Dkt. No. 164 at 6. She contends that plaintiff first argued that the documents from Lloyd's provided a basis to seek a selective enforcement claim, but "[w]hen it became clear that the documents do not even mention Ms. Vullo, much less implicate her in illegal conduct, the NRA backpedaled and switched gears, asserting that it had identified 'a witness' with knowledge of allegedly inculpatory statements by Ms. Vullo." Id. However, the NRA then admitted "that its 'witness' was not a percipient or even hearsay witness, but a consulting expert with no personal knowledge of the matter." Id. Next, Vullo argues, plaintiff presented its most recent basis, an "'investigation' – although [plaintiff] offers no description of the timeframe, findings, or evidence such an 'investigation' uncovered." Id. Thus, Vullo argues that "[t]he NRA cannot be permitted to amend where it has not detailed, at bare minimum, what information it received that supports its Vullo-related allegations, when it received

such information, and why it could not have obtained that information earlier in the exercise of diligence."  Id. at 7.

### C. Defendant Cuomo and Defendant DFS' Arguments

Defendants Cuomo and DFS contend that plaintiff's motion to amend must be denied because (1) despite plaintiff's representations to the Court that the Motion to Amend would seek solely to replead a selective enforcement claim against defendant Vullo, the proposed second amended complaint adds new factual allegations, both direct and indirect, about Cuomo and DFS insofar as it makes collective references to "defendants" relating to the proposed selective enforcement claim; (2) Cuomo and Vullo would face prejudice if leave to amend were granted because plaintiff will seek additional discovery, causing further burden on defendants and delay; and (3) plaintiff's proposed amendments are futile.  Dkt. No. 162 at 1-13.

Defendants Cuomo and DFS also argue that the current superintendent of DFS, Linda Lacewell, cannot be substituted as a party.  Dkt. No. 162 at 9.  Defendants further contend that, although plaintiff

> correctly notes that in matters where a government official is named in their official capacity, and where injunctive relief is sought, the individual actually holding the relevant position can be substituted as a party.  However, in this matter, substituting Ms. Lacewell as a party would be futile as the Plaintiff is not entitled to any injunctive relief that Ms. Lacewell would be required to effectuate.

Id. at 13-14.  Defendants Cuomo and DFS argue that, because the only remaining claim alleged against Ms. Vullo in her official capacity is brought under the First

8

Amendment, and plaintiff is not entitled to injunctive relief under the First Amendment claim, requesting Lacewell to be substituted for Vullo "is, at best, an improper request for an 'obey the law' injunction.'" Id. at 14.

### D.  Plaintiff's Reply[4]

In reply, plaintiff reiterates its arguments as to diligence, contending that it could not have met the scheduling order deadline because of the timing of Judge McAvoy's May 9, 2019 decision, "discovery-related motions and appeals were filed and remain pending [at the time of the filing of the reply,] and the engagement of the Special Master was negotiated.  Given these factors, threshold questions governing the scope and timing for discovery were unanswered."  Dkt. No. 169 at 3.

However, plaintiff further argues that even if the Court does not find that the NRA acted diligently, there is no bad faith or undue prejudice to defendants.  Dkt. No. 169 at 4.  Plaintiff asserts that additional time and expense of further discovery does not suffice to demonstrate prejudice.  Id.  Plaintiff contends that at the time of the filing of its motion, depositions had not yet occurred and document discovery was in its "infancy."  Id.  Further, plaintiff argues that permitting the amendment "would not

---

[4]  Plaintiff does not acknowledge fully Cuomo and DFS's argument that the proposed second amended complaint improperly makes reference, directly and indirectly, to selective enforcement allegations against these defendants despite repeatedly representing to the Court that it would seek to replead a selective enforcement claim solely against Vullo.  Rather, in reply to Cuomo and DFS's arguments, plaintiff again references allegations against defendants other than Vullo.  Dkt. No. 169 at 9 ("The proof at trial will establish that Vullo and DFS had never enforced the Insurance Law provisions against affinity insurance programs in the way those provisions were enforced against the NRA, then abandoned that policy to punish the NRA for engaging in constitutionally-protected activity.").  Confusingly, plaintiff also states: "Defendants Andrew Cuomo ("Cuomo") and the New York State Department of Financial Services ("DFS") also filed opposition papers apparently to remind this Court that the Motion does not seek to re-plead a claim against them."  Dkt. No. 169 at 2.

radically alter the discovery landscape, but rather provide additional, redundant legal grounds underpinning discovery requests outstanding for many months." Id. Plaintiff also points out that the proposed amendments "are based on the same operative facts as the current complaint"[;] thus,"'much of the discovery conducted in the case would readily lend itself to a prosecution or defense' of the amended claim." Id. at 6.

Finally, plaintiff argues that, contrary to Vullo's argument, it need not show knowledge of comparators at the time DFS commenced its investigation; rather, "it is the adverse enforcement that gives rise to liability in a selective-enforcement case, and the moment of such enforcement is when knowledge of comparators must be assessed." Dkt. No. 169 at 7. Plaintiff also argues that the proposed second amended complaint sufficiently alleges selective enforcement against Vullo because it pleads a "see no evil" selective enforcement claim which "does not require the NRA to plead or prove Defendants' knowledge of the comparators." Id. at 9.

### III.  Analysis

In his May 9, 2019, Decision & Order, Judge McAvoy dismissed plaintiff's remaining selective enforcement claim without prejudice and with leave to amend. Dkt. No. 112. In so dismissing, Judge McAvoy held that the operative pleading was "devoid of factual allegations indicating that either Gov. Cuomo or Supt. Vullo had knowledge of the specific violations identified in paragraph 59 of the Amended Complaint" and "fails to provide a factual basis upon which to conclude that either Gov. Cuomo or Supt. Vullo were aware of the comparators' violations of the

10

non-firearm-related Insurance Law provisions enforced against Lockton."  Id. at 8.

Specifically, the Court noted that "[p]laintiff fails to point to specific statements

plausibly supporting the inference that either defendant knew of similar

non-firearm-related Insurance Law violations by the comparators but consciously

declined to prosecute them."  Id. at 9-10.  Further, the Court concluded:

> Inasmuch as Plaintiff has failed to specifically plead that either Gov.
> Cuomo or Supt. Vullo knew of non-firearm-related Insurance Law violations
> by the comparators when DFS commenced its investigation into the NRA's
> insurance programs, or allege facts plausibly supporting the conclusion
> that these defendants were aware of such violations by the comparators
> yet consciously declined to enforce the Insurance Law against the
> comparators, the equal protection claims must be dismissed.

Dkt. No. 112 at 9.  Finally, the Court rejected plaintiff's argument that defendant Vullo

and Cuomo's knowledge can be "inferred from the 'public record.'"  Id. at 10.

## A.  Due Diligence

This Court dismissed plaintiff's relevant selective enforcement claims on May

9, 2019.  Dkt. No. 112.  Plaintiff met and conferred with defendants on November 12

and 14, 2019.  Dkt. No. 155 at 3.  Plaintiff sought a conference on November 15,

2019, regarding its desire to amend its complaint.  Dkt. No. 142.  Plaintiff filed its

motion for leave to amend on December 20, 2019.  Dkt. No. 154.

Although the motion for leave to amend was filed on December 20, 2019, one

year and seven months after filing the original complaint, as plaintiff points out, it did

not learn of the dismissal of its selective enforcement claim until May 10, 2019, dkt.

no. 112, when the Court issued its decision on defendants' Motion to Dismiss.  Thus,

in assessing due diligence, the Court will also consider plaintiff's actions following the

11

issuance of the Court's May 2019 decision.

Plaintiff explains that during the "ensuing months" between the Court's dismissal of the selective enforcement claims and plaintiff's indicating to the Court its desire to amend, it "diligently sought discovery that would enable it to robustly re-plead its claims in the manner the Court outlined." Dkt. No. 155 at 2.   Plaintiff explains experiencing delays in receiving information from Lloyd's, but indicates that it received a "small number of documents" in June 2019. Id.  It appears that it is upon these documents which plaintiff now partly relies in seeking to base its amended claim. Id.  Plaintiff suggests that it sought to depose a Lloyd's official to "interpret" the documents, but negotiations "broke down," necessitating serving a subpoena in August 2019 on Lloyd's general counsel. Id. at 7.  However, plaintiff indicates that Lloyd's was "reluctant" to allow a witness for a deposition before the Court ruled on its objections to the motions to compel (these objections were still pending at the time plaintiff filed its motion to amend). Id. at 7.  Plaintiff provides that, at an unspecified time, it hired a "consulting expert" to interpret the Lloyd's documents and "engaged in additional investigative work to uncover the factual allegations in the Second Amended Complaint regarding Vullo's knowledge of comparator affinity-insurance programs in the spring and summer of 2018." Id.  Plaintiff contends that meetings with the consulting expert concluded in September or October 2019, which is "mere weeks" before it sought a Court conference to file a motion to amend and "days" after it "learned about DFS' most recent efforts to target an NRA-related insurance underwriter, AGIA, with a subpoena." Id.

Plaintiff fails to explain why (1) a consulting expert was needed to assess these documents in order to determine whether they contained evidence supporting Vullo's knowledge of similarly-situated comparators, or (2) how any consulting work or investigative work performed relating to these documents obtained in June 2019 discovered or revealed anything beyond the four corners of the documents to support its selective enforcement claim.  As defendants point out, plaintiff also fails to specify the "investigative work" performed nor explain why such work could not be completed at a time closer to when it received the documents in June 2019.  Further, plaintiff does not explain what the consultant uncovered in his/her work by September or October of 2019 that provided plaintiff with a previously-unknown or previously-unsupported basis on which to seek leave to amend.[5]  Thus, the undersigned cannot confidently conclude that defendants exercised due diligence in obtaining or "interpreting" the information upon which it now purports to rely in seeking to replead its selective enforcement claim.  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (citations omitted). Thus, despite concluding that plaintiff has not shown that it acted with due diligence, this Court may assess the existence of bad faith, prejudice to defendants, and whether balancing other relevant factors warrant the amendments.

---

[5]  Further, despite referencing DFS' "targeting" of "NRA-related insurance underwriter, AGIA," plaintiff also fails to explain how this information supports its efforts to replead its selective enforcement claim against Vullo.

**B.  Bad Faith**

Although the Court declines to conclude that plaintiff had acted with due diligence, the Court also finds that, in response, defendants fail to demonstrate that plaintiff's delay was done in bad faith.  Defendant Vullo contends that plaintiff has presented shifting reasons as the basis for its Motion to Amend.  With this, the Court agrees.  However, although plaintiff's presented reasoning and theory behind requesting the amendments have varied and the undersigned is not without concern, the proposed second amended complaint does not set forth a fully new and distinct set of factual allegations. Instead, it arises out of the same nucleus of operative facts set forth in the original pleading. Rule 15(a) provides, "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman, 371 U.S. at 182. Here, the relevant selective enforcement claim was dismissed by the Court without prejudice and with leave to amend.  Although plaintiff has shifted its underlying support for its selective enforcement allegations in its representations to the Court, the underlying claim has not drastically changed.  Thus, the undersigned declines to find that plaintiff's motion to amend its complaint is brought in bad faith.

**C.  Undue Prejudice**

The nonmoving party bears the burden of establishing that "'granting such leave would be unduly prejudicial.'" Breyette v. Amedore, 205 F.R.D. 416, 418 (N.D.N.Y. 2002).  In determining what constitutes prejudice, courts consider whether

the assertion of the new claim would: "(i) require the opponent to expend significant

additional resources to conduct discovery and prepare for trial; (ii) significantly delay

the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action

in another jurisdiction." Id. (internal citation and quotation marks omitted).

Defendant Vullo asserts that she would be prejudiced if the Court permitted

plaintiff to amend.  She suggests that the bases for the prejudice would be additional

delay and that the selective enforcement claim is "baseless", and "ripe with

falsehoods." Dkt. No. 164 at 22-23.  First, although Vullo notes that plaintiff is

"attempt[ing] to turn the clock on the Court's August 23, 2019 discovery order[,]" dkt.

no. 164 at 22, the Court notes that since filing her opposition, the Court has

permitted certain discovery relating to the selective enforcement claim to be

reviewed.  Dkt. No. 188.  Insofar as Vullo references the timeliness of the proposed

amendments or the delay additional discovery may cause in resolving this case, the

Court shares this concern.  The Court finds that permitting the amendments

undoubtedly would cause some prejudice to defendants by way of further delay and

expense.  However, it is also noted that this case has been the subject of several

delays, due to congestion on the Court's docket, the multiple filings – including

motions for reconsideration and/or appeals – and the complexity of the matters in this

case, including necessarily resorting to the assistance of a special master.  Further,

the Court notes that in his March 31, 2020 Decision, Judge McAvoy permitted review

of discovery documents relating to the selective enforcement claim.  Dkt. No. 188.

Thus, during at least the time period following Judge McAvoy's most recent decision,

defendants have been aware that additional discovery would likely take place.  Dkt. No. 188.  In sum, considering the totality of the circumstances, the delay that would result from permitting this amendment does not, alone, cause defendant Vullo *substantial* prejudice.

To the extent Vullo suggests she is prejudiced because she believes the selective enforcement claims are "baseless" or "false," defendants' disagreement[6] with the merits of the claim, alone, does not suffice to demonstrate prejudice.  Should the Court permit these claims to be added, Vullo will be permitted to test the veracity or viability of these claims by way of a dispositive motion.

Next, insofar as defendant DFS[7] opposes plaintiff's motion due to prejudice, dkt. no. 162 at 11, contending that it will be required to engage in further discovery "to respond and object to these demands [relating to selective enforcement claims] based on the privileges previously asserted" which would require Court rulings, "additional in camera review," and "time and effort on the part of both DFS and the Court[," dkt. no. 162 at 11, although the Court is not blind to the additional burden such discovery would impose on defendant DFS and the Court, the undersigned observes that Judge McAvoy recently ordered such in camera review of materials related to the selective enforcement claim.  Dkt. No. 188.  Thus, review of this

---

[6]  Referring to the claims as baseless or false differs from a futility assessment.  The Court's futility assessment will follow.  See infra.

[7]  Defendants' brief does not address prejudice to defendant Cuomo directly.  Dkt. No. 162 at 11.

discovery material will likely proceed.[8]  Further, the additional delay, alone, is not so significant a prejudice to deny the amendments.  Accordingly, as the Court acknowledges the existence of some prejudice to defendants should the amendment be granted due to the additional discovery burden and resultant delay, because the prejudice does not appear so unduly prejudicial such that it, alone, warrants outright denial of the motion for leave to amend, as is within its discretion, the Court will review whether plaintiff's repleaded selective enforcement claims are futile.

## D.  Futility

### 1.  Vullo's Knowledge of Similarly-Situated Comparators

In its May 10, 2019 Decision & Order, this Court held that plaintiff must –  in order to succeed under the 12(b)(6) standard – demonstrate that defendants Vullo and Cuomo (1) "were aware of non-firearm related Insurance Law violations by the comparators when DFS commenced its investigation into the NRA's insurance programs," or (2) "allege facts plausibly supporting the conclusion that [these defendants were aware of non-firearm related insurance law violations by comparators but consciously declined to enforce the Insurance Law against those comparators."  Dkt. No. 112 at 11.

---

[8]  The undersigned acknowledges that defendants have filed a motion for reconsideration.  Dkt. No. 199.

As a threshold issue, plaintiff submits for in camera review three documents[9] it contends supports its contentions.  See Sealed Exhs. B, C, D.  However, it is well-settled that on a motion to amend, the Court generally does not consider outside evidence.  See, e.g., Cano v. DPNY, Inc., 287 F.R.D. 251, 257 (S.D.N.Y. 2012) (declining to consider affidavits and other outside evidence submitted by defendants in opposition to the plaintiff's motion to amend); Di Pace v. Goord, 308 F. Supp. 2d 274, 278 (S.D.N.Y. 2004) ("Normally, a motion for leave to amend is adjudicated without resort to any outside evidence" unless the motion for leave to amend is submitted in response to a motion for summary judgment) (citing Nettis v. Levitt, 241 F.3d 186, 194 n.4 (2d Cir. 2001)).  Plaintiff offers no reason or support for applying a standard different from the one usually applied in considering a motion for leave to amend.  Accordingly, the Court declines to consider sealed exhibits B, C, and D as they are outside evidence not appropriately considered on a Motion for Leave to Amend.[10]

In support of its proposed selective enforcement claim, plaintiff contends that *DFS* was aware of violations of the insurance by comparators but chose not to

---

[9]  Plaintiff also submits an unredacted version of its Motion for Leave to Amend that references these exhibits.  However, the Court finds it appropriate to consider the factual allegations set forth in these sealed portions of the motion, albeit not the sealed exhibits themselves.  Sealed Exh. A.

[10]  Similarly, insofar as Vullo strenuously argues that the exhibits do not support plaintiff's allegations regarding Vullo's knowledge, dkt. no. 164 at 9-10, the Court declines to consider such arguments because "'futility' in the context of a motion to amend requires a court to assume the truth of allegations contained in the proposed pleading."  United States ex rel. Raffington v. Bon Secours Health Sys., Inc., 285 F. Supp. 3d 759, 773 (S.D.N.Y. 2018) (citing Max Impact, LLC v. Sherwood Grp., Inc., No. 09 Civ. 902 (LMM)(HBP). 2012 WL 3831535, at *2 (S.D.N.Y. Aug. 16, 2012) ("'In assessing the claimed utility of a proposed amended pleading, the court must assume the truth of the factual allegations set forth in the proposed amended pleading.'")).

18

enforce the law against the comparators.  To support this claim, the proposed

second amended complaint alleges that "DFS also became specifically cognizant of

non-NRA policies that exhibited the same purported defects as NRA policies – and

chose to ignore those violations, targeting solely the NRA – in the context of its

Lockton investigation."  Dk. No. 154-12 at 32 ¶76.  ███████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

          Plaintiff next alleges that Lockton provided a report to DFS regarding the

status of its remediation efforts for non-NRA programs.  Dkt. No. 154-12 at 33 ¶ 77.

████████████████████████████████████████



In the causes of action section of the proposed second amended complaint,

plaintiff alleges

> Vullo was aware during the investigations of the NRA and its business
> partners that these other identical (or at least similar in all material
> respects) affinity-insurance programs had the same legal infirmities that
> resulted in the penalties against Lockton, Chubb, and Lloyd's related
> solely to the NRA-related affinity insurance programs . . . from her
> involvement in the conversations she had with senior officials of Lloyd's
> in the spring of 2018 described above.

Dkt. No. 154-12 at 44 ¶110.

Defendant Vullo argues that plaintiff's proposed amended claim does not

sufficiently demonstrate that (1) Vullo had knowledge of comparators, but instead

alleges generally that "defendants" or "DFS" had such knowledge, or (2) Vullo had

knowledge of similarly-situated comparators at the *commencement* of DFS'

investigation of the NRA.  Dkt. No. 164 at 12-19.

Defendants correctly note that the vast majority of the proposed second amended complaints allegations relating to comparators collectively refer to "defendants" or "DFS" rather than to Vullo specifically.[11]  Dkt. No. 164 at 13.  Were it the case that the entirety of the proposed second amended complaint failed to specifically allege that Vullo had such knowledge, it is likely that the Court would agree with defendants for failure to allege her direct knowledge.  However, the proposed second amended complaint does include one paragraph that specifically alleges that Vullo had such knowledge:

> Vullo was aware during the investigations of the NRA and its business partners that these other identical (or at least similar in all material respects) affinity-insurance programs had the same legal infirmities that resulted in the penalties against Lockton, Chubb, and Lloyd;s related solely to the NRA-related affinity-insurance programs.  Specifically, Vullo was aware of these comparators from her involvement in the conversations she had with senior officials of Lloyd's in the spring of 2018 described above.

Dkt. No. 154-12 at 44 ¶110.  Here, plaintiff explicitly alleges that Vullo was aware of similarly-situated comparators and provides factual (albeit minimal) support for such claim: that she was informed of such comparators through conversations with Lloyd's senior officials in Spring 2018.  Id.

---

[11]  For example, the proposed second amended complaint alleges that

> [d]efendants were fully aware by at least March 2018 (and likely earlier) that non-NRA insurance policies exhibiting the same features were being marketed on behalf of other affinity organizations" but "intentionally ignored such knowledge and did not undertake enforcement actions relating to these other similarly constructed programs because enforcing the Insurance Law was never their goal.  Instead DFS explained to Lloyd's in a closed-door meetings, the Cuomo administration sought to focus on 'gun programmes' and gun advocacy groups generally.

Dkt. No. 154-12 at 11-12 ¶22 (emphasis added).

Additionally, plaintiff alleges that Vullo "threatened" Lloyd's by suggesting that DFS would not "pursue" "infractions" if Lloyd's stopped providing insurance to NRA and gun groups, contenting that Vullo met with "executives of regulated institutions, including Lloyd's" and "discussed an array of technical regulatory infractions plaguing the affinity-insurance marketplace. Vullo made it clear, however, that DFS was less interested in pursuing the infractions of which she spoke, so long as Lloyd's ceased providing insurance to gun groups, especially the NRA." Dkt. No. 154-12 at 11 ¶21. Arguably, this statement demonstrates that Vullo was aware of infractions involving affinity insurance, but, to be clear, the undersigned concludes that it does not suggest that she was aware of *similarly-situated* non-firearm related affinity insurance programs. Yet even this allegation, standing alone, would not likely suffice to demonstrate Vullo's knowledge of similarly-situated comparators. However, when read in conjunction the allegations set forth in paragraph 110, and assuming the truth therein as this Court must, such claims suffice to demonstrate that Vullo had knowledge of similarly-situated comparators but declined to enforce the insurance law against them. The Court must next address defendant Vullo's argument regarding the timing of such alleged knowledge.

Vullo argues that the proposed second amended complaint does not state that DFS or Vullo was aware of comparator violations *at the time it commenced its investigation* against the NRA; thus, the second amended complaint does not follow Judge McAvoy's direction of demonstrating knowledge at the time DFS commenced its investigation against the NRA. Dkt. No. 112 at 11. Vullo contends that plaintiff

22

alleges that defendants' investigation began in October 2017, but does not allege that Vullo knew of any comparator until February 2018 at the earliest.  Id.  In its reply, plaintiff rejects the argument that it must demonstrate that Vullo had knowledge of similarly-situated comparators at the time it commenced its investigation.  Dkt. No. 169 at 7-8).  Plaintiff, in a footnote provides:

> Although Judge McAvoy's Order dated May 9, 2019, without citing any supporting legal authority, copied a line from Defendants' reply brief regarding the investigation commencement (ECF No. 112 at 11 (Citing ECF No. 71 at 5)), the statement was not determinative of or germane to the issues therein and is, therefore, dicta.").

Dkt. No. 169 at 6 n. 6.

Read within the context of the decision, Judge McAvoy's statement regarding defendants' knowledge at the time the action is commenced is far more revealing. Judge McAvoy was reviewing plaintiff's arguments that addressed language within the Lockton Consent Order which required Lockton to provide DFS with a report detailing "any additional violations of the Insurance Law or regulations promulgated there under that Lockton has identified."  Dkt. No. 112 at 10.  Plaintiff had argued that this provision "'contemplated the existence of other violations' thereby providing a basis to infer Defendants' knowledge of the comparators' violations."  Id.  The Court rejected plaintiff's argument, disagreeing that the provision "supplies factual allegations supporting a plausible inference that either Gov. Cuomo or Supt. Vullo were aware of the comparators' Insurance Law Violations," and concluding that the consent order did not "indicate that either defendant was aware of Insurance Law violations in the insurance programs of other entities, but merely requires Lockton to

23

report on other such violations in which it might have been involved." Id. Thus, Judge McAvoy concluded that the Lockton Consent Order did not support a conclusion that Vullo "knew of other violations but declined to prosecute them"; rather, it reasonably inferred "that DFS was attempting to learn of other violations of the Insurance Law for purposes of prosecution." Id. at 11. Therefore, read within the full context of the May 2019 decision, the undersigned declines to conclude that the Court required plaintiff to demonstrate knowledge of comparator violations at the time it commenced its investigation into the NRA in order for it to replead a selective enforcement claim; rather, it was requiring such knowledge as it related to plaintiff's argument regarding the Lockton consent order. Id.

Since the May 2019 decision was issued, plaintiff has abandoned its argument that the four-corners of the Lockton consent order supported its claim that defendant Vullo had knowledge of other comparators. Instead, plaintiff now argues that Vullo had knowledge of comparators by March 2018 after Lloyd's informed Vullo of similarly-situated insurance programs through direct conversations, but that Vullo declined to enforce the Insurance Law against these comparators. See Dkt. No. 155. Accordingly, the Court finds that this allegation suffices to meet Judge McAvoy's requirements for repleading as set out in his May 2019 Decision.

## 2. "See-No-Evil" Argument

Plaintiff argues that it need not allege knowledge of comparators because it alternatively alleges a "see-no-evil" selective enforcement claim. Dkt. No. 169 at 9.

24

The proposed second amended complaint contends that Vullo "should have known" of similarly-situated comparators at the time DFS launched its investigation and "any purported lack of knowledge" was due to a "'see-no-evil' policy of enforcement, which Vullo and DFS "abandoned solely to further their vendetta against the NRA. The 'see-no-evil' enforcement policy was confirmed by DFS's continued ignorance toward the violations of the similarly situated comparators." Dkt. No. 154-12 at 44 ¶111. Further, the proposed second amended complaint alleges,

> [b]y virtue of the position held by Vullo at the time DFS launched its investigation, Vullo knew the actions taken by DFS against NRA affinity insurance programs were unprecedented. No similarly-situated programs have faced even close to the same treatment for analogous violations. However, Vullo and DFS failed to inquire about whether there were any other similarly situated affinity programs when the investigation was launched.

Id. ¶112. Citing a footnote in the Second Circuit case LaTrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, n.1 (2d Cir. 1999), plaintiff provides that

> [t]he proof at trial will establish that Vullo and DFS had never enforced the Insurance Law provisions against affinity insurance programs in the way those provisions were enforced against the NRA, then abandoned that policy to punish the NRA for engaging in constitutionally protected activity. At this stage, however, all the NRA needs to do to withstand a motion to dismiss is allege "enough facts to state a claim to relief that is plausible on its face."

Thus, plaintiff contends that it adequately pleaded a "see-no-evil" enforcement policy. Dkt. No. 169 at 10.

In LaTrieste, the Second Circuit "left open the possibility" that a plaintiff could successfully plead a selective enforcement claim where "proof was offered that a municipality did not know of prior violations because it adhered to a see-no-evil policy of not enforcing an ordinance, and then abandoned that policy with respect to a violator

engaged in protected activity." Diesel v. Town of Lewisboro, 232 F.3d 92, 105 (2d Cir. 2000).  In Tower Properties LLC v. Village of Highland Falls, No. 14-CV-04502 (NSR), 2015 WL 4124499, at *9 (S.D.N.Y. July 7, 2015), the Southern District of New York, reviewing a Motion to Dismiss, cited LaTriste in declining a motion to dismiss a "see-no-evil" selective enforcement claim.  Id. at *9.  There, the Court held that the defendants' lack of actual notice of other establishments' violations of a curfew was not fatal to the selective enforcement claim where the complaint alleged that the curfew had not been enforced for at least the last forty years, which the court held "fall[s] squarely within the contemplated exception to the knowledge requirement recognized in LaTrieste."  Id.

Similarly, in Abel v. Morabito, No. 04 Civ. 07284(PGG), 2009 WL 321007, at *6 (S.D.N.Y. Feb. 10, 2009) (before the Court on a motion for summary judgment), although the Court found that the plaintiff failed to provide evidence that the defendants had the required knowledge of similarly-situated individuals at the time they took the alleged action against the plaintiff, the Court held that the plaintiff reasonably pleaded a "see-no-evil" policy of selective enforcement.  Id.  The Court held that the plaintiff presented sufficient evidence demonstrating that the defendants were aware that their enforcement action against the plaintiff was unprecedented "by asking the town assessor whether anyone else had been sued in similar circumstances in the past, but failed to ask whether there were any other individuals who were then similarly situated to Plaintiff"; thus, the Court found that "a reasonable jury could conclude that Defendants' lack of knowledge was due to a 'see-no-evil policy.'"  Id.

Plaintiff alleges that Vullo "should have known of similarly-situated individuals at

26

the time DFS launched its investigation" but failed to take action.  Dkt. No. 154-12 at 44.

Plaintiff contends that, through her position at DFS at the time, Vullo was aware that

DFS's actions "against NRA affinity insurance programs were unprecedented" as "[n]o

other similarly-situated programs have faced even close to the same treatment for

analogous violations" yet "Vullo and DFS failed to inquire about whether there were any

similarly situated affinity programs when the investigation was launched."  Id.  Although

sparse,[12] this allegation is comparable to those that have been permitted to proceed in

other cases in this this Circuit.  See, e.g., Tower Properties LLC, 2015 WL 4124499, at

*9; Abel, 2009 WL 321007, at *6.  Accordingly, the Court finds that at this stage, in the

alternatively, plaintiff has plausibly pleaded sufficient facts to allege that Vullo was aware

that there could be potential comparators but consciously declined to investigate to learn

of such comparators under a "see-no-evil" theory of selective enforcement.


### 3. **Substituting Current DFS Superintendent**

Plaintiff contends, in a footnote, "[t]o the extent relief is sought against the then-

current DFS Superintendent (in his or her official capacity), such substitution is

automatic in any event."  Dkt. No. 155 at 3 n.7 (citing FED. R. CIV. P. 25(d); Nickelson v.

Fischer, 9:15-CV-00227 (GLS/TWD), 2016 WL 1128181, at *5 (N.D.N.Y. Feb. 16, 2016).

In the proposed second amended complaint, in requesting injunctive relief, "pursuant to

---

[12]  The undersigned does acknowledge that it is unclear whether plaintiff's position alone, without more, suffices to demonstrate that she would have personal knowledge that the enforcement was unprecedented."  However, keeping in mind the minimal precedent in this area of law, together with the fairly liberal standard for amendment of pleadings, the undersigned nevertheless finds it plausible that a reasonable fact finder could conclude that Vullo "should have known" of such comparators.

28 U.S.C. § 1651(a), 42 U.S.C. § 1983, and Rule 65 of the Federal Rules of Civil Procedure," plaintiff seeks to substitute "the current Superintendent of DFS (in her/his official capacity)" for Vullo.  Dkt. No. 154-12 at 53.  Defendants DFS and Cuomo oppose the substitution.  Dkt. No. 162 at 8, 13.  Defendants DFS and Cuomo note that substituting Linda Lacewell, the current DFS superintendent would be futile because "[p]laintiff is not entitled to any injunctive relied that Ms. Lacewell would be required to effectuate" as the only claim remaining against Vullo in her official capacity is plaintiff's First Amendment claim.  Id. at 14.  DFS and Cuomo argue that such request would be an "obey the law injunction" and a plaintiff is "not entitled to an injunction allowing it to 'exercise the rights afford [sic] to it under the First and Second Amendment[.]" Id.  In response, plaintiff argues, without further elaboration, that it is "expressly not seeking" a party substitution.  Dkt. No. 169 at 2.

The proposed second amended complaint, although not explicitly naming Linda Lacewell, does seek to replace Vullo with the "current" superintendent of DFS.  Dkt. No. 154-12 at 53.  The motion to amend confusingly indicates that plaintiff "determined not to burden the Court with an amendment until the NRA seeks such injunctive relief," yet the proposed second amended complaint does appear to seek such injunctive relief from the current superintendent.  However, because the substitution would be automatic, see FED. R. CIV. P. 25(d), and, thus, amending the complaint to substitute the "current superintendent of DFS" is not required, the Court permits the amendment as set forth in the proposed second amended complaint.  As parties have not fully briefed the issue of futility of plaintiff's request for injunctive relief, the Court declines to address it at

this time.[13]

## IV.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion for Leave to Amend (Dkt. No. 155) is **GRANTED** insofar as it seeks to replead a selective enforcement claim against defendant Vullo; and it is further

**ORDERED**, that plaintiff's Motion for Leave to Amend insofar as it substitutes the "current Superintendent of DFS" for Vullo in its request for injunctive relief is **GRANTED**; and it is further

**ORDERED**, that insofar as the Motion for Leave to Amend or proposed second amended complaint could be read as attempting to replead a selective enforcement claim against defendant Cuomo or newly plead such claim against defendant DFS, the motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 1, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[13]  In so holding, the Court makes no finding as to whether plaintiff could successfully seek injunctive relief against Vullo on its First Amendment claim.