UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NATIONAL RIFLE ASSOCIATION OF AMERICA,

*Plaintiff*,

-against-

18-cv-00566 (TJM/CFH)

ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,

*Defendants*.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DFS, GOVERNOR CUOMO AND LINDA LACEWELL'S MOTION TO DISMISS**

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

William A. Scott
Assistant Attorney General, of Counsel
Bar Roll No. 512434
Telephone: (518) 776-2255
Fax: (518) 915-7740 (Not for service of papers)

Date: June 23, 2020

# Table of Contents

Preliminary Statement .......... 1

Procedural Background .......... 4

Argument .......... 6

**I. The Plaintiff's Claims Against DFS under the State Constitution Are Barred by the Eleventh Amendment** .......... 6

**II. The Plaintiff Seeks No Lawful Relief Against DFS** .......... 7

**A. The Plaintiff is Not Otherwise Entitled to Injunctive Relief** .......... 8

**B. The Plaintiff is Not Entitled to Declaratory Relief Against DFS** .......... 11

**III. The Governor Sued in His Official Capacity is Not a "Person" Under Section 1983** 13

**IV. The Eleventh Amendment Bars State Law Claims against the Governor in His Official Capacity** .......... 15

Conclusion .......... 16

# Table of Authorities

Cases

*Báez v. New York*, 629 F. App'x 116 (2d Cir. 2015)........................................................... 6
*Bey v. New York*, 1998 U.S. App. LEXIS 31700 (2d Cir. N.Y. December 18, 1998).................. 13
*Brandon v. Holt*, 469 U.S. 464 (1985)........................................................................... 13
*Cable Television Ass'n of N.Y., Inc. v. Finneran*, 954 F.2d 91 (2d Cir. 1992) ............................ 11
*Chapel Farm Estates, Inc. V. Moerdler*, 2003 U.S. Dist. LEXIS 14593 (S.D.N.Y. Aug. 22, 2003) ........................................................................................................................ 11
*Cory v. White*, 457 U.S. 85 (1982).................................................................................. 6
*Dube v. State Univ. of N.Y.*, 900 F.2d 587 (2d Cir. 1990) ......................................................... 13
*Dublino v. McCarthy*, 2019 U.S. Dist. LEXIS 78347 (N.D.N.Y. May 9, 2019) ........................... 8
Edelman v. Jordan, 415 U.S. 651 (1974)............................................................................ 15
*Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006) ............................................................ 9, 10
*Feng Li v. Lorenzo*, 712 F. App'x 21 (2d Cir. 2017)............................................................ 6
*Feng Li v. Rabner*, 643 F. App'x 57 (2d Cir. 2016)............................................................. 6
*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000)....... 8
*Goldberg v. Cablevision Sys. Corp.*, 281 F. Supp. 2d 595 (E.D.N.Y 2003)................................ 12
*Green v. Mansour*, 474 U.S. 64 (1985)............................................................................. 13
*Jackson v. Conn. Dept. of Public Health*, 795 Fed.Appx. 64 (2d Cir. 2020) ............................... 14
*Komlosi v. NYSOMRDD*, 64 F.3d 810 (2d Cir. 1995) ............................................................ 13
*Lee v. Durr*, 2011 WL 1103051 (N.D.N.Y. 2011)................................................................ 12
*Mullin v. P&R Educ. Servs.*, 942 F.Supp. 110 (E.D.N.Y. 1996) ............................................... 6
*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984) ............................ 6, 7, 15, 16
*Peregrine Myanmar v. Segal*, 89 F.3d 41 (2d Cir. 1996) ........................................................ 8
*Robinson v. Allstate Ins. Co.*, 508 F. App'x 7 (2d Cir. 2013) .................................................. 6
*Rowe v. New York State Division of Budget*, 2012 WL 4092856 (N.D.N.Y. 2012)....................... 8
*Shell Oil v. Amoco*, 970 F.2d 885 (Fed.Cir. 1992)................................................................ 11
*Steinberg v. Elkman*, 2016 U.S. Dist. LEXIS 21200 (S.D.N.Y. Feb. 22, 2016).......................... 13
*Studio Due v. Vari-Lite*, 2000 WL 977703 (S.D.N.Y. 2000)..................................................... 11
*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ............................................................. 8
*Treistman v. McGinty*, 804 Fed.Appx. 98 (Mem) (2d Cir. May 14, 2020)................................ 6, 7
*Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35 (2d Cir. 1977)............................... 13
*Ward v. Thomas*, 207 F.3d 114 (2d Cir. 2000) ................................................................. 12, 13
*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ........................................................ 13
*Will v. Michigan Dep't. of the State Police*, 491 U.S. 58 (1989)................................................ 6

Statutes

28 U.S.C. §2201.......................................................................................................... 5
28 U.S.C. §2201(a) ..................................................................................................... 11

**Preliminary Statement**

Every claim remaining against the Defendants New York State Department of Financial Services, and Superintendent Linda Lacewell in her official capacity (collectively "DFS")[1], must be dismissed. These remaining claims are improperly asserted against the State of New York in violation of the Eleventh Amendment to the Constitution of the United States and seek relief that is otherwise improper. Additionally, the Plaintiff's claims against the Governor in his official capacity are also barred by the Eleventh Amendment, and the Plaintiff's request for injunctive relief as to the Governor is similarly improper.

Throughout this litigation the NRA's baseless claims against DFS have been either abandoned entirely by the NRA or readily dismissed by this Court, leaving only the portions of the NRA's "First Amendment" counts that assert violations of the New York State Constitution. As the claims against DFS, as a state agency, are asserted against the State of New York, and the only claims in the Second Amended Complaint asserted against DFS are claims sounding in state law, the Eleventh Amendment absolutely bars this Court from hearing them. Even if the claims against DFS were not barred by the Eleventh Amendment the claims against DFS must nonetheless be dismissed as the NRA lacks redressability and thus standing because it seeks no relief against DFS which this court may grant.

It is settled beyond dispute that the Eleventh Amendment of the Constitution bars suits against a State unless it has consented to be sued, or federal legislation has overridden the State's sovereign immunity. A suit against DFS, as an agency of New York State, is a suit against the State.

1 This brief shall treat Linda Lacewell, in her official capacity as Superintendent of Financial Services for the State of New York together with the New York State Department of Financial Services. For the purpose of the arguments contained herein there is no difference between the office of the Superintendent and the Department which she oversees.

New York State has not consented to suit in federal court for claims premised upon the State Constitution, or for any of the claims the NRA asserts. The NRA was not entitled to assert a claim against DFS sounding in any federal statute, a fact the NRA all but conceded in abandoning its Section 1983 claims. Since DFS is immune from the remaining claims the NRA asserts in the Second Amended Complaint all remaining claims must be dismissed.

Even if the Eleventh Amendment did not require dismissal of the remaining claims against DFS, the claims must still be dismissed as the NRA lacks Article III standing. Because the NRA does not seek any relief which this Court can grant, it cannot show redressability of the alleged violations, a necessary element of Article III standing.

All monetary claims that were improperly asserted against DFS were previously dismissed by this court. The only remaining relief that the NRA seeks against DFS is an "obey-the-law" injunction. Courts have routinely rejected this form of relief as inappropriate. To begin, DFS has not violated any law. Instead, DFS, as a law enforcement agency of the State of New York, has enforced the law, including by entering Consent Orders with various entities that admitted their dealings with the NRA violated state law. In any event, the law is clear that an injunction which commands only to obey the law is not relief that can be obtained from a federal court.

The NRA's cursory citation to the Declaratory Judgments Act ("DJA") in its prayer for relief does not save its claims against DFS. The NRA does not, and indeed could not, assert any independent claim under the DJA. Instead the two remaining claims asserted against DFS are asserted under Section 1983 and the under the New York Constitution. As discussed above, the NRA, recognizing it had no cognizable claim, abandoned its Section 1983 claims against DFS and

---

Both are administrative arms of the State of New York and are therefore treated as the State of New York for the relevant

those claims were therefore dismissed. As also set forth above and explained in more detail below, this Court lacks jurisdiction over the state law claims asserted against the DFS. As the DJA does not increase the Court's jurisdiction—in fact the law is clear that the DJA does not provide an independent jurisdictional basis—the NRA's bald citation thereto does not save its meritless claims.

As to the claims remaining against the Governor, a suit against the Governor in his official capacity is in fact, like those brought against DFS, asserted against the State. Thus, in addition to barring the NRA's claims against DFS, the Eleventh Amendment also bars all claims against the Governor in his official capacity, including requested injunctive relief. It is long recognized that a Governor in his official capacity is not a "person" under Section 1983 and no claim may be brought under Section 1983 against him in that capacity. Therefore, the NRA's claims of federal constitutional violations asserted under Section 1983 in Counts One and Two against Governor Cuomo, in his capacity as Governor, must be dismissed. Additionally, for the same reasons that preclude this Court from hearing claims against DFS sounding in state law, the Eleventh Amendment bars the state constitutional claims against the Governor in his official capacity. Even if it did not, there is no lawful relief against the Office of the Governor of the State of New York that this Court could grant, rendering the suit against Governor Cuomo in his official capacity subject to dismissal.

New York's sovereign immunity, preserved in the Eleventh Amendment, bars the NRA from seeking, and this Court from granting, any relief under state law absent New York's consent. New York has not and does not consent here and, therefore, the NRA's claims must be dismissed. Even absent this constitutional bar to the NRA's claims, the complaint would still require dismissal as to DFS and the Governor in his official capacity as it fails to meet the

---

analyses.

requirement of redressability for Article III standing as the NRA seeks no relief which the court may grant. The Amended Complaint must therefore be dismissed in so far as it asserts any claim against DFS or the Governor in his official capacity.

**Procedural Background**

The Court is familiar with the facts and procedural history of this case and the Defendants will not restate them at length here, but will instead respectfully refer the Court to, and incorporate as if fully set forth herein, its previous statements of the factual background in the motion practice in this case. However, as relevant to the current motion it is important to summarize certain key prior proceedings.

Following two motions to dismiss the First Amended Complaint, the Court has dismissed all claims against DFS other than a portion of two causes of action asserting claims under the New York State Constitution. [Dkt. 112 at pg. 12]. The Court also dismissed all claims for monetary damages against DFS and the Governor in his official capacity. [Dkt. 112 at pg. 12].

The Second Amended Complaint, the currently operative pleading, contains three counts. Counts One and Two assert, against all Defendants, violations of the Federal Constitution brought under Section 1983 and violations of the State Constitution. Count Three asserts no claim against DFS or the Governor in any capacity.

Despite abandoning its federal claims against DFS, and those claims otherwise being dismissed by the Court, the Second Amended Complaint appears to reassert those claims against DFS within Counts One and Two. The NRA in its papers in support of its motion to amend the complaint, responded to this improper repleading, when raised by DFS in opposition, by stating "the New York State Department of Financial Services also filed opposition papers apparently to

remind this Court that the Motion does not seek to re-plead a claim against them." [Dkt. 169 at pg. 2 ]. In light of the nebulous nature of the pleading and the NRA's responsive papers, Magistrate Hummel made clear in granting the motion to amend that it was denied to the extent it sought to plead any claim against DFS. [Dkt. 202 at pg. 29].

Therefore, what remains in Counts One and Two of the Amended Complaint, as asserted against DFS, are only claims under the New York State Constitution. What remains in Counts One and Two of the Amended Complaint, as asserted against the Governor in his official capacity, are Section 1983 claims of violations of the U.S. Constitution and claims under the New York State Constitution.

The remaining relief sought against DFS is a request for an obey the law injunction and a bald request for declaratory relief pursuant to 28 U.S.C. §2201. [Dkt. 203 at pg. 41-42]. The same relief is sought against the Governor in his official capacity. [Dkt. 203 at pg. 41-42].

## Argument

### I. The Plaintiff's Claims Against DFS under the State Constitution Are Barred by the Eleventh Amendment

The Eleventh Amendment of the United States Constitution bars suits against New York State unless it has consented to be sued, or federal legislation has overridden the State's sovereign immunity. *Will v. Michigan Dep't. of the State Police,* 491 U.S. 58, 64 (1989). This immunity also extends to state officers sued in their official capacities. *Mullin v. P&R Educ. Servs.*, 942 F.Supp. 110, 111-112 (E.D.N.Y. 1996). Further, "the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction[.]" *Cory v. White*, 457 U.S. 85, 91, 102 S. Ct. 2325, 2329 (1982); *see Treistman v. McGinty*, 804 Fed.Appx. 98, 99 (Mem) (2d Cir. May 14, 2020). This holds true whether those claims are asserted under the United States Constitution or if they attempt to invoke a court's pendent jurisdiction. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117-118 (1984).

It is settled law that a "claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Feng Li v. Lorenzo*, 712 F. App'x 21, 23-24 (2d Cir. 2017) (quoting *Pennhurst*, 465 U.S. at 121); *see also Báez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (affirming dismissal of claims under New York law against the State Office of Temporary and Disability Assistance on the basis of sovereign immunity). The Second Circuit has held that "[a]s to the State . . . the Eleventh Amendment bars a suit regardless of the nature of the relief sought." *Feng Li v. Rabner*, 643 F. App'x 57, 58 (2d Cir. 2016) (quotation omitted).

The Eleventh Amendment immunity operates as a "jurisdictional bar" to claims brought in violation of it. *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (dismissing claims

brought against DFS's predecessor agency the New York Department of Insurance as "barred by the Eleventh Amendment"); *see also Pennhurst*, 465 U.S. at 121 ("[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment.").

In a decision issued less than a month ago, the Second Circuit reaffirmed these principals. *Treistman*, 804 Fed.Appx. at 99. In its *Treistman* decision the Circuit reviewed the dismissal of both federal and state law claims brought against the New York Family Court System, a Judge of that Court in his official capacity and other employees of the court in their official capacities, seeking both declaratory and injunctive relief. As relevant to the state law claims[2] the Court affirmed that a District Court is barred by the Eleventh Amendment from issuing relief under state law. *Id.* The Second Circuit, quoting *Pennhurst*, held that a "claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id*. (quoting *Pennhurst*, 465 U.S. at 121).

Here, the only claims pending against DFS are claims of State Constitutional violations. There can be no doubt that such claims are barred by the Eleventh Amendment. Therefore, the remaining claims against DFS must be dismissed as this Court is without jurisdiction to hear them.[3]

## II. The Plaintiff Seeks No Lawful Relief Against DFS

2 As the only claims remaining against DFS are claims sounding in state law, the analysis of *Treistman* here is limited to its state law claims.

3 This is true regardless of the type of relief sought. However, Defendants note here that this Court already dismissed the Plaintiff's claims for monetary relief against DFS and the Governor in his official capacity. [Dkt. 112 at pg. 12]. As with the rest of the Second Amended Complaint, the Plaintiff's request for relief makes no effort to delineate what relief is sought from which Defendant. [Dkt. 203 at pg. 41-42]. To the extent that the Plaintiff's Second Amended Complaint attempts to improperly re-assert a claim for monetary damages against DFS or the Governor in his official capacity those claims must be dismissed, again. *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594-95 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991).

Even if the Plaintiff had plead a cause of action not barred by the Eleventh Amendment, they seek no relief which the Court may grant against DFS. Therefore, without any relief to obtain against DFS, it is not "likely that a favorable judicial decision will prevent or redress the [alleged] injury," which is a critical element of Article III standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 180-181 (2000)). As the NRA lacks standing to assert the claims against DFS contained in the Second Amended Complaint the claims must be dismissed even if they were to survive the Eleventh Amendment immunity.

**A. The Plaintiff is Not Otherwise Entitled to Injunctive Relief Against DFS**

Courts will not grant an "obey the law" injunction because such injunctions are "vague, do not require the defendants to do anything more than that already imposed by law, subject the defendants to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement." *Rowe v. New York State Division of Budget*, 2012 WL 4092856, at *7 (N.D.N.Y. 2012); *see also Peregrine Myanmar v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) (holding that "an injunction must be more specific than a simple command that the defendant obey the law"). As this Court recognized just last year, the Second Circuit has held that "[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *Dublino v. McCarthy*, No. 9:19-CV-0381 (GLS/DJS), 2019 U.S. Dist. LEXIS 78347, at *52 (N.D.N.Y. May 9, 2019) (rejecting injunctive relief where Plaintiff "essentially [sought] an order from this Court directing DOCCS officials to properly follow DOCCS Directives and not violate plaintiff's constitutional rights.") (internal quotations omitted).

Courts have also held that obey-the-law injunctions are equally unenforceable in the context of First Amendment claims. *See Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006). In *Elend*, the plaintiffs sought injunctive relief that was found to be impermissible under F.R.C.P. 65, as it would do nothing "beyond abstractly commanding the Secret Service to obey the First Amendment." *Id*. Such an injunction, if granted, would do no more than require that the defendants obey the law. *Id*. at 1210.

The Plaintiff's Second Amended Complaint seeks "an order preliminarily and permanently enjoining Cuomo and Vullo (in their official capacities) and DFS – including its officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the injunction – from threatening or encouraging insurance companies, banks, or financial institutions to sever ties with or discontinue services to the NRA." [Dkt. 203 at pg. 37]. While DFS has not threatened anyone, the alleged violations of the Plaintiff's First Amendment rights, whether referring to press releases, guidance letters or still unspecified "backroom exhortations" are all supposed to have occurred in 2017-2018.[4] [Dkt. 203 at pg. 9-10, 15-16, 18-21, 35]. The Second Amended Complaint contains no claim that anyone is *currently* engaged in any activity that forms the basis of any claim at issue in the case. Instead, the Plaintiff alleges that "[d]efendants' actions have concretely harmed the NRA," indicating that any alleged harm occurred in the past. [Dkt. 203

[4] The Plaintiff's pleadings and submissions in this case seem designed to obfuscate its lack of a meritorious basis for its claims. Despite multiple motions, both substantive and procedural, the Plaintiff has never particularized the nature of these alleged threats. The Second Amended Complaint continues in this pattern and also fails to differentiate between the three Defendants despite the fact that nearly all the claims against DFS have been dismissed. At no point in this litigation has the Plaintiff ever made any specific allegations as to who made these supposed threats, when the threats were made or to whom they were made other than the recent, and baseless, accusations against Ms. Vullo. Based on the discovery elicited to date the reason for this appears to be that the NRA has no such evidence. Given the amount of public reporting on and public commentary from the NRA on this case, it seems highly unlikely that if the NRA was capable of making such allegations that it would have been made before now. Though not directly relevant to the current motion, this apparent lack of proof puts into further context the improper nature of the NRA's request for relief.

at pg. 38].

The Court's Order on the Defendants' Motion to Dismiss the First Amended Complaint also recognizes that the Plaintiff's claims are premised upon past conduct. [Dkt. 56 at pg. 18]. The Court's holding indicates that the Plaintiff's First Amendment claims do not stem from DFS' enforcement action against the NRA, but instead arise from the alleged communications that the Governor and/or DFS purportedly had with banking and/or insurance entities at an unspecified point in the past. [Dkt. 56 at pg. 23]. Importantly, in its Second Amended Complaint the NRA has not replead a selective enforcement claim against DFS or any individual at DFS.[5]

As the Court has also recognized, the Plaintiff does not challenge the constitutionality of New York's Insurance Law. [Dkt. 56 at pg. 41]. "The Consent Orders were entered into following a DFS investigation yielding admissions from Lockton and Chubb that they were involved in numerous illegal insurance activities related to NRA programs. The NRA has not alleged that these activities were legal under New York law, or that the applicable New York insurance laws are unconstitutional or were improperly applied." [Dkt. 56 at pg. 41]. Nor does the Plaintiff challenge DFS's authority to act pursuant to New York's Insurance Law. Plaintiff's sole claim against DFS rests on allegations that at some point in the past its First Amendment rights were violated, and it improperly asks that such violations not occur again. *Elend*, 471 F.3d at 1211-12 (holding that where a plaintiff provides "a court with no factual assurance that future injury is likely and no clues about its contours should such an injury arise . . . [s]uch a claim is not fit for adjudication by this Court.").

The Plaintiff seeks nothing more than an improper obey the law injunction. This is clear

5 And to the extent that the Second Amended Complaint could be read to make any allegation of selective enforcement against DFS, Magistrate Hummel's decision makes clear that such repleading was denied. [Dkt. 202 at pg. 29]

from the plain language of the Plaintiff's prayer for relief, which seeks an injunction directing the Defendants: "to immediately cease and refrain from engaging in any conduct or activity which has the purpose or effect of interfering with the NRA's exercise of the rights afford to it under the First and Second Amendment[6] . . ." [Dkt. 203 at pg. 42]. This is an improper request for injunctive relief and, even if this relief were not barred by the Eleventh Amendment, it cannot be granted by the Court under the Federal Rules, and such relief should be denied as a matter of law. In addition, as an obey-the-law injunction is impermissible relief in any case, to the extent the Second Amended Complaint seeks such relief against the Governor in any capacity, the Court should dismiss any request for such relief as well.

**B. The Plaintiff is Not Entitled to Declaratory Relief Against DFS**

The Declaratory Judgment Act (DJA), allows a court to fashion declaratory relief, in an appropriate case. *See* 28 U.S.C. §2201(a). However, a court may only do so "[i]n a case of actual controversy within its jurisdiction." *Id.* "An actual controversy is a jurisdictional prerequisite and must be present before a declaratory judgment action is ripe for adjudication." *Studio Due v. Vari-Lite*, 2000 WL 977703, *2 (S.D.N.Y. 2000) (citing *Shell Oil v. Amoco*, 970 F.2d 885, 889 [Fed.Cir. 1992]). "[T]he Declaratory Judgment Act does not expand the jurisdiction of the federal courts." *Chapel Farm Estates, Inc. v. Moerdler*, No. 01 Civ. 3601, 2003 U.S. Dist. LEXIS 14593 (S.D.N.Y. Aug. 22, 2003) (citing *Cable Television Ass'n of N.Y., Inc. v. Finneran*, 954 F.2d 91, 94 [2d Cir. 1992]). If a court does not have jurisdiction over a dispute the DJA does not provide an independent basis for jurisdiction. *See Lee v. Durr*, 2011 WL 1103051, *4-5 (N.D.N.Y. 2011).

[6] Though the Plaintiff's request for relief also includes a reference to its Second Amendment rights, there is no separately plead cause of action relative to the Second Amendment. In any event, the same analysis would apply to such a claim and must be similarly rejected.

A plaintiff seeking relief under the DJA must have an independent basis for jurisdiction. *See Goldberg v. Cablevision Sys. Corp.*, 281 F. Supp. 2d 595, 604, 2003 U.S. Dist. LEXIS 15015 (E.D.N.Y 2003). In *Goldberg* plaintiff requested relief against Defendant pursuant to the DJA. *Id.* The court held that because the Act does not confer subject matter jurisdiction, the plaintiff must have an independent basis for jurisdiction. *Id.* The Court held that "[a]s all the federal claims must be dismissed, the Court lacks jurisdiction to grant relief pursuant to the Declaratory Judgment Act." *Id*.

As set forth above, this Court has no jurisdiction over the claims asserted against DFS. The Plaintiff's Section 1983 claims against DFS have been withdrawn and any requests for monetary or injunctive relief are barred by the Eleventh Amendment. Thus, the Plaintiff's bald request for a declaration pursuant to the DJA "that Defendants have violated the NRA's rights to free speech and equal protection under both the Federal and New York Constitutions," is insufficient to confer subject matter jurisdiction over DFS. [Dkt. 203 at pg. 41].

Even if there were a jurisdictional basis to entertain the Plaintiff's request for declaratory relief, the NRA's sought-after declaration would be barred by the Eleventh Amendment. The two counts that remain against DFS allege that DFS violated the NRA's rights in the past. The Second Circuit has explained that in circumstances like these where a declaration "could say no more than that [a state] had violated [the] law in the past," that relief is barred by the Eleventh Amendment. *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). The Second Circuit explained that "such a declaration 'would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.'" *Id.* (quoting *Green v. Mansour*, 474 U.S. 64, 73 [1985]).

As the DJA provides no independent basis for jurisdiction, and as there are no other viable claims against DFS, this prayer for relief does not save the NRA's doomed claims against DFS.

**III. The Governor Sued in His Official Capacity is Not a "Person" Under Section 1983**

It is well settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (affirming dismissal of Section 1983 claims against the state and state officials sued in their official capacity) (citing *Brandon v. Holt*, 469 U.S. 464, 471 [1985]). "It is therefore settled that a state cannot be sued under §1983, and that this rule applies to States or governmental entities that are considered arms of the state for Eleventh Amendment purposes[.]" *Komlosi v. NYSOMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (internal quotations and citations omitted).

As "[n]either states nor state officials acting in their official capacity are considered 'persons' under Section 1983 . . . [and] they are not suable under this statute[,]" the claims asserted against the Governor in his official capacity must be dismissed. *Bey v. New York*, 1998 U.S. App. LEXIS 31700, *2 (2d Cir. N.Y. December 18, 1998); *see also Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (holding that Congress has not abrogated sovereign immunity for Section 1983 claims); *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39-40 (2d Cir. 1977) (recognizing that New York has not waived immunity for Section 1983 claims); *Steinberg v. Elkman*, No. 15CV278-LTS-DCF, 2016 U.S. Dist. LEXIS 21200, at *12 (S.D.N.Y. Feb. 22, 2016) ("[T]he Supreme Court has made it clear that neither the State, nor a governor acting in his or her official capacity, is a 'person' for the purposes of a Section 1983 suit. Thus, Governor Cuomo is immune from suit under the Eleventh Amendment, and any claims asserted against him by Plaintiff must be dismissed." (

internal citations omitted).

The law is well settled on this issue and was reaffirmed by the Second Circuit as recently as February of this year. In *Jackson v. Conn. Dept. of Public Health*, 795 Fed.Appx. 64, 65 (2d Cir. 2020), the plaintiff brought an action against the Connecticut State Department of Health ("DPH"), its commissioner and a DPH employee under Section 1983. The plaintiff specifically alleged that the Connecticut medical board had issued a cease and desist order that violated the plaintiff's First Amendment right to practice her religion. *Id.* Citing *Pennhurst*, the Second Circuit in *Jackson* affirmed the district court's dismissal of the complaint, holding that the DPH as an arm of the state was immune from suit under the Eleventh Amendment. *Id*.

Further, neither the NRA's prayer for injunctive nor declaratory relief save the claims. First, the NRA would be asking the Court to read out of its pleading its reliance on Section 1983 in the Second Amended Complaint.[7] Second, as discussed above, the NRA alleges past violations of federal law by the Governor. It makes no claims of ongoing acts by the Governor in violation of any federal law.[8] This issue is addressed by the Second Circuit's decision in *Treistman*. There the plaintiff sought to rely on an exception to Eleventh Amendment immunity which allows suit against an official capacity defendant alleging ongoing violations of federal law. The Second Circuit in rejecting both injunctive and declaratory relief held that given the plaintiff's allegations related only to past occurrences, there judicial proceedings that had taken place, they must be construed as

7 See Dkt. 203 at 34 ("Count One: Violation Of The NRA's First And Fourteenth Amendment Rights Under 42 U.S.C. § 1983 . . . ." emphasis added); and 37 ("Count Two: Violation Of The NRA's First And Fourteenth Amendment Rights Under 42 U.S.C. § 1983 . . . ." emphasis added).

8 Indeed, the only allegation of continuing activity contained in the Second Amended Complaint is that the "DFS's selective enforcement continues to this day." [Dkt. 203 at pg. 32]. But despite the opportunity to replead its selective enforcement claim, the NRA was *admittedly* unable to do so against Governor Cuomo, or DFS for that matter. Therefore, as it relates to the counts actually remaining in the Second Amended Complaint asserted against Governor Cuomo, all the alleged violations occurred in the past.

retroactive. *Treistman*, 2020 U.S. App. LEXIS 15476, at *3 (2d Cir. May 14, 2020) (citing *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000)).

Therefore, to the extent that Counts One and Two assert violations of the Federal Constitution against the Governor in his official capacity under Section 1983, those claims must be dismissed.

## IV. The Eleventh Amendment Bars State Law Claims against the Governor in His Official Capacity

As the federal claims in Counts One and Two of the Second Amended Complaint must be dismissed for the reasons set forth above, the only remaining claims against the Governor in his official capacity would be the claims asserted under the New York State Constitution. But these claims too must be dismissed for the same reasons that the claims against DFS fail, as such suit is barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.").

Even if a federal claim against the Governor were to survive, pendent jurisdiction does not operate to save the NRA's state law claims. In *Edelman v. Jordan, 415 U.S. 651* (1974), the Supreme Court held that pendent jurisdiction "does not permit such an evasion of the immunity guaranteed by the Eleventh Amendment." *Id*. at 120-121. As such, "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." *Id*. at 121. The Court had already held that a claim that state officials had violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. *Id*. The Court held in *Pennhurst* that this same principle also applies to claims brought under state law in federal court pursuant to pendent jurisdiction. *Pennhurst,* 463 U.S. at 121. The Supreme Court was

clear in *Pennhurst* that the Eleventh Amendment applies equally to pendent jurisdiction as it does to the "explicitly granted power to hear federal claims." *Id*. "If we were to hold otherwise, a federal court could award damages against a State on the basis of a pendent claim." *Id* at 120.

Therefore, in addition to dismissing all remaining claims against DFS on Eleventh Amendment grounds, the Court should dismiss the state law claims against Governor Cuomo under the same reasoning.

## **Conclusion**

As set forth above the Plaintiff's claims against DFS and Superintendent Lacewell must be dismissed in their entirety; Plaintiff's claim for injunctive relief against Governor Cuomo must also be dismissed, along with all claims against the Governor in his official capacity; together with such other and further relief as the Court deems proper and necessary.

Dated: Albany, New York
June 23, 2020

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341
By: s/ *William A. Scott*
William A. Scott
Assistant Attorney General, of Counsel
Bar Roll No. 512434
Telephone: (518) 776-2255
Email: William.Scott@ag.ny.gov

TO: All Counsel of Record via ECF