## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, § § | |
| Plaintiff, § | |
| v. § | |
| ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, § § § § § § § § | CIVIL CASE NO. 18-CV-00566-TJM-CFH |
| Defendants. § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS DFS, GOVERNOR CUOMO AND LINDA LACEWELL'S MOTION TO DISMISS**

William A. Brewer III (Bar No. 700217)
Sarah B. Rogers (Bar No. 700207)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................1

II. LEGAL STANDARD........................................................................................................3

III. ARGUMENTS AND AUTHORITIES..............................................................................4

    A. Defendants Waived Any Eleventh Amendment Immunity. ...................................4

    B. The Eleventh Amendment Does Not Bar the NRA's Claims Under Section
       1983 Against Cuomo In His Official Capacity........................................................6

    C. The Remedies Sought By The NRA Are Proper. ....................................................9

       1. The NRA's request for injunctive relief is proper. ......................................9

       2. The NRA's request for declaratory relief is proper. .................................12

IV. CONCLUSION................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*995 Fifth Ave. Assoc., L.P. v. New York State Dep't of Taxation and Fin.*,
   963 F.2d 503 (2d Cir.1992)...........................................................................................4

*Ackerman v. Nat'l Prop. Analysts, Inc.*,
   1992 WL 240605, 1992 U.S. Dist. LEXIS 13502 (S.D.N.Y. 1992).........................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................................3

*City of New York v. Mickalis Pawn Shop*,
   LLC, 645 F.3d 114 (2d Cir. 2011) ..............................................................................10

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
   131 F.3d 353 (3d Cir. 1997), aff'd, 527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed.
   2d 605 (1999).................................................................................................................4

*Dube v. State Univ. of New York*,
   900 F.2d 587 (2d Cir. 1990)...........................................................................................7

*Dublino v. McCarthy*,
   No. 919CV0381GLSDJS, 2019 WL 2053829 (N.D.N.Y. May 9, 2019) ..........................10, 11

*Elend v. Basham*,
   471 F.3d 1199 (11th Cir. 2006) .................................................................................9, 10

*Goel v. Bunge, Ltd.*,
   820 F.3d 554 (2d Cir. 2016)...........................................................................................3

*Hankins v. Finnel*,
   964 F.2d 853 (8th Cir. 1992) .........................................................................................4

*Jackson v. Connecticut Dep't of Pub. Health*,
   795 F. App'x 64 (2d Cir. 2020) .....................................................................................8

*Komlosi v. New York State Office of Mental Retardation & Developmental
Disabilities*, 64 F.3d 810 (2d Cir. 1995) .......................................................................8

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
   535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002).........................................4

*Morton v. Cty. of Erie*,
  335 F. Supp. 3d 449, 462 (W.D.N.Y. 2018), *aff'd*, 796 F. App'x 40 (2d Cir.
  2019) ..................................................................................................................................12

*Nat'l Rifle Ass'n of Am. v. Cuomo*,
  350 F. Supp. 3d 94, 104 (N.D.N.Y. 2018) ...........................................................................3

*Philan Ins. Ltd. v. Frank B. Hall & Co., Inc.*,
  786 F. Supp. 345 (S.D.N.Y.1992) ......................................................................................13

*Philatelic Found. v. Kaplan*,
  647 F. Supp. 1344 (S.D.N.Y.1986).....................................................................................13

*Sassi v. Dutchess Cty.*,
  9:16-cv-1450, 2017 WL 4773320 (N.D.N.Y. Oct. 20, 2017)................................................4

*Seitz v. New York State*,
  No. 218CV4149PKCLB, 2019 WL 4805257 (E.D.N.Y. Sept. 30, 2019) .....................11, 12

*In re Sept. 11 Litig.*,
  906 F. Supp. 2d 295 (S.D.N.Y. 2012), *aff'd sub nom. World Trade Ctr.
  Properties LLC v. QBE Int'l Ins. Ltd.*, 627 F. App'x 10 (2d Cir. 2015)..................................13

*State Employees Bargaining Agent Coal. v. Rowland*,
  494 F.3d 71 (2d Cir. 2007).........................................................................................7, 8, 9

*Treistman v. McGinty*,
  804 F. App'x 98 .....................................................................................................................9

*Trotman v. Palisades Interstate Park Comm'n*,
  557 F.2d 35 (2d Cir. 1977)....................................................................................................8

*United Specialty Ins. Co. v. Jonak*,
  756 F. App'x 766 (9th Cir. 2019) .....................................................................................4, 6

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
  535 U.S. 635, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)..................................................7, 8

*Ward v. Thomas*,
  207 F.3d 114 (2d Cir. 2000)................................................................................................14

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).....................................................6, 9

*Wood v. Prudential Ret. Ins. & Annuity Co.*,
  No. 3:15-CV-1785 (VLB), 2017 WL 3381007 (D. Conn. Aug. 4, 2017) ..............................10

*Ex parte Young*,
    209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) .......................................................2, 7, 8, 9

**Other Authorities**

Fed. R. Civ. 12(c) ..................................................................................................................5

FRCP 12(b)(6) ...................................................................................................................1, 3

Plaintiff the National Rifle Association of America (the "NRA") submits this memorandum of law in opposition to the motion to dismiss the Second Amended Complaint[1] in part under FRCP 12(b)(6) ("Motion") of defendants New York Governor Andrew Cuomo's ("Cuomo"), the New York Department of Financial Services' ("DFS") and Linda Lacewell (collectively, "Defendants"), as follows:

# I.
# PRELIMINARY STATEMENT

The Motion is the latest effort by Defendants to avert discovery, and eventually trial, on claims they have tried and failed to dismiss on at least three occasions. It is no mystery why the Motion arrives now: in the wake of this Court's recent ruling for the NRA on a prior motion to compel[2] and the Special Master's recent report and recommendation assessing Defendants' unfounded privileged claims, Defendants know that they will soon be held to account for the scheme that Defendant Cuomo has repeatedly touted on social media: namely, the discriminatory, retaliatory misuse of New York's financial regulatory authority to "#BankruptTheNRA."[3]

The arguments advanced in the Motion deal with technical aspects of sovereign immunity and the styling of the NRA's injunctive-relief claims—and none warrant dismissal of any aspect of the SAC. Defendants now assert for the first time—two years into this litigation—that the NRA's First Amendment claims under 42 U.S.C. § 1983 (against Cuomo) and Article 1, Section 8 of the New York Constitution (together, "First Amendment Claims") are barred by the Eleventh Amendment and that the declaratory and injunctive relief sought by the NRA is unlawful. *First*,

---

[1] *See* Plaintiff's Second Amended Complaint, ECF No. 203 ("SAC").

[2] *See* ECF No. 188.

[3] *See* ECF No. 48-1 at 4.

1

Defendants' conduct throughout this litigation is wholly incompatible with their belated claim of sovereign immunity. Indeed, Defendants had ample opportunity to raise the issue in their three prior, failed motions to dismiss the NRA's First Amendment claims, and they did not. Although Defendants did assert sovereign immunity regarding certain claims for money damages against DFS, and Cuomo and Vullo in their official capacities, Defendants never asserted sovereign immunity with respect to the NRA's First Amendment claims for declaratory and injunctive relief, nor may Defendants do so now. There is no valid reason—and Defendants offer none—why they should belatedly be permitted to assert this meritless Eleventh Amendment defense.

*Second*, and similarly, Defendants argue that the Eleventh Amendment bars claims against Cuomo in his official capacity because he is not "person" within the meaning of Section 1983. But as Cuomo knows (and ignores), claims like the NRA's, which seek prospective declaratory and injunctive relief to remedy ongoing federal constitutional violations, fall squarely within the *Ex parte Young* exception to sovereign immunity.[4] Indeed, this likely explains Cuomo's failure to assert this argument in any of Defendants' previous motions to dismiss—an omission which, standing alone, would suffice to waive even a valid defense.

Finally, Defendants newly argue that the NRA's request for declaratory and injunctive relief is unlawful because it relates to conduct Defendants have already committed, robbing this Court of independent jurisdiction under the Declaratory Judgment Act. But as Defendants know, (and the NRA's injunctive-relief claims reflect), Defendants' constitutional violations remain ongoing. Indeed, just before the NRA moved to amend, Defendants issued another harassing subpoena to an NRA life and health insurance provider, AGIA.[5] After the NRA moved to amend,

---

[4] *See* discussion *infra* at III(B).

[5] *See* SAC at 79.

2

DFS commenced an unconstitutional enforcement proceeding against the NRA, which the NRA has alleged constitutes additional selective enforcement and retaliation.[6]  The Court need not, and should not, close its doors to the NRA's injunctive and declaratory relief claims merely because certain constitutional injuries have already occurred where, as here, others remain ongoing. Moreover, the mere fact that there are no more federal claims against DFS does not warrant dismissal of the state law claims.  The NRA spent two years,  and substantial money and effort preparing its claims and if the Court declines to exercise supplemental jurisdiction over the state law claims, the NRA would have to re-file those claims in State court, which would waste judicial resources.

Accordingly, the Court should deny Defendants' motion to dismiss.

## II.
## LEGAL STANDARD

On a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[7]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[8]  Because a motion to dismiss tests only the legal sufficiency of a plaintiff's claims, inquiry into their substantive merits—that is, whether the facts pleaded are actually true—is inappropriate.[9]  Thus, a claim may not be dismissed where the facts

---

[6] *See* ECF 176-1 at pp. 15-19

[7] *See Nat'l Rifle Ass'n of Am. v. Cuomo*, 350 F. Supp. 3d 94, 104 (N.D.N.Y. 2018) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted)).

[8] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[9] *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citing *Global Network Commc'ns, Inc. v. N.Y.C.*, 458 F.3d 150, 155 (2d Cir. 2006)).

3

pleaded, taken as true and accompanied by every reasonable inference in plaintiff's favor, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

### III.

### ARGUMENTS AND AUTHORITIES

**A.    Defendants Waived Any Eleventh Amendment Immunity.**

"A state's immunity from suit is not absolute; a state may consent to suit in federal court."[11] Courts have held that a state may also waive its Eleventh Amendment immunity through conduct and have inferred a waiver when a state has made a general appearance in federal court.[12] "[T]here is no valid reason why a party should belatedly be permitted to assert Eleventh Amendment immunity. A party knows whether it purports to be an "arm of the state," and is capable of disclosing early in the proceedings whether it objects to having the matter heard in federal court … Requiring the prompt assertion of an Eleventh Amendment defense also minimizes the opportunity for improper manipulation of the judicial process."[13]  Further, "a state may waive its

---

[10] *See Sassi v. Dutchess Cty.*, 9:16-cv-1450, 2017 WL 4773320, *3 (N.D.N.Y. Oct. 20, 2017).

[11] *See United Specialty Ins. Co. v. Jonak*, 756 F. App'x 766, 767 (9th Cir. 2019) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675, 119 S. Ct. 2219, 144 L.Ed.2d 605 (1999)); *see also Hankins v. Finnel*, 964 F.2d 853, 856 (8th Cir. 1992) ("the Eleventh Amendment bar is not absolute.") (citing *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S. Ct. 1868, 1872, 109 L.Ed.2d 264 (1990)).

[12] *See Hankins*, 964 F.2d 853, 856 (recognizing the possibility of waiver through an appearance and defense on the merits) (citing *Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir.1984), *Sosna v. Iowa*, 419 U.S. 393, 396 n. 2, 95 S. Ct. 553, 555 n. 2, 42 L.Ed.2d 532 (1975), *Clark v. Barnard,* 108 U.S. 436, 447-48, 2 S. Ct. 878, 882-84, 27 L. Ed. 780 (1883) and *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Authority,* 744 F.2d 880 (1st Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S. Ct. 965, 83 L.Ed.2d 970 (1985)); *see also 995 Fifth Ave. Assoc., L.P. v. New York State Dep't of Taxation and Fin.,* 963 F.2d 503, 507–08 (2d Cir.1992) (holding New York's immunity to be waived through its participation in the lawsuit); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365 (3d Cir. 1997), aff'd, 527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 613, 122 S. Ct. 1640, 1641, 152 L. Ed. 2d 806 (2002) ("This Court has established the general principle that a State's voluntary appearance in federal court amounts to a waiver of its Eleventh Amendment immunity").

[13] *See United Specialty Ins. Co. v. Jonak*, 756 F. App'x 766, 767 (9th Cir. 2019) (finding that the State of Oregon waived its Eleventh Amendment immunity because the State's affirmative conduct was wholly incompatible

Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity."[14]

Here, Defendants' conduct throughout the past two years is clearly incompatible with an intent to preserve any sovereign immunity. Indeed, Defendants filed three motions to dismiss the NRA's Complaint, First and Second Amended Complaints and opposed the NRA's motion to amend its First Amended Complaint.[15] They asserted various kinds of immunities without ever asserting their Eleventh Amendment immunity with respect to the NRA's request for declaratory and injunctive relief. In their third motion to dismiss under Fed. R. Civ. 12(c), Defendants alleged that the NRA's claims for money damages were barred by the Eleventh Amendment but failed to raise that same argument for the NRA's request for declaratory and injunctive relief. In its January 8, 2019 opposition to that motion, the NRA specifically raised the issue stating that "[a]t this stage, the NRA agrees to withdraw its Section 1983 claims under Counts 1, 2, and 4 against DFS. Should DFS additionally choose not to waive sovereign immunity with respect to the pending state law claims against it, the NRA will agree to withdraw those claims and will promptly re-file its claims … in the appropriate State court."[16] Defendants completely ignored that statement in their reply.[17] In addition, in response to Defendants' request for dismissal of the entirety of its Section 1983 claims, the NRA argued that "Defendants ignore that each of those claims include both federal

---

with a claim of sovereign immunity, and its attempt to assert immunity came too late) (quoting *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 757–58 (9th Cir. 1999)).

[14] *See id.* (citing *Fordyce v. City of Seattle*, 55 F.3d 436, 441 (9th Cir. 1995) (holding that a state "waive[s] its] Eleventh Amendment protection by voluntarily appearing and defending on the merits" if the state "has been adequately notified of the pendency of the suit and of the particular matters at issue")).

[15] *See* ECF Nos. 27, 40, 63, 162.

[16] *See* ECF Nos. 69 at 24-25.

[17] *See* ECF No. 71.

5

constitutional violations under Section 1983 and state constitutional violations."[18] Defendants did not respond to this argument either.[19]

Further, the Court has repeatedly sustained the NRA's claims under the New York Constitution against *all* Defendants and Section 1983 claims against Cuomo and Vullo.[20] Defendants offer no justification whatsoever for waiting more than *two* years after the NRA filed this lawsuit and over a year after the NRA raised the immunity issue as to the state claims, to assert their sovereign immunity. Defendants' conduct throughout this litigation is "wholly incompatible with [their] claim of sovereign immunity, and [their] attempt to assert immunity came too late."[21]

**B.  The Eleventh Amendment Does Not Bar the NRA's Claims Under Section 1983 Against Cuomo In His Official Capacity.**

Cuomo argues that the NRA's First Amendment claims against him in his official capacity must be dismissed because he is not a "person" under Section 1983. At the outset, as explained above, Cuomo waived his sovereign immunity. However, as Cuomo's own case notes, "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"[22] As such, under the well-known exception to the Eleventh

---

[18] *See* ECF Nos. 69 at 24.

[19] *See* ECF No. 71.

[20] *See* ECF No. 56 (denying Defendants' motion to dismiss the NRA's First Amendment claims in Counts One and Two of the First Amended Complaint under Section 1983 and the New York Constitution); *see also* ECF No. 112 (dismissing only the NRA's claims under 1983 against DFS and the NRA's claims for money damages against DFS, and against Cuomo and Vullo in their official capacities).

[21] *See United Specialty Ins. Co. v. Jonak*, 756 F. App'x 766, 767 (9th Cir. 2019) (finding that the State of Orego waived its Eleventh Amendment immunity because the State's affirmative conduct was wholly incompatible with a claim of sovereign immunity, and its attempt to assert immunity came too late) (quoting *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 757-58 (9th Cir. 1999)).

[22] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) (quoting *Kentucky v. Graham,* 473 U.S., at 167, n. 14, 105 S. Ct., at 3106, n. 14 and *Ex parte Young,* 209 U.S. 123, 159-160, 28 S. Ct. 441, 453-454, 52 L. Ed. 714 (1908)).

Amendment immunity first set forth in *Ex parte Young*, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law."[23]  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"[24]

Cuomo asserts that the NRA's claims for injunctive and declaratory relief requested do not respond to any ongoing violation of federal law, thereby triggering the *Ex parte Young* exception to immunity.[25]  However, the NRA specifically alleges that "Defendants' concerted efforts to stifle the NRA's freedom of speech caused financial institutions doing business with the NRA to end their business relationships, or explore such action, due to fear of monetary sanctions or expensive public investigations."[26]  The NRA further asserts that in addition to the damages it suffered as a result of Defendants' actions for the purpose of suppressing the NRA's pro-Second Amendment viewpoint, "absent an injunction against Defendants, the NRA will suffer irrecoverable loss and irreparable harm if it is unable to acquire insurance or other banking services due to Defendants' actions."[27]  The NRA therefore seeks injunctive relief as a remedy for Defendants' alleged

---

[23] *See Rowland*, 494 F.3d 71 (holding that an injunction against the former Governor of the State of Connecticut and former Secretary of the Office of Policy & Management of the State of Connecticut prohibiting retaliation was not barred by sovereign immunity) (quoting *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)); *see also Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990) (holding that "a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'").

[24] *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed.2d 438 (1997)).

[25] *See* ECF Nos. 210-1 at 14.

[26] *See* SAC at 93, 102.

[27] *See Id.* at 97, 107.

retaliation and implicit censorship campaign against the NRA in violation of its First Amendment and Fourteenth Amendment rights.[28] Specifically, the NRA seeks an injunction ordering DFS, the Governor and the current Superintendent of DFS to cease and refrain "from engaging in any conduct or activity which has the purpose or effect of interfering with the NRA's exercise of the rights afforded to it under the First and Second Amendment to the United States Constitution," and "from engaging with, terminating, or diminishing any of the NRA's contracts and/or business relationships with any organizations."[29] "The prohibition against retaliation … would prevent [the NRA's] alleged ongoing injury from occurring again in the future." [30] This is quintessentially "prospective relief" under *Ex parte* Young. Thus, sovereign immunity does not bar the prospective injunctive relief sought by the NRA.[31]

Cuomo's authorities in support of sovereign immunity are inapposite. In *Komlosi* and *Trotman*, the plaintiffs brought claims under Section 1983 seeking money damages,[32] which do not fall within the *Ex parte Young* exception.[33] Likewise, Cuomo's reliance on *Jackson* is misplaced.[34] There, the Second Circuit dismissed the plaintiff's claims against the State Department of Health, a state agency, on sovereign immunity grounds. Here, the NRA has sued

---

[28] *See id.* at pp. 41-42.

[29] *See id.*

[30] *See State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 98 (2d Cir. 2007).

[31] *See id.*

[32] *See Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810 (2d Cir. 1995) (holding that Eleventh Amendment barred former employee's claim under Section 1983 against New York Office of Mental Retardation and Developmental Disabilities for attorney's fees and damages); *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35 (2d Cir. 1977) (holding that a civil rights action brought against the Palisades Interstate Park Commission and three officers thereof seeking damages predicated on false arrest, illegal search and seizure, and pendent state claims was in reality suit against the state of New York for purposes of the Eleventh Amendment immunity).

[33] *See Verizon*, 535 U.S. 635, 645.

[34] *See Jackson v. Connecticut Dep't of Pub. Health*, 795 F. App'x 64, 65 (2d Cir. 2020).

Cuomo in his official capacity seeking *prospective* declaratory and injunctive relief. Such action is not treated as an action against the State under the *Ex parte Young* exception.[35] The facts in *Treistman* are likewise distinguishable.[36] There, the Second Circuit held that the complaint sought declaratory and injunctive relief relating to a court proceeding that had concluded and any injunctive relief would therefore have been retrospective. Here, on the other hand, the NRA seeks *prospective* declaratory and injunctive relief to prevent Defendants from retaliating against the NRA and therefore prevent the NRA from suffering more damages in the future.[37] The NRA's claims against Cuomo in his official capacity are therefore not barred by the Eleventh Amendment.

### C. The Remedies Sought By The NRA Are Proper.

#### 1. The NRA's request for injunctive relief is proper.

The NRA asks the Court to issue a preliminary and permanent injunction ordering DFS, Cuomo (in his official capacity) and the current Superintendent of DFS (in her/his official capacity) "from engaging in any conduct or activity which has the purpose or effect of interfering with the NRA's exercise of the rights afforded to it under the First and Second Amendment to the United States Constitution," and "from engaging with, terminating, or diminishing any of the NRA's contracts and/or business relationships with any organizations."[38]

Defendants erroneously claim this is an impermissible "obey the law" injunction. They cite *Elend* for the proposition that "obey-the-law" injunctions are unenforceable in the context of

---

[35] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71.

[36] *See Treistman v. McGinty*, 804 F. App'x 98, (Mem)–99 (2d Cir. 2020).

[37] *See Rowland*, 494 F.3d 71, 98.

[38] *See id.*

9

First Amendment claims.[39] The facts in *Elend* are a far cry from those in the instant case: there, a group of political protestors sought an injunction protecting their free speech at future rallies. The protesters offered as a preliminary injunction, "the Secret Service shall ensure there's no violation of the First Amendment."[40] The Eleventh Circuit found that that injunction "would merely command the Secret Service to obey the law."[41] Here, in contrast, the injunction sought sets forth specific acts that must be enjoined and is tailored to Defendants' alleged First Amendment violations.[42]

*Dublino* is likewise distinguishable. The court there denied the plaintiff's request for injunctive relief because the plaintiff had not explained how his requested relief bore any relationship to his retaliation claims, which related to discrete events that occurred two months before the plaintiff filed his motion.[43] Here, on the other hand, the injunctive relief sought directly relates to the NRA's First Amendment claims and the NRA alleges an ongoing injury resulting from Defendants' continued violation of the NRA's First Amendment rights. Specifically, the Second Amended Complaint alleges that "[a]bsent relief, Defendants' blacklisting campaign will continue to damage the NRA and its members, as well as endanger the free speech and association rights guaranteed by the constitutions of the United States and the State of New York."[44]

---

[39] *See Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006).

[40] *See id.*

[41] *See id.*

[42] *See City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 145 (2d Cir. 2011) (holding that injunctive relief should be "narrowly tailored to fit specific legal violations) (quoting *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 50 (2d Cir.1996)); *see also Wood v. Prudential Ret. Ins. & Annuity Co*., No. 3:15-CV-1785 (VLB), 2017 WL 3381007, at *5 (D. Conn. Aug. 4, 2017) (citing *Mickalis*, 645 F.3d 114, 144) ("while an injunction generally is not needed where its sole command is to conform future behavior to the law, courts can and do issue injunctions with specific instructions as to *how* a defendant may comply with the law.") (emphasis original).

[43] *See Dublino v. McCarthy*, No. 919CV0381GLSDJS, 2019 WL 2053829, at *20 (N.D.N.Y. May 9, 2019).

[44] *See id.* at pp. 2-3.

Defendants' "overall messaging to financial institutions remained unaffected"[45] and their "concerted efforts to stifle the NRA's freedom of speech and to retaliate against the NRA based on its viewpoints are causing other insurance, banking, and financial institutions doing business with the NRA to rethink their mutually beneficial business relationships with the NRA for fear of monetary sanctions or expensive public investigations."[46] Further, "nearly every carrier has indicated that it fears transacting with the NRA specifically in light of DFS's actions against Lockton, Chubb, and Lloyd's."[47] Because of Defendants' threats, "[m]ultiple banks withdrew their bids in the NRA's RFP process following the issuance of the April 2018 Letters, based on concerns that any involvement with the NRA—even providing the organization with basic depository services—would expose them to regulatory reprisals."[48]

These alleged facts clearly demonstrate an ongoing injury which would be prevented from occurring again in the future by the injunction sought—a prohibition against retaliation and censorship campaign. Second Circuit courts have held such relief proper to remedy retaliatory conduct. For instance, in *Seitz*, the plaintiff alleged that "[i]t is clear that [Gergen] will continue to harass, intimidate[,] and retaliate against [her,] ... continue to block [her] attempts to increase [her earnings]...."[49] As relief, the plaintiff sought an injunction "preventing defendant from engaging in any harassing and/or retaliatory activities." The court held that "[su]ch relief is properly characterized as prospective and may be sought … to the extent this relief would remedy

---

[45] *See id.* at 61.

[46] *See id.* at 80.

[47] *See id.* at 81.

[48] *See id.* at 82.

[49] *Seitz v. New York State*, No. 218CV4149PKCLB, 2019 WL 4805257, at *7 (E.D.N.Y. Sept. 30, 2019).

the ongoing violations with respect to any FMLA, ADEA, ADA, or § 1983 claim that Plaintiff sufficiently alleges."[50]

### 2. **The NRA's request for declaratory relief is proper.**

DFS argues for the first time that the NRA's request for declaratory relief must be dismissed because the NRA withdrew its claims under Section 1983 against DFS and the claims under the New York Constitution against DFS are barred by the Eleventh Amendment. These arguments fail for several reasons.

First, as explained above, Defendants, including DFS, have waived their Eleventh Amendment immunity.

Second, the court does not lack jurisdiction by the mere fact that there are no more federal claims against DFS. Indeed, "[w]hen a district court has "dismissed all claims over which it had original jurisdiction," then "the district court may, at its discretion, exercise supplemental jurisdiction over state law claims ... [even though] it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction."[51] Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values."[52] "[T]he discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors ...."[53] After dismissing all

---

[50] *See id.* (citing *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 98 (2d Cir. 2007) ("The prohibition against retaliation sought by plaintiffs, for example, would prevent this alleged ongoing injury from occurring again in the future.")).

[51] *Morton v. Cty. of Erie*, 335 F. Supp. 3d 449, 462 (W.D.N.Y. 2018), *aff'd*, 796 F. App'x 40 (2d Cir. 2019) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

[52] *See id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed.2d 720). (1988)).

[53] *See id.* (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)); *see also Ackerman v. Nat'l Prop. Analysts, Inc.,* 1992 WL 240605 at *13, 1992 U.S. Dist. LEXIS 13502 at 39 (S.D.N.Y. 1992) (retaining state claims

federal claims, the district court must "reassess its jurisdiction over the case by considering ... judicial economy, convenience, fairness, and comity."[54] Therefore, "[i]f ... the dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary."[55]

Here, although the NRA withdrew its claims against DFS over which the Court had original jurisdiction—the NRA's claims under Section 1983—judicial economy and fairness weigh against dismissing the supplemental state law claims under the New York Constitution.  Indeed, after *two* years during which Defendants have repeatedly attempted to dismiss the NRA's First Amendment claims, DFS now asks the Court to dismiss the NRA's state law claims raising arguments it could have raised in its three previous motions.  In addition, discovery is ongoing, and the NRA has expended substantial time, money and efforts in preparing its claims, including its state law claims. If the Court declines to exercise supplemental jurisdiction, the NRA would have to file its state claims in State court, "which would waste judicial resources, potentially lead to contradictory results and contradict Congress' desire for uniformity..."[56]  Therefore, the circumstances of this case weigh in favor of exercising supplement jurisdiction over the NRA's state claims.

---

after 12(b)(6) dismissal of federal claims); *Philan Ins. Ltd. v. Frank B. Hall & Co., Inc.,* 786 F. Supp. 345, 347 (S.D.N.Y.1992) (supplemental jurisdiction appropriate even when federal claims dismissed before trial); *Philatelic Found. v. Kaplan,* 647 F. Supp. 1344, 1348 (S.D.N.Y.1986) (exercising pendent jurisdiction after granting motion to dismiss last federal claim before trial).

[54] *See id.* (quoting *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (exercise of jurisdiction after dismissal of federal claims was not erroneous)).

[55] *See id.* (quoting *Purgess*, 33 F.3d at 138 (internal quotation marks omitted)).

[56] *See In re Sept. 11 Litig.*, 906 F. Supp. 2d 295, 302 (S.D.N.Y. 2012), *aff'd sub nom. World Trade Ctr. Properties LLC v. QBE Int'l Ins. Ltd.*, 627 F. App'x 10 (2d Cir. 2015) (exercising supplemental jurisdiction over claim for declaratory judgment) (citing *In re Sept. 11 Liab. Ins. Coverage Cases,* 333 F. Supp.2d 111, 117 (S.D.N.Y. 2004)).

Finally, DFS relies on *Ward* for the proposition that the NRA's request for declaratory relief is barred by the Eleventh Amendment.[57] However, the facts in that case are distinguishable. There, the court held that declaratory relief was barred by the Eleventh Amendment because the plaintiff had not claimed any continuing violation of federal law. Here, as explained above, the NRA has alleged ongoing injuries resulting from Defendants' continued violations of federal law.

## IV.
## CONCLUSION

For the foregoing reasons, the NRA respectfully requests that this Court deny Defendants' Motion in its entirety and grant the NRA all appropriate relief.

Dated:  July 13, 2020                                Respectfully submitted,

By: /s/ Sarah B. Rogers

William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Sarah B. Rogers (Bar No. 700207)
sbr@brewerattorneys.com

**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

**ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

---

[57] *See Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).

## CERTIFICATE OF SERVICE

I certify that on July 13, 2020, I caused a copy of the foregoing to be served upon the following counsel electronically through the ECF system:

William A. Scott
Assistant Attorney General, Of Counsel
New York State Attorney General's Office
Albany Office, The Capitol
Albany, New York 12224-0341
Email:  William.Scott@ag.ny.com

Debra L. Greenberger
EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue
New York, New York 10020
Email:  dgreenberger@ecbalaw.com

*/s/ Sarah B. Rogers*
Sarah B. Rogers