UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NATIONAL RIFLE ASSOCIATION OF AMERICA,

                Plaintiff,

   v.

ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,

                Defendants.

Case No. 18 Civ. 566 (TJM)(CFH)


**DEFENDANT VULLO'S REPLY IN FURTHER SUPPORT OF
APPEAL OF THE GRANT OF PLAINTIFF'S MOTION TO AMEND AND
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**


Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Defendant Maria Vullo*

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................... ii – iv

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT.................................................................................................................................2

      I.      THE NRA DID NOT ESTABLISH A BASIS TO AMEND ..................................3

      II.     THE NRA CONCEDES IT DID NOT PLEAD THE FACTS
            THIS COURT REQUIRED UPON DISMISSING
            THE SELECTIVE PROSECUTION CLAIM ..........................................................3

      III.    ABSOLUTE IMMUNITY REQUIRES DISMISSAL OF
            THE NRA'S SELECTIVE ENFORCEMENT CLAIM ..........................................7

      IV.    QUALIFIED IMMUNITY BARS THE SELECTIVE
            ENFORCEMENT CLAIM ....................................................................................11

      V.     QUALIFIED IMMUNITY ALSO BARS
            THE FIRST AMENDMENT CLAIM ...................................................................12

CONCLUSION............................................................................................................................13

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Abel v. Morabito*,
  No. 04 Civ. 07284, 2009 WL 321007 (S.D.N.Y. Feb. 10, 2009) ........................................ 6

*Anderson v. Creighton*,
  483 U.S. 635 (1987) .......................................................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 1, 7, 11

*Bernstein v. Village of Wesley Hills*,
  95 F. Supp. 3d 547 (S.D.N.Y. 2015) ................................................................................... 6

*Bost v. Acevedo*,
  No. 9:12-CV-1548, 2015 WL 1201873 (N.D.N.Y. Mar. 16, 2015) .................................... 7

*Briscoe v. LaHue*,
  460 U.S. 325 (1983) .......................................................................................................... 11

*Burns* v. *Reed*,
  500 U.S. 478 (1991) ............................................................................................................ 8

*Butz v. Economou*,
  438 U.S. 478 (1978) ...................................................................................................... 9, 10

*Colon v. Coughlin*,
  58 F.3d 865 (2d Cir.1995) ................................................................................................... 7

*DiBlasio v. Novello*,
  344 F.3d 292 (2d Cir. 2003) ................................................................................................ 9

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .................................................................................................... 10, 13

*Hunter v. Bryant*,
  502 U.S. 224 (1991) .......................................................................................................... 10

*Knowlton v. Shaw*,
  704 F.3d 1 (1st Cir. 2013) ............................................................................................. 8, 10

*LaTrieste Restaurant v. Village of Port Chester*,
  188 F.3d 65 (2d Cir. 1999) .................................................................................................. 6

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006) ..................................................................................... 8, 9, 10

*Mordukhaev v. Daus*,
 457 F. App'x 16 (2d Cir. 2012) .................................................................................. 9

*Pabon v. Wright*,
 459 F.3d 241 (2d Cir. 2006).................................................................................... 11

*Pinaud v. County of Suffolk*,
 52 F.3d 1139 (2d Cir. 1995)..................................................................................... 8

*Rubin v. Valicenti Advisory Servs., Inc.*,
 471 F. Supp. 2d 329 (W.D.N.Y. 2007) ..................................................................... 2

*Rudow v. City of New York*,
 822 F.2d 324 (2d Cir. 1987).................................................................................... 10

*Sash v. United States*,
 674 F. Supp. 2d 531 (S.D.N.Y. 2009)....................................................................... 7

*Scott v. Fischer*,
 616 F.3d 100 (2d Cir. 2010).................................................................................... 11

*Spiegel v. Adirondack Park Agency*,
 662 F. Supp. 2d 243 (N.D.N.Y. 2009) ...................................................................... 5

*Sprecher v. Graber*,
 716 F.2d 968 (2d Cir. 1983).................................................................................... 10

*Stetz v. Reeher Enterprises, Inc.*,
 70 F. Supp. 2d 119 (N.D.N.Y. 1999) ........................................................................ 2

*Tower Properties LLC v. Village of Highland Falls*,
 No. 14-CV-04502, 2015 WL 4124499 (S.D.N.Y. July 7, 2015) .............................. 6

*Uppal v. N.Y. State Dept. of Health*,
 No. 16-CV-3038, 2019 WL 4735385 (S.D.N.Y. Sept. 27, 2019).............................. 9

*Wood v. Moss*,
 572 U.S. 744 (2014)................................................................................................. 10

*Young v. Selsky*,
 41 F.3d 47 (2d Cir. 1994) .......................................................................................... 9

*Zieper v. Metzinger*,
 474 F.3d 60 (2d Cir. 2007)...................................................................................... 12

**Statutes & Rules**

23 NYCRR § 2.10........................................................................................................... 9

23 NYCRR § 2.2(c) .................................................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 2

Fed. R. Civ. P. 72(a) ............................................................................................................... 2

Insurance Law § 2116 ............................................................................................................. 4

Insurance Law § 2122(a)(1) .................................................................................................... 4

Insurance Law § 2324(a) ........................................................................................................ 4

N.Y. Fin. Servs. § 305 ............................................................................................................. 9

N.Y. Fin. Servs. § 305(b) ........................................................................................................ 9

N.Y. Fin. Servs. § 308 ............................................................................................................. 9

## PRELIMINARY STATEMENT

The NRA's opposition demonstrates that it has no more basis today to bring a selective prosecution claim against Ms. Vullo than it did when this Court last dismissed this claim. Indeed, the NRA concedes it cannot comply with this Court's order that it must allege Ms. Vullo's specific knowledge of the Lockton affinity violations this Court held were valid comparators, as Ms. Vullo had no such knowledge. On its "second bite" at a selective enforcement theory, the NRA changes its theory—*again*. The NRA's argument is now about a different company, claiming that evidence involving Lloyd's can somehow plug the "comparator" hole identified by this Court in Plaintiff's selective enforcement theory as to Lockton. It simply does not work. The SAC pleads *no specific* violations that Ms. Vullo supposedly knew about and ignored. The NRA's conclusory allegations amount to nothing more than "everyone does it"; it states no specific allegations that Ms. Vullo knew and failed to prosecute violations by a valid comparator. The *only* Lloyd's violations Ms. Vullo prosecuted are the very violations for which the NRA admits there is no non-NRA-related comparator: selling an illegal firearms-related insurance policy. The SAC fails to plead a valid selective prosecution claim.

What is more, because entering into consent orders is classic "prosecutorial activity," the NRA cannot overcome Ms. Vullo's absolute prosecutorial immunity on this claim. And its wholly novel selective prosecution claim—though Ms. Vullo never actually prosecuted the NRA, and the entities she did prosecute *admitted* liability—is also barred by qualified immunity.

More than fourteen months after dismissing the NRA's initial selective enforcement claim, the NRA *still* has not done what the Court demanded of it, which is to identify a valid, non-NRA-related comparator upon which a selective enforcement claim can rest. As *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009), holds, in a case against a high official, motive cannot be imputed; it must be pled and shown. Here, the NRA's effort to impute to Ms. Vullo the

"knowledge" of a vast market marketplace, and of a 1400+-person state agency must be rejected. As DFS Superintendent, Ms. Vullo properly prosecuted significant violations of the Insurance Law by insurance entities who all *admitted* the misconduct. There being no valid comparator to assess, other conduct that was *not* prosecuted is simply beside the point.

The NRA's First Amendment claim fares no better: The NRA never even engages with Ms. Vullo's analysis that qualified immunity protects government officials engaging in protected government speech, where, as here, there is no "clearly established law" indicating that the conduct was unlawful. Particularly where, as this Court has recognized, there is a "fine line" between permissible and impermissible government speech, qualified immunity applies.

The NRA's complaint as to Ms. Vullo should be dismissed in its entirety.

## ARGUMENT

On this Rule 12(b)(6) motion, the Court should resolve the legal issues squarely presented before it, including the issues of absolute and qualified immunity, and the NRA's failure to satisfy this Court's May 2019 decision dismissing the NRA's prior selective prosecution claim. Contrary to the NRA's claim, this Court should not simply accept the magistrate judge's decision that the NRA properly alleged (albeit "sparse[ly]," Dkt. 202 at 27) Ms. Vullo's knowledge of comparators. Even if framed as a review of the magistrate judge's decision, a decision that is "contrary to law" requires reversal under any standard of review.[1] *Stetz v. Reeher Enterprises, Inc.*, 70 F. Supp. 2d 119, 121 (N.D.N.Y. 1999) (McAvoy, C.J.) (reversing magistrate judge's order allowing amendment due to futility of amendment). In any event, this Court can and must assess the validity of the NRA's amended pleadings independently, as the Rule 12(b)(6) motion was not before the magistrate judge.

---

[1] It remains an open question whether a motion to amend a pleading is a non-dispositive decision warranting Rule 72(a) "clear error" review. *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007).

2

## I.     THE NRA DID NOT ESTABLISH A BASIS TO AMEND

The NRA should not have been allowed to belatedly amend. The NRA attached certain documents it obtained from Lloyd's to its SAC as "proof" of Ms. Vullo's purported knowledge of comparators and, inferentially, of her alleged bias against the NRA. They show nothing of the kind. The Lloyd's documents make no mention of Ms. Vullo at all and do not indicate that she was aware of comparators that she declined to prosecute. Effectively admitting that the documents alone provide an insufficient substantive basis for its new allegations against Ms. Vullo, the NRA instead claims that an unnamed "consulting expert" somehow divined Ms. Vullo's state of mind from these same documents—although, citing the work-product doctrine, it declines to reveal how. NRA Br. at 6-7. This too is nonsense: No "expert" can divine Ms. Vullo's knowledge—and there is no evidence of her knowledge of any so-called comparators. *See* Dkt. 112 at 8 (requiring NRA to plead "Vullo knew of non-firearm-related Insurance Law violations by the comparators"). The NRA was required to establish a basis for its untimely amendment. It has none. Its amendment was in bad faith and should not have been permitted.

## II.    THE NRA CONCEDES IT DID NOT PLEAD THE FACTS THIS COURT REQUIRED UPON DISMISSING THE SELECTIVE PROSECUTION CLAIM

As this Court recently noted in its decision denying the NRA's preliminary injunction motion, the NRA's selective enforcement claim alleges that "Supt. Vullo violated the NRA's equal protection rights by *failing* to prosecute affinity-insurance programs similarly situated to the NRA-related programs addressed in the Consent Orders entered by Lockton, Chubb, and Lloyd's," and "the core issue" is whether "Supt. Vullo was aware of these similarly situated programs yet failed to prosecute them." Dkt. 218 at 19, 20. Yet the SAC *still* does not identify a single non-NRA affinity program which Vullo knew about and declined to prosecute. This alone requires dismissal of the NRA's repeat attempt to replead this failed claim.

3

The NRA admits that it did not plead that "Supt. Vullo had knowledge of the specific violations identified in paragraph 59 of the Amended Complaint," as this Court required. Dkt. 112 at 9. To the contrary, the NRA's own pleadings *admit*, SAC ¶ 78 & Ex. J, that Ms. Vullo *did* enforce against Lockton for its *non-NRA* affinity-insurance programs for "violat[ing] certain non-firearm-related Insurance Law regulations," SAC ¶ 7. The NRA instead conjures a *new* theory based only on its vague (and false) allegation in paragraph 21 that Ms. Vullo allegedly knew of "technical regulatory infractions plaguing the affinity-insurance marketplace." SAC ¶ 21. Unlike paragraph 59 which detailed specific statutory violations (Insurance Law §§ 2122(a)(1), 2324(a), and 2116) and specific affinity programs (AOAExcel, Moose, the VFW, the PPA)— paragraph 21 speaks in broad generalities, without listing any specific violations or affinity programs, but rather the entire "marketplace." The NRA cannot possibly satisfy this Court's command or Supreme Court caselaw requiring specifics by painting with broad (and vague) brushstrokes.

It was precisely the details that the SAC lacks that this Court held were essential to finding the entities similarly-situated: "The Amended Complaint details several affinity groups operating in New York whose insurance programs allegedly resemble those of the NRA, in some instances containing language identical to the allegedly-violative language associated with the NRA programs, that were not targeted by the DFS." Dkt. 112 at 6. When one looks at the SAC, one asks: which affinity programs, specifically, did Ms. Vullo know about but did *not* enforce against? And how can this Court determine whether the "affinity-insurance marketplace," SAC ¶ 21, in its entirety, is similarly situated to the NRA such that a valid equal protection claim can properly be alleged? The SAC offers no answers.[2]

---

[2] Having not timely sought reconsideration, the NRA improperly ignores this Court's holding that it must plead Ms. Vullo's knowledge "*when* DFS commenced its investigation." Dkt. 112 at 11 (emphasis added). But in *Spiegel v.*

The NRA ignores this Court's injunction that it plead Ms. Vullo's knowledge of *Lockton's* affinity violations—clearly, it cannot make such a claim consistent with Rule 11—and instead asserts generally that Superintendent Vullo "made clear" that "*Lloyd's* could avoid liability for infractions relating to other, similarly situated insurance policies, so long as it aided DFS's campaign against gun groups." SAC ¶ 69. Where are the *factual* allegations that support that Ms. Vullo knew of any specific affinity group that had committed similar infractions? They are not in the SAC—and they do not exist. If they did, the NRA would have pled them. Lacking *any* allegation of any *specific* violation that Ms. Vullo "consciously declined" to enforce, the SAC's selective enforcement claim is more deficient—*far* more deficient—that the one this Court dismissed in May 2019. Dkt. 112 at 8. In the end, the NRA leaves this Court with a baseless hodgepodge of conclusory allegations, none of which meets the standard.

The NRA's effort to use conclusory allegations involving *Lloyd's* to plug a hole in its selective enforcement claim left with respect to *Lockton* also fails because of the stark differences between the two entities and their conduct, rendering the claim further implausible. Lockton is an insurance broker—not an insurer—and, as such, it was found responsible for violating the so-called "Additional Provisions," which involve *broker-related* conduct. SAC Ex. D (first Lockton consent order). Lloyd's, by contrast, is an *insurer*, not a broker—and it had committed violations related to the insurance policy itself, namely that the policy coverage for the use of a firearm was illegal. *Id.* Ex. I (Lloyd's consent order). Lloyd's did not violate the "Additional Provisions" because it could not: As the insurer, it had nothing to do with administering the affinity program. *Id.* That was the business of the broker Lockton. The NRA

---

*Adirondack Park Agency*, which the NRA cites, the defendant never argued that the latter in time complaint made the comparator not similarly situated. 662 F. Supp. 2d 243, 254 (N.D.N.Y. 2009) (dismissing selective enforcement claim). Here, the NRA's bare-bones allegations speak only to Ms. Vullo's knowledge at a point when DFS was well into its investigation, further establishing that there were no similarly-situated entities not enforced against.

5

seeks to elide these crucial differences, but they are central to both the consent orders themselves and the respective roles that Lockton and Lloyd's play in the insurance business in New York. As such, the NRA cannot replace Lloyd's for Lockton under its selective prosecution theory about the Additional Provisions—even were its allegations about Ms. Vullo's knowledge specific enough. At bottom, all the NRA has is the prosecution of Lloyd's for admittedly illegal firearms insurance policies through a consent order involving admitted violations—as to which there is no comparator to the NRA.

The NRA cannot save its failure to plead Ms. Vullo's specific knowledge with a conclusory allegation of "see no evil"—a claim for which, in any event, Ms. Vullo is entitled to qualified immunity, *see* Dkt. 211-1 ("Op. Br.") at 8. Since the Circuit's first mention of the theoretical *possibility* of a "see-no-evil" theory, *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 n.1 (2d Cir. 1999), nearly every case squarely has rejected attempts to so plead. *See Bernstein v. Village of Wesley Hills*, 95 F. Supp. 3d 547, 572 n.33 (S.D.N.Y. 2015) (collecting cases). Plaintiff's two cases holding otherwise evidence the exceptional nature of this theory, as in each the villages *admitted to decades of non-enforcement* of similar violations.[3] The NRA has pleaded *no* facts establishing that DFS's enforcement was "unprecedented," and admits that DFS *did* enforce against similar non-NRA violations. Op. Br. at 21; Dkt. 218 at 8 n.5.

Finally, because the NRA has no basis to plead that Ms. Vullo decided to selectively not enforce the law, it makes a last-second assertion that she somehow is subject to a claim of individual liability as a "supervisor," even though she did not know of any specific unenforced violations. This new theory, absent from the SAC, is precluded by Supreme Court precedent. The

---

[3] *Tower Properties LLC v. Village of Highland Falls,* No. 14-CV-04502, 2015 WL 4124499, at *9 (S.D.N.Y. July 7, 2015) (parties agreed that the town had not enforced a curfew ordinance for at least the last forty years); *Abel v. Morabito*, No. 04 Civ. 07284, 2009 WL 321007, at *6 (S.D.N.Y. Feb. 10, 2009) (defendants confirmed under oath that the enforcement was unprecedented in the entire town's collective memory).

6

NRA cites a five-factor test from *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Since *Colon,* the Supreme Court expressly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Iqbal*, 556 U.S. at 676–77. Officials "cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic"; a "subordinate's" alleged purpose is irrelevant. *Id.* at 683. As this Court held, to allege that Ms. Vullo "consciously declined" to enforce against comparators, Dkt. 112 at 11, the NRA must plead that Ms. Vullo *herself* knew of such comparators—not just that others in her large agency may have.[4]

This Court need go no further than its own May 2019 order: The NRA has not pled and cannot plead a specific, valid comparator upon which a selective enforcement claim can rest. The time has come to end the NRA's (harassing) efforts to assert claims against Ms. Vullo that they cannot now, and can never, support.

### III. ABSOLUTE IMMUNITY REQUIRES DISMISSAL OF THE NRA'S SELECTIVE ENFORCEMENT CLAIM

Recognizing that entering into consent orders is classic "prosecutorial activity" entitling Ms. Vullo to absolute immunity, the NRA gamely recasts its failed claim as being based on "selective . . . *investigation*," NRA Br. at 18, even as it admits, as it must, that its selective enforcement claim is premised on DFS's acts of actual enforcement, not on DFS's pre-enforcement investigation: "the date that DFS opened its investigation into the NRA's insurance programs is irrelevant. The relevant date or dates is the date DFS took action against the NRA, or its business partners," NRA Br. at 15. *See infra* at 11 (no clearly established "selective investigation" claim). The only enforcement *action* Ms. Vullo took "against the NRA, or its

---

[4] Whatever the continuing viability of the *Colon* factors after *Iqbal*—a debated question—supervisory liability cannot apply to constitutional claims requiring "discriminatory intent," as a selective enforcement claim requires. *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009), *cited in Bost v. Acevedo*, No. 9:12-CV-1548, 2015 WL 1201873 at *14 n. 5 (N.D.N.Y. Mar. 16, 2015) (McAvoy, J., adopting report and recommendation).

7

business partners" was the execution of the four consent orders with Lockton, Lloyd's, and Chubb.[5] In entering into those four consent orders, Ms. Vullo exercised her prosecutorial authority as head of a state agency charged with enforcing the state's insurance law. For this, she is entitled to absolute immunity. Op. Br. at 19 (citing cases); *see also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (collecting cases applying absolute immunity to "decision whether to commence a prosecution" and "plea bargaining").

The NRA seeks to avoid absolute immunity by claiming that prosecutorial immunity only attaches to "the initiation of a prosecution and the presentation of the government's case," and that Ms. Vullo's conduct here was "investigative." NRA Br. at 17. Binding caselaw holds otherwise. Prosecutorial immunity—distinct from the judicial immunity cases the NRA cites—protects conduct that occurs both before and alongside the judicial phase.[6] A prosecutor's conduct in securing a plea bargain—the direct analogy to a consent order—is not "investigative"; it is quintessentially prosecutorial—a decision to reach a consented-to resolution rather than "commit the state's resources, reputation, and prestige to litigation." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006); *see Knowlton v. Shaw*, 704 F.3d 1, 7–8 (1st Cir. 2013) (in an insurance enforcement proceeding, entering into consent decrees is preparatory to "the initiation of the enforcement proceeding—a proceeding that would have surely followed had no consent agreement been executed" and not "investigative"). This conduct is immune, absolutely.

---

[5] Because it cannot plead sufficient allegations about Ms. Vullo's conduct, the NRA obfuscates by citing obviously irrelevant activity—the AG subpoena and "the institution of an enforcement proceeding against the NRA," NRA Br. at 7—by Ms. Vullo's successor. The magistrate judge properly criticized the NRA for not justifying "how this information supports its efforts to replead its selective enforcement claim against Vullo." Dkt. 202 at 13 n.5. The NRA also included in its SAC (false) allegations about "backroom meetings with Lloyd's," NRA Br. at 17—but no Fourteenth Amendment claim for disparate enforcement can arise from a meeting where no enforcement occurred.

[6] *See Burns* v. *Reed,* 500 U.S. 478, 492 (1991) (immunity protects pre-indictment search warrant application during the investigative stage); *Butz v. Economou,* 438 U.S. 478, 516 (1978) (immunity encompasses "decision to initiate" agency adjudication"); *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (immunity encompasses "actions preliminary to the initiation of a prosecution").

The NRA's separate attempt to claim that a DFS Superintendent's conduct, no matter how prosecutorial, does not warrant immunity also fails. As in *Butz*, an entity charged by DFS has ample statutory due process rights in a DFS hearing, as set forth in the applicable statutes and regulations and SAPA. *See* Op. Br. at 15 (citing N.Y. Fin. Servs. §§ 305, 308; 23 NYCRR § 2.10; 23 NYCRR § 2.2(c)). Had Lockton, Lloyd's, or Chubb not admitted liability, each would have had the opportunity to proceed with a DFS evidentiary hearing, be represented by counsel in front of an impartial hearing officer not previously involved in the matter, present evidence, hold the state to its burden of proof, cross-examine witnesses, and dispute the hearing officer's findings, as well as appeal to the state Supreme Court. The NRA claims, without support, that the Superintendent can "issue whatever order she desires." NRA Br. at 20. To the contrary, the hearing officer must prepare a report detailing the findings from the adversarial hearing, N.Y. Fin. Servs. § 305(b); and even assuming the Superintendent were to make the decision rather than a designee, a Superintendent who disregarded that report for political reasons, as the NRA conjures, would, by definition, be acting arbitrarily and capriciously, warranting reversal by the state court. *See Mordukhaev v. Daus*, 457 F. App'x 16, 21 (2d Cir. 2012) ("[T]he availability of an Article 78 proceeding to challenge any alleged deficiencies in an administrative adjudication is sufficient to satisfy due process.").[7] This statutory framework supports immunity under *Butz*.[8]

In claiming otherwise, the NRA cites *DiBlasio v. Novello*, 344 F.3d 292, 299 (2d Cir. 2003), which held that the Department of Health Commissioner was not absolutely immune for

---

[7] While the NRA cites *Young v. Selsky*, 41 F.3d 47, 54 (2d Cir. 1994) to claim that Article 78 review is inadequate, *Young* held only that damages, which were the only viable remedy for that due process deprivation, were unavailable in an Article 78, rendering it inadequate for appellant. In contrast, an Article 78 proceeding following a DFS administrative proceeding could, if warranted, vacate the liability determination and any penalty imposed.
[8] Contrary to the NRA's claim, courts often grant immunity under *Butz*'s general "reasoning" without a factor-by-factor analysis and no one factor controls. *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (finding absolute immunity without factor-by-factor analysis); *Uppal v. N.Y. State Dept. of Health*, No. 16-CV-3038, 2019 WL 4735385, at *11 (S.D.N.Y. Sept. 27, 2019) ("[one negative factor] . . . does not counsel against" immunity).

*summarily and unilaterally* suspending a medical license *before* a formal suspension hearing—a completely non-analogous situation. While summary suspensions based on investigators' recommendations, without a hearing, and over the objection of the target, do, as the Circuit held, "lack sufficient similarity to the judicial process to warrant absolute immunity," *id.* at 298, the comparison fails. Here, Lockton, Lloyd's and Chubb—major insurance entities represented by sophisticated counsel—chose to forego their rights to a full evidentiary hearing that mirrors a judicial one, with the significant due process protections described above, and instead entered into a plea deal with the agency.

Courts have repeatedly held that administrative enforcement activity is absolutely immune under similar facts.[9] No court has ever held that absolute immunity does not protect conduct connected to DFS enforcement proceedings. If accepted, this argument would expose DFS officials who must enforce the insurance and banking laws against well-resourced financial institutions to "intimidation or harassment" from disgruntled law-breakers. *Butz*, 438 U.S. at 515.

The NRA's request that this Court *defer* its immunity decision—two-plus years into the case—is both audacious and squarely contrary to binding precedent. Absolute immunity "defeats a suit at the outset." *Mangiafico*, 471 F.3d at 394. The Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982) (immunity shields officials from "the burdens of broad-reaching discovery"). Governing authority has repeatedly supported pre-discovery dismissals on immunity grounds. *E.g.*, *Wood v. Moss*, 572 U.S. 744, 755 (2014) (per curiam); *Briscoe v. LaHue*, 460 U.S. 325, 345

---

[9] Op. Br. at 13 (citing *Knowlton*, 704 F.3d at 3–4, 9, and other cases); *see also Rudow v. City of New York*, 822 F.2d 324, 327 (2d Cir. 1987) (absolute immunity protects Human Rights Commission attorney who prosecuted complaint in a hearing before ALJ because "conduct was at least colorably prosecutorial in nature); *Sprecher v. Graber*, 716 F.2d 968, 971 (2d Cir. 1983) (absolute immunity applied to SEC enforcement officials).

(1983); *Anderson v. Creighton*, 483 U.S. 635 (1987); *Scott v. Fischer*, 616 F.3d 100, 111 (2d Cir. 2010). The availability of immunity here is a legal question; it does not require discovery.

### IV.     QUALIFIED IMMUNITY BARS THE SELECTIVE ENFORCEMENT CLAIM

As set forth in Ms. Vullo's opening brief, there is no case—none!—that clearly establishes the novel selective enforcement claim the NRA conjured now on the second try. The NRA's opposition concedes, by its silence, that no "existing precedent" placed "beyond debate," *Iqbal*, 556 U.S. at 741, any of the following constitutional questions:

(1) that an entity not enforced against by Ms. Vullo (the NRA) can state a claim based on "selective enforcement" against third parties (Lockton, Lloyd's and Chubb) who *admit to* violating the law, *see* Op. Br. at 28–30;

(2) that a comparator can be similarly situated if it committed only less-serious violations (here, the non-firearm violations) but did not commit the most serious misconduct (selling an illegal insurance product), *see* Op. Br. at 30–32

(3) "see no evil" as a basis for a selective enforcement claim, *see* Op. Br. at 32; **or**

(4) that an entity that Ms. Vullo investigated but did not enforce against (the NRA) has a Fourteenth Amendment equal protection claim of "selective *investigation*."

The complete absence of clearly established law on each of the first three propositions above, alone, compels qualified immunity. As to the fourth, the one case the NRA cites, *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000), does not establish, let alone "clearly establish," the existence of a "selective investigation" claim. *White* cannot establish binding law because: (i) it holds only that an intrusive investigation "chilled the plaintiffs' exercise of their *First Amendment* rights"—*not* that an investigation *alone*—without any enforcement—gives rise to a stand-alone *Fourteenth Amendment* equal protection claim, *id.*, as the NRA claims here; and (ii) it is outside this Circuit.[10] Notably, the NRA has never alleged (nor could it) that its First Amendment speech was chilled by the DFS investigation.

---

[10] *Pabon v. Wright*, 459 F.3d 241, 255 (2d Cir. 2006) ("[T]he law of our sister circuits and the holdings of district courts cannot act to render [a] right clearly established within the Second Circuit.").

11

The NRA has no response to Ms. Vullo's arguments that she acted objectively reasonably in prosecuting both (admitted-to) insurance law violations squarely presented to DFS and similar violations *unrelated* to the NRA. The Complaint admits it. Op. Br. at 21, 32–33.

Finally, the NRA's claim that discovery is needed misunderstands Ms. Vullo's qualified immunity argument (and ignores that the NRA has not plausibly pleaded a selective enforcement claim worthy of discovery, *see supra* at 3). No case clearly establishes that a prosecutor should treat less serious violations unearthed during an enforcement proceeding similarly to more serious violations that motivated the enforcement in the first place. Legal research, not discovery, reveals the unprecedented nature of the NRA's claim. Where, as here, there are no disputed questions that must be resolved in defendant's favor to warrant qualified immunity, it must be resolved at the earliest possible opportunity. *See supra* at 10.

## V.     QUALIFIED IMMUNITY ALSO BARS THE FIRST AMENDMENT CLAIM

The NRA's First Amendment claim as against Ms. Vullo must be dismissed as well on the basis of qualified immunity. In its brief, the NRA does not engage substantively *at all* on the First Amendment qualified immunity analysis. It cites no case establishing that Ms. Vullo's protected public statements were transformed into an unlawful "threat" due to the DFS investigation that preceded them. It does not dispute that its (false) allegations of "backroom exhortations" are conclusory and non-specific. Op. Br. at 34. Qualified immunity is intended to give public officials breathing room to do their jobs. Public officials have First Amendment rights. And inasmuch as there may be "fine lines" between permissible government speech and impermissible threats that violate the First Amendment, as this Court has observed, that is precisely why qualified immunity exists to protect a government official like Maria Vullo. Op. Br. at 34; *Zieper v. Metzinger*, 474 F.3d 60, 68 (2d Cir. 2007) (granting qualified immunity

against First Amendment claim because not "apparent to a reasonable officer that defendants' actions crossed the line between an attempt to convince and an attempt to coerce").

Rather than contest any of this, the NRA instead resorts to platitudes about qualified immunity being disfavored at the pleading stage. It is not. Courts routinely dismiss claims based on qualified immunity at the pleadings where, as here, there are no facts necessary to resolve the qualified immunity inquiry. *Supra* at 10. While the NRA claims Ms. Vullo's "motivation" must be discovered, NRA Br. at 22, the law is clear that her motives are irrelevant to the qualified immunity inquiry, which is "objective," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under that objective analysis, Ms. Vullo is entitled to qualified immunity.

## CONCLUSION

The SAC should be dismissed in its entirety as against Ms. Vullo. Maria Vullo, now a private citizen, served her state honorably as the Superintendent of DFS. In that role, she enforced the state's insurance and banking laws, including in consent orders with Lockton, Lloyd's, and Chubb, and she pursued Lockton's violations related to its other (non-NRA) affinity group relationships. As a prosecutor enforcing state law, Ms. Vullo is entitled to immunity: absolute immunity for entering into consent orders, and qualified immunity from the NRA's novel selective enforcement claim. The NRA has now had multiple opportunities to plead that Ms. Vullo ignored specific insurance law violations of which she was aware, and it cannot so plead because she did not. Its First Amendment claim similarly must be dismissed because qualified immunity protects officials engaged in matters of public concern, particularly where no case clearly establishes the line beyond which vital speech becomes grounds for liability. After multiple attempts, the NRA has been unable to allege a viable claim against Ms. Vullo in her individual capacity, and the claims against her should be dismissed in their entirety.

Dated: New York, New York
       July 27, 2020

                         EMERY CELLI BRINCKERHOFF
                            & ABADY LLP

                    By:     */s/ Andrew G. Celli, Jr.*
                            Andrew G. Celli, Jr.
                            Debra L. Greenberger
                            Marissa R. Benavides
                            600 Fifth Avenue
                            New York, New York 10020
                            (212) 763-5000

                    *Attorneys for Defendant Maria Vullo*