# EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK  10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
MARISSA BENAVIDES
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER

August 25, 2020

**By ECF**

Hon. Christian F. Hummel
U.S. District Court
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, NY 12207

      Re:    *NRA v. Cuomo, et al.*, No. 18 Civ. 0566 (TJM)(CFH)

Dear Judge Hummel:

      Pursuant to Local Rule 7.1(b)(2) and this Court's advisement at the Court conference on August 10, 2020, counsel for Defendant Maria Vullo writes prior to filing a Rule 37 motion to compel Plaintiff's responses to Interrogatory 2 of Defendants' First Set of Interrogatories and Interrogatories 1-3 of Defendant Vullo's Second Set of Interrogatories. The NRA's Complaint falsely alleges that Ms. Vullo engaged in "backroom exhortations," "back-channel threats," and "met with, and threatened, executives of Lloyd's of London ("Lloyd's") and its United States affiliate, Lloyd's America, Inc, ("LAI")." When Ms. Vullo sought the factual basis for these false allegations, including the names of any witness to support these claims, the NRA initially delayed, then asserted inapplicable objections and, later, claimed the information is privileged. Because no privilege protects underlying facts to support a plaintiff's complaint allegations and witness information is relevant discovery, Ms. Vullo has good cause under Rule 37(a)(3)(B) for the motion. Pursuant to the Court's advisement at the August 10, 2020 Court conference that it would be prepared to set a briefing schedule upon request while the motions to dismiss and the discovery stay are pending, Ms. Vullo asks this Court to set a briefing schedule such that her proposed motion is due on or before September 4, 2020, or, if the Court prefers, a conference to discuss the proposed motion.[1]

---

[1] Ms. Vullo maintains that the current stay of discovery is appropriate and necessary while her motion to dismiss the NRA's Second Amended Complaint on, *inter alia*, immunity grounds remains pending. This letter is being

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

From the inception of this litigation, Plaintiff has insisted to the Court that it had a good faith basis for its specific allegations regarding Ms. Vullo's purported "threat[s]," "backroom exhortation[s]," and "back-channel communication[s]"—allegations that Plaintiff has asserted to overcome Ms. Vullo's motion to dismiss Plaintiff's First Amendment claim.  *See* Am. Compl. ¶¶ 38, 41, 44, 45, 75, 86, 96, 126 ("Defendants' actions—including but not limited to the issuance of the April 2018 [Guidance] Letters *and the accompanying backroom exhortations*, the imposition of the Consent Orders upon Chubb and Lockton, and the issuance of the Cuomo Press Release . . . .'" (¶ 75) (emphasis added)) (Dkt. 37).  When Ms. Vullo initially moved to dismiss the meritless claims against her, Plaintiff again maintained—baselessly—the validity of its allegations.  Dkt. 48 at 12 ("To achieve their aim, Defendants constructed a censorship-and-retaliation scheme based on backroom bullying, selective prosecution, and thinly veiled threats directed at banks and insurance companies who dared to do business with the NRA.").  The District Court relied on these baseless assertions of "backroom exhortations" in denying Defendants' Motion to Dismiss the First Amendment claim,[2] highlighting their centrality in the litigation.  Because these allegations form the core of the NRA's First Amendment claims against Ms. Vullo, she repeatedly has requested that Plaintiff provide the basis for these claims in discovery, and yet the NRA has evaded these valid discovery requests at every turn.  Indeed, if the NRA had no good faith basis to make these allegations against Ms. Vullo—allegations which are false and she adamantly denies—the NRA should admit it and not be permitted to hide behind baseless objections any longer.

        1.      **Ms. Vullo Has Made Multiple Discovery Requests to Determine the Basis for Plaintiff's (False) Allegations Against Her**

           **a.  Interrogatory Two from Defendants' First Set of Interrogatories**

Interrogatory 2 from Defendants' First Set of Interrogatories, served in February 2019, asked Plaintiff to "[i]dentify each and every 'threat,' 'backroom exhortation,' and 'back-channel communication' alleged to have occurred in the Amended Complaint," including any such communications by Ms. Vullo, and its basis for said identification.  Pl.'s Resp. & Obj. Defs.' Interrogatories, attached hereto as Attachment A.  Plaintiff's initial Interrogatory response in March 2019 cited only the Guidance Letters Ms. Vullo issued *publicly* in her capacity as

---

submitted pursuant to this Court's advisement at the August 10, 2020 Court conference to submit discovery motions now for consideration only if necessary after the motions to dismiss are resolved.

[2] *See* Dkt. 56 at 21 ("The backroom exhortations combined with the timing of the publicly announced Consent Orders provides strong support for Plaintiff's claims"); *id.* at 24-25 ("[T]he Cuomo Press Release and the Guidance Letters, when read objectively and in the context of DFS's regulatory enforcement actions against Chubb and Lockton *and the backroom exhortations*, could reasonably be interpreted as threats of retaliatory enforcement against regulated institutions that do not sever ties with the NRA." (emphasis added)); *id.* at 5 ("The NRA alleges that throughout the investigation, DFS communicated "backchannel threats" to banks and insurers with ties to the NRA that they would face regulatory action if they failed to terminate their relationships with the NRA"); *id.* at 26 ("The allegations in the Amended Complaint are sufficient to create a plausible inference that the Guidance Letters and Cuomo Press Release, when read together and *in the context of the alleged backroom exhortations* and the public announcements of the Consent Orders, constituted implicit threats of adverse action against financial institutions and insurers that did not disassociate from the NRA." (emphasis added)).

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

Superintendent, the Press Release that Governor Cuomo *publicly* issued, the *public* consent orders that DFS entered into with certain Lockton, Chubb, and Lloyd's entities, and "various public statements by Cuomo," invoking confidentiality concerns to "withhold[] information until a Protective order is in place." Attachment A, General Objection 5. Plaintiff did not provide a single detail related to any purported "threat," "backroom exhortation," or "back-channel communication." Long after the entry of a Protective Order in April 2019 and only after repeated requests from Defendants as to when Plaintiff would supplement its response, a year later, on April 16, 2020, Plaintiff supplemented its response and still failed to provide *any* information to support the allegations of "threats" or "backroom exhortations" or "back-channel communications."

Plaintiff's supplementary response to Interrogatory 2 again did not identify *any* "backroom" statement, "back-channel" communication" or "threat" made by Ms. Vullo. Indeed, Plaintiff did not provide *any* additional statements or communications of any kind. On the contrary, after waiting over a year to respond to the interrogatory, the NRA *again* cited only the Guidance Letters Ms. Vullo issued *publicly* in her capacity as Superintendent, the Press Release that Governor Cuomo *publicly* issued, the *public* consent orders that DFS entered into with certain Lockton, Chubb, and Lloyd's entities, and "various public statements by Cuomo." Pl.'s Supp. Resp. & Obj., attached hereto as Attachment B. Each of Ms. Vullo's communications cited by Plaintiff was made by Ms. Vullo *publicly* in her capacity as DFS Superintendent. Not a single one of these already identified public statements constitutes a "backroom" or "back-channel" communication, "exhortation" or "threat" made by Ms. Vullo, as Plaintiff has alleged and argued in opposition to the motions to dismiss. Moreover, while Plaintiff objected (erroneously) to the interrogatory request as "overbroad and unduly burdensome," requiring "the NRA to describe conversations to which it was not a party," and seeking "information that is in the possession of Defendants," Plaintiff did *not* assert a specific privilege objection or provide a privilege log. *Id.*

After receipt of the NRA's supplemental response, which conceded that the NRA knew of no person who could establish the NRA's Complaint allegations that Ms. Vullo engaged in (non-existent) "threats," "backroom exhortations" or "back-channel communications," Ms. Vullo sent the NRA a "safe harbor" letter under Rule 11 challenging the NRA's good faith basis to file a Complaint making these false allegations against her. In response, the NRA claimed—for the first time—that the information sought in the interrogatory was "grounded in privileged communications between NRA counsel and multiple individuals who claim knowledge of the facts." Pl. Resp. to Def. Vullo May 1, 2020 Letter, attached hereto as Attachment C. To date, the NRA has not identified any of these "multiple individuals who claim knowledge of the facts." *Id.* Nor could any such privilege assertion excuse the NRA from providing factual information in response to Defendants' interrogatories, to the extent the NRA has any such information.

    **b. Interrogatories One, Two, and Three from Ms. Vullo's Second Set of Interrogatories**

Separately, on January 10, 2020, Ms. Vullo served a Second Set of Interrogatories and asked Plaintiff to: "Identify all persons that possess knowledge or information to support any or all the following Plaintiff allegations" in Plaintiff's Complaint:

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

    a. "beginning in February 2018, Vullo met personally with executives of regulated institutions, including Lloyd's. During the meetings she discussed an array of technical regulatory infractions plaguing the affinity-insurance marketplace. Vullo made it clear, however, that DFS was less interested in pursuing the infractions of which she spoke, so long as Lloyd's ceased providing insurance to gun groups, especially the NRA,"

    b. Vullo "met with, and threatened, executives of Lloyd's of London ("Lloyd's") and its United States affiliate, Lloyd's America, Inc, ("LAI")"; and/or

    c. "During her surreptitiously held meetings with Lloyd's executives that commenced in February 2018, Vullo acknowledged the widespread regulatory issues in the excess-line marketplace. Vullo and DFS made clear that Lloyd's could avoid liability for infractions relating to other, similarly situated insurance policies, so long as it aided DFS's campaign against gun groups."

Interrogatory 1, Pl. Resp. & Obj. Def. Vullo's Second Set of Interrogatories, attached hereto as Attachment D. In addition, in Interrogatories 2 and 3, Ms. Vullo requested the identity of the referenced "executives" and "institutions," the number of such alleged meetings and communications, and, for all people who the NRA claims have knowledge supporting Plaintiff's allegations, the basis for such knowledge. *Id.* Interrogatory 2 and 3. Despite the fact that the NRA continues to rely on these (false) allegations to support its meritless Complaint, Plaintiff objected to each of Ms. Vullo's Interrogatories on the basis that they were "premature," sought "information protected from disclosure under the work-product privilege and/or subject to protection as trial-preparation material," and sought information "in the possession of Vullo and current and former employees of DFS." *See id.* Plaintiff then identified Ms. Vullo and "executives of Lloyd's and LAI, including Joseph Gunset and Dame Inga Beale," without claiming that Gunset and Beale have confirmed these false claims; without identifying the dates, locations, participants or content of these supposed conversations; without identifying which "executives" of which "regulated institutions" Ms. Vullo allegedly met with, or when, or where such alleged meetings occurred; without stating what Ms. Vullo allegedly said at any such meetings that constitute the alleged "threats" and "backroom exhortations" alleged in the Complaint; and without identifying the basis for any alleged witness's knowledge. These wholly insufficient interrogatory responses do not satisfy the NRA's discovery obligations, and do not support the NRA's false Complaint allegations.

    **2.    Defendant Vullo Has Demonstrated Good Cause to Compel Plaintiff's Discovery Responses**

    Plaintiff's refusal to produce information within its possession, custody, or control regarding its core allegations against Ms. Vullo, including its factual basis for those allegations and the identities of any witnesses with knowledge of the alleged events, is improper. Not only does Plaintiff have an obligation to produce to Ms. Vullo the identify of individuals who are likely to have discoverable information that it may use to support its claims, *see* Fed. R. Civ. P. 26(a), it also has an obligation to produce all relevant, non-privileged information in its possession upon receipt of Ms. Vullo's request for such. It cannot circumvent its obligation with

a bare assertion of "best belief" in the case of Defendants' Interrogatory No. 2 (or an untimely, and waived, privilege assertion for that Interrogatory), or "work-product privilege" in the case of Ms. Vullo's Second Set of Interrogatories

Plaintiff's response to Defendants' Interrogatory No. 2 that it can only provide "its own understanding or best belief" as to the NRA's own Complaint allegations that Ms. Vullo made threats, backroom exhortations, and backchannel communications wholly fails to satisfy its discovery obligations. The NRA filed a Complaint and two Amended Complaints with these scurrilous allegations, and it was required to have a factual basis for doing so—and Ms. Vullo was entitled to discovery at the beginning of the case regarding the NRA's alleged basis for the allegations. "The function of an interrogatory in federal civil practice is to disclose the evidentiary basis of a claim." *J.S. v. Attica Cent. Sch.*, No. 00-CV-513S(F), 2008 WL 2986388, at *4 (W.D.N.Y. July 31, 2008) (internal quotation marks omitted) (finding that plaintiffs' discovery responses containing "generalized assertions" as to the facts underlying their claims were deficient). Here, that evidentiary basis includes the information upon which Plaintiff has based its understanding and belief such that it included these allegations in its Complaint against Ms. Vullo and relied on these allegations in opposition to the motions to dismiss. In short, what is the factual basis upon which Plaintiff alleged these "threats, backroom exhortations, and backchannel communications" took place? If it has no evidentiary basis to make these allegations, it must state as much and withdraw the allegation. If it bases these allegations on information gleaned from third parties, it must identify those individuals, provide details about their claimed communications with Ms. Vullo, and give Ms. Vullo an adequate opportunity to conduct discovery and/or seek available relief. *Cf. Flannigan v. Vulcan Power Grp., LLC*, 642 F. App'x 46, 50 (2d Cir. 2016) (district court properly struck witness testimony when "defendants failed to disclose . . . witness until the eve of trial, ignoring a discovery request for identification of witnesses" and effectively barring opposing party from conducting discovery on the witness).

To the extent Plaintiff asserts that the information Ms. Vullo seeks is protected by privilege, such objection has been waived under Rule 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). Plaintiff has now responded to Defendants' Interrogatory No. 2 on two separate occasions, and on neither occasion did it raise a specific privilege objection to that Interrogatory. In was only in response to Ms. Vullo's Rule 11 "safe harbor" letter—a response that came well after Plaintiff served its latest objections to Defendants' Interrogatories—that Plaintiff claimed this information is "grounded in privileged communications," without specifying the basis for this cursory privilege invocation. Plaintiff's objection is waived on multiple grounds: it is an untimely response to Defendants' Interrogatories; it does not specify the type of privilege being invoked; and it was not presented as part of Plaintiff's written objections to Defendants' Interrogatories. Fed. R. Civ. P. 33(b)(4); *see Rogue Wave Software, Inc. v. BTI Sys. Inc.*, No. 16 CV, 7772, 2017 WL 4712425, at *7 (S.D.N.Y. Sept. 7, 2017), *aff'd*, No. 16 CIV. 7772, 2018 WL 6920770 (S.D.N.Y. Dec. 14, 2018) (finding attorney-client privilege inapplicable to identification of witnesses and the privilege claim waived for failure to timely raise the privilege or provide good cause to excuse the failure); *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 237–38 (W.D.N.Y.1998) (failure to comply with rules governing objections to discovery based on privilege waives the privilege), *Horace Mann Insurance Co. v. Nationwide Mutual Insurance Co.*, 238 F.R.D. 536,


EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 6

538 (D. Conn. 2006) (deeming attorney-client privilege objections waived when asserted 22 days after deadline). Even if not waived, no privilege applies for the reasons described below.

With respect to Plaintiff's assertion of work product privilege as to Ms. Vullo's Second Set of Interrogatories, that invocation is entirely without merit. Plaintiff asserts that the identities of witnesses with information relevant to its allegations that Ms. Vullo held "surreptitious meetings" with "executives of regulated institutions" to seek their cooperation in "DFS' campaign against gun groups" are protected by work-product privilege, but work product does not extend to the identities of individuals with knowledge about a claim or the underlying facts such as when and where alleged meetings occurred and what allegedly was said. The work product doctrine, as recognized in Rule 26, protects only "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). "[T]he work product privilege does not . . . ordinarily protect the identities of . . . witnesses." *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron*, Inc., 278 F.R.D. 335, 343 (S.D.N.Y. 2011) (citing *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 34 n.23 (S.D.N.Y. 2003)). Work product protection does not extend to a witness's identity and courts have rejected attempts to claims otherwise. *See In re SLM Corp. Sec. Litig.,* No. 08 CIV. 1029, 2011 WL 611854, at *1 (S.D.N.Y. Feb. 15, 2011) ("identities of witnesses with relevant information are discoverable"). Moreover, the work-product doctrine does not protect the underlying facts, such as the dates, times and details of meetings, including what participants are alleged to have said. *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 47–48 (N.D.N.Y. 1997) (finding work product privilege inapplicable to facts supporting plaintiff's complaint allegations and compelling plaintiff to respond to defendants' interrogatories with underlying facts that support plaintiff's allegations). Witness identities and basic information about alleged communications are underlying facts and are not protected by the work-product privilege. If the NRA is going to persist with its false claim that Ms. Vullo made backroom threats, it must come forward with the identities of individuals who (falsely) claim knowledge about these alleged threats or admit that the NRA had no basis to make the allegations in its Complaint. The NRA cannot continue to obfuscate its interrogatory responses or seek to hide behind illegitimate claims of privilege, regarding the core allegations of the NRA's own Complaint against Ms. Vullo on which it has relied to support its baseless claims.

Ms. Vullo respectfully requests a Court conference or, if the Court chooses, a briefing schedule concerning her proposed motion to compel Plaintiff to provide full responses to her Interrogatories.[3]

Respectfully submitted,

/s/
Debra L. Greenberger

c.  All Counsel of Record, *By ECF*

---

[3] The NRA's document production is still ongoing and the NRA's responses to Ms. Vullo's Requests for Admission also are insufficient. Ms. Vullo anticipates that there will be other deficiencies in Plaintiff's discovery responses, which she hopes the parties can resolve, but may be forced to seek Court intervention.