DALLAS | NEW YORK

**BREWER**
ATTORNEYS & COUNSELORS

September 4, 2020

**VIA ECF**

Hon. Christian F. Hummel
United States Magistrate Judge
United States District Court
James T. Foley U.S. Courthouse
4445 Broadway, Room 441
Albany, New York 12207

    Re:    *National Rifle Association of America v. Cuomo et. al*, No. 18-cv-566-TJM-CFH

Dear Judge Hummel:

    On behalf of Plaintiff the National Rifle Association of America (the "NRA"), I write in response to Defendant Maria T. Vullo's ("Vullo") letter seeking a pre-motion conference for permission to file a Rule 37 motion to compel the NRA's to respond to Interrogatory 2 of Defendants' First Set of Interrogatories and Interrogatories 1-3 of Defendant Vullo's Second Set of Interrogatories.[1]  For the reasons set forth below, the NRA opposes Vullo's request.

    Defendants sought and obtained a stay of party discovery complaining about "significant expenses related to discovery."[2]  Now, incredibly, Vullo seeks a special dispensation to pursue unilateral discovery motion practice to compel the NRA to disclose details of conversations to which the NRA was not a party, and identities of individuals consulted by the NRA's counsel in preparing the NRA's pleadings.  If the Court chooses to reopen party discovery, it should do so symmetrically: if the NRA must bear the burden of briefing a party-discovery dispute, then Defendants should easily be able to shoulder the burden of turning over, at long last, the documents they owe the NRA, including documents already mustered for production *in camera* which the Special Master deemed discoverable.  (Of course, the NRA should be permitted to initiate party-discovery motion practice as well).

    Moreover, even if Vullo's proposed motion did not follow immediately on the heels of Defendants' successful request for a discovery stay, it would nonetheless be meritless for the reasons set forth below.

---

[1] *See* ECF No. 250.

[2] *See* ECF No. 221 at 1 ("absent a stay the New York State Defendants will continue to incur significant expenses related to discovery, including charges from the Special Master").

BREWER

**Hon. Christian F. Hummel**
September 4, 2020
Page 2

### I. The Identities And Statements Of Individuals Interviewed By The NRA's Counsel, Including In Privileged Meetings, Are Not Proper Subjects Of Discovery.

Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, material prepared by or at the request of an attorney in anticipation of litigation is not subject to discovery.[3] "The work product doctrine serves to encourage vigorous investigation of disputed claims, unfettered by fear that the products of such efforts will be compromised and fall into an adversary's hands."[4] Courts have distinguished "discovery requests that seek the identification of persons with knowledge about the claims or defenses ... [from requests] that seek the identification of persons who have been contacted or interviewed by counsel concerning the case."[5] The weight of authority in the Second Circuit holds that requests that seek identification of persons who have been contacted or interviewed by counsel concerning the case are not proper.[6] Such information is protected work product because it provides insight into the opposition's trial preparation.[7] "How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled."[8] "[A] party

---

[3] *See Feacher v. Intercontinental Hotels Grp.*, No. CIV.A. 3:06-CV-0877, 2007 WL 3104329, at *1 (N.D.N.Y. Oct. 22, 2007) (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)); *see also Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13 CV 1257 (RRM), 2013 WL 12333083, at *2 (E.D.N.Y. Oct 15, 2013) (citing Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Subpoenas Dated Mar. 19. 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2002)).

[4] *Feacher*, No. CIV.A. 3:06-CV-0877, 2007 WL 3104329, at *3 (finding that a factual witness statement constitutes work product "[b]ecause the work product doctrine, as embodied in Rule 26(b)(3), does not stop at protecting mere litigation strategy, but instead goes further to insure that, by affording protection to the results of investigations into litigated claims, the adversary system upon which our civil judicial system is predicated the interests of justice will best be served, the distinction between litigation strategy and matters of pure fact does not control the work product analysis.")

[5] *See Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13 CV 1257 (RRM), 2013 WL 12333083, at *2 (E.D.N.Y. Oct 15, 2013) (denying plaintiff's request to compel defendants to provide a list of individuals interviewed regarding plaintiff's allegations) (citing *Didonna v. Village Farms IGA, LLC*, No. CV 12-1487 JS ARL, 2012 WL 3879149, at *3 (E.D.N.Y. Sept. 6, 2012) and *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 132 (W.D.N.Y. 2008)).

[6] *See id.* (citing *Seven Hanover Ass'n v. Jones Lang LaSalle Am., Inc.*, No. 04 CIV. 4143 PACMHD, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005) (finding that "[d]efendant [was] free to ask for names of persons with knowledge of the facts, but [was] not entitled, through plaintiffs, to identification of who among such knowledgeable individuals [had] been interviewed by plaintiffs' attorney")).

[7] *See Didonna*, No. CV 12-1487 JS ARL, 2012 WL 3879149, at *1 (in denying plaintiff's motion to compel, the court concluded that information sought—identity of individuals that defense counsel had interviewed concerning the allegations in plaintiff's complaint in order to identify potential fact witnesses, and identity of each individual who had given oral, written or recorded statements about facts alleged in the pleadings together with specific information about those statements—"does disclose an attorney's mental impressions and strategies.")

[8] *See id.* (quoting *Dist. Council of New York City*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *10); *see also Kogut v. Cty. of Nassau*, No. CV066695JSWDW, 2011 WL 13284713, at *4 (E.D.N.Y. Nov. 9, 2011) (denying

BREWER

**Hon. Christian F. Hummel**
September 4, 2020
Page 3

may not secure disclosure of an adversary's counsel's view of the case or trial preparation by seeking disclosure of those facts or sources of facts which counsel considers more significant than others and has devoted time to pursuing."[9]  In fact, Vullo's own case notes that "[w]hile the identities of witnesses with relevant information are discoverable, Defendants are not automatically entitled to know which of those witnesses Plaintiffs consider important."[10]

Here, the NRA provided almost two years ago in its initial disclosures a list of twenty-four individuals who it believes are likely to have knowledge of the NRA's allegations.  Thus, Defendants have ample notice regarding whom they may wish to depose.  It is wholly improper, however, for Defendants to inquire about which witnesses counsel interviewed in connection with which allegations and the particularities of those conversations.  Indeed, construed in the fashion Vullo urges, her interrogatory would require counsel to divulge the exact date, time, and other details of each interaction with relevant individuals, including with respect to privileged discussions.[11]  When party discovery resumes in this case, the NRA will be happy to produce a privilege log consistent with its obligations under the federal and local rules—but no authority compels the NRA to exceed those obligations and detail, in the format of an exhaustive interrogatory response, counsel's process for gathering information and crafting claims. Disclosing such facts and sources of facts which the NRA's counsel considered more important than others to support the NRA's claims would therefore provide insight into the NRA's trial preparation to which Defendants are not entitled.

---

in part motion to compel because the identity of the witnesses actually interviewed by the County attorneys is … protected" and "[w]hile defendants must disclose the names of individuals with discoverable information, defense counsel's decisions as to which of those individuals to interview constitute attorney work product."); *Tracy*, 250 F.R.D. 130, 133 (denying motion to compel because work product doctrine protected from disclosure identity of individuals whom employer's counsel had interviewed and from whom counsel had requested documents, and information about individuals who assisted employer's counsel in responding to employee's discovery demands.); *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2013 WL 5495542, at *10 (S.D.N.Y. Oct. 3, 2013) (denying motion to compel because the identities of the individuals the plaintiff interviewed in its investigation were protected as work product.); *Steele v. CVS Pharmacy, Inc.*, No. 15CV4261JGKKNF, 2016 WL 1659317, at *1 (S.D.N.Y. Apr. 18, 2016) (denying motion to compel after *in camera* review because the identities of third-party witnesses pertinent to the case have the potential to reveal counsel's opinions, thought processes or strategies and are, therefore, protected as work product.)

[9] *See id.*, at *7.

[10] *See In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029 (WHP), 2011 WL 611854, at *1 (S.D.N.Y. Feb. 15, 2011) (citing *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05MD1695 CMGAY, 2007 WL 274800, at *1 (S.D.N.Y. Jan. 29, 2007) and *Carson–Merenda v. Detroit Medical Ctr.,* Case No. 06–15601, 2008 WL 659647, at *4 (E.D. Mich. Mar. 7, 2008) (noting the "distinction between asking the identity of persons with knowledge, which is clearly permissible, and asking the identity of persons contacted and/or interviewed during an investigation, which is not")).

[11] *See* Interrogatory No. 2, Defendants' First Set of Interrogatories, ECF No. 250-1.

**BREWER**

**Hon. Christian F. Hummel**
September 4, 2020
Page 4

Likewise, Vullo asks for the identities of persons with knowledge of the facts supporting the allegations in the Second Amended Complaint relating to the meetings Vullo held in February 2018, with executives of regulated institutions. Those allegations are grounded on facts uncovered through months of investigative work the NRA's counsel conducted in connection with the NRA's selective enforcement claim. Such information would reveal the mental impressions and strategies of the NRA's counsel in ascertaining the relevance and sufficiency of those facts to support the allegations that Vullo had knowledge of the insurance law violations by affinity-insurance comparators and declined to bring any enforcement action against those comparators despite this knowledge. Therefore, the identities and statements of individuals consulted by the NRA's counsel in support of the NRA's allegations is protected work product.

## II.     Defendants Have No Substantial Need For The Requested Information.

The production of material prepared in anticipation of litigation may be ordered only if the requesting party can demonstrate "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[12] Here, Vullo improperly attempts to secure privileged communications between the NRA's counsel and multiple individuals who claim knowledge of the facts underlying the NRA's claims without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of her case or cause her any hardship or injustice.

Indeed, Vullo seeks information that is already in her possession. As alleged in the NRA's Second Amended Complaint, Vullo, and the other Defendants, either stated, published, or were party to the threats, backroom exhortations, and backchannel communications at issue. Defendants are uniquely situated to identify responsive information that resides in information and documents to which the NRA continues to be denied access. In fact, Vullo is fully aware that the details of the threats, backroom exhortations, and backchannel communications are among those sought by the NRA through discovery served more than a year ago, to which Defendants still have not meaningfully responded. Likewise, Vullo seeks the identity of all persons with knowledge or information to support the NRA's allegations relating to meetings she held in February 2018 with executives of regulated institutions, including Lloyd's.[13] Vullo cannot possibly show a substantial need for information relating to meetings in which she participated. Tellingly, Vullo and the other Defendants continue to oppose Hague discovery which would more fully illuminate the record of Vullo's interactions with Lloyd's, and provide greater notice to all parties regarding the particularities of the backroom conversations which the NRA is informed and believes occurred.

---

[12] *See Feacher*, No. CIV.A. 3:06-CV-0877, 2007 WL 3104329, at *1 (quoting Fed. R. Civ. P. 26(b)(3)); *see also Dist. Council of New York City*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *7.

[13] *See* Second Amended Complaint at 21, 69

BREWER

**Hon. Christian F. Hummel**
September 4, 2020
Page 5

Vullo opposes this discovery because she knows the NRA's claims are, in substance, true—not false.

Further, Vullo argues that without the information sought, she will not have an adequate opportunity to conduct discovery. She cites *Flannigan v. Vulcan Power Grp.* which is inapposite.[14] The Second Circuit there held that the district court properly found that the testimony of a witness was inadmissible at trial because defendants had failed to disclose that witness until the eve of trial. Here, the NRA has provided a list of twenty-four individuals it believes have knowledge of the NRA's allegations. In addition, this case has been pending for two years already and the Court has granted Defendants' request for a stay of party discovery. Vullo's proposed motion is, at best, premature—because "only after discovery is completed will the Court properly have evidence before it regarding the veracity of Plaintiff's allegations."[15] In addition, the NRA specifically reserved the right to supplement or amend its objections, or provide responses, due to discovery of additional facts and materials and other developments or proceedings in this case.[16] Although the NRA incurred delays in its discovery responses due to COVID-19-related shutdowns (the NRA's offices still have not fully reopened),[17] the NRA will continue to meet its discovery obligations when party discovery recommences. The NRA has a firm, good-faith belief factual basis to believe that its allegations are true, and believes that Vullo is fully aware they are true.

### III.     The NRA Has Not Waived Its Privilege Claims.

The NRA specifically objected to General Instruction No. 3 of Defendants' First Set of Interrogatories, which provides that "[i]n answering these interrogatories, plaintiff is to furnish all information available to it, and/or its employees and agents, including its attorneys…" and to Defendants' definition of "Plaintiff" which purports to include the NRA's attorneys. The NRA specifically stated in its objections and responses that "[t]he inclusion of the NRA's attorneys makes it highly likely that the Requests seek information that is protected by attorney client privilege or the work product doctrine."[18] Given that Defendants refused to detail or log their own

---

[14] *See Flannigan v. Vulcan Power Grp.*, LLC, 642 F. App'x 46, 50 (2d Cir. 2016).

[15] *See Luv N' Care, Ltd. v. Shiboleth LLP*, No. 16-CV-3179 (AJN), 2017 WL 3671039, at *13 (S.D.N.Y. Aug. 8, 2017) (denying motion for sanctions); *see also Baskin v. Lagone*, No. 90 CIV. 5478 (RPP), 1993 WL 59781, at *6 (S.D.N.Y. Mar. 3, 1993) (same).

[16] *See* Plaintiff's Supplemental Objections and Responses, ECF No. 250-2, at p.2.

[17] The NRA's headquarters are located in Virginia, which continues to experience significant case rates. In fact, New York regulations prohibit NRA counsel from returning to our offices in New York if we travel to interface with our client or manage document collections in Virginia, pending a strict quarantine period. *See* https://coronavirus.health.ny.gov/covid-19-travel-advisory.

[18] *See* Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories, ECF 250-1, at 3; *see also* Plaintiff's Supplemental Objections and Responses to Defendants' First Set of Interrogatories.

**BREWER**

**Hon. Christian F. Hummel**
September 4, 2020
Page 6

privilege objections in response to the NRA's discovery requests (apparently did not even supply an adequate privilege log for the Special Master until seven months after they were first ordered to do so by the Court),[19] they are in no position to contend that the NRA's general objections in its interrogatory responses effected a waiver of attorney-client privilege.

Because the identities of individuals consulted by the NRA's counsel in support of the NRA's allegations is protected work product, and because Defendants have no substantial need for such information, the Court should deny Vullo's request for permission to file her proposed motion to compel.

Respectfully,

/s/Sarah B. Rogers
Sarah B. Rogers

---

[19] As detailed in connection with the NRA's January 2019 motion to compel, the NRA patiently requested on multiple occasions that Defendants supplement their broad, generic privilege objections with some form of privilege log. Defendants refused. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's motion to compel, ECF No. 79 at 16-17 (arguing that Defendants are exempt from providing a privilege log or formally asserting privilege). On August 8, 2019, the Court ordered Defendants to produce purportedly privileged documents for *in camera* review, along with a privilege log. *See* ECF No. 121 at 53. As of June 11, 2020, the Special Master indicated that he still had not received an adequate privilege log, and was required to demand basic categories of information from Defendants, such as which documents were attached to which emails. (*see id.* at 26).