UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NATIONAL RIFLE ASSOCIATION OF AMERICA,

             Plaintiff,

  v.

ANDREW CUOMO, both individually and in his
official capacity; MARIA T. VULLO, both
individually and in her official capacity; and
THE NEW YORK STATE DEPARTMENT OF
FINANCIAL SERVICES,

             Defendants.

Case No. 18 Civ. 566 (TJM)(CFH)


**DEFENDANT VULLO'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
EVERYTOWN FOR GUN SAFETY TO COMPLY WITH NON-PARTY SUBPOENA**


Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Defendant Maria Vullo*

TABLE OF CONTENTS

PAGE NO.

ARGUMENT ................................................................................................................................1

CONCLUSION .............................................................................................................................5

# ARGUMENT

Plaintiff National Rifle Association's ("NRA") motion seeking a large volume of Everytown Town for Gun Safety's ("Everytown") documents is yet another fishing expedition. The Court should deny the motion for the reasons set forth in the Attorney General's opposition, which Ms. Vullo joins in its entirety. It is no secret that the NRA and Everytown are politically adverse, but fishing expedition subpoenas cannot be used to punish political adversaries, particularly because it is the defendants that necessarily incur the time and expense of reviewing a third-party's documents. At bottom, this NRA subpoena is yet another effort to distract the Court from the fact that the NRA has no basis for its First Amendment or selective prosecution claims against Ms. Vullo. Ms. Vullo submits this memorandum to rebut the NRA's misplaced arguments about what is relevant under Rule 26 and to correct the record.

Three NRA assertions in particular bear correcting.

*First*, as the Attorney General sets forth in detail in its opposition, the NRA wholly misstates Everytown's role in the Department of Financial Service's ("DFS") lawful and productive investigation and prosecution. With respect to the claims against Ms. Vullo, the NRA cannot connect any communication made by Everytown to Ms. Vullo or any of the claims in this case, because Ms. Vullo never communicated with Everytown, and the NRA has no basis to claim otherwise. It also is undisputed that DFS received a referral from the Manhattan District Attorney's Office, to which Everytown provided information about potential insurance law violations. It was completely proper for that information to be referred to DFS, as the insurance regulator in New York State. It also was completely proper for DFS to review the matter referred to it, as a law enforcement agency *should* when confronted with such information referred to it by another law enforcement authority. DFS then fully reviewed and investigated the matter, and its prosecution resulted in admissions from two insurance companies and an

1

insurance broker that they violated the insurance law. There can be no dispute that the investigation was well supported because the targets of the prosecution—Lloyd's, Lockton, and Chubb—all admitted liability and entered into consent orders. That a law enforcement agency reviewed and investigated information brought to its attention by an advocacy group does not change the uncontroverted fact that the investigation and prosecution led to admitted violations of the insurance laws. Indeed, information is brought to law enforcement from various sources, and the source of the information is irrelevant; Everytown's provision of information to the District Attorney does not indicate any wrongdoing by the District Attorney or DFS and it certainly does not support plaintiff's First Amendment or selective prosecution claims against Ms. Vullo.

To hear the NRA tell it, because Everytown is politically adverse to the NRA, the fact that Everytown provided information to the Manhattan District Attorney's Office somehow means that the DFS prosecution—which resulted in admitted violations by Lockton, Lloyd's, and Chubb that had *nothing* to do with Everytown—should not have been pursued at all. This is nonsense. It simply is not relevant that a political adversary of the NRA may have identified certain underlying facts that law enforcement reviewed as part of its successful investigation or prosecution. Here, DFS thoroughly and independently investigated the issues and prosecuted violations of the insurance law, going well beyond anything that Everytown had provided.

Not only is the NRA's claim that Everytown "orchestrated" the DFS investigation false, it also provides no basis for the discovery the NRA seeks. Consistent with this Court's prior holding that DFS's investigatory documents are not relevant, the broad request for Everytown's documents does not seek information that is relevant to establishing a First Amendment claim. Dkt. 181 at 6. Nor are the documents the NRA seeks relevant to establishing its selective prosecution claim, which, at is "core," is about whether "Supt. Vullo was aware of . . . similarly

2

situated programs yet failed to prosecute them." Dkt. 218 at 20. Nothing in the NRA's motion indicates any connection between Everytown's documents and what the NRA must prove as to Ms. Vullo's knowledge. As already noted, Ms. Vullo had no contact with Everytown, so Everytown's documents could not possibly provide any information about Ms. Vullo's knowledge. Nor does the NRA even claim that Everytown would have relevant information about similarly situated insurance products; Everytown simply provided information about the NRA's Carry Guard product. Documents about Everytown's role in providing information regarding Carry Guard are plainly irrelevant to DFS's alleged *failure* to prosecute similarly situated programs regarding non-NRA programs.

The NRA's claim that Judge McAvoy disagreed with this Court's relevance analysis distorts the record. The District Court—which considered only DFS documents, not Everytown documents never shared with Defendants—found only that DFS investigative documents *might* be relevant to the First Amendment or selective prosecution claims. Because a special master was already reviewing other documents in this case, the Court held that the special master should also review potentially irrelevant DFS documents for privilege *and* relevance. Dkt. 188 at 7. But this motion is not about DFS investigative documents.

*Second*, the NRA's claim that Everytown "collaborated with Defendants regarding the subject matter of this case" is simply false. Dkt 251-27 at 4. In making this false assertion, the NRA misleads in using the term "Defendants," when it means only that an employee at DFS— and not Ms. Vullo herself—communicated with Everytown. To begin with, the fact that an employee at DFS spoke with Everytown does not constitute "collaboration" in an investigation. Moreover, for its bold claim, the NRA cites one email concerning one phone call between a DFS employee (not Ms. Vullo) and Everytown, Dkt. 251-25 (Martin Ex. 24, describing the call as "short") and an email with the Executive Chamber about gun control laws having nothing to do

3

with DFS or the investigation at issue, Ms. Vullo, or this case, Dkt. 251-26 (Martin Ex. 25). Again, the NRA identifies no evidence—because there is none—that Ms. Vullo ever spoke to Everytown.  The NRA also exaggerates in claiming that DFS "reached out" to Everytown to learn of potential NRA-related violations and that there was "collaboration" after Everytown's initial referral; the documents the NRA submitted indicate only that Everytown approached the District Attorney's Office (not vice versa) to share information about the potential Carry Guard violations, and that the District Attorney's Office reached out to DFS.  There is no indication that DFS ever *sought* information from Everytown.

*Third*, the NRA distorts the facts in claiming, *again* without basis, that there was a "DFS enforcement attorney chosen for his anti-NRA political sentiments."  Dkt 251-27 at 1-2.  The NRA cites only a single email, where someone in the District Attorney's office states that a DFS enforcement attorney, Matthew Levine, had a prior job as "a gun control advocate." Dkt. 251-22 (Martin Ex. 21).  The facts: Mr. Levine was the Executive Deputy Superintendent who led the Enforcement Division at DFS under then-Superintendent Vullo.  Mr. Levine was responsible for DFS's coordination of numerous matters with the Manhattan District Attorney's Office, as well as other criminal prosecution offices.  Mr. Levine is an experienced former federal prosecutor, who held senior positions in two United States Attorney's Offices and at the U.S. Justice Department.  Moreover, the NRA has no support for its claim that Everytown "chose[]" this employee because of his alleged political views.  Dkt 251-27 at 1-2.  To the contrary: The very email the NRA cites states only that Mr. Levine, when presented with information about possible violations of the insurance law, "was interested in learning more" and would "review" the information with "his insurance regulators," but would not "commit the superintendent [Ms. Vullo]."  Dkt. 251-22 (Martin Ex. 21).  The NRA's claim is based on the slimmest of reeds, imputing connections and views to Mr. Levine with no basis; and the NRA's insistence that

4

being supportive of "gun control" is "anti-NRA" ignores the numerous polls showing that the majority of *the NRA's own members* support gun control.[1]  More fundamentally, none of this has to do with Ms. Vullo and cannot support the NRA's attempt to seek documents irrelevant to this case.

Ms. Vullo again reiterates her position that discovery should be stayed while her motion to dismiss the NRA's Second Amended Complaint on, *inter alia*, immunity grounds, remains pending.  As the Supreme Court wisely anticipated when it rejected an analogous proposed partial stay, it has again become "necessary for [Ms. Vullo and her] counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to [her] position."  *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).  As this NRA motion demonstrates, Ms. Vullo is not being protected "from the concerns of litigation," as a defendant who has asserted a meritorious qualified immunity defense is entitled.  *Id.*  Nonetheless, Ms. Vullo appreciates the Court's advisement at the August 10, 2020 Court conference that this motion would only be considered, if necessary, after the motions to dismiss are resolved.

## CONCLUSION

The NRA's motion repeatedly misstates and exaggerates the record, making allegations that lack support, which is how the NRA has litigated this case from the outset.  It seeks documents that have nothing to do with the claims against Ms. Vullo, claims that are also the subject of Ms. Vullo's pending motion to dismiss on immunity and other grounds.

Dated: New York, New York
       October 1, 2020

                                        EMERY CELLI BRINCKERHOFF
                                        ABADY WARD & MAAZEL LLP

---

[1]  *See* Amy Sherman, Do majority of NRA members support background checks for guns, PolitFact, (Feb. 27, 2018), https://www.politifact.com/factchecks/2018/feb/27/tim-ryan/after-parkland-shooting-ohio-congressman-said-70-8/ (citing polling of NRA members).

5

6

By:     */s/ Debra L. Greenberger*
Andrew G. Celli, Jr.
Debra L. Greenberger
Marissa R. Benavides
600 Fifth Avenue
New York, New York 10020
(212) 763-5000

*Attorneys for Defendant Maria Vullo*