**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| **Plaintiff,** | § | **CIVIL CASE NO.  18-CV-00566-TJM-** |
| **v.** | § | **CFH** |
| **ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,** | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MARIA T. VULLO'S
MOTION TO COMPEL PLAINTIFF'S INTERROGATORY ANSWERS**</u>

William A. Brewer III (Bar No. 700217)
Sarah B. Rogers (Bar No. 700207)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849


**ATTORNEYS FOR THE NATIONAL RIFLE
ASSOCIATION OF AMERICA**

## <u>TABLE OF CONTENTS</u>

I. PRELIMINARY STATEMENT ....................................................................................1

II. LEGAL STANDARD .............................................................................................3

III. ARGUMENT AND AUTHORITIES ......................................................................5

      A.     The NRA Has Complied With Its Discovery Obligations, But Defendants Have Not—Making the Motion, At Best, Premature. ............................................5

      B.     The Identities of Individuals Interviewed by NRA Counsel Are Not Proper Subjects of Discovery. ...........................................................................................8

      C.     Vullo Has No Substantial Need For The Requested Information.........................11

      D.     The NRA Has Not Waived Its Privilege Claims. .................................................13

IV. CONCLUSION..........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baskin v. Lagone*,
　No. 90 CIV. 5478 (RPP), 1993 WL 59781 (S.D.N.Y. Mar. 3, 1993) ......................................8

*Black v. NYU Med. Ctr.*,
　1996 WL 294310 (S.D.N.Y. June 3, 1996) ...........................................................................16

*Brock v. On Shore Quality Control Specialists, Inc.*,
　811 F.2d 282 (5th Cir. 1964) ................................................................................................16

*Didonna v. Village Farms IGA, LLC*,
　No. CV 12-1487 JS ARL, 2012 WL 3879149 (E.D.N.Y. Sept. 6, 2012)...........................9, 10

*Dole v. Local 1942, Int'l Bd. of Elec. Workers*,
　870 F.2d 368 (7th Cir. 1989) ................................................................................................16

*Donson Stores, Inc. v. Am. Bakeries Co.*,
　No. 72 CIV. 3991/AB, 1973 WL 791 (S.D.N.Y. Apr. 2, 1973) .............................................15

*In re Facebook, Inc.*,
　2016 WL 5080152 (S.D.N.Y. July 7, 2016) ............................................................................8

*Feacher v. Intercontinental Hotels Grp.*,
　No. CIV.A. 3:06-CV-0877, 2007 WL 3104329 (N.D.N.Y. Oct. 22, 2007) ...................4, 5, 12

*Fischer & Porter Co. v. Tolson*,
　143 F.R.D. 93 (E.D. Pa. 1992).................................................................................................8

*Flannigan v. Vulcan Power Grp. LLC*,
　642 F. App'x 46 (2d Cir. 2016) ..............................................................................................6

*Gil v. Gulfstream Park Racing Ass'n, Inc.*,
　399 F.3d 391 (1st Cir. 2005)..................................................................................................16

*Hickman v. Taylor*,
　329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)..................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
　220 F.R.D. 30 (S.D.N.Y. 2003) ......................................................................................11, 13

*J.S. v. Attica Cent. Sch.*,
　No. 00-CV-513S(F), 2008 WL 2986388 (W.D.N.Y. July 31, 2008) ......................................8

*Kogut v. Cty. of Nassau*,
No. CV066695JSWDW, 2011 WL 13284713 (E.D.N.Y. Nov. 9, 2011) ...............................10

*Liveperson, Inc. v. 24/7 Customer, Inc.*,
No. 14 CIV. 1559 RWS, 2015 WL 4597546 (S.D.N.Y. July 30, 2015)...................................7

*Luv N' Care, Ltd. v. Shiboleth LLP*,
No. 16-CV-3179 (AJN), 2017 WL 3671039 (S.D.N.Y. Aug. 8, 2017)...................................8

*Management Information Technologies, Inc. v. Alyeska Pipeline Serv's Co.*,
151 F.R.D. 478 (D.D.C. 1993)........................................................................12, 17

*Mitchell v. Fishbein*,
227 F.R.D. 239 (S.D.N.Y. 2005) ................................................................................16

*In re Palermo*,
2011 WL 446209 (E.D.N.Y. Feb. 7, 2011)......................................................................2

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v.*
*Arbitron, Inc.*,
278 F.R.D. 335 (S.D.N.Y. 2011) ......................................................................... *passim*

*Protex Int'l Corp. v. Vanguard Products Group, Inc.*,
No. CV 05–5355, 2006 WL 3827423 (E.D.N.Y. Dec. 27, 2006)............................................8

*Ramirez v. Boehringer Ingelheim Pharm., Inc.*,
425 F.3d 67 (1st Cir. 2005)......................................................................................16

*Richard v. Dignean*, No. 11-CV-6013W,
2017 WL 3083916 (W.D.N.Y. July 20, 2017).................................................................8

*Roth v. Bank of Commonwealth*,
No. CIV-76-16E, 1988 WL 43963 (W.D.N.Y. May 4, 1988).................................................8

*In re Savitt/Adler Litig.*,
176 F.R.D. 44 (N.D.N.Y. 1997)................................................................................8

*Shannon v. New York Transit Auth.*,
No. 00 CIV. 5079, 2001 WL 286727 (S.D.N.Y. Mar.22, 2001) .............................................8

*In re SLM Corp. Sec. Litig.*,
No. 08 CIV. 1029, 2011 WL 611854 (S.D.N.Y. Feb. 15, 2011) ............................................13

*Smalls v. New York Hosp. Med. Ctr. of Queens*,
No. 13 CV 1257 (RRM), 2013 WL 12333083 (E.D.N.Y. Oct 15, 2013)........................4, 7, 9

*Solarex Corp.v. Arco Solar, Inc.*,
870 F.2d 642 (Fed. Cir. 1989), (E.D.N.Y. 1988).................................................................16

*Steele v. CVS Pharmacy, Inc.*,
    No. 15CV4261JGKKNF, 2016 WL 1659317 (S.D.N.Y. Apr. 18, 2016)...............................10

*Tracy v. NVR, Inc.*,
    250 F.R.D. 130 (W.D.N.Y. 2008)............................................................................10

*United States v. Dist. Council of New York City & Vicinity of United Bhd. of
    Carpenters & Joiners of Am.*,
    No. 90 CIV. 5722 (CSH), 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992).....................4, 10, 12

*US Bank Nat. Ass'n v. PHL Variable Ins. Co.*,
    No. 12 CIV. 6811 CM JCF, 2013 WL 5495542 (S.D.N.Y. Oct. 3, 2013).............................10

*Usery v. Ritter*,
    547 F.2d 528 (10th Cir. 1977) ...............................................................................17

*Virmani v. Novant Health Inc.*,
    259 F.3d 284 (4th Cir. 2001) .................................................................................16

**Other Authorities**

Federal Rule of Civil Procedure 26(a) .........................................................................6

Federal Rules of Civil Procedure 26(b)(3)...............................................................4, 5, 6

Plaintiff the National Rifle Association of America (the "NRA") submits this memorandum of law in opposition to defendant Maria T. Vullo's ("Vullo") motion to compel the NRA's interrogatory answers (the "Motion"), as follows:

## I.
## PRELIMINARY STATEMENT

Vullo, her former colleagues at the New York State Department of Financial Services ("DFS"), and her former boss, Governor Andrew Cuomo ("Cuomo"), stand accused of coercively leveraging DFS' regulatory powers over insurance companies to force them to cease doing business with the NRA. That coercion included statements made by Vullo directly to executives of at least one underwriting provider, Lloyd's,[1] that Lloyd's would receive more favorable treatment from DFS if it selectively discontinued services to the NRA.[2] The NRA's allegations have now withstood ***three*** motions to dismiss, and for ***over two years***, the NRA has sought discovery from Vullo and DFS to no avail—even after the Court granted the NRA's motion for an ***expedited*** deposition of Vullo more than a year ago.[3] Rather than comply with their discovery obligation to provide documents and information which would illuminate details of the meetings the NRA is informed and believed occurred, Vullo and the other Defendants continue to lodge successive dismissal motions and motions to reconsider.[4] Vullo has also improperly threatened Rule 11 sanctions,[5] and now wishes to waste this Court's time with a motion to compel a response

---

[1] Lloyd's syndicates are comprised of one or more members of the Lloyd's market that provide capital to underwrite insurance policies. These syndicates are managed by managing agents on behalf of the members. *See The Lloyd's Market*, LLOYD'S, https://www.lloyds.com/about-lloyds/what-is-lloyds/the-lloyds-market.

[2] *See* Second Amended Complaint, ECF No. 203 ("SAC"), at ¶¶21, 68-70.

[3] *See* March 20, 2019 Memorandum-Decision & Order permitting the NRA to depose Vullo, ECF No. 89.

[4] *See* ECF Nos. 27, 40, 63, 95, 199, 210, 211.

[5] *See* Motion at 5; *see also* ECF No. 250 at 3.

to a premature set of contention interrogatories regarding her own meetings with Lloyd's. These maneuvers serve no cognizable legitimate purpose and appear designed to harass the NRA and evade the discovery to which the NRA is entitled. The Court should not entertain such gamesmanship.

**First**, the NRA has already complied—repeatedly—with its discovery obligations. Vullo is alleged to have met during or around February 2018 with representatives of Lloyd's, at which time she coerced them to cease insuring NRA-related products. The individuals with personal knowledge of the substance of those meetings are Vullo and the Lloyd's representatives who were present. In its initial disclosures, the NRA identified former Lloyd's CEO Inga Beale as one person with knowledge.[6] The NRA disclosed the same in response to Vullo's Interrogatories.[7] Although the NRA believes that other individuals were present at the alleged meetings, Vullo knows the identities of such participants. The NRA reserves its right to amend its initial disclosures and interrogatory response as appropriate whenever Vullo and DFS provide the discovery to which the NRA is entitled.

**Second**, Vullo's demand to know how the NRA's counsel learned certain information is an improper attempt to invade the NRA's investigation, which this Circuit has repeatedly held to constitute protected attorney work product. Vullo has demonstrated no substantial need for the information she seeks, as required to overcome the qualified work product privilege. Although Vullo cites various securities cases where courts compelled disclosure of the identities of confidential witnesses employed by securities issuers, such decisions are inapposite. Here, there is no need to ferret out names of issuer employees likely to have firsthand knowledge of business

---

[6] *See* ECF No. 257 at 3.

[7] *See* ECF No. 293-6 at 2-3.

2

activities imputable to their employer.  Instead, Vullo is alleged to have ***personally participated*** in the meetings at issue.  Vullo and DFS know the identities of others who were present and the details of their own conversations.  Knowing the source of the NRA's knowledge will not aid Vullo in discovering whom she met with at Lloyd's, on which dates, or what they discussed.  Vullo and DFS possess such information, however, and should produce it.

The NRA makes its allegations in good faith.  If they are false, as Vullo insists, then Vullo and DFS should promptly produce relevant documents (which the Court ordered be produced months ago, and Defendants continue to withhold without justification),[8] abandon their efforts to obstruct Hague discovery from relevant Lloyd's entities, and agree to a date for an in-person deposition of Vullo.  This would ensure that the true and full facts regarding Vullo's interactions with Lloyd's can become public record.  Instead, Vullo and the other Defendants have taken the exact opposite posture: moving to stay discovery, even from third parties, while seeking to compel disclosure of work product by the NRA.[9]

The Court should deny Vullo's motion—and, as argued in a separate submission,[10] should promptly permit discovery to proceed.

## II.
## LEGAL STANDARD

Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, material prepared by or at the request of an attorney in anticipation of litigation is not subject to discovery.[11]  A party may

---

[8] *See* ECF No. 295 at 2.

[9] *See* ECF Nos. 302, 303.

[10] *See* Plaintiff's opposition to Defendants' motions to stay discovery, ECF No. 306.

[11] *See Feacher v. Intercontinental Hotels Grp.*, No. CIV.A. 3:06-CV-0877, 2007 WL 3104329, at *1 (N.D.N.Y. Oct. 22, 2007) (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)); *see also Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13 CV 1257 (RRM), 2013 WL 12333083, at *2 (E.D.N.Y. Oct

withhold production of material that is (1) a document or tangible thing;[12] (2) that was prepared in anticipation of litigation; and (3) that was prepared by or for a party, or by his representative,[13] unless the requesting party can demonstrate a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[14]

The Supreme Court in *Hickman v. Taylor* recognized that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."[15]

By its terms, Rule 26(b)(3) makes clear that the work product doctrine protects work done in anticipation of litigation or trial by an attorney, as well as a party or other agents of the party or its representative, including materials produced or information possessed by an agent working for an attorney, such as an investigator.[16]   "The work product doctrine serves to encourage vigorous

---

15, 2013) (citing Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Subpoenas Dated Mar. 19. 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2002)).

[12] *See United States v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *7 (S.D.N.Y. Aug. 18, 1992) ("Although the work product doctrine is most commonly applied to documents and things, unjustified disclosure of the opinions or mental processes of counsel may occur when questions are posed which seek information at depositions or in interrogatories.") (citing 4 *Moore's Federal Practice,* ¶ 26.64[1] at 26–349 (2d ed. 1991)).

[13] *See Feacher*, 2007 WL 3104329, at *1 (citing *United States v. Adlman,* 68 F.3d 1495, 1500-01 (2d Cir.1995) ("The work-product rule shields from disclosure materials prepared "in anticipation of litigation" by a party, or the party's representative, absent a showing of substantial need."))

[14] *See id.*, at *4 (quoting Fed. R. Civ. P. 26(b)(3)).

[15] *See Hickman*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (precluding discovery of oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation).

[16] *See id.* (attorneys often must rely on investigators and work product doctrine applies to materials prepared by such agents) (citing *United States v. Nobles,* 422 U.S. 225, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975); *see also*

investigation of disputed claims, unfettered by fear that the products of such efforts will be compromised and fall into an adversary's hands."[17] In determining whether information is protected work product, courts have considered such factors as: the extent to which the substance of an attorney's thinking and strategy would actually be revealed; the timing of such revelation; and whether the information was otherwise available to the seeking party or beyond its reasonable access.[18]

### III.
### ARGUMENT AND AUTHORITIES

**A.     The NRA Has Complied With Its Discovery Obligations, But Defendants Have Not—Making the Motion, At Best, Premature.**

Defendant Vullo asks this Court to remedy alleged deficiencies in the NRA's response to an interrogatory seeking the names of individuals with knowledge of her improper interactions with Lloyd's executives, as well as additional details regarding those meetings.[19]  Vullo's Interrogatories are substantially duplicative of the initial disclosures already required under Federal Rule 26(a) (which the NRA provided), and her Motion identifies no actual deficiency in the NRA's response.  Vullo asked about the individuals with knowledge of the alleged meetings, and the NRA identified one former Lloyd's executive, Inga Beale, by name;[20] it also indicated that

---

*Feacher*, 2007 WL 3104329, at *2 (citing *Lopez v. City of New York,* No. 05-CV-3624, 2007 WL 869590, at *2 (E.D.N.Y. Mar. 20, 2007)).

[17] *See Feacher*, 2007 WL 3104329, at *3 (finding that a factual witness statement constitutes work product "[b]ecause the work product doctrine, as embodied in Rule 26(b)(3), does not stop at protecting mere litigation strategy, but instead goes further to insure that, by affording protection to the results of investigations into litigated claims, the adversary system upon which our civil judicial system is predicated the interests of justice will best be served, the distinction between litigation strategy and matters of pure fact does not control the work product analysis.")

[18] *See id.*

[19] *See* Motion at 6-8, 10.

[20] *See* ECF No. 293-6 at 2-3.

other Lloyd's senior representatives likely participated in such meetings.[21]  The NRA additionally provided responsive information regarding the time period of the alleged meetings.[22]  It is unclear what else Vullo requires in order to proceed in this case, nor is there any merit to her contention that the NRA's disclosures to date deprive her of a meaningful opportunity to conduct discovery.[23]  "[A] list of individuals who have knowledge of information about the parties' claims or defenses [...] is sufficient"[24] to allow a litigant to pursue discovery.  "The determination of whether such [individuals] possess relevant information is [Vullo]'s to make."[25]  Vullo is free to depose Beale and the individuals who participated in the alleged meetings—whose names are known to Vullo or to DFS. [26]

Vullo's claim that she is entitled to additional disclosure regarding how the NRA learned of this information or "confirmation of [the NRA's] lack of any factual basis"[27] for its allegations is unsupported by law or common sense.  The NRA has already survived multiple motions to dismiss and has identified individuals and entities that—to its knowledge—have information regarding the subject matter of the litigation.  Any additional detail regarding the Vullo-Lloyd's meetings remains uniquely within Vullo's knowledge or within the knowledge of third parties.

---

[21] *See id.*

[22] *See* SAC at ¶¶21, 69.

[23] Vullo inexplicably cites *Flannigan v. Vulcan Power Grp.*, LLC, 642 F. App'x 46, 50 (2d Cir. 2016) in support of this point.  *Flannigan* concerned the admissibility of witness testimony at trial where the witness had not been disclosed in earlier discovery responses.  This Motion has no bearing on who will appear at trial—indeed, the source of the NRA's information is not a contemplated trial witness—and Vullo is free to litigate the propriety of the NRA's trial witnesses when that time comes.

[24] *See e.g. Smalls*, 2013 WL 12333083, at *2.

[25] *See id.*

[26] *See Liveperson, Inc. v. 24/7 Customer, Inc.*, No. 14 CIV 1559 RWS, 2015 WL 4597546, at *7 (S.D.N.Y. July 30, 2015).

[27] *See* Motion at 9-13.

Having survived multiple motions to dismiss, the NRA is entitled to discovery ***from Vullo*** about the subject matter of its allegations—not obligated to indulge in Defendants' continued stonewalling of their own discovery responses, while submitting to invasive demands for details of NRA counsel's investigation and mental impressions.   Given that the NRA has yet to receive meaningful discovery from Vullo or DFS, Vullo's Motion is, at best, premature—because "only after discovery is completed will the Court properly have evidence before it regarding the veracity of Plaintiff's allegations."[28]   Courts have found contention interrogatories premature where no "significant discovery has taken place;"[29] indeed, "if served before prior discovery has established a reasonable factual predicate," such interrogatories "may do more harm than good."[30]   Vullo's own cases are consistent with these principles: in *J.S. v. Attica Cent. Sch.*[31] and *In re Savitt/Adler Litig*,[32] upon which Vullo relies, the parties had already exchanged documents and conducted depositions.   In this case, DFS possesses tens of thousands of documents regarding its activities

---

[28] *See Luv N' Care, Ltd. v. Shiboleth LLP*, No. 16-CV-3179 (AJN), 2017 WL 3671039, at *13 (S.D.N.Y. Aug. 8, 2017) (denying motion for sanctions); *see also Baskin v. Lagone*, No. 90 CIV. 5478 (RPP), 1993 WL 59781, at *6 (S.D.N.Y. Mar. 3, 1993) (same).

[29] *See Protex Int'l Corp. v. Vanguard Products Group, Inc.*, No. CV 05–5355, 2006 WL 3827423, at *2 (E.D.N.Y. Dec. 27, 2006) (finding that "[t]he burden imposed on Protex in responding to these requests outweighs the likelihood that useful information will be produced when Protex has not had discovery of [defendant's] documents."); *see also Richard v. Dignean*, No. 11-CV-6013W, 2017 WL 3083916, at *5 (W.D.N.Y. July 20, 2017) ("Richard appears to challenge the veracity of several statements made by defendants in their pleadings and other filings. Such challenges are premature and must await resolution by the trier of fact on a dispositive motion or at trial."); *Shannon v. New York Transit Auth.*, No. 00 CIV. 5079, 2001 WL 286727, at *3 (S.D.N.Y. Mar.22, 2001) (finding that because only document discovery had occurred, the contention interrogatories were premature); *Roth v. Bank of Commonwealth*, No. CIV-76-16E, 1988 WL 43963, at *5 (W.D.N.Y. May 4, 1988); (finding that half of defendants' interrogatories were "contention interrogatories and need not be answered until the substantial completion of pretrial discovery"); *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992) (denying defendants' motion to compel responses to contention interrogatories because "substantial discovery remains to be conducted ...").

[30] *In re Facebook, Inc.*, 2016 WL 5080152, at *3 (S.D.N.Y. July 7, 2016). (emphasis added).

[31] *See J.S. v. Attica Cent. Sch.*, No. 00-CV-513S(F), 2008 WL 2986388 (W.D.N.Y. July 31, 2008).

[32] *See In re Savitt/Adler Litig.*, 176 F.R.D. 44, 48 (N.D.N.Y. 1997).

7

during Vullo's tenure which it continues to withhold,[33] even after Judge McAvoy granted the NRA's motion to compel[34] and the Special Master overruled Defendants' frivolous privilege claims.[35]  Not a single deposition has occurred—nor can any occur while Defendants' motion for (yet another) stay of discovery remains pending.[36]  Despite their complaints about the burden and expense of litigating while they continue to seek dismissal of the NRA's claims,[37] Vullo and the other Defendants have made time to oppose the NRA's pursuit of Hague discovery, which would allow documents and depositions to be sought from key Lloyd's personnel.[38]  Requiring the NRA to provide details of interactions to which it was not a party without the benefit of pre-trial discovery is not only not required by Rules 26 or 33, but would also be unfair given the paucity of discovery the NRA has received to date.

**B.**    **The Identities of Individuals Interviewed by NRA Counsel Are Not Proper Subjects of Discovery.**

Despite already having been provided with the names of witnesses the NRA believes possess personal knowledge regarding her threats to Lloyd's, Vullo demands "the information upon which Plaintiff has based its understanding and belief" as alleged in the Complaint.[39]  This can only be construed as an improper demand for "the identification of persons who have been contacted or interviewed by counsel concerning the case," which courts have repeatedly held

---

[33] *See* Cuomo and DFS's motion to stay discovery, ECF No. 302, at 4.

[34] *See* ECF No. 188.

[35] *See* Special Master's First and Second Report and Recommendation.

[36] *See* October 7, 2020 Text Minute Entry for teleconference held before Magistrate Judge Hummel.

[37] *See* Cuomo and DFS's motion to stay discovery, ECF No. 302, at 6; *see also* Vullo's motion to stay discovery, ECF No. 303, at 16.

[38] *See* ECF Nos. 258, 259.

[39] *See* Motion at 10.

constitutes protected work product,[40] which encroaches upon counsel's mental impressions and trial strategy.[41]   Accordingly, the weight of authority in the Second Circuit excludes such information from discovery.[42]   "How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled."[43]   As such, questions seeking the identity of witnesses with knowledge of facts underlying the allegations in a complaint or the identification of documents that support the allegations are protected as work product.[44]

---

[40] *See Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13 CV 1257 (RRM), 2013 WL 12333083, at *2 (E.D.N.Y. Oct 15, 2013) (denying plaintiff's request to compel defendants to provide a list of individuals interviewed regarding plaintiff's allegations) (citing *Didonna v. Village Farms IGA, LLC*, No. CV 12-1487 JS ARL, 2012 WL 3879149, at *3 (E.D.N.Y. Sept. 6, 2012), and *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 132 (W.D.N.Y. 2008)).

[41] *See Didonna*, 2012 WL 3879149, at *1 (in denying plaintiff's motion to compel, the court concluded that the information sought—identity of individuals that defense counsel had interviewed concerning the allegations in plaintiff's complaint in order to identify potential fact witnesses, and identity of each individual who had given oral, written or recorded statements about facts alleged in the pleadings together with specific information about those statements—"does disclose an attorney's mental impressions and strategies.")

[42] *See id*. (citing *Seven Hanover Ass'n v. Jones Lang LaSalle Am., Inc.*, No. 04 CIV. 4143 PACMHD, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005) (finding that "[d]efendant [was] free to ask for names of persons with knowledge of the facts, but [was] not entitled, through plaintiffs, to identification of who among such knowledgeable individuals [had] been interviewed by plaintiffs' attorney")).

[43] *See id*. (quoting *Dist. Council of New York City,* No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *10); *see also Kogut v. Cty. of Nassau*, No. CV066695JSWDW, 2011 WL 13284713, at *4 (E.D.N.Y. Nov. 9, 2011) (denying in part motion to compel because the identity of the witnesses actually interviewed by the County attorneys is … protected" and "[w]hile defendants must disclose the names of individuals with discoverable information, defense counsel's decisions as to which of those individuals to interview constitute attorney work product."); *Tracy*, 250 F.R.D. 130, 133 (denying motion to compel because work product doctrine protected from disclosure identity of individuals whom employer's counsel had interviewed and from whom counsel had requested documents, and information about individuals who assisted employer's counsel in responding to employee's discovery demands.); *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2013 WL 5495542, at *10 (S.D.N.Y. Oct. 3, 2013) (denying motion to compel because the identities of the individuals the plaintiff interviewed in its investigation were protected as work product.); *Steele v. CVS Pharmacy, Inc.*, No. 15CV4261JGKKNF, 2016 WL 1659317, at *1 (S.D.N.Y. Apr. 18, 2016) (denying motion to compel after *in camera* review because the identities of third-party witnesses pertinent to the case have the potential to reveal counsel's opinions, thought processes or strategies and are, therefore, protected as work product.)

[44] *See Dist. Council of New York City*, 1992 WL 208284, at *7 (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385).

Vullo relies on a handful of securities fraud cases for the proposition that litigants relying upon information from confidential witnesses must identify those witnesses.[45] But none of Vullo's cases bear any resemblance to this one, and all involve disclosures sought by defendant corporations regarding identities of current or former employees whose conduct could be imputed to the corporation.  In *Plumbers*, for example, the corporate defendant was accused of concealing information about delays and problems plaguing a technology it planned to launch, and moved to compel disclosure of the identities of current or former employees who knew about the problems with its product.[46]  Similarly, in *In re IPO*, the corporate defendant was accused of entering into improper tie-in arrangements with prospective purchasers of the IPO in order to inflate the aftermarket price of its shares, and sought to discover the identities of employees and counterparties who purportedly had firsthand knowledge of this scheme.[47]  In both cases, all witnesses had direct personal knowledge of conduct imputable to the corporate defendant, but potentially unknown by its leadership;[48] moreover, at least some of the confidential witnesses were contemplated deposition or trial witnesses.[49]  The courts in those cases determined that because these individuals possessed firsthand information and their identities would ultimately become known via depositions, there was no basis to withhold their identities during earlier discovery as

---

[45] *See* Motion at 8.

[46] *See Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 344 (S.D.N.Y. 2011).

[47] *See In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30 (S.D.N.Y. 2003).

[48] *See Plumbers*, 278 F.R.D. 335 and *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30.

[49] *See, e.g., Plumbers*, 278 F.R.D. at 340.

"work product,"[50] or, in the alternative, that any work-product protection was overcome by the substantial need of the defendant.[51]

The NRA will duly disclose, at the appropriate time, the identities of any witnesses it plans to offer at trial. It has also complied with its initial disclosure obligations and responded to Vullo's interrogatories. Vullo now, additionally, urges the Court to order an impermissible fishing expedition into how the NRA's counsel learned of the existence of certain events, and which conversations NRA counsel had in mind when certain allegations were drafted. Such disclosures would be improper, and would "at best marginally relevant to the issues at stake in this litigation."[52] In this situation, Vullo does not and cannot show "substantial need."[53]

The allegations in the SAC are grounded in facts uncovered through months of investigative work conducted by NRA counsel and a consulting expert.[54] Such information would reveal the mental impressions and strategies of the NRA's counsel in ascertaining the relevance and sufficiency of facts alleged in the NRA's complaint. Therefore, the identities and statements of individuals consulted by NRA counsel in support of the NRA's allegations is protected work product.

**C.   <u>Vullo Has No Substantial Need For The Requested Information.</u>**

The production of material prepared in anticipation of litigation may be ordered only if the requesting party can demonstrate a "substantial need of the materials in the preparation of the

---

[50] *See In re Initial Pub. Offering Sec. Litig*., 220 F.R.D. 30.

[51] *See Plumbers*, 278 F.R.D. 335.

[52] *See Management Information Technologies, Inc. v. Alyeska Pipeline Serv's Co*., 151 F.R.D. 478, 482 (D.D.C. 1993) (denying motion to compel because the identities of the confidential informants who might be subject to retaliation did not "go to the heart of the case").

[53] *See Feacher*, 2007 WL 3104329, at *1.

[54] *See* ECF No. 155 at 6-7.

party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[55]   Here, Vullo is improperly attempting to secure privileged communications between NRA counsel and multiple individuals who claim knowledge of the facts underlying the NRA's claims without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of her case or cause any hardship or injustice.

Importantly, Vullo seeks information that is already in her possession.[56]   As alleged in the SAC, Vullo, and the other Defendants, either stated, published, or were party to the threats, backroom exhortations, and backchannel communications at issue. As such, they are uniquely situated to identify responsive information that resides in information and documents to which the NRA continues to be denied access.   Indeed, Vullo is fully aware that the details of the threats, backroom exhortations, and backchannel communications are among those sought by the NRA through discovery served almost two years ago, to which Defendants still have not meaningfully responded.

This stands in stark contrast to cases like *Plumbers*,[57] *In re IPO*,[58] and *In re SLM*,[59] where the facts at issue were known to the specific witnesses and, while legally imputable, were not known to the corporate defendants.[60]   The courts in those cases noted the burden that would attach

---

[55] *See Feacher*, 2007 WL 3104329, at *1 (quoting Fed. R. Civ. P. 26(b)(3)); *see also Dist. Council of New York City*, 1992 WL 208284, at *7.

[56] *See* SAC at ¶¶21, 69

[57] *See Plumbers*, 278 F.R.D. 335.

[58] *See In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30.

[59] *See In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029, 2011 WL 611854 (S.D.N.Y. Feb. 15, 2011).

[60] *See In re Savitt* (finding substantial hardship test met where "critical information [was] in the sole possession" of the non-requesting party).

of having to both (i) identify which of their thousands of employees had relevant knowledge, and (ii) play a game of "Where's Waldo" in identifying which of the witnesses identified in interrogatory responses consisting of dozens of names were the confidential witnesses.  The *SLM* court further noted that there was no other source for the information other than the witnesses at issue.[61]  Here, the NRA has identified only 24 potential witnesses, and more importantly, Vullo has no need to find "Waldo" amongst hundreds or thousands of employees.  She has *specific, personal* information about the events at issue that is superior to what the NRA currently possess.

Vullo cannot possibly show a substantial need for information relating to meetings in which she participated.  Tellingly, Vullo and the other Defendants continue to oppose Hague discovery which would more fully illuminate the record of Vullo's interactions with Lloyd's, and provide greater notice to all parties regarding the particularities of the backroom conversations which the NRA is informed and believes occurred.  Vullo opposes this discovery because she knows the NRA's claims are, in substance, true—not false.

## D.   <u>The NRA Has Not Waived Its Privilege Claims.</u>

Vullo argues that the NRA's objection is waived because "it is an untimely response to Defendants' Interrogatories; it does not specify the type of privilege or protection being invoked; and it was not presented as part of Plaintiff's written objections to Defendants' Interrogatories."[62] She is wrong.

The NRA timely and specifically objected to General Instruction No. 3 of Defendants' Interrogatories, which provides that "[i]n answering these interrogatories, plaintiff is to furnish all information available to it, and/or its employees and agents, including its attorneys…" and to

---

[61] *See In re SLM*, 2011 WL 611854.

[62] *See* Motion at 13.

Defendants' definition of "Plaintiff" which purports to include the NRA's attorneys. The NRA stated in its objections and responses that "[t]he inclusion of the NRA's attorneys makes it highly likely that the Requests seek information that is protected by attorney client privilege or the work product doctrine."[63] Indeed, courts have held that such language in interrogatories is improper as it seeks information obtained from counsel in preparation for litigation which is protected by the attorney-client and work product privileges.[64] Vullo cites no authority for the proposition that the NRA's objection is insufficient to preserve its privilege claims. Instead, she argues that the NRA's "assertion did not give Ms. Vullo's counsel any knowledge that the NRA's response to Interrogatory 2 was being withheld on work product grounds [...]" It is evident that if Vullo asks in her Instructions that the NRA provide information from its counsel in response to each Interrogatory, the NRA's objection on work-product and attorney-client privilege grounds applies to each Interrogatory, including Interrogatory 2.

Further, given that Defendants refused to detail or log their own privilege objections in response to the NRA's discovery requests (apparently did not even supply an adequate privilege log for the Special Master until seven months after they were first ordered to do so by the Court),[65]

---

[63] *See* Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories, ECF 250-1, at 3; *see also* Plaintiff's Supplemental Objections and Responses to Defendants' First Set of Interrogatories.

[64] *See e.g., Donson Stores, Inc. v. Am. Bakeries Co.*, No. 72 CIV. 3991/AB, 1973 WL 791, at *2 (S.D.N.Y. Apr. 2, 1973) (striking the clause "including your counsel" from the interrogatory because such language seeks information obtain from counsel in preparation for litigation and is therefore protected by the attorney-client and the work product rule).

[65] As detailed in connection with the NRA's January 2019 motion to compel, the NRA patiently requested on multiple occasions that Defendants supplement their broad, generic privilege objections with some form of privilege log. Defendants refused. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's motion to compel, ECF No. 79 at 16-17 (arguing that Defendants are exempt from providing a privilege log or formally asserting privilege). On August 8, 2019, the Court ordered Defendants to produce purportedly privileged documents for *in camera* review, along with a privilege log. *See* ECF No. 121 at 53. As of June 11, 2020, the Special Master indicated that he still had not received an adequate privilege log, and was required to demand basic categories of information from Defendants, such as which documents were attached to which emails. (*see id.* at 26).

14

they are in no position to contend that the NRA's general objections in its interrogatory responses effected a waiver of privilege.  Notably, Vullo, and the other Defendants, argued the complete opposite in their opposition to the NRA's motion to compel.  Indeed, they contended that

> The NRA's claim that a formal assertion of privileges [including attorney work product that they characterized as a privilege] should have been made in the Defendants' objections is also without merit. Apart from the fact that such a requirement is found nowhere in either the Federal Rules or in the Northern District's Local Rules, given the Plaintiffs' clearly improper demands the Rules do not yet require Defendant to particularize their assertions of privilege.[66]

In any event, as explained above, the NRA has not waived its privilege claims.

---

[66] *See* Defendants' memorandum of law in opposition to Plaintiff's motion to compel, ECF No. 79, at 16 (emphasis added).

**IV.**
**<u>CONCLUSION</u>**

For the foregoing reasons, the NRA respectfully requests that this Court deny the Motion in its entirety, award the NRA its attorneys' fees incurred responding to the Motion, and grant the NRA all appropriate relief.

Dated:    November 9, 2020                    Respectfully submitted,


By:    */s/ Sarah B. Rogers*_____

        William A. Brewer III (Bar No. 700217)
        wab@brewerattorneys.com
        Sarah B. Rogers (Bar No. 700207)
        sbr@brewerattorneys.com
**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

## CERTIFICATE OF SERVICE

I certify that on November 9, 2020, I caused a copy of the foregoing to be served upon the following counsel electronically through the ECF system:

William A. Scott
Assistant Attorney General, Of Counsel
New York State Attorney General's Office
Albany Office, The Capitol
Albany, New York 12224-0341
Email: William.Scott@ag.ny.com

Debra L. Greenberger
EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue,
New York, New York 10020
dgreenberger@ecbalaw.com

/s/ Sarah B. Rogers
Sarah B. Rogers

17