DALLAS | NEW YORK

**BREWER**
ATTORNEYS & COUNSELORS

February 24, 2021

**VIA ECF**

Hon. Christian F. Hummel
United States Magistrate Judge
United States District Court
James T. Foley U.S. Courthouse
4445 Broadway, Room 441
Albany, New York 12207

   Re: *National Rifle Association of America v. Cuomo et. al*, No. 18-cv-566-TJM-CFH

Dear Judge Hummel:

On behalf of Plaintiff the National Rifle Association of America (the "NRA"), we write to request that the Court lift the confidentiality orders issued with respect to the Special Master's first Report and Recommendation dated June 11, 2020 ("First R&R"),[1] and the second Report and Recommendation dated July 13, 2020 ("Second R&R"),[2] as well as the accompanying documentation provided to the parties. In addition, notwithstanding the current discovery stay, the NRA requests that the documents deemed discoverable by the Special Master be promptly produced.

### I.  Defendants' Gamesmanship In The Discovery Process Has Prejudiced The NRA.

The NRA first served its discovery requests more than two years ago, on November 21, 2018. Confronted with Defendants' dilatory conduct in the discovery process, the NRA was forced to bring a motion to compel, which was filed on January 22, 2019 and decided by this Court on August 8, 2019 (such order, the "August 2019 Order").[3] The August 2019 Order directed Defendants to produce a privilege log as required under the Federal Rules of Civil Procedure with respect to certain categories of documents.[4] In addition, due to the high volume of documents asserted to be privileged, the Court directed the parties to meet and confer

---

[1] By Text Order dated June 17, 2020, the Court ordered that the First R&R and "any accompanying documentation provided to parties is to be considered CONFIDENTIAL unless and until the Court otherwise orders and may not be shared or distributed beyond the parties and counsel." *See* ECF No. 207.

[2] By Text Order dated July 22, 2020, the Court ordered that the Second R&R and "any accompanying documentation provided to parties is to be considered CONFIDENTIAL unless and until the Court otherwise orders and may not be shared or distributed beyond the parties and counsel." *See* ECF No. 229.

[3] *See* ECF No. 121 (the "August 2019 Order"). The August 2019 Order also held that certain categories of documents sought by the NRA exceeded the scope of relevant discovery, a determination that the NRA appealed. Judge McAvoy granted the NRA's appeal on March 31, 2020.

[4] *See* August 2019 Order at 53.

**BREWER**

**Hon. Christian F. Hummel**
February 24, 2021
Page 2

regarding the appointment of a Special Master to conduct an *in camera* review. Thereafter, the Court appointed a Special Master on November 13, 2019.[5]

After this protracted process—which could have been avoided but for Defendants' broad-brush privilege designations—Defendants furnished a deficient privilege log which they were ordered to supplement on February 4, 2020.[6] The privilege logs revealed a startling truth that Defendants concealed critical evidence for more than two years, in complete disregard of the Federal Rules of Civil Procedure. Indeed, the Special Master's First and Second R&Rs reveal Defendants' abuse of the assertion of privilege, including communications between Defendants and the news media[7] and with Everytown for Gun Safety ("Everytown").[8] Everytown is a partisan political interest group that has no role in the insurance-regulatory enforcement but, instead, exists solely to oppose the NRA.[9]

During a teleconference on April 10, 2020, this Court directed Defendants to begin making arrangements to produce documents encompassed in an Order from Judge McAvoy dated March 31, 2020,[10] which granted the NRA's appeal of the August 2019 Order.[11] Since then, approximately ten (10) months have elapsed, and Defendants have not produced a single document and continue to hide critical documents, which are not privileged, and which manifestly support the NRA's case. Clearly, there is no legitimate reason why documents that are not privileged should be withheld from the NRA—or from the public. As such, the stay order that the Court issued on December 14, 2020,[12] should be lifted and the categories of documents deemed discoverable by the Special Master in his First[13] and Second R&Rs[14] should be produced.

---

[5] *See* Order appointing Special Master, ECF No. 141.

[6] *See* ECF No. 167.

[7] *See* First R&R at 15-18.

[8] *See* Second R&R at 19-20.

[9] *See* https://everytown.org/about-everytown/ ("We are building a movement to: […] ***beat the NRA***") (emphasis added); *see also* https://momsdemandaction.org/everytown-statement-in-support-of-attorney-general-letitia-james-lawsuit-against-the-nra/ ("Everytown has continued to shine a spotlight on the NRA's downward spiral – including through NRAWatch.org, a website that educates the public about the NRA misdeeds, questionable finances and legal woes.")

[10] *See* ECF No. 188.

[11] *See* April 10, 2020 Text Minute Entry for teleconference held before Magistrate Judge Hummel.

[12] *See* ECF No. 314.

[13] Those categories of documents include (1) internal DFS communications in February 2018 that include initial drafts of the guidance letters and press release; (2) communications between DFS Executive Deputy

BREWER

**Hon. Christian F. Hummel**
February 24, 2021
Page 3

## II. The Public Has The Right To Know The Facts Regarding Defendants' Unconstitutional Conduct.

Public policy weighs in favor of exposing indicia of unconstitutional conduct by public officials. The harms which arise from such conduct are irreparable, and "the public plainly has a strong interest in learning as soon as possible whether the plaintiffs' allegations are true" in cases, like this one, that implicate core constitutional rights.[15] "The public's right of access to court proceedings and documents is well-established," and "[t]o delay or postpone disclosure undermines the benefit of public scrutiny."[16] Further, "[a]ccess to civil proceedings and records also acts as a valuable source of information in civil cases that have a 'public' character."[17] Here, the public interest encompasses the public's ability to review the Special Master's First and Second R&Rs which reveal the intentional nature of Defendants' plan to retaliate against the NRA as alleged in the Second Amended Complaint, and their scheme to conceal documents that they know are not privileged. Without question, Defendants' scheme to censor, suppress, and retaliate against political speech by NRA, the oldest civil rights organization in America, is a matter of public concern.[18] Indeed, gun rights remain one of the most hotly-debated political

---

Superintendent for communications and strategy Richard Loconte and Glenn Blain at the New York Daily News; (3) communications between DFS and the Executive Chamber regarding the guidance letters and press release, including communications regarding Richard Loconte's contacts with Glenn Blain at the New York Daily News; and (4) communications between Richard Loconte and the Executive Chamber regarding the content and language to be used in the guidance letters and press release.

[14] Those categories of documents include (1) documents provided by Ackerman McQueen to DFS; (2) documents regarding the NRA in DFS physical investigatory file; (3) documents provided by Lockton to DFS; (4) Carry Guard marketing materials; (5) Everytown For Gun Safety's analysis of Carry Guard; (6) communications between DFS and counsel for the NRA, Lockton and Ackerman McQueen; and (7) documents provided by the NRA to DFS.

[15] *See Torres v. Faxton St. Lukes Healthcare*, No. 6:16-CV-439, 2017 WL 11317906, at *2 (N.D.N.Y. Jan. 26, 2017) (citing *V.S. v. Muhammad*, 2008 WL 5068877, at *4 (E.D.N.Y. Nov. 24, 2008)).

[16] *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126–27 (2d Cir. 2006) (quoting *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("where the rights of the litigants come into conflict with the rights of the media and public at large, the trial judge's responsibilities are heightened. In such instances, the litigants' purported interest in confidentiality must be scrutinized heavily.")).

[17] *See Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983) ("The resolution of private disputes frequently involves issues and remedies affecting third parties or the general public. The community catharsis, which can only occur if the public can watch and participate, is also necessary in civil cases. Civil cases frequently involve issues crucial to the public—for example, discrimination, voting rights, antitrust issues, government regulation, bankruptcy, etc.")).

[18] *See Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 1216, 179 L. Ed. 2d 172 (2011) (holding that speech addresses matters of public concern "'when it can be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of

**Hon. Christian F. Hummel**
February 24, 2021
Page 4

issues in the nation.[19]  As the American Civil Liberty Union noted in its amicus curiae brief in support of the NRA's opposition to Defendants' motion to dismiss its amended complaint, "[t]he preservation of the principle of viewpoint neutrality is […] of immense concern,"[20] and "[i]f the NRA's allegations were deemed insufficient to survive a motion to dismiss, it would set a dangerous precedent for advocacy group across the political spectrum. Public officials would have a readymade playbook for abusing their regulatory power to harm disfavored advocacy groups without triggering judicial scrutiny […]"[21]

In sum, Defendants cannot advance any legitimate confidentiality concerns with respect to the documents at issue.  The public has the right to the information regarding the Government's efforts to destroy this civil rights organization.  Therefore, the NRA respectfully requests that the Court lift the confidentiality orders with respect to the First and Second R&Rs[22] and any accompanying documentation provided to the parties, and direct Defendants to produce the categories of documents deemed discoverable by the Special Master.

The NRA is available for a telephonic conference at the Court's earliest convenience. Thank you for your consideration of this matter.

Respectfully,

/s/ William A. Brewer
William A. Brewer III

---

general interest and of value and concern to the public.'") (quoting *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83–84, 125 S. Ct. 521, 525–26, 160 L. Ed. 2d 410 (2004)).

[19] *See e.g.* Elaine Godfrey, *Democrats' Unprecedented Embrace of Gun Control*, THE ATLANTIC (August 20, 2020), https://www.theatlantic.com/politics/archive/2020/08/democrats-unprecedented-support-gun-control-dnc/615514/ ("By 2019, polling showed that gun control was *the* top issue for voters in their home") (emphasis original); Amber Phillips, *The four issues besides coronavirus that democrats are hammering in their convention*, THE WASHINGTON POST (August 19, 2020), https://www.washingtonpost.com/politics/2020/08/19/four-issues-besides-coronavirus-that-democrats-are-hammering-their-convention/ ("Health care, yes, but also women's rights, racial justice and gun control"); *US GUN CONTROL: WHAT IS THE NRA AND WHY IS IT SO POWERFUL?,* BBC (August 6, 2020), https://www.bbc.com/news/world-us-canada-35261394.

[20] *See* ECF No. 49-1, at 1.

[21] *See id.*

[22] *See* ECF Nos. 207 and 229.