UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NATIONAL RIFLE ASSOCIATION OF
AMERICA,

                    Plaintiff,

          v.

ANDREW CUOMO, individually, and MARIA T.
VULLO, individually,

                    Defendants.

Case No. 18 Civ. 566 (TJM)(CFH)

**DEFENDANT VULLO'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STAY DISCOVERY PENDING APPEAL**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Defendant Maria Vullo*

<u>TABLE OF CONTENTS</u>

PAGE NO.

TABLE OF AUTHORITIES ...................................................................................iii-iv

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL HISTORY............................................................................................2

ARGUMENT .................................................................................................................5

I.      THE DISTRICT COURT HAS NO JURISDICTION OVER THE
      SURVIVING CLAIM AGAINST MS. VULLO DURING THE
      PENDENCY OF HER APPEAL TO THE SECOND CIRCUIT ..........................5

      A.     An interlocutory appeal of a denial of the qualified immunity
            defense divests the District Court of jurisdiction over
            the claims involved. ...................................................................................5

      B.     The District Court cannot retain jurisdiction because
            Ms. Vullo's appeal is not frivolous.............................................................8

            1.     The Northern District does not apply the limited exception
                 to the automatic divestment of jurisdiction for alleged
                 frivolous appeals. ..........................................................................8

            2.     The NRA has not sought certification and cannot establish
                 Ms. Vullo's meritorious appeal is frivolous. ..................................9

      C.     Staying discovery pending appeal is consistent with the policy
            rationales for qualified immunity.................................................................11

II.     IN THE ALTERNATIVE, MS. VULLO IS ENTITLED TO
      A DISCOVERY STAY UNDER THE FOUR-FACTOR STAY TEST ..............12

      A.     Courts in this Circuit order a stay of discovery pending an appeal
            on qualified immunity grounds when the balance of four factors
            weighs in favor of the appellant..................................................................12

      B.     Ms. Vullo has made a strong showing that she is likely to succeed
            on the merits of her appeal.........................................................................13

      C.     Ms. Vullo will be irreparably injured absent a stay. ..................................13

      D.     A temporary stay of discovery will not substantially injure the NRA.......15

      E.     A stay of discovery pending an appeal on qualified immunity
            is in the public interest. .............................................................................17

III.    A STAY OF DISCOVERY SHOULD APPLY TO THE ENTIRE CASE...........18

CONCLUSION...........................................................................................................................21

TABLE OF AUTHORITIES

PAGE NO.

**C**ASES

*Apostol v. Gallion*,
     870 F.2d 1335 (7th Cir. 1989) ........................................................................... 6

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)............................................................................. 10, 11, 14, 19

*Bean v. City of Buffalo*,
     822 F. Supp. 1016 (W.D.N.Y. 1993)............................................................... 8, 9

*Behrens v. Pelletier*,
     516 U.S. 299 (1996).......................................................................................... 6, 11

*Bradley v. Jusino*,
     No. 04-cv-8411, 2009 WL 1403891 (S.D.N.Y. May 18, 2009) ................... 7, 9, 12

*Chuman v. Wright*,
     960 F.2d 104 (9th Cir. 1992) ............................................................................... 6

*Edrei v. City of New York*,
     No. 16-cv-1652, 2017 WL 3822744 (S.D.N.Y. Aug. 31, 2017)............................ 7, 8, 18

*Griggs v. Provident Consumer Disc. Co.*,
     459 U.S. 56 (1982)........................................................................................... 5, 6

*Hallock v. Bonner*,
     No. 03-cv-195, 2003 WL 22519644 (N.D.N.Y. Nov. 4, 2003)...................... 6, 7

*Harlow v. Fitzgerald*,
     457 U.S. 800 (1982).......................................................................................... 7, 13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
     42 F. Supp. 3d 556 (S.D.N.Y. 2014).............................................................. 7, 9

*In re World Trade Ctr. Disaster Site Litig.*,
     503 F.3d 167 (2d Cir. 2007)........................................................................... 12

*Jemmott v. Coughlin*,
     85 F.3d 61 (2d Cir. 1996) ............................................................................... 17

*Jin Zhao v. State Univ. of New York*,
     613 F. App'x 61 (2d Cir. 2015)...................................................................... 5

*Mitchell v. Forsyth*,
     472 U.S. 511 (1985)........................................................................................ 14

*Mohammed v. Reno*,
    309 F.3d 95 (2d Cir. 2002)............................................................................ 17

*Morin v. Tormey*,
    No. 07-cv-0517, 2010 WL 2771826 (N.D.N.Y. Apr. 29, 2010)....................................... 7

*Palmer v. Goss*,
    No. 02-cv-5804, 2003 WL 22519454  (S.D.N.Y. Nov. 5, 2003)...................................... 9

*Plummer v. Quinn*,
    No. 07-cv-6154, 2008 WL 383507 (S.D.N.Y. Feb. 12, 2008) ............................ 13, 15, 18

*Rivera–Torres v. Ortiz Velez*,
    341 F.3d 86 (1st Cir. 2003) ............................................................................ 6

*Stewart v. Donges*,
    915 F.2d 572 (10th Cir.1990) .......................................................................... 6

*Will v. Hallock*,
    546 U.S. 345 (2006)..................................................................................... 11

*Williams v. Brooks*,
    996 F.2d 728 (5th Cir. 1993) .......................................................................... 6

*Zieper v. Metzinger*,
    474 F.3d 60 (2d Cir. 2007).............................................................................. 10

## STATUTES & RULES

2d Cir. L. R. 31.2(b)(1)(B).................................................................................. 16

Fed. R. Civ. P. 12(b)(6)..................................................................................... 16

## PRELIMINARY STATEMENT

Denials of qualified immunity are immediately appealable, one of the rare exceptions to the final judgment doctrine, and such appeals divest the District Court of jurisdiction.  Such denials are immediately appealable because the purpose of qualified immunity is to spare a defendant public official from *both* the burden of pre-trial discovery *and* sitting for proceedings—as the U.S. Supreme Court repeatedly has reiterated.  Compelling Ms. Vullo to participate in discovery while her strong immunity defense is pending on appeal would preemptively deny her the very protections to which she is entitled under controlling Supreme Court precedent.

Ms. Vullo's appeal to the Second Circuit, filed on March 22, 2021, divested this Court of jurisdiction over the NRA's claims against her, as Supreme Court precedent makes clear, and requires a stay of discovery.  Indeed, as case after case in this Circuit shows, a district court does not have the authority to oversee further proceedings involving Ms. Vullo until her appeal has been resolved—at least without a showing that her appeal is frivolous, which it clearly is not.  Under this precedent, the Court should stay discovery until the appeal is resolved.

Although not required, even under the four-factor balancing test used to determine whether to issue a discretionary stay, a stay is warranted here.  Ms. Vullo has established that she is likely to succeed on the merits of her appeal and be granted immunity regarding the one remaining claim against her.  Without a stay, she will forever lose her right of immunity from the substantial burdens of discovery.  Yet the NRA cannot point to any specific prejudice from a stay, complaining only of intangible harms of delay—which, given the expedited nature of this appeal, is minimal.  Lastly, the public interest in upholding the principles behind immunity weighs heavily in favor of recognizing the protections that immunity affords Ms. Vullo and granting the stay.

1

Given the importance of a discovery stay in protecting Ms. Vullo's immunity rights while her appeal is pending, the stay should extend to all discovery in this case. Aside from its claim against Ms. Vullo, the NRA's only remaining claim is against Governor Cuomo. Ms. Vullo should not be required to monitor, much less participate in, the NRA's discovery efforts in the case while her appeal is pending. Thus, a stay of discovery as to the claim against Ms. Vullo necessitates a stay of discovery as to all claims in the case. Waiting for the outcome of the appeal is the most efficient course for the resolution of this case. The parties are already re-briefing motions the NRA previously submitted, in light of the District Court's intervening decision. Both the Court and the parties would benefit from a final resolution before any discovery proceeds. Ms. Vullo therefore requests that this Court stay all discovery until the Second Circuit has resolved her pending appeal.

## PROCEDURAL HISTORY

The Court is familiar with the factual and procedural history of this case and Ms. Vullo will not restate it at length here. As relevant to this motion, Ms. Vullo notes the following events.

**Discovery Motions.** In the latter half of 2020, the NRA filed a series of discovery motions seeking, *inter alia*, Hague Convention discovery and letters rogatory against Lloyd's-related entities for wide-ranging documents and depositions of 14 witnesses in the United Kingdom, Dkts. 189, 204, and 246, and extensive document discovery of one of the NRA's political opponents, the non-profit organization Everytown for Gun Safety. Dkt. 251-27. At the same time, the NRA maintained its pursuit of voluminous materials from the Department of Financial Services ("DFS") by way of its objection to the Special Master's First Report and Recommendation. *See* Dkt. 262.

2

Ms. Vullo also moved to compel the NRA to fully answer interrogatories (in the event that discovery proceeded), as the NRA repeatedly has failed to provide any factual support in discovery for its allegations that Ms. Vullo engaged in "threats" and "backroom exhortations" with respect to regulated entities. *See* Dkt. 293. From the commencement of this litigation, despite numerous attempts by Ms. Vullo to obtain basic discovery from the NRA regarding these false allegations, the NRA has utterly failed to identify any facts to support the allegations, which form the core of its sole remaining claim against Ms. Vullo, mandating dismissal. Indeed, Judge McAvoy's decision from which Ms. Vullo appeals hinged on these alleged "threats" and "backroom exhortations," Dkt. 322—as to which the NRA has provided no discovery and there will be no credible evidence because they never happened.

On December 14, 2020, this Court ordered a stay of discovery—including non-party discovery—pending resolution of Ms. Vullo's and DFS and Governor Cuomo's separate motions to dismiss. Dkt. 314. As the Court observed then, "the breadth of discovery in this action is significant—both in sheer volume of material and expense." *Id.* at 8. A stay allowed the parties to conserve both time and expense pending the potential narrowing or elimination of the NRA's claims. *See id.* (noting the same).

**Judge McAvoy's Recent Decision.** On March 15, 2021, Judge McAvoy granted in part and denied in part Ms. Vullo's motion to dismiss the NRA's claims, significantly narrowing the claims against her. Dkt. 322 ("Order"). The District Court determined that Ms. Vullo is entitled to absolute immunity on the NRA's selective enforcement claims and dismissed those claims in their entirety. As to the First Amendment claim against Ms. Vullo, Judge McAvoy stated that he was "inclined to agree with Ms. Vullo that there is no case clearly establishing that otherwise protected public statements transform into an unlawful threat merely

3

because there is an ongoing, and unrelated, regulatory investigation." *Id.* at 25.  The District

Court nonetheless denied Ms. Vullo's assertion of qualified immunity on the First Amendment

claim "at this time" on the ground that "a question of material fact exists as to whether Ms. Vullo

explicitly threatened Lloyd's with DFS enforcement if the entity did not disassociate with the

NRA." *Id.* at 27.  Judge McAvoy dismissed the claims against DFS and Governor Cuomo in his

official capacity in their entirety.

On March 22, 2021, Ms. Vullo noticed her appeal of "that portion of the Opinion

and Order of the District Court for the Northern District of New York, decided and entered on

March 15, 2021 (Dkt. No. 322), that denied Ms. Vullo's motion to dismiss the claims against her

on qualified immunity grounds."  Dkt. 325.  This appeal, if granted, would resolve all remaining

claims against Ms. Vullo.

**Ongoing motion practice.**  On March 26, 2021, this Court held a conference with

all parties and third parties DFS and Everytown for Gun Safety.  Despite the significant

winnowing of the NRA's claims in light of Judge McAvoy's Order, the NRA nonetheless

reaffirmed its intent to seek expansive discovery against various U.K.-based Lloyd's-related

entities, Everytown for Gun Safety, and even the now-dismissed DFS.  The Court dismissed

without prejudice the NRA's motions seeking discovery from the Lloyd's-related entities and

Everytown for Gun Safety, and set a briefing schedule for the NRA to renew each motion.  Dkt.

328.  The Court further set a schedule for this stay motion and, given the impact of a stay on the

NRA's motions, noted that it will "likely address [the stay] motion first."  Mar. 26, 2021 Tr. of

Proceedings.  On April 7, 2021, the Court scheduled oral argument for April 22, 2021 on Ms.

Vullo's motion to compel the long-sought interrogatory responses from the NRA.  Dkt. 334.

**ARGUMENT**

Ms. Vullo is entitled to a stay of all proceedings against her in the District Court, including discovery, while her appeal of the District Court's denial of her qualified immunity defense is pending before the Second Circuit. The District Court was divested of jurisdiction over the NRA's claim against Ms. Vullo upon the filing of her notice of appeal. It no longer has the authority to oversee discovery related to the allegations against her, particularly where the NRA has not—and cannot—establish that her appeal is frivolous. Even applying the inapplicable four-factor test used to stay proceedings unrelated to a qualified immunity appeal, a discovery stay is fully warranted here. Moreover, this stay should extend to the entire case, as the basis for staying discovery as to Ms. Vullo extends to the entire case.

**I.      THE DISTRICT COURT HAS NO JURISDICTION OVER THE SURVIVING CLAIM AGAINST MS. VULLO DURING THE PENDENCY OF HER APPEAL TO THE SECOND CIRCUIT**

Ms. Vullo has appealed the District Court's denial of her motion to dismiss the NRA's First Amendment claim against her on the basis of qualified immunity. *See* Dkt. 325. Her appeal divested the District Court of jurisdiction over that claim. Until the Second Circuit has resolved Ms. Vullo's appeal, discovery must be stayed.[1]

**A.      An interlocutory appeal of a denial of the qualified immunity defense divests the District Court of jurisdiction over the claims involved.**

As a general rule, the filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Jin Zhao v. State Univ. of New York*, 613 F. App'x 61, 62 (2d Cir. 2015) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)) (asserting jurisdiction over appealed issue of fee award but not appealed

---

[1] Similarly, because the District Court lacks jurisdiction over the remaining claim against Ms. Vullo, Ms. Vullo is not required to file an answer until the Second Circuit has resolved the appeal.

issue of settlement agreement).  "The filing of a notice of appeal is an event of jurisdictional significance." *Griggs*, 459 U.S. at 58.  The District Court may only retain jurisdiction of the matter on appeal when the Court of Appeals has "establish[ed] summary procedures and calendars to weed out frivolous claims," such as allowing the district court to certify an immunity appeal as frivolous. *Behrens v. Pelletier*, 516 U.S. 299, 308, 310-11 (1996).  The Second Circuit has not established such summary procedures to allow the District Court to certify appeals as frivolous (which the appeal clearly is not).

This divestment rule holds true for interlocutory appeals of the denial of an assertion of qualified immunity.  "[W]here a defendant who claims a qualified immunity from liability for civil rights violations files notice of an interlocutory appeal from a district court's denial of a dispositive motion on that defense, the court of appeals clearly has jurisdiction," which "divests the district court of jurisdiction." *Hallock v. Bonner*, No. 03-cv-195, 2003 WL 22519644, at *2 (N.D.N.Y. Nov. 4, 2003).  While the Second Circuit has not directly held that the filing of an interlocutory qualified immunity appeal automatically divests district courts of jurisdiction, the First, Fifth, Seventh, and Ninth Circuits have all held that district courts are automatically divested of jurisdiction, as *Hallock* recognized.[2]

Recognizing this rule, district courts in this Circuit routinely stay discovery once a defendant has filed an interlocutory appeal.  In *Hallock*, the district court denied the plaintiff's request for an order setting a discovery schedule for lack of jurisdiction pending resolution of the

---

[2] *See Williams v. Brooks*, 996 F.2d 728, 729 (5th Cir. 1993) ("[T]he traditional rule that the filing of a notice of appeal divests a district court of jurisdiction . . . applies with particular force in the immunity context."); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (holding that when a defendant files a notice of interlocutory appeal on an issue of qualified immunity, "the district court is automatically divested of jurisdiction to proceed with trial pending appeal"); *Stewart v. Donges*, 915 F.2d 572, 577 (10th Cir.1990) ("Defendants' right not to be tried while an interlocutory appeal is pending on qualified immunity arises 'automatically' upon the appeal").  The First and Seventh Circuits have reached similar holdings.  *See Rivera–Torres v. Ortiz Velez*, 341 F.3d 86, 93 (1st Cir. 2003); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989).

defendants' interlocutory appeal. *Hallock* pointed to the Supreme Court's holding in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), that "discovery should not be allowed" until immunity questions are resolved. *See also Morin v. Tormey*, No. 07-cv-0517, 2010 WL 2771826, at *2 n.2 (N.D.N.Y. Apr. 29, 2010) (deciding *sua sponte* that it "will not order the defendants to participate in any further discovery pending the resolution of their interlocutory appeal" of qualified immunity and citing *Hallock*); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 42 F. Supp. 3d 556, 558 (S.D.N.Y. 2014) ("[W]hen an appeal of the denial of qualified immunity is under consideration, discovery should not proceed.").

Similarly, the court in *Edrei v. City of New York*, No. 16-cv-1652, 2017 WL 3822744, at *1 (S.D.N.Y. Aug. 31, 2017), held that it lacked jurisdiction to permit any discovery when defendant was appealing the applicability of a qualified immunity defense in an excessive force case and the remaining claims were so similar in their factual basis to the issue being appealed that it could not properly exercise jurisdiction over those claims while the appeal was pending. Notably finding that "Defendants have established the merits of their motion [to stay proceedings] under the divestiture argument," the court stated that "consideration of [Defendants'] discretionary stay arguments need not be undertaken." *Id.* at *3 n.2.

To the same end, but framed differently, courts have held that a stay request was unnecessary—"moot" even—because the district court's lack of jurisdiction to proceed acts as an automatic stay. *Bradley v. Jusino*, No. 04-cv-8411, 2009 WL 1403891, at *1 (S.D.N.Y. May 18, 2009); *see also In re Facebook, Inc.,* 42 F. Supp. 3d at 559 (denying for lack of jurisdiction plaintiffs' motion to compel discovery against defendant with a pending appeal of qualified immunity denial without a stay request).

A discovery stay is equally required here.  Because Ms. Vullo has appealed denial of her motion to dismiss the First Amendment claim on qualified immunity grounds, and the NRA has no other extant claims against her, the District Court is divested of jurisdiction over this case as it relates to Ms. Vullo until her appeal is resolved.  *See Edrei*, 2017 WL 3822744, at *1.  The Court lacks jurisdiction to oversee any discovery related to the NRA's claim that Ms. Vullo violated the First Amendment, including the NRA's efforts to obtain party or third-party discovery to support its First Amendment claim against Ms. Vullo and its pending motions seeking this discovery.

### B.    The District Court cannot retain jurisdiction because Ms. Vullo's appeal is not frivolous.

While some courts in the Second Circuit have indicated that the automatic stay does not apply in the limited situation where a district court certifies the qualified immunity appeal as "frivolous," even if this Court were to adopt that approach, the NRA cannot establish—and has not even sought to establish—that this limited situation applies here. Unquestionably, Ms. Vullo's appeal is not frivolous, as Judge McAvoy's decision makes clear.

### 1.    The Northern District does not apply the limited exception to the automatic divestment of jurisdiction for alleged frivolous appeals.

Some courts in the Southern and Eastern District of New York have held that where there is a qualified immunity appeal, the district court is not divested of jurisdiction if— and only if—the court certifies that the appeal is frivolous.[3]  The prevailing approach in the Northern District, however, is that the appeal divests the Court of jurisdiction, period.  *See supra*

---

[3] As far as we can determine, the Northern District of New York has not employed this approach, and the Western District of New York has only done so once in a pre-*Behrens* decision—its only decision addressing jurisdiction on a qualified immunity appeal.  *See Bean v. City of Buffalo*, 822 F. Supp. 1016, 1019 (W.D.N.Y. 1993).  The prevailing approach in the Northern District is that there is a divestment of jurisdiction, period.

Section I.A.  And even where courts have applied the limited exception, they generally have

declined to certify the appeal as frivolous.  As the Southern District of New York has explained:

> [I]n the context of qualified immunity where an immediate appeal
> is necessary to vindicate the right not to be sued in derogation of
> fundamental constitutional guarantees, courts, including those in
> [the Southern District of New York], have applied a dual
> jurisdiction rule under which an appeal of the denial of qualified
> immunity under the collateral order doctrine divests the district
> court of jurisdiction to proceed with the trial unless the district
> court certifies the appeal as frivolous.

*Bradley*, 2009 WL 1403891, at *1 (cleaned up) (declining to certify qualified immunity appeal as

frivolous and denying as moot defendant's request for a stay given the court's lack of jurisdiction

to proceed); *see In re Facebook, Inc.,* 42 F. Supp. 3d at 559 (denying for lack of jurisdiction

plaintiffs' motion to compel discovery against defendant with a pending appeal of qualified

immunity denial where plaintiff did not request appeal to be certified as frivolous).

Courts generally only consider whether to certify an appeal as frivolous on the

plaintiff's request.  *See, e.g.*, *Bradley*, 2009 WL 1403891, at *1.

Interlocutory appeals of the denial of qualified immunity have generally only

been certified as frivolous when the appeal raised a question of fact only, such that there was no

ground for the Second Circuit to exercise jurisdiction.  *See Bean*, 822 F. Supp. at 1019, *Palmer v.

Goss*, No. 02-cv-5804, 2003 WL 22519454, at *1 (S.D.N.Y. Nov. 5, 2003).  Even were this

standard to apply, this case does not meet it.

### 2. The NRA has not sought certification and cannot establish Ms. Vullo's meritorious appeal is frivolous.

Here, the NRA has not moved the Court for certification and is unable to show

that certification would be appropriate here.

Ms. Vullo's appeal is clearly meritorious, and far from frivolous.  She has

substantial grounds for her appeal regarding the NRA's First Amendment claim on the basis of

qualified immunity, and these grounds were reinforced by the District Court's recent Order.  As

Judge McAvoy found, "there is no case clearly establishing that otherwise protected public

statements transform into an unlawful threat merely because there is an ongoing, and unrelated,

regulatory investigation."  Dkt. 322 at 25.  It was objectively reasonable for Ms. Vullo to believe

that when she engaged in protected—and "essential"—government speech to "address matters of

public importance," her conduct was lawful—and therefore protected by qualified immunity.

Dkt. 322 at 25-26; *see also Zieper v. Metzinger*, 474 F.3d 60, 68 (2d Cir. 2007) (granting

qualified immunity against First Amendment claim because it was not "apparent to a reasonable

officer that defendants' actions crossed the line between an attempt to convince and an attempt to

coerce").  Only the added context of barebones—and unsupported—allegations[4] of "threats" and

"backroom exhortations"—allegations that Ms. Vullo argues do not meet basic pleading

standards and otherwise do not undermine her entitlement to qualified immunity *as a matter of

law*—led Judge McAvoy to deny Ms. Vullo qualified immunity at this stage.  Dkt. 322 at 26-27.

Recognizing the limits of a qualified immunity appeal, Ms. Vullo is not challenging on appeal

the truth of these allegations.  Rather, her appeal will argue that these conclusory allegations are

insufficient under *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009), and other controlling caselaw to

make out a cognizable constitutional violation, much less one that had been clearly established at

the time the alleged conversations occurred.   Ms. Vullo further will argue that the NRA's entire

First Amendment theory—which seeks to characterize lawful and appropriate government

---

[4] As Ms. Vullo has informed this Court on multiple occasions, these allegations are false.  *See* Dkt. 293-1 (Def. Vullo's Mot. to Compel Interrogatory Responses); Dkt. 211 (Def. Vullo's Mot. to Dismiss).  While Ms. Vullo acknowledges Judge McAvoy's statement that this may present an issue of fact, Ms. Vullo's appeal will argue, based on settled Supreme Court and Second Circuit precedent, that, as a matter of law, the vague and conclusory allegations found in the Amended Complaint cannot support a First Amendment claim.  Ms. Vullo further will argue that such allegations cannot transform proper government speech and proper law enforcement actions directed towards regulated entities into a First Amendment violation as asserted by a third-party such as the NRA.  There are substantial grounds for Ms. Vullo's appellate argument on this point.  Moreover, Ms. Vullo notes that the NRA still has not provided any factual basis for these allegations, as set forth in her pending motion to compel.

speech in a non-binding guidance letter as coercive by referencing unrelated law enforcement

efforts involving regulated entities—fails as a matter of law.

These are substantial questions of law.  Thus, even if the NRA moves this Court

for an order to certify her appeal as frivolous, the Court would not be able to grant it.

In sum, the Court is fully divested of jurisdiction over the claim against Ms. Vullo

and cannot allow discovery related to this claim to proceed.  Ms. Vullo submits that, on this basis

alone, discovery in the case should be stayed.

## C.    Staying discovery pending appeal is consistent with the policy rationales for qualified immunity.

The Supreme Court has made clear that interlocutory appeals of qualified

immunity denials are one of the rare exceptions to the final judgment doctrine, because qualified

immunity is a "particularly important" defense whose value "would be lost through rigorous

application of a final judgment requirement."  *Will v. Hallock*, 546 U.S. 345, 353 (2006).  As the

Supreme Court explained:  "Qualified immunity is not the law simply to save trouble for the

Government and its employees; it is recognized because the burden of trial is unjustified . . .

when the relevant law is not clearly established; a quick resolution of a qualified immunity claim

is essential."  *Id.*  And the protections qualified immunity provides are "not merely to avoid

standing trial, but also to avoid the burdens of such *pretrial* matters as discovery."  *Behrens*, 516

U.S. 299 at 308 (emphasis in original); *Iqbal*, 556 U.S. at 685 ("The basic thrust of the qualified-

immunity doctrine is to free officials from the concerns of litigation, including avoidance of

disruptive discovery."  (cleaned up)).  Permitting discovery to proceed notwithstanding Ms.

Vullo's substantial qualified immunity claim would defeat the entire purpose of immunity,

because she would face the burden of pre-trial discovery—as she already has for the selective

enforcement claims, notwithstanding her absolute immunity on those claims.   For all of these

reasons, the Court is divested of jurisdiction over the NRA's remaining claim against Ms. Vullo, requiring that discovery in the case be stayed.

## II.     IN THE ALTERNATIVE, MS. VULLO IS ENTITLED TO A DISCOVERY STAY UNDER THE FOUR-FACTOR STAY TEST

While an interlocutory appeal of a denial of qualified immunity automatically deprives the District Court of jurisdiction, courts in this Circuit have occasionally applied the general four-factor discretionary stay test.  Even under this (inapplicable) test, Ms. Vullo is entitled to a discovery stay pending the resolution of her appeal.

### A.     Courts in this Circuit order a stay of discovery pending an appeal on qualified immunity grounds when the balance of four factors weighs in favor of the appellant.

Where an order to stay proceedings is discretionary, rather than automatic, a four-factor test applies to stay applications:

> (1) whether the stay applicant has made a strong showing that [s]he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).[5]  Although the Second Circuit here noted that it was applying this four-factor test only to a motion to vacate a stay it previously imposed and stated that it was not "prepared to adjudicate the jurisdictional challenges" of a stay on an immunity appeal, Ms. Vullo discusses this test here as some district courts have applied these factors to motions to stay proceedings pending an immunity appeal.

---

[5] Importantly, the four-factor test is properly applied where a district court maintains jurisdiction, not in the context of a qualified immunity appeal.  As the *Bradley* court noted, the Second Circuit's application of these factors in *In re World Trade Center Disaster Site Litigation* is "distinguishable from the instant case [determining a motion to stay pending an immunity appeal] in that the Court of Appeals applied the four factors to vacate a stay granted by the Court of Appeals itself in light of the lower court's decision to proceed with pretrial proceedings."  *Bradley*, 2009 WL 1403891, at *1 n.2.  The factors were not applicable in *Bradley* where the defendant moved for a stay of proceedings during his appeal of the denial of qualified immunity and the court declined to find his appeal frivolous. *Id.*

Where courts have applied these factors to motions to stay proceedings pending the appeal of qualified immunity denial, they generally find that the factors weigh in favor of a stay. *See, e.g.*, *Plummer v. Quinn*, No. 07-cv-6154, 2008 WL 383507, at *2 (S.D.N.Y. Feb. 12, 2008) (finding that the balance of the four factors weighed in favor of granting stay pending defendant's appeal of denial of qualified immunity).

**B.   Ms. Vullo has made a strong showing that she is likely to succeed on the merits of her appeal.**

Ms. Vullo is likely to succeed on the merits of her appeal.  As set forth in Section I.B *supra*, Ms. Vullo has a strong basis for being granted qualified immunity from the NRA's claim as a matter of law.  Judge McAvoy's Order recognized that the general basis upon which the NRA asserts a First Amendment claim against Ms. Vullo is not "clearly established," with the only issue being unspecified allegations of so-called "backroom exhortations," which cannot, as a matter of law, form the basis of a First Amendment claim.  Dkt. 322 at 25.  Moreover, as noted, Ms. Vullo will argue that the predicate of the NRA's First Amendment claim fails as a matter of law.  *See supra* Section I.B.  At the very least, Ms. Vullo's qualified immunity appeal is strong and she is likely to succeed given the lack of any precedent for the NRA's claims in this case.  This factor weighs in favor of granting a stay.

**C.   Ms. Vullo will be irreparably injured absent a stay.**

This factor too weighs heavily in Ms. Vullo's favor.  It is well-settled law that discovery should not be allowed pending the resolution of an immunity question.  *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until [the] threshold immunity question is resolved, discovery should not be allowed").  As the U.S. Supreme Court has made clear, immunity serves the important purpose of protecting a defendant from the burdens of litigation, including discovery, to which she may not be properly subject.  *Iqbal*, 556 U.S. at 672 (qualified

13

immunity is "both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation" (cleaned up)); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (Because qualified immunity provides "immunity from suit rather than a mere defense to liability. . . [the immunity] is effectively lost if a case is erroneously permitted to go to trial.").  If the NRA's invasive discovery efforts are allowed to proceed, Ms. Vullo will face the irreparable loss of one of the key protections of qualified immunity.  Indeed, as set forth below, it is in the public interest for public officials to have protections of qualified immunity when making decisions so that those decisions are not affected by litigious or vindictive parties that appear before such public officials.  This is particularly so here, where Ms. Vullo was New York's regulator of a vast financial services industry involving well-financed companies.

Conversely, a discovery stay would provide Ms. Vullo the protections to which she is entitled and promote the efficient resolution of this case.  The pending burdens of discovery here are substantial.  The NRA has already filed one of multiple discovery motions it pledged to reassert at the March 26, 2021 discovery conference.  *See* Dkt. 331.  The NRA claims that each of these motions involves its remaining claim against Ms. Vullo, and, without a stay, she will be required to respond to each of them.  In the absence of a stay, the NRA will likely pursue further discovery that will require Ms. Vullo's time and attention, including discovery from now non-party DFS and depositions.  Yet, if the Second Circuit determines that Ms. Vullo is entitled to qualified immunity, the sole remaining claim against her will be dismissed.

Staying discovery until the Second Circuit rules on Ms. Vullo's qualified immunity defense will thus prevent the parties' needless expenditure of time and resources.  This Court has previously expressed concern regarding the escalating legal expenses being incurred by the parties in this case.  *See* Dkt. 234 at 3.  A global stay of discovery would limit the

14

expenses incurred by all parties, as well as the Court's resources, by pausing the ongoing

disputes and, should Ms. Vullo's appeal be successful, likely eliminate the need for the parties to

continue to litigate them.[6]

       This factor alone weighs overwhelmingly in favor of a stay.

### D.     A temporary stay of discovery will not substantially injure the NRA.

       A stay of discovery pending the Second Circuit's resolution of Ms. Vullo's appeal

will not substantially injure the NRA.  There are no discovery matters that are time-sensitive

such that a delay in discovery would prejudice Plaintiff.  The NRA's claims are not dependent on

or impacted by any ongoing events involving Ms. Vullo—it is not seeking any prospective relief,

only damages, and its organizational activities are not dependent on the outcome of this

litigation.  *See Plummer*, 2008 WL 383507, at *1 (finding that availability of compensatory

damages weighed this factor in favor of defendant when plaintiff was not seeking prospective

relief).  Further, there is no evidence that any of the remaining parties are at risk of losing

relevant discovery during the appeal's pendency.

       While this case has been pending for some time, much of the delay has been of

the NRA's own making and certainly is not caused by Ms. Vullo.  Indeed, the NRA's repleading

of the now-twice dismissed selective prosecution claim has caused significant delay.  Judge

McAvoy dismissed the NRA's selective prosecution claim against Ms. Vullo on May 9, 2020,

with leave to replead the claim.  Dkt. 112 at 8.  Inexplicably, the NRA did not attempt to do so

*for six months*.  *See* Dkt. 202 at 14.  Indeed, this Court "conclude[ed] that plaintiff has not shown

---

[6] The NRA is simultaneously involved in separate proceedings with the New York Attorney General regarding the NRA's alleged violations of state and federal law as a non-profit corporation.  *See People of the State of N.Y. v. The Nat'l Rifle Ass'n et al.*, Index No. 451625/2020 (Sup. Ct. N.Y.); *The Nat'l Rifle Ass'n v. Letitia James*, No. 20-cv-889 (N.D.N.Y. 2020).  Those proceedings now include the NRA's filing of a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas, where parties are disputing the propriety of the bankruptcy filing and creditors are challenging certain NRA expenditures.  Ms. Vullo is not a party to these disputes.

Case 1:18-cv-00566-TJM-CFH   Document 337-1   Filed 04/09/21   Page 21 of 26

that it acted with due diligence," in seeking to amend to re-plead its previously dismissed selective enforcement claim. Dkt. 202 at 13. Once the NRA filed its Second Amended Complaint, Dkt. 203, Ms. Vullo promptly filed a motion to dismiss this re-pleaded complaint, along with asserting a qualified immunity defense to the First Amendment claim for the first time, and now has promptly filed a notice of appeal from Judge McAvoy's decision.

Moreover, the Second Circuit prioritizes interlocutory qualified immunity appeals when they arise from a denial of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), placing them on an expedited briefing schedule, so the time to resolution is shortened. 2d Cir. L. R. 31.2(b)(1)(B). Other than the mere passage of time while the Second Circuit determines if Plaintiff's claims against Ms. Vullo will survive—a wait during which the parties will save on time, costs, and effort—the NRA cannot identify any actual injury that it would suffer due to a discovery stay, much less a substantial injury. This factor also weighs in favor of granting a stay.

As noted above, Ms. Vullo submits that she has shown that she is likely to succeed on her appeal, given that "there is no case clearly establishing that otherwise protected public statements transform into an unlawful threat merely because there is an ongoing, and unrelated, regulatory investigation," Dkt. 322 at 25, and that the NRA's threadbare allegations of purported "threats" and "backroom exhortations" are insufficient as a matter of law. But for purposes of a stay, because the weight of the injury factors (Factors Two and Three) are so strong, they alone tip the scales in Ms. Vullo's favor, so the Court can and should grant the stay without needing to address Ms. Vullo's likelihood of success (Factor One), as the success of Ms. Vullo's appeal is now for the Second Circuit to determine. *See Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (stay pending appeal is appropriate when the balance of hardships favors the applicant" regardless of likelihood of success or where "the probability of success is high and

16

some injury has been shown" (cleaned up)).  Here, Ms. Vullo stands to suffer irreparable injury absent a stay, while the NRA will suffer no tangible injury if a stay is granted.  The balance of hardships already tilts drastically in Ms. Vullo's favor.  Thus, she is not required to show a likelihood of success on her appeal to prevail on her stay motion.  Nonetheless, she has done so.

> **E.    A stay of discovery pending an appeal on qualified immunity is in the public interest.**

Further support for a stay is the public interest factor.  Allowing government officials such as the Superintendent of the Department of Financial Services to carry out their duties without fear of burdensome discovery from vindictive parties is unequivocally in the public interest.  Qualified immunity, when properly recognized, protects that interest.  "The doctrine [of qualified immunity] is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Jemmott v. Coughlin*, 85 F.3d 61, 66 (2d Cir. 1996) (cleaned up).  Here, Ms. Vullo engaged in government speech on a matter of significant public importance by decrying what she saw as the harms from gun violence in the wake of the Parkland shooting.  Such speech is necessarily in the public interest, regardless of which private parties may be connected to those public concerns.[7]

The public interest is protected when the courts maintain the safeguards of qualified immunity for individuals subject to retaliatory claims from disgruntled parties due to speech made in service of their government roles.  If the protections of qualified immunity are

---

[7] It is also uncontested that the consent orders involved in this case were based on violations of law by regulated entities represented by experienced counsel and which agreed to those consent orders.  Judge McAvoy has already properly dismissed any claims of selective prosecution, holding that Ms. Vullo acted in her role as a law enforcement official in prosecuting those matters and entering into those consent orders.

17

not maintained—if disgruntled parties realize that they may hound their target for wide-ranging and useless discovery even years after a government official has left her position—public officials like Ms. Vullo may be more wary of engaging in "the vigorous exercise of official authority." *Id.* Such reactions impede the functioning of government. This final factor joins the preceding three in counseling the Court to grant Ms. Vullo's motion for a stay of discovery pending the resolution of her appeal (assuming the Court addresses the four-factor test at all).

## III.    A STAY OF DISCOVERY SHOULD APPLY TO THE ENTIRE CASE

A stay of discovery as to the entire case is necessary. The remaining universe of discovery in this case is limited. The NRA's only remaining claims are First Amendment claims against Ms. Vullo and Governor Cuomo, both in their individual capacities, based on conduct alleged to have occurred within the same general limited time period and involving a number of overlapping facts. *See generally* Dkt. 203 (Second Am. Compl.). No matter how narrowly the NRA may tailor discovery as to Governor Cuomo, based on the NRA's present actions, it is clear that the NRA will seek to compel Ms. Vullo's participation, requiring a full stay of discovery to ensure that her qualified immunity rights are protected. *See Edrei*, 2017 WL 3822744, at *1 (finding that it lacked jurisdiction over non-appealed claims against other defendants because they were so similar in their factual nature to the claim subject to a qualified immunity appeal); *Plummer*, 2008 WL 383507, at *2 (granting global discovery stay when finding that public official defendant was entitled to a stay).

These proceedings present a dilemma that only a full stay can resolve. Without a full stay of all discovery, Ms. Vullo will be forced to address the NRA's discovery requests notwithstanding the Court's lack of jurisdiction to order her participation—and in violation of the immunity protection to which she is entitled. Or, if any discovery moves forward ostensibly only as to the claim against Governor Cuomo without Ms. Vullo's participation, if Ms. Vullo's

18

appeal were denied, discovery would have to be re-conducted as to Ms. Vullo or she would seek

to preclude the NRA from using against her the discovery it received without her participation.

Conversely, were Ms. Vullo's appeal to be successful while a full discovery stay were in place,

following such appeal, the Court would need to assess what limited discovery would proceed,

and whether Ms. Vullo's participation as a dismissed non-party is required at all.  A discovery

stay avoids these issues and will allow the case to proceed efficiently and with full participation

of the appropriate parties at the appropriate time.

       The Supreme Court has made clear that a *global* discovery stay is the appropriate

course even where only one defendant has filed an appeal on a qualified immunity denial,

because a partial discovery stay would require the appealing defendant to nonetheless participate

in discovery:

> It is no answer to these concerns [about discovery notwithstanding
> an asserted qualified immunity defense] to say that discovery for
> petitioners can be deferred while pretrial proceedings continue for
> other defendants.  It is quite likely that, when discovery as to the
> other parties proceeds, it would prove necessary for petitioners and
> their counsel to participate in the process to ensure the case does
> not develop in a misleading or slanted way that causes prejudice to
> their position.  Even if petitioners are not yet themselves subject
> to discovery orders, then, they would not be free from the burdens
> of discovery.

*Iqbal,* 556 U.S. at 685-86.  Here it has already "prove[d] necessary" for Ms. Vullo to participate

extensively in non-party discovery sought by the NRA to "ensure the case does not develop in a

misleading or slanted way that causes prejudice to [her] position," and will certainly prove

necessary again absent a stay.

       Notably, although discovery was formally stayed for months in the latter part of

2020 while the motions to dismiss were pending, Ms. Vullo still was not spared "disruptive

discovery."  *Id.* at 685.  She instead had to prepare and submit oppositions to the NRA's motions

for third-party discovery to correct the record and counter baseless NRA positions that could affect party discovery.  *See* Dkt. 259 (Opp. to Hague Request) (filed Sept. 8, 2020); Dkt. 291 (Opp. to Mot. to Compel Everytown for Gun Safety) (filed Oct. 1, 2020); *see* Dkt. 234 (ordering objections to Special Master's recommendation be filed *ex parte*, which Ms. Vullo did on August 17, 2020).

Following the District Court's Order, the NRA has now obtained Court permission to resubmit these motions and the NRA has stated it will continue to seek the discovery of documents from now-third-party DFS.  Without a discovery stay, Ms. Vullo will once again have to prepare anew oppositions to these improper efforts to obtain discovery, and will likely have to spend the time and effort on additional NRA discovery attempts, including depositions it has noticed of non-parties.  This is all while the NRA *still* has utterly failed to provide any meaningful discovery of its own to support its unfounded allegations against Ms. Vullo.  The Court should not permit such a fishing expedition to continue while Ms. Vullo pursues her substantial appeal of her qualified immunity defense.

Indeed, the history of this case cautions against allowing any discovery before receiving the benefit of the Second Circuit's analysis on Ms. Vullo's appeal.  For example, while the NRA claimed (over Defendants' objections) that it would be efficient to allow motion practice to move forward notwithstanding Defendants' motions to dismiss, the parties are now re-briefing two motions to compel third-party discovery, now with the benefit of the District Court's decision about the scope of this case, substantially increasing the investment of resources for the Court and the parties.  Similarly, in 2019, this Court issued an Order limiting discovery the NRA sought from DFS, the NRA appealed that ruling, DFS then sought reconsideration of the District Court's resolution of that discovery dispute—and all that motion practice is now

20

effectively moot because DFS is no longer a party and the NRA's selective enforcement claim is

dismissed.  The Second Circuit's decision on Ms. Vullo's appeal is likely to further define the

scope of this case, whether Ms. Vullo succeeds (which she expects) or not, so awaiting the

Second Circuit's resolution will likely lead to a more streamlined and efficient resolution of any

remaining discovery.  Ms. Vullo submits that the proper course is for her appeal on qualified

immunity to be resolved, as it will on a prompt basis, before discovery proceeds in this case.

## CONCLUSION

   For the foregoing reasons, Defendant Maria T. Vullo respectfully requests this

Court grant her Motion to Stay Discovery Pending Appeal until the Second Circuit resolves her

interlocutory appeal.


Dated: New York, New York
  April 9, 2021

       EMERY CELLI BRINCKERHOFF
        ABADY WARD & MAAZEL LLP

      By:   */s/ Andrew G. Celli, Jr.*
       Andrew G. Celli, Jr.
       Debra L. Greenberger
       Marissa R. Benavides
       600 Fifth Avenue
       New York, New York 10020
       (212) 763-5000

      *Attorneys for Defendant Maria Vullo*