```
 1                UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF NEW YORK

 3


 4   NATIONAL RIFLE ASSOCIATION OF AMERICA,)
                                           )
 5                                         )
                 Plaintiff,                ) CASE NO. 18-CV-566
 6                                         )
        vs.                                )
 7                                         )
     ANDREW CUOMO, et al.,                 )
 8                                         )
                 Defendants.               )
 9   _____)
```

### TRANSCRIPT OF PROCEEDINGS
### BEFORE THE HON. CHRISTIAN F. HUMMEL
### MONDAY, APRIL 26, 2021
### ALBANY, NEW YORK

**FOR THE PLAINTIFF:**
   BREWER ATTORNEYS & COUNSELORS
   By: MORDECHAI GEISLER, ESQ. and MICHELLE MARTIN, ESQ.
   1717 Main Street, Suite 5900
   Dallas, Texas 75201

**FOR THE DEFENDANTS:**
   OFFICE OF THE ATTORNEY GENERAL
   By: WILLIAM A. SCOTT, ESQ.
   The Capitol
   Albany, New York 12224

**FOR DEFENDANT MARIA T. VULLO:**
   EMERY, CELLI, BRINCKERHOFF, ABADY, WARD & MAAZEL LLP
   By:  DEBRA L. GREENBERGER, ESQ. and
   ANDREW G. CELLI, JR., ESQ.
   600 Fifth Avenue, 10th Floor
   New York, New York 10020

1              (Videoconference.)

2              THE CLERK:  Today is Monday, April 26, 2021.  It's

3    11:01 a.m.  The case is National Rifle Association of America

4    versus Cuomo et al., docket No. 18-CV-566.  Appearances for the

5    record, please.

6              MR. GEISLER:  For the plaintiff National Rifle

7    Association of America, Mordechai Geisler, Brewer Counselors and

8    associates -- attorneys.  Excuse me.

9              MS. MARTIN:  Good morning.  Michelle Martin for the

10   National Rifle Association from Brewer Attorneys & Counselors.

11             MR. SCOTT:  William Scott, New York State Office of

12   the Attorney General for defendant Cuomo.

13             MS. GREENBERGER:  Good morning, Your Honor.  Debby

14   Greenberger from Emery, Celli, Brinckerhoff, Abady, Ward &

15   Maazel for defendant Maria Vullo.

16             MR. CELLI:  Your Honor, Andrew Celli.  I'm also here

17   with Ms. Greenberger for defendant Vullo.  Ms. Greenberger will

18   be handling the hearing today.

19             THE COURT:  Good morning, all counsel.  I scheduled

20   this hearing this morning to address a motion to compel

21   plaintiffs to provide further interrogatory responses, which

22   appears at docket No. 293, which was filed back on October 5 of

23   2020.  It's my intention to listen to arguments of counsel this

24   morning and provide a ruling with respect to each of the

25   specific objections from the bench this morning, and then to ask

**NRA of America v. Cuomo et al. - 18-CV-566**

1  my court reporter, Ms. Stroffolino, to prepare the transcript,
2  which she will annex to an order which I will do.  What I'm
3  going to do is I'm going to place on the record what has
4  transpired before today's date to give this morning's oral
5  argument context.  Then I will hearing from counsel.
6         The Court would note that the complaint in this matter
7  was filed back on May 11 of 2018 at docket No. 1.
8         Docket No. 66 is a uniform pretrial scheduling order
9  which was issued on December 27 of 2018, which somewhat
10 optimistically directed all discovery be completed by June 17 of
11 2019.
12        As indicated earlier, docket No. 293 is a motion filed
13 by defendant Vullo seeking to compel plaintiffs to provide a
14 further response to interrogatory No. 2 in their first set of
15 interrogatories and to compel responses to their second set of
16 interrogatories.
17        Docket No. 307 is the plaintiff's response to
18 defendant Vullo's motion to compel which was filed on November 9
19 of 2020.
20        The Court would note that pursuant to Rule 26 of the
21 Federal Rules of Civil Procedure particularly addressing initial
22 disclosure, a party is required to disclose the name and, if
23 known, the address and telephone number of each individual
24 likely to have discoverable information along with the subjects
25 of that information that the disclosing party may use to support

1    its claims or defenses unless used solely for impeachment.

2    Rule 26 also sets forth the scope of discovery and its

3    limits and provides, among other things, parties may obtain

4    discovery regarding any nonprivileged matter that is relevant to

5    any party's claim or defense and proportional to the needs of

6    the case considering the importance of the issues at stake in

7    the action, the amount in controversy, the parties' relative

8    access to relevant information, the parties' resources, the

9    importance of the discovery in resolving the issues, and whether

10   the burden or expenses of the proposed discovery outweigh its

11   likely benefit.  Information within the scope of discovery need

12   not be admissible in evidence to be discoverable.

13   The scope of this action has changed since

14   Ms. Greenberger on behalf of Ms. Vullo filed for a motion to

15   compel.  More particularly, it has been changed by Judge

16   McAvoy's decision issued on March 15 of 2021 which dismissed the

17   then pending selective enforcement claim against Ms. Vullo and

18   denied the motion to dismiss with respect to her First Amendment

19   claims.  I would note that Ms. Vullo is seeking appeal to the

20   Second Circuit with respect to the remaining First Amendment

21   claim.

22   In his decision, Judge McAvoy addresses the First

23   Amendment claims beginning on page 23 of the decision, which is

24   at docket No. 322, which provides in part, "Count 1 of the

25   second amended complaint alleges that defendants' actions

1    including but not limited to the issuance of the April 2018
2    guidance letters and the accompanying backroom exhortations, and
3    the imposition of the consent orders upon Chubb and Lockton, and
4    the issuance of the Cuomo press release established a system of
5    informal censorship designed to suppress the NRA's speech.
6    Plaintiff asserts that defendants took these actions with intent
7    to obstruct, chill, deter, and retaliate against the NRA's core
8    political speech.  Count 2 alleges that these same actions by
9    defendants were in response to and substantially caused by the
10   NRA's political speech regarding the right to keep and bear
11   arms.  Defendants' actions were for the purpose of suppressing
12   NRA's pro-Second Amendment viewpoint.  Defendants undertook such
13   unlawful conduct with the intent to obstruct, chill, deter, and
14   retaliate against the NRA's core political speech."

15           The Court would note that Judge McAvoy specifically
16   directs, addresses those claims and Ms. Vullo's motion to
17   dismiss at page 27 at docket No. 322 where Judge McAvoy says
18   among other things, "When doing so, a question of material fact
19   exists as to whether Ms. Vullo explicitly threatened Lloyd's
20   with DFS enforcement if the entity did not disassociate with the
21   NRA.  Based upon this question of material fact, and even
22   assuming an objectively reasonable person would not have known
23   that the guidance letters or Ms. Vullo's statements in the Cuomo
24   press release could be construed as implied threats to regulated
25   entities if they did not disassociate with the NRA, qualified

1  immunity on the First Amendment claims must be denied at this

2  time.  Further, because Ms. Vullo's alleged implied threats to

3  Lloyd's and promises of favorable treatment if Lloyd's

4  disassociated with the NRA could be construed as acts of bad

5  faith in enforcing the Insurance Law in New York, a question of

6  fact exists as to whether she is entitled to qualified immunity

7  under New York law."

8  　　　　　Turning then to interrogatory No. 2 in plaintiff's

9  first set of interrogatories, which can be found at docket

10  No. 293-2, which was filed on October 5 of 2020, upon review of

11  Judge McAvoy's decision which has trimmed the scope of this

12  litigation, what additional information, if any, are you seeking

13  with respect to interrogatory No. 2?

14  　　　　　MR. CELLI:  Debby, you're muted.

15  　　　　　MS. GREENBERGER:  I'm so sorry.  Debby Greenberger for

16  Ms. Vullo.  I was saying, Your Honor, that with respect to

17  interrogatory No. 2 from plaintiff's -- I'm sorry, from

18  defendant's first set of interrogatories, we're seeking every

19  piece of it, that information.  As I think Your Honor clearly

20  pointed out, Judge McAvoy's recent decision makes clear that

21  this case turns on the so-called backroom exhortations, and our

22  interrogatories are limited and focused on finding out what is

23  the discoverable information about what people have relevant

24  information about those so-called backroom exhortations.  I'm

25  happy to speak in further detail, but I just want to answer your

1    question.

2    THE COURT:  I asked you a bad question.  It's Monday

3    morning.  I apologize.  What specifically are you seeking at

4    this point that is not provided in their earlier responses?

5    MS. GREENBERGER:  Sure, of course, Your Honor.  So

6    interrogatory No. 2 seeks specifically the identity of each

7    person to whom a threat was made, and the identity of each

8    witness who heard such so-called threat, and where and when such

9    threat happened supposedly.  The NRA has not disclosed or

10   provided any of those things.  Their response to our

11   interrogatory was just to cite public statements, about which I

12   think there's really very little or no dispute, but they haven't

13   provided any of these so-called backroom statements that are the

14   heart of Judge McAvoy's decision.

15   THE COURT:  Mr. Geisler, sir, what is your response to

16   Ms. Greenberger?

17   MR. GEISLER:  Well, thank you, Your Honor.  With

18   respect to request No. 2, specifically to each person made and

19   witnesses, in our response, which was Exhibit E to Ms. Vullo's

20   motion papers at 293-6, in our response to interrogatory No. 1,

21   we did identify two individuals who we believe were at the

22   meeting.

23   MS. GREENBERGER:  Your Honor, they're referring to a

24   different interrogatory.

25   THE COURT:  Don't interrupt Mr. Geisler.  I'll give

1  you a chance to be heard when he's done.

2  So Mr. Geisler, we're addressing interrogatory No. 2,
3  but I assume you contend some of that information is provided in
4  response to No. 1; is that correct?

5  MR. GEISLER:  That is correct, but this was a
6  supplemental.  Ms. Greenberger is right.  I apologize.  Let me
7  be clear.  I'm referring to a supplemental response to the
8  interrogatories that was served I think -- correct me if I'm
9  wrong.  Ms. Greenberger was referring to the initial responses.
10 So when the statement was made that there was no responses
11 specifically to individuals who were at a meeting, I'm just
12 simply pointing out that we identified at least two individuals.

13 Also, to put this in the proper context, the meetings
14 that are referenced, Ms. Vullo herself was each -- attended each
15 of these meetings.  In other words, there's no allegation here
16 at issue regarding any meeting or any event that's at issue in
17 which Ms. Vullo herself was not in attendance.  So to the extent
18 that anyone would have the information that Ms. Vullo is
19 seeking, Ms. Vullo herself would by definition have that
20 information.

21 THE COURT:  Counselor, that's not acceptable to the
22 Court.  If you contend there are people who observed the conduct
23 which was set forth in the second amended complaint with respect
24 to the First Amendment arguments, they're entitled to know the
25 names of those people and the ability to contact them and what

1  they allegedly saw.  You need to recall, Counselor, Ms. Vullo

2  says none of these things happened.  So it's hard for her to be

3  a witness to an event which she contends didn't happen.

4          If you contend the NRA is aware of people who

5  witnessed the conduct set forth which I just read to you in the

6  second amended complaint, which was addressed by Senior Judge

7  McAvoy at page 27 of 43 of his decision, you're required to

8  provide the people who you claim support your allegation that

9  your client's First Amendment rights were violated.  Are you

10 aware of any such people, Counselor?  Mr. Geisler, are you aware

11 of any such people who support the allegation set forth in Count

12 1 and Count 2 of your second amended complaint?

13         MR. GEISLER:  Yes.  As we set forth in our papers,

14 counsel has interviewed individuals who are current or former

15 employees of or agents of Lloyd's, who have the information that

16 was set forth in the second amended complaint.  As Your Honor

17 knows, it's our position that those, the identity of those

18 individuals are protected under the work product doctrine.  We

19 have identified to our knowledge those people who were in

20 attendance at the meeting.

21         THE COURT:  Mr. Geisler, I apologize.  I'm just not

22 following you.  So it's your position that you're aware of

23 individuals who are going to support the allegations set forth

24 in Count 1 and Count 2 of the second amended complaint; is that

25 correct?

1    MR. GEISLER: Yes. There are individuals who support,
2    whose information supports the allegations in the second amended
3    complaint.
4    THE COURT: And it's your position that they're not
5    entitled to know the names of those people?
6    MR. GEISLER: These individuals, as I said, are former
7    or current agents or employees. They are concerned about
8    retaliation. They've spoken directly to counsel and have given
9    information that led to the allegations in the complaint. Yes,
10   there are --
11   THE COURT: So what point in time would you propose to
12   disclose that information to counsel? Because I assume you're
13   going to endeavor to call these people at trial if there is a
14   trial. At what point in time would you give that information to
15   Ms. Vullo's attorneys?
16   MR. GEISLER: Well, we haven't made any -- we're very
17   early. There's been almost no discovery. There have been no
18   depositions. There's been barely any document discovery. We
19   haven't made any determination who we're going to call at trial,
20   much less for depositions. As discovery continues, and again
21   we've received virtually none, as discovery continues, we will
22   make a determination whether these or other witnesses are
23   necessary. Obviously if it would come to a point where someone
24   would be called for a deposition or a trial, then they would
25   know the identity of those individuals.

11

**NRA of America v. Cuomo et al. - 18-CV-566**

1  THE COURT:  What about these other individuals you
2  contend were at these meetings?  If you determine not to call
3  them, is defendant Vullo not entitled to know who those people
4  are?
5  MR. GEISLER:  The individuals who have been identified
6  have been identified.  So Ms. Vullo can call them for a
7  deposition.  Specifically, I'm referring to Ms. Beale and
8  Mr. Gunset.  She can call them for a deposition as soon as
9  discovery recommences.
10  THE COURT:  As indicated, Mr. Geisler, you are aware
11  of a number of additional witnesses who are allegedly present at
12  these meetings who have information which is supportive of your
13  allegations in the second amended complaint.  When would you
14  propose to provide that information to them?
15  MR. GEISLER:  No.  Let me be clear.  The individuals
16  at issue, I do not know.  I do not know that they were at the
17  meetings in question, the meetings that Ms. Beale and
18  Ms. Gunset -- Mr. Gunset attended.  These are witnesses --
19  THE COURT:  They have information which is supportive
20  of your position; isn't that correct?
21  MR. GEISLER:  Yes.
22  THE COURT:  When do you intend the give them the names
23  of these people and the scope of what they allegedly know so
24  they can determine whether or not they want to depose them?
25  MR. GEISLER:  Again, if document discovery, when it

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

1    commences, and it hasn't even started hardly, will determine

2    further who was at the meetings, which we don't have that

3    information.  Ms. Vullo has that information.

4            THE COURT:  Mr. Geisler, you have the information

5    regarding people you contend have knowledge which is supportive

6    of the First Amendment claims set forth in your first and second

7    cause of actions in your second amended complaint; is that

8    correct?

9            MR. GEISLER:  Yes.

10           THE COURT:  And you have names of people who you have

11   not disclosed to Ms. Vullo's attorneys; is that correct?

12           MR. GEISLER:  Yes.

13           THE COURT:  And when do you proposes to disclose that

14   to them so they can determine whether or not they want to

15   conduct discovery with respect to those people?

16           MR. GEISLER:  Well, Your Honor, I would respectfully

17   submit that if we could have a chance perhaps to submit in

18   camera an affidavit from counsel who actually interviewed these

19   individuals to give Your Honor a better idea of what information

20   specifically they have, their fear of retaliation, maybe that

21   would be a starting point to a determination of if and when

22   those identities should be disclosed.

23           THE COURT:  Counsel, this case has been pending for

24   almost three years.  You keep saying discovery hasn't started.

25   This case was filed on May 11 of 2018.  It's going to have its

1  third birthday next week, and we've done virtually nothing here.
2  You're done.  You're done.  I'm directing that within 30 days of
3  today's date, you provide to Ms. Vullo as directed in Rule 26
4  the name, address, and telephone number of each individual
5  likely to have discoverable information, and this is clearly
6  discoverable information, along with the subject of that
7  information within 30 days.  Do you understand that, Counsel?
8              MR. GEISLER:  Yes, Your Honor.
9              THE COURT:  Ms. Greenberger, does that address what
10 you're seeking?  Ms. Greenberger or Mr. Celli?
11             MS. GREENBERGER:  Largely, Judge Hummel, although I
12 just would add one specific thing.  We have asked who
13 specifically was in the room, and what I'm hearing now from
14 Mr. Geisler I think for the first time is that the only people
15 they know were in the room or they believe or are alleging were
16 in the room were Ms. Beale and Mr. Gunset.  That is not what
17 their discovery responses say.  They use words like "including"
18 in one of their responses, and they don't answer at all in their
19 other response.
20             So if their position is that they have identified two
21 people who were in the room and there is nobody else, that would
22 be helpful information going forward, but they need to say that
23 under oath in their interrogatory response.
24             THE COURT:  Mr. Geisler, to save some time, are you
25 aware of anyone who was present in the room other than the two

**NRA of America v. Cuomo et al. - 18-CV-566**

1  names that Ms. Greenberger just stated?

2  MR. GEISLER: I am personally not. I can't speak

3  for -- I cannot speak for what information counsel may have, but

4  we'll clarify that. We'll clarify that in these responses.

5  THE COURT: I'm going to direct that you confirm in

6  your response the names of everyone who was present in the room

7  when you allege these conversations took place.

8  MR. GEISLER: To our knowledge.

9  THE COURT: I can only hold you to your knowledge,

10  Mr. Geisler. That's what the law is based on. Discovery is

11  based on what clients and attorneys know.

12  Ms. Greenberger, the same dispute appears to me to

13  exist with respect to your second set of interrogatories,

14  interrogatories 1, 2, and 3. Is that correct, or do you have a

15  different argument with respect to those?

16  MS. GREENBERGER: No. It's the same argument, Your

17  Honor. You know, they have alleged that there were

18  communications with executives, plural, and institutions,

19  plural, but it sounds to me like what we're hearing today is

20  that they have -- that there's one institution that they

21  actually have any basis to make that allegation about. So that

22  is something that needs to be clarified as well. If there's a

23  single institution, namely Lloyd's, that they claim there was a

24  single conversation, that's different than if there were

25  multiple institutions and a series of meetings beginning in

1   February 2018 as they allege.

2              THE COURT:  Mr. Geisler, sir, what do you want to tell
3   me?

4              MR. GEISLER:  We'll clarify further the -- you're
5   seeking the number of the institutions and the identity of the
6   institutions specifically?

7              MS. GREENBERGER:  Correct, and the number of meetings.

8              MR. GEISLER:  Again, to the best of our knowledge, we
9   will provide that information to the extent that we can.  Again,
10  this information is again in Ms. Vullo's knowledge as well
11  because she participated in these meetings.

12             THE COURT:  Again, Mr. Geisler, I'm only directing you
13  to provide information that your client has knowledge of.
14  Again, Ms. Vullo, based upon my reading of these pleadings,
15  denies that these conversations took place and these
16  exhortations or threats were made.  To the extent that your
17  client contends they have knowledge of institutions which were
18  involved in this, you're directed to provide them with the name
19  of the institutions.  You're directed to provide them with the
20  names of the meetings -- number of meetings.  Excuse me.  To the
21  extent you're aware of specific people who were present at the
22  meetings, you're to provide that information.  Understand that?

23             MR. GEISLER:  Yes, Your Honor.

24             THE COURT:  Ms. Greenberger and Mr. Celli, that would
25  seem to address the issues raised with respect to your motion to

**NRA of America v. Cuomo et al. - 18-CV-566**

1  compel; is that correct?

2        MS. GREENBERGER:  Yes, Your Honor.  Thank you very

3  much, Your Honor.

4        THE COURT:  Mr. Scott, you've been strangely silent.

5  Anything you'd like to add?

6        MR. SCOTT:  I would like to be a surprise on occasion,

7  Your Honor, but nothing further to add.

8        THE COURT:  I'm going to ask Ms. Stroffolino, our

9  court reporter, to do a transcript reflecting this.  I will do

10 an order annexing the transcript and reflecting what I just

11 directed.  As I indicated earlier -- perhaps I didn't.  The

12 supplemental responses will be due within 30 days of today's

13 date.

14       MR. GEISLER:  Your Honor, may I ask one final

15 question?  Let me withdraw.  Thank you, Your Honor.

16       THE COURT:  You folks are all set.  Everyone be safe

17 and be well.  Thank you.

18             (The matter adjourned at 11:24 a.m.)

19

20

21

22

23

24

25

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

17

**NRA of America v. Cuomo et al. - 18-CV-566**

CERTIFICATION OF OFFICIAL REPORTER

I, JACQUELINE STROFFOLINO, RPR, Official Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 26th day of April, 2021.

**/s/ JACQUELINE STROFFOLINO**

JACQUELINE STROFFOLINO, RPR

FEDERAL OFFICIAL COURT REPORTER

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*