**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| **ANDREW CUOMO, both individually and** | § | **CIVIL CASE NO.  18-CV-00566-TJM-** |
| **in his official capacity; MARIA T. VULLO,** | § | **CFH** |
| **both individually and in her official** | § | |
| **capacity; and THE NEW YORK STATE** | § | |
| **DEPARTMENT OF FINANCIAL** | § | |
| **SERVICES,** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
RENEWED MOTION TO COMPEL EVERYTOWN FOR GUN SAFETY
TO COMPLY WITH NON-PARTY SUBPOENA**

William A. Brewer III (Bar No. 700217)
Sarah B. Rogers (Bar No. 700207)
Mordecai Geisler (Bar No. 515866)
Michelle J. Martin (Bar No. 701853)
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

**ATTORNEYS FOR THE NATIONAL RIFLE
ASSOCIATION OF AMERICA**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENTS AND AUTHORITIES ....................................................................2

    A.    Judge McAvoy Has Found That Facts Relating To DFS's Regulatory Enforcement Actions Are Relevant to The NRA's First Amendment Claims. .......3

    B.    The Discovery Requests Are Squarely Relevant To The First Amendment Claims. ..................................................................................................6

        1.    Everytown's Internal Records........................................................6

        2.    Communications With Other Regulators....................................7

    C.    The First Amendment Does Not Prevent The NRA From Enforcing The Subpoena............................................................................................8

    D.    Defendants Vullo and Cuomo Lack Standing To Oppose The NRA's Motion. ...10

III. CONCLUSION.......................................................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*,
  No. 3:07CV929 WWE, 2013 WL 6044333 (D. Conn. Nov. 14, 2013)..........................8, 9, 10

*BAT LLC v. TD Bank, N.A.*,
  No. 15CV5839RRMCLP, 2018 WL 3626428 (E.D.N.Y. July 30, 2018) ..............................10

*Chevron Corp. v. Donziger*,
  325 F. Supp. 3d 371 (S.D.N.Y. 2018)........................................................................................8

*Edmondson v. RCI Hosp. Holdings, Inc.*,
  No. 16-CV-2242 (VEC), 2018 WL 2768643 (S.D.N.Y. June 8, 2018)................................8, 9

*Ferring Pharm. Inc. v. Serenity Pharm., LLC*,
  331 F.R.D. 75 (S.D.N.Y. 2019) ...............................................................................................6

*Forsythe v. Midland Funding LLC*,
  No. 18CV03276ARRCLP, 2019 WL 245459 (E.D.N.Y. Jan. 17, 2019) ...............................10

*Hispanic Leadership Fund, Inc. v. Walsh*,
  No. 112CV1337MADTWD, 2014 WL 12586844 (N.D.N.Y. June 9, 2014)..........................9

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449, 78 S. Ct. 1163 (1958)......................................................................................10

*New York State Nat. Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989)...................................................................................................9

*Sicurelli v. Jeneric/Pentron, Inc.*,
  No. 03CV4934 SLT KAM, 2006 WL 681212 (E.D.N.Y. Mar. 14, 2006)...........................6, 7

**Other Authorities**

Rule of Civil Procedure 26 ...............................................................................................................2

Plaintiff the National Rifle Association of America (the "NRA") submits this memorandum of law in further support of its motion to compel ("Motion") non-party Everytown For Gun Safety ("Everytown"), as follows:

## I.
## PRELIMINARY STATEMENT

Everytown's Opposition filed on May 21, 2021 (the "Opposition")[1] rests on the mistaken premise that the Court's March 15, 2021 Order (the "March 2021 Order") dismissing certain selective-enforcement and official-capacity claims, should properly be construed to narrow the scope of discovery against Everytown.[2]  It should not.  Although the Court observed in its March 22, 2021 Order[3] that a significant share of documents which were the subject of a previous dispute between *the NRA and Defendants* may now be of diminished relevance,[4] those documents pertained substantially to selective enforcement and DFS's investigations of specific non-NRA entities.[5]  The NRA's subpoena to Everytown, however, targeted evidence concerning the government's "Second Amendment viewpoint animus"[6]—a core element of the NRA's First Amendment retaliation claims, which survive.

---

[1] *See* ECF No. 353.

[2] *See* ECF No. 322.

[3] *See* March 22, 2021 Decision and Order, ECF No. 324 (granting DFS and Cuomo's motion for reconsideration of the Court's decision granting the NRA's appeal of Magistrate Judge Hummel's discovery determinations in his August 8, 2019 Order (ECF 121)).

[4] *See* Defendant Maria T. Vullo ("Vullo")'s Opposition, ECF No. 355, at 1 ("Judge McAvoy made clear that, in light of the Court's dismissal of the selective enforcement claim, "the lion's share" of the NRA's wide-ranging discovery requests "appear not to lead to discoverable matters anymore, or, if they do, are not proportional to the needs of the case as it currently remains.") (quoting March 2021 Order).

[5] *See* requests for production of documents to Vullo, Andrew Cuomo ("Cuomo") and the New York Department of Financial Services ("DFS"), ECF Nos. 130-3, 130-4, 130-5.

[6] *See* the NRA's memorandum of law in support of the Motion, ECF No. 347 at 2 ("Everytown is highly likely to possess documents probative of the 'Second Amendment viewpoint animus,' which—as the Court repeatedly acknowledged—is a core factual issue in this case.")

Thus, although the Opposition insists that discovery should now exclude facts relating to DFS's investigation of Carry Guard,[7] the Opposition is wrong.  Indeed, Judge McAvoy found that facts pertaining to that investigation are directly relevant to whether Cuomo and Vullo threatened regulated entities.[8]  Whether Vullo, Cuomo, or those acting at their direction coordinated with an anti-NRA pressure group to fashion a communications or enforcement strategy designed to deal maximum damage to the NRA, and instill maximum fear in the NRA's financial service providers, remains as relevant as ever.  This is the discovery the NRA seeks.

After more than a year of stonewalling the NRA's subpoena, Everytown asserted for the first time in its Opposition that complying with the subpoena would violate its own First Amendment rights.[9]   But the NRA is not a government agency seeking access to Everytown's member or donor rolls, or even its internal political strategy.  Instead, the NRA has only sought records that specifically reflect or relate to communications from or with government officials, concerning misconduct by Vullo, Cuomo, and those acting at their direction. Thus, even if Everytown's constitutional arguments were timely (not waived), they would fail; the First Amendment favors more discovery, not less discovery, in this case.[10]  For this reason, and because the Subpoena more than satisfies the liberal threshold for relevance under Fed. R. Civ. P. 26, the Court should compel Everytown to comply.

## II.
## ARGUMENTS AND AUTHORITIES

---

[7] *See* Opposition at 11 ("the NRA's theory of relevance is premised on 'Everytown's legal analysis of Carry Guard' […], which the NRA claims prompted an investigation and subsequent enforcement decision by DFS.  Again, that decision is no longer part of the case.")

[8] *See* discussion *infra* II.B.

[9] *See* Opposition at 19.

[10] *See e.g. Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012) (granting in part motion to compel acknowledging that "the importance of this litigation is not measured in dollars alone; the plaintiffs seek to vindicate the civil rights of the class members, and thus further an important public interest.")

**A.**   **Judge McAvoy Has Found That Facts Relating To DFS's Regulatory Enforcement Actions Are Relevant to The NRA's First Amendment Claims.**

Everytown's main argument in support of its opposition is based on the flawed premise that—in his March 2021 Order[11] —Judge McAvoy substantially narrowed the factual scope of the NRA's First Amendment claims, which in that Order addressed issues of material fact relating to Vullo's qualified immunity defense.[12]  Specifically, Everytown contends that "Judge McAvoy has now dismissed all of the NRA's claims arising from DFS' investigation of Carry Guard"[13] that "Defendants' 'investigative decisions' are no longer part of this case,"[14] and that, therefore, "the key remaining factual disputes involve Vullo's interactions with Lloyd's at a meeting in February 2018."[15]  Everytown insists that its documents predating this period are irrelevant. Everytown is wrong.

Everytown ignores the factual issues raised in the Court's November 2018 Order relating to the First Amendment claims against Cuomo and Vullo.[16]  Critically, in the March 2021 Order, the Court specifically stated that the First Amendment claims asserted in the Second Amended

---

[11] In his March 2021 Order, Judge McAvoy found that "[w]hen a qualified immunity defense is raised on a Rule 12(b)(6) motion, the Court must accept the truth of the allegations in the complaint and may grant qualified immunity only if the facts supporting the defense appear on the face of the complaint […] Here, when doing so, a question of material fact exists as to whether Ms. Vullo explicitly threatened Lloyd's with DFS enforcement if the entity did not disassociate with the NRA. Based on this question of material fact […] qualified immunity on the First Amendment claims must be denied at this time. Further, because Ms. Vullo's alleged implied threats to Lloyd's and promises of favorable treatment if Lloyd's disassociated with the NRA could be construed as acts of bad faith in enforcing the Insurance Law in New York, a question of material fact exists as to whether she is entitled to qualified immunity under New York law." March 2021 Order at 27.

[12] See March 2021 Order at 23-28.  Notably, this Order does not address the First Amendment claims against Cuomo which were upheld by the Court in its November 6, 2018 Decision & Order, ECF No. 56 (the "November 2018 Order").  Indeed, Cuomo did not move to dismiss these claims asserted against him in his individual capacity.

[13] See Opposition at 7.

[14] See id. at 12.

[15] See id. at 10.

[16] See November 2018 Order, ECF No. 56.  Importantly, the March 2021 Order did not address the factual issues related to the First Amendment claims against Cuomo in his individual capacity, as he did not move to dismiss these claims (which the Court upheld in the November 2018 Order).

Complaint "are essentially the same that the Court examined in tandem in the November 6, 2018 Decision & Order."[17]   The Court quoted its November 2018 Order holding that:

> Viewed in the light most favorable to the NRA, and given DFS's mandate—"effective state regulation of the insurance industry" and the "elimination of fraud, criminal abuse and unethical conduct by, and with respect to, banking, insurance and other financial services institutions," N.Y. Fin. Servs. Law § 102(e), (k) — , the Cuomo Press Release and the Guidance Letters, when read objectively ***and in the context of DFS's regulatory enforcement actions against Chubb and Lockton*** and the backroom exhortations, ***could reasonably be interpreted as threats of retaliatory enforcement against regulated institutions that do not sever ties with the NRA***.[18]

The Court continued in its November 2018 Order:

> [T]he NRA's allegations that Defendants' enforcement actions against Lockton and Chubb impeded the NRA's ability to enter contracts for lawful affinity insurance plans, but did not take similar action against other membership organizations that did not engage in gun promotion advocacy […] provides a plausible basis to conclude that Defendants sought to impose a content-based restriction on NRA-affiliated businesses based on viewpoint animus that serves no substantial government interest.[19]

Thus, contrary to the main thrust of Everytown's opposition, Judge McAvoy's March 2021 Order directly linked evidence relating to DFS's regulatory enforcement actions against Chubb and Lockton to the NRA's First Amendment claim against Vullo and Cuomo alleging unlawful retaliation.  In fact, the Court continued, "[w]hen a question exists whether government speech contains a threat of future enforcement action, the First Amendment requires the Court to look through forms to the substance."[20]   The Court further explained that it must examine a number of factors, including the "Defendants' regulatory or other decisionmaking authority over the targeted

---

[17] *See* March 2021 Order at 23 (citing the November 6, 2018 Order).

[18] *See* March 2021 Order at 24 (citing the November 2018 Order at 24-25) (emphasis added).

[19] *See* November 2018 Order at 28.

[20] *See id.* at 19 (internal quotations omitted).

entities"[21] and "whether the government actors actually exercised regulatory authority over targeted entities."[22] Here, the Court found that Cuomo "has the power to direct DFS [to] take other official action, *including the commencement of enforcement investigations against regulated institutions*"[23] and therefore "has the power to effectuate *regulatory action* against entities doing business with the NRA."[24] The Court further found that Vullo had "the authority to initiate investigations and civil enforcement actions against regulated entities"[25] and that such authority "*is one factor supporting a plausible contention that the Guidance Letters are part of an attempt to convey implied threats of coercive action* against regulated entities doing business with the NRA."[26] Therefore, Judge McAvoy has expressly found that Defendants' motives for initiating their investigations is one of the core factual issues to be determined with respect to the NRA's First Amendment claims of threats and retaliatory actions against Defendants. Contrary to Everytown's contention, the March 2021 Order did not resolve these factual issues in connection with such motives raised in the November 2018 Order. Although the NRA did not strike any of its document requests, all of them nonetheless pertain to issues of fact in connection with its First Amendment claims—not selective enforcement as Everytown and Defendants argue.

Furthermore, Judge McAvoy's observation in the March 22, 2021 order that "the lion's share of the categories of discovery the parties argued about on the NRA's appeal" of this Court's discovery determinations in its August 8, 2019 Order, "appear not to lead to discoverable matters

---

[21] *See id.* at 20.

[22] See id.

[23] *See id.* at 22 (emphasis added)

[24] *See id.* (emphasis added).

[25] *See id.* at 21.

[26] See id.

anymore,"[27] was not addressed specifically to the Everytown Subpoena. The categories of documents referenced by Judge McAvoy relate to discovery requests the NRA issued to the Defendants and DFS which targeted the investigations of Lockton, Chubb and Lloyd's and similarly situated non-NRA policies. Here, the documents sought from Everytown target the coordination between investigators and Everytown, an anti-NRA pressure group, that is *per se* probative of Second Amendment viewpoint animus—which the Court found is a core factual issue for the NRA's First Amendment claims—and is at a minimum reasonably likely "to lead to discoverable" evidence regarding the same.[28]

**B.** **The Discovery Requests Are Squarely Relevant To The First Amendment Claims.**

    **1.** **Everytown's Internal Records.**

Everytown argues that because Cuomo and Vullo were not privy to Everytown's internal deliberations, its records cannot be probative of Defendants' motives or any other element of the NRA's First Amendment claims. [29] However, both Cuomo and Vullo had authority to direct DFS to initiate investigations and enforcement actions against the entities targeted in the April 2018 Press Release and Guidance Letters. Such regulatory or other decision making authority over the

---

[27] *See* March 22, 2021 Decision and Order, ECF No. 324 at 2 (granting DFS and Cuomo's motion for reconsideration of the Court's decision granting the NRA's appeal of Magistrate Judge Hummel's discovery determinations in his August 8, 2019 Order (ECF 121) and holding that "the lion's share of the categories of discovery the parties argued about on the NRA's appeal, and the Court's reasons for affirming the NRA's appeal and order production of documents […], appear not to lead to discoverable matters anymore, or, if they do, are not proportional to the needs of the case as it currently remains").

[28] See id.

[29] Everytown continues to rely on a purported agreement by the NRA's former counsel, John Canoni, to justify its refusal to fully comply with the Subpoena. As Mr. Canoni attested, no such agreement was reached, because Everytown failed to accept concessions which would have been part of any "Canoni compromise"—concessions which Everytown's counsel conveniently omit from their own recollections. *See* Canoni Decl., ECF No. 300-1, at ¶¶3-5; *See Ferring Pharm. Inc. v. Serenity Pharm., LLC*, 331 F.R.D. 75, 79 (S.D.N.Y. 2019); *see also Sicurelli v. Jeneric/Pentron, Inc.*, No. 03CV4934 SLT KAM, 2006 WL 681212, at *1–2 (E.D.N.Y. Mar. 14, 2006) (holding that plaintiffs' argument that correspondence between counsel regarding a deposition constitute an enforceable agreement to limit its scope beyond that which defendants would have otherwise been entitled "unpersuasive and unsupported by any offer of case law by Plaintiffs.").

targeted entities is a factor the Court considers "[w]hen a question exists whether government speech contains a threat of future enforcement action [...]"[30]  Here, the external communications produced by Everytown show that Everytown communicated on a regular basis with DFS with respect to the NRA Carry Guard investigation.[31]  Internal notes and memoranda of Everytown reflecting communications with DFS are therefore probative of Cuomo and Vullo's improper motive in exercising their regulatory authority—which in turn is a critical factor to establish their violation of the NRA's First Amendment rights, as explained by the Court in the November 2018 Order and the March 2021 Order.

Finally, to the extent Everytown represents that it has produced all external communications with Vullo and Cuomo only, and is not required to produce external communications with anyone else at DFS because DFS is no longer a defendant, that is not a sufficient response to the Subpoena.  The NRA is entitled to all relevant external communications with anyone at DFS, and Everytown cites no authority to the contrary.

2.    **Communications With Other Regulators.**

Everytown also argues that its communications with other states are not relevant to any remaining questions of material fact.  Everytown ignores—again—the factual issues set forth by the Court in its November 2018 Order.  In analyzing the sufficiency of the NRA's allegations in support of its First Amendment claims, the Court specifically found that the NRA's allegations that Defendants' enforcement actions against Lockton and Chubb impeded the NRA's ability to enter contracts for lawful affinity insurance plans, but did not take similar action against other

---

[30] *See* November 2018 Order at 19 (internal quotations omitted).

[31] *See e.g.,* ECF No. 251-25 and No. 251-26.Further, Everytown publicly boasted that "[t]he disclosure of the New York investigation follows an investigation and legal analysis of NRA Carry Guard by the Everytown [...]" *https://nrawatch.org/filing/everytown-investigation-into-nra-carry-guard-shared-with-ny-state-department-of-financial-services-2/* (October 25, 2017).

membership organizations, "provides a plausible basis to conclude that Defendants sought to impose a content-based restriction on NRA-affiliated businesses based on viewpoint animus that serves no substantial government interest.[32]   Discovery reflecting the response by different regulators that received Everytown's legal analysis and with the same authority as Defendants to initiate enforcement actions may provide evidence of such viewpoint animus and therefore Defendants' improper retaliatory intent in initiating enforcement actions.

**C.    The First Amendment Does Not Prevent The NRA From Enforcing The Subpoena.**

A year and a half after service of the Subpoena, and after months of meet-and-confer teleconferences and correspondence, Everytown argues for ***the first time*** in opposition to the NRA's first motion to compel that disclosure of its internal records would "unduly burden" its First Amendment rights.[33]   Everytown now reiterates this argument.   Everytown failed to timely make this argument, and, therefore, "waived or forfeited" it.[34]   Importantly, the NRA's counsel repeatedly invited Everytown's counsel during meet-and-confer sessions to describe any burden imposed on Everytown by the NRA's discovery requests.[35]   At no time did Everytown raise concerns regarding its association rights under the First Amendment.   The argument is waived.[36]

Even if such arguments are not waived, Everytown in any event fails to make even a *prima facie* showing that the NRA's discovery requests interfere with its First Amendment activities.[37]

---

[32] *See* November 2018 Order at 28.

[33] *See* Everytown opposition to the NRA's first motion to compel, ECF No. 290, at 13-15.

[34] *See Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 385–87 (S.D.N.Y. 2018) (finding that defendant raised his First Amendment argument to block discovery two months after service of plaintiff's subpoena in his motion for a protective order, and therefore forfeited such argument).

[35] *See* Martin Decl., 251-1, at ¶23.

[36] *See Chevron*, 325 F. Supp. 3d 371, 385–87.

[37] *See Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242 (VEC), 2018 WL 2768643, at *2 (S.D.N.Y. June 8, 2018) (holding that a party raising a First Amendment objection "must make a prima facie case of how 'discovery requests would interfere with [its] First Amendment activities'") (quoting *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989)); *see also A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929 WWE, 2013 WL 6044333, at *5 (D. Conn. Nov. 14, 2013) (quoting *In re*

"[T]he party must 'articulate some resulting encroachment on [its] liberties' or the liberties of its members [...] This encroachment cannot be merely speculative, and courts have required parties resisting disclosure to produce specific evidence of past or present harassment of members due to their associational ties, ... harassment directed against the organization itself, [or a] pattern of threats or specific manifestations of public hostility."[38]

Here, Everytown contends that "[a]llowing the NRA to conduct a fishing expedition into the internal records of its chief political adversary [...] raises serious First Amendment concerns"[39] because it would "directly frustrate [its] ability to pursue [its] goals effectively' by granting the NRA an unprecedented and nonreciprocal window into Everytown's internal deliberations."[40] However, courts have expressly rejected this argument.[41]  In addition, Everytown fails to describe how the disclosure of the requested information would degrade its ability to associate.  Everytown does not articulate any fact demonstrating "chilling effects" or any injury to Everytown's associational rights.[42]  Instead, Everytown simply argues without supporting authorities that it "has clear and powerful First Amendment interests in keeping its internal communications from the

---

*Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 488 (10th Cir. 2011)); *Hispanic Leadership Fund, Inc. v. Walsh*, No. 112CV1337MADTWD, 2014 WL 12586844, at *3 (N.D.N.Y. June 9, 2014) (finding that plaintiff failed to show how the requested disclosure would debilitate its ability to associate); *Terry*, 886 F.2d 1339, 1355 (holding that defendants failed to articulate how compliance with plaintiffs' discovery requests would interfere with their First Amendment activities).

[38] *See Edmondson*, 2018 WL 2768643, at *2 (quoting *Schiller v. City of New York*, No. 04-CV-7921, 2006 WL 3592547, at *4 (S.D.N.Y. Dec. 7, 2006)).

[39] *See* Opposition at 19.

[40] *See id.* (quoting *AFL-CIO v. FEC*, 333 F.3d 168, 176-177 (D.C. Cir. 2003)).

[41] *See A & R Body*, 2013 WL 6044333, at *7 (emphasis original) (holding that "[t]his purported harm, however, exists in virtually all discovery disputes. The *prima facie* burden of demonstrating harm would be rendered meaningless if mere aversion to disclosure constituted sufficient encroachment on a group's liberties."  "Injury must extend beyond one's implicit desire for privacy" and "[m]ere general opposition to or aggravation from mandated discovery is not enough to demonstrate the chilling effects that the First Amendment seeks to avoid.")

[42] *See A & R Body*, 2013 WL 6044333 at *6.

NRA's prying eyes, a self-proclaimed adversary."[43]  Everytown's "desire for privacy" is not enough to demonstrate an infringement of First Amendment rights.[44] Further, the NRA has sought documents specifically reflecting interactions with relevant state officials, rather than membership or donor lists, or anything else raising the specter of the harms envisioned by the Supreme Court in *NAACP v. Alabama ex rel. Patterson.*[45]  Finally, Everytown is free to avail itself of the Protective Order in this case.[46]

**D.     Defendants Vullo and Cuomo Lack Standing To Oppose The NRA's Motion.**

Both Vullo and Cuomo have filed oppositions to the NRA's motion to compel.[47]  However, a party ordinarily lacks standing to challenge a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right.[48]  Here, neither Vullo nor Cuomo has asserted any privilege or right that would support their standing to challenge the Subpoena.  Instead, they simply rehash Everytown's arguments in their respective oppositions.  Vullo and Cuomo have no standing to challenge third-party discovery, and certainly did not have to submit an opposition.[49] Accordingly, the Court should disregard Defendants' oppositions to the Motion in their entirety.

---

[43] *See* Opposition at 19.

[44] *See A & R Body*, 2013 WL 6044333 at *7.

[45] *See NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462–63, 78 S. Ct. 1163, 1171–72 (1958).

[46] *See* Stipulated Confidentiality and Protective Order, ECF No. 102, at 2.

[47] See ECF No. 354 and ECF No. 355.

[48] *See Forsythe v. Midland Funding LLC*, No. 18CV03276ARRCLP, 2019 WL 245459, at *3 (E.D.N.Y. Jan. 17, 2019). *See also BAT LLC v. TD Bank, N.A.*, No. 15CV5839RRMCLP, 2018 WL 3626428, at *6 (E.D.N.Y. July 30, 2018) ("[T]he claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served.").

[49] *See* Vullo Opposition, ECF No. 355, at 5-6.

**III.**
## CONCLUSION

The NRA requests that the Court enter an order: (1) granting this Motion; (2) overruling Everytown's objections; (3) requiring Everytown to produce all responsive documents within seven (7) days; (4) overruling all of Everytown's asserted privileges; (5) requiring production of all documents withheld on the basis of any privilege; (6) awarding the NRA its reasonable attorneys' fees and costs in bringing this Motion; and (7) awarding the NRA all other appropriate relief.

Dated:  June 1, 2021                    Respectfully submitted,

                                        By: /s/ Sarah B. Rogers
                                             William A. Brewer III (Bar No. 700217)
                                             wab@brewerattorneys.com
                                             Sarah B. Rogers (Bar No. 700207)
                                             sbr@brewerattorneys.com
                                             Mordecai Geisler (Bar No. 515866)
                                             mxg@brewerattorneys.com
                                             Michelle J. Martin (Bar No. 701853)
                                             mym@brewerattorneys.com

                                             **BREWER, ATTORNEYS &
                                             COUNSELORS**
                                             750 Lexington Avenue, 14th Floor
                                             New York, New York 10022
                                             Telephone:  (212) 489-1400
                                             Facsimile:  (212) 751-2849

                                             **ATTORNEYS FOR THE NATIONAL
                                             RIFLE ASSOCIATION OF AMERICA**

## **CERTIFICATE OF SERVICE**

I certify that on June 1, 2021, I caused a copy of the foregoing to be served upon the

following counsel electronically through the ECF system:


William A. Scott
Assistant Attorney General, Of Counsel
New York State Attorney General's Office
Albany Office, The Capitol
Albany, New York 12224-0341
William.Scott@ag.ny.com

Debra L. Greenberger
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue
New York, New York 10020
dgreenberger@ecbalaw.com

Jonathan Polkes (*pro hac vice*)
Caroline Hickey Zalka (*pro hac vice*)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153 212-310-8000
Jonathan.Polkes@weil.com
Caroline.Zalka@weil.com


                                        /s/ Sarah B. Rogers
                                        Sarah. B. Rogers