**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL CASE NO. 18-CV-00566-TJM-CFH** |
| **ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,** | § § § § § § § § | |
| **Defendants.** | § § | |

**MEMORANDUM OF LAW IN SUPPORT OF NATIONAL RIFLE ASSOCIATION OF AMERICA'S MOTION TO LIFT STAY AND TO COMPEL DISCOVERY**

William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Sarah B. Rogers (Bar No. 700207)
sbr@brewerattorneys.com
Noah Peters (Bar No. 703969)
nbp@brewerattorneys.com
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................III

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

LEGAL STANDARD ...........................................................................................................7

ANALYSIS .............................................................................................................................9

    I.      The Stay of Discovery Should Be Lifted .................................................................9

          A. The Basis for the Stay Has Evaporated ...............................................................9

          B. The NRA Has Suffered Prejudice Due to the *Four-Year* Delay in Obtaining Discovery ..........................................................................................10

          C. The Continuing Harm That NRA Is Suffering Is Irreparable .........................11

          D. The Public Interest Favors Lifting the Stay ......................................................12

          E. Cuomo's Potential Motion for Judgment on the Pleadings Does Not Justify Continuing the Stay; Rather, It Makes Discovery More Urgent ........................................................................................................14

    II.     Discovery Must Be Allowed to Proceed Expeditiously .......................................15

CONCLUSION .....................................................................................................................18

CERTIFICATE OF SERVICE ...........................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.,*
   No. 11 CIV. 3786 RMB, 2013 WL 6912685 (S.D.N.Y. Dec. 19, 2013).................................12

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.,*
   889 F. Supp. 2d 606 (S.D.N.Y. 2012)...................................................................................12

*Behrens v. Pelletier,*
   516 U.S. 299 (1996)..............................................................................................................13

*City of New York v. B.L. Jennings, Inc.,*
   219 F.R.D. 255 (E.D.N.Y. 2004).............................................................................................9

*Cohen v. Coahoma Cnty., Miss.,*
   805 F. Supp. 398 (N.D. Miss. 1992).......................................................................................8

*Dayton Area Visually Impaired Persons, Inc. v. Fisher,*
   70 F.3d 1474 (6th Cir. 1995) ................................................................................................12

*Dunn v. Albany Med. Coll.,*
   No. 09-CV-1031LEK/DEP, 2010 WL 2326137 (N.D.N.Y. May 5, 2010) ............................10

*Elrod v. Burns,*
   427 U.S. 347 (1976)................................................................................................................8

*Inmates of Unit 14 v. Corr. Officers Ribideau, et al.,*
   102 F.R.D. 122 (N.D.N.Y. 1984)............................................................................................9

*Kirschner v. J.P. Morgan Chase Bank, N.A.,*
   No. 17CIV6334PGGSLC, 2020 WL 230183 (S.D.N.Y. Jan. 15, 2020) ...............................10

*Lamoureux v. Trustco Bank,*
   592 F. Supp. 3d 14  (N.D.N.Y. 2022)...................................................................................15

*Landis v. North American Co.,*
   299 U.S. 248 (1936)............................................................................................................8, 9

*Lederman v. New York City Dep't of Parks & Recreation,*
   731 F.3d 199 (2d Cir. 2013)..................................................................................................18

*Lugosch v. Pyramid Co. of Onondaga,*
   435 F.3d 110 (2d Cir. 2006).................................................................................17

*Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria,,*
   265 F.R.D. 106, 124 (S.D.N.Y. 2010) ..................................................................15

*McNamee, Lochner, Titus & Williams, P.C. v. Mayorga,*
   No. 1:13-MC-27 GLS/CFH, 2013 WL 4520671 (N.D.N.Y. Aug. 26, 2013).....................8, 14

*Member Servs., Inc. v. Sec. Mut. Life Ins.,*
   No. CIV.A.3:06CV1164 ........................................................................................9

*Mirra v. Jordan,*
   No. 15CV4100ATKNF, 2016 WL 889559 (S.D.N.Y. Mar. 1, 2016) ...................................10

*Mitchell v. Cuomo,*
   748 F.2d 804 (2d Cir. 1984)..................................................................................8

*Nat'l Rifle Ass'n of Am. v. Vullo,*
   49 F.4th 700 (2d Cir. 2022) ..................................................................................7

*Nehad v. Browder,*
   2016 WL 2745411 (S.D. Cal. May 10, 2016).............................................................9

*Nourse v. Cty. of Jefferson,,*
   7-CV-0807, 2018 WL 2185504 (N.D.N.Y. May 11, 2018)............................................15

*Peddy v. L'Oreal USA Inc.,*
   No. 18CV7499RAJLC, 2019 WL 3926984 (S.D.N.Y. Aug. 20, 2019) ...............................9

*Ramos v. Town of E. Hartford,*
   2016 WL 7340282 (D. Conn. Dec. 19, 2016)............................................................9

*Republic of Philippines v. Westinghouse Elec. Corp.,*
   949 F.2d 653 (3d Cir. 1991)..................................................................................17

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.,*
   206 F.R.D. 367 (S.D.N.Y. 2002) ...........................................................................8

*T.H. by Shepherd v. City of Syracuse,*
   No. 517CV1081GTSDEP, 2018 WL 3738945 (N.D.N.Y. Aug. 7, 2018)..............................9

*Torres v. Faxton St. Lukes Healthcare,*
   No. 6:16-CV-439, 2017 WL 11317906 (N.D.N.Y. Jan. 26, 2017)............................10, 12, 13

*Tunick v. Safir,*
   209 F.3d 67 (2d Cir. 2000)....................................................................................8

iv

*Turner Broadcasting Sys., Inc. v. Tracinda Corp.,*
    175 F.R.D. 554 (D.Nev.1997)................................................................................14

*Wenk v. O'Reilly,*
    No. 2:12-CV-00474, 2015 WL 4916934 (S.D. Ohio Aug. 18, 2015) ......................9

*White v. Montesano,*
    466 F. Supp. 3d 331 (W.D.N.Y. 2020) ............................................................ 14-15

*Wilson v. Gillespie,,*
    No. 2:13-CV-139, 2014 WL 3460042, at *2 (S.D. Ohio July 10, 2014)..................9

*In re World Trade Ctr.,*
    503 F.3d 167 (2d Cir. 2007)................................................................................13

**Rules**

Federal Rule Civil Procedure 1 .................................................................................7

Federal Rule Civil Procedure 12(b)(6) ................................................................ 14-15

Federal Rule Civil Procedure 12(c) .................................................................... 14-15

Federal Rule Civil Procedure 26............................................................................. 8-9

## PRELIMINARY STATEMENT

Since January 2022, this case has been stayed pending resolution of defendant Maria Vullo's interlocutory appeal of this Court's denial of her motion to dismiss the First Amendment claims against her.[1] Defendant, former Governor Andrew Cuomo, did not file an interlocutory appeal, and First Amendment claims remain pending against him.[2] Before that, the case had been subject to discovery stays entered on July 28, 2020 and December 14, 2020.[3] The result is that the defendants, despite the malfeasance alleged by plaintiff, have managed to avoid their discovery obligations since this case was first filed over four years ago, in May 2018.[4]

On September 22, 2022, the Second Circuit granted Vullo's interlocutory appeal and ordered the claims against her dismissed.[5] Plaintiff, the National Rifle Association of America (the "NRA"), has petitioned for certiorari in the U.S. Supreme Court of that decision.[6] However, as explained below, that should not delay recommencing discovery against Cuomo. Indeed, this Court has already stated that, "were Defendant Vullo's appeal to be successful while a full discovery stay is in place, the Court would need to assess what limited discovery would proceed, and whether Defendant Vullo's participation as a dismissed non-party is required at all."[7]

The NRA now moves to lift the stay and compel Cuomo to finally produce documents in response to discovery requests that were propounded on him years ago, as well as allow the NRA to depose three key witnesses.[8] Cuomo's intent to move for judgment on the pleadings makes disclosure of these documents even more urgent.

---

[1] ECF No. 360 at 11-12.
[2] *Id*. at 10-11.
[3] ECF Nos. 234 & 314.
[4] ECF No. 1.
[5] ECF No. 363.
[6] A copy of the NRA's certiorari petition is attached as Exhibit A.
[7] ECF No. 360 at 11.
[8] ████████████████████████

## FACTUAL BACKGROUND

The Second Amended Complaint ("SAC") is the operative pleading in this matter.[9] It alleges that Cuomo directed and oversaw a campaign to retaliate against the NRA for its political advocacy and activism.[10] For over twenty years, Cuomo has admittedly been trying to shut down the NRA.[11] His intention to use his power as Governor of New York to drive firearms advocates out of the state is clear from his own statements. He declared that gun rights advocacy groups "have no place in the state of New York"[12] and that "[i]f I could have put the NRA out of business, I would have done it 20 years ago."[13]

Maria Vullo was Cuomo's subordinate and longtime lieutenant.[14] Cuomo nominated Vullo to be Superintendent of New York's powerful Department of Financial Services ("DFS").[15] Together with Vullo, Cuomo embarked on a campaign to chill the political speech of the NRA by leveraging state power to threaten financial institutions with increased regulatory scrutiny should they pursue "business arrangements with the NRA."[16] Cuomo directed Vullo to use the sweeping regulatory powers of DFS—an agency charged with ensuring the stability and integrity of New York's financial markets—to effectuate this program.[17]

The NRA has frequently been targeted for boycotts by anti-gun activists.[18] But those campaigns have historically failed to deprive the NRA of important business relationships because they lacked the coercive force that government entities can employ.[19] This changed in Fall 2017,

---

[9] ECF No. 203 (Second Amended Complaint, or "SAC").
[10] SAC at ¶¶ 14-21.
[11] Id.
[12] Id. at ¶ 17.
[13] See Jacey Fortin, "N.R.A. Suit Claims Cuomo's 'Blacklisting' Has Cost It Millions of Dollars," *New York Times* (Aug. 4, 2018); *available at* https://www.nytimes.com/2018/08/04/nyregion/nra-broke-financial-lawsuit.html.
[14] SAC at ¶ 20 & n. 15).
[15] Id.
[16] Id.
[17] Id.
[18] Id. at ¶ 33.
[19] Id.

when a pro-gun control organization called Everytown for Gun Safety enlisted Vullo to silence the NRA.[20] Everytown contacted the New York County District Attorney's Office as part of its political mission to undermine the NRA,[21] using supposed issues with Carry Guard, a concealed-carry insurance program promoted by NRA, as a pretext.[22] The DA's Office referred the matter to Vullo.[23]

In response, Vullo launched an investigation that ostensibly focused on Carry Guard but quickly expanded to target all of the so-called "affinity" insurance products marketed to NRA members—including insurance products identical to those available to millions of New York residents via non-NRA affinity groups.[24] Vullo's investigation targeted only self-defense insurance products endorsed by the NRA.[25] In sum, Vullo selectively targeted the NRA because of the NRA's well-known Second Amendment advocacy.[26]

At Cuomo's behest, Vullo threatened regulated institutions with costly investigations, increased regulatory scrutiny, and penalties unless they discontinued their business relationships with NRA.[27] These exhortations were not limited to Carry Guard, as she indicated that any business relationship with NRA would invite adverse action.[28]

On April 19, 2018, at Cuomo's direction, Vullo followed her backchannel threats with official regulatory guidance (the "Guidance Documents") on DFS letterhead that was directed to the chief executive officers of all banks and insurance companies doing business in New York.[29]

---

[20] *Id.* at ¶¶ 33–34.
[21] *Id.* at ¶ 34.
[22] *Id.*
[23] *Id.*
[24] *Id.* at ¶¶ 37, 58–60.
[25] *Id.* at ¶¶ 35–36.
[26] *Id.*
[27] *Id.* at ¶ 21.
[28] *Id.* at ¶ 38
[29] *Id.* at ¶ 46.

In them, DFS praised groups that "severed their ties with the NRA" as examples of "corporate social responsibility," and warned regulated institutions of the "reputational risk" of further "dealings with the NRA" in light of the "social backlash" against it for its Second Amendment advocacy.[30] DFS "encourage[d]" regulated institutions to take "prompt actions to manage" this reputational risk.[31]

DFS directives regarding "risk management" must be taken seriously by financial institutions, as risk-management deficiencies can result in adverse regulatory action.[32] Thus, the phrasing of the Guidance Documents was a deliberate tactic, raising the specter of using DFS's regulatory power to choke off the NRA from basic financial services.

Cuomo issued a press release the same day—April 19, 2018—titled "Governor Cuomo Directs Department of Financial Services to Urge Companies to Weigh Reputational Risk of Business Ties to the NRA and Similar Organizations" (the "Press Release").[33]   In the Press Release, Cuomo said that he directed DFS to issue the Guidance Documents.[34] Cuomo characterized the Guidance Documents as having "urge[d] insurance companies, New York State-chartered banks, and other financial services companies licensed in New York to review any relationships they may have with the National Rifle Association and other similar organizations."[35] "Upon this review," Cuomo said, "the companies are encouraged to consider whether such ties harm their corporate reputations and jeopardize public safety."[36] Cuomo made clear what result he wanted: "New York may have the strongest gun laws in the country, but we must push further to ensure that gun safety is a top priority for every individual, company, and organization that does

---

[30] Exhs. B and C to SAC.
[31] Id.
[32] SAC at ¶ 26.
[33] SAC at ¶ 45 & n. 26.
[34] Exh. A to SAC.
[35] Id.
[36] Id.

business across the state."[37] Crucially, Cuomo stated that "[t]his is not just a matter of reputation."[38] Instead, it was "a matter of public safety, and working together, we can put an end to gun violence in New York once and for all," presumably by a DFS-enforced boycott that forced the NRA to cease operations.[39]

Cuomo's Press Release noted that "[a] number of businesses have ended relationships with the NRA following the Parkland, Florida school shooting in order to realign their company's values."[40] It then favorably cited actions by two "DFS-regulated insurer[s]" that had recently "ended relationships with the NRA."[41] The Press Release then quoted Vullo stating that "DFS urges all insurance companies and banks doing business in New York to . . . discontinue[] their arrangements with the NRA."[42]

Testimonial statements from three different New York financial services experts and regulated parties reflect the fact that the Press Release and Guidance Documents were widely perceived within the industry as express threats to financial services firms to avoid doing business with NRA—or else.[43]

Then, in the first week of May 2018, DFS announced multi-million-dollar fines against two insurance firms that dared to do business with NRA.[44] Those insurers agreed to cease underwriting, managing, or selling affinity insurance programs for the NRA in perpetuity, regardless of the legality of the program. Shortly thereafter, a third firm, Lloyd's, announced on May 9, 2018 that it had directed its underwriters to terminate all insurance programs associated

---

[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] SAC at ¶¶ 53, 81.
[44] *Id.* at ¶¶ 21, 54, 62.

with the NRA and not to provide any insurance to the NRA in the future due to DFS's investigations into the NRA and its business partners.[45]

Privately, these companies stated that the decision to sever ties with the NRA arose from fear of regulatory hostility from DFS. The NRA's longtime insurance broker, Lockton, worried about "losing [its] license" to do business in New York,[46] and internal documents obtained from Lloyd's reveal that Vullo's investigation had transformed the "gun issue" into a compliance matter in New York.[47] Having been recently reminded of the consequences imposed on those who fail to remain in DFS's good graces, Lloyd's stopped underwriting lawful NRA-related insurance.[48] The NRA has encountered similar fears from providers of corporate insurance and even banks contacted for basic depository services.[49] Before Vullo's threats, these same banks engaged readily with the NRA.[50]

On May 11, 2018, the NRA sued Cuomo and Vullo in their official and individual capacities. Following motions to dismiss, this Court upheld the NRA's First Count, alleging an implicit censorship regime, and its Second Count, alleging retaliation against NRA based on the content of its speech. The Court denied Cuomo and Vullo's motions to dismiss those counts based on qualified immunity.[51] These rulings were then reaffirmed by this Court on March 15, 2021:

> [I]n the context of the factual allegations asserted in the Amended Complaint, it was plausible to conclude that the combination of Defendants' actions, including Ms. Vullo's statements in the Guidance Letters and Cuomo Press Release as well as the purported 'backroom exhortations,' could be interpreted as a veiled threat to regulated industries to disassociate with the NRA or risk DFS enforcement

---

[45] *Id.*
[46] *Id.* at ¶ 42
[47] *Id.* at ¶ 70.
[48] *Id.*
[49] *Id.* at ¶¶ 80–82.
[50] *Id.*
[51] ECF No. 322 at 43.

action.[52]

The District Court further held that its conclusion was reinforced "by new allegations in the [Second Amended Complaint] that can be reasonably interpreted as pre-Guidance Letters backroom threats by Ms. Vullo of DFS enforcement against entities that did not disassociate with the NRA."[53]

Vullo appealed; Cuomo did not. Discovery in this matter has been stayed during the pendency of Vullo's appeal.[54] The Second Circuit issued a decision on September 22, 2022 reversing this Court's denial of Vullo's motion to dismiss,[55] holding that the NRA had failed to plead a First Amendment claim with respect to Vullo.[56] Based almost entirely on that reasoning, it also found that Vullo was shielded from liability by qualified immunity.[57] The Second Circuit did not consider Cuomo's actions at all.

On October 6, 2022, the NRA petitioned the Second Circuit for rehearing en banc of its decision regarding Vullo, which was denied on November 9, 2022. The NRA then petitioned for certiorari of the Second Circuit's ruling as to Vullo with the U.S. Supreme Court on February 7, 2023. That Petition is still pending.

## LEGAL STANDARD

Rule 1 of the Federal Rules of Civil Procedure commands that the Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with

---

[52] *Id.* at 26.
[53] *Id.*
[54] ECF No. 360 at 11-12.
[55] *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700 (2d Cir. 2022).
[56] *Id.* at 719.
[57] *Id.* at 721.

economy of time and effort for itself, for counsel, and for litigants."[58] Proper use of this power calls for "the exercise of judgment, which must weigh competing interests and maintain an even balance."[59]

Thus, for good cause to support a stay of discovery, the stay must be "for a modest period of time and not prejudice the opposing party."[60] Here, the NRA is irreparably harmed by the stay because it has established a prima facie case that its First Amendment rights have been violated. Any deprivation of its First Amendment rights irreparably harms the NRA—especially here, where the NRA has suffered devastating financial consequences as a result of Cuomo's actions.[61]

Motions to compel discovery are governed by Rule 26(b).  The parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[62] The proportionality factors are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id*. Further, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."[63]

---

[58] *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

[59] *Id.* (citing *Kansas City Southern R. Co. v. United States*, 282 U.S. 760, 763 (1931).

[60] *McNamee, Lochner, Titus & Williams, P.C. v. Mayorga*, No. 1:13-MC-27 GLS/CFH, 2013 WL 4520671, at *5 (N.D.N.Y. Aug. 26, 2013); *see also Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.,* 206 F.R.D. 367, 368 (S.D.N.Y. 2002) ("Good cause [for staying discovery] may be shown where a party has filed a dispositive motion, **the stay is for a short period of time**, and the opposing party will not be prejudiced by the stay." (emphasis added)).

[61] *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000) ("violations of First Amendment rights are presumed irreparable"); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (quoting 11C WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 2948, at 440 (1973)); *see also Cohen v. Coahoma Cnty., Miss.*, 805 F. Supp. 398, 406 (N.D. Miss. 1992) ("[i]t has repeatedly been recognized by the federal courts at all levels that [a] violation of constitutional rights constitutes irreparable harm as a matter of law.").

[62] Fed. R. Civ. P 26(b).

[63] *Id*.

Under Rule 26(b), "the bounds of permissible discovery in a civil action are generally broad."[64]  Federal policy favors broad discovery in civil rights actions like this one, as they present controversies of great public urgency and importance.[65]

## ANALYSIS

### I.  The Stay of Discovery Should Be Lifted

#### A. The Basis for the Stay Has Evaporated

As noted above, the original basis for the Court's stay was Vullo's interlocutory appeal to the Second Circuit. That appeal has now been decided.[66]  Thus, "[t]here is no reason for continuing to stay these proceedings."[67]

Although the NRA is confident that certiorari will be granted and the Second Circuit's ruling will be reversed by the Supreme Court, those proceedings could take a year or more.[68]  The pendency of a petition for a writ of certiorari should not allow the case to be delayed in light of the irreparable harm that the NRA is suffering.[69]

---

[64] *T.H. by Shepherd v. City of Syracuse,* No. 517CV1081GTSDEP, 2018 WL 3738945, at *2 (N.D.N.Y. Aug. 7, 2018); *see also Peddy v. L'Oreal USA Inc.*, No. 18CV7499RAJLC, 2019 WL 3926984, at *1 (S.D.N.Y. Aug. 20, 2019) (for discovery purposes, "relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." (internal formatting omitted)); *Member Servs., Inc. v. Sec. Mut. Life Ins.*, No. CIV.A.3:06CV1164(TJM, 2007 WL 2907520, at *4 (N.D.N.Y. Oct. 3, 2007) ("Discovery is to be considered relevant where there is *any possibility* that the information sought may be relevant to the subject matter of the action." (internal formatting omitted; emphasis in original)).

[65] *Inmates of Unit 14 v. Corr. Officers Ribideau, et al.*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984); *Ramos v. Town of E. Hartford*, 2016 WL 7340282, at *8 (D. Conn. Dec. 19, 2016) ("The fact that the claims implicate important federal rights . . . counsels in favor of requiring greater disclosure under the [Federal Rules'] proportionality standard."); *Nehad v. Browder*, 2016 WL 2745411, at *8 (S.D. Cal. May 10, 2016) (deeming discovery of thousands of documents proportional in a civil rights action "considering the importance of the issues at stake in the action and the importance of discovery in resolving these disputes").

[66] ECF No. 363.

[67] *City of New York v. B.L. Jennings, Inc.*, 219 F.R.D. 255, 256 (E.D.N.Y. 2004).

[68] *See* Supreme Court Procedures, https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-1 (last visited February 17, 2023) (describing the process and timing of a case's path through the United States Supreme Court).

[69] *See, e.g.*, *Wenk v. O'Reilly*, No. 2:12-CV-00474, 2015 WL 4916934, at *3 (S.D. Ohio Aug. 18, 2015) (finding, in First Amendment retaliation claim involving qualified immunity issues and multiple defendants, that "[e]ven if the Court accepts as true that the Supreme Court would vote to grant certiorari and that it would reverse the Sixth Circuit . . . the likelihood of irreparable harm to Defendant Schott if the Court were to deny the stay is outweighed by the harm to Plaintiffs if the Court were to grant the stay"); *Landis* 299 U.S. at 254.

## B. The NRA Has Suffered Prejudice Due to the *Four-Year* Delay in Obtaining Discovery

Continuing to stay this matter indefinitely is prejudicing the NRA.  The Court's order granting the stay found that "the public interest factor weighs in favor of **temporarily** staying discovery for the reasons articulated by Defendant Vullo."[70]  That was over nine months ago. Continuing to stay the case during the pendency of Supreme Court review would force the case to sit idle for an additional year or more—in addition to the *four-and-a-half years* that have already elapsed.

A delay of that length creates an intolerable risk that documentary evidence will be misplaced or lost, and that witness recollections will fade.[71] More fundamentally, as a result of Cuomo's deliberate strategic decision not to take an interlocutory appeal, the claims against Vullo—which involve a distinct application of law—now follow a different track than the claims brought against Cuomo. Given Cuomo's tactical choice not to take an interlocutory appeal, he should be held to the obligation of any litigant—that of participating in discovery pursuant to the Federal Rules. The mere fact that a co-defendant takes an appeal is insufficient to tip the equitable scale in favor of permitting a defendant who chose not to appeal to avoid discovery for nearly half a decade.

---

[70] ECF No. 360 at 10 (emphasis added).

[71] *Torres v. Faxton St. Lukes Healthcare*, No. 6:16-CV-439, 2017 WL 11317906, at *3 (N.D.N.Y. Jan. 26, 2017) (the risk that "documentary evidence will be misplaced […] and the memories of witnesses will fade […] weighs against a stay."); *Kirschner v. J.P. Morgan Chase Bank, N.A.*, No. 17CIV6334PGGSLC, 2020 WL 230183, at *3 (S.D.N.Y. Jan. 15, 2020) (same); *Mirra v. Jordan*, No. 15CV4100ATKNF, 2016 WL 889559, at *3 (S.D.N.Y. Mar. 1, 2016) (finding "that the plaintiff will suffer unfair prejudice from a stay of discovery because […] the witnesses' memories are fading with time."); *Dunn v. Albany Med. Coll.*, No. 09-CV-1031LEK/DEP, 2010 WL 2326137, at *7 (N.D.N.Y. May 5, 2010), *report and recommendation adopted in part*, No. 1:09-CV-1031LEK/DEP, 2010 WL 2326127 (N.D.N.Y. June 7, 2010) (finding that the considerable prejudice in prolonging discovery any further, given the passage of time since the alleged events occurred, "was sufficient to trump any other countervailing factors weighing in favor of a stay.")

## C. The Continuing Harm That NRA Is Suffering Is Irreparable

The NRA is suffering harm because of Cuomo's conduct that is, and will continue to be, irreparable. Here, the NRA has plausibly alleged that Cuomo "embarked on a campaign to chill the political speech of the NRA and other so-called 'gun promotion' organizations by leveraging state power to punishing financial institutions which maintain 'business arrangements with the NRA.'"[72] Cuomo's conduct amounted to an unconstitutional selective-enforcement, retaliation, and censorship scheme that violates the First Amendment—one that has had devastating financial consequences for the NRA and has imperiled its ability to pursue its core mission of advocating for Second Amendment rights.[73] As a result of the retaliatory campaign that Cuomo orchestrated, the NRA's access to even basic financial services was jeopardized.[74]

The law is settled that <u>any</u> deprivation of First Amendment rights is irreparable—let alone the four-year campaign of First Amendment retaliation that the defendants here have orchestrated against the NRA. Further, this Court has held previously that the Second Amended Complaint states viable First Amendment claims against Cuomo.[75]  In the words of this Court:

> Based on Gov. Cuomo's press release wherein he indicates he is directing DFS to issue the Guidance Letters, it is a reasonable inference that he has the power to direct DFS take other official action, including the commencement of enforcement investigations against regulated institutions.[76]

"Thus," the Court held, "there is a reasonable basis to conclude that [Cuomo] has the power to effectuate regulatory action against entities doing business with the NRA."[77]  In addition to Cuomo's admission that he had the power to direct DFS to take official action, the Second Amended Complaint clearly pleads that Cuomo directed DFS and Vullo take action against the

---

[72] SAC at ¶ 20; *see also* SAC at ¶¶ 14-18, 45, 51-53.
[73] *Id*. at ¶¶ 80-85.
[74] *Id*.
[75] ECF No. 56 at 17-28.
[76] ECF No. 56 at 22.
[77] *Id*.

NRA with the retaliatory intent to impair the NRA's ability to engage in core Second Amendment advocacy.[78]

### D. The Public Interest Favors Lifting the Stay

The public interest weighs squarely on the NRA's side of the scale in favor of lifting the stay. Courts in this Circuit, including this Court, have held that "[t]he public interest disfavors the grant of a stay where it would hinder the speedy adjudication of constitutional claims."[79] Indeed "in cases […] alleging misconduct by public officials, 'the public plainly has a strong interest in learning as soon as possible whether the plaintiffs' allegations are true.'"[80]

As the American Civil Liberties Union noted in its amicus curiae brief, "[t]he preservation of the principle of viewpoint neutrality is […] of immense concern," and "[i]f the NRA's allegations were deemed insufficient to survive a motion to dismiss, it would set a dangerous precedent for advocacy groups across the political spectrum. Public officials would have a readymade playbook for abusing their regulatory power to harm disfavored advocacy groups without triggering judicial scrutiny […] For these reasons, […] the NRA should be given an opportunity to investigate and substantiate its First Amendment claims."[81] Accordingly, "the public interest is not served by, and does not justify, granting an indefinite stay given the important First Amendment interests at stake."[82]

---

[78] SAC at ¶¶ 14-18, 20, 45, 51-53.

[79] *Torres*, 2017 WL 11317906, at *4 (quoting *Verizon N.Y. Inc. v. Vill. of Westhampton Beach*, 2013 WL 5762926, at *9 (E.D.N.Y. Oct. 18, 2013)); *see also Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, No. 11 CIV. 3786 RMB, 2013 WL 6912685, at *5 (S.D.N.Y. Dec. 19, 2013) (finding that "[t]he public interest weighs strongly in favor of disclosure and strongly against the Government's application for a stay").

[80] *Id*. (quoting *V.S. v. Muhammad*, 2008 WL 5068877, at *1 (E.D.N.Y. Nov. 24, 2008)).

[81] ECF No. 49-1, at 1, 4.

[82] *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 889 F. Supp. 2d 606, 615 (S.D.N.Y. 2012); *see also Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) ("[T]he public as a whole has a significant interest in ensuring […] protection of First Amendment liberties.").

The length of the delay the NRA has suffered also implicates the public interest.[83]   On multiple occasions, this Court expressed serious concern regarding how long this case has been pending and how little discovery has taken place since it was filed.[84] Simply put, the snail's pace at which this vitally important First Amendment litigation has moved disserves the public interest. In addition, the entities that DFS regulates are left in limbo, potentially subject to unconstitutional coercive action if they seek to provide services to entities that New York's political leadership disfavors, like the NRA. Those regulated parties, and the public customers they serve, are harmed as this case stalls.

As noted above, Cuomo did not appeal this Court's denial of his motion to dismiss the First Amendment claims against him and has no legitimate interest in further delaying discovery.  Vullo, having won her interlocutory appeal in the Second Circuit, has at best a speculative and remote interest in further delaying discovery. Qualified immunity, after all, "is a right to immunity from certain claims, not from litigation in general."[85] The possibility that Vullo might wish to monitor discovery against Cuomo is trivial compared to the burden of the four-plus years of motion practice she has already endured (not to mention the *extraordinary* burdens that the NRA has suffered and continues to suffer as a result of Cuomo's conduct and its failure to obtain discovery, let alone redress, to date). Of course, Vullo will have to participate in discovery because she is a fact witness.[86] But Vullo will suffer no legal prejudice due to the lifting of the stay. By contrast, the NRA and the public interest will suffer irreparable harm if this matter remains stayed indefinitely, potentially left waiting for justice and certainty for even more years to come. A stay of discovery

---

[83] *In re World Trade Ctr.*, 503 F.3d 167, 170 (2d Cir. 2007) ("The effect of the passage of time upon Plaintiffs' interests also has a bearing on the public interests.").
[84] *See* ECF No. 234 at 2 ("The Court continues to be concerned about the pace of this litigation and the extraordinary legal and other expenses being incurred by each of the parties."); ECF No. 348 at 12-13 ("This case was filed on May 11 of 2018. It's going to have its third birthday next week, and we've done virtually nothing here.").
[85] *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996).
[86] *Torres*, No. 6:16-CV-439, 2017 WL 11317906, at *3.

that lasts multiple years is a far cry from "a modest period of time," and the weight of the prejudice with which both the NRA and the public interest are burdened grows every day the stay remains in effect.[87]

### E. Cuomo's Potential Motion for Judgment on the Pleadings Does Not Justify Continuing the Stay; Rather, It Makes Discovery More Urgent

Finally, the potential that Cuomo will file a motion for judgment on the pleadings cannot justify a stay. As one court explained,

> The intention of a party to move for judgment on the pleadings is not ordinarily sufficient to justify a stay of discovery. 4 J. Moore, Federal Practice § 26.70[2], at 461. Had the Federal Rules contemplated that a motion to dismiss under Fed.R.Civ.Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation. . . . Since motions to dismiss are a frequent part of federal practice, this provision only makes sense if discovery is not to be stayed pending resolution of such motions. Furthermore, a stay of the type requested by defendants, where a party asserts that dismissal is likely, would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. This would circumvent the procedures for resolution of such a motion. Although it is conceivable that a stay might be appropriate where the complaint was utterly frivolous, or filed merely in order to conduct a "fishing expedition" or for settlement value, cf. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975), this is not such a case.[88]

Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings."[89] "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should apply the same

---

[87] *McNamee, Lochner, Titus & Williams, P.C.*, 2013 WL 4520671, at *5.
[88] *Wilson v. Gillespie*, No. 2:13-CV-139, 2014 WL 3460042, at *2 (S.D. Ohio July 10, 2014) (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.Cal.1990)); *see also Turner Broadcasting Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D.Nev.1997) ("a pending Motion to Dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery....").
[89] *White v. Montesano*, 466 F. Supp. 3d 331, 333–34 (W.D.N.Y. 2020).

standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party."[90]

Courts have held that a Rule 12(c) motion is inappropriate in cases like this one that depend heavily on fact-intensive inquiries into motive and intent and require the Court to assess voluminous documents and testimony attached to and incorporated into the Complaint.[91] Further, it is especially unfair to engage in this fact-intensive inquiry when the NRA has not yet had the opportunity for discovery.[92]

## II. Discovery Must Be Allowed to Proceed Expeditiously

The discovery that the NRA seeks against Cuomo is limited and the public interest demands that the NRA be allowed to undertake it. Simply put, the NRA has the legal right to discover the facts underlying Cuomo's scheme to destroy the NRA for daring to advocate for Second Amendment rights.



---

[90] *Id*. at 333-34 (cleaned up).
[91] *Id*. at 336 n. 1, *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 29 (N.D.N.Y. 2022).
[92] *Nourse v. Cty. of Jefferson*, 17-CV-0807, 2018 WL 2185504, at *2, n. 1 (N.D.N.Y. May 11, 2018) ("Given the fact-sensitive nature of Plaintiff's claim, and since discovery has not yet commenced, the Court declines to convert Defendant's motion to one for summary judgment."); *Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) ("The court also declines to convert the instant motion into a motion for summary judgment since discovery has not yet commenced.").
[93] A copy of these requests, and Defendants' responses, is attached as Exhibit B.





96 Exhibit B [The NRA's First Requests for Production to Cuomo] at 9.
97 ECF No. 188 at 7-9.
98 Exhibit B at 9.
99 ECF No. 188 at 9.
100 Exhibit B at 9.
101 ECF No. 188 at 4-7.
102 Exhibit B at 10.



In addition, the public's right of access to court proceedings and documents under both the First Amendment is both well-established and compelling.[108] Critically, this right is to "immediate" access, for "[t]o delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression."[109] Indeed, "[a]ccess to civil proceedings and records also acts as a valuable source of information in civil cases that have a 'public' character."[110]

---

[103] *Id.*
[104] ECF No. 188 at 9-12.
[105] Exhibit B at 13.
[106] Exh. C at 12-13.
[107] ECF No. 321.
[108] *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124, 126–27 (2d Cir. 2006).
[109] *Id.* at 127 (quoting *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)).
[110] *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)).

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████ Without question, Defendants' scheme to censor, suppress, and retaliate against political speech by NRA, the oldest civil rights organization in America, is a matter of extraordinary public concern.

Finally, the NRA must be allowed to take the depositions of Vullo, Cuomo, Cuomo's former Chief of Staff, and former DFS Superintendent Linda Lacewell. Over three years ago, this Court acknowledged the critical need to allow the NRA to take Vullo's deposition.[111] So too is it necessary for the NRA to depose former Governor Cuomo and Lacewell as to their knowledge of the scheme to deprive the NRA of its First Amendment rights. Both have "unique first-hand knowledge related to" the scheme to retaliate against the NRA that "cannot be obtained through other, less burdensome or intrusive means."[112] Moreover, the passage of nearly four years since this case was commenced makes it even more immediately pressing that they be deposed before their memories fade and their tactical delays bear even more fruit than they already have.

## CONCLUSION

For the foregoing reasons, the NRA respectfully asks the Court to lift the stay of proceedings it previously entered in this matter[113] in light of the Second Circuit's September 22, 2022 ruling, compel Cuomo to produce responsive, non-privileged documents that the NRA requested four years ago, and allow the NRA to depose Cuomo, Vullo and Lacewell.

---

[111] ECF No. 89.
[112] *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013).
[113] ECF No. 360.

Dated: February 21, 2023

Respectfully submitted,

*/s/ Noah Peters*

William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Sarah B. Rogers  (Bar No. 700207)
sbr@brewerattorneys.com
Noah Peters (Bar No. 703969**)**
nbp@brewerattorneys.com
BREWER, ATTORNEYS &
COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR THE NATIONAL
RIFLE ASSOCIATION OF AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2023, I electronically filed the foregoing upon the following counsel electronically through the ECF system:

Edward M. Spiro
Victor Obasaju
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Email: ESpiro@maglaw.com

Debra L. Greenberger
Andrew G. Celli, Jr.
Marissa Benavides
EMERY CELLI BRINCKERHOFF & ABADY LLP 600 Fifth Avenue,
New York, New York 10020
Email: dgreenberger@ecbawm.com
acelli@ecbawm.com
mbenavides@ecbawm.com

/s/ Noah Peters
_____