UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA,<br><br>                      Plaintiff,<br><br>          -against-<br><br>ANDREW CUOMO, both individually and in his official capacity; MARIA T. VULLO, both individually and in her official capacity; and THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES,<br><br>                      Defendants. | No. 18-cv-566 (TJM)(CFH) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANDREW M. CUOMO'S MOTION FOR JUDGMENT ON THE PLEADINGS

 

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
Edward M. Spiro
Victor Obasaju
565 Fifth Avenue
New York, New York 10017
Tel. (212) 856-9600
espiro@maglaw.com
vobasaju@maglaw.com

*Attorneys for Defendant Andrew M. Cuomo*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii
PRELIMINARY STATEMENT .................................................................................................... 1
PROCEDURAL BACKGROUND ................................................................................................. 3
ARGUMENT .................................................................................................................................. 4
   I.   Motion for Judgment on the Pleadings .................................................................... 4
      A.   Legal Standard .................................................................................................... 4
      B.   The SAC Does Not Establish a Constitutional Violation .................................. 5
      C.   Judgment on the Pleadings is Appropriate Because Governor Cuomo is Entitled to Qualified Immunity ....................................................................... 11
CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) .................................................................................................. 7, 9

*Bd. of Regents of Univ. of Wis System v. Southworth*,
   529 U.S. 217 (2000) ..................................................................................................... 6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ........................................................................................ 5

*CONMED Corp. v. Fed. Ins. Co.*,
   2022 WL 3211932 (N.D.N.Y. Aug. 9, 2022)............................................................... 5

*Cortec Indus., Inc. v. Sum Holding LP*,
   949 F.2d 42 (2d Cir. 1991) .......................................................................................... 5

*Dorsett v. County of Nassau*,
   732 F.3d 157 (2d Cir. 2013) ........................................................................................ 6

*Ernst Haas Studio, Inc. v. Palm Press, Inc.*,
   164 F.3d 110 (2d Cir. 1999) ........................................................................................ 6

*Hammerhead Enters., Inc. v. Brezenoff*,
   707 F.2d 33 (2d Cir. 1983) ............................................................................... 6, 7, 10

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ................................................................................................... 11

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) ........................................................................................ 5

*Malley v. Briggs*,
   475 U.S. 335 (1986) ................................................................................................... 11

*Matusick v. Erie County Water Auth.*,
   757 F.3d 31 (2d Cir. 2014) ........................................................................................ 11

*Okwedy v. Molinari*,
   333 F.3d 339 (2d Cir. 2002) ........................................................................................ 7

*Patel v. Contemp. Classics of Beverly Hills*,
   259 F.3d 123 (2d Cir. 2001) .................................................................................................. 5

*People of State of New York ex rel. Spitzer v. Kraeger*,
   160 F. Supp. 2d 360 (N.D.N.Y. 2001) .................................................................................. 8

*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009) ....................................................................................................... 6, 13

*Procunier v. Navarette*,
   434 U.S. 555 (1978) ............................................................................................................ 12

*Prowley v. Hemar Ins. Corp. of Am.*,
   2010 WL 1848222 (S.D.N.Y. May 7, 2010) ....................................................................... 5

*Rattner v. Netburn*,
   930 F.2d 204 (2d Cir. 1991) ................................................................................................ 7

*Robert F. v. N. Syracuse Cent. Sch. Dist.*, No.,
   2019 WL 1173457 (N.D.N.Y. Mar. 13, 2019) .................................................................... 5

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ............................................................................................................. 6

*Schenck v. Pro-Choice Network of W. New York*,
   519 U.S. 357 (1997) ............................................................................................................. 7

*Sellers v. M.C. Floor Crafters, Inc.*,
   842 F.2d 639 (2d Cir. 1988) ................................................................................................ 5

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004) .................................................................................................. 5

*National Rifle Association of America v. Vullo*,
   49 F.4th 700 (2d Cir. 2022) .........................................................................................*passim*

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
   576 U.S. 200 (2015) ........................................................................................................... 10

*Wandering Dago, Inc. v. Destito*,
   879 F.3d 20 (2d Cir. 2018) ........................................................................................... 10, 13

*Ying Jing Gan v. City of N.Y.*,
   996 F.2d 522 (2d Cir. 1993) .............................................................................................. 11

*Zieper v. Metzinger*,
   392 F. Supp. 2d 516 (S.D.N.Y. 2006) ................................................................................. 7

*Zieper v. Metzinger*,
  474 F.3d 60 (2d Cir. 2007) ............................................................................................... 6, 7, 9

**Rules**

Federal Rule of Civil Procedure 12(c) ..................................................................................... 1, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................... 5

Defendant Andrew M. Cuomo ("Governor Cuomo") respectfully submits this memorandum of law in support of his motion for judgment on the pleadings with respect to the claims of plaintiff National Rifle Association of America ("NRA") against Governor Cuomo in Counts 1 and 2 of the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(c).

## PRELIMINARY STATEMENT

This case, at its core, is about the right of government officials to speak on issues of public concern, even when those statements conflict with the beliefs of certain individuals and groups. In the aftermath of the Parkland, Florida mass shooting, in which seventeen victims tragically lost their lives, Andrew M. Cuomo, as Governor of New York, used his position to advocate for gun safety and common-sense gun regulation.

In furtherance of that goal, Governor Cuomo issued a press release (the "Press Release") articulating his administration's view that gun safety needed to become a priority for individuals and businesses operating in New York. Governor Cuomo directed the Department of Financial Services ("DFS"): (i) to dialogue with insurers and financial institutions licensed or doing business in New York; and (ii) request that these companies review whether any relationship they may have with the NRA or similar gun advocacy group "sends the wrong message to their clients and their communities." In the same Press Release, Maria Vullo ("Vullo"), as Superintendent of DFS, emphasized the role of businesses in preventing gun violence; she therefore urged insurers and banks "to join the companies that have already discontinued their arrangements with the NRA and to take prompt actions to manage . . . risks and promote public health and safety."

According to the NRA, these statements in the Press Release were unconstitutional and inhibited its free speech rights. Vullo moved to dismiss the NRA's First Amendment claims

against her in her individual capacity based on qualified immunity. This Court upheld those First Amendment claims, although also acknowledging that the Court was required to draw "fine lines" between permissible government speech and impermissible threats. Vullo subsequently appealed this decision.

On September 22, 2022, the Second Circuit reversed the denial of Vullo's motion to dismiss and remanded the case, directing entry of judgment for Vullo. The Second Circuit concluded, as a matter of law, that Vullo's statements in the Press Release constituted "permissible government speech," and therefore, the SAC did not plausibly allege a First Amendment violation. Moreover, even assuming that the NRA sufficiently pleaded a constitutional violation, Vullo was "nonetheless entitled to qualified immunity because the law was not clearly established and any First Amendment violation would not have been apparent to a reasonable official at the time." Based on the Second Circuit's decision, Governor Cuomo now moves for judgment on the pleadings as to the First Amendment claims against him in his individual capacity.

First, the NRA has not plausibly alleged that Governor Cuomo's statements in the Press Release were an "implied threat[ ] to employ coercive state power to stifle" the NRA's gun-promotion advocacy, thus infringing the NRA's free speech rights. Like Vullo's statements, which the Second Circuit concluded were constitutional, Governor Cuomo's words cannot reasonably be construed as being unconstitutionally threatening or coercive. Indeed, Governor Cuomo employed language that was "intended to persuade rather than intimidate" and was written in an "even-handed, nonthreatening tone" which, according to the Second Circuit, is constitutionally permissible. Further, Governor Cuomo, like Vullo, did not refer to any "pending investigations or possible regulatory action" for banks or insurers that did not discontinue their arrangements with the NRA or other gun advocacy groups.

2

Second, assuming arguendo that the NRA plausibly alleged that Governor Cuomo's statements in the Press Release violated the First Amendment (which they did not), he is entitled to qualified immunity because his actions did not violate clearly established law. Notably, the Second Circuit remarked that it was unaware of "any case . . . where a government official has been held to have violated the First Amendment by making statements like those in the . . . Press Release, which use only suggestive language and rely on the power of persuasion." Governor Cuomo's statements in the Press Release are nearly indistinguishable from Vullo's; and consequently, the Second Circuit's conclusion that Vullo is entitled to qualified immunity applies with equal force to Governor Cuomo.

Accordingly, the Court should grant Governor Cuomo's motion for judgment on the pleadings and dismiss the First Amendment claims.

## **PROCEDURAL BACKGROUND**

The Court is familiar with the factual and procedural history of this case and we therefore will not restate it at length here. For purposes of this motion, we direct the Court's attention to the following events.

On March 15, 2021, the Court granted Governor Cuomo's motion to dismiss the SAC, which was brought in his *official capacity*. Dkt. No. 322 at 43. The Court ruled that the claims against Governor Cuomo were barred by Eleventh Amendment sovereign immunity. *Id*. No motion to dismiss, however, was filed in Governor Cuomo's *individual capacity*.

As to Vullo, the Court granted in part and denied in part her motion to dismiss the SAC. The Court found that Vullo was entitled to absolute immunity with respect to the NRA's selective enforcement claims and dismissed those claims in their entirety. *Id*. at 22-23. The Court, however, denied Vullo's assertion of qualified immunity as to the SAC's First Amendment claims. *Id*. at

3

28.

One week later, on March 22, 2021, Vullo noticed her appeal of "that portion of the Opinion and Order of the District Court for the Northern District of New York, decided and entered on March 15, 2021 (Dkt. No. 322), that denied Ms. Vullo's motion to dismiss the claims against her on qualified immunity grounds." Dkt. No. 325. On September 22, 2022, the Second Circuit (i) reversed the Court's denial of Vullo's motion to dismiss as to the First Amendment claims and (ii) remanded the case with directions for the Court to enter judgment for Vullo. *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700 (2d Cir. 2022).

The Second Circuit determined that the NRA "failed to plausibly allege that [Vullo's statements] crossed the line between attempts to convince and attempts to coerce." *Id*. at 707 (internal quotation marks and citation omitted). Moreover, "even assuming that Vullo's actions and statements were somehow coercive," the Second Circuit found that Vullo was entitled to qualified immunity because her conduct "did not violate clearly established law." *Id*. As a result of the Second Circuit's decision, the NRA's only remaining claims are the First Amendment claims against Governor Cuomo in his individual capacity.

On February 7, 2023, the NRA filed a Petition for a Writ of Certiorari to the Supreme Court of the United States, seeking review of the Second Circuit decision. The Supreme Court has not yet ruled on the Petition.

## ARGUMENT

I. **Motion for Judgment on the Pleadings**

    A. **Legal Standard**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings "is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering

4

the contents of the pleadings." *CONMED Corp. v. Fed. Ins. Co.*, No. 6:21-CV-841 (MAD/ML), 2022 WL 3211932, at *3 (N.D.N.Y. Aug. 9, 2022) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted). Therefore, a motion for judgment on the pleadings should be granted when, after drawing "all reasonable inferences . . . in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a plausible claim or defense." *Robert F. v. N. Syracuse Cent. Sch. Dist.*, No. 518CV0594LEKATB, 2019 WL 1173457, at *4 (N.D.N.Y. Mar. 13, 2019) (quoting *Prowley v. Hemar Ins. Corp. of Am.*, No. 05-CV-981, 2010 WL 1848222, at *3 (S.D.N.Y. May 7, 2010)).

In evaluating a motion for judgment on the pleadings, the Court may consider "the complaint, the answer, [and] any written documents attached to them," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotations omitted), as well as "materials incorporated in [the complaint] by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *see e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect . . . .") (internal quotations omitted); *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 47 (2d Cir. 1991) (complaint "deemed to include any . . . documents incorporated in it by reference").

### B. The SAC Does Not Establish a Constitutional Violation

The NRA has not plausibly pleaded that Governor Cuomo's statements in the Press Release

5

violated its First Amendment rights.[1]  To state a First Amendment claim, the NRA must plausibly allege that Governor Cuomo's statements in the Press Release were an "implied threat[ ] to employ coercive state power to stifle protected speech"—here, the NRA's "gun promotion advocacy."[2] *Vullo*, 49 F.4th at 714 (quoting *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983); *see also Zieper v. Metzinger*, 474 F.3d 60, 65 (2d Cir. 2007); *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

With respect to government speech, the Supreme Court has recognized that the government is entitled to "speak for itself," *Bd. of Regents of Univ. of Wis System v. Southworth*, 529 U.S. 217, 229 (2000), "say what it wishes," *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995), and "select the views that it wants to express." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 468 (2009) (citations omitted).  Thus, "[i]t is inevitable that government will adopt and pursue programs and policies within its constitutional powers but which nevertheless are contrary to the profound beliefs and sincere convictions of some of its citizens." *Southworth*, 529 U.S. at 229.

Although government officials are free to "advocate for (or against) certain viewpoints,"

---

[1] In Counts One and Two of the SAC, the NRA asserts that Governor Cuomo violated both the First Amendment of the United States Constitution and Article 1, Section 8 of the New York Constitution.  As this Court recognized, the NRA's claims under the United States Constitution and New York Constitution "are subject to the same analysis under federal and state law." Dkt. No. 322 at 23 n. 13 (citations omitted).  Nonetheless, the Second Circuit highlighted that (i) the SAC's claims under New York law are "combine[d] . . . with the federal claims" and not asserted as independent claims and (ii) that the parties in their briefing before this Court neither "address the state law claims" nor "cite New York law." *Vullo*, 49 F.4th at 721 n. 16.  Consequently, the Second Circuit deemed NRA's claims under New York law as "abandoned." *Id*. (citing *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999)).

[2] The Second Circuit clarified that "[t]wo aspects of the NRA's speech" are implicated in the SAC: "(1) the NRA's long-standing gun promotion advocacy and (2) its Carry Guard program and related business associations." *Vullo*, 49 F.4th at 714 n. 12.  While the NRA's gun-promotion advocacy "is protected [speech]," the Second Circuit determined that the Carry Guard program "is not." *Id*.

they cannot "engage in unjustified threats or coercion to stifle speech." *Vullo*, 49 F.4th at 715 (citing *Hammerhead*, 707 F.2d at 39.) Government officials therefore violate the First Amendment when they "encourage [the] suppression of protected speech in a matter that 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request.'" *Id*. at 26 (quoting *Hammerhead*, 707 F.2d at 39.) "Only when a government official attempts to coerce, rather than convince, does a First Amendment violation occur." *Zieper v. Metzinger*, 392 F. Supp. 2d 516, 525 (S.D.N.Y. 2006), *aff'd*, 474 F.3d 60 (2007) (citation omitted).

In determining whether government speech is an attempt to convince or an attempt to coerce, the Second Circuit weighs the following factors: (i) word choice and tone, *Zieper*, 474 F.3d at 66; (ii) the existence of regulatory authority, *Okwedy v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2002); (iii) whether the speech was perceived as a threat, *Rattner v. Netburn*, 930 F.2d 204, 210 (2d Cir. 1991); and (iv) whether the speech refers to adverse consequences, *Hammerhead*, 707 F.2d at 39. *See also Vullo*, 49 F.4th at 715. "No one factor is dispositive." *Id*. (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)).

The SAC alleges that Governor Cuomo's statements in the Press Release (i) "established a 'system of informal censorship' designed to suppress the NRA's speech," (ii) "were in response to and substantially caused by the NRA's political speech regarding the right to keep and bear arms," and (iii) ultimately were designed to suppress "the NRA's pro-Second Amendment viewpoint." Dkt. No. 203 at ¶¶ 90-91, 101. Contrary to this mistaken assertion, Governor Cuomo's statements were permissible government speech—speech that the Governor of New York was not only entitled to make, but was in furtherance of the state's legitimate interest in public safety. *See Schenck v. Pro-Choice Network of W. New York*, 519 U.S. 357, 376 (1997)

7

("[T]he governmental interest in public safety is clearly a valid interest."); *People of State of New York ex rel. Spitzer v. Kraeger*, 160 F. Supp. 2d 360, 374 (N.D.N.Y. 2001) ("[T]he government has an important interest in, inter alia, ensuring public safety and order.")

In the aftermath of the Parkland tragedy, Governor Cuomo issued the Press Release, which first directed DFS "to urge insurance companies, New York State-chartered banks, and other financial services companies licensed in New York to review any relationships they may have with the National Rifle Association and other similar organizations." Dkt. No. 1-2. Governor Cuomo also "encouraged" these companies, after this review, "to consider whether such ties harm their corporate reputations and jeopardize public safety." *Id*. Expressing the policy priorities of his administration, Governor Cuomo remarked that although "New York may have the strongest gun laws in the country, . . . we must push further to ensure that gun safety is a top priority for every individual, company, and organization that does business across the state." *Id*. Finally, he reinforced that this was "not just a matter of [corporate] reputation," but indeed, "a matter of public safety." *Id*.

Governor Cuomo's words in the Press Release "cannot reasonably be construed as being unconstitutionally threatening or coercive." *Vullo*, 49 F.4th at 716. Indeed, this conclusion is supported by the Second Circuit's decision to (i) reverse this Court's denial of Vullo's motion to dismiss the First Amendment claims regarding her statements in the Guidance Letter, Press Release, Consent Decrees, and Lloyd's meetings,[3] and (ii) to remand the case with directions for this Court to enter judgment for Vullo. *Id*. at 721. Relevant here, in the Press Release, Vullo is quoted as follows:

Corporations are demonstrating that business can lead the way and bring about the

---

[3] For purposes of this memorandum of law, we adopt defined terms as described in the Second Circuit decision. *See id*.

8

>       kind of positive social change needed to minimize the chance that we will witness
>       more of these senseless tragedies.  DFS urges all insurance companies and banks
>       doing business in New York to join the companies that have already discontinued
>       their arrangements with the NRA, and to take prompt actions to manage these risks
>       and promote public health and safety.

Dkt. No. 1-2.

According to the Second Circuit, although Vullo's statements "plainly favored gun control over gun promotion" and was an attempt to persuade "DFS-regulated entities to sever business relationships with gun promotion groups," her statements were nonetheless "written in an even-handed, nonthreatening tone and employed words intended to persuade rather than intimidate." *Vullo*, 49 F.4th at 717.  The Second Circuit also noted that her statements did not allude "to any pending investigations or possible regulatory action," only referring to the "risks, including reputational risks . . . *if any*," of doing business "with gun promotion groups amid growing public concern over gun violence and the 'social backlash' against 'organizations that promote guns that lead to senseless violence.'"  *Id*. (emphasis in the original).  Accordingly, the Second Circuit concluded that merely encouraging companies to evaluate risk without "intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request," does not constitute an unconstitutional threat or coercion.  *Id*. at 715; *see also Bantam Books*, 372 U.S. at 67; *Zieper*, 747 F.3d at 66.

The Second Circuit's holding dictates that the First Amendment claims against Governor Cuomo also must be dismissed.  There is no meaningful distinction between Governor Cuomo's statements in the Press Release and Vullo's—the latter of which the Second Circuit found to be permissible government speech.  Indeed, this Court has expressed that the NRA's First Amendment claims against Governor Cuomo and Vullo, "both in their individual capacities, [are] based on conduct alleged to have occurred within the same general limited time period and

9

involving a number of overlapping facts." Dkt. No. 360 at 4.

As stated earlier, Governor Cuomo directed DFS to *urge* banks, insurance companies, and financial-services companies licensed in New York (i) to review their business relationships with the NRA and (ii) to *consider* whether these business relationships were harmful to their corporate reputations and public safety. Dkt. No. 1-2. This directive was carried out by Vullo, on behalf of DFS, and reflected in her statements in the Press Release. As a matter of logic, Governor Cuomo's directive to DFS to engage in constitutional speech cannot form the basis of a First Amendment violation.

Moreover, in calling for gun safety to become "a top priority for every individual, company, and organization" in New York, Governor Cuomo merely articulated his administration's "policy views." *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 34 (2d Cir. 2018) (citation omitted). The Supreme Court has stated that "when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015); *see also Vullo*, 49 F.4th at 717 ("In our view, … it was reasonable for Vullo to speak out about the gun control controversy and its possible impact on DFS-regulated entities. The general backlash against gun promotion groups and businesses that associated with them was intense after the Parkland shooting.") Governor Cuomo, as the elected chief executive of New York, was entitled to articulate his views on issues impacting his constituency.

Finally, Governor Cuomo does not refer to any "pending investigations or possible regulatory action" for companies that failed to heed DFS's appeal to "discontinue arrangements with the NRA and other gun promotion organizations" in the Press Release. *Vullo*, 49 F.4th at 717 (*Hammerhead*, 707 F.2d at 39). Like Vullo, Governor Cuomo only encouraged New York-state

insurers and bankers to account for reputational risk and public safety in assessing their corporate relationships with the NRA and similar organizations. *See* Dkt. No. 1-2 ("This is not just a matter of reputation, it is a matter of public safety, and working together, we can put an end to gun violence in New York once and for all.")  Therefore, like the Second Circuit, this Court should find that the SAC "falls short of plausibly alleging unconstitutional threats or coercion" as to Governor Cuomo's statements. *Vullo*, 49 F.4th at 718.

### C.    Judgment on the Pleadings is Appropriate Because Governor Cuomo is Entitled to Qualified Immunity

Under the qualified immunity doctrine, government officials may only be sued in their personal capacity if they are violating "clearly established [law] . . . of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  The immunity "gives government officials the breathing room to make reasonable, even if mistaken, judgments," *Vullo*, 49 F.4th at 714, and shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Second Circuit has identified the following factors in determining whether a constitutional right is "clearly established": "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 60 (2d Cir. 2014) (quoting *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532 (2d Cir. 1993).

Even assuming that the NRA has plausibly alleged a constitutional violation (which it has not), the SAC's allegations do not support the assertion that Governor Cuomo had notice that his actions violated clearly established constitutional rights. *See Harlow*, 457 U.S. at 817-18 ("[W]e

11

conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (emphasis added); *see also Procunier v. Navarette*, 434 U.S. 555, 565 (1978) ("As a matter of law, therefore, there was no basis for rejecting the immunity defense on the ground that petitioners knew or should have known that their alleged conduct violated a constitutional right.  Because they could not reasonably have been expected to be aware of a constitutional right that had not yet been declared, petitioners did not act with such disregard for the established law that their conduct cannot reasonably be characterized as being in good faith.") (internal quotations omitted).

With respect to Vullo's statements, the Second Circuit found that there was no clearly established law that the NRA could refer to in support of the assertion that she was on notice that her actions were unconstitutional or a violation of the NRA's rights.[4]  *See Vullo*, 49 F.4th at 719 ("Finally, even assuming the NRA sufficiently pleaded that Vullo engaged in unconstitutional threatening or coercive conduct, we conclude that Vullo is nonetheless entitled to qualified immunity because the law was not clearly established and any First Amendment violation would not have been apparent to a reasonable official at the time.")  Indeed, the Second Circuit was unaware of "any case analogous to this one, where a government official has been held to have violated the First Amendment by making statements like those in the . . . Press Release, which use

---

[4] The Second Circuit also concluded that even assuming the NRA's New York claims were "not abandoned," Vullo would also "be entitled to qualified immunity under New York law because . . . her actions were reasonable and there is nothing in the [SAC] from which one could infer bad faith." *Vullo*, 49 F.4th at 721 n. 16.

12

only suggestive language and rely on the power of persuasion." *Id*. at 720 (emphasis added).

Governor Cuomo's statements in the Press Release parallel Vullo's, which the Second Circuit held did not violate clearly established law.  In fact, the Second Circuit cites *Governor Cuomo's statement in the Press Release*—in which he " 'direct[ed] the Department of Financial Services to urge insurers and bankers' to assess the risks of doing business with gun promotion groups," *id*. (quoting Dkt. No. 1-2) (emphasis added)—and concluded that it was not "clearly established at the time" that this statement, along with Vullo's statements in the Guidance Letters and Press Release, "would violate the First Amendment." *id*. at 720.

The Second Circuit's holding applies with equal force to Governor Cuomo's statements in the Press Release.  Governor Cuomo employed "suggestive language" and "the power of persuasion," and his statements in the Press Release were an expression of his administration's views on gun control and public safety.  *See Summum*, 555 U.S. at 468 (holding that the government is entitled to "select the views that it wants to express"); *Destito*, 879 F.3d at 34. As the Second Circuit recognized, several First Amendment cases emphasize "the right of government officials to speak, to take and express views, and to try to persuade."  *Vullo*, 49 F.4th at 720. Governor Cuomo used his office "to address policy issues of concern to the public," particularly in the aftermath of the Parkland tragedy.  *See id*. at 721. Consequently, qualified immunity necessitates dismissal of the First Amendment claims against Governor Cuomo in his individual capacity.

## **CONCLUSION**

For the reasons set forth above, defendant Andrew M. Cuomo's motion for judgment on the pleadings should be granted in its entirety and judgment entered in his favor.

Dated: New York, New York
       March 20, 2023

                           MORVILLO ABRAMOWITZ GRAND
                           IASON & ANELLO P.C.

                           By: ____*/s/ Edward M. Spiro*____
                                Edward M. Spiro
                                Victor Obasaju
                           565 Fifth Avenue
                           New York, New York 10017
                           Tel. (212) 856-9600
                           espiro@maglaw.com
                           vobasaju@maglaw.com

                           *Attorneys for Defendant Andrew M. Cuomo*