UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NATIONAL RIFLE ASSOCIATION OF AMERICA,

                                Plaintiff,

   -against-                                           1:18-CV-0566

ANDREW CUOMO, both individually and
in his official capacity; MARIA T. VULLO,
both individually and in her official
capacity; and THE NEW YORK STATE
DEPARTMENT OF FINANCIAL
SERVICES,

                                Defendants.
_____

**THOMAS J. McAVOY,**
Senior United States District Judge

## DECISION and ORDER

### I.    INTRODUCTION

Plaintiff National Rifle Association of America ("NRA") moves to lift the discovery stay ordered by the Court on January 18, 2022, Dkt. No. 360, and to compel discovery. Dkt. No. 377.  Defendant Andrew M. Cuomo ("Cuomo") opposes the motion, Dkt. No. 382, and the NRA files a reply. Dkt. No. 386.  For the reasons that follow, the motion is denied.

### II.    BACKGROUND

The Court presumes familiarity with the factual and procedural history of this case and will not restate it at length here. Suffice to say, as Cuomo points out, after

1

nearly five years of litigation, three separate complaints, and innumerable motions filed, this case is at a critical juncture. As pertinent to the instant motion, on March 15, 2021, the Court granted Cuomo's motion to dismiss the claims in the Second Amended Complaint ("SAC") to the extent they were brought against him in his official capacity. Dkt. No. 322. The Court ruled that the claims against Cuomo were barred by Eleventh Amendment sovereign immunity. *Id*. at 43. No motion to dismiss, however, was filed in Cuomo's individual capacity.

As to Maria Vullo ("Vullo"), the Court granted in part and denied in part her motion to dismiss the SAC. The Court found that Vullo was entitled to absolute immunity with respect to the NRA's selective enforcement claims and dismissed those claims in their entirety. *Id*. at 22-23. However, the Court declined to dismiss the First Amendment claims against Vullo individually, notwithstanding her assertion of qualified immunity. *Id*. at 28.

The Court also dismissed all claims against Linda Lacewell ("Lacewell"), the Department of Financial Services ("DFS") Superintendent at the time, in her official capacity, including the claims for injunctive and declaratory relief. *Id.* at 43.

On March 22, 2021, Vullo noticed her appeal of "that portion of the Opinion and Order of the District Court for the Northern District of New York, decided and entered on March 15, 2021 (Dkt. No. 322), that denied Ms. Vullo's motion to dismiss the claims against her on qualified immunity grounds." Dkt. No. 325.

On January 18, 2022, the Court granted Vullo's motion to stay discovery in this matter, and determined that all discovery was stayed "during the pendency of

defendant Vullo's qualified immunity appeal." Dkt. No. 360 at 11-12.  For reasons discussed in the Court's January 18, 2022 Decision and Order, the Court deemed it appropriate to impose a global stay, applying to "the entire case, including discovery relative to the claims against Defendant Cuomo." *Id.* at 10-11.

On September 22, 2022, the Second Circuit (i) reversed this court's denial of Vullo's motion to dismiss as to the First Amendment claims and (ii) remanded the case with directions to enter judgment for Vullo.  *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 721 (2d Cir. 2022). The Second Circuit determined that the NRA "failed to plausibly allege" that Vullo "crossed the line between attempts to convince and attempts to coerce." *Id.* at 707 (citing *Zieper v Metzinger*, 474 F.3d 60, 66 (2d Cir. 2007) (internal quotations omitted)). Moreover, the Circuit concluded, "even assuming that Vullo's actions and statements were somehow coercive," Vullo was entitled to qualified immunity because her conduct "did not violate clearly established law." *Id.* As a result, the NRA's only remaining claims are the First Amendment claims against Cuomo in his individual capacity.

As Cuomo reports, on December 6, 2022, Judge Hummel held a conference with the parties and non-party DFS.  During this conference, Judge Hummel asked counsel about their respective positions in the case in light of the Second Circuit's decision. The NRA indicated that it would be filing a petition for writ of certiorari as to the Second Circuit decision and would also file a motion seeking the discoverable documents described in the Special Master's reports.

On February 7, 2023, the NRA filed its Petition for a Writ of Certiorari to the

3

Supreme Court of the United States, seeking review of the Second Circuit decision. The Supreme Court has not yet ruled on the Petition.

On February 21, 2023, the NRA filed the instant Motion to Lift Stay and Compel Discovery. Dkt. No. 377.  The NRA seeks an order lifting the discovery stay and compelling Cuomo to produce "responsive, non-privileged documents the NRA requested four years ago, and allow the NRA to depose Cuomo, Vullo, and Lacewell." Dkt. 377 at 18. Cuomo opposes the motion. *See* Dkt. No. 382.

On March 20, 2023, Cuomo filed a motion for judgment on the pleadings based on (i) the NRA's failure to plausibly allege a First Amendment violation and (ii) Cuomo's qualified immunity. Dkt. No. 381.  Cuomo maintains that this motion, if successful, would dismiss the SAC in its entirety.  He asserts: "Notably, Governor Cuomo's motion relies on the Second Circuit's precedential decision dismissing the First Amendment claims against Vullo, which involves conduct 'occur[ing] within the same general limited time period and involving a number of overlapping facts' as Governor Cuomo." Dkt. No. 382 at 5 (quoting Dkt. No. 360 at 10).  The NRA argues that the motion will not be successful.

## III.   DISCUSSION

Under Federal Rule of Civil Procedure 26(c), this Court has the discretion to stay discovery "for good cause." Fed. R. Civ. P. 26(c)(1).  The NRA asserts that "[t]here is no reason for continuing to stay these proceedings" as the Second Circuit has resolved Vullo's interlocutory appeal. Dkt. No. 377 at 9 (quoting *City of New York v. B.L Jennings, Inc.*, 219 F.R.D. 255, 256 (E.D.N.Y. 2004)). The NRA contends that the

4

Second Circuit's *Vullo* decision does not mean that the claims against Cuomo are legally insufficient or that he is entitled to qualified immunity. Cuomo argues that given the Court's previous finding of good cause to impose the stay, the Second Circuit's *Vullo* decision, and his motion to dismiss, no reason exists to vacate the stay currently in effect. Moreover, he contends, good cause exists for the Court to extend the stay of discovery. Dkt. No. 382 at 5 (citing *Gillard v. Rovelli*, No. 9:12-CV-0083 LEK/CFH, 2013 WL 5503317, at *15 (N.D.N.Y. Sept. 30, 2013)).

### a. Impact of Cuomo's Dismissal Motion

Cuomo has moved for judgment on the pleadings as to the First Amendment claims against him in his individual capacity—*i.e.*, the SAC's remaining claims. Dkt. No. 381. He asserts not only that the NRA fails to state a claim upon which relief can be granted, but also that he is entitled to qualified immunity on these claims.

Cuomo's purported immunity from the NRA's claims is not just a "defense to liability," but "an immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The Supreme Court has instructed that discovery should not be allowed pending the resolution of an immunity question. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until [the] threshold immunity question is resolved, discovery should not be allowed"); *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (stating that qualified immunity provides protection "not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery.") (internal quotation marks omitted); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)("[I]f the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery");

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery.") (internal quotation marks and citation omitted); *see also* Dkt. No. 360 at 7 ("Generally speaking, discovery should not be allowed pending the resolution of an immunity question."). Regardless of the ultimate viability of Cuomo's qualified immunity defense, the Supreme Court's decisions indicating that no discovery should take place until the immunity defense is resolved weighs heavily against vacating the stay and in favor of maintaining it.

### b. The Strength of Governor Cuomo's Dismissal Motion

In determining whether to stay discovery, the Court considers several factors including the strength of a dispositive motion underlying a stay application or application to continue a stay. *See Car-Freshener Corp. v. Getty Images, Inc.*, No. 7:09-CV-01252 (GTS/GHL), 2010 WL 11681623, at *2 (N.D.N.Y. Sept. 30, 2010)(citation omitted). The NRA argues that Cuomo's dismissal motion will not be successful. Cuomo argues that he has submitted a meritorious arguments for dismissal based upon the Second Circuit's *Vullo* decision, making the strength of his defense "irrefutable."

Without conducting a full scale determination of the pending dismissal motion, the Court finds that Cuomo has presented "substantial arguments" for dismissal of the claims against him. *See Spencer Trask Software and Info. Servs., LLC v. RPost Intern. Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (granting stay where defendant presented "substantial arguments" for dismissal of many, if not all, of the claims in a lawsuit)). As Cuomo argues, in his dismissal motion he points out that the Second Circuit made two

findings as to the First Amendment claims against Vullo bearing directly on Cuomo's defense. First, the Second Circuit held that Vullo's statements—most notably, in the Guidance Letters and Press Release—were "clear examples" of permissible government speech. *Vullo*, 49 F.4th at 718, 719. Second, even assuming that the NRA sufficiently alleged that Vullo's statements were "unconstitutionally threatening or coercive," the Second Circuit determined that she was entitled to qualified immunity because "the law was not clearly established and any First Amendment violation would not have been apparent to a reasonable official at the time." *Id*. at 719.

The First Amendment claims against Cuomo and Vullo are intertwined, and thus dismissal of one defendant arguably favors dismissal against the other.  The NRA alleges that Cuomo's statements in an April 19, 2018 Press Release (the "Press Release") violated its free speech rights. In that Press Release, Cuomo directed the DFS to urge banks and insurance companies doing business in New York to consider the risks and public safety impact of corporate relationships they may have with gun rights advocacy groups, like the NRA. This is substantively similar to Vullo's press release.[1] Further, the First Amendment claims against Cuomo and Vullo are intertwined, lending themselves to the conclusion that dismissal of the claims against one defendant favors dismissal against the other. Indeed, the First Amendment claims

---

[1] *Compare* Dkt. No. 1-2 at 2 (Cuomo stating: "I am directing the Department of Financial Services to urge insurers and bankers statewide to determine whether any relationship they may have with the NRA or similar organizations sends the wrong message to their clients and their communities who often look to them for guidance and support.") *with id*. (Vullo stating: "DFS urges all insurance companies and banks doing business in New York to join the companies that have already discontinued their arrangements with the NRA, and to take prompt actions to manage these risks and promote public health and safety.")

against Cuomo and Vullo concern overlapping claims and facts,[2] thus leading to the arguable conclusion that the Second Circuit's *Vullo* decision is dispositive of the remaining claims against Cuomo.

All of this weighs strongly against vacating the stay and in favor of maintaining it.

**c. Cause to Lift the Stay**

In ordering a global stay, "including discovery relative to the claims against . . . Cuomo," the Court observed that the NRA's First Amendment claims against Vullo and Cuomo in their individual capacities were "based on conduct alleged to have occurred within the same general limited time period and involving a number of overlapping facts." Dkt. No. 360 at 10.  The Court indicated that if discovery were allowed to proceed against Cuomo without "Vullo's participation but . . . Vullo's appeal [was] denied, discovery would have to be re-conducted as to Defendant Vullo or she could seek to preclude the NRA from using against her the discovery it received without her participation." *Id*. at 11.  Further, the Court indicated, if Vullo's appeal was "successful while a full discovery stay is in place, the Court would need to assess what limited

---

[2]*See, e.g.*, Dkt. No. 203 at ¶ 20 ("Together with former DFS Superintendent Vullo, his longtime lieutenant, Cuomo embarked on a campaign to chill the political speech of the NRA and other so- called 'gun promotion' organizations by leveraging state power to punishing financial institutions which maintain 'business arrangements with the NRA.'"), ¶ 21 ("At Cuomo's behest, Vullo and DFS have threatened regulated institutions with costly investigations, increased regulatory scrutiny and penalties should they fail to 'discontinue[ ] . . . their arrangements with the NRA.'"), ¶ 45 ("In April 2018, Cuomo directed DFS to publicly 'urge insurers and bankers statewide to determine whether any relationship they may have with the NRA or similar organizations sends the wrong message to their clients and their communities who often look to them for guidance and support."), ¶ 50 ("To further dispel any ambiguity surrounding the April 2018 Letters, Cuomo and Vullo issued the contemporaneous Cuomo Press Release, containing and endorsing a statement by Vullo that directly 'urge[s] all insurance companies and banks doing business in New York to join the companies that have already discontinued their arrangements with the NRA."), ¶ 52 ("The intended and actual effect of the April 2018 Letters, and the actions by Cuomo and Vullo, is to coerce insurance agencies, insurers, and banks into terminating business relationships with the NRA that were necessary to the survival of the NRA as a charitable organization.")

discovery would proceed," and whether Vullo's participation was necessary. *Id*.

The equitable considerations identified in this prior stay order are more compelling now following the Second Circuit's *Vullo* decision. Assuming, *arguendo*, that the claims against Cuomo will be dismissed, there would be no good cause to subject him to the burdens and costs of discovery, including depositions; nor should non-parties such as DFS, Vullo and Lacewell be needlessly tasked with participating in discovery regarding the documents reviewed by the Special Master. Moreover, in petitioning for a writ of certiorari to review the Second Circuit decision, the NRA requests that the Supreme Court either "summarily revers[e] the judgment of the Court of Appeals" or in the alternative, "grant the petition for a writ of certiorari, set the case for full merits briefing, and reverse the judgment." Petition for Writ of Certiorari for Plaintiff-Petitioner National Rifle Association of America, *NRA v. Vullo* (2023) (No. 22M73) at 1, 39. In light of the NRA's requested relief and the overlapping facts between the First Amendment claims against Vullo and Cuomo, Vullo may still need to participate in discovery "to protect her rights" in the event that the Supreme Court reverses the Second Circuit's decision. *See* Dkt. No. 360 at 10. Similarly, if the stay is vacated, and the Supreme Court reverses the Second Circuit decision, this Court will need to reconduct discovery as to Vullo, which is antithetical to the efficient use of the Court's resources.

As Cuomo argues, denying the NRA's motion "will allow the case to proceed efficiently and with full participation of the appropriate parties at the appropriate time." *Id*. at 11. This weighs against vacating the stay and in favor of maintaining it.

9

### d. Potential for prejudice in extending the stay

The NRA asserts that "[c]ontinuing to stay this matter indefinitely is prejudicing the NRA" given (i) the "four-and-a-half years" that have elapsed since commencing this action and (ii) the NRA's pending petition for writ of certiorari. *See* Dkt. No. 377 at 10. Cuomo asserts that he is not seeking an indefinite stay of discovery, but rather is asking this Court to maintain the status quo while the Court rules on his pending motion for judgment on the pleadings and his qualified immunity defense.

To the extent that the NRA asserts prejudice due to years of litigation, some of that delay is attributable to its own actions. While the Court dismissed the NRA's selective prosecution claims on May 9, 2019, with leave to amend the complaint, Dkt. No. 112 at 8, the NRA waited six months to do so. *See* Dkt. No. 155. Once the NRA finally filed the SAC on June 2, 2020, Dkt. 203, Cuomo promptly filed his motion to dismiss. Dkt. No. 210. Nevertheless, the Court finds that the potential for the NRA to lose access to relevant evidence weighs in favor of vacating the stay.

On a related note, the Court does not find that Cuomo's decision to file his dismissal motion was an improper "tactical choice." Dkt No. 377 at 10. He contends that the Second Circuit's *Vullo* decision provides him "with a compelling basis to now move for judgment on the pleadings and urge that the stay of discovery remain in place pending resolution of that motion." *Id.* (citing *Vullo*, 49 F.4th at 719)("[E]ven assuming the NRA sufficiently pleaded that Vullo engaged in unconstitutionally threatening or coercive conduct, we conclude that Vullo is nonetheless entitled to qualified immunity because the law was not clearly established and any First Amendment violation would

10

not have been apparent to a reasonable official at the time.")).  As indicated above, this weighs against vacating the stay and in favor of maintaining it. Further, the Court does not find that Governor Cuomo brought his motion to dismiss with the intention of unjustifiably delaying this case, but rather because he has good faith belief in the merits of his motion.

Cuomo also argues that although there is always a risk of loss documentation and fading witness recollections, this prejudice is diminished here because his immunity defense "would result in him not being a defendant and the entire case being dismissed."  Dkt. No.  382 at 12.  Because Cuomo presents a colorable defense to the remaining claims in this case, this weighs against vacating the stay and in favor of maintaining it, but the weight in this regard is slight.

The NRA also argues that it will suffer prejudice by virtue of the fact that it has alleged constitutional violations.  Cuomo argues that the NRA's remaining claims against him are solely for monetary damages, and the NRA has made no showing of any noncompensable injury due to Cuomo's alleged First Amendment violations. Therefore, Cuomo contends, there is no irreparable harm. Dkt. No. 382 at 12 (citing *KM Enters., Inc. v. McDonald*, No. 11-cv-5098 (ADS), 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) ("[E]ven if a constitutional claim was asserted, merely asserting a constitutional injury is insufficient to automatically trigger a finding of irreparable harm. . . . In other words, the Plaintiff must still convincingly show that a violation carries noncompensable damages in addition to monetary damages.") (internal quotations omitted); *Dr. A. v. Hochul*, 586 F. Supp. 3d 136, 146 (N.D.N.Y. 2022); *Hardy v. Fischer*, 701 F. Supp.2d 614, 619 (S.D.N.Y. 2010) ("[A]n ongoing constitutional violation more

11

closely resembles irreparable injury than does a constitutional violation that was suffered in the past and which can be remedied only by money damages.")). However, because the NRA alleges that Cuomo orchestrated a campaign of First Amendment retaliation, the Court will find for purposes of this motion that it has suffered irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000) ("violations of First Amendment rights are presumed irreparable"); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citation omitted). The Court finds that this weighs in favor of lifting the stay.

### e. Potential for prejudice in lifting the stay

Cuomo claims that lifting the stay would cause him irreparable harm because the NRA seeks to depose him, and to depose non-parties Vullo and Lacewell. Dkt. No. 377 at 18. He also points out that the NRA moves for a court order for the immediate production of non-privileged documents —as designated by the Special Master—bearing on "the NRA's First Amendment Claims against Governor Cuomo in his individual capacity." *Id*. at 16-17.  He contends that because it is well-settled that discovery should not be allowed pending the resolution of an immunity question, lifting the stay would irreparably harm him because such an order would strip him of his asserted qualified immunity protections. He also argues that in the absence of a stay, the NRA will likely seek additional discovery that will require his time and attention, including discovery from

various non-parties. He notes that if the NRA's motion is granted, he will be forced to engage in discovery related to claims that would be precluded if his dismissal motion is successful. Thus, he contends, under the circumstances discovery should remain stayed.

This is really a derivative argument of the issues addressed in sections III(a) and (b) above. Because there is the potential that Cuomo could be required to engage in unnecessary discovery, he has demonstrated that there is some potential prejudice to him. This weighs against lifting the stay.

### f. Public interest

The parties dispute whether lifting the stay would be in, or counter to, the public interest. The NRA claims that the public interest lies in the speedy resolution of constitutional claims, especially where, as here, those claims are brought against public officials. Cuomo argues that extending the stay is in the public interest which is furthered when courts safeguard qualified immunities protections for individuals sued because of their government service. Cuomo argues that if the immunity protection is not safeguarded, public officials will be unduly hesitant to engage in the vigorous exercise of official authority.

"The doctrine [of qualified immunity] is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Jemmott v. Coughlin*, 85 F.3d 61, 66 (2d Cir. 1996) (interior quotation marks and

citations omitted). In this context, both sides present meritorious arguments relevant to the public interest in relation to the stay. The Court finds the parties' arguments are equivocal, and do not weigh in favor of either side.

### g. Need to fully adjudicate the merits of the NRA's claims

The NRA argues that "discovery is necessary to fully and fairly adjudicate the merits of the NRA's detailed allegations against Cuomo in the Complaint—and any entitlement he might have to qualified immunity." Dkt. 386 at 22. The Court rejects this argument as a basis to lift the discovery stay. Cuomo's dismissal motion is brought under Fed. R. Civ. P. 12(c), which is resolved based upon the allegations in the SAC. No additional information is necessary to adjudicate the merits of the NRA's claims or Cuomo's claimed qualified immunity. If the case proceeds beyond this stage, then discovery will be appropriate in preparation for a motion for summary judgment.

## IV. CONCLUSION

Having considered the parties' arguments, and for the reasons discussed above, the Court exercises its discretion and determines that the discovery stay will continue until such time as the Court resolves Cuomo's dismissal motion. Accordingly, the NRA's motion to lift the discovery stay and to compel discovery, Dkt. No. 377, is **DENIED.**

**IT IS SO ORDERED.**

Dated: September 15, 2023

Thomas J. McAvoy
Senior, U.S. District Judge

14